**EXHIBIT B  (contd.)**

**Copy of All Filings with State Court**

8/2/2021 7:38 AM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Alexus Rodriguez**

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |
| | § | |

## PLAINTIFFS' SUPPLEMENTAL RESPONSE TO MOTION FOR PRO HAC VICE REGARDING WITNESS TAMPERING IN THIS LAWSUIT

Plaintiffs have filed this Supplemental Response because after the filing of their initial brief, Mr. Randazza has been repeatedly threatening one of the witnesses who provided evidence included with Plaintiffs' brief. The witness contacted Plaintiffs' counsel expressing his grave alarm about these threats, which included highly improper and potentially felonious threats of criminal prosecution and civil litigation against the witness. As such, Plaintiffs file this brief to bring this repeated witness intimidation to the Court's attention.

## FACTS

Plaintiffs' brief opposing Mr. Randazza's appearance included declarations from March 2021 by Alexandrea Merrell and Mike Postle discussing an astonishingly abusive phone call they had with Mr. Randazza. In the week after the filing of those declarations, Mr. Randazza began repeatedly contacting Mr. Postle by email, issuing menacing threats about perjury. The events transpired as follows:

1.      First, on July 29, 2021, Mr. Randazza emailed Mr. Postle and threatened a civil lawsuit. Mr. Randazza stated, "It is my intention to file a lawsuit against you for violation of Cal. Penal Code § 637.2."[1] Mr. Randazza threatened this lawsuit due to Mr. Postle allegedly recording Mr. Randazza's calls. Mr. Randazza stated, "I am willing to grant you 24 hours in which to try to resolve this without filing suit against you."[2]

---

[1] Exhibit 1, Declaration of Mike Postle, p. 3.
[2] *Id.*

2.      Mr. Postle responded by denying that he had recorded any calls, and asked Mr. Randazza to leave him alone, stating that he "[didn't] see a reason for you to contact me."[3]

3.      Mr. Randazza continued to email Mr. Postle. In his next email, Mr. Randazza stated, "Well, you both lied in claiming that I called her a 'cunt.'"[4] Mr. Randazza told Mr. Postle, "So, how do you want to handle your perjury?"[5]

4.      Mr. Postle responded again, clearly upset by Mr. Randazza's accusation and his threat. Mr. Postle again asked Mr. Randazza to cease contact:

> As I have said before, I find you beyond unprofessional and yet again, there's no need to have contact with you unless it is specifically for court business. These threats are NOT court business.[6]

5.      Mr. Postle also stated, "I didn't lie, you did say that."[7] Mr. Postle expressed his dismay that Mr. Randazza was "coming at me out of personal anger with a clear vendetta."[8] Mr. Postle then repeated his request that Mr. Randazza cease contact:

> There's really no reason to contact me other than to continue harassing and threatening me. You've admitted that "because things have been made personal" and that "it's a big mistake on my part," it's very clear why you're still coming at me.[9]

---

[3] *Id.,* p. 4
[4] *Id.,* p. 5.
[5] *Id.*
[6] *Id.,* p. 6.
[7] *Id.*
[8] *Id.*
[9] *Id.*

6.     Mr. Randazza refused to honor Mr. Postle's second demand to cease communicating with him about his declaration. Instead, Mr. Randazza again wrote to Mr. Postle, demanding that Mr. Postle "send a letter to the court" recanting his testimony.[10] Otherwise, Mr. Randazza pledged "to take action" and stated that he was "not going to let that rest."[11] Mr. Randazza also added:

> Indeed, I did say "fucking liar" – I will never deny that. But, I certainly did not call her a "fucking bitch" nor a "fucking cunt" (There is a non zero chance that I *thought* those things, but they never came out of my mouth)[12]

7.     Mr. Randazza insisted that "I won't let this go."[13] Mr. Randazza then told Mr. Postle, "So, your move."[14] Mr. Randazza closed by threatening Mr. Postle, stating, "You can dig in…and enjoy the 'effect' as you put it."[15]

8.     As Mr. Postle noted in his email, Mr. Randazza had previously emailed Mr. Postle on June 15, 2021, telling Postle, "You decided to make it personal with me. That wasn't smart." A copy of that email is also attached to Postle's declaration.[16]

9.     In addition, a few weeks after Mr. Postle gave Plaintiffs' counsel his March 2021 declaration about his call with Mr. Randazza, Mr. Postle was harassed again when Mr. Randazza posted a public message to Mr. Postle on Twitter which

---

[10] *Id.,* p. 7-8.
[11] *Id.*
[12] *Id.,* p. 8.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.,* p. 11.

included a court document with his home address and phone number along with a link to a video of a group of mafiosos beating up a man in a bar.[17]

10.     In his attached declaration, Mr. Postle stated, "I tried to put on a brave face for Mr. Randazza, but I found his emails very intimidating, and they have caused me to worry about the reprisals I will face from Mr. Randazza because I angered him with my testimony."[18] Mr. Postle also stated, "I am not represented by an attorney, and I fear that Mr. Randazza is going to use the legal system to pursue a personal vendetta against me."[19]

## ARGUMENT

## I.   Mr. Randazza Intimidated a Witness with Threats of Criminal Prosecution and Civil Litigation.

"[W]arnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify." *Johnson v. State,* 208 S.W.3d 478, 503 (Tex. App.—Austin 2006, pet. ref'd). As the Austin court explained in *Davis,* judges and attorneys must be especially cautious when admonishing a witness about perjury, noting that "[s]uch admonitions should be administered, if at all, judiciously and cautiously." *Davis v. State,* 831 S.W.2d 426, 438 (Tex. App.—Austin 1992, pet. ref'd). This is "particularly true" when the admonishment is attempted by a lawyer instead of a judge, "because, as here, it generally occurs outside the context of the trial itself, is not a part of the official court

---

[17] *See* https://twitter.com/marcorandazza/status/1378069741055660040
[18] Exhibit 1, Declaration of Mike Postle, p. 1.
[19] *Id.*

proceedings, and is not subject to judicial supervision and control." *Id.* Noting that "[w]itnesses should not be discouraged from testifying freely nor intimidated into altering their testimony," the *Davis* court instructed that "[i]n all these kinds of cases the reviewing court should examine the circumstances under which a perjury or other similar admonition was made to a witness, the tenor of the warning given, and its likely effect on the witness's intended testimony." *Id.*

Here, the repeated hostile emails from Mr. Randazza were not "a warning to a witness made judiciously under the circumstances." *Id.* Indeed, Mr. Randazza's repeated messages, despite Mr. Postle's requests to cease contact, "went far beyond a cautious and judicious warning." *Id.* "First, the conversation between [Randazza and Postle] occurred outside the context of the trial court and the protection of judicial supervision." *Id.* Moreover, "the tenor of [Randazza's] comments were more threatening than a simple warning would need to be." *Id.; see also Steele v. State,* 01-95-00465-CR, 1997 WL 804198, at *14 (Tex. App.—Houston [1st Dist.] Dec. 23, 1997, pet. ref'd) (agreeing with *Davis* court that misconduct occurs when comments are "more threatening than a simple warning would need to be."). This is because, again, "the warnings concerning the dangers of perjury cannot be emphasized to the point where they threaten or intimidate the witness." *Hardy v. State,* 01-89-00490-CR, 1990 WL 19094, at *4 (Tex. App.—Houston [1st Dist.] Mar. 1, 1990, pet. ref'd).[20]

---

[20] In some cases, prosecutors have been given additional leeway when dealing with a recanting witness who changes prior testimony. However, Mr. Randazza is not a prosecutor, and Mr. Postle "was not a recanting witness." *Davis,* 831 S.W.2d at 438.

Mr. Randazza cannot excuse his misconduct by ignorance of Texas law, since a robust body of federal opinions have reached the same conclusion as these Texas courts. *See, e.g., United States v. Evans,* 187 F.3d 643 (8th Cir. 1999) (Noting that "warnings regarding the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witnesses into refusing to testify."); *United States v. Blackwell,* 694 F.2d 1325, 1334 (D.C. Cir. 1982) (same); *Pynn v. Woodford,* EDCV 06-687-AHM FFM, 2011 WL 1399843, at *13 (C.D. Cal. Mar. 11, 2011) (Misconduct has occurred when an attorney "intimidates or harasses the witness to discourage the witness from testifying, for example, by threatening the witness with prosecution for perjury or other offenses."); Prof. Resp. Crim. Def. Prac. 3d § 16:19, Threats of suit or criminal charges if witness testifies ("It is improper for a lawyer to threaten a witness with suit or perjury or other criminal charges if the witness testifies.") (collecting cases). Under this caselaw, Mr. Randazza's emails were not a "constitutionally permissible 'mere warning' about the dangers of committing perjury." *United States v. Modisett,* 3:14-CR18-1 (JRT), 2017 WL 74698, at *2 (D.N.D. Jan. 5, 2017). Instead, Mr. Randazza's emails contained direct accusations of perjury along with promises that he would act against Mr. Postle, and the threats were repeated even after Mr. Postle demanded Randazza cease contact.

A similar situation arose in *State v. Howe,* in which a family court attorney made statements "to threaten both civil suit and a criminal charge" against a witness. *State v. Howe,* 247 N.W.2d 647, 654 (N.D. 1976). The court noted that the "circumstances

present imparted both an intention and an ability that would justify apprehension on the part of the recipient of the threat." *Id.* The same apprehension is present for Mr. Postle, an unrepresented person, who is facing repeated threats that Mr. Randazza, a licensed attorney, will cause criminal and civil proceedings against him. In addition, the court in *Howe* discussed the importance of the surrounding circumstances. For instance, *Howe* involved an angry communication made after the witness gave adverse testimony:

> [T]o determine whether a threat was made, the phone call must be examined in the context in which it was made. Howe was admittedly angry at the time the call was made. Mrs. Rohde had testified against her son, Howe's client, earlier that day in the juvenile hearing. These circumstances would justify apprehension on the part of a reasonable person receiving such a call. As counsel for both parties correctly pointed out, it matters not whether Mrs. Rohde was actually apprehensive or felt threatened; rather, the issue is whether the circumstances would justify apprehension on the part of the recipient.

*Id.* at 655. Here, Mr. Randazza was clearly angry in his emails, and Mr. Postle indicated that he felt threatened and repeatedly asked Mr. Randazza to cease contact. Under these circumstances, Mr. Randazza's actions were highly improper and potentially in breach of criminal witness tampering statutes.

## CONCLUSION

Mr. Randazza's threatening conduct towards Mr. Postle is perfectly consistent with his long record of questionable conduct. It is obvious that Mr. Randazza's

harassment of this witness must cease, and it is equally obvious that Mr. Randazza's admission in these lawsuits would lead to further similar transgressions.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021 the forgoing document was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

# EXHIBIT 1

## DECLARATION OF MIKE POSTLE

STATE OF _California_ §
§
_Sacramento_ COUNTY §

I, Mike Postle, declare under penalty of perjury that the following declaration is true and correct and based upon my personal knowledge:

1. My name is Mike Postle. I am over the age of 18 and competent to make this declaration.

2. I provided a declaration to attorney Mark Bankston in which I accurately described an abusive phone call with attorney Marc Randazza.

3. In the week after my declaration was submitted in Texas, Mr. Randazza began contacting me directly through email about that declaration.

4. I have attached to this declaration true and correct copies of several emails Mr. Randazza sent which greatly disturbed me, including emails concerning my testimony and threats of legal action.

5. I tried to put on a brave face for Mr. Randazza, but I found his emails very intimidating, and they have caused me to worry about the reprisals I will face from Mr. Randazza because I angered him with my testimony.

6. I am not represented by an attorney, and I fear that Mr. Randazza is going to use the legal system to pursue a personal vendetta against me.

Executed on August 1, 2021.

_____
MIKE POSTLE

July 29, 2021 email that I received from Marc Randazza



July 29, 2021 email I received from Marc Randazza (cont.)



injunctions preventing the use of illegally obtained information. Cal. Penal Code § 637.2(b).

It is my intention to file a lawsuit against you for violation of Cal. Penal Code § 637.2.

However, I am willing to grant you 24 hours in which to try to resolve this without filing suit against you.

You may feel free to call me to discuss. I do not consent to recording the call unless we discuss that before the recording begins.

July 29, 2021 email that I sent in response to Marc Randazza



Sent

## et al. | 34-2020-00286265

Mr. Randazzal,

My email to you was a bit of hyperbole.  I assume that you are referring to this section:

"I don't think your correspondence has been very professional, it's clearly not your style to be professional based on re-listening to the two calls we've had thus far so I wont personally hold it against you. I forgot that you mentioned to me in our first call that you didn't want to be made into a clown thanks to Brill, and I'm still in awe over how you treated Ms Merrill on the second call. So unless it is court business, or you'd actually like to talk about mutual respect, I don't see a reason for you to contact me."

My goal, was to discover if you would admit to speaking to me and Ms Merrill so terribly.  Since in your filed court response you included a statement from your staff confirming that you had in fact cursed and disparaged us, I'm done with it.

But no, no one recorded you. I just make sure I take notes anytime I'm talking to anyone who's capable of lying or who threatens me with getting personal in email, like you did with me, having both doxed me online, and republishing a defamatory video where your client asked my ex to lie for hers and your gain.

July 29, 2021 email I received from Marc Randazza



July 29, 2021 email that I sent to Marc Randazza



As I have said before, I find you beyond unprofessional and yet again, there's no need to have contact with you unless it is specifically for court business. These threats.. are NOT court business.

Are you saying that on a professional call, as a court officer, when speaking to a lady from a victim's advocacy non-profit, you did scream that she was a fucking bitch and a fucking liar, just not a "cunt"? Classy.. and many others would agree if they have to know.
Anyway, I didn't lie, you did say that and since the "3rd party" that you claim was in your office is the same 3rd party you claim never had a GoFundMe with Brill on your behalf, who works with you, I don't think a court is going to give much credence to that claim, especially to someone...

Frankly, I don't know why you are still focusing on me since the judge said that your "services" were worth less than $27k and you received over $27k from the GoFundMe you and your office set up to cover those fees.

There's really no reason to contact me other than to continue harassing and threatening me.
You've admitted that "because things have been made personal", and that "it's a big mistake on my part" it's very clear why you're still coming at me.

You can be done with me, or you can keep stubbornly coming at me out of personal anger with a clear vendetta. But every cause will have an effect. So...
At this point, I don't really care what you.

July 29, 2021 email that I received from Marc Randazza



I absoutely said "Fucking liar" -- "bitch" or "cunt," no. Not a chance.

It is "court business" when you lie in a sworn statement. If you find no functional difference between calling someone a "fucking liar" or a "fucking bitch" or "fucking cunt" , you're entitled to that opinion. What you are not entitled to is to perjure yourself and lie about which of the three I did say. What I am entitled to do is to take action when someone submits a false statement, under penalty of perjury.

22-01023-tmd Doc#1-13 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 20 of 336

July 29, 2021 email that I received from Marc Randazza (cont.)



**⏱ Verizon LTE ❄** **◑ 4:41 PM** **◀ 66% 🔋**

16 Messages

**❮ Inbox  SERVICE OF COURT DOCU... ⌃ ⌄**

statement, under penalty of perjury.

And I am not going to let that rest – however, I will let it rest on one condition – that you admit that it was not true.  and I won't use that against you.  You need do nothing more than send a letter to the court stating that you made an error.  That indeed, I did say "fucking liar" -- I will never deny that.  But, I certainly did not call her a "fucking bitch" nor a "fucking cunt"  (There is a non zero chance that I *thought* those things, but they never came out of my mouth)

I'm not even sure what you thought you had to gain by lying about that.  But, I will not tolerate the lie, and I won't let this go.  So, your move.  You can end it by telling the truth.  Or, you can dig in ... and enjoy the "effect" as you put it.

July 29, 2021 email that I sent to Mr. Randazza



June 15, 2021 email that I received from Marc Randazza



**Dream Seat** · 6/15/21
Mr Randazza, I will let the court tel...

Siri found new contact info
Marc Randazza mjr@randazza.com  add...

**Marc Randazza** · 6/15/21
To: Dream Seat ›

Mr. Postle:

My issue with you is that you're dishonest. I don't really care that you're a card cheat. I mean, I certainly look down on a man who cheats at cards. But, the kind of man who cheats at cards *and* physically abuses women, that's just not a real man in my eyes.

As far as representation, yes, you have every right to an attorney. You had one. You had a really good one. My issue with HONR is that it's involvement

June 15, 2021 email that I received from Marc Randazza (cont.)



As far as representation, yes, you have every right to an attorney.  You had one.  You had a really good one.   My issue with HONR is that it's involvement in this case has nothing to do with you - but has to do with a collateral attempt to influence another case.  And, Ms. Merrell most certainly was trying to "play lawyer" for you.  No, that's not permitted.

Don't lie that you have any interest in "mutual respect."  We tried that route.  You decided to make it personal with me.

That wasn't smart.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 55894248
Status as of 8/3/2021 11:34 AM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/2/2021 7:38:54 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/2/2021 7:38:54 AM | SENT |
| William Ogden | | bill@fbtrial.com | 8/2/2021 7:38:54 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/2/2021 7:38:54 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/2/2021 7:38:54 AM | SENT |

8/2/2021 4:16 PM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Alexus Rodriguez**

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |
| | § | |

## PLAINTIFFS' SUPPLEMENTAL RESPONSE TO MOTION FOR PRO HAC VICE REGARDING FALSE ACCUSATIONS AGAINST PLAINTIFFS' COUNSEL

1

Plaintiffs file this brief because Defendants' counsel have made malicious and knowingly false statements about Plaintiffs' counsel, including accusations of anti-Semitic abuse when Defendants' counsel knew and understood **Mr. Bankston was actually the target of that very abuse**, which he was quoting back to a neo-Nazi troll. Defendants also intentionally misled the Court and misrepresented the meaning of numerous statements on Mr. Bankston's personal anonymous Twitter account, as well as falsely accused Mr. Bankston of lying to the Court. The evidence below shows that Defendants' counsel made these accusations maliciously as a means of reprisal to damage Mr. Bankston's reputation, and that they have violated their duty of candor to the Court on these irrelevant and collateral matters. Plaintiffs file this brief to clear their counsel's name and bring the Court's attention to the many disturbing misrepresentations about Plaintiffs' counsel contained in Defendants' brief.

## INTRODUCTION

In his free time, Mr. Bankston operates a popular anonymous Twitter account addressing politics and culture from a left-wing anti-fascist perspective, frequently with a satirical or sardonic bent. Often daring and occasionally adult-themed, the anonymous account has gained 176,000 followers including many of the nation's pre-eminent politicians and journalists.

As the tweets in Defendants' brief shows, an occasional element of the anonymous Twitter account is dedicated to mocking and ridiculing some of the nation's most infamous white nationalist politicians, neo-Nazi agitators, Proud Boy

thugs, QAnon anti-vaxxers, and other bigoted provocateurs in the online far-right reactionary movement. While Mr. Bankston's tweets on his private account sometimes contain profanity, Defendants have dishonestly misrepresented Mr. Bankston's comments to falsely portray him as a bigot and white nationalist when the exact opposite is true. Defendants have grossly misrepresented tweets when Mr. Bankston was quoting anti-Semitic attacks **directed at Mr. Bankston**, or they have otherwise removed the context to invert the actual meaning. In other examples, Defendants have knowingly distorted the content of the tweets to imply a false meaning.

Plaintiffs' counsel fully understands that all of these matters are irrelevant and collateral to the motion currently before the Court. Nonetheless, Plaintiffs are compelled to file this brief because Defendants' intentionally dishonest smears of Mr. Bankston could be used against him in the future if left uncorrected. Plaintiffs' counsel apologizes in advance for the length of this brief as well as the irrelevant, frivolous, and often silly and waggish content contained within. Mr. Randazza does not seem to understand that profanity in personal non-legal settings is quite different than profanity in professional settings, to say nothing of abuse or bigotry, which is a disturbing issue regardless of where it occurs.

Yet most importantly, the attempts to smear Mr. Bankston are maliciously dishonest, and Defendants' dishonesty is supported by hard evidence in the form of messages sent to Mr. Bankston by the attorney working with Mr. Randazza in

Connecticut which confirm the dishonest nature of these attacks. These dishonest smears are so severe as to constitute a breach of the duty of candor to the Court.

## ARUGMENT

### I.    Defendants Dishonestly Claimed Mr. Bankston Engaged in Anti-Semitic Abuse when Defendants Know that Mr. Bankston was Quoting Abuse Directed at Him.

Defendants' brief cites a tweet in which they claim "Bankston wrote "*Stop being such a jew about it*," but they conceal the fact that the tweet is actually Mr. Bankston quoting a Proud Boy troll who had directed that anti-Semitic insult **against Mr. Bankston**. Moreover, as shown below, Defendants' counsel are well aware that Mr. Bankston crusades against these anti-Semitic bigots online, and that Mr. Bankston is subject to this kind of anti-Semitic abuse due to his anonymous status.

The thread begins with Mr. Bankston replying to infamous far-right agitator Candace Owens, who posted a bigoted tweet about Jews which has since been deleted. Mr. Bankston replied to Owens, calling out her bigotry against Jews by saying, "Weird how when you change it to a historically marginalized group, suddenly it becomes extremely ugly instead of funny."[1] After Mr. Bankston posted this reply, he began receiving harassing replies from a neo-Nazi Proud Boy who began accusing Mr. Bankston of being Jewish. Due to persistent stereotypes about Jewish left-wing lawyers, Mr. Bankston's anonymous account is routinely assumed to be Jewish by far-right bigots, and he is routinely subject to anti-Semitic abuse directed his way.

---

[1] https://twitter.com/RespectableLaw/status/1025798481905176577

The neo-Nazi Proud Boy, whose account has since been suspended for abuse, then told Mr. Bankston, "Stop being such a Jew about it." Mr. Bankston then replied by **_quoting_** the neo-Nazi troll and attaching an unflattering photo of a Proud Boy thug decked out in body armor at a recent Proud Boy race riot as a means of mocking and deflating his insult:



A follower of Mr. Bankston's anonymous account then joined in mocking the Proud Boy who tweeted the anti-Semitic abuse at Mr. Bankston, replying, "The PB

---

[2] https://twitter.com/RespectableLaw/status/1025810554399727616

stands for peanut butter!"[3] When the Proud Boy then continued to suggest Mr. Bankston was Jewish, Mr. Bankston replied, "I'm whatever religion is going to make you fill your diaper the hardest."[4] While admittedly coarse and juvenile, Mr. Bankston felt no compunction to be polite to a member of a white supremacist terrorist group who was harassing his personal anonymous account.

Furthermore, on Archive.org, another reply can be found by one of Mr. Bankston's followers which makes it clear that Mr. Bankston was quoting the Proud Boy's abuse of "Stop being such a Jew about it," stating, "Guarantee what [the Proud Boy] actually said was "shtop."[5]



---

[3] https://twitter.com/thoughtbirdeva/status/1025833406075203591
[4] https://twitter.com/RespectableLaw/status/1025813508137672704
[5] *See* archived copy at:
https://web.archive.org/web/20190824233526if_/https://twitter.com/RespectableLaw/status/1025798481905176577

In their brief, Defendants do not tell this Court that Mr. Bankston's tweet is a quote using quotation marks, nor do they mention the other tweets by Mr. Bankston or others. Instead, they dishonestly smeared Mr. Bankston as the author of that abuse knowing it wasn't true. Indeed, the Connecticut attorney who is now working with Mr. Randazza on these cases, Jay Wolman, has been an avid follower of Mr. Bankston's anonymous account for nearly half a decade, frequently interacting with Mr. Bankston as he confronted various bigoted figures.

In fact, a year before these lawsuits began, Mr. Wolman jokingly replied to Mr. Bankston **sympathizing** with having to face this sort anti-Semitic abuse, stating to Mr. Bankston, "Funny, you don't look (((lawish)))."[6] The triple parenthesis, known as echoes, was first used as an in-group symbol by right-wing bigots to denote someone is Jewish. Echoes have been reappropriated by many Jews online in defiance of their bigoted harassers. In sum, Mr. Wolman fully understood which side of this bigoted cultural fight Mr. Bankston stood, and he offered his support. Furthermore, as will be shown below, Mr. Wolman has frequently sent unsolicited private messages to Mr. Bankston's account over the years in which he acknowledges the true meaning of

---

[6] https://twitter.com/wolmanj/status/928835473925124096

some of the tweets which have been dishonestly misrepresented in Defendants' brief, all while offering his support and supposed respect.[7]

Defendants also cynically cast doubt whether Mr. Pozner and Ms. De La Rosa "are being truthful about being concerned about anti-semitism." This a reckless aspersion on these Plaintiffs' honesty, and it is also a bad faith attempt to drive a wedge between Plaintiffs' attorneys and their clients. Thankfully, it will not work. Mr. Pozner and Ms. De La Rosa are quite aware of Mr. Bankston's feelings and background as it concerns anti-Semitism.

## II. Defendants Dishonestly Claimed Mr. Bankston Threatened Frivolous Litigation.

Defendants next accused Mr. Bankston of "threatening frivolous litigation," but this accusation is knowingly false, and given the further involvement of Mr. Wolman, it again raises serious concerns about candor with the Court.

---

[7] Mr. Wolman is well aware of Mr. Bankston's opposition to bigotry and fascism, as Mr. Wolman has often joined in on Mr. Bankston's ridicule of such figures over the years. For instance:

Mr. Wolman joining in on Mr. Bankston's mockery of right-wing media agitator Tim Pool:
https://twitter.com/wolmanj/status/1162909183785746432

Mr. Wolman joining in on Mr. Bankston's mockery of fascist propagandist Andy Ngo:
https://twitter.com/wolmanj/status/1267576254930325505

Mr. Wolman joining in on Mr. Bankston's harsh words for Rep. Buzz Patterson for encouraging the January 6th Capitol attack:
https://twitter.com/wolmanj/status/1347012152201248768

Mr. Wolman joining in on Mr. Bankston's mockery of a QAnon insurrectionist:
https://twitter.com/wolmanj/status/1078109212260085761

Mr. Wolman joining in on Mr. Bankston's mockery of sexist right-wing columnist Stephen L. Miller:
https://twitter.com/wolmanj/status/1082449462897840129

In 2019, a lawyer named Nick Rekieta had been poorly pursuing a frivolous defamation lawsuit on behalf of voice actor Vic Mignogna. The misadventures and misconduct in that lawsuit had attracted the attention of the legal community on Twitter, and for several months, dozens of members of "Law Twitter" had been chronicling what became known as the "LOLsuit." In response, Rekieta had been bullying people who were joking about his case, including those who discussed his court appearances, his bizarre GoFundMe campaign, or a dispute over a fake affidavit. Mr. Rekieta was later banned from Twitter. His client was ordered to pay a quarter million dollars in anti-SLAPP fees.[8]

Despite being aware of these events, Mr. Bankston had refrained from responding to any of Rekieta's routinely belligerent tweets about the case. However, Mr. Bankston was encouraged to tease Mr. Rekeita by none other than Jay Wolman, the Connecticut lawyer working with Randazza in these cases. Mr. Bankston responded to Mr. Wolman's private message by sending him a tweet that Mr. Bankston had posted which farcically joked about the recent events in the *Mignogna* case:

---

[8] https://en.wikipedia.org/wiki/Vic_Mignogna#Sexual_harassment_allegations



Mr. Wolman also posted a public reply to Mr. Bankston concerning the absurd *Mignogna* litigation, stating, "I was wondering when you'd finally discover this lovely bit of bad Texas lawyering."[9] In short, Mr. Wolman fully understood that Mr. Bankston

---

[9] https://twitter.com/wolmanj/status/1137117250564083720

10

was not "threatening frivolous litigation" against Mr. Rekeita, but was instead mocking Mr. Rekeita's own frivolous litigation by referencing the recent events in that case in a clowning tone. Defendants' brief omits any of these facts or any mention of Mr. Wolman's involvement with the tweet, and it dishonestly attempts to cast Mr. Bankston as a corrupt fraudster instead of a cheeky jester.

## III.    Defendants Falsely Implied Mr. Bankston is a White Supremacist.

Defendants also cited "tweets to former United States Representative Steve King urging King to impregnate Bankston's wife to 'preserve the white race.'" Defendants implicitly floated the allegation that Mr. Bankston is a white supremacist. In truth, Defendants know that Mr. Bankston was snidely mocking Rep. King, a white nationalist demagogue who was stripped of his committee assignments for spewing a horrifying racist hoax known as "The Great Replacement Theory" or "White Genocide." Rep. King tells his followers that the white race is under threat by non-white immigrants, who he considers barbarians at the gate. He encourages fellow white nationalists to have as many children as possible to combat this supposed "White Genocide." Mr. Bankston's farcical and mocking tweets were written from the perspective of a panicked infertile follower who had taken Rep. King's warnings to the point of absurdity. The tweets are meant to embarrass and shame Rep. King's hideous rhetoric, in which Rep. King claims, "A nation which expects its biological survival from immigrants won't survive." These satirical tweets were widely enjoyed and applauded for their ridicule of Rep. King.

Once again, Mr. Wolman posted a public tweet on his account showing that he knew Mr. Bankston was mocking Rep. King for his racist views:



In addition, Mr. Wolman sent Mr. Bankston multiple unsolicited private messages about his gag tweets directed towards Rep. King's racist rants. A year before these lawsuits were filed, Mr. Wolman sent Mr. Bankston the following messages recognizing the Steve King gag and its intent:

---

[10] https://twitter.com/wolmanj/status/964621575139004418



Mr. Wolman also sent another unsolicited message to Mr. Bankston's account in 2020 praising the 2017 tweets to Rep. King, while also praising mockery of Rep. King by investigative journalist Ken Klippenstein:



In short, these tweets were adult comedy meant to mock a white nationalist leader on Mr. Bankston's personal anonymous account, and Defendants' counsel understood and praised the purpose of those tweets. Plaintiffs' counsel expects that this Court and its staff, much like Mr. Bankston's wife, will likely roll their eyes at Mr. Bankston's ridiculous tweets to Rep. King. But Defendants have done Mr. Bankston an unjust disservice by floating the implication that Mr. Bankston is a white nationalist when they know the exact opposite is true.

## IV. Defendants Distorted Tweets Expressing Moral Outrage over Celebrities Excusing the War Crimes of the Bush Administration.

With no context, Defendants cited a single tweet taken from a viral thread Mr. Bankston wrote, which was a satirical and Swiftian re-wording of a statement[11] given

---

[11] https://twitter.com/TheEllenShow/status/1181395164499070976

by Ellen DeGeneres after she was videotaped sitting with former president George W. Bush at a Cowboys game. In the thread, former Subway spokesperson and sexual predator Jared Fogle was substituted as the guest with Ms. DeGeneres:



Mr. Bankston's tweets[12] went viral after they were retweeted by several prominent political journalists and activists. The tweets explore the strange moral incongruity of excusing the horrific war crimes committed by the Bush presidency compared to other crimes. Defendants isolated a single tweet with any context that stated: "Because I am kind to everybody, and that's true whether you brush your hair differently than me, or if you like pineapple on pizza, or if you rape children."

Mr. Bankston's grim point was that many people would feel the same distaste at a celebrity being self-righteous about a friendship with Jared Fogle as they do about a friendship with George W. Bush, who caused the slaughter and starvation of nearly a million Iraqi civilians in an illegal war borne on the wings of a lie. Perhaps the metaphor is clumsy and controversial, but it struck a chord with many people for whom the greatest moral atrocity of their adult lives has been so thoroughly whitewashed. Once again, Mr. Randazza's colleague Jay Wolman clearly understood the Swiftian nature of Mr. Bankston's tweets about DeGeneres' appearance with Bush at the Cowboys game, replying to Mr. Bankston, "We all know you're a Browns fan."[13]

## V.  Defendants Misrepresent or Ignore the Context of Other Various Tweets.

### A.  Tweets to neo-Nazi organizer Tim Gionet.

Defendants cite a tweet claiming that Mr. Bankston harassed "a third party" named "Mr. Alaska." Defendants are referring to Tim Gionet, aka "Baked Alaska," a

---

[12] https://twitter.com/RespectableLaw/status/1181467903155212288
[13] https://twitter.com/wolmanj/status/1181526701223956480

white supremacist organizer of the 2017 "Unite the Right" neo-Nazi rally in Charlottesville which resulted in the murder of an anti-fascist activist. Mr. Gionet is widely reviled as an anti-Semitic conspiracy theorist and neo-Nazi leader.[14] Defendants chastise Mr. Bankston's use of the term "cuck" in ridiculing Mr. Gionet. "Cuck" was popularized in far-right political discourse in large part by Mr. Gionet, using the term to attack both liberals as well as conservatives who were viewed as insufficiently militant or racist. Again, Mr. Bankston felt no compunction to act polite towards this neo-Nazi terrorist on his personal anonymous account.

### B. Tweet criticizing sexual assault by Kobe Bryant.

Defendants also cited a tweet from Mr. Bankston stating, "There won't be a massive monetary settlement for rape after we drink together if that's what you're getting at." Defendants cut off the context of the reply, but Mr. Bankston's tweet was actually a harsh condemnation of the rape committed by the late NBA star Kobe Bryant, the subject of the underling tweet.

### C. Tweets examining the meaning of terms used by Brett Kavanaugh in his confirmation hearings.

Defendants also cited a tweet from Mr. Bankston discussing "anal sex," but those series of tweets were an in-depth examination of the terms used by Supreme Court nominee Brett Kavanaugh, including phrases such as "got boofed" and "Devil's Triangle."[15] Mr. Bankston's tweets examined the definition rankings on

---

[14] https://en.wikipedia.org/wiki/Baked_Alaska_(activist)
[15] https://twitter.com/RespectableLaw/status/1045936980872310784

UrbanDictionary.com, a dictionary of colloquial and often raunchy phrases in pop culture. The premise of Mr. Bankston's tweets was that Kavanaugh was not being honest about what those terms meant.

### D.    Tweet expressing bewilderment at the words used by a bizarre hologram of the late Bob Kardashian.

Defendants also cite a Tweet regarding a hologram of Bob Kardashian created by Kanye West for Kim Kardashian's birthday. Mr. Bankston's tweet quotes the statements actually said by the bizarre hologram, noting that it was unbelievable that Mr. West made a hologram in which Bob Kardashian discusses "pussy farts." The hologram was widely discussed in the media and on Twitter that day. Mr. Bankston believes it is fine to talk about how strange that hologram was on his personal anonymous account.

### E.    Tweet criticizing comments of Louis CK regarding gun control activism.

Defendants also cited a tweet from Mr. Bankston mocking Louis CK's criticism of gun control activism by the younger generation. As noted in press accounts on December 31, 2018, Louis CK made a "critique on the younger generation, saying that they should be busy 'finger-fucking each other and doing Jell-O shots,'" instead of pursuing political activism.[16] Those comments became fodder for criticism across Twitter. Mr. Bankston retorted to Louis CK's denigration of student activism with the

---

[16] https://www.okayplayer.com/culture/what-did-sasheer-zamata-say-about-louis-c-k-parkland-joke.html

tongue-in-cheek reply, "Really think it's myopic of Louis CK to think youngsters can't subvert dominant paradigms while also doing jello shots and finger banging." This was hardly an original sentiment, as the exact same retort was being made across Twitter, including by the nation's most prominent entertainers. SNL star Sasheer Zamata received wide accolades in the media for the same takedown of Louis CK's comments, stating that Louis CK believes the younger generation "shouldn't be spending their time talking to Congress about gun control. Instead they should be 'finger-fucking' each other. But who's to say they're not? They can do both!"[17] Zamata noted the younger generation seems to "know how to separate sex from work, which I understand is a hard concept for Louie to grasp."[18] Similarly, comedian Patton Oswalt made a similar retort in a viral tweet, stating, "hate when i'm trying to finger-bang my gf and do jell-o shots and i get gunned down in the halls of my school fml."[19] Dark comedy to be sure, but these retorts are also filled with moral disdain for Louis CK's cavalier dismissal of lethal gun violence and the younger generation's desire not to be murdered in their schools.

###### F.    Tweet regarding the Secret Service.

Defendants cite a tweet in which Mr. Bankston wrote, "I have zero respect for the Secret Service. Fuck every single one of those guys. If you think there are good Secret Service agents, sorry, you are wrong." After half a decade posting 14,000

---

[17] https://www.vulture.com/2019/01/louis-ck-leaked-standup-sasheer-zamata.html
[18] *Id.*
[19] https://twitter.com/pattonoswalt/status/1079819845816832000

tweets, there are a bound to be a few regrets, and this is indeed one tweet that Mr. Bankston regrets in hindsight because of its strident and absolutist nature. Mr. Bankston does not subscribe to an "ACAB" philosophy, but he does have disdain for the culture inside the U.S. Secret Service, both due to professional experience and media disclosures. However, the tweet was not fair. Mr. Bankston was emotionally caught up in a horrendous summer involving widespread police violence and had recently read ugly revelations about the USSS. While it is certainly Mr. Bankston's right to hold an opinion about the rot inside the USSS, it was imprudent to cast a net over the entire agency. It was a hasty overreaction which he does regret.

### G.  Tweet regarding attendees of Trump's August 2020 White House speech.

Defendants cite a tweet Mr. Bankston posted in response to former White House Press Secretary Ari Fleischer about protestors confronting Trump donors, stating, "Because fuck them, that's why." As Mr. Bankston said in the same tweet, "There's a lot of sad rubes out there voting for Trump who I mostly pity, but I don't have an ounce of respect or sympathy for some well-heeled old couple attending Trump's White House speech."[20] The White House speech was a donor event for VIPs. It is Mr. Bankston's sincerely held belief that the aristocratic and influential drivers of Donald Trump's campaign are deplorable people. Mr. Bankston's abrasive tweet of "Because fuck them, that's why," is a quote of a punchline from a famous David

---

[20] https://twitter.com/RespectableLaw/status/1299466942181408770

Chappelle routine, as shown in the replies featuring gifs of Chappelle delivering the punchline.[21] In the heat of 2020 campaign, after four years living under the "Fuck Your Feelings / Trump that Bitch!" regime, Mr. Bankston was admittedly coarse. But while Mr. Bankston is angered by far-right reactionary politics, he is able to keep those opinions out of the courtroom.

In sum, the posts on Mr. Bankston's personal anonymous Twitter account are irrelevant and collateral to the motion. Most of the posts have been thoroughly misrepresented, while others were merely made in an indecorous comic style. Yet many of the tweets have been so dishonestly portrayed, with actual knowledge of their falseness by Defendants' counsel, that it implicates the duty of candor to the Court. Defendants' attorneys have disregarded reality, their own statements, and any sense of propriety by falsely alleging that Mr. Bankston is a white supremacist anti-Semite who threatened a party with frivolous litigation.

## VI.     Defendants Falsely Claimed Mr. Bankston was Dishonest with the Court about the Merrell/Postle Confrontation.

Addressing the abusive phone call with Mr. Postle and Ms. Merrell, Defendants falsely claim "it is interesting that Bankston does not inform the court of his own part in that non-event." Defendants also continue to maintain that Ms. Merrell is a liar, and

---

[21] *See, e.g.,* https://twitter.com/BrydonBlack/status/1299468675225845760;
https://twitter.com/von_matterhorn/status/1299621864889778176;
https://twitter.com/GangofH/status/1299520575845605376;
https://twitter.com/ICrushAlot21/status/1299486284042379266

falsely state that "it is interesting that Bankston does not address what the lie is." These attacks on Mr. Bankston's honesty are truly bizarre considering that page 25-26 of Plaintiffs' brief discusses Mr. Bankston's role in those events at length. The brief also addresses what Mr. Randazza characterizes as Ms. Merrell's "lie," thoroughly explaining that Mr. Bankston did in fact deny to Mr. Randazza any interest in representing Postle because Ms. Merrell had never mentioned Postle's name. Mr. Bankston explained how Ms. Merrell was not lying about contacting him about the poker case, and the Plaintiffs' brief showed how "Mr. Randazza profanely berated Ms. Merrell over a simple misunderstanding." (Pltf Brief, p. 26). Yet Mr. Randazza is still calling Ms. Merrell a liar over this misunderstanding, even though it was clearly explained in both Plaintiffs' brief and in an email sent to Mr. Randazza on March 24, 2021, in which Plaintiffs' counsel likewise explained the misunderstanding.[22]

Ultimately, Mr. Randazza would have this Court believe he is innocent across the board while concluding that Mr. Bankston is a liar, Mr. Postle is a liar, Ms. Merrell is a liar, Florida attorney Paul Berger is a liar, and the distinguished arbitrator Stephen Haberfeld "should not be trusted," calling him "a biased and disgruntled arbitrator shouting into the wind" who was "pursuing his own interest."

---

[22] Exhibit 1, March 24, 2021 email to Marc Randazza.

## VII.  Defendants Falsely Claimed Plaintiffs' Counsel Lied to the Court about James Grady.

Defendants also tell this Court that "it is obvious [Plaintiffs' counsel] are lying" about Mr. Randazza's interactions with James Grady, the person who provided him confidential data from his adversary. But Plaintiffs' counsel merely provided the actual emails showing the communications between Grady and Randazza. It is frankly shocking that Defendants would claim there was nothing to "suggest there was anything improper in how [the documents] were obtained" given Mr. Grady's coy remarks about the information not being obtained in the normal course of business and the obvious workshopping on what to say to a judge. Even now, Mr. Randazza seems to believe it would be proper for him to obtain confidential information from an adversary that was stolen by a "disgruntled [corporate] employee" or a "jilted lover."[23] It is absolutely not permissible to do so, which should give this Court grave concern about what else Mr. Randazza believes is proper.

## VIII.  Defendants Falsely Claimed Plaintiffs' Counsel Relied on Statements from Don Juravin.

Defendants also falsely tell this Court that "Plaintiffs rely on statements from Don Juravin." (Def. Reply, p. 12). There is no evidence or statements from Don Juravin relied on by Plaintiffs in their brief. Plaintiffs' counsel have never spoken to Don Juravin, never cited or obtained any evidence from him, and they are in no position to address Mr. Randazza's attacks on his character. Instead, Plaintiffs relied on

---

[23] Plaintiffs' Opposition Brief, p. 16.

testimony from Florida attorney Paul Berger, a reputable litigator in good standing. Plaintiffs' counsel spoke with Mr. Berger before submitting his testimony and found him entirely credible. Plaintiffs' counsel would not have offered his testimony if they had any reason to suspect he might not be truthful. Indeed, Mr. Berger has nothing to gain, but potentially much to lose if Mr. Randazza were to seek reprisal, as he threatened to do with Mr. Postle.

## CONCLUSION

Despite currently remaining in contempt of numerous discovery orders and failing to provide any discovery responses since remand two months ago on June 4th, and despite not responding to any of the pending sanctions motions about to be taken up by the Court, Defendants' counsel found the time to draft a lengthy brief in support of Mr. Randazza while also conducting research into a personal anonymous Twitter account belonging to one of the Plaintiffs' attorneys, and they did it in less than seven days. Defendants have worked harder to dishonestly smear their opposing counsel than they have doing anything else in this case since remand (which is effectively zero). Most importantly, their dishonest attacks on Mr. Bankston have violated their duty of candor.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066

WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021 the forgoing document was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

# Exhibit 1

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | Marc Randazza |
| **Subject:** | Postle confusion |
| **Date:** | Wednesday, March 24, 2021 6:01:00 PM |

I need to circle back on your question about this Mike Postle poker case. I can confirm for you again that I am not involved in that case and not representing Mr. Postle. But at the time of your call, I didn't know the guy's name, and the woman you referred to has a similar name as a woman who approached me about a case a few months ago that I rejected. So I thought you were talking about another client entirely.

But about a week or two before you called me, Alexandrea Merrill called me and asked me if I would be interested in talking to a poker player accused of cheating. She laid out some basic facts, but she didn't tell me the guy's name. I didn't even know a suit had already been filed. I had some casual interest in the facts, but I wanted to do some legal research on it. I can tell you now that I declined any representation, but at the time you spoke to Ms. Merrill, she believed I had interest in the case and might take on Postle as a client. I won't be doing that, but that's the source of the confusion.

FYI, I should also let you know that Ms. Merrill is pretty bothered at the way you talked to her and Mr. Postle. I'm sure you had your reasons to be upset with her, but she isn't the kind of person who is used to being berated. And she is close to one of my clients, so obviously that can makes things difficult.

Also, while we're on the subject of language, Bill asked that I address with you the anal date rape metaphor you used in one of your first letters to us. As far it goes, I personally have a dark and even profane sense of humor, but even I'm not into date rape metaphors. But I have to remind you that you don't know Bill at all. He is a Boy Scout. He is not ok with that sort of thing. That's something you need to be aware of.

Mark Bankston
Farrar & Ball, LLP

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 55927029
Status as of 8/3/2021 1:56 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/2/2021 4:16:26 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/2/2021 4:16:26 PM | SENT |
| William Ogden | | bill@fbtrial.com | 8/2/2021 4:16:26 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/2/2021 4:16:26 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/2/2021 4:16:26 PM | SENT |

**8/9/2021 8:27 AM**
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Jessica A. Limon**

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

---

### NEIL HESLIN'S 2nd SUPPLEMENTAL BRIEF ON DEFAULT SANCTIONS CONCERNING AUGUST 6, 2021 ORDERS IN *LAFFERTY*

---

Plaintiff files this brief solely to inform the Court of two sanctions orders issued by *Lafferty* court on August 6, 2021. The first order describes a "frightening" course of conduct by InfoWars' attorneys in disclosing confidential deposition testimony:

> Free Speech Systems LLC, Infowars LLC, Infowars Health LLC, and Prison Planet TV LLC (Infowars), filed a motion to depose Hillary Clinton, using deposition testimony that had just been designated as "Confidential-Attorneys Eyes Only," and completely disregarding the court ordered procedures...In short, Infowars, having advocated for a court ordered protective order, filing no less than three versions, having recited in writing the good cause bases for the issuance of the protective order, and having no objection to the plaintiffs' proposed modification, now takes the absurd position that the court ordered protective order circumvents the good cause requirements of Practice Book 13-5, did not need to be complied with, and should not be enforced by the court. This argument is frightening. Given the cavalier actions and willful misconduct of Infowars in filing protected deposition information during the actual deposition, this court has grave concerns that their actions, in the future, will have a chilling effect on the testimony of witnesses who would be rightfully concerned that their confidential information, including their psychiatric and medical histories, would be made available to the public. The court will address sanctions at a future hearing.[1]

---

[1] Exhibit 1, August 6, 2021 Order in *Lafferty* concerning Clinton deposition (emphasis added).

On the same day, the *Lafferty* court issued a separate sanctions order regarding Defendants' continuing refusal to comply with discovery. That order stated in relevant part:

> There is no excuse for the defendants' disregard of not only their discovery obligations, but the two court orders. The court finds that the failure to comply with the production request has prejudiced the plaintiffs their ability to both prosecute their claims and conduct further depositions in a meaningful manner.[2]

The plaintiffs in *Lafferty* have requested default sanctions, noting that in 2019, Judge Bellis warned that "if there is continued obfuscation and delay and tactics like I've seen up to this point, I will not hesitate after a hearing and an opportunity to be heard to default the Alex Jones defendants if they from this point forward continue with their behavior with respect to discovery."[3] The *Lafferty* court's next hearing is August 24, 2021, one week after this Court's hearing on default sanctions.

Respectfully submitted,
**KASTER LYNCH FARRAR & BALL, LLP**

_____
MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, TX 77008
713.221.8300 Telephone
713.221.8301 Fax

---

[2] Exhibit 2, August 6, 2021 Order in *Lafferty* concerning discovery abuse.
[3] *See Heslin* Supplemental Brief in Support of Default Sanctions, Exhibit 6, June 18, 2019 Transcript in *Lafferty v Jones*, p. 9.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2021 the forgoing brief was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

ORDER    421277

DOCKET NO: UWYCV186046436S

LAFFERTY, ERICA Et Al
   V.
JONES, ALEX EMRIC Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF WATERBURY
   AT WATERBURY

8/5/2021

<u>ORDER</u>

ORDER REGARDING:
07/06/2021 394.00 MOTION FOR ORDER

The foregoing, having been considered by the Court, is hereby:

ORDER:

By written stipulation, and unless the court orders otherwise, parties can agree to modify discovery procedures. See Connecticut Practice Book Section 13-32. In these consolidated cases, the defendants Alex Jones, Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC ("the Jones defendants") did just that. Additionally, they took their agreement with the plaintiffs a step further and asked the court to issue a protective order pursuant to Practice Book Section 13-5 and approve their joint discovery stipulation. The Jones defendants filed no less than three versions of a proposed protective order for the court's approval, see entry numbers 177,181,183, and 185, asserting that they were asking for the same discovery protection that would have been in place in federal court had the cases not been remanded back to state court. They indicated, correctly, that discovery materials are not filed with the court and as such are not ordinarily available to the public. The court ultimately approved the stipulation of the parties, which complied with all relevant requirements of the Connecticut Practice Book and which, inter alia, set forth the procedure by which sensitive confidential information obtained through pretrial discovery would be handled and, if necessary, filed with the court. The order provided that of all or part of a deposition transcript could be designated as confidential by counsel for the deponent or designated party, by requesting such treatment on the record at the deposition or in writing no later than thirty days after the date of the deposition. It set forth simple procedures by which the designation of "confidential" could be subsequently challenged, and how confidential information could be filed with the court. Importantly for the purposes of this motion, the protective order clearly prohibited discovery information designated as confidential from being filed with the court until such time that the court had ruled on the designating party's motion under Practice Book Section 11-20A. The Jones defendants did not oppose the plaintiffs' June 8,2021 motion to modify the protective order, which recited a good cause basis for the modification and which added a "Confidential- Attorneys Eyes Only" designation to the above mentioned procedures. Based upon the written motions filed by the plaintiffs and the Jones defendants, the court, in entering the protective orders, found good cause for both the issuance of the original protective order and its modification. In support of the motion for protective order, the Jones defendants identified their privacy interests in sensitive proprietary information including proprietary business, financial, and competitive information that they maintain as trade secrets, proprietary business and marketing plans, marketing data, web analytics, sales analytics, and/or other web traffic data, and marketing data or analytics. They referred to the "unique" business model that makes them competitive and successful. The plaintiffs, in support of the modification to the protective order, identified their privacy interests in their medical histories, psychiatric records,and private social media accounts. In the midst of taking the first deposition of a plaintiff, the defendants Free Speech Systems LLC, Infowars LLC, Infowars Health LLC, and Prison Planet TV LLC (Infowars),filed a motion to depose Hillary Clinton, using deposition testimony that had just been designated as "Confidential-Attorneys Eyes Only," and completely disregarding the court ordered procedures. At no point prior to filing the Clinton motion did Infowars profess ignorance of the procedures they had proposed and which were court ordered to be followed, nor have they since taken

any steps to correct their improper filing. If Infowars was of the opinion that the plaintiffs' designation was unreasonable and not made in good faith, the solution was to follow the court ordered procedure to challenge the designation, not to blatantly disregard it and make the confidential information available on the internet by filing it in the court file. The court rejects Infowars' baseless argument that there was no good cause to issue the protective orders, where both sides recited, in writing, detailed justification for a good cause basis. In short, Infowars, having advocated for a court ordered protective order, filing no less than three versions, having recited in writing the good cause bases for the issuance of the protective order, and having no objection to the plaintiffs' proposed modification, now takes the absurd position that the court ordered protective order circumvents the good cause requirements of Practice Book 13-5, did not need to be complied with, and should not be enforced by the court. This argument is frightening. Given the cavalier actions and willful misconduct of Infowars in filing protected deposition information during the actual deposition, this court has grave concerns that their actions, in the future, will have a chilling effect on the testimony of witnesses who would be rightfully concerned that their confidential information, including their psychiatric and medical histories, would be made available to the public. The court will address sanctions at a future hearing.

Judicial Notice (JDNO) was sent regarding this order.

421277

_____

Judge: BARBARA N BELLIS

This document may be signed or verified electronically and has the same validity and status as a document with a physical (pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the Connecticut General Statutes and Connecticut Practice Book Section 4-4.

ORDER   421277

DOCKET NO: UWYCV186046436S

LAFFERTY, ERICA Et Al
   V.
JONES, ALEX EMRIC Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF WATERBURY
   AT WATERBURY

8/6/2021

<u>ORDER</u>

ORDER REGARDING:
07/27/2021 428.00 MOTION FOR ORDER

The foregoing, having been considered by the Court, is hereby:

ORDER:

On November 6,2020, the defendants Alex Jones, Infowars LLC, Free Speech Systems LLC,, Infowars Health LLC and Prison Planet TV LLC (the defendants) filed a motion for protective order, objecting to the notice of videotaped deposition of Melinda Flores, the current manager of accounting at Free Speech System LLC (FSS) and objecting to each of the production requests served along with the notice of deposition. Production Request #7 asked for "(a)ny and all subsidiary ledgers for each account listed in the Trial balances produced in response to Request No. 6 above." The objection to Production Request #7 stated as follows: "This request is overbroad, irrelevant, and disproportionate to the needs of the case. This request is unrelated to any claim or defense raised in the action or the elements thereof. The trial balances of FSS will not lead to the discovery of admissible evidence and are not themselves admissible for any purpose. It is unduly burdensome as it requires digging through eight years of accounting. This request serves only to invade the privacy of the deponent and is harassing and oppressive to the deponent." The defendants did not raise any objection that the request itself, or the term subsidiary ledgers, was in any way confusing or unclear, which is a typical basis for a discovery objection. The court overruled the objection on April 29,2021. On May 6, 2021, the court ordered the deposition of Flores to take place by June 4, 2021 and ordered the documents to be produced by the close of business on May 14,2021.The court stated in writing that failure to comply with the order may result in sanctions. The subsidiary ledger information also referred to as account detail was easily accessible to Flores, by clicking on each general account. Despite the court orders,and although the information exists, is maintained by FSS, and could have been produced by Flores as was required by the court orders, the documents were not produced. The court rejects the statement of the accountant retained by FSS that FSS does not "maintain or utilize" subsidiary ledgers as not credible in light of the circumstances. There is no excuse for the defendants' disregard of not only their discovery obligations, but the two court orders. The court finds that the failure to comply with the production request has prejudiced the plaintiffs their ability to both prosecute their claims and conduct further depositions in a meaningful manner.

Judicial Notice (JDNO) was sent regarding this order.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 56103006
Status as of 8/9/2021 11:24 AM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/9/2021 8:27:32 AM | SENT |

Associated Case Party: Free Speech, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/9/2021 8:27:32 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/9/2021 8:27:32 AM | SENT |
| William Ogden | | bill@fbtrial.com | 8/9/2021 8:27:32 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/9/2021 8:27:32 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/9/2021 8:27:32 AM | SENT |

8/17/2021 11:32 PM

**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Nancy Rodriguez**

D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, and | § | 459th  DISTRICT COURT |
| OWEN SHROYER, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER, and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | 459th  DISTRICT COURT |
| | § | |
| *Defendants.* | § | |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| | § | 459th  DISTRICT COURT |
| *Defendants.* | § | |
| | § | |

---

## SUPPLEMENT TO MOTION FOR *PRO HAC VICE* ADMISSION OF MARC J. RANDAZZA

---

Defendants hereby supplement the Motion for *Pro Hac Vice* Admission of Marc J. Randazza, as Mr. Randazza has a continuing duty to update the Court on material elements of his application.

Regarding Mr. Randazza's list of admissions previously provided to the Court, Mr. Randazza hereby provides the following updated information:

1.     On August 3, 2021, Mr. Randazza was admitted *Pro Hac Vice* in the United States District Court for the Southern District of New York in *Maud Maron v. The Legal Aid Society and Association of Legal Aid Attorneys*, Case No. 1:21-cv-05960 (S.D.N.Y).

2.     On August 5, 2021, Mr. Randazza was approved for admission to practice before the Bar of the United States District Court for the District of Columbia.  His official admission is scheduled for September 13, 2021.

3.     On August 12, 2021, Mr. Randazza was admitted *Pro Hac Vice* in the United States District Court for the Southern District of New York in *Cheng v. Guo*, Case No. 1:20-cv-05678 (S.D.N.Y.).

Dated August 17, 2021.          Respectfully submitted,

REEVES LAW, PLLC

*/s/ Bradley J. Reeves*
Bradley J. Reeves
State Bar No. 24068266
702 Rio Grande Street, Suite 203
Austin, Texas 78701
Tel: (512) 827-2246
Fax: (512) 318-2484
Email: brad@brtx.law

Marc J. Randazza (*pro hac vice pending*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Fax: (702) 297-6584
Email: ecf@randazza.com

ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2021, the forgoing document was served upon all counsel of record via electronic service.

<div align="right">

*/s/ Bradley J. Reeves*
Bradley J. Reeves

</div>

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56404794
Status as of 8/19/2021 4:53 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/17/2021 11:32:44 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 8/17/2021 11:32:44 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 8/17/2021 11:32:44 PM | SENT |
| William Ogden | | bill@fbtrial.com | 8/17/2021 11:32:44 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/17/2021 11:32:44 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 8/17/2021 11:32:44 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/17/2021 11:32:44 PM | SENT |

No. D-1-GN-18-001835

**8/18/2021 2:58 PM**
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Victoria Benavides**

| NEIL HESLIN | : | IN THE DISTRICT COURT OF |
| | : | |
| vs. | : | |
| ALEX E. JONES, | : | TRAVIS COUNTY, TEXAS |
| INFOWARS, LLC, FREE SPEECH | : | |
| SYSTEMS, LLC, AND OWEN SHROYER | : | 459TH JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Defendant (s) by and through their attorney(s) of record: **Bradley Reeves**
To other party/parties by and through their attorney(s) of record:

You will please take notice that twenty (20) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

**Contemporary Care Psychiatric Centers of Excellence (Medical/Psychiatric)**
    **84 Hospital Drive Danbury, CT 06810**
**Contemporary Care Psychiatric Centers of Excellence (Billing)**
    **84 Hospital Drive Danbury, CT 06810**
**Mueller, Carl, F., M.D., MPH, M.S., F.A.P.A. (Medical/Psychiatric)**
    **999 Summer Street, Suite #200 Stamford, CT 06905**
**Mueller, Carl, F., M.D., MPH, M.S., F.A.P.A. (Billing)**
    **999 Summer Street, Suite #200 Stamford, CT 06905**
**Crouch, Michael, W., LCSW (Medical/Psychiatric)**
    **999 Summer Street, Suite #200 Stamford, CT 06905**
**Crouch, Michael, W., LCSW (Billing)**
    **999 Summer Street, Suite #200 Stamford, CT 06905**

before a Notary Public for: **Discovery Resource  713-223-3300  Fax 713-228-3311**
            **1511 West 34th Street Houston, TX 77018**
or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court.  Notice is further given that request is hereby made as authorized under Rule 200, Texas Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:

**Neil Heslin**

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

*Mark D. Bankston*
<u>with permission</u>
**Kaster, Lynch, Farrar & Ball, LLP**
**1117 Herkimer Street**
**Houston, TX 77008**
**713-221-8300    Fax 713-221-8301**
Attorney for Plaintiff
SBA # 24001430

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, EMail and/or certified mail, return receipt requested, UPS, Lone Star overnight, or Federal Express, on this day.

Dated:  August 12, 2021                    by:  *Cris Garza*

Order No.: 93489

No. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | : | IN THE DISTRICT COURT OF |
| | : | |
| | : | |
| vs. | : | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, | : | |
| INFOWARS, LLC, FREE SPEECH | : | |
| SYSTEMS, LLC, AND OWEN SHROYER | : | 459TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Custodian of Records for:
Records Pertaining To: **Neil Heslin**
Type of Records: **Any and all medical and psychiatric records from 12/14/2012 to the present, including but not limited to, any and all reports, notes, tests, test results, diagnoses, prognoses, office records, clinic records, therapy records, and any other type of record or data that is produced, recorded, or preserved on film or transparencies or that is magnetically or electronically recorded**

1.   Please state your full name.

   Answer: _____

2.   Please state by whom you are employed and the business address.

   Answer: _____

3.   What is the title of your position or job?

   Answer: _____

4.   Are the medical/psychiatric records, outlined in the subpoena duces tecum, pertaining to the above-named person, in your custody or subject to your control, supervision or direction?

   Answer: _____

5.   Are you able to identify these medical/psychiatric records as the originals or true copies of the originals?

   Answer: _____

6.   Please hand to the Officer taking this deposition copies of the medical/psychiatric records mentioned in Question No. 4. Have you complied? If not, why?

   Answer: _____

7.   Are the copies which you have handed to the Officer taking this deposition true and correct copies of all such medical/psychiatric records?

   Answer: _____

8.  Were such medical/psychiatric records kept in the regular course of business of this facility?

Answer: _____

9.  Please state whether or not it was the regular course of business of the above mentioned facility for a person with knowledge of the acts, events, conditions, opinion, or diagnoses, recorded to make the record or to transmit information thereof to be included in such record.

Answer: _____

10.  Were the medical/psychiatric records made by nurses, doctors and other employees or representatives made at or near the time when the acts, events, conditions, courses of treatment, diagnoses and other information contained therein occurred, were observed or rendered, or made reasonably soon thereafter?

Answer: _____

_____

WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.  I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires: _____

No. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | : | IN THE DISTRICT COURT OF |
| | : | |
| | : | |
| vs. | : | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, | : | |
| INFOWARS, LLC, FREE SPEECH | : | |
| SYSTEMS, LLC, AND OWEN SHROYER | : | 459TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Custodian of Records for:
Records Pertaining To: **Neil Heslin**
Type of Records: **Any and all billing records from 12/14/2012 to the present, including but not limited to, any and all itemized billing statements including the CPT codes, collection reports, records showing any payments, charges, credits and/or adjustments, and any other type of record or data that is produced, recorded, or preserved on film or transparencies or that is magnetically or electronically recorded**

1. State your full name, occupation and official title.

   Answer: _____

2. Please state by whom you are employed and the business address.

   Answer: _____

3. Are the billing records, outlined in the subpoena duces tecum, pertaining to the above-named person, in your custody or subject to your control, supervision or direction?

   Answer: _____

4. Are you able to identify these billing records as the originals or true and correct copies of the originals?

   Answer: _____

5. Please hand the Officer taking this deposition copies of the billing records mentioned in Question No. 3. Have you complied? If not, why?

   Answer: _____

6. Are the copies which you handed to the Officer taking this deposition true and correct copies of all such billing records?

   Answer: _____

7. Are such billing records a permanent part of the records of this facility?

   Answer: _____

8.  Were such billing records kept in the regular course of business of this facility?

Answer: _____

9.  Please state whether or not it was the regular course of business of the above mentioned facility for a person with knowledge of the acts, events, conditions, opinions, diagnoses, recorded to make the record or to transmit information thereof to be included in such a record.

Answer: _____

10.  Were the entries on these billing records made at or shortly after the time of the transaction on these entries?

Answer: _____

11.  State the full amount of the charges in the treatment of the above-named person.

Answer: _____

12.  State whether or not such charges are reasonable in amount for like or similar services rendered in the vicinity in which they were incurred.

Answer: _____

13.  State whether or not these charges were made in connection with the medically necessary treatment of the above-named person.

Answer: _____


_____

WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.  I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 20_____.


_____

NOTARY PUBLIC

My Commission Expires: _____

8/18/2021 2:10 PM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Chloe Jimenez**

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENT TO MOTION FOR PRO HAC VICE ADMISSION

Defendants have filed a supplement which discusses Mr. Randazza's pro hac vice admissions this month in *Maron v. The Legal Aid Society* and *Cheng v. Guo*, both pending before Judge Katherine Failla of the Southern District of New York. Plaintiffs would not normally respond concerning these unopposed applications[1] except that Mr. Randazza's statements in those applications are worrying.

Mr. Randazza's affidavits to Judge Failla were not forthright. Mr. Randazza submitted identical affidavits in both cases which stated:

> Applicant has never been disbarred or denied admission or readmission by any court, except that Applicant was denied admission pro hac vice in the Connecticut Superior Court while disciplinary proceedings related to the matters described below were pending.[2]

This representation is misleading, as it fails to disclose that Mr. Randazza was *twice* denied admission pro hac vice in the Connecticut Superior Court in separate applications over a year apart under different circumstances. As Mr. Randazza had argued in his second application to the *Lafferty* court in 2020, he had "fully cooperated with every jurisdiction," and "[h]aving successfully completed [his] Nevada discipline, it should no longer stand as a barrier to admission."[3] Mr. Randazza emphasized the changed circumstances, noting that every "agency to issue a

---

[1] Apart from Mr. Randazza's statements discussed herein, the admissions are not informative to this Court's decision. In both cases, Mr. Randazza made unopposed applications which were granted the following day. "Although discretion in the matter of pro hac vice admission is formally vested in the trial judge, in practice admission becomes an issue primarily because the opposing party makes it one." GDMULTILIT § 4:6, Denial of pro hac vice admission.

[2] Exhibit 1, Randazza's Affidavit seeking admission in *Cheng v. Guo*, p. 2.
[3] Exhibit 2, Randazza's Second Affidavit seeking admission in *Lafferty v. Jones,* p. 1-2.

determination in response to the Nevada state discipline has either declined to take action, stayed all proceedings, or issued a stayed suspension or probation, or has readmitted [him]."[4] Yet the *Lafferty* court also denied the second application, noting that "[i]n light of the applicant's recent, serious disciplinary history, the court, even having considered the current circumstances as set forth in the new application and affidavits, declines to extend the privilege of pro hac admission to Attorney Randazza."[5]

Not only did Mr. Randazza fail to disclose that he has been denied pro hac vice admission in Connecticut twice, but he failed to even identify the case in any way for the court. Without even knowing the case where his admission was denied, the court could not assess that denial, nor learn that there were actually two denials and an ongoing controversy. Mr. Randazza's affidavits to Judge Failla were, at best, misleading and evasive.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008

---

[4] *Id.*, p. 1
[5] *See* Plaintiffs' Response to Motion for Pro Hac Vice Admission, Exhibit 2, July 7, 2020 Order Denying Pro Hac Vice in *Lafferty v. Jones.*

713.221.8300 Telephone
713.221.8301 Fax

### **CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2021 the forgoing document was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
```
LOGAN CHENG f/k/a Shuiyan Cheng, an   :
individual,                   :   Case No. 1:20-cv-05678-KPF
                            :
             Plaintiff,     :
                            :   **ATTACHMENT TO MOTION**
     -against-         :   **FOR ADMISSION *PRO HAC***
                            :   ***VICE* OF MARC J. RANDAZZA**
WENGUI GUO, an individual    :
                            :
             Defendant.   :
```
-----------------------------------------------------------x
```

I, Marc J. Randazza ("Applicant"), hereby state and depose as follows:

Applicant is licensed in the following jurisdictions, including federal courts and is an active member in good standing in each of those jurisdictions as follows: SEE ATTACHED LIST, **Exhibit 1**.

Applicant has never been convicted of a felony.

Applicant is a resident of the State of Nevada and maintains an office address at:
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

Applicant earned his J.D. in 2000 from Georgetown University Law Center, a Master of Arts in Mass Communications (MAMC) in 2003 from the University of Florida, and an LL.M. in International Intellectual Property Law in 2014 from Università di Torino Facoltà di Giurisprudenza. Applicant is the managing member of Randazza Legal Group and his primary practice areas are in First Amendment litigation, trademark and copyright matters, and employment disputes.

Applicant has read and is familiar with:

(A) the provisions of the Judicial Code (Title 28, U.S.C.) which pertain to the jurisdiction of, and practice in, the United States District Courts;

(B) the Federal Rules of Civil Procedure;

(C) the Federal Rules of Criminal Procedure;

(D) the Federal Rules of Evidence;

(E) the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York; and

(F) the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York.

Applicant will faithfully adhere to all rules applicable to applicant's conduct in connection with any activities in this Court.

Applicant has never been disbarred or denied admission or readmission by any court, except that Applicant was denied admission *pro hac vice* in the Connecticut Superior Court while disciplinary proceedings related to the matters described below were pending. Applicant has been censured and/or suspended by the Bar or courts of certain jurisdictions in which Applicant is licensed, and Applicant describes such actions as follows:

Applicant was disciplined by one jurisdiction (Nevada) and then subject to reciprocal discipline for conduct of nearly nine years ago. The last jurisdiction to enter reciprocal discipline was Florida, which instead of merely adopting the underlying Nevada stipulated discipline, engaged in its own full fact finding and issued a full independent opinion after a bench trial. The Florida Referee's decision is attached as **Exhibit 2**. The factfinder determined that Applicant did not do anything "actually adverse" to his clients. *See id.* at 6. And there were no "factors in aggravation warranting any discipline in excess of that imposed by Nevada." *Id.* at 8.

In 2018, Applicant was disciplined by the Supreme Court of Nevada for conduct that occurred in 2012. *See* **Exhibit 3**, *In re Marc J. Randazza*, Bar No. 12265, No. 76543 (Nev. Oct. 10, 2018) (Order Approving Conditional Guilty Plea) and **Exhibit 4** (Conditional Guilty Plea). The stipulated and implemented discipline was a twelve-month suspension, stayed for eighteen months, with certain other conditions. *See* **Exhibits 3 & 4**.

*Attachment to Motion for Admission Pro Hac Vice*
Case No. 1:20-cv-05678-KPF

The Nevada discipline arose from a negotiated agreement between Applicant and the Southern Nevada Disciplinary Board. The stipulated facts forming the basis of the discipline are as set forth in the enclosed Conditional Guilty Plea.

As set forth in the Conditional Guilty Plea, the discipline arose from a specific circumstance where Applicant represented a company as in-house counsel, along with its sister entity. Those circumstances will not repeat themselves as Applicant is not in-house counsel for any clients and Applicant now recognizes where he misunderstood his ethical obligations.

Applicant fully complied with the State of Nevada discipline and completed his Nevada probation. *See* **Exhibit 5**, Letter from State Bar of Nevada.

Reciprocal discipline in the nature of a probation or stayed suspension was imposed by the State of Arizona, the State of Florida, the Commonwealth of Massachusetts, and the State of California. *See* **Exhibits 6, 2, 7 and 8**. Applicant fully completed the terms of discipline in Arizona, California, and Massachusetts and no suspensions were imposed. *See* **Exhibits 9 & 10**. Among its requirements, California required Applicant to retake the MPRE, wherein he scored a 119. *See* **Exhibit 11**.

Reciprocal discipline of probation or a stayed suspension was imposed by the U.S. District Courts for the District of Massachusetts and for the Southern District of Florida (which probation expired before the discipline issued), and by the U.S. Patent & Trademark Office. *See* **Exhibits 12, 13, and 14**. The District of Massachusetts terminated proceedings on June 23, 2020, without imposing a suspension. *See* **Exhibit 15**. The discipline imposed by the PTO expired on January 23, 2021.

Reciprocal discipline in the nature of a brief active suspension was imposed by the U.S. District Court for the District of Nevada, which expired on April 10, 2020. *See* **Exhibit 16**. Applicant was reinstated on June 9, 2020. *See* **Exhibit 17**.

The U.S. Court of Appeals for the Federal Circuit stayed all proceedings pending the completion of the Nevada discipline and terminated proceedings on May 28, 2020 without imposing discipline. *See* **Exhibit 18**.

Every other state court, Federal court, or Federal agency to issue a determination in response to the Nevada state discipline has either declined to take action, stayed all proceedings, or issued a stayed suspension or probation, or has readmitted Applicant.

Applicant is aware of no other matters in which he has been sanctioned or disciplined.

I declare under penalty of perjury the foregoing is true and correct.

Dated: August 10, 2021

Marc J. Randazza
Applicant

Sate of Massachusetts, County of Essex

Subscribed to and sworn to before me on this 10th day of August, 2021

Notary Public
My commission expires: May 27, 2027

*Attachment to Motion for Admission Pro Hac Vice*
Case No. 1:20-cv-05678-KPF

# Exhibit 2

DOCKET NO: UWY-CV18-6046436-S  :  SUPERIOR COURT

ERICA LAFFERTY, ET AL.,  :  COMPLEX LITIGATION DOCKET

VS.  :  AT WATERBURY

ALEX EMRIC JONES, ET AL.  :

**SUPPLEMENTAL AFFIDAVIT OF ATTORNEY
SEEKING PERMISSION TO APPEAR PRO HAC VICE**

I, Marc John Randazza, duly sworn, do depose and say:

1.      On October 10, 2018, I was disciplined by the Supreme Court of Nevada for conduct that occurred in 2012.  *See* Exhibit 1; *In re Marc J. Randazza*, Bar No. 12265, No. 76543 (Nev. Oct. 10, 2018) (Order Approving Conditional Guilty Plea) and Exhibit 2 (Conditional Guilty Plea).  The stipulated and implemented discipline was a twelve-month suspension, stayed for eighteen months, with certain other conditions.  *See* Exhibits 1 & 2.

2.      On January 22, 2019, I previously sought to appear *pro hac vice* in this matter.  (Doc. No. 154.00).  The Superior Court denied that application on January 30, 2019, stating, in relevant part, "Permission to appear pro hac vice is a privilege, not a right. In light of the applicant's recent disciplinary history, the court declines to extend the privilege of pro hac admission to Attorney Randazza." (Doc. No. 154.10).

3.      I have since fully complied with the State of Nevada discipline and completed my probation.  *See* Exhibit 3, Letter from State Bar of Nevada.

4.      I now request that I be permitted to practice law before this Court.  I recognize that practicing in this Court is a privilege, but denying that privilege would be detrimental to the interests of justice, *de facto* placing me on an active suspension, of unknown duration, beyond what the Nevada Supreme Court ordered.

5.      The Superior Court's substantive basis for denying admission, the recent discipline, has been largely satisfied, as discussed below.  Every other state court, Federal court, or Federal agency to issue a determination in response to the Nevada state discipline has either declined to take action, stayed all proceedings, or issued a stayed suspension or probation, or has readmitted me.  I have fully cooperated with every jurisdiction and self-reported the

Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor, Hartford, CT 06103 Tel: 702-420-2001

Nevada discipline as required. Having successfully completed my Nevada discipline, it should no longer stand as a barrier to admission.

6.   Denial of admission *pro hac vice* is especially prejudicial to my clients. The defense of this matter is, admittedly, an unpopular cause in Connecticut. My firm's prior efforts to attempt to identify counsel for other defendants in this matter proved unsuccessful. And, my clients have since discharged Mr. Pattis and his colleague. It is highly improbable that my clients will be able to secure alternate representation in Connecticut, and they highly desire that I, personally, act for them.

7.   As the Court may be aware, similar matters are pending in the State of Texas, and my clients also anticipate that I will be providing assistance to them with that matter. Coordination of overlapping discovery and argument is of keen interest to the defendants.

8.   This case involves significant First Amendment and anti-SLAPP issues; I am well-known for my practice in those areas. I earned a B.A. in journalism at the University of Massachusetts at Amherst, but focused my studies on media law. I have a J.D. from Georgetown University Law Center. I also hold a Master's Degree in Mass Communications from the University of Florida, where I also focused on media and First Amendment law studies. Finally, I have an L.L.M. from the University of Turin, Italy.

9.   I am an attorney admitted and in good standing in the States of Arizona, California, Florida, and Nevada, and the Commonwealth of Massachusetts, and the federal district and appellate courts listed in Exhibit 4. I am in good standing to practice before all of them.

10.  The primary focus of my practice consists of free speech and First Amendment litigation. I am a past-President of the First Amendment Lawyers Association.

11.  I submitted my proposed Anti-SLAPP legislation to the Nevada Senate on March 15, 2013. I was called as a witness before the Nevada State Senate Judiciary committee to testify as an expert on First Amendment law and Anti-SLAPP laws for the benefit of the committee and the Senate in passing this important law. On April 22, 2013, the Nevada Senate voted on my proposed Anti-SLAPP Statute, and passed it unanimously. I appeared before the Assembly Judiciary Committee on May 6, 2013. On May 22, 2013, the Nevada Assembly voted on the Anti-SLAPP Statute, which passed the proposed statute unanimously. On May 27, 2013, Governor Brian Sandoval approved the bill.

Randazza Legal Group, PLLC
100 Pearl Street, 14ᴛʜ Floor, Hartford, CT 06103 Tel: 702-420-2001

Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor, Hartford, CT 06103 Tel: 702-420-2001

12.   Like the Connecticut Anti-SLAPP statute, the Nevada Anti-SLAPP law is significantly influenced by the California model. It would an injustice that my clients not be able to continue to pursue their defenses with counsel of their choice where I successfully completed my Nevada discipline and I am otherwise eligible for admission.

13.   The Nevada discipline arises from a negotiated agreement between myself and the Southern Nevada Disciplinary Board. The stipulated facts forming the basis of the discipline are as set forth in the enclosed Conditional Guilty Plea.

14.   As set forth in the Conditional Guilty Plea, the discipline arose from a specific circumstance where I represented a company as in-house counsel, along with its sister entity. Those circumstances will not repeat themselves as I am not in-house counsel for any of my clients and I now recognize where I misunderstood my ethical obligations.[1]

15.   Reciprocal discipline in the nature of a probation or stayed suspension was imposed by the State of Arizona, the Commonwealth of Massachusetts, and the State of California. *See* Exhibits 5, 6 and 7. I fully completed the terms of discipline in Arizona, and Massachusetts and no suspensions were imposed. *See* Exhibits 8 and 9. The California probation expires January 10, 2021. To date, I have been in full compliance, including retaking the MPRE, wherein I scored a 119. *See* Exhibit 10.

16.   Reciprocal discipline of probation or a stayed suspension was imposed by the U.S. District Courts for the District of Massachusetts and for the Southern District of Florida (which probation expired before the discipline issued), and by the U.S. Patent & Trademark Office. *See* Exhibits 11, 12, and 13. The District of Massachusetts terminated proceedings on June 23, 2020, without imposing a suspension. *See* Exhibit 14. The discipline imposed by the PTO expires on January 23, 2021. To date, I have been in full compliance.

17.   Reciprocal discipline in the nature of an active suspension was imposed by the U.S. District Court for the District of Nevada, which expired on April 10, 2020. *See* Exhibit 15. My

---

[1]   In connection with my prior application, Plaintiffs previously filed an interim arbitration award regarding my dispute with those clients. (Doc. No. 163.00). However, a court refused to confirm it and, with the agreement of those clients, vacated it. *See Liberty Media Holdings, LLC, et al. v. Randazza*, Adv. Proc. No. 15-01193-abl (Bankr. Nev. Jun. 8, 2017) (denying motion to confirm); *In re: Marc John Randazza*, Case No. BK-S-15-14956-abl (Bankr. Nev. Aug. 2, 2018) (vacating and dismissing the interim arbitration award). The findings in that award, therefore, have no evidentiary value. And, more importantly, neither the State Bar of Nevada nor the Nevada Supreme Court, nor any other tribunal considering reciprocal discipline, adopted the arbitral findings.

Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor, Hartford, CT 06103 Tel: 702-420-2001

admission to the U.S. District Court for the District of Nevada was reinstated on June 9, 2020. *See* Exhibit 16.

18.    The U.S. Court of Appeals for the Federal Circuit stayed all proceedings pending the completion of the Nevada discipline and terminated proceedings on May 28, 2020 without imposing discipline. *See* Exhibit 17.

19.    Reciprocal disciplinary proceedings remain pending in the State of Florida.

20.    Following the filing of my Conditional Guilty Plea, I was admitted to practice before the U.S. Court of Appeals for the Second Circuit.  Following the imposition of the Nevada discipline, the U.S. Court of Appeals for the Eleventh Circuit, taking it into consideration, renewed my admission.  Following the imposition of the Nevada discipline, I have also been admitted to practice *pro hac vice* by the U.S. District Courts for the District of Columbia and the Western District of Texas.

21.    I am aware of no other grievances pending against me or discipline.[2]

Executed on __3 July__ 2020                      Marc John Randazza

County of ___Essex___

State of ___Massachusetts___

On this __3__ day of __July__, 2020, before me, the undersigned notary public, personally appeared ___Marc Randazza___ (name of document signer), proved to me through satisfactory evidence of identification, which were ___USA Passport___, to be the person who signed the preceding or attached document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Notary Public

My Commission Expires:

ISABELLA A. RANDAZZO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
August 20, 2021

---

[2]    I previously apprised the Superior Court of a "screening" in Arizona. (Doc. No. 202). To the extent that constituted a "grievance", I am pleased to report that that matter was dismissed by the State Bar of Arizona at the investigatory stage. *See* Exhibit 18.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 56427918
Status as of 8/20/2021 9:34 AM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/18/2021 2:10:10 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 8/18/2021 2:10:10 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/18/2021 2:10:10 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/18/2021 2:10:10 PM | SENT |

8/19/2021 10:51 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Daniel Smith

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

## PLAINTIFFS' MOTION FOR PROTECTION REGARDING *IN CAMERA* REVIEW

1

Despite Texas law requiring an *in camera* review prior to production of mental health records, and despite this Court instructing the parties to confer on a protocol for this legally-mandated process, Defendants have unreasonably opposed any *in camera* review, insisting they are entitled to unrestricted access to Plaintiffs' mental health records. Unfortunately, Plaintiffs require this Court's intervention.

## FACTS

1.      On July 6, 2021, Plaintiffs' counsel wrote to Defendants' counsel in *Fontaine* concerning Defendants' discovery requests for mental health records. Plaintiffs' counsel stated a desire to seek *in camera* review of those records:

> Plaintiff has requested his mental health treatment records, but he will be objecting to producing those records prior to an *in camera* review pursuant to *R.K. v. Ramirez*, 887 S.W.2d 836 (Tex. 1994). Likewise, Plaintiff plans to file a motion seeking *in camera* review of those records prior to production. Let me know if you can agree. If you oppose, let me know on what basis and perhaps we can work something out.[1]

2.      On July 9, 2021, Plaintiffs' counsel raised the issue with the Court in oral hearing, noting he was hopeful that an agreement could be reached. The Court instructed counsel for all the InfoWars cases to confer on creating such a protocol.

3.      On July 12, 2021, Plaintiffs' counsel forwarded his earlier email to Defendants' attorneys in all the cases, noting that he was "writing to follow up on the Court's request to provide a protocol on our agreement to confer prior to any *in*

---

[1] Exhibit 1, Email discussion between counsel regarding *in camera* review, July 6 email from Plaintiff's counsel.

*camera* review of contested mental health records."[2] Plaintiffs' counsel also proposed

the following protocol:

> To the extent there are mental health records responsive to any of Defendants' requests, the plaintiff will subpoena those records and respond to the request indicating that such records have been subpoenaed.
>
> Within 14 days of their receipt, or as otherwise agreed by the parties, the plaintiff will provide a log describing any document which the plaintiff seeks to withhold for reasons of privilege, relevance, or privacy.
>
> Within 14 days after receiving the log, or as otherwise agreed by the parties, Defendants will provide a list of any documents for which it challenges the basis for withholding.
>
> Upon receipt of that list, Plaintiff will provide the documents identified by Defendants to the Court within three business days, or as otherwise agreed by the parties.[3]

4.     July 13, 2021, Defendants' counsel Eric Taube, negotiating for the

*Fontaine* case, replied with several items he wanted to include in the protocol.[4] That

same day, Plaintiffs' counsel inserted those changes and asked if the agreement was

complete. On July 15, 2021, Mr. Taube responded with additional terms.[5] Those items

were added, and Mr. Taube later agreed to the protocol, which has now been filed.

5.     Weeks later, on July 27, 2021, Defendants' counsel Brad Reeves joined

the conversation. Mr. Reeves doubted that "there even needs to be this process."[6] Mr.

---

[2] *Id.,* July 12, 2021 email from Plaintiff's counsel.
[3] *Id.*
[4] *Id.,* July 13, 2021 email from Defendants' counsel Eric Taube.
[5] *Id.,* July 15, 2021 email from Defendants' counsel Eric Taube.
[6] *Id.,* July 27, 2021 email from Defendants' counsel Brad Reeves.

Reeves stated he was "confused as to why you would need to subpoena any records—as the plaintiffs should have the unfettered ability to request and obtain their own records."[7] Mr. Reeves also said that he intended to secure mental health records on his own with no court supervision, stating that "it is your clients' obligations in discovery to produce a medical authorization allowing for Defendants to obtain these records, including mental health records."[8]

6.      Consistent with the governing cases, Plaintiffs' counsel again told Mr. Reeves they "would like to seek a protocol for *in camera review* to protect our clients' privacy and ensure the disclosure of records is no broader than necessary."[9] Plaintiffs' counsel told Mr. Reeves that "[i]f you're opposed to [*in camera* review] for the reasons you've given," Plaintiffs would "seek any *in camera* review through a motion."[10]

7.      On July 28, 2021, Mr. Reeves responded that he did not believe "your clients have much of a right to privacy."[11] Mr. Reeves claimed that Defendants' unrestricted access to Plaintiffs' mental health records was "fair game as far as I am concerned."[12] Mr. Reeves contended that privacy is "something your clients have really lost the right to assert (at least as far as discovery is concerned)."[13] Despite being asked by the Court to confer on a protocol for *in camera* review, and despite

---

[7] *Id.*

[8] *Id.*

[9] *Id.,* July 28, 2021 email from Plaintiffs' counsel.

[10] *Id.*

[11] *Id.,* July 28, 2021 email from Defendants' counsel Brad Reeves.

[12] *Id.*

[13] *Id.*

Texas law requiring such a review if requested, Defendants' counsel demanded that Plaintiffs' counsel further justify their request to him, apparently not satisfied with Plaintiffs' citation to *R.K. v. Ramirez, supra.*

8.      Plaintiffs' counsel responded that "[i]t's obvious you believe you should have unconditional access to our clients' mental health records. We disagree and would like to enter a protocol for in camera review. It's clear you are not on board with that idea. So as I said, we'll seek any in camera review through a motion."[14] Defendants did not respond, and the negotiation ceased. Having been unable to reach agreement, Plaintiffs now move this Court for protection and requests a court-ordered protocol for *in camera* review of mental health records.

## ARGUMENT

### I.      Plaintiffs are Entitled to *In Camera* Review of Sensitive Mental Health Records.

Plaintiffs do not dispute that the mental health injuries they suffered from Defendants' conduct have been put into controversy. If mental health records are requested after a plaintiff puts a mental health injury into controversy, "the trial court must then perform an *in camera* inspection of the documents at issue." *R.K. v. Ramirez*, 887 S.W.2d 836, 842 (Tex. 1994). When sensitive mental health treatment is implicated, a trial court "abuse[s] its discretion by permitting the production of [a

---

[14] *Id.,* July 28, 2021 email from Plaintiffs' counsel.

plaintiff's] medical records without first reviewing the records *in camera.*" *In re Turney,* 525 S.W.3d 832, 841 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

"[W]hen reviewing documents submitted *in camera,* the court must ensure that the production of documents ordered, if any, is no broader than necessary, considering the competing interests at stake." *R.K.* at 843. The *in camera* review is required because "patient records should be revealed only to the extent necessary to provide relevant evidence relating to the condition alleged." *Id.* It is crucial for the trial court "to avoid any unnecessary incursion into private affairs." *Id.*

## II.  Defendants' Opposition is Frivolous.

Defendants oppose any *in camera* review by arguing that the Plaintiffs can simply rely on a Protective Order of Confidentiality. Defendants' counsel stated, "What is the point of having a protective order in place if you are not going to produce these documents and are instead going to withhold them for *in camera* review?"[15] Defendants' counsel claimed that *in camera* review was not necessary because "[t]he protective order is for all parties' protection..."[16] Yet Defendants' counsel misunderstands the difference between a protective order and *in camera* review. A protective order exists to prevent disclosure of information to parties outside the litigation. Conversely, *in camera* review exists to prevent disclosure of information to a party's adversary. A protective order does nothing to alleviate Plaintiffs' concern

---

[15] Exhibit 1, Email discussion between counsel regarding *in camera* review, July 28 email from Defendants' counsel Brad Reeves.
[16] *Id.*

that there may be private, irrelevant, or privileged information in their mental health records which Mr. Jones and his attorneys should not be allowed to possess.

Moreover, a Protective Order provides no guarantee of actual protection against these particular Defendants. Two weeks ago, Defendants were again sanctioned on August 6, 2021 when their attorneys publicly disclosed information from a confidential deposition of a Sandy Hook parent in *Lafferty.* When sanctioning the Defendants, the *Lafferty* court noted its "grave concerns" that witnesses "would be rightfully concerned that their confidential information, including their psychiatric and medical histories, would be made available to the public."[17] For this reason, careful *in camera* review is even more vital in this case given InfoWars' documented history of "cavalier actions and willful misconduct."[18]

## CONCLUSION

An *in camera* review of mental health records is required under Texas law. Yet despite this Court's instruction to confer on a protocol for this legally-mandated process, Defendants unreasonably opposed any review and demanded unrestricted access to Plaintiffs' records, leading to this unnecessary motion. As such, Plaintiffs pray that this Court orders reasonable protocol for *in camera* review.

Respectfully submitted,
**KASTER LYNCH FARRAR & BALL, LLP**

_____
MARK D. BANKSTON

---

[17] Exhibit 2, August 6, 2021 Order in *Lafferty* concerning deposition disclosure.
[18] *Id.*

7

State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, TX 77008
713.221.8300 Telephone
713.221.8301 Fax

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2021 the forgoing brief was served upon all counsel of record via electronic service.

_____
MARK D. BANKSTON

**CERTIFICATE OF CONFERENCE**

I hereby certify that before filing this motion, I conferred with counsel of record, but counsel was opposed to the relief sought.

_____
MARK D. BANKSTON

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

---

## ORDER REGARDING PROTOCOL FOR *IN CAMERA* REVIEW

---

On this day, the Court considered Plaintiff's Motion for Protection Regarding *In Camera* Review. The Court finds that the motion should be granted. It is therefore ORDERED that the parties shall use the following protocol if mental health records are requested in discovery:

1. To the extent there are mental health records responsive to any of Defendants' requests, Plaintiff will subpoena those records and respond to the request indicating that such records have been subpoenaed.

2. Within 14 days of their receipt, or as otherwise agreed by the parties, the plaintiff will provide a log describing any document which the plaintiff seeks to withhold for reasons of privilege, relevance, or privacy.

3. Within 14 days after receiving the log, or as otherwise agreed by the parties, Defendants will provide a list of any documents for which it challenges the basis for withholding.

4. Upon receipt of that list, Plaintiff will provide the documents identified by Defendants to the Court within three business days, or as otherwise agreed by the parties.

Dated _____, 2021.


_____
Hon. Maya Guerra Gamble

# Exhibit 1

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | Bradley Reeves; Bill Ogden |
| **Cc:** | Marc John Randazza |
| **Subject:** | RE: Protocol for in camera review |
| **Date:** | Wednesday, July 28, 2021 6:09:00 PM |
| **Attachments:** | image001.png |

It's obvious you believe you should have unconditional access to our clients' mental health records. We disagree and would like to enter a protocol for in camera review. It's clear you are not on board with that idea. So as I said, we'll seek any in camera review through a motion.

---

**From:** Bradley Reeves <brad@brtx.law>
**Sent:** Wednesday, July 28, 2021 3:52 PM
**To:** Mark Bankston <mark@fbtrial.com>; Bill Ogden <bill@fbtrial.com>
**Cc:** Marc John Randazza <mjr@randazza.com>
**Subject:** RE: Protocol for in camera review

I am not trying to be difficult here, but what concerns do you have about your clients' "privacy" that would not be handled by an agreed protective order? I am also not sure your clients have much of a right to privacy given the fact they have filed lawsuits for claims that include mental anguish, so that is pretty much fair game as far as I am concerned. I am also unclear as to what you mean by ensuring "the disclosure of records is no broader than necessary." Who makes the determination of what is necessary? Based on the protocol you have proposed, it would appear that you want to be the one who makes that determination, which obviously raises a whole host of issues.

I am just trying to understand why you want a protocol that makes you the gatekeeper of relevant medical and other records that we would be entitled to obtain during discovery in addition to having a protective order in place. So far your explanation hinges only on vague assertions of "privacy," which again is something your clients have really lost the right to assert (at least as far as discovery is concerned) based on the claims they have made in this lawsuit.

Best regards,

Brad Reeves

---

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Wednesday, July 28, 2021 9:47 AM
**To:** Bradley Reeves <brad@brtx.law>; Bill Ogden <bill@fbtrial.com>
**Cc:** Marc John Randazza <mjr@randazza.com>
**Subject:** RE: Protocol for in camera review

As we've indicated, we would like to seek a protocol for in camera review to protect our clients' privacy and ensure the disclosure of records is no broader than necessary. If you're opposed to that idea for the reasons you've given, that's your right, but there is no point in us discussing the details of a protocol if that's the case. We'll just seek any in camera review through a motion.

---

**From:** Bradley Reeves <brad@brtx.law>
**Sent:** Tuesday, July 27, 2021 4:31 PM

**To:** Mark Bankston <mark@fbtrial.com>; Bill Ogden <bill@fbtrial.com>
**Cc:** Marc John Randazza <mjr@randazza.com>
**Subject:** FW: Protocol for in camera review

Mark:

Following up on this in camera protocol, and I must admit, I do not understand why or how there even needs to be this process. First, your client(s) have put their mental health at issue, and thus they have opened the door as to their mental health records. I am also confused as to why you would need to subpoena any records—as the plaintiffs should have the unfettered ability to request and obtain their own records. Furthermore, it is your clients' obligations in discovery to produce a medical authorization allowing for Defendants to obtain these records, including mental health records.

Moreover, what is the point of having a protective order in place if you are not going to produce these documents and are instead going to withhold them for in camera review? The protective order is for all parties' protection to prevent disclosure of information and documents in discovery without prior approval.

While I hesitate to ask, can you help me understand why you feel this protocol is even necessary?

Best regards,

Brad Reeves

---

**From:** Eric Taube <Eric.Taube@wallerlaw.com>
**Sent:** Thursday, July 15, 2021 4:12 PM
**To:** Mark Bankston <mark@fbtrial.com>
**Cc:** Bill Ogden <bill@fbtrial.com>; Kevin Brown <Kevin.Brown@wallerlaw.com>; Bradley Reeves <brad@brtx.law>
**Subject:** Protocol for in camera review

Mark,

While I am generally in agreement with the procedure discussed in the paragraph below as it relates to medical records that we have already requested or might request from Mr. Fontaine in the future,  and don't really care if this process applies to any other case, I am confused by the prefatory statement that the "Plaintiff will subpoena the records and will respond to the request indicating that the records have been subpoenaed." I assume that you are not attempting to absolve your client from producing records that are in his possession or subject to his control. Such records would be subject to production or delineation on a privilege log consistent with the procedure and timing described. If we attempt to subpoena records from third parties, you are certainly afforded an opportunity to quash or seek a protective order if you believe that the documents are outside the scope and are subject to protection, and we can agree for this procedure to apply or not, but I am not

agreeing up front to limit our opportunity to subpoena third party records. Candidly, I am not sure what medical records would fall in to this category since I believe all of Mr. Fontaine's medical records would be subject to his control, but perhaps that is not the case.

**Eric Taube**

Partner



o: (512) 685-6401

100 Congress Ave., Suite 1800

Austin, TX 78701

Bio | Email

---

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Tuesday, July 13, 2021 2:32 PM
**To:** Eric Taube <Eric.Taube@wallerlaw.com>; Kevin Brown <Kevin.Brown@wallerlaw.com>; Bradley Reeves <brad@brtx.law>
**Cc:** Bill Ogden <bill@fbtrial.com>
**Subject:** RE: Protocol for in camera review

**External Message**

First, I understand you sent some discovery already in Fontaine, but I am trying to make a generic protocol that can be used in all cases. If you really want to draft a separate protocol for Fontaine merely to indicate that a first set of discovery has already been served, we can do that, but I don't see the point. Also, the way you have drafted your comments, it would apply to the discovery you already sent in Fontaine, but not to any future discovery you might send.

Second, we can definitely put it a sentence saying that we will immediately produce any non-objectionable documents we receive.

Otherwise, your proposal looks the same as mine, except that you have removed any timeline for Defendants' identification of documents they intend to challenge, and you have removed the timeline for Plaintiff to submit those documents to the court once Defendants' challenges are received. I'm not sure why you did that.

So to take another stab at incorporating your response:

To the extent there are mental health records responsive to any of Defendants' requests, the plaintiff will subpoena those records and respond to the request indicating that such records have

been subpoenaed. The plaintiff will immediately produce any records received for which there is no objection. Within 14 days of their receipt, or as otherwise agreed by the parties, the plaintiff will provide a log describing any document which the plaintiff seeks to withhold for reasons of privilege, relevance, or privacy. Plaintiff's log will describe the documents being withheld, identifying the date, parties to the communication, attachments, general subject matter, and the basis that they are being withheld so that Defendants have the opportunity to agree or disagree on particular documents. Within 14 days after receiving the log, or as otherwise agreed by the parties, Defendants will provide a list of any documents for which it challenges the basis for withholding. Upon receipt of that list, Plaintiff will provide the documents identified by Defendants to the Court within three business days, or as otherwise agreed by the parties, in connection with a hearing where the parties can argue why - based upon the privilege log - the documents that are identified and which the Court is going to review in camera, should or should not be withheld.

If you can agree to that, I suggest this should be filed as a Rule 11 agreement.

---

**From:** Eric Taube <Eric.Taube@wallerlaw.com>
**Sent:** Tuesday, July 13, 2021 11:17 AM
**To:** Mark Bankston <mark@fbtrial.com>; Kevin Brown <Kevin.Brown@wallerlaw.com>; Bradley Reeves <brad@brtx.law>
**Cc:** Bill Ogden <bill@fbtrial.com>
**Subject:** RE: Protocol for in camera review

Mark,

I am happy to draft an agreed order, but this is what I understood that we had discussed and what we can agree to:

1. we sent the discovery to you already, and you will provide responses and objections as you deem appropriate;

2 with respect to medical information, you produce what you are not trying to withhold - anything that you believe is responsive and not objectionable;

3. within 14 days of the response and production of the responsive and non-objectionable documents, you provide a privilege log that describes the documents being withheld and the basis that they are being withheld so that we have the opportunity to agree or disagree on particular documents - identify by date, parties to the communication, attachments and general subject matter;

4. with respect to documents that we cannot agree, you submit them to the Court for in camera review in connection with a hearing where we can argue why - based upon the privilege log - the documents that are identified and which the Court is going to review in camera, should be produced and not withheld.

Let me know if you would like us to prepare an order along these lines.



**Eric Taube**
Partner
o: (512) 685-6401
100 Congress Ave., Suite 1800
Austin, TX 78701

Bio | Email

---

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Monday, July 12, 2021 1:38 PM
**To:** Eric Taube <Eric.Taube@wallerlaw.com>; Kevin Brown <Kevin.Brown@wallerlaw.com>; Bradley Reeves <brad@brtx.law>
**Cc:** Bill Ogden <bill@fbtrial.com>
**Subject:** Protocol for in camera review

**External Message**

I am writing to follow up on the Court's request to provide a protocol on our agreement to confer prior to any *in camera* review of contested mental health records. Elaborating on our agreement in the email below, I've drafted the following protocol:

To the extent there are mental health records responsive to any of Defendants' requests, the plaintiff will subpoena those records and respond to the request indicating that such records have been subpoenaed. Within 14 days of their receipt, or as otherwise agreed by the parties, the plaintiff will provide a log describing any document which the plaintiff seeks to withhold for reasons of privilege, relevance, or privacy. Within 14 days after receiving the log, or as otherwise agreed by the parties, Defendants will provide a list of any documents for which it challenges the basis for withholding. Upon receipt of that list, Plaintiff will provide the documents identified by Defendants to the Court within three business days, or as otherwise agreed by the parties.

Please let me know if this protocol is adequate for both of you.

---

**From:** Mark Bankston
**Sent:** Wednesday, July 7, 2021 3:03 PM
**To:** Eric Taube <Eric.Taube@wallerlaw.com>; Kevin Brown <Kevin.Brown@wallerlaw.com>
**Cc:** Bill Ogden <bill@fbtrial.com>
**Subject:** RE: Fontaine records

Sure, that sounds reasonable. For any documents we receive from our subpoena that we intend to

have reviewed by the court, we will create a descriptive log and give it to you first. If after your review there are any documents on that list that we both do not agree should be withheld, then those can be submitted to the court and you can argue for their production.  If there are any documents which we feel do not require review, we'll produce them immediately upon receipt. Does that work?

**From:** Eric Taube <Eric.Taube@wallerlaw.com>
**Sent:** Wednesday, July 7, 2021 2:30 PM
**To:** Mark Bankston <mark@fbtrial.com>; Kevin Brown <Kevin.Brown@wallerlaw.com>
**Cc:** Bill Ogden <bill@fbtrial.com>
**Subject:** RE: Fontaine records

Mark,

Thank you for your email on the production issue. We do not oppose in camera inspection by the Court, but for the purpose of preserving any appeal and potential error, I think that you need to provide a privilege log of the documents that you are going to be claiming are subject to the applicable privilege and will  be submitting for inspection by the Court so that we can determine what documents are being submitted (depending on the description, we may agree that you can withhold identified documents) and be able to argue that based upon your pleadings and consistent with *Ramirez, Groves*  and the exceptions in TRE 509 and 510, specific responsive documents should be produced. Can we agree to such a procedure?

**Eric Taube**
Partner

o: (512) 685-6401
100 Congress Ave., Suite 1800
Austin, TX 78701

Bio | Email

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Tuesday, July 6, 2021 1:31 PM
**To:** Eric Taube <Eric.Taube@wallerlaw.com>; Kevin Brown <Kevin.Brown@wallerlaw.com>
**Cc:** Bill Ogden <bill@fbtrial.com>
**Subject:** Fontaine records

**External Message**

Plaintiff has requested his mental health treatment records, but he will be objecting to producing

those records prior to an *in camera* review pursuant to *R.K. v. Ramirez*, 887 S.W.2d 836 (Tex. 1994). Likewise, Plaintiff plans to file a motion seeking *in camera* review of those records prior to production. Let me know if you can agree. If you oppose, let me know on what basis and perhaps we can work something out.

Mark Bankston

Kaster Lynch Farrar & Ball, LLP

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are prohibited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

# Exhibit 2

ORDER    421277

DOCKET NO: UWYCV186046436S

SUPERIOR COURT

LAFFERTY, ERICA Et Al
   V.
JONES, ALEX EMRIC Et Al

JUDICIAL DISTRICT OF WATERBURY
   AT WATERBURY

8/5/2021

## ORDER

ORDER REGARDING:
07/06/2021 394.00 MOTION FOR ORDER

The foregoing, having been considered by the Court, is hereby:

ORDER:

By written stipulation, and unless the court orders otherwise, parties can agree to modify discovery
procedures. See Connecticut Practice Book Section 13-32. In these consolidated cases, the defendants
Alex Jones, Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV,
LLC ("the Jones defendants") did just that. Additionally, they took their agreement with the plaintiffs a
step further and asked the court to issue a protective order pursuant to Practice Book Section 13-5 and
approve their joint discovery stipulation. The Jones defendants filed no less than three versions of a
proposed protective order for the court's approval, see entry numbers 177,181,183, and 185, asserting
that they were asking for the same discovery protection that would have been in place in federal court
had the cases not been remanded back to state court. They indicated, correctly, that discovery materials
are not filed with the court and as such are not ordinarily available to the public. The court ultimately
approved the stipulation of the parties, which complied with all relevant requirements of the Connecticut
Practice Book and which, inter alia, set forth the procedure by which sensitive confidential information
obtained through pretrial discovery would be handled and, if necessary, filed with the court. The order
provided that of all or part of a deposition transcript could be designated as confidential by counsel for
the deponent or designated party, by requesting such treatment on the record at the deposition or in
writing no later than thirty days after the date of the deposition. It set forth simple procedures by which
the designation of "confidential" could be subsequently challenged, and how confidential information
could be filed with the court. Importantly for the purposes of this motion, the protective order clearly
prohibited discovery information designated as confidential from being filed with the court until such
time that the court had ruled on the designating party's motion under Practice Book Section 11-20A.
The Jones defendants did not oppose the plaintiffs' June 8,2021 motion to modify the protective order,
which recited a good cause basis for the modification and which added a "Confidential- Attorneys Eyes
Only" designation to the above mentioned procedures. Based upon the written motions filed by the
plaintiffs and the Jones defendants, the court, in entering the protective orders, found good cause for
both the issuance of the original protective order and its modification. In support of the motion for
protective order, the Jones defendants identified their privacy interests in sensitive proprietary
information including proprietary business, financial, and competitive information that they maintain as
trade secrets, proprietary business and marketing plans, marketing data, web analytics, sales analytics,
and/or other web traffic data, and marketing data or analytics. They referred to the "unique" business
model that makes them competitive and successful. The plaintiffs, in support of the modification to the
protective order, identified their privacy interests in their medical histories, psychiatric records,and
private social media accounts. In the midst of taking the first deposition of a plaintiff, the defendants
Free Speech Systems LLC, Infowars LLC, Infowars Health LLC, and Prison Planet TV LLC
(Infowars),filed a motion to depose Hillary Clinton, using deposition testimony that had just been
designated as "Confidential-Attorneys Eyes Only," and completely disregarding the court ordered
procedures. At no point prior to filing the Clinton motion did Infowars profess ignorance of the
procedures they had proposed and which were court ordered to be followed, nor have they since taken

any steps to correct their improper filing. If Infowars was of the opinion that the plaintiffs' designation was unreasonable and not made in good faith, the solution was to follow the court ordered procedure to challenge the designation, not to blatantly disregard it and make the confidential information available on the internet by filing it in the court file. The court rejects Infowars' baseless argument that there was no good cause to issue the protective orders, where both sides recited, in writing, detailed justification for a good cause basis. In short, Infowars, having advocated for a court ordered protective order, filing no less than three versions, having recited in writing the good cause bases for the issuance of the protective order, and having no objection to the plaintiffs' proposed modification, now takes the absurd position that the court ordered protective order circumvents the good cause requirements of Practice Book 13-5, did not need to be complied with, and should not be enforced by the court. This argument is frightening. Given the cavalier actions and willful misconduct of Infowars in filing protected deposition information during the actual deposition, this court has grave concerns that their actions, in the future, will have a chilling effect on the testimony of witnesses who would be rightfully concerned that their confidential information, including their psychiatric and medical histories, would be made available to the public. The court will address sanctions at a future hearing.

Judicial Notice (JDNO) was sent regarding this order.

421277
_____

Judge: BARBARA N BELLIS

This document may be signed or verified electronically and has the same validity and status as a document with a physical (pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the Connecticut General Statutes and Connecticut Practice Book Section 4-4.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 56456821
Status as of 8/21/2021 4:06 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/19/2021 10:51:47 AM | SENT |

Associated Case Party: Owen Shroyer

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/19/2021 10:51:47 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 8/19/2021 10:51:47 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/19/2021 10:51:47 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/19/2021 10:51:47 AM | SENT |

8/30/2021 9:06 AM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Jonathan Sanders**

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, AND | § | |
| OWEN SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT[1]

Defendants, Alex E. Jones; Infowars, LLC; Free Speech Systems, LLC; and Owen Shroyer (collectively "Defendants"), file this response to Plaintiff's Supplemental Brief in Support of Plaintiff's Motion for Default Judgment,[2] and would show unto the Court as follows:

### SUMMARY OF RESPONSE

Plaintiff's supplemental brief is essentially a reiteration of its initial December 9, 2019 motion for sanctions and motion for default judgment, except that now Plaintiff includes "facts" and discussions pertaining to separate cases in Connecticut as somehow constituting grounds for this Court to grant the death penalty sanction of a default judgment against Defendants in this case. While Plaintiff continues to make conclusory allegations that Defendants have not participated in discovery, Plaintiff's motion and supplemental brief lack any concrete discussion of what documents Defendants have failed to produce and how Plaintiff has somehow been prejudiced by

---

[1] Plaintiff's original motion and supplemental brief seeking a default judgment as a discovery sanction were initially filed in Cause No. D-1-GN-004651 which has since been consolidated with this matter.

[2] Defendants further incorporate by reference herein Defendants' Response to Plaintiff's Motion for Sanctions and Default Judgment and the exhibits thereto, filed December 17, 2019.

that. Moreover, Plaintiff's motion fails to put his motion in the proper context—Plaintiff's discovery concerns center on discovery that was issued as part of limited discovery based on Defendants' then-filed TCPA motion to dismiss. Yet, now, Plaintiff seeks a default judgment as to liability as to the entirety of his IIED claims on the basis of these limited discovery response issues. Finally, Plaintiff's motion and supplement thereto fails to take into account recent supplemental production from Defendants (of over 7,000 pages of additional responsive documents) and otherwise fails to demonstrate how death penalty sanctions are appropriate, particularly considering how this case is—procedurally speaking—in its initial discovery stages. As a result, the Court should decline to implement any sort of death penalty sanctions and should likewise deny Plaintiff's motion.

### RESPONSE TO MOTION FOR DEFAULT JUDGMENT

Plaintiff's motion and supplemental brief is fraught with inflammatory language and sensational assertions all with the ultimate goal of having this Court enter a default judgment as to liability on Plaintiff's IIED claims to obviate any need for Plaintiff to actually have to prove his case on the merits. Yet, such death penalty sanctions are in no way warranted by the circumstances of this case. Notably, the vast majority of the complaints raised by Plaintiff's supplemental brief— claims that Infowars failed to adequately prepare its corporate representative; unfounded allegations that a "massive" amount of responsive emails were withheld; that Infowars provided "false and evasive discovery answers;" and claims that Infowars "ignored its duty to preserve and produce evidence"—were all put at issue before Judge Jenkins back in December 2019, and all of which were addressed in Judge Jenkins' December 2019 order for monetary sanctions and a finding of contempt arising from the situation surrounding the corporate representative complaints by Plaintiff.

There is little doubt that discovery was a bit of a struggle at the inception of these cases; the undersigned counsel was not involved in those disputes but certainly has reviewed the record and understands where the issues were alleged to exist and what has been done to try and remedy these discovery disputes. Yet, despite Plaintiff's sensationalist accusations and attempts to disparage Defendants with aspirations of biasing the Court against Defendants, the fact of the matter is that Plaintiff's motion and supplemental brief in support lack any sort of concrete evidence of discovery abuses by Defendants nor that Plaintiff has been prejudiced by such alleged abuses to such a level as to warrant a default judgment at what is essentially the beginning of the case.

Plaintiff's supplemental brief first complains of Infowars' corporate representative being inadequately prepared to give testimony in a November 2019 deposition (granted as part of the limited discovery pertaining to Defendants' TCPA motion to dismiss). The Court—via Judge Jenkins—has already considered this complaint and found Infowars in contempt and issued a $500 fine. Judge Jenkins ordered no other sanctions against Defendants nor required Defendants to take any further action pertaining to this deposition. As such, Plaintiff's supplemental brief is nothing more than a veiled attempted to have this Court reconsider that ruling and implement additional sanctions when that situation has already been addressed.

Plaintiff's supplemental briefing next contends that Defendants have withheld a "massive" number of responsive emails, yet nothing could be further from the truth. Plaintiff's only alleged evidence to support this allegation is to point to discovery disputes in *Lafferty*, which is a series of Sandy Hook related cases pending in Connecticut state court. But what Plaintiff conveniently omits from his briefing is that the scope of discovery in *Lafferty* is much wider and all-encompassing than the discovery at issue in this case. For example, Plaintiff cites to an affidavit

of David Jones filed in the *Lafferty* matter that search terms in that case yielded approximately

80,000 emails that were potentially responsive to the *Lafferty* Plaintiff's discovery requests. *See*

Supp. Brief at 18.; *see also* Pl.'s Mtn for Default Judgment at 29. But that in no way supports the

idea that those emails were responsive to *this* Plaintiff's limited discovery requests. Instead, all

Plaintiff has is mere conjecture and accusations—certainly not the concrete, particularized type of

evidence that would support the imposition of death penalty sanctions.

Plaintiff then makes broad, generalized allegations that Defendants have failed to preserve

relevant evidence. Plaintiff contends that information was deleted from employees' computers, yet

that is in no way what happened. The computers used at Free Speech Systems, LLC are connected

to portable hard drives; when those computers are repurposed or replaced, only the operating

system and computer programs were erased prior to preparing the computer for another's use or

when replacing a computer. *See* Ex. 1 to Defendants' December 17, 2019 response, affidavit of

Michael Zimmerman. Plaintiff also regurgitates its prior accusations that Defendants have failed

to preserve and search internal messaging systems. *See* Supp. Brief at 27. Again, Plaintiff is

incorrect. Free Speech System utilized Slack as a messaging system, but that system has not been

used since April 2016, and that data has been preserved (and to the undersigned's best knowledge,

has been produced). *See* Ex. 1 to Defendants' December 17, 2019 Resp. to Mtn for Sanctions. Free

Speech Systems then started using Rocket.Chat on August 16, 2018, and all of that data has

likewise been preserved (and which again, to the undersigned's best knowledge, has been

produced).

Plaintiff's motion and supplemental brief also includes (previously lodged) allegations that

Infowars failed to preserve its social media accounts. *See* Supp. Brief at 29. It is undisputed that

Infowars lost a majority of its video and social media archives because those were exclusively

stored on those social media platforms (such as YouTube). *See* Ex. 1 to Defendants' December

17, 2019 Resp. to Mtn. for Sanctions. However, many of these videos are still located on Free

Speech System's servers and have already been produced to Plaintiff. While Plaintiff's briefing

addresses a couple of videos he says have not been produced by Defendants, Plaintiff notably does

not provide any information to the Court as to how such videos are in any way relevant or

connected to his IIED claims in this case. Plaintiff simply makes the conclusory statement that

"Mr. Heslin has been unable to prove the extent of Infowars' conduct," without further explanation

to lend any support for this claim. Plaintiff's supplemental brief also demonstrates how Defendants

did not take any action to delete or lose any such videos. Unfortunately, the social media accounts

at the heart of Plaintiff's complaints were under the control of those third-party platform providers,

who subsequently and unilaterally banned Infowars from utilizing their sites, likewise resulting in

Defendants losing all access and control over these accounts and their content.

But even if there was some sort of duty for Defendants to proactively take steps to preserve

these social media accounts, videos, and messages, the alleged failure to do so does not in turn

mean death penalty sanctions should occur. First, Plaintiff has failed to exhaust the discovery

mechanisms available to him to determine if this data does still exist on these platforms.

Specifically, Plaintiff has not issued third-party subpoenas to such platforms as Facebook, Twitter,

or YouTube to determine if those platforms still have the videos, data, and messages at the heart

of his complaints in his motion for default judgment. Moreover, it is clear that the more appropriate

procedural mechanism would be for Plaintiff to seek a spoliation finding related to those videos,

if warranted. But Plaintiff has decided to put all of his eggs in the death-penalty-sanctions basket,

which is simply absurd at this juncture of the case.

Regardless of the veracity, or lack thereof, of Plaintiff's discovery complaints, the fact of the matter is that Plaintiff's requested death penalty sanctions would be unduly harsh and are not supported by the record. The undersigned has personally been reviewing over 75,000 documents gathered during this litigation and has recently supplemented Defendants' production with approximately 7,000 pages of responsive documents, with likely more to come in the next couple of weeks. Defendants also continue to search every possible location, server, etc. for responsive documents that may have not yet been turned over to counsel, but at the present, it appears as though Plaintiff has already received the vast majority, it not all, of Defendants' responsive documents. Even if Plaintiff were to have more than just conclusory allegations that documents had been wrongfully withheld (or other evidence lost or destroyed), death penalty sanctions would not be supported. Rather, Plaintiff should be seeking sanctions along the lines of a spoliation finding or instruction, not a default judgment as to liability on claims that are dubious at best and are likely time barred under the applicable statute of limitations. A default judgment is not the right answer in this case, and such a sanction, particularly where the undersigned and Defendants have taken many steps to supplement production and comply with Defendants' discovery obligations, would be unduly harsh and a violation of Defendants' due process rights in this case. The Court should deny Plaintiff's motion for default judgment.

## ARGUMENT AND AUTHORITIES

Rule 215.2 allows a trial court to sanction a party for failure to comply with a discovery order or request. *See* TEX. R. CIV. P. 215.2; *see also Cire v. Cummings,* 134 S.W.3d 835, 839 (Tex. 2004). Among the sanctions available under rule 215.2 are orders "striking out pleadings or parts thereof," "dismissing with or without prejudice the actions or proceedings or any part thereof," and "rendering a judgment by default against the disobedient party." *See* TEX. R. CIV. P.

215.2(b)(5). These sanctions, that adjudicate a claim and preclude presentation of the merits of the case, are often referred to as "death penalty" sanctions. *Cire,* 134 S.W.3d at 840-41; *see also Transamerican,* 811 S.W.2d at 918; *see also Perez v. Murff,* 972 S.W.2d 78, 81 (Tex. App.—Texarkana 1998, pet. denied). There is no doubt that Plaintiff is seeking such death penalty sanctions by way of a default judgment on liability.

"Death penalty" sanctions are harsh, and generally, "courts must impose—not just consider—lesser sanctions before resorting to the "death penalty." *Gunn,* 397 S.W.3d at 366 (citing *Cire,* 134 S.W.3d at 842). A trial court may not impose sanctions that are more severe than necessary to satisfy legitimate purposes. *In re RH White Oak, LLC,* 442 S.W.3d 492, 501 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) (citing *Cire,* 134 S.W.3d at 839).

In the context of discovery disputes and sanctions requests, a discovery sanction must be just; a direct relationship must exist between the improper conduct and the sanction imposed, and the sanction "should be no more severe than necessary to satisfy its legitimate purposes." *Gunn v. Fuqua,* 397 S.W.3d 358, 366 (Tex. App.—Dallas 2013, pet. denied) (quoting *TransAmerican Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding)). Discovery sanctions serve to secure compliance with the discovery rules, deter other litigants from violating the discovery rules, and punish those who violate the rules. *Id.* (citing *5 Star Diamond, LLC v. Sing,* 369 S.W.3d 572, 577 (Tex. App.—Dallas 2012, no pet.)).

Under the first prong—the direct relationship prong—such a direct relationship exists if a trial court directs the sanction against the abuse found and it remedies the prejudice caused to the innocent party. *TransAmerican,* 811 S.W.2d at 917. This means that the trial court must also at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. *Id.* Under the second prong, sanctions must not be excessive, and the trial

court must have considered whether lesser sanctions were available that would have fully promoted compliance. *Id.* Generally, before a sanction that prevents a decision on the merits is justified, lesser sanctions must first be tested to determine their efficacy. *In re RH White Oak,* 442 S.W.3d at 502 (citing *Cire,* 134 S.W.3d at 840). In all but the most exceptional cases, the trial court must actually test the lesser sanctions before striking pleadings (or rendering a default judgment). *Cire,* 134 S.W.3d at 840.

Further, the Texas Supreme Court has explained that the imposition of very severe sanctions is not only limited by the above-referenced standards, but also by constitutional due process:

> Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it. Although punishment and deterrence are legitimate purposes for sanctions, they do not justify trial by sanctions. Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.

*TransAmerican,* 811 S.W.2d at 918.

This case is not the "exceptional case" warranting "death penalty" sanctions at this juncture of the litigation. *See Cire,* 134 S.W.3d at 842. As Plaintiff concedes, there has only been (1) motion to compel granted by the Court that likewise resulted in monetary sanctions being issued against Defendants. No other sanctions have ever been issued by the Court, and Plaintiff's conclusory claim that lesser sanctions, if any, would be ineffective to promote further compliance with the discovery rules has no merit.

## A.   Plaintiff's Citations Mislead the Court as to Whether the Court Should Consider Alleged Discovery Violations in Other Cases.

Plaintiff's supplemental brief makes the argument that this Court can and should consider discovery disputes in *Lafferty* (the Connecticut state court cases) and the other separate Sandy Hook cases pending in this Court (*Lewis* and *Pozner*). *See* Supp. Brief at 41-44. Yet, a thorough review of the cases cited by Plaintiff in support of this contention demonstrate Plaintiff has misled the Court and cherry-picked phrases out of certain decisions to support its meritless position. For example, Plaintiff cites to *Buck v. Estate of Buck,* 291 S.W.3d 46, 56 (Tex. App.—Corpus Christi 2009, no pet.) for the claim that "the trial court may consider action taken in another court when that action is relevant to the case pending before the trial court." *See* Supp. Brief at 42. But a review of that decision demonstrates that (1) that quoted language came from an entirely different case cited in *Buck*; and (2) the "another court" language was actually speaking to a decision made by a trial court in a case prior to the case being consolidated and moved to another court, i.e., it was a decision from a different trial court but in the same exact case. *See Braden v. South Main Bank,* 837 S.W.2d 733, 736-37 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

Notably, none of the cases cited by Plaintiff—the vast majority of which are non-Texas cases—supports the position that the Court can consider alleged discovery violations in entirely separate matters. In particular, none of the cases referenced by Plaintiff stand for the proposition that discovery issues involving different plaintiffs with a much different scope of discovery (such as the situation in *Lafferty*) can serve as the basis for jumping immediately to "death penalty" sanctions. Indeed, such a consideration would actually be in violation of the "direct relationship" standard consistently utilized by Texas courts. Plaintiff's motion and supplemental brief do nothing to demonstrate how Plaintiff has been prejudiced in any way by the discovery situations in any of the other Sandy Hook cases, whether they are in Connecticut or Texas. Similarly, because

9

any punishment should fit the alleged crime and should only "remedy the prejudice caused the innocent party," it is incumbent upon Plaintiff to explain why he should receive any sort of benefit from the discovery orders in any of these other matters referenced throughout his briefing. *See Christus Health Gulf Coast v. Carswell,* 505 S.W.3d 528, 540 (Tex. 2016).

Plaintiff has tellingly cited no Texas case law interpreting Rule 215's "direct relationship" requirement to allow the imposition of sanctions based upon alleged wrongdoing in other, separate causes of action, much less situations in lawsuits filed in entirely different states. Instead, Texas courts seem very reluctant to allow Rule 215 to be used as a sort of score-settling mechanism for even closely related litigation or litigants. *See, e.g, Kings Park Apts. v. Nat'l Union Fire Ins. Co.,* 101 S.W.3d 525, 541 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). More to the point, it is again important to remember that the alleged discovery abuses by Defendants in this case concerns only discovery related to Defendants' TCPA motion to dismiss—as to which only limited discovery was permissible under TEX. CIV. PRAC. & REM. CODE § 27.006(b)—these alleged abuses do not pertain to general discovery issued by Plaintiff which encompass the entirety of the merits of Plaintiff's claims. Consequently, it would be wholly inappropriate and far too excessive to grant a default judgment to Plaintiff as to liability for the entirety of his IIED claims when the discovery at issue was only limited as to the issues in Defendants' TCPA motion to dismiss.

**B.    A Default Judgment Would be Excessive and is Not Supported by the Record, Regardless of Plaintiff's Incendiary Accusations.**

As stated above, a discovery sanction must be just; a direct relationship must exist between the improper conduct and the sanction imposed, and the sanction "should be no more severe than necessary to satisfy its legitimate purposes." *Gunn,* 397 S.W.3d at 366 (quoting *TransAmerican,* 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding)); *see also Brookshire Bros., Ltd. v. Aldridge,* 438 S.W.3d 9, 21 (Tex. 2014). Here, despite the discovery at issue being only that limited

discovery available under Tex. Civ. Prac. & Rem. Code § 27.006(b), Plaintiff is seeking to circumvent the entire litigation process by requesting death penalty sanctions as to the merits on liability, when this case is, procedurally speaking, still at its initial stages. In essence, Plaintiff is seeking to have the Court punish Defendants for availing themselves of the legally available right to file a TCPA motion to dismiss and subsequently conduct an interlocutory appeal when such motion was denied by the Court. But that is not how sanctions work, and that certainly does not justify the imposition of death penalty sanctions.

"Death penalty" sanctions are harsh, and generally, "courts must impose—not just consider—lesser sanctions before resorting to the "death penalty." *Gunn,* 397 S.W.3d at 366 (citing *Cire,* 134 S.W.3d at 842). A trial court may not impose sanctions that are more severe than necessary to satisfy legitimate purposes. *In re RH White Oak,* 442 S.W.3d at 501 (citing *Cire,* 134 S.W.3d at 839). While Plaintiff has provided voluminous briefing and hundreds of pages of exhibits in support of his motion for default judgment, there are glaring omissions from Plaintiff's motion and supplemental brief that deem that his request for a default judgment should be denied. Most importantly, Plaintiff in no ways discusses the extent of any alleged discovery abuses and any direct relationship between those alleged abuses and Plaintiff's claims, nor does Plaintiff make any attempt to actually demonstrate that he has been prejudiced in any way. Rather, Plaintiff just presupposed that the Court should assume he has been prejudiced based on conclusory allegations and regurgitation of his prior arguments that have already been considered and ruled upon by Judge Jenkins.

Even if Plaintiff's claims of discovery abuse are all taken as true, a default judgment sanction would still be far too excessive, and that would go far beyond that necessary to secure compliance with the discovery rules. *See In re RH White Oak,* 442 S.W.3d at 501 (citing *Cire,* 134

S.W.3d at 839). In fact, no sanctions at all are necessary at this stage, as Defendants have already taken, and continue to take, necessary steps to supplement their discovery responses to ensure compliance with their discovery obligations. While Plaintiff discounts the initial 77,000 pages of documents that were produced as largely containing non-responsive materials, Plaintiff truly makes no effort to provide evidentiary support for this allegation. Moreover, Defendants have also further supplemented their production with an additional approximately 7,000 pages of documents, which the undersigned personally reviewed and represents to the Court are documents that are directly responsive to Plaintiff's discovery requests to date.

Defendants and the undersigned also continue to take significant efforts to review additional documents for responsiveness and will continue to supplement their production on a timely and regular basis to ensure full compliance with their discovery obligations under the Texas rules. This is simply not the "egregious" or "exceptional" case warranting the death penalty sanctions sought by Plaintiff, and the "rendition of default judgment as a discovery sanction ought to be the exception rather than the rule." *TransAmerican,* 811 S.W.2d at 918-19. Because of the current procedural posture of this case, and because Defendants have continued to take the necessary steps to address any alleged discovery deficiencies, this Court should not allow Plaintiff to conduct a "trial by sanction" instead of having to prove the merits of his IIED claims. *Id.; see also Altesse Healthcare Solutions v. Wilson,* 540 S.W.3d 570, 572 (Tex. 2018). In fact, the lack of any true specificity by Plaintiff as to what discovery has not been properly responded to (at least in Plaintiff's eyes) beyond Plaintiff's generalized claim that Defendants have abused the discovery process cannot serve as a legitimate basis for any death penalty sanctions. As such, the Court should deny Plaintiff's motion for default judgment.

C. **Plaintiff's Ridiculous Claims that Default Sanctions are Warranted Because Infowars Endangers the Parties and the Court Have No Merit and Cannot Serve as a Basis for Discovery-Related Sanctions.**

Plaintiff's last-ditch argument to secure death penalty sanctions is the meritless contention that such sanctions are warranted because Defendants have somehow "threatened the safety of everyone involved." *See* Supp. Brief at 49. Again, Plaintiff relies upon situations that purportedly were addressed in the *Lafferty* case in Connecticut, while also claiming—without any real evidence—that Plaintiff's counsel has received death threats in this case. Unsurprisingly, Plaintiff has not actually claimed that any of the Defendants caused these death threats to occur, to the extent they even did occur. In addition, the fact that Defendants have at one time or another expressed their displeasure and disagreement with the merits of any of the Sandy Hook-related claims does not support the entering of a default judgment on liability for Plaintiff's dubious IIED claims. Regardless of whether any of these allegations are true, such ridiculous assertions have no bearing on whether default judgment should be issued as a sanction for alleged discovery abuses. They are simply a thinly veiled attempt by Plaintiff to further bias the Court against Defendants due solely to Defendants' exercise of their First Amended right to free speech, but that certainly cannot be the basis for any discovery sanctions. The Court should thus deny Plaintiff's motion for default judgment and allow this case to proceed to a trial on its merits.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court deny Plaintiff's motion for a default judgment as discovery sanctions, along with such other and further relief to which Defendants may be justly entitled.

Dated: August 30, 2021.

Respectfully submitted,

By: ___/s/ Bradley J. Reeves_____ _
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 30, 2021.

Mark Bankston                                           *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

___/s/ Bradley J. Reeves_____
Bradley J. Reeves

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56762308
Status as of 8/30/2021 8:18 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/30/2021 9:06:31 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 8/30/2021 9:06:31 AM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 8/30/2021 9:06:31 AM | SENT |
| Marc Randazza | | ecf@randazza.com | 8/30/2021 9:06:31 AM | SENT |
| William Ogden | | bill@fbtrial.com | 8/30/2021 9:06:31 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/30/2021 9:06:31 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/30/2021 9:06:31 AM | SENT |

8/30/2021 1:00 PM
**Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Jonathan Sanders**

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC; AND | § | |
| OWEN SHROYER | § | |
| | § | |
| *Defendants,* | § | 261ST JUDICIAL DISTRICT |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S
### SECOND MOTION FOR CONTEMPT UNDER RULE 215

Defendants, Alex E. Jones; Infowars, LLC; Free Speech Systems, LLC; and Owen Shroyer (collectively "Defendants"), file this response to Plaintiff's Second Motion for Contempt Under Rule 215, and would show unto the Court as follows:

### SUMMARY OF RESPONSE

Plaintiff's motion seeks contempt sanctions related to alleged discovery abuses by Defendants, yet his motion fails to provide any specificity as to what conduct the Court should be sanctioning. Plaintiff's motion—essentially verbatim to that filed by Scarlett Lewis against Defendants in Cause No. D-1-GN-18-00623—fails to provide any pointed explanation as to what alleged discovery abuses by Defendants are ongoing which would warrant a contempt finding beyond making the nebulous, conclusory claims that Defendants have failed to adhere to their discovery obligations. Indeed, Plaintiff's motion provides no evidence to support his request for a contempt finding except for exhibits of her past pleadings (which are not evidence), irrelevant orders from cases in Connecticut, and an email from the undersigned acknowledging that counsel was working to get up to speed with discovery to in all these matters to ensure discovery

obligations had been met. Plaintiff's motion also does not take into account the recent discovery supplementation from Defendants wherein Defendants have produced approximately 7,000 pages of additional, responsive documents.

Rather than allow the undersigned sufficient time to ensure discovery obligations had been met, or to take the necessary actions to meet Defendants' discovery obligations—and knowing full well that the undersigned was beginning a 2-week jury trial with Judge Meachum beginning July 12th—Plaintiff and her counsel filed this unnecessary motion for contempt fraught with incendiary allegations and innuendo. Because Plaintiff has failed to provide the appropriate level of detail setting out how, when, and by what means Defendants have abused the discovery process such that a contempt finding should occur, this Court should deny Plaintiff's motion.

Moreover, there is simply no reason for the Court to enter any contempt finding. Defendants have not willingly or intentionally violated any court order, and the undersigned has been working diligently to ensure Defendants' compliance with their discovery obligations in this case. To wit, Defendants have produced an additional approximately 7,000 pages of documents which are responsive to Plaintiff's discovery requests, and the undersigned is continuing to review additional documents to determine if further responsive documents exist necessitating further supplementation. Given that procedurally, this case is just now in the throes of discovery in this matter—whereas Plaintiff's initial discovery requests were allowed as limited discovery under TEX. CIV. PRAC. & REM. CODE § 27.006(b). Consequently, Defendants are complying with and will continue to comply with their discovery obligations in this case, including as directed by prior orders of the Court. As such, there is no need or meritorious basis to impose any sanctions against Defendants, including a finding of contempt, and the Court should deny Plaintiff's motion.

<u>**Response to Second Motion for Contempt**</u>

Plaintiff's motion is littered with inflammatory language and sensational assertions all with the goal of having this Court find Defendants in contempt without Plaintiff specifying the alleged conduct for which a contempt finding should occur beyond generalized statements alleging Defendants' non-compliance with discovery orders. However, Plaintiff's motion is procedurally improper because it fails to state whether Plaintiff is seeking a civil or criminal contempt finding against Defendants, thus making it impossible to determine whether the legally required notice regarding such a request for a contempt finding has actually occurred. *See, e.g., In re Wal-Mart Stores, Inc.,* 545 S.W.3d 626, 632 (Tex. App.—El Paso 2016, orig. proceeding) (citing *In re Moreno,* 328 S.W.3d 915, 918 (Tex. App.—Eastland 2010, orig. proceeding)) (discussing how a motion for criminal contempt requires that the alleged contemnor be personally served and that notice given to the attorney is inadequate). Plaintiff's motion likewise fails to point to any specific conduct or alleged violations of any court orders beyond broad assertions of Defendants' failures to comply with its discovery obligations and the Court's discovery orders. As such, Plaintiff's motion for contempt should be denied.

<u>**Argument and Authorities**</u>

While it is true that punishment for contempt of court is authorized under Tex. R. Civ. P. 215.2(b)(6) for failure to obey an order regarding discovery, the burden is on Plaintiff to clearly establish that Defendants have actually failed to obey such an order. *In re Ragland,* 973 S.W.2d 769, (Tex. App.—Tyler 1998, orig. proceeding). Courts use civil contempt to coerce parties to comply with a court order, usually through a conditional penalty. *Khan v. Valliani,* 439 S.W.3d 528, 536 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Contempt has been broadly defined by Texas courts to mean "disobedience to or disrespect of a court by acting in opposition to its

authority." *In re Reece,* 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding) (quoting *Ex parte Chambers,* 898 S.W.2d 257, 259 (Tex, 1995) (orig. proceeding)). While contempt is an inherent power of a court, the Texas Supreme Court has "warned it is a tool that should be exercised with caution." *Id.* (citing *Herring v. Houston Nat'l Exch. Bank,* 255 S.W. 1097, 1104 (Tex. 1923) (orig. proceeding)). Contempt may occur in the presence of a court (direct contempt), or outside the court's presence (constructive contempt). *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). This is obviously an allegation by Plaintiff that constructive contempt has occurred.

Contempt is further classified into ether civil or criminal contempt. *In re Reece,* 341 S.W.3d at 365. Civil "contempt is 'remedial and coercive in nature'—the contemnor carries the keys to the jail cell in his or her pocket since the confinement is conditioned on obedience with the court's order." *Id.* (quoting *Ex parte Werblud,* 536 S.W.2d 542, 545 (Tex. 1979) (orig. proceeding)). While a court has the inherent power and authority to find a party in contempt, that ability to punish for contempt is not unfettered. *Id.* at 366. Rather, an act must "impede, embarrass, or obstruct the court in the discharge of its duties in order to constitute constructive contempt." *Id.* (citing *Ex parte Norton,* 191 S.W.2d 713, 714 (Tex. 1946) (orig. proceeding)). "The essence of contempt is the contemn[o]r's conduct obstructs or tends to obstruct the proper administration of justice." *Id.* (quoting *Lee v. State,* 799 S.W.2d 750, 752 (Tex. Crim. App. 1990)); *see also Ex parte Gibson,* 811 S.W.2d 594, 596 (Tex. Crim. App. 1991).

The distinction between the two types of contempt is important because more procedural safeguards are afforded to constructive contemnors than to direct contemnors. *Ex parte Werblud,* 536 S.W.2d at 546. Due process requires that the constructive contemnor be given "full and complete notification" and a reasonably opportunity to meet the charges by way of defense or explanation. *Shook v. Gilmore Tatge Mfg. Co.,* 851 S.W.2d 887, 893 (Tex. App.—Waco 1993,

writ denied) (citing *Ex parte Edgerly,* 441 S.W.2d 514, 516 (Tex. 1969) (orig. proceeding)). Here,

any alleged notice to Defendants is only by way of Plaintiff's vague, generalized statements that

Defendants have failed to comply with the Court's prior discovery order. Plaintiff makes no effort

to state with any relative specificity how Defendants have failed to comply with such orders,

leaving Defendants to blindly guess as to how to defend themselves against Plaintiff's motion. The

mere fact that the undersigned asked Plaintiff's counsel for an opportunity to get up to speed on

the file, particularly as it pertains to discovery—which is the only specific argument raised in

Plaintiff's motion—is in no way evidence of willful or intentional disobedience of a court order

for which a contempt finding could occur. In fact, it proves the exact opposite—that Defendants

and their counsel were doing everything within their power to comply with their discovery

obligations and the Court's prior discovery orders.

Plaintiff's motion should likewise be denied because he fails to adequately notify

Defendants as to whether he is seeking civil contempt, criminal contempt, or both. The distinction

is crucial because a request for criminal contempt must meet the required notice under the law,

which means Defendants must have been personally served with Plaintiff's motion for contempt—

service on Defendants' attorney is insufficient. *In re Wal-Mart Stores,* 545 S.W.3d at 632 (citing

*In re Moreno,* 328 S.W.3d at 918). Because it is impossible to determine what remedy Plaintiff is

seeking on the face of her pleadings, the lack of specificity and generalized allegations fail to

provide the level of notice required for the Court to enter a finding of contempt. Thus, the Court

should deny Plaintiff's motion for contempt.

That notwithstanding, in the context of discovery disputes and sanctions requests, a

discovery sanction must be just; a direct relationship must exist between the improper conduct and

the sanction imposed, and the sanction "should be no more severe than necessary to satisfy its

legitimate purposes." *Gunn v. Fuqua,* 397 S.W.3d 358, 366 (Tex. App.—Dallas 2013, pet. denied)
(quoting *TransAmerican Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991) (orig.
proceeding)). Discovery sanctions serve to secure compliance with the discovery rules, deter other
litigants from violating the discovery rules, and punish those who violate the rules. *Id.* (citing *5
Star Diamond, LLC v. Sing,* 369 S.W.3d 572, 577 (Tex. App.—Dallas 2012, no pet.)).

Under the first prong—the direct relationship prong—such a direct relationship exists if a
trial court directs the sanction against the abuse found and it remedies the prejudice caused to the
innocent party. *TransAmerican,* 811 S.W.2d at 917. This means that the trial court must also at
least attempt to determine whether the offensive conduct is attributable to counsel only, or to the
party only, or to both. *Id.* Under the second prong, sanctions must not be excessive, and the trial
court must have considered whether lesser sanctions were available that would have fully
promoted compliance. *Id.* Generally, before a sanction that prevents a decision on the merits is
justified, lesser sanctions must first be tested to determine their efficacy. *In re RH White Oak, LLC,*
442 S.W.3d 492, 502 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) (citing *Cire v.
Cummings,* 134 S.W.3d 835, 840 (Tex. 2004)). These factors apply to all types of possible
discovery sanctions, including holding a party in contempt. *Shook,* 851 S.W.2d at 892.

Taking these two prongs into consideration in this case, a finding of contempt against
Defendants in this context would be excessive and would not be a punishment that fits the alleged
crime. Moreover, holding Defendants in contempt when Plaintiff has failed to adequately provide
Defendants with true notice of the underlying issues at the heart of his contempt request would
violate Defendants' due process rights. *Ex parte Edgerly,* 441 S.W.2d at 516. As stated above,
Plaintiff's failure to even state in his motion whether she is seeking criminal or civil contempt
against Defendants demonstrates his motion is improper and inadequate notice has been given to

Defendants such that any finding of contempt would be in violation of their due process rights.

Finally, Defendants' continued participation in the discovery process, including recent supplementation of their production, demonstrates that Defendants are not disobeying any court order and that no sanctions at all are necessary at this stage. Defendants have already taken, and will continue to take, necessary steps to supplement their discovery responses to ensure compliance with their discovery obligations. Plaintiff may discount the initial 77,000 pages of documents that were produced as largely containing non-responsive materials, but Plaintiff truly makes no effort to provide evidentiary support for this allegation. Moreover, Defendants have also further supplemented their production with an additional approximately 7,000 pages of documents, which the undersigned personally reviewed and represents to the Court are documents that are directly responsive to Plaintiff's discovery requests to date.

Defendants and the undersigned also continue to take significant efforts to review additional documents for responsiveness and will continue to supplement their production on a timely and regular basis to ensure full compliance with their discovery obligations under the Texas rules. This is simply not the type of situation warranting any finding of contempt. Because of the current procedural posture of this case, and because Defendants have continued to take the necessary steps to address any alleged discovery deficiencies, this Court should deny Plaintiff's motion for contempt.

### **Prayer**

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court deny Plaintiff's second motion for contempt, along with such other and further relief to which Defendants may be justly entitled.

Dated: August 30, 2021.

Respectfully submitted,

By: ___/s/ Bradley J. Reeves_____ _
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 30, 2021.

Mark Bankston                                          *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

___/s/ Bradley J. Reeves_____
Bradley J. Reeves

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56778219
Status as of 8/31/2021 10:13 AM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/30/2021 1:00:55 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 8/30/2021 1:00:55 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 8/30/2021 1:00:55 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 8/30/2021 1:00:55 PM | SENT |
| William Ogden | | bill@fbtrial.com | 8/30/2021 1:00:55 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/30/2021 1:00:55 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/30/2021 1:00:55 PM | SENT |

8/31/2021 4:29 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Alexus Rodriguez

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

## ORDER REGARDING PROTOCOL FOR *IN CAMERA* REVIEW

On this day, the Court considered Plaintiffs' Motion for Protection Regarding *In Camera* Review. The Court finds that the motion should be granted. It is therefore ORDERED that the parties shall use the following protocol if mental health records are requested in discovery:

(1)    Plaintiffs will produce mental health records that are responsive to Defendants' request for production and are in his or her possession or subject to his or her control unless they are objected to. To the extent there are mental health records responsive to any of Defendants' requests in the possession of third-parties, Plaintiffs will subpoena those records and respond to the request indicating that such records have been subpoenaed.

(2)    Plaintiffs will immediately produce any records in his or her possession or received by subpoena for which there is no objection. Within 14 days of their receipt, or as otherwise agreed by the parties, the Plaintiffs will provide to Defendants a log describing any documents which the Plaintiffs seek to withhold for reasons of privilege, relevance, or privacy. Plaintiffs' log will describe the documents being withheld with the following information: a., identifying the date, b. the parties to the communication, c. all attachments, d. general subject matter, and e. the basis that they are being withheld with sufficient specificity so that Defendants have the opportunity to agree or disagree on particular documents.

(3)    Within 14 days after receiving the log, or as otherwise agreed by the parties, Defendants will provide a list of any documents for which it challenges the basis for withholding. Upon receipt of that list, Plaintiffs will provide the documents identified by Defendants to the Court within three business days, or as otherwise agreed by the parties, in connection with a hearing where the parties can argue why - based upon the privilege log - the documents that are identified and which the Court is going to review in camera, should or should not be withheld.

Nothing in this agreement is intended to limit Defendants' opportunity to subpoena third party records, nor limit the Plaintiffs' opportunity to quash or seek a protective order.

Dated _August 31_, 2021.

Judge Presiding
Maya Guerra Gamble

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shannon Matusek-Steele on behalf of Samuel Denton
Bar No. 24064378
shannon.matusek-steele@traviscountytx.gov
Envelope ID: 56841596
Status as of 9/7/2021 2:11 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/31/2021 4:29:28 PM | SENT |

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/31/2021 4:29:28 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Scott Weatherford | | sweatherford@jw.com | 8/31/2021 4:29:28 PM | SENT |
| Joshua ARomero | | jromero@jw.com | 8/31/2021 4:29:28 PM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 8/31/2021 4:29:28 PM | SENT |
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 8/31/2021 4:29:28 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 8/31/2021 4:29:28 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 8/31/2021 4:29:28 PM | SENT |
| William Ogden | | bill@fbtrial.com | 8/31/2021 4:29:28 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/31/2021 4:29:28 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/31/2021 4:29:28 PM | SENT |

Associated Case Party: InfoWars, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/31/2021 4:29:28 PM | SENT |

Associated Case Party: Free Speech, LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shannon Matusek-Steele on behalf of Samuel Denton
Bar No. 24064378
shannon.matusek-steele@traviscountytx.gov
Envelope ID: 56841596
Status as of 9/7/2021 2:11 PM CST

Associated Case Party: Free Speech, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/31/2021 4:29:28 PM | SENT |

Associated Case Party: Owen Shroyer

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/31/2021 4:29:28 PM | SENT |

8/31/2021 4:29 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Alexus Rodriguez

D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459 th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| **VS.** | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459 th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459 th DISTRICT COURT |
| *Defendants* | § | |

## ORDER DENYING MOTION FOR PRO HAC VICE ADMISSION OF MARC J. RANDAZZA

The Court, having reviewed the Opposed Motion for *Pro Hac Vice* Admission of Marc J.

Randazza and the Opposed Motion for *Pro Hac Vice* Admission of Marc J. Randazza by

Resident Attorney, finds that the Motions should be DENIED and thus DENIES Marc J.

Randazza's *pro hac vice* admission to this Court.

IT IS SO ORDERED.

SIGNED on this the 31st day of August, 2021

Presiding Judge
Maya Guerra Gamble



# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shannon Matusek-Steele on behalf of Samuel Denton
Bar No. 24064378
shannon.matusek-steele@traviscountytx.gov
Envelope ID: 56841596
Status as of 9/7/2021 2:11 PM CST

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/31/2021 4:29:28 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Scott Weatherford | | sweatherford@jw.com | 8/31/2021 4:29:28 PM | SENT |
| Joshua ARomero | | jromero@jw.com | 8/31/2021 4:29:28 PM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 8/31/2021 4:29:28 PM | SENT |
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 8/31/2021 4:29:28 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 8/31/2021 4:29:28 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 8/31/2021 4:29:28 PM | SENT |
| William Ogden | | bill@fbtrial.com | 8/31/2021 4:29:28 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/31/2021 4:29:28 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/31/2021 4:29:28 PM | SENT |

Associated Case Party: InfoWars, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/31/2021 4:29:28 PM | SENT |

Associated Case Party: Free Speech, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/31/2021 4:29:28 PM | SENT |

Associated Case Party: Owen Shroyer

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shannon Matusek-Steele on behalf of Samuel Denton
Bar No. 24064378
shannon.matusek-steele@traviscountytx.gov
Envelope ID: 56841596
Status as of 9/7/2021 2:11 PM CST

Associated Case Party: Owen Shroyer

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/31/2021 4:29:28 PM | SENT |

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/31/2021 4:29:28 PM | SENT |

9/1/2021 1:32 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Gilberto Rios

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

## PLAINTIFFS' NOTICE OF FILING DECLARATION
## REGARDING ATTORNEYS' FEES

1

Come now Plaintiffs, and pursuant to the Court's instructions at the August 31, 2021 oral hearing, hereby give notice of filing of their counsel's declaration regarding attorney fees, attached herein at "Exhibit 1."

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021 the forgoing document was served upon all counsel of record via electronic service.


_____

MARK D. BANKSTON

## <u>DECLARATION OF MARK BANKSTON</u>

STATE OF TEXAS    §
                           §
HARRIS COUNTY    §

I, Mark Bankston, declare under penalty of perjury that the following declaration is true and

correct and based upon my personal knowledge:

1. My name is Mark Bankston. I am over the age of 21 and competent to make this declaration.

2. I am a partner at the law firm Kaster Lynch Farrar & Ball, LLP in Houston, Texas. My partners and I specialize in various areas of plaintiffs' trial law, including products liability, civil rights, mass torts, and media law.

3. As a civil litigator, I have twelve years of experience in handling tort lawsuits. I have tried more than a dozen injury lawsuits to a jury. I have represented scores of clients in over twenty different states in connection with various product liability, civil rights, employment, and negligence cases in state and federal court. I have also represented plaintiffs in over a dozen appellate victories at the state and federal level.

4. Since 2017, I have served on the Steering Committee for MDL-2666, *In re Bair Hugger Products Liability Litigation,* pending in U.S. District Court for the District of Minnesota. I am also the Plaintiffs' Briefing Chair for that consolidated proceeding. My billing is submitted to the Steering Committee at a rate of $550 per hour.

5. When I first began the InfoWars lawsuits cases three years ago, I valued my billing rate for this litigation at $450 per hour. Last year, I increased that rate, and in 2020, the declarations I submitted in these cases were raised to $550 per hour, due to recent events in my legal career.

6. My law firm has experienced extraordinary success over the past three years. After we filed these lawsuits, my firm garnered significant attention for our eight-figure trial verdict and multiple related settlements in *Brown v. Silvi,* a Pennsylvania lawsuit in which both a mother and her 18-month-old child suffered limb amputations due to corporate negligence. My firm also received attention for our $7.2 million verdict in *Breaux v. Goodyear,* a Louisiana tire defect lawsuit in which a state maintenance worker was killed by the concussive force of an exploding tire.

7. In 2019, I briefed the successful appeal in *Bandemer v. Ford Motor Co*., which won at the Minnesota Supreme Court on a hotly litigated issue on the contacts necessary to establish specific jurisdiction. My partner Kyle Farrar argued *Bandemer* to the

Minnesota Supreme Court. In 2020, the U.S. Supreme Court accepted *certiorari*. I worked with D.C. law firm Gupta Wessler in briefing the case to the Supreme Court, where we were ultimately victorious against Ford and its numerous *amici*. I have spoken to multiple legal conferences who invited me to hear about this critical victory.

8. In 2020, my firm was named a top five finalist for the National Law Journal's Elite Trial Lawyers "Law Firm of the Year" for products liability litigation.

9. From 2019-2020, I received significant national attention and accolades due to my work in these InfoWars cases. The Plaintiffs' fight against Mr. Jones' persistent discovery abuse has attracted substantial public interest and media coverage.

10. Alex Jones even acknowledged the national accolades I have received, stating on his April 4, 2019 show, "They talk about how incredible this lawyer is, the new Perry Mason."[1] I have also received significant attention simply for being the lawyer who was able to have Mr. Jones admit under oath that the Sandy Hook shooting really happened.

11. In 2020, my national profile in mass media defamation litigation increased with my representation of Imran Awan in his suit against Tucker Carlson's *Daily Wire* and other fake news outlets. Mr. Awan, a Democratic Congressional aide, was smeared with fabricated allegations about an IT hacking scandal in Congress. Mr. Awan is the "mysterious Pakistani gentleman" who President Trump infamously alleged could be responsible for the Wikileaks DNC hack during his joint press conference with Vladimir Putin in Helsinki.

12. The InfoWars lawsuits pending in this Court require an attorney who is both capable and willing to handle this unusually demanding, extraordinarily high-profile litigation. Moreover, the gravity of the default sanctions dispute currently before the Court is extreme.

13. These motions presented complicated legal and evidentiary issues which required an attorney of a high level of competence.

14. I am personally familiar with the rates charged by other attorneys of my experience and professional background in this locality, as well as rates charged by attorneys in high-profile defamation lawsuits, and it is my opinion that $550 per hour is a reasonable rate for the work necessary in connection with these motions.

15. The following legal services were rendered since remand on June 4, 2021 concerning the motions pending at the Court's August 31, 2021 hearing:

---

[1] *See* Neil Heslin's Supplemental Brief in Support of Default Sanctions, p. 50.

**D-1-GN-19-004651 –** *Heslin v. Jones*
**Supplemental Brief in Support of Motion for Default Judgment, filed June 28, 2021**

This brief was 54 pages along with 1,200 pages of exhibits. However, I was able to build on sections of prior briefing, both from the proceedings in 2019 and from the appeal. There was nonetheless significant new research and briefing required.

I spent 12 hours researching law and reviewing the record, and I spent 18 hours writing and editing the brief. In total, the reasonable value of this time at $550/hour is $16,500.

**D-1-GN-18-001835 –** *Heslin v. Jones*
**Second Motion for Contempt Under Rule 215, filed July 6, 2021**

This motion was 12 pages with 300 pages of exhibits. This brief described the history of discovery problems in the defamation case, as well as developments following appeal. It also described InfoWars' frivolous litigation tactics in 2021, including a motion to depose Hillary Clinton. Fortunately no legal research was required for this motion.

I spent 3.5 hours reviewing the record for materials. I spent 8 hours writing and editing the brief. In total, the reasonable value of this time at $550/hour is $6,325.

**D-1-GN-18-006623 –** *Lewis v. Jones*
**Lewis Motion for Contempt Under Rule 215, filed July 6, 2021**

This motion was 12 pages with 300 pages of exhibits. This brief was able to use much of the material from the similar *Heslin* brief, but it required a unique factual background section and editing of the argument.

I spent 2 hours reviewing the record, and I spent 2 hours drafting and editing the brief. In total, the reasonable value of this time at $550/hour is $2,200.

**D-1-GN-18-001842 –** *Pozner v. Jones*
**Motion to Compel and Motion for Sanctions, filed July 27, 2021**

This motion was 6 pages long with 150 pages of exhibits. The motion required a detailed history of discovery, appeal, and events since remand, but no legal research was required.

I spent 2.5 hours reviewing the record, and I spent 3 hours writing and editing the brief. In total, the reasonable value of this time at $550/hour is $3,025.

**D-1-GN-19-001835 -** *Heslin v. Jones*
**2nd Supp Brief in Support of Motion for Default Judgment, filed August 9, 2021**

I spent one hour preparing this brief regarding the recent sanctions in *Lafferty.* In total, the reasonable value of this time at $550/hour is $550.

## All Motions - Create Presentation for Hearing

Plaintiffs' hearing presentation was over 80 slides, and it required thorough attention to detail concerning the entire history of the Sandy Hook litigation in Texas and Connecticut.

I spent 12 hours creating and editing the presentation. I spent 2 hours selecting and editing the compilation of testimony from Mr. Jones' November 2019 deposition. In total, the reasonable value of this time at $550/hour is $7,700. Divided by four, the reasonable value for each motion is $1,925.

## All Motions - Review of Supplemental Documents

On the eve of the hearing, Defendants produced 7,000 pages in supplemental documents. Given that Defendants intended to rely on this supplemental production as evidence of their compliance and good faith, I had to review the documents. This review was not for the purpose of finding merits-based information for later use, but to assess the nature of the production itself. This required itemizing categories of documents I would otherwise ignore. For merits purposes, I will have to review these documents again in the future.

I spent 6 hours reviewing the documents, making notes, and comparing prior production. The reasonable value of my time at $550/hour is $3,300. Divided by four, the reasonable value for each motion is $825.

## All Motions - Responding to Correspondence

I have spent a combined two hours reading and responding to the many correspondences from Defendants' counsel relating to discovery since remand on June 4, 2021. The reasonable value of this time at $550/hour is $1,100. Divided by four, the reasonable value for each motion is $275.

### All Motions – Preparing for the Hearing

I spent four hours preparing for the hearing, including practicing the presentation and reviewing relevant documents. The reasonable value of this time at $550/hour is $2,200. Divided by four, the reasonable value for each motion is $550.

### All Motions – Reviewing Defendants' Responses

On the day before the hearing, Defendants filed four response briefs. I spent 2.5 hours reviewing and making notes on these responses. The reasonable value of this time at $550/hour is $1,375. Divided by four, the reasonable value for each motion is $343.75

### All Motions – Time in the Hearing

I spent three hours attending the hearing itself. The reasonable value of this time at $550/hour is $1,650. Divided by four, the reasonable value for each case is $412.50

16. There were a variety of other incidental legal services rendered which I did not track and are not being sought. There were also a variety of legal services rendered by my counsel Bill Ogden which are not being sought as I conservatively believe the addition of his work would exceed the minimum level of reasonable and necessary services.

17. I provided a total of 83.5 hours of legal services. At $550 per hour, the value of those services is $45,925.

Executed on September 1, 2021 in Harris County, Texas.

_____

MARK D. BANKSTON

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 56871597
Status as of 9/8/2021 4:41 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 9/1/2021 1:32:09 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 9/1/2021 1:32:09 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 9/1/2021 1:32:09 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 9/1/2021 1:32:09 PM | SENT |

9/8/2021 7:50 PM
**Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez**

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC; AND | § | |
| OWEN SHROYER | § | |
| | § | |
| *Defendants,* | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants,* | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants,* | § | 459th JUDICIAL DISTRICT |

## **DEFENDANTS' OBJECTIONS AND RESPONSE TO PLAINTIFFS' DECLARATION REGARDING ATTORNEYS' FEES**

TO THE HONORABLE JUDGE MAYA GUERRA GAMBLE:

Pursuant to this Court's order, Defendants in the above-captioned matters file this, their objections and response to Plaintiffs' declaration regarding attorneys' fees, and would show unto the Court as follows:

The notice and declaration filed by Plaintiffs' counsel on September 1, 2021 is insufficient under the law and does not provide the Court with any adequate evidentiary basis by which to award any of the Plaintiffs fees.[1] First, as supported by the Declaration of Bradley Reeves attached hereto as Exhibit 1, the $550.00/hour rate sought by Plaintiffs' counsel is not reasonable and does not comport with the rates of other attorneys with Mr. Bankston's experience in the Austin area. Mr. Bankston's declaration makes the conclusory statement that he is "personally familiar with the rates charged by other attorneys of [his] experience and professional background in this locality," but he provides no factual basis to support this claim or to demonstrate how he is familiar with rates charged in Travis County. While Mr. Bankston has cases across the nation, his primary practice locale is Houston, Harris County, Texas—an area in which attorneys charge roughly 15% to 20% higher than attorneys in the Austin, Travis County area. *See* Ex. 1.

Because Mr. Bankston's declaration provides no underlying evidentiary basis to support his conclusory statements that he has personal familiarity with rates charged in cases like this in the Austin, Travis County, Texas area, Defendants object to this portion of the declaration (*see* paragraph 14 of the declaration) on that basis. Defendants ask the Court to disregard this statement in the declaration as conclusory and determine that there is no evidentiary support as to the reasonableness of Mr. Bankston's rates as stated in the declaration. Indeed, a reasonable rate for the work performed in this case in the Austin, Travis County, Texas area would be closer to

---

[1] Plaintiffs' declaration also pre-supposes that each of Plaintiffs' motions will be granted, and in the event the Court denies any of the motions, no fees should be awarded for the denied motions.

$425.00/hour to $450.00/hour for someone with Mr. Bankston's credentials, not $550.00/hour. *See* Ex. 1.

Another major issue with the declaration and how it does not provide adequate evidence to allow this Court to award fees based on the declaration under Texas law is the generalities of the purported services rendered and the lack of any billing records to provide any particularity as to the services Mr. Bankston claims he performed. Plaintiffs' declaration calculates their purported fees based on the lodestar method, i.e., calculating the fees based on "the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP,* 578 S.W.3d 469, 492 (Tex. 2019) (citing *Hensley v. Eckerhart,* 461 U.S. 424 (1983)) (emphasis added); *see also El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757, 760 (Tex. 2012). In *El Apple,* the Texas Supreme Court overturned an award of attorney's fees based on insufficient evidence because the testimony before the trial court did not provide evidence of what hours were devoted to particular tasks, did not present any time records, and were based on generalities. *Rohrmoos,* 578 S.W.3d at 495 (citing *El Apple,* 370 S.W.3d at 763). The Court held that while that information was relevant, it:

> provide[d] none of the specificity needed for the trial court to make a meaningful lodestar determination. The court could not discern from the evidence how many hours each of the tasks required and whether that time was reasonable . . . [so the] court ha[d] little basis upon which to conduct a meaningful review of the fee award.

*El Apple,* 370 S.W.3d at 763. Indeed, the Texas Supreme Court has held that when the lodestar method is utilized by a party as the method for calculating fees, generalities as to the attorney's experience, the total hours spent, the total amount of fees, and the reasonableness of the fees— which may satisfy the *Arthur Anderson* factors (which requires actual billing records)—is "not sufficient to support" a fee award under the lodestar method. *Rohrmoos,* 578 S.W.3d at 496. While contemporaneous billing records are not required to prove that the requested fees are reasonable

and necessary, the Texas Supreme Court has stated that such records are "*strongly encouraged* to prove the reasonableness and necessity of requested fees when those elements are contested." *Rohrmoos,* 578 S.W.3d at 502.

In this case, it is also relevant to remember that Plaintiffs are seeking these attorneys' fees as a sanction, and:

> [b]efore a court may exercise its discretion to shift attorney's fees as a sanction, there must be some evidence of reasonableness because without such proof a trial court cannot determine that the sanction is 'no more severe than necessary' to fairly compensate the prevailing party.

*Nath v. Tex. Children's Hosp.,* 576 S.W.3d 706, 709 (Tex. 2019) (quoting *PR Invs. & Specialty Retailers, Inc. v. State,* 251 S.W.3d 472, 480 (Tex. 2009) (internal citations omitted)). As stated in *Nath,* the *Rohrmoos* case explained the "necessity of presenting either billing records or other supporting evidence when seeking to shit attorney's fees to the losing party." *Id.* at 710 (citing *Rohrmoos,* 578 S.W.3d at 496). But "[c]onclusory affidavit containing mere generalities about the fees for working . . . are legally insufficient to justify [a] sanctions award[] here." *Id.* (citing *Long v. Griffin,* 442 S.W.3d 253, 255 (Tex. 2014) (per curiam) (overturning an attorney's fee award when the affidavit supporting the fees "only offer[ed] generalities" and "no evidence accompanied the affidavit").

Plaintiffs' declaration from Mr. Bankston is not accompanied by any evidence outside of the declaration itself, and the descriptions of work performed are all stated in generalities. For example, regarding the *Heslin v. Jones* Supplemental Brief in Support of Motion for Default Judgment, Mr. Bankston describes the length of the pleading and the 1,200 pages of exhibits, and he then makes the general statement that he "spent 12 hours researching law and reviewing the record, and [he] spent 18 hours writing and editing the brief. In total, the reasonable value of this time at $550/hour is $16,500." *See* Declaration of Mark Bankston at p. 3. However, the declaration

fails to state with any particularity: (1) what research was done; (2) when the research was done;
(3) how that research was incorporated into the briefing; (4) what part of the record was reviewed;
(5) how much time was spent on reviewing the record versus conducting research; (6) how that
review of the record was incorporated into the briefing; (7) what parts of the briefing were written
and how long those parts took to write; or (8) how much of the 18 hours of "writing and editing"
was writing versus editing. The same problems exist for the declaration's descriptions of work
performed for the other motions at issue, albeit to a lesser degree than that of the *Heslin v. Jones*
Supplemental Brief in Support of Motion for Default Judgment discussed above. In the interest of
brevity, the "generality" issues in the declaration for these other three (3) motions are as follows:

- *Heslin v. Jones* Second Motion for Contempt
  - o The declaration describes 3.5 hours of reviewing the record for materials and 8
    hours of writing and editing the brief, yet it does not describe with any specificity
    the materials reviewed and how they were incorporated into the briefing, nor what
    portion of the 8 hours was briefing versus editing.

- *Lewis v. Jones* Motion for Contempt
  - o The declaration states Mr. Bankston spent 2 hours reviewing the record and 2 hours
    drafting and editing the brief, which is too generalized as discussed above, and it is
    further unreasonable considering this motion was essentially verbatim to the *Heslin
    v. Jones* Second Motion for Contempt. Mr. Bankston's declaration does not make
    any effort to state why 4 additional hours of time was required for this briefing
    when the only differences between the motions was a "unique factual background
    section" that was essentially copied and pasted from the Plaintiff's live petition.

- *Pozner v. Jones* Motion to Compel and Motion for Sanctions
  - o The declaration states it required Mr. Bankston 2.5 hours for "reviewing the record"
    and 3 hours for "writing and editing the brief" when it was a mere 6-page motion
    for which no legal research was required. It is impossible to determine what review
    of the record actually occurred and how that contributed to the drafting of the
    motion.

*See* Declaration at p. 3.

Other issues in Mr. Bankston's declaration demonstrate the hours and fees requested are
simply unreasonable. To wit, Mr. Bankston's declaration claims that he spent fourteen (14) hours
creating and editing his powerpoint presentation for the hearing on Plaintiffs' motions. *Id.* at 4.

While the undersigned certainly agrees work went into that presentation, fourteen (14) hours seems excessive, particularly when the declaration lacks any specifics as to what took so long to create beyond the slide show having 80 slides. There is also no basis for Plaintiffs to recover fees for reviewing Defendants' supplemental document production as part of these motions; the Court should disregard that request for $3,300.00 as having no basis or bearing on the presentation of the motions themselves for which Plaintiffs are seeking sanctions.

As further supported in the Declaration of Bradley Reeves attached hereto as Exhibit 1, because Mr. Bankston's declaration does not provide the Court with sufficient information to "meaningfully review whether the tasks and hours were reasonable and necessary under the lodestar method" as required by Texas law, the Court should decline to award Plaintiffs' the fees they are seeking. *See Long,* 442 S.W.3d at 255. Instead, if the Court is inclined to grant Plaintiffs some sort of award of fees (at least in *Pozner*), the Court should only do so based on a significant reduction in the hours and the rate utilized to calculate the total fees (and each should be determined based on the individual case, not in a lump sum as set forth in Mr. Bankston's declaration) as set forth in the attached Declaration of Bradley Reeves. *See* Ex. 1.

WHEREFORE, PREMISES CONSIDERED, Defendants request the Court sustain its objections to the declaration of Mark Bankston, deny the vast majority of the fees sought by Plaintiffs, and for such other and further relief to which Defendants may be justly entitled.

Dated: September 8, 2021.


[Signature on next page]

6

Respectfully submitted,

**REEVES LAW, PLLC**

By: ___*/s/ Bradley J. Reeves*_____
Bradley J. Reeves
Texas Bar No. 24068266
702 Rio Grande St., Suite 203
Austin, TX 78701
brad@brtx.law
Telephone:(512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on September 8, 2021.

Mark Bankston                           *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

___*/s/ Bradley J. Reeves*_____
Bradley J. Reeves

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 57071191
Status as of 9/16/2021 9:01 AM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 9/8/2021 7:50:26 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joshua ARomero | | jromero@jw.com | 9/8/2021 7:50:26 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 9/8/2021 7:50:26 PM | SENT |
| William Ogden | | bill@fbtrial.com | 9/8/2021 7:50:26 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 9/8/2021 7:50:26 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 9/8/2021 7:50:26 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 9/8/2021 7:50:26 PM | SENT |

**Exhibit 1**

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC; AND | § | |
| OWEN SHROYER | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

## DECLARATION OF BRADLEY J. REEVES

1. I am an attorney at law duly admitted and licensed to practice before the courts of the State of Texas, the Southern District of Texas, the Western District of Texas, the Fifth Circuit Court of Appeals, and the United States Supreme Court. I was licensed in Texas in November 2010. My practice is based out of the Austin, Texas area, including Harris County, Travis County, Brazoria County, and Fort Bend County, but also encompasses cases across the nation and a few cases internationally. During that time, I have reviewed billing statements for dozens of law firm related to a wide variety of litigation, including disputes involving claims similar to the type involved in this matter.

2. I am counsel of record for Defendants in the above-captioned matters.

3. This declaration is based upon examination of the appropriate rules of professional conduct and case law related to the recovery of attorneys' fees and costs under Texas law.

4. My opinions in this declaration are based on my personal involvement in all aspects of this litigation, and the entirety of the work performed on this case was done by me. My opinions expressed in this declaration are in rebuttal to the declaration of Mark Bankston, filed September 1, 2021, seeking attorneys' fees related to several motions filed in the above-captioned matters.

5. Having practiced extensively in Harris and Travis County over the last ten (10) years as an attorney with an AmLaw 100 firm and now a solo attorney in Austin, I am intimately familiar with the rates charged in the Harris County and Travis County areas and how the rates in the Houston, Harris County area are generally 15% to 20% higher than those rates in the Austin, Travis County area for the same legal services, simply due to market conditions.

6. The declaration from Mr. Bankston does not set forth the basis by which he claims he is familiar with the rates charged for services in like cases here in Austin, Travis County, Texas beyond a mere conclusory statement that he is somehow "personally familiar" with that information. However, based on my own personal knowledge and experience and the fact that I have primarily practiced in Travis County courts since I have become a solo attorney, it is my opinion that an hourly rate of $550.00/hour for these matters as requested by Mr. Bankston is not reasonable and in fact that such a rate is 15% to 20% higher than what a reasonable rate in this area would be. To that end, it is my opinion that a reasonable rate for an attorney of Mr. Bankston's credentials in the Austin, Travis County, Texas area is closer to $425.00/hour and no more than $450.00/hour.

7. In addition, as outlined below, it is my opinion that the lack of specific information and particular descriptions of the work performed by Mr. Bankston on his various motions for Plaintiffs makes it extremely difficult, if not impossible, to determine whether the hours he has set forth in his declaration are reasonable and necessary in the context of these motions.

8. As rebuttal to the declaration of Mark Bankston, in the event the Court does award certain fees to Plaintiffs, it is my opinion that Mr. Bankston's declaration improperly lumps these separate matters together instead of properly segregating the fees as required under Texas law, and thus the Court does not have sufficient evidence to award any fees on any particular matter.

2

9. Moreover, as to the breakdown of services and fees set forth in Mr. Bankston's declaration, my opinions as to the reasonableness and necessity of the hours allegedly expended (albeit without sufficient detail or description) and rates that would be appropriate for such work are as follows:

**D-1-GN-19-004651 –** *Heslin v. Jones*
**Supplemental Brief in Support of Motion for Default Judgment, filed June 28, 2021**

- It is my opinion that despite the length of the brief, much of it simply reiterated the prior motion for sanctions and default judgment filed by the Plaintiff in this case. Without knowing in greater detail what research and review of the record Mr. Bankston performed or why it took him such an extended period of time to draft this supplemental briefing, it is my opinion that this work should have at most required a total of three (3) hours for "researching and reviewing the record" and no more than eight (8) hours for "writing and editing: the extremely (and unnecessarily) lengthy brief. At a more reasonable rate of $450.00/hour, the total value of this time for this briefing should be no more than $4,950.00.

**D-1-GN-18-001835 –** *Heslin v. Jones*
**Second Motion for Contempt Under Rule 215, filed July 6, 2021**

- The briefing at issue here essentially took the description of the discovery issues in these cases from the supplemental brief discussed above, and in my opinion, this work should have taken at most two (2) hours for reviewing the record and four (4) hours writing and editing the motion. At a reasonable rate of $450.00/hour, the total value of the time for this motion should be no more than $2,700.00.

**D-1-GN-18-006623 –** *Lewis v. Jones*
**Motion for Contempt Under Rule 215, filed July 6, 2021**

- This motion is essentially verbatim to the Second Motion for Contempt filed in the *Heslin* matter, with only minor changes related to the facts of this particular Plaintiff's case which was drawn from Plaintiff's live petition in this matter. This motion should have required little to no "review" of the record, but for the benefit of the doubt, my opinion is that one (.5) hours for review of the record and one (1) hour for drafting the motion is reasonable and necessary under the circumstances. At a reasonable rate of $450.00/hour, the total value of the time for this motion should be no more than $675.00.

**D-1-GN-18-001842 –** *Pozner v. Jones*
**Motion to Compel and Motion for Sanctions, filed July 27, 2021**

- This motion was a very simple 6-page motion and required no legal research as indicated in Mr. Bankston's declaration. However, it in no way should have required 2.5 hours of reviewing the record, but instead should have required at maximum one (1) hour for that task. I concur with Mr. Bankston that three (3) hours writing and editing this motion is reasonable considering the circumstances. At a reasonable rate of $450.00/hour, the total value of the time for this motion should be no more than $1,800.00.

**D-1-GN-19-004651– *Heslin v. Jones***
**Second Supplemental Brief in Support of Motion for Default Judgment, filed August 9, 2021**

- This briefing had absolutely nothing to do with the motion before the Court and was simply intended to further bias the Court against Defendants. It also contained no substantive arguments other than to bring something to the Court's attention. It is my opinion that it would be unreasonable and improper to consider this second supplemental brief and the time associated with it (which should have been at most .25 hours) as part of Plaintiffs' fee request.

**All Motions – Create Presentation for Hearing**

- It is my opinion that while Mr. Bankston clearly put work into creating the slide presentation for the hearings on these motions, the amount of time he has attributed to the presentation is excessive and unreasonable. Based on my review of the slide show at the hearing, a reasonable amount of time that could be attributed to the presentation would be half of the hours Mr. Bankston claims, or seven (7) hours total. At a reasonable rate of $450.00/hour, the total value of the time for this work should be no more than $3,150.00. Divided by four (4)—which I believe is not proper considering the slide show was not delineated and divided equally amongst the four (4) motions—but nevertheless, dividing that by four (4), the reasonable value for each motion attributable to the powerpoint presentation is $787.50.

**All Motions – Review of Supplemental Documents**

- It is my opinion that review of Defendants' supplemental production is part of Mr. Bankston's job and is not something he can attribute to these motions and seek to recover as sanctions. Therefore, it is my opinion that no fees should be awarded to Plaintiffs for Mr. Bankston's review of Defendants' supplemental document production.

**All Motions – Responding to Correspondence**

- I concur with Mr. Bankston's declaration that two (2) hours can be attributed to communications between counsel regarding discovery issues in these cases. At a reasonable rate of $450.00/hour, the total value of time for this work should be $900.00, and divided by four (4), the reasonable value of this for each motion would be $225.00 for each motion.

**All Motions – Preparing for the Hearing**

- I concur with Mr. Bankston that four (4) hours is reasonable for time for preparation for the hearing on these motions. However, the rate he has attributed is not reasonable, and at a reasonable rate of $450.00/hour, the reasonable value of this time is $1,800.00, and divided by four (4), the reasonable value of time is $450.00 per motion.

**All Motions – Reviewing Defendants' Responses**

- I concur with Mr. Bankston that 2.5 hours to review Defendants' responses to the various motions is reasonable, but again, the rate he seeks is not reasonable. At a reasonable rate of $450.00/hour, the total value of this time is $1,125.00, and divided by four (4), the reasonable value of this time is $281.25 for each motion.

**All Motions – Time in the Hearing**

- I concur with Mr. Bankston that the hearing lasted three (3) hours. At the reasonable rate of $450.00/hour, the value of this time is $1,350.00, and divided by four (4), the reasonable value of this time is $337.50 for each motion.

10. I disagree completely with Mr. Bankston's declaration improperly lumping all time and fees requested into a singular amount, instead of properly segregating the time and fees between each motion. Moreover, while I do not believe Plaintiffs should be awarded any fees based on the inadequate declaration from Mr. Bankston and the lack of particularities and specificity as to the services provided and the actual tasks performed, that notwithstanding, it is my opinion that if the Court is inclined to grant some portion of Plaintiffs' fee requests, the reasonable amount of hours, rate, and total fees should be as follows:

- **D-1-GN-19-004651 – *Heslin v. Jones***
  o **15.625 hours at $450.00/hour = $7,031.25**

- **D-1-GN-18-001835 – *Heslin v. Jones***
  o **10.625 hours at $450.00/hour = $4,781.25**

- **D-1-GN-006623 – *Lewis v. Jones***
  o **6.125 hours at $450.00/hour = $2,756.25**

- **D-1-GN-001842 – *Pozner v. Jones***
  o **8.625 hours at $450.00/hour = $3,881.25**

11. My name is Bradley Reeves. My date of birth is February 4, 1986, and my address is 702 Rio Grande St., Suite 203, Austin, Texas 78701.

Signed on this the 8th day of September, 2021.

_____
Bradley J. Reeves

9/10/2021 2:02 PM
**Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez**

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

---

## PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO DECLARATION REGARDING ATTORNEYS' FEES

---

On multiple occasions, both this Court and the Court of Appeals awarded fees to these Plaintiffs based on substantially similar declarations. Indeed, during the December 19, 2019 sanctions hearing in this Court, Defendants presented purported expert testimony on attorney's fees and made the same arguments they are making now. While those arguments are no more compelling today than in yesteryear, Plaintiffs will provide a brief response.

## I.      Defendants' Specificity Complaint is Baseless.

To establish fees, all that is required is testimony as to the services performed, who performed those services, approximately when the services were performed, the amount of time required to perform the services, and the hourly rate. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP,* 578 S.W.3d 469, 502 (Tex. 2019). Here, the declaration goes even farther, as it not only describes each service rendered, but itemizes different tasks involved in each service. Instead of a mere hourly statement on each motion or service, Plaintiffs' counsel also itemized the time spent on different sub-tasks such as research of materials versus drafting. Yet Defendants demand that Plaintiff's counsel drill down even farther, claiming the declaration must split hairs between "writing" and "editing." Defendants demand details never contained within a fee request, such as "what parts of the briefing were written and how long those parts took to write" or "how [counsel's] research was incorporated into the briefing." None of this is required. Defendants' comparison of this case to *El Apple* is absurd, since in that case "neither attorney indicated how the 890 hours they spent in the

aggregate were devoted to any particular task or category of tasks." *El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757, 763 (Tex. 2012). All that is needed is "at least some indication of the time spent on various parts of the case." *Id.* Here, the particular services are itemized, and even sub-itemized.

## II.     Defendants' Complaints About Fee Amounts are Baseless.

Defendants make incorrect assertions about how much time was needed to complete these motions. For instance, Defendants claim the *Lewis* contempt motion required no real work because the only unique parts were "essentially copied and pasted from the Plaintiff's live petition." In truth, Ms. Lewis' motion for contempt incorporated material from the Court of Appeals opinion, two separate discovery orders, a prior motion for sanctions, a prior reply filed in 2019, a hearing transcript in 2019, and three additional appellate opinions in other cases, all of which were quoted and/or included as exhibits. Plaintiffs' counsel located and assembled these two-year-old materials in two hours, and he drafted five pages of briefing and edited the remainder of the motion in two hours. Under the circumstances, these tasks were performed with great haste, yet Defendants still complain. In truth, a "reasonable" fee may well be higher than what Plaintiffs have submitted.

Consider also the *Pozner* motion, which begins with a four-page procedural summary of the case and the parties' correspondence. Defendants claim it was excessive to spend 2.5 hours reviewing the record in that case, arguing that "[i]t is impossible to determine what review of the record actually occurred and how that

contributed to the drafting of the motion." It should be apparent that the review of the record was necessary to generate the procedural history and narrative of the discovery problems. Yet it is truly ironic for Defendants to complain that Plaintiff's counsel spent a mere 2.5 hours reviewing the record when Defendants' counsel spent no time at all reviewing the record, not even recognizing that discovery needed to be answered.

Defendants' other complaints about the declaration are equally baseless:

- Defendants claim that time spent reviewing their eleventh-document dump had no "bearing on the presentation of the motions themselves," but Defendants argued the delivery of those documents provided good cause to deny the motions.

- Defendants complain about fees for preparing the hearing presentation even though Mr. Bankston expended less than two work-days in time preparing an 80-slide PowerPoint that recounted the entire history of the litigation, Plaintiffs' motions, and Defendants' late-filed responses.

- Defendants claim that a reasonable rate is $450/hour for the Austin area but do not account for the extraordinarily unique circumstances of this litigation.

- Defendants assert that Mr. Bankston's "primary practice locale is Houston, Harris County," but Mr. Bankston recently filed his first case in Harris County in many years.

After waiving their ability to cross-examine Mr. Bankston at the hearing, Defendants have now provided unsupported assertions, legal arguments which were rejected long ago, and complaints about billing figures that are conservative under the circumstances. As such, Defendants' objections should be overruled.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

_____

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2021 the forgoing document was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 57140219
Status as of 9/16/2021 2:10 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 9/10/2021 2:02:00 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 9/10/2021 2:02:00 PM | SENT |
| William Ogden | | bill@fbtrial.com | 9/10/2021 2:02:00 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 9/10/2021 2:02:00 PM | SENT |

9/15/2021 8:10 AM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Lisa Guerrero**

## D-1-GN-18-001835

| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants* | § | 459th DISTRICT COURT |

## D-1-GN-18-001842

| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | 459th DISTRICT COURT |

---

### PLAINTIFFS' UNOPPOSED MOTION FOR PROTECTIVE ORDER OF CONFIDENTIALITY

---

Plaintiffs file this Unopposed Motion for Protective Order of Confidentiality, and would show the Court as follows:

1.    In January 2019, Defendants moved this Court to enter a Protective Order of Confidentiality under Tex. R. Civ. P. 192.6 in the *Lewis* case. After modifying certain sections, this Court entered a Protective Order on February 25, 2019, a copy of which is attached as "Exhibit 1."

1

2.      Plaintiffs have proposed that the same protective order be entered in the *Heslin* and *Pozner* cases, and Defendants are unopposed.

3.      Just as in *Lewis,* there is good cause for a protective order because the parties may produce sensitive documents. Specifically, Plaintiffs anticipate producing medical records which include private mental health information.

4.      As such, Plaintiffs ask that this Court enter an order adopting the *Lewis* Protective Order in the *Heslin* and *Pozner* cases.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel of record about this motion, and they are unopposed to the entry of the *Lewis* Protective Order in these cases.

_____
MARK D. BANKSTON

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021 the forgoing document was served upon all counsel of record via electronic service.

_____
MARK D. BANKSTON

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants* | § | 459th DISTRICT COURT |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | 459th DISTRICT COURT |

---

## ORDER ON MOTION FOR PROTECTIVE ORDER OF CONFIDENTIALITY

---

On this day, the Court considered Plaintiffs' Unopposed Motion for Protective

Order of Confidentiality. The Court finds there is good cause to grant the Motion, and

hereby ORDERS that the February 25, 2019 Protective Order entered in the *Lewis*

matter shall apply to the *Heslin* and *Pozner* cases.

Dated _____, 2021.


_____
Hon. Maya Guerra Gamble

# Exhibit 1
# Lewis Protective Order

Filed in The District Court
of Travis County, Texas

FEB 25 2019

At _____ 3:30 P.M.

Velva L. Price, District Clerk

NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants* | § | 98th JUDICIAL DISTRICT |

## PROTECTIVE ORDER OF CONFIDENTIALITY

In order to preserve the rights of litigants in these proceedings to claim the confidentiality of certain documents to be produced in discovery by the parties, the Court orders as follows:

1.     This Protection/Confidentiality Order governs all discovery, and all information disclosed, produced, or submitted by any party to any other party in connection with this lawsuit during the course of discovery.

2.     This Order is entered for purposes of this lawsuit and shall remain in full force and effect until such time as the Parties agree in writing otherwise or the Court enters a different order. This Court shall retain jurisdiction to make amendments and modifications to this Order as the Court may deem appropriate, as well as to resolve any disputes.

## TERMS

3.     "Discovery includes all written discovery, request for production, interrogatories, requests for admissions, requests for disclosure, oral depositions, deposition transcripts, oral or

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page **1** of **8**

video recording of a deposition, depositions on written questions to third parties, and
subpoenas to third parties, and other documents exchanged between the parties for the purpose
of sharing information regarding the facts of the case.

4.      "Confidential Information" means information that constitutes a trade secret,
reveals valuable and sensitive proprietary data or commercial information, or otherwise
qualifies for legal protection under Texas law.

5.      "Confidential Discovery" means discovery or any materials within the scope of
Tex. R. Civ. P. 192 to be produced or otherwise disclosed by the parties in this case and
which also contains Confidential' Information.

6.      "Similar InfoWars Sandy *Hook* Lawsuit" means any other lawsuit in which any
of the Defendants have been sued on the basis of their conduct relating to the Sandy *Hook*
Elementary School Shooting.

7.      Reference    to    Plaintiff,    Defendants,    or    the    Parties    to    this
Protective/Confidentiality Order also includes reference to any other person or entity acting
on any Party's behalf or in concert or in participation with any Party, directly or indirectly, to
the extent that any discovery in this lawsuit requires a person or entity other than Plaintiff or
Defendants to produce documents or tangible things or give testimony.

8.      "Producing Party" shall mean a Party to this lawsuit that produces documents,
information and/or tangible things.

## DESIGNATION OF CONFIDENTIAL DISCOVERY

10.     A document or tangible thing that the Producing Party determines in good faith
to be Confidential Discovery can be claimed as confidential by (1) stamping the word
"CONFIDENTIAL" or "ATTORNEY'S EYES ONLY" on the document, or (2) using any other

reasonable method agreed to by the Parties. Such stamping shall not obscure any writings on the documents.

11.     In the event a Producing Party inadvertently fails to mark a confidential document as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," that Producing Party or any Party may: (1) notify counsel of record for every other Party in writing specifically identifying the material, and (2) provide a replacement copy of the document(s) marked "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY."

12.     Testimony and information disclosed at a deposition of a Party or any other witness may be designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" during the deposition, and within thirty (30) days following the depositions, any Party may designate any information disclosed during a deposition as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." For the thirty (30) days following any deposition, the Parties must treat all of the deposition testimony and exhibits and other documents produced at any deposition as "ATTORNEYS' EYES ONLY."

13.     By designating a document as Confidential Discovery pursuant to paragraphs 9, 10 or 11, the Producing Party represents that it has made a bona fide, good faith determination that the document does, in fact, contain Confidential Information.

**CHALLENGING DESIGNATION**

14.     Any Party may contest the designation of any document, information or tangible things as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" by requesting in writing that the Producing Party change the designation. If the Parties are unable to reach an agreement on the designation of such challenged documents within five (5) business days, the

Party challenging the designation may at any time thereafter seek an order to alter the status of the challenged designation.

14.     Until any dispute over designation is ruled upon by the presiding Judge, the designation will remain in full force and effect, and the documents, tangible things, testimony and information will continue to be accorded the confidential treatment required by this Protective Order.

## AUTHORIZED USE OF CONFIDENTIAL DISCOVERY

15.     Confidential Discovery shall be used solely for the purposes of this lawsuit and shall not be disclosed or made available to any person(s) other than those persons specified herein. Persons who may have access to documents or other information designated as "CONFIDENTIAL" shall include only the following persons:

a.      The Parties, and the Producing Party, if other than Plaintiff or Defendants;

b.      The Plaintiffs in any Similar InfoWars Sandy Hook Lawsuit.

c.      Counsel of record for the Parties, and counsel for the Producing Party, if other than Plaintiff or Defendants, and their respective employees;

d.      Counsel of record for the Parties in any Similar InfoWars Sandy Hook Lawsuit, and their respective employees.

e.      Consultants or experts retained in connection with this lawsuit provided that such consultant or expert shall acknowledge and

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page **4** of **8**

accept the terms of this Protective / Confidentiality Order by first signing the attached Exhibit "A";

f. Consultants or experts retained in connection with any Similar InfoWars Sandy Hook Lawsuit provided that such consultant or expert shall acknowledge and accept the terms of this Protective / Confidentiality Order by first signing the attached Exhibit "A."

g. Court personnel; and

h. Court reporters and videographers who first acknowledge and accept the terms of this Protective/Confidentiality Order by signing the attached Exhibit "A."

16. All such signed Exhibits "A" completed by persons under subparts (c) or (e) shall be immediately served on all Defendants' and Plaintiff's counsel.

17. Any documents, testimony, information or tangible things designated as "ATTORNEYS' EYES ONLY" shall be used solely for the purpose of this lawsuit and any Similar InfoWars Sandy Hook Lawsuit and shall not be disclosed or made available to any person(s) other than those persons specified below. Persons who may have access to documents or other information designated as "ATTORNEYS' EYES ONLY" shall include only the following persons:

a. Counsel of record for the Parties, and counsel for the Producing Party, if other than Plaintiff or Defendants, and their respective employees;

b. Counsel of record for the Parties in any Similar InfoWars Sandy Hook Lawsuit, and their respective employees.

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page **5** of **8**

18.    If a Party is required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to produce documents or information that have been designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," such Party will provide written notice immediately to every other Party, and the Producing Party in order to allow time to object to such production and otherwise seek protection.

## INSPECTION OF CONFIDENTIAL DISCOVERY

19.    Except as provided herein, each person to whom Confidential Discovery containing confidential information is disclosed or made available shall first be advised of the existence and the contents of this Order. Confidential Discovery may only be inspected or revealed by the Parties to the persons listed in paragraph 15 and 17 herein, provided that the disclosing Party is responsible to ensure that any person or entity who receives such Confidential Discovery shall maintain the document as confidential as set forth in this Order.

20.    Any mediator in this case or any Similar Travis County InfoWars Lawsuit may be provided Confidential Discovery so long as the Confidential Discovery is being disclosed pursuant to confidential settlement negotiations and the mediator returns the Confidential Discovery at the end of the mediation without making duplications/copies.

## FILINGS OR HEARINGS IN THE PUBLIC RECORD

21.    If a party wishes to include a document, or portions of a document marked as "Confidential" or "Attorney's Eyes Only" in a pleading or other paper to be filed with the Clerk, that party shall serve the pleading or other paper on opposing parties but shall not file it. Service alone shall constitute filing for the purpose of any deadline. For 7 days following service, no party shall file the pleading or other paper with the Clerk except pursuant to a

ruling on a motion for a Temporary Sealing Order under Rule 76a. Immediately thereafter, if no motion for a Temporary Sealing Order has been granted, the party who served the pleading or other paper shall file it unsealed with the Clerk.

22.     If a party wishes to offer a document, or portions of a document marked as "Confidential" or "For Counsel Only" in evidence, any party may, at the time the document is offered, move for a Temporary Sealing Order.

## ORDER DOES NOT WAIVE CERTAIN RIGHTS

23.     This Protective/Confidentiality Order shall not be deemed a waiver of (i) any right to object to any discovery requests on any grounds; (ii) any right to seek an order compelling discovery with respect to any discovery request; (iii) any right at any proceeding in this lawsuit to object to the admission of evidence on any ground; (iv) any right of a Party to use its own documents and translate them with complete discretion and/or (v) the right to seek a modification of this Protective/Confidential Order.

24.     Designation of a document or other information as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" is not evidence that the document, other information or tangible thing is in fact confidential. A party's failure to object to another Party's designation of any document or other information as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" shall not be evidence or an admission that the designated document, tangible things or information is in fact confidential.

## RETURN OF CONFIDENTIAL DISCOVERY

25.     Within thirty (30) days after the conclusion of this lawsuit including all appeals, the Parties, their counsel as well as anyone who has executed Exhibit "A" are hereby Ordered to return to the Producing Party all testimony, including deposition transcripts, and

all other documents or information that was produced to them and designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" and all copies thereof. It will be a direct violation of this Order if anyone retains any Confidential Discovery (whether marked "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY") or any portion thereof after this thirty (30) day period.

26.     This Order will not be used in any manner or form, directly or indirectly, as evidence in any trial or any hearing, other than to resolve any issue related to the enforcement of any provisions of the Order.

SIGNED this _25th_ day of _February_, 2019.

_____
PRESIDING JUDGE

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page **8** of **8**

**EXHIBIT "A"**

NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants* | § | 53rd JUDICIAL DISTRICT |

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____, declare and state under penalty of perjury that:

1.   I have received a copy of the Protective/Confidentiality Order in this lawsuit, which Order was entered on _____, 2019, and which copy is attached to this document. I have been provided with a copy of this document.

2.   I have carefully read and understand all of the provisions of the Protective/Confidentiality Order.

3.   I will comply with all of the provisions of the Protective/Confidentiality Order.

4.   I will hold in confidence, will not disclose to anyone not qualified under the Protective/Confidentiality Order, and will use only for the purposes of this lawsuit, any material designated "CONFIDENTIAL" (hereafter "Confidential Material") as defined in the Protective/Confidentiality Order, that is supplied to me.

5.   I will return each item of Confidential Material to the attorney who provided such document or tangible thing to me on the attorney's request. Moreover, I will deliver any copies, abstracts, summaries, notes or other records regarding the contents of any Confidential Material to the attorney who provided such Confidential Material to me on the attorney's request. I will not thereafter retain any Confidential Material or any portion or excerpts thereof.

---

EXHIBIT "A" - Protective/Confidentiality Order - Page 1

6.    I understand that if I violate the provisions of the Protective/Confidentiality Order, I will be in violation of a Court Order and subject to sanctions, contempt or other remedies that may be imposed by the Court and potentially liable in a civil lawsuit for damages.

7.    I hereby submit to the jurisdiction of the 53rd Judicial District of Travis County, Texas for the purposes of enforcement of the Protective/Confidentiality Order.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: _____

_____
Signature

_____
Title or Position

Attachment: Copy of the Signed
Protective/Confidentiality Order

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 57252762
Status as of 9/17/2021 2:30 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 9/15/2021 8:10:33 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 9/15/2021 8:10:33 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 9/15/2021 8:10:33 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 9/15/2021 8:10:33 AM | SENT |

9/15/2021 8:25 AM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Lisa Guerrero**

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## PLAINTIFF'S MOTION TO COMPEL RESPONSES TO SECOND SET OF DISCOVERY REQUESTS AND MOTION FOR SANCTIONS

Comes now Plaintiff Neil Heslin, who moves this Court for an Order compelling full and fair responses to his Second Set of Interrogatories and Requests for Production, and an Order assessing sanctions for discovery obstruction.

### BACKGROUND

On July 13, 2021, following remand, Plaintiff served his Second Set of Interrogatories and Requests for Production. This discovery was very limited, and it was primarily aimed at issues relating to damages, such as the total viewership of the challenged videos and the places where those videos appeared, as well as other basic information such as the individuals involved in those videos and the identity of former employees.

On August 13, 2021, Defendants provided their responses. Defendants provided no meaningful information and claimed an inability to answer most of the

requests. On August 18, 2021, Plaintiffs wrote to Defendants to confer about their deficient discovery responses. Plaintiffs detailed the problems with Defendants' evasive responses. Plaintiffs demanded that Defendants "provide full responsive answers to the above requests and produce responsive documents to all of the requests before August 30th, or [Plaintiffs] will file additional motions under Rule 215."[1] Defendants refused to provide supplemental responses.

The following day, at the Court's oral hearing on August 31, 2021, Defendants claimed they would be supplementing discovery in 14 days. As a result, Plaintiff refrained from the filing the instant motion and awaited to review those supplemental responses. No responses were provided. Plaintiff now seeks an order compelling production and appropriate sanctions.

## ARGUMENT

### I. Discovery Answers from Alex Jones Should be Compelled.

In his responses, Alex Jones refused to fairly answer the interrogatories posed to him. The Court should compel responses to these interrogatories:

**INTERROGATORY NO. 1:**

> Identify by name and last known contact information of any individual who you chose to employ at Free Speech Systems between December 14, 2012 and July 1, 2021 with duties that involved writing, researching, editing, filming, hosting, or producing InfoWars media content and who is no longer employed by the company.

---

[1] Exhibit 1, August 18, 2021 Email to Defendants.

Mr. Jones lodged several frivolous objections. In addition, Mr. Jones claimed that he "is unable to answer this interrogatory at this time to the extent those individual(s) may be relevant to the claims in this lawsuit."[2] Mr. Jones claimed he would "supplement this answer with such information once determined in accordance with the Texas Rules of Civil Procedure."[3] To date, he has not done so. With reasonable diligence, Mr. Jones should be able to identify employees in production roles who have been terminated or resigned.

**INTERROGATORY NO. 2:**

> Identify by name and any known contact information of any individual not employed by Free Speech Systems, LLC with whom you have communicated about this lawsuit or the allegations in this lawsuit since April 16, 2018.

Mr. Jones lodged frivolous objections, then claimed that he "does not personally have the requisite information to appropriately respond to this interrogatory.[4]" Mr. Jones claimed he would "further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure."[5] To date, he has not done so. Obviously, Mr. Jones should know the people outside the company with whom he discussed this case, or he could find out with a reasonable diligence.

**INTERROGATORY NO. 3:**

> Identify the date and description of the circumstances for any occasions in which you have made public oral or written statements that were not published by Free Speech

---

[2] Exhibit 2, Alex Jones Interrogatory Responses.

[3] *Id.*

[4] *Id.*

[5] *Id.*

> Systems, LLC concerning the Sandy Hook shooting, any relatives of the victims, any lawsuits brought by relatives of the victims, or the allegations in those lawsuits.

After his standard objections, Mr. Jones claimed he "is unable to adequately respond to this interrogatory as phrased by Plaintiff and what Plaintiff means by statements 'not published by Free Speech Systems, LLC' as opposed to Defendant's individual right to protected free speech."[6] Here, it appears Mr. Jones made no efforts to identify occasions he has made statements about Sandy Hook outside InfoWars. For example, Mr. Jones obviously knows he appeared on Megyn Kelly's show to discuss Sandy Hook. Mr. Jones makes few media appearances, so any other appearances should be well-documented. A full answer should be compelled.

## II.    Discovery Answers from Free Speech Systems, LLC Should be Compelled.

In its responses, Free Speech Systems, LLC refused to fairly answer the interrogatories posed to it. The Court should compel responses to these requests:

**INTERROGATORY NO. 1:**

> State the total number of viewers and/or listeners for the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," the June 25, 2017 episode of The Alex Jones Show from which the June 26th video was taken, and the July 20, 2017 episode of The Alex Jones Show in which the June 26th video was featured.

Free Speech Systems' answer begins with the objection that there is no "relevancy between [Heslin's] claims in this lawsuit and the listed video," which is a

---

[6] *Id.*

baffling objection since the listed videos are the Challenged Statements in this lawsuit. After making frivolous objections, Free Speech Systems claimed it "is currently unable to answer this interrogatory with the necessary information of total viewers."[7] Defendants claimed they were "continuing to work diligently to obtain this information but it is currently difficult to establish given the removal of the referenced clips from various platforms on the internet."[8] This answer is insufficient. As Plaintiffs made clear in their conferral letter, the number of views occurring on InfoWars.com for these videos are obviously within InfoWars' possession, and they have no excuse for failing to answer. With regard to evidence InfoWars distributed on third party video platforms such as YouTube, it is now clear that evidence has been spoliated.

**INTERROGATORY NO. 2:**

> Identify every way in which the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," the June 25, 2017 episode of The Alex Jones Show, the July 20, 2017 episode of The Alex Jones Show, or any portions of the foregoing, were disseminated to the public, whether by radio, television, internet video, or any other publication or broadcast, whether by Free Speech Systems or by any other authorized entity or person.

After making baseless objections, Free Speech Systems refused to fully answer, claiming it "is currently unable to determine which of these platforms were actually utilized to simulcast the particular broadcasts referenced in Plaintiff's interrogatory."

---

[7] Exhibit 3, Free Speech Systems Answers to Interrogatories.
[8] *Id.*

This response not only failed to identify all web-based methods of disseminating InfoWars videos, but it also failed to identify the various radio distribution agreements and television/cable broadcasting agreements by which Defendants' videos are distributed. Yet Defendants refuse to supplement their answer.

**INTERROGATORY NO. 3:**

> Identify every individual at Free Speech Systems, LLC who was aware of the Zero Hedge blog post "Megyn Kelly Fails to Fact Check Sandy Hook Father's Contradictory Claim in the Alex Jones Hit Piece" prior to Owen Shroyer discussing that blog post on the Alex Jones Show.

After making baseless objections, Free Speech Systems claims it "has no information responsive to this interrogatory." Due to Defendants' failure to secure evidence and identify persons with knowledge of relevant facts at the outset of this case, Defendants now claim they unable to identify the employees involved in creating the Challenged Video. This answer is plainly insufficient and shows a lack of reasonable inquiry.

**REQUEST FOR PRODUCTION NO. 3**:

> All master-level or overview reports created to summarize product sales performance from December 14, 2012 to the present day.

Free Speech Systems objected to this request, claiming that it violated § 41.005 of the TEX. CIV. PRAC. & REM. CODE by seeking "net worth" information.[9] Yet that section only applies to information which reveals a party's net worth, such as financial

---

[9] Exhibit 4, Free Speech Systems Responses to Requests for Production.

balances or tax returns. Mere sales data is not prohibited as net worth evidence. Free

Speech Systems also objected to the terms "master-level," "overview reports," and

"product sales performance," but as Plaintiff pointed out, Defendants defined these

terms by agreement in *Lafferty* when faced with requests using those terms. A full

response should be compelled.

**REQUESTS FOR PRODUCTION NO. 4:**

> All documents you relied on in answering Plaintiff's Second
> Set of Interrogatories.

Free Speech Systems objected to this request to the extent it seeks "documents

regarding Defendants' net worth," but otherwise promised that it would "produce

relevant responsive documents to the extent it has not already done so." No

documents have been provided, which is to be expected since the interrogatories

have been evasively answered. A full response should be compelled.

**III.    Discovery Answers from Owen Shroyer Should be Compelled.**

In his responses, Owen Shroyer refused to fairly answer the interrogatories

posed to him. The Court should compel responses to these requests:

**INTERROGATORY NO. 1:**

> Identify by name and address every employer you have had
> since June 26, 2012 and every job title you have held during
> that period.

Mr. Shroyer did not identify any former employers. He claimed he would

"supplement this answer."[10] He has not done so.

**INTERROGATORY NO. 4:**

> Identify by date any occasions in which you have made
> public oral or written statements concerning the Sandy
> Hook shooting, any relatives of the victims, any lawsuits
> brought by relatives of the victims, or the allegations in
> those lawsuits. If those statements were orally made on an
> InfoWars show, state the show and the episode title. If
> those statements were made on the InfoWars website,
> identify the title of the webpage and URL. If those
> statements were made elsewhere, describe the
> circumstances of the statements.

Mr. Shroyer claimed in his answer that he "does not have the requisite

information to respond to this interrogatory." It does not appear that Mr. Shroyer has

done anything to exercise diligence in answering this request.

**REQUEST FOR PRODUCTION NO. 1:**

> All communications you sent or received concerning the
> Sandy Hook shooting, any relatives of the victims, any
> lawsuits brought by relatives of the victims, or the
> allegations in those lawsuits since the start of your
> employment at Free Speech Systems, LLC.

Mr. Shroyer frivolously objected "this request as it assumes facts not in

evidence as to whether Defendant was employed by Free Speech Systems, LLC."[11]

Further, Mr. Shroyer claimed he was not in possession of documents "beyond those

which may be in the possession, custody, or control of Free Speech Systems, LLC." Yet

---

[10] Exhibit 5, Owen Shroyer Responses to Interrogatories.
[11] Exhibit 6, Owen Shroyer Responses to Request for Production.

Defendants have not produced any documents responsive to this request, whether from Shroyer or documents held by Free Speech Systems on this topic.

## CONCLUSION

Defendants' continuing discovery obstruction cannot be defended. As such, Plaintiffs ask this Court to compel responses, award costs, and assess any appropriate sanctions under Rule 215.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with opposing counsel about this Motion, and they are opposed.

_____
MARK D. BANKSTON

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, the forgoing document was served upon all counsel of record via electronic service.

_____
MARK D. BANKSTON

# D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

---

## ORDER ON MOTION TO COMPEL RESPONSES TO SECOND SET OF DISCOVERY REQUESTS AND MOTION FOR SANCTIONS

---

On this day, the Court considered Plaintiffs' Motion to Compel Responses to Second Set of Discovery Requests and Motion for Sanctions. The Court finds there is good cause to grant the Motion.

It hereby ORDERED that Defendants must provide full and fair responses to the requests within 14 days.

It is further ORDERED that Defendants shall pay Plaintiff's reasonable attorneys fees in connection with this Motion.

It is further ORDERED that the following additional remedies under Rule 215 shall be assessed: _____

_____

Dated _____, 2021.

_____

Hon. Maya Guerra Gamble

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | "Bradley Reeves" |
| **Cc:** | Bill Ogden |
| **Subject:** | Recent Discovery Responses in Heslin and Lewis |
| **Date:** | Wednesday, August 18, 2021 1:20:00 PM |

I write to confer about your recent discovery responses in *Heslin* and *Lewis.* Your responses are plainly deficient. In particular, I would draw your attention to the following:

**Discovery to Free Speech Systems in *Heslin***

- Regarding Interrogatory No. 1, we are baffled by your statement that there is no "relevancy between his claims in this lawsuit and the listed video." The listed videos are the Challenged Statements in this lawsuit. Moreover, the number of views occurring on InfoWars.com for the June 25, 2017 and July 20, 2017 episodes of the Alex Jones Show are obviously within your clients' possession, and you have no excuse for failing to answer. With regard to evidence your client maintained on video platforms such as YouTube which your client claims to no longer possess, we consider that evidence spoliated if not produced.

- Regarding Interrogatory No. 2, you failed to even attempt to provide a responsive answer. First, you failed to identify all web-based methods of disseminating InfoWars videos while noting there are "others." Second, as noted in the request, your client disseminates his videos beyond the web. Your client has radio agreements as well as broadcasting agreements by which InfoWars is carried on certain television content packages, which your response ignored. The total reach of your clients' statements is relevant to Plaintiffs' damages.

- Regarding Request for Production No. 3, we are entitled to discovery of product sales performance to show motive for making the malicious false statements. Sales information does not constitute net worth evidence and is not prohibited by § 41.005. In addition, your client knows the meaning of the terms "master-level," "overview reports," and "product sales performance" because your client negotiated the meanings of those terms in *Lafferty.*

**Discovery to Alex Jones in *Heslin***

- Regarding Interrogatory No. 1, your client clearly has the ability to identify former employees and their contact information. You have no excuse for refusing to answer this question.

- Regarding Interrogatory No. 2, it makes no sense that your client would not have the information about who he has communicated with about the lawsuit since it began. The rules require your client to perform a reasonable search for this information, which he obviously has not done.

- Regarding Interrogatory No. 3, your client made no efforts to identify occasions he has made statements about Sandy Hook on platforms other than InfoWars. For example, Mr. Jones obviously knows he appeared on Megyn Kelly's show to discuss Sandy Hook. Mr. Jones makes few media appearances, so any other appearances should be well-documented.

- Regarding Request for Production No. 3, it is Plaintiffs' contention that your client's motivations in spreading his false information is to undermine civil order and foster mayhem and revolt. We believe his communications relating to January 6 would support this motive and Plaintiff's punitive damages claim.

**Discovery to Owen Shroyer in *Heslin***

- Regarding Interrogatory No. 1, your client failed to answer. He did not provide the name or address of any employer. There is no excuse for his refusal to answer.

- Regarding Interrogatory No. 4, we are entitled to know if Mr. Shroyer has previously made comments about Sandy Hook. It does not appear he even tried to answer this question.

- Regarding Request for Production No. 1, it is not credible that Mr. Shroyer is unable to determine if he has sent or received responsive communications.

**Discovery to Free Speech Systems in *Lewis***

- Regarding Interrogatory No. 1, you have clearly not reviewed the parties' pleadings or your clients' videos, as you obviously do not understand how the videos are created and disseminated. The overwhelming majority of the videos identified in Plaintiffs' petition are YouTube videos. Those videos were created by editing a clip out of a full episode of the Alex Jones Show. For example, we discovered in litigation that the video that defamed Mr. Heslin, uploaded to YouTube on June 26, 2017 as "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," was taken from the June 25, 2017 episode of the Alex Jones Show, which was entitled "Exclusive Feds Plan to Drop Russia Investigation Left Plans to Riot." Throughout this litigation, your clients have argued that Plaintiffs were unable to offer the full episodes, did not offer evidence of the date of actual publication, and did not offer evidence of the entire publication. (*See, e.g.*, Heslin Appellants' Brief, p. 30). Each of the YouTube videos in the Plaintiffs' petition originated in a full episode, and we are entitled to learn what those episodes are. Your response doesn't even try to answer the question.

- Regarding Interrogatory No. 2, the number of views occurring on InfoWars.com for your clients' videos is obviously within your clients' possession, and you have no excuse for failing to answer. With regard to evidence your client maintained on video platforms such as YouTube which your client claims to no longer possess, we consider that evidence spoliated if not produced.

- Regarding Request for Production No. 2, your client produced similar marketing and web traffic information in *Lafferty*. During that case, your client arrived at working definitions for "marketing data" and "web traffic data." Moreover, mere sales data does not constitute net worth evidence. This information is plainly relevant. You say you are working to "finalize gathering these documents," but you have no justification for failing to timely respond.

Regarding Request for Production No. 3, you refuse to provide the documents you used to answer the Interrogatories, claiming you "will produce relevant responsive documents" at some point in the future. However, you answered the Interrogatories, so you are clearly in possession of the documents you used when answering. You have no excuse for failing to produce these documents.

We demand that you provide full responsive answers to the above requests and produce responsive documents to all of the requests before August 30th, or we will file additional motions under Rule 215.

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## DEFEENDANT, ALEX JONES'S, OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to the Texas Rules of Civil Procedure, Defendant, Alex Jones ("Defendant"), hereby provides its objections and answers to the Second Set of Interrogatories propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 13, 2021.

Respectfully submitted,

By: ___*/s/ Bradley J. Reeves*_____
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                            *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008


    */s/ Bradley J. Reeves*
Bradley J. Reeves

**D**EFENDANT**, A**LEX **J**ONES**'**S**, O**BJECTIONS AND **A**NSWERS TO
**P**LAINTIFF**'**S **S**ECOND **S**ET OF **I**NTERROGATORIES

**INTERROGATORY NO. 1:** Identify by name and last known contact information of any
individual who you chose to employ at Free Speech Systems between December 14, 2012 and July
1, 2021 with duties that involved writing, researching, editing, filming, hosting, or producing
InfoWars media content and who is no longer employed by the company.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, unduly burdensome, and a fishing
expedition, as Plaintiff has not identified any relevancy between his claims in this lawsuit and the
information requested in this interrogatory. Defendant further objects to the harassing and
burdensome nature of this interrogatory as it would encompass essentially every former employee
of Free Speech Systems during that entire time period, very few of which would have any
relevancy or connection to the claims at issue in this lawsuit. Defendant further objects to this
interrogatory as it is not reasonably calculated to lead to the discovery of admissible evidence.

**ANSWER:**

Subject and without waiving the foregoing objections, in addition to the undue burden and
prejudicial nature of this interrogatory, Defendant is unable to answer this interrogatory at this
time to the extent those individual(s) may be relevant to the claims in this lawsuit. Defendant
personally does not have the requisite information and knowledge to respond to this interrogatory,
but Defendant and his counsel are continuing to work diligently to obtain this information and will
supplement this answer with such information once determined in accordance with the Texas Rules
of Civil Procedure.

**INTERROGATORY NO. 2:** Identify by name and any known contact information of any
individual not employed by Free Speech Systems, LLC with whom you have communicated about
this lawsuit or the allegations in this lawsuit since April 16, 2018.

**OBJECTIONS:**

Defendant objects to this interrogatory as harassing and not reasonably calculated to lead to the
discovery of admissible evidence. Defendant further objects to the extent this interrogatory violates
the attorney-client, work-product, and/or reporter's privilege. Defendant further objects to this
interrogatory as unduly burdensome and seeking information not relevant to Plaintiff's claims in
this lawsuit.

**RESPONSE:**

Subject to and without waiving the foregoing objections, Defendant does not personally have the
requisite information to appropriately respond to this interrogatory. Defendant will further
supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure.

**INTERROGATORY NO. 3:** Identify the date and description of the circumstances for any occasions in which you have made public oral or written statements that were not published by Free Speech Systems, LLC concerning the Sandy Hook shooting, any relatives of the victims, any lawsuits brought by relatives of the victims, or the allegations in those lawsuits.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, not narrowly tailored in scope of subject or time, and unduly burdensome. Defendant further objects to this interrogatory as an improper compound interrogatory in violation of the Texas Rules. Defendant also objects to the extent this interrogatory seeks information in violation of the attorney-client and/or work-product privileges. Defendant further objects to the extent this interrogatory seeks an impermissible narrative that cannot be adequately confined as an answer to an interrogatory. Defendant further objects to this interrogatory as vague in its reference to "not published by Free Speech Systems, LLC."

**ANSWER:**

Subject to and without waiving the foregoing objections, Defendant is unable to adequately respond to this interrogatory as phrased by Plaintiff and what Plaintiff means by statements "not published by Free Speech Systems, LLC" as opposed to Defendant's individual right to protected free speech.

4

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261ˢᵗ JUDICIAL DISTRICT |
| *Defendants,* | § | |

## **DEFENDANT, FREE SPEECH SYSTEMS, LLC'S, OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Pursuant to the Texas Rules of Civil Procedure, Defendant, Free Speech Systems, LLC ("Defendant"), hereby provides its objections and answers to the Second Set of Interrogatories propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 12, 2021.

Respectfully submitted,

By: ___*/s/ Bradley J. Reeves*_____
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                                    *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

                                             */s/ Bradley J. Reeves*
                                             Bradley J. Reeves

### DEFENDANT, FREE SPEECH SYSTEMS, LLC'S, OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

**INTERROGATORY NO. 1:** State the total number of viewers and/or listeners for the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," the June 25, 2017 episode of The Alex Jones Show from which the June 26th video was taken, and the July 20, 2017 episode of The Alex Jones Show in which the June 26th video was featured.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, unduly burdensome, and a fishing expedition, as Plaintiff has not identified any relevancy between his claims in this lawsuit and the listed video. Defendant also objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence.

**ANSWER:**

Subject and without waiving the foregoing objections, Defendant is currently unable to answer this interrogatory with the necessary information of total viewers. Defendant and its counsel are continuing to work diligently to obtain this information but it is currently difficult to establish given the removal of the referenced clips from various platforms on the internet. In particular, Defendant does not have requisite information which may be in the possession of third-party platforms which Defendant is no longer able to utilize. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure.

**INTERROGATORY NO. 2:** Identify every way in which the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," the June 25, 2017 episode of The Alex Jones Show, the July 20, 2017 episode of The Alex Jones Show, or any portions of the foregoing, were disseminated to the public, whether by radio, television, internet video, or any other publication or broadcast, whether by Free Speech Systems or by any other authorized entity or person.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, unduly burdensome, and a fishing expedition, particularly in light of the fact that InfoWars broadcasting occurs across several platforms simultaneously. Defendant also objects to this interrogatory as vague in its use of the terms "any other authorized entity or person."

**RESPONSE:**

Subject to and without waiving the foregoing objections, at the time referenced in Plaintiff's interrogatory, InfoWars-related broadcasts, posts, videos, etc., in particular The Alex Jones Show, were simulcast across multiple platforms, including Twitter, Facebook, YouTube, and others, most of which are no longer available to FSS. As such, Defendant is currently unable to determine which of these platforms were actually utilized to simulcast the particular broadcasts referenced in

3

Plaintiff's interrogatory. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure.

**INTERROGATORY NO. 3:** Identify every individual at Free Speech Systems, LLC who was aware of the Zero Hedge blog post "Megyn Kelly Fails to Fact Check Sandy Hook Father's Contradictory Claim in the Alex Jones Hit Piece" prior to Owen Shroyer discussing that blog post on the Alex Jones Show.

**OBJECTIONS:**

Defendant objects to this interrogatory as vague in its use of the term "aware." Defendant further objects to this interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**ANSWER:**

Subject to and without waiving the foregoing objections, Defendant has no information responsive to this interrogatory. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56274306
Status as of 8/13/2021 12:01 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/13/2021 12:00:28 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/13/2021 12:00:28 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/13/2021 12:00:28 AM | SENT |

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## DEFEENDANT, FREE SPEECH SYSTEMS, LLC'S, OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION

Pursuant to the Texas Rules of Civil Procedure, Defendant, Free Speech Systems, LLC ("Defendant"), hereby provides its objections and responses to the Second Requests for Production propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure Dated: August 12, 2021.

Respectfully submitted,

By: _ */s/ Bradley J. Reeves_ _
    Bradley J. Reeves
    Texas Bar No. 24068266
    brad@brtx.law
    **REEVES LAW, PLLC**
    702 Rio Grande St., Suite 203
    Austin, TX 78701
    Telephone: (512) 827-2246
    Facsimile: (512) 318-2484

    **ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                     *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

                                          */s/ Bradley J. Reeves*
                                          Bradley J. Reeves

## <u>Defendant, Free Speech Systems, LLC's, Objections and Responses to Plaintiff's Second Requests for Production</u>

**REQUEST FOR PRODUCTION NO. 1:**   All documents concerning Neil Heslin.

**OBJECTIONS:**

Defendant objects to this request as overly broad on its face because it is not sufficiently narrowed in scope of time. Defendant also objects to this request to the extent it seeks documents that are protected by the work-product and/or attorney-client privileges. Defendant further objects to this request as vague in its use of the broad term "concerning." Subject to and without waiving the foregoing objections,

**RESPONSE:**

Responsive documents have previously been produced to the extent such documents are in the possession, custody, or control of Defendant. Moreover, Defendant is continuing to supplement its production and continues to search for responsive documents to further supplement his production as necessary in accordance with the Texas Rules of Civil Procedure, expect to the extent such documents are protected from production by the applicable privileges cited above.

**REQUEST FOR PRODUCTION NO. 2:**  All  financial  statements  between  2012-2018, including but not limited to, profit and loss statements, general ledger, trial balance statements, cash flow statements, and equity draws.

**OBJECTIONS:**

Defendant objects to this request as overly broad and unduly burdensome. Defendant further objects to this request as it is not narrowly tailored to the underlying facts of this case and is merely a fishing expedition. Defendant also objects to this request to the extent it seeks documents regarding Defendant's net worth in violation of § 41.005 of the Tex. Civ. Prac. & Rem. Code. Defendant further objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the extent this request seeks documents in violation of the accountant-client privilege. Defendant also objects to this request as vague in its use of the terms "financial statements."

**RESPONSE:**

Defendant believes such documents are not relevant to Plaintiff's claims and this request violates § 41.005 of the Texas Civil Practices and Remedies Code regarding net worth discovery. Defendant will further supplement this response as necessary if the necessary Court order is entered regarding the production of such documents and if a mutually agreeable protective and confidentiality order is also entered by the Court.

**REQUEST FOR PRODUCTION NO. 3**: All master-level or overview reports created to summarize product sales performance from December 14, 2012 to the present day.

**OBJECTIONS:**

Defendant objects to this request as overly broad and unduly burdensome. Defendant further objects to this request as it is not narrowly tailored to the underlying facts of this case and is merely a fishing expedition. Defendant also objects to this request to the extent it seeks documents regarding Defendant's net worth in violation of § 41.005 of the TEX. CIV. PRAC. & REM. CODE. Defendant further objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the extent this request seeks documents in violation of the accountant-client privilege. Defendant also objects to this request as vague in its use of the terms "master-level," "overview reports," and "product sales performance." Defendant further objects to the extent this request seeks documents pertaining to protected confidential trade secrets and financial information to which Plaintiff is not entitled absent a court order.

**RESPONSE:**

Defendant believes such documents are not relevant to Plaintiff's claims and this request violates § 41.005 of the Texas Civil Practices and Remedies Code regarding net worth discovery, along with this request impermissibly seeking protected trade secrets and financial information of Defendant. Defendant will further supplement this response as necessary if the necessary Court order is entered regarding the production of such documents and if a mutually agreeable protective and confidentiality order is also entered by the Court.

**REQUESTS FOR PRODUCTION NO. 4:** All documents you relied on in answering Plaintiff's Second Set of Interrogatories.

**OBJECTIONS:**

Defendant objects to this request as overly broad and unduly burdensome. Defendant further objects to this request as it is not narrowly tailored to the underlying facts of this case and is merely a fishing expedition. Defendant also objects to this request to the extent it seeks documents regarding Defendant's net worth in violation of § 41.005 of the TEX. CIV. PRAC. & REM. CODE. Defendant further objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to this request as vague in its broad reference to the "videos in Plaintiffs' petition" without further specifying same in Plaintiff's request.

**RESPONSE:**

Subject to and without waiving the foregoing objections, Defendant will produce relevant responsive documents to the extent it has not already done so, except to the extent such requests seek net worth-related documents without the necessary court order for same.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56274306
Status as of 8/13/2021 12:01 AM CST

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/13/2021 12:00:28 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/13/2021 12:00:28 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## **DEFENDANT, OWEN SHROYER'S, OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Pursuant to the Texas Rules of Civil Procedure, Defendant, Owen Shroyer ("Defendant"), hereby provides his objections and answers to the Second Set of Interrogatories propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 12, 2021.

Respectfully submitted,

By: ___ */s/ Bradley J. Reeves* ___
    Bradley J. Reeves
    Texas Bar No. 24068266
    brad@brtx.law
    **REEVES LAW, PLLC**
    702 Rio Grande St., Suite 203
    Austin, TX 78701
    Telephone: (512) 827-2246
    Facsimile: (512) 318-2484

    **ATTORNEY FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                          *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

　　　　　　　　　　　　　　　　　*/s/ Bradley J. Reeves*
　　　　　　　　　　　　　　　　　Bradley J. Reeves

## Defendant, Owen Shroyer's, Objections and Answers to Plaintiff's Second Set of Interrogatories

**INTERROGATORY NO. 1:** Identify by name and address every employer you have had since June 26, 2012 and every job title you have held during that period.

## OBJECTIONS:

Defendant objects to this interrogatory as overly broad, unduly burdensome, and a fishing expedition, as Defendant's employment history has no bearing on the issues in this lawsuit. Defendant further objects to this interrogatory as not seeking information relevant to this lawsuit or Plaintiff's claims in any way.

## ANSWER:

Subject and without waiving the foregoing objections, Defendant has been a free-lance reporter, podcaster, political activist, and commentator for a number of years. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Proceedure.

**INTERROGATORY NO. 2:** Identify every individual you communicated with on June 25, 2017 between the time you first saw the Zero Hedge blog post "Megyn Kelly Fails to Fact Check Sandy Hook Father's Contradictory Claim in Alex Jones Hit Piece" and the time you discussed that blog post on the Alex Jones Show.

## OBJECTIONS:

Defendant objects to this interrogatory as overly broad and unduly burdensome and not reasonable calculated to lead to the discovery of admissible evidence. Defendant further objects to the extent this interrogatory seeks information that is private and otherwise has nothing to do with Plaintiff's claims in his lawsuit. Defendant further objects to this interrogatory as vague in it fails to specify any real period of time but only states "when you first saw" the blog post.

## ANSWER:

Subject to and without waiving the foregoing objections, Defendant is unable to answer this interrogatory because Defendant cannot remember that time period with enough specificity to remember and list all individuals he may have communicated with during that vague period of time referenced in Plaintiff's interrogatory from when Defendant "first saw" the blog post and when it was discussed on the Alex Jones Show. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure if and when additional information responsive to this interrogatory is learned/determined by Defendant.

**INTERROGATORY NO. 3:** Describe how and at what time you became aware of the Zero
Hedge blog post "Megyn Kelly Fails to Fact Check Sandy Hook Father's Contradictory Claim in
Alex Jones Hit Piece" on June 25, 2017.

**OBJECTIONS:**

Defendant objects to this interrogatory as vague in its use of the term "you became aware" without
further explaining what level of "aware" Defendant would be required to have to actually know of
the blog post's existence and contents of that blog post.

**ANSWER:**

Subject to and without waiving the foregoing objections, Defendant is unable to respond to this
interrogatory and provide a specific time as to when Defendant "became aware" of this blog post.
Defendant will further supplement this answer as necessary in accordance with the Texas Rules of
Civil Procedure if and when more information responsive to this interrogatory becomes available
to Defendant.

**INTERROGATORY NO. 4:** Identify by date any occasions in which you have made public oral
or written statements concerning the Sandy Hook shooting, any relatives of the victims, any
lawsuits brought by relatives of the victims, or the allegations in those lawsuits. If those statements
were orally made on an InfoWars show, state the show and the episode title. If those statements
were made on the InfoWars website, identify the title of the webpage and URL. If those statements
were made elsewhere, describe the circumstances of the statements.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, not narrowly tailored in scope of subject
or time, and unduly burdensome. Defendant further objects to this interrogatory as an improper
compound interrogatory in violation of the Texas Rules. Defendant also objects to the extent this
interrogatory seeks information in violation of the attorney-client and/or work-product privileges.
Defendant further objects to the extent this interrogatory seeks an impermissible narrative that
cannot be adequately confined as an answer to an interrogatory.

**ANSWER:**

Subject to and without waiving the foregoing objections, Plaintiff is seeking to have Defendant go
through years of his comments, appearances, political activism, posts, and the like for at last the
last almost nine (9) years—which occur on a regular and almost daily basis—from the time when
the Sandy Hook shooting occurred (December 14, 2012) to the present—when Defendant is a
reporter, host, and activist who makes a living off of providing news-worthy content to the public.
Defendant is simply unable to state with any specificity the "occasions" on which Defendant has
made any comments or statements of any sort which Plaintiff would somehow deem responsive to
this interrogatory. As such, Defendant at this time does not have the requisite information to
respond to this interrogatory as currently phrased by Plaintiff and it would force Defendant an

undue hardship and burden to have to do so without further clarification and appropriate
boundaries on this interrogatory from Plaintiff.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56274306
Status as of 8/13/2021 12:01 AM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/13/2021 12:00:28 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/13/2021 12:00:28 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/13/2021 12:00:28 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## <u>DEFEENDANT, OWEN SHROYER'S, OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION</u>

Pursuant to the Texas Rules of Civil Procedure, Defendant, Owen Shroyer ("Defendant"), hereby provides his objections and responses to the Second Requests for Production propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 12, 2021.

Respectfully submitted,

By: ___*/s/ Bradley J. Reeves*_____
    Bradley J. Reeves
    Texas Bar No. 24068266
    brad@brtx.law
    **REEVES LAW, PLLC**
    702 Rio Grande St., Suite 203
    Austin, TX 78701
    Telephone: (512) 827-2246
    Facsimile: (512) 318-2484

    **ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                          *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

          */s/ Bradley J. Reeves*
          Bradley J. Reeves

<u>**DEFENDANT, OWEN SHROYER'S, OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION**</u>

<u>**REQUEST FOR PRODUCTION NO. 1:**</u>   All communications you sent or received concerning
the Sandy Hook shooting, any relatives of the victims, any lawsuits brought by relatives of the
victims, or the allegations in those lawsuits since the start of your employment at Free Speech
Systems, LLC.

<u>**OBJECTIONS:**</u>

Defendant objects to this request as overly broad on its face because it is not sufficiently narrowed
in scope of time. Defendant also objects to this request to the extent it seeks documents that are
protected by the work-product and/or attorney-client privileges. Defendant further objects to this
request as vague in its use of the broad term "concerning." Defendant also objects to this request
as it assumes facts not in evidence as to whether Defendant was employed by Free Speech Systems,
LLC. Defendant further objects to the extent this request seeks to have Defendant prematurely
marshal all evidence and documents in his defense in this case. Subject to and without waiving the
foregoing objections,

<u>**RESPONSE:**</u>

Subject to and without waiving the foregoing objections, Defendant is not currently in possession,
custody, or control of documents responsive to this request beyond those which may be in the
possession, custody, or control of Free Speech Systems, LLC. Defendant is continuing to diligently
search to determine if any documents responsive to this request are indeed in his care, possession,
custody, or control, and will further supplement his production with the same as necessary in
accordance with the Texas Rules of Civil Procedure, expect to the extent such documents are
protected from production by the applicable privileges cited above.

**REQUEST FOR PRODUCTION NO. 2:**  All communications you sent or received concerning a "false flag" since the start of your employment at Free Speech Systems, LLC.

**OBJECTIONS:**

Defendant objects to this request as overly broad and unduly burdensome. Defendant further objects to this request as it is not narrowly tailored to the underlying facts of this case and is merely a fishing expedition. Defendant further objects to this request as not sufficiently tailored in scope of time or subject matter in that it seeks documents that have nothing to do with the underlying Sandy Hook tragedy at issue in this case. Defendant further objects to this request to the extent it seeks documents in violation of the attorney-client and/or work-product privileges.

**RESPONSE:**

Subject to and without waiving the foregoing objections, Defendant is not currently in possession, custody, or control of documents responsive to this request beyond those which may be in the possession, custody, or control of Free Speech Systems, LLC. Defendant is continuing to diligently search to determine if any documents responsive to this request are indeed in his care, possession, custody, or control, and will further supplement his production with the same as necessary in accordance with the Texas Rules of Civil Procedure, expect to the extent such documents are protected from production by the applicable privileges cited above.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56274306
Status as of 8/13/2021 12:01 AM CST

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/13/2021 12:00:28 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/13/2021 12:00:28 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 57253182
Status as of 9/17/2021 2:56 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 9/15/2021 8:25:02 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 9/15/2021 8:25:02 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 9/15/2021 8:25:02 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 9/15/2021 8:25:02 AM | SENT |

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## PLAINTIFF'S MOTION TO COMPEL RESPONSES TO SECOND SET OF DISCOVERY REQUESTS AND MOTION FOR SANCTIONS

Comes now Plaintiff Neil Heslin, who moves this Court for an Order compelling full and fair responses to his Second Set of Interrogatories and Requests for Production, and an Order assessing sanctions for discovery obstruction.

### BACKGROUND

On July 13, 2021, following remand, Plaintiff served his Second Set of Interrogatories and Requests for Production. This discovery was very limited, and it was primarily aimed at issues relating to damages, such as the total viewership of the challenged videos and the places where those videos appeared, as well as other basic information such as the individuals involved in those videos and the identity of former employees.

On August 13, 2021, Defendants provided their responses. Defendants provided no meaningful information and claimed an inability to answer most of the

requests. On August 18, 2021, Plaintiffs wrote to Defendants to confer about their deficient discovery responses. Plaintiffs detailed the problems with Defendants' evasive responses. Plaintiffs demanded that Defendants "provide full responsive answers to the above requests and produce responsive documents to all of the requests before August 30th, or [Plaintiffs] will file additional motions under Rule 215."[1] Defendants refused to provide supplemental responses.

The following day, at the Court's oral hearing on August 31, 2021, Defendants claimed they would be supplementing discovery in 14 days. As a result, Plaintiff refrained from the filing the instant motion and awaited to review those supplemental responses. No responses were provided. Plaintiff now seeks an order compelling production and appropriate sanctions.

## ARGUMENT

### I.     Discovery Answers from Alex Jones Should be Compelled.

In his responses, Alex Jones refused to fairly answer the interrogatories posed to him. The Court should compel responses to these interrogatories:

**INTERROGATORY NO. 1:**

> Identify by name and last known contact information of any individual who you chose to employ at Free Speech Systems between December 14, 2012 and July 1, 2021 with duties that involved writing, researching, editing, filming, hosting, or producing InfoWars media content and who is no longer employed by the company.

---

[1] Exhibit 1, August 18, 2021 Email to Defendants.

Mr. Jones lodged several frivolous objections. In addition, Mr. Jones claimed that he "is unable to answer this interrogatory at this time to the extent those individual(s) may be relevant to the claims in this lawsuit."[2] Mr. Jones claimed he would "supplement this answer with such information once determined in accordance with the Texas Rules of Civil Procedure."[3] To date, he has not done so. With reasonable diligence, Mr. Jones should be able to identify employees in production roles who have been terminated or resigned.

**INTERROGATORY NO. 2:**

> Identify by name and any known contact information of any individual not employed by Free Speech Systems, LLC with whom you have communicated about this lawsuit or the allegations in this lawsuit since April 16, 2018.

Mr. Jones lodged frivolous objections, then claimed that he "does not personally have the requisite information to appropriately respond to this interrogatory.[4]" Mr. Jones claimed he would "further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure."[5] To date, he has not done so. Obviously, Mr. Jones should know the people outside the company with whom he discussed this case, or he could find out with a reasonable diligence.

**INTERROGATORY NO. 3:**

> Identify the date and description of the circumstances for any occasions in which you have made public oral or written statements that were not published by Free Speech

---

[2] Exhibit 2, Alex Jones Interrogatory Responses.
[3] *Id.*
[4] *Id.*
[5] *Id.*

> Systems, LLC concerning the Sandy Hook shooting, any
> relatives of the victims, any lawsuits brought by relatives
> of the victims, or the allegations in those lawsuits.

After his standard objections, Mr. Jones claimed he "is unable to adequately respond to this interrogatory as phrased by Plaintiff and what Plaintiff means by statements 'not published by Free Speech Systems, LLC' as opposed to Defendant's individual right to protected free speech."[6] Here, it appears Mr. Jones made no efforts to identify occasions he has made statements about Sandy Hook outside InfoWars. For example, Mr. Jones obviously knows he appeared on Megyn Kelly's show to discuss Sandy Hook. Mr. Jones makes few media appearances, so any other appearances should be well-documented. A full answer should be compelled.

## II.     Discovery Answers from Free Speech Systems, LLC Should be Compelled.

In its responses, Free Speech Systems, LLC refused to fairly answer the interrogatories posed to it. The Court should compel responses to these requests:

**INTERROGATORY NO. 1:**

> State the total number of viewers and/or listeners for the
> June 26, 2017 video entitled "Zero Hedge Discovers
> Anomaly in Alex Jones Hit Piece," the June 25, 2017 episode
> of The Alex Jones Show from which the June 26th video was
> taken, and the July 20, 2017 episode of The Alex Jones Show
> in which the June 26th video was featured.

Free Speech Systems' answer begins with the objection that there is no "relevancy between [Heslin's] claims in this lawsuit and the listed video," which is a

---

[6] *Id.*

baffling objection since the listed videos are the Challenged Statements in this lawsuit.

After making frivolous objections, Free Speech Systems claimed it "is currently unable to answer this interrogatory with the necessary information of total viewers."[7] Defendants claimed they were "continuing to work diligently to obtain this information but it is currently difficult to establish given the removal of the referenced clips from various platforms on the internet."[8] This answer is insufficient. As Plaintiffs made clear in their conferral letter, the number of views occurring on InfoWars.com for these videos are obviously within InfoWars' possession, and they have no excuse for failing to answer. With regard to evidence InfoWars distributed on third party video platforms such as YouTube, it is now clear that evidence has been spoliated.

**INTERROGATORY NO. 2:**

> Identify every way in which the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," the June 25, 2017 episode of The Alex Jones Show, the July 20, 2017 episode of The Alex Jones Show, or any portions of the foregoing, were disseminated to the public, whether by radio, television, internet video, or any other publication or broadcast, whether by Free Speech Systems or by any other authorized entity or person.

After making baseless objections, Free Speech Systems refused to fully answer, claiming it "is currently unable to determine which of these platforms were actually utilized to simulcast the particular broadcasts referenced in Plaintiff's interrogatory."

---

[7] Exhibit 3, Free Speech Systems Answers to Interrogatories.
[8] *Id.*

This response not only failed to identify all web-based methods of disseminating

InfoWars videos, but it also failed to identify the various radio distribution

agreements and television/cable broadcasting agreements by which Defendants'

videos are distributed. Yet Defendants refuse to supplement their answer.

**INTERROGATORY NO. 3:**

> Identify every individual at Free Speech Systems, LLC who
> was aware of the Zero Hedge blog post "Megyn Kelly Fails
> to Fact Check Sandy Hook Father's Contradictory Claim in
> the Alex Jones Hit Piece" prior to Owen Shroyer discussing
> that blog post on the Alex Jones Show.

After making baseless objections, Free Speech Systems claims it "has no

information responsive to this interrogatory." Due to Defendants' failure to secure

evidence and identify persons with knowledge of relevant facts at the outset of this

case, Defendants now claim they unable to identify the employees involved in

creating the Challenged Video. This answer is plainly insufficient and shows a lack of

reasonable inquiry.

**REQUEST FOR PRODUCTION NO. 3**:

> All master-level or overview reports created to summarize
> product sales performance from December 14, 2012 to the
> present day.

Free Speech Systems objected to this request, claiming that it violated § 41.005

of the TEX. CIV. PRAC. & REM. CODE by seeking "net worth" information.[9] Yet that

section only applies to information which reveals a party's net worth, such as financial

---

[9] Exhibit 4, Free Speech Systems Responses to Requests for Production.

balances or tax returns. Mere sales data is not prohibited as net worth evidence. Free

Speech Systems also objected to the terms "master-level," "overview reports," and

"product sales performance," but as Plaintiff pointed out, Defendants defined these

terms by agreement in *Lafferty* when faced with requests using those terms. A full

response should be compelled.

**REQUESTS FOR PRODUCTION NO. 4:**

> All documents you relied on in answering Plaintiff's Second
> Set of Interrogatories.

Free Speech Systems objected to this request to the extent it seeks "documents

regarding Defendants' net worth," but otherwise promised that it would "produce

relevant responsive documents to the extent it has not already done so." No

documents have been provided, which is to be expected since the interrogatories

have been evasively answered. A full response should be compelled.

### III.    Discovery Answers from Owen Shroyer Should be Compelled.

In his responses, Owen Shroyer refused to fairly answer the interrogatories

posed to him. The Court should compel responses to these requests:

**INTERROGATORY NO. 1:**

> Identify by name and address every employer you have had
> since June 26, 2012 and every job title you have held during
> that period.

Mr. Shroyer did not identify any former employers. He claimed he would "supplement this answer."[10] He has not done so.

**INTERROGATORY NO. 4:**

>Identify by date any occasions in which you have made public oral or written statements concerning the Sandy Hook shooting, any relatives of the victims, any lawsuits brought by relatives of the victims, or the allegations in those lawsuits. If those statements were orally made on an InfoWars show, state the show and the episode title. If those statements were made on the InfoWars website, identify the title of the webpage and URL. If those statements were made elsewhere, describe the circumstances of the statements.

Mr. Shroyer claimed in his answer that he "does not have the requisite information to respond to this interrogatory." It does not appear that Mr. Shroyer has done anything to exercise diligence in answering this request.

**REQUEST FOR PRODUCTION NO. 1:**

>All communications you sent or received concerning the Sandy Hook shooting, any relatives of the victims, any lawsuits brought by relatives of the victims, or the allegations in those lawsuits since the start of your employment at Free Speech Systems, LLC.

Mr. Shroyer frivolously objected "this request as it assumes facts not in evidence as to whether Defendant was employed by Free Speech Systems, LLC."[11] Further, Mr. Shroyer claimed he was not in possession of documents "beyond those which may be in the possession, custody, or control of Free Speech Systems, LLC." Yet

---

[10] Exhibit 5, Owen Shroyer Responses to Interrogatories.
[11] Exhibit 6, Owen Shroyer Responses to Request for Production.

Defendants have not produced any documents responsive to this request, whether from Shroyer or documents held by Free Speech Systems on this topic.

## CONCLUSION

Defendants' continuing discovery obstruction cannot be defended. As such, Plaintiffs ask this Court to compel responses, award costs, and assess any appropriate sanctions under Rule 215.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with opposing counsel about this Motion, and they are opposed.

_____
MARK D. BANKSTON

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, the forgoing document was served upon all counsel of record via electronic service.

_____
MARK D. BANKSTON

# D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## ORDER ON MOTION TO COMPEL RESPONSES TO SECOND SET OF DISCOVERY REQUESTS AND MOTION FOR SANCTIONS

On this day, the Court considered Plaintiffs' Motion to Compel Responses to Second Set of Discovery Requests and Motion for Sanctions. The Court finds there is good cause to grant the Motion.

It hereby ORDERED that Defendants must provide full and fair responses to the requests within 14 days.

It is further ORDERED that Defendants shall pay Plaintiff's reasonable attorneys fees in connection with this Motion.

It is further ORDERED that the following additional remedies under Rule 215 shall be assessed: _____

_____

Dated _____, 2021.

_____
Hon. Maya Guerra Gamble

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | "Bradley Reeves" |
| **Cc:** | Bill Ogden |
| **Subject:** | Recent Discovery Responses in Heslin and Lewis |
| **Date:** | Wednesday, August 18, 2021 1:20:00 PM |

I write to confer about your recent discovery responses in *Heslin* and *Lewis.* Your responses are plainly deficient. In particular, I would draw your attention to the following:

### Discovery to Free Speech Systems in *Heslin*

- Regarding Interrogatory No. 1, we are baffled by your statement that there is no "relevancy between his claims in this lawsuit and the listed video." The listed videos are the Challenged Statements in this lawsuit. Moreover, the number of views occurring on InfoWars.com for the June 25, 2017 and July 20, 2017 episodes of the Alex Jones Show are obviously within your clients' possession, and you have no excuse for failing to answer. With regard to evidence your client maintained on video platforms such as YouTube which your client claims to no longer possess, we consider that evidence spoliated if not produced.

- Regarding Interrogatory No. 2, you failed to even attempt to provide a responsive answer. First, you failed to identify all web-based methods of disseminating InfoWars videos while noting there are "others." Second, as noted in the request, your client disseminates his videos beyond the web. Your client has radio agreements as well as broadcasting agreements by which InfoWars is carried on certain television content packages, which your response ignored. The total reach of your clients' statements is relevant to Plaintiffs' damages.

- Regarding Request for Production No. 3, we are entitled to discovery of product sales performance to show motive for making the malicious false statements. Sales information does not constitute net worth evidence and is not prohibited by § 41.005. In addition, your client knows the meaning of the terms "master-level," "overview reports," and "product sales performance" because your client negotiated the meanings of those terms in *Lafferty.*

### Discovery to Alex Jones in *Heslin*

- Regarding Interrogatory No. 1, your client clearly has the ability to identify former employees and their contact information. You have no excuse for refusing to answer this question.

- Regarding Interrogatory No. 2, it makes no sense that your client would not have the information about who he has communicated with about the lawsuit since it began. The rules require your client to perform a reasonable search for this information, which he obviously has not done.

- Regarding Interrogatory No. 3, your client made no efforts to identify occasions he has made statements about Sandy Hook on platforms other than InfoWars. For example, Mr. Jones obviously knows he appeared on Megyn Kelly's show to discuss Sandy Hook. Mr. Jones makes few media appearances, so any other appearances should be well-documented.

- Regarding Request for Production No. 3, it is Plaintiffs' contention that your client's motivations in spreading his false information is to undermine civil order and foster mayhem and revolt. We believe his communications relating to January 6 would support this motive and Plaintiff's punitive damages claim.

**Discovery to Owen Shroyer in *Heslin***

- Regarding Interrogatory No. 1, your client failed to answer. He did not provide the name or address of any employer. There is no excuse for his refusal to answer.

- Regarding Interrogatory No. 4, we are entitled to know if Mr. Shroyer has previously made comments about Sandy Hook. It does not appear he even tried to answer this question.

- Regarding Request for Production No. 1, it is not credible that Mr. Shroyer is unable to determine if he has sent or received responsive communications.

**Discovery to Free Speech Systems in *Lewis***

- Regarding Interrogatory No. 1, you have clearly not reviewed the parties' pleadings or your clients' videos, as you obviously do not understand how the videos are created and disseminated. The overwhelming majority of the videos identified in Plaintiffs' petition are YouTube videos. Those videos were created by editing a clip out of a full episode of the Alex Jones Show. For example, we discovered in litigation that the video that defamed Mr. Heslin, uploaded to YouTube on June 26, 2017 as "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," was taken from the June 25, 2017 episode of the Alex Jones Show, which was entitled "Exclusive Feds Plan to Drop Russia Investigation Left Plans to Riot." Throughout this litigation, your clients have argued that Plaintiffs were unable to offer the full episodes, did not offer evidence of the date of actual publication, and did not offer evidence of the entire publication. (*See, e.g.*, Heslin Appellants' Brief, p. 30). Each of the YouTube videos in the Plaintiffs' petition originated in a full episode, and we are entitled to learn what those episodes are. Your response doesn't even try to answer the question.

- Regarding Interrogatory No. 2, the number of views occurring on InfoWars.com for your clients' videos is obviously within your clients' possession, and you have no excuse for failing to answer. With regard to evidence your client maintained on video platforms such as YouTube which your client claims to no longer possess, we consider that evidence spoliated if not produced.

- Regarding Request for Production No. 2, your client produced similar marketing and web traffic information in *Lafferty*. During that case, your client arrived at working definitions for "marketing data" and "web traffic data." Moreover, mere sales data does not constitute net worth evidence. This information is plainly relevant. You say you are working to "finalize gathering these documents," but you have no justification for failing to timely respond.

Regarding Request for Production No. 3, you refuse to provide the documents you used to answer the Interrogatories, claiming you "will produce relevant responsive documents" at some point in the future. However, you answered the Interrogatories, so you are clearly in possession of the documents you used when answering. You have no excuse for failing to produce these documents.

We demand that you provide full responsive answers to the above requests and produce responsive documents to all of the requests before August 30th, or we will file additional motions under Rule 215.

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## DEFEENDANT, ALEX JONES'S, OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to the Texas Rules of Civil Procedure, Defendant, Alex Jones ("Defendant"), hereby provides its objections and answers to the Second Set of Interrogatories propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 13, 2021.

Respectfully submitted,

By: ___*/s/ Bradley J. Reeves*_____
 Bradley J. Reeves
 Texas Bar No. 24068266
 brad@brtx.law
 **REEVES LAW, PLLC**
 702 Rio Grande St., Suite 203
 Austin, TX 78701
 Telephone: (512) 827-2246
 Facsimile: (512) 318-2484

 **ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                    *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

    */s/ Bradley J. Reeves*
Bradley J. Reeves

## Defendant, Alex Jones's, Objections and Answers to
## Plaintiff's Second Set of Interrogatories

**INTERROGATORY NO. 1:** Identify by name and last known contact information of any individual who you chose to employ at Free Speech Systems between December 14, 2012 and July 1, 2021 with duties that involved writing, researching, editing, filming, hosting, or producing InfoWars media content and who is no longer employed by the company.

## OBJECTIONS:

Defendant objects to this interrogatory as overly broad, unduly burdensome, and a fishing expedition, as Plaintiff has not identified any relevancy between his claims in this lawsuit and the information requested in this interrogatory. Defendant further objects to the harassing and burdensome nature of this interrogatory as it would encompass essentially every former employee of Free Speech Systems during that entire time period, very few of which would have any relevancy or connection to the claims at issue in this lawsuit. Defendant further objects to this interrogatory as it is not reasonably calculated to lead to the discovery of admissible evidence.

## ANSWER:

Subject and without waiving the foregoing objections, in addition to the undue burden and prejudicial nature of this interrogatory, Defendant is unable to answer this interrogatory at this time to the extent those individual(s) may be relevant to the claims in this lawsuit. Defendant personally does not have the requisite information and knowledge to respond to this interrogatory, but Defendant and his counsel are continuing to work diligently to obtain this information and will supplement this answer with such information once determined in accordance with the Texas Rules of Civil Procedure.

**INTERROGATORY NO. 2:** Identify by name and any known contact information of any individual not employed by Free Speech Systems, LLC with whom you have communicated about this lawsuit or the allegations in this lawsuit since April 16, 2018.

## OBJECTIONS:

Defendant objects to this interrogatory as harassing and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to the extent this interrogatory violates the attorney-client, work-product, and/or reporter's privilege. Defendant further objects to this interrogatory as unduly burdensome and seeking information not relevant to Plaintiff's claims in this lawsuit.

## RESPONSE:

Subject to and without waiving the foregoing objections, Defendant does not personally have the requisite information to appropriately respond to this interrogatory. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure.

**INTERROGATORY NO. 3:** Identify the date and description of the circumstances for any occasions in which you have made public oral or written statements that were not published by Free Speech Systems, LLC concerning the Sandy Hook shooting, any relatives of the victims, any lawsuits brought by relatives of the victims, or the allegations in those lawsuits.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, not narrowly tailored in scope of subject or time, and unduly burdensome. Defendant further objects to this interrogatory as an improper compound interrogatory in violation of the Texas Rules. Defendant also objects to the extent this interrogatory seeks information in violation of the attorney-client and/or work-product privileges. Defendant further objects to the extent this interrogatory seeks an impermissible narrative that cannot be adequately confined as an answer to an interrogatory. Defendant further objects to this interrogatory as vague in its reference to "not published by Free Speech Systems, LLC."

**ANSWER:**

Subject to and without waiving the foregoing objections, Defendant is unable to adequately respond to this interrogatory as phrased by Plaintiff and what Plaintiff means by statements "not published by Free Speech Systems, LLC" as opposed to Defendant's individual right to protected free speech.

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## DEFEENDANT, FREE SPEECH SYSTEMS, LLC'S, OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to the Texas Rules of Civil Procedure, Defendant, Free Speech Systems, LLC ("Defendant"), hereby provides its objections and answers to the Second Set of Interrogatories propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 12, 2021.

Respectfully submitted,

By: ____ */s/ Bradley J. Reeves* _____
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                  *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

                                    */s/ Bradley J. Reeves*
                                    Bradley J. Reeves

### Defendant, Free Speech Systems, LLC's, Objections and Answers to Plaintiff's Second Set of Interrogatories

**INTERROGATORY NO. 1:** State the total number of viewers and/or listeners for the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," the June 25, 2017 episode of The Alex Jones Show from which the June 26th video was taken, and the July 20, 2017 episode of The Alex Jones Show in which the June 26th video was featured.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, unduly burdensome, and a fishing expedition, as Plaintiff has not identified any relevancy between his claims in this lawsuit and the listed video. Defendant also objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence.

**ANSWER:**

Subject and without waiving the foregoing objections, Defendant is currently unable to answer this interrogatory with the necessary information of total viewers. Defendant and its counsel are continuing to work diligently to obtain this information but it is currently difficult to establish given the removal of the referenced clips from various platforms on the internet. In particular, Defendant does not have requisite information which may be in the possession of third-party platforms which Defendant is no longer able to utilize. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure.

**INTERROGATORY NO. 2:** Identify every way in which the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly in Alex Jones Hit Piece," the June 25, 2017 episode of The Alex Jones Show, the July 20, 2017 episode of The Alex Jones Show, or any portions of the foregoing, were disseminated to the public, whether by radio, television, internet video, or any other publication or broadcast, whether by Free Speech Systems or by any other authorized entity or person.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, unduly burdensome, and a fishing expedition, particularly in light of the fact that InfoWars broadcasting occurs across several platforms simultaneously. Defendant also objects to this interrogatory as vague in its use of the terms "any other authorized entity or person."

**RESPONSE:**

Subject to and without waiving the foregoing objections, at the time referenced in Plaintiff's interrogatory, InfoWars-related broadcasts, posts, videos, etc., in particular The Alex Jones Show, were simulcast across multiple platforms, including Twitter, Facebook, YouTube, and others, most of which are no longer available to FSS. As such, Defendant is currently unable to determine which of these platforms were actually utilized to simulcast the particular broadcasts referenced in

Plaintiff's interrogatory. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure.

**INTERROGATORY NO. 3:** Identify every individual at Free Speech Systems, LLC who was aware of the Zero Hedge blog post "Megyn Kelly Fails to Fact Check Sandy Hook Father's Contradictory Claim in the Alex Jones Hit Piece" prior to Owen Shroyer discussing that blog post on the Alex Jones Show.

**OBJECTIONS:**

Defendant objects to this interrogatory as vague in its use of the term "aware." Defendant further objects to this interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**ANSWER:**

Subject to and without waiving the foregoing objections, Defendant has no information responsive to this interrogatory. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56274306
Status as of 8/13/2021 12:01 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/13/2021 12:00:28 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/13/2021 12:00:28 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/13/2021 12:00:28 AM | SENT |

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| Defendants, | § | |

## DEFEENDANT, FREE SPEECH SYSTEMS, LLC'S, OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION

Pursuant to the Texas Rules of Civil Procedure, Defendant, Free Speech Systems, LLC ("Defendant"), hereby provides its objections and responses to the Second Requests for Production propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 12, 2021.

Respectfully submitted,

By: ___/s/ Bradley J. Reeves_____
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                          *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

_/s/ Bradley J. Reeves_____
Bradley J. Reeves

## DEFENDANT, FREE SPEECH SYSTEMS, LLC'S, OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**  All documents concerning Neil Heslin.

**OBJECTIONS:**

Defendant objects to this request as overly broad on its face because it is not sufficiently narrowed in scope of time. Defendant also objects to this request to the extent it seeks documents that are protected by the work-product and/or attorney-client privileges. Defendant further objects to this request as vague in its use of the broad term "concerning." Subject to and without waiving the foregoing objections,

**RESPONSE:**

Responsive documents have previously been produced to the extent such documents are in the possession, custody, or control of Defendant. Moreover, Defendant is continuing to supplement its production and continues to search for responsive documents to further supplement his production as necessary in accordance with the Texas Rules of Civil Procedure, expect to the extent such documents are protected from production by the applicable privileges cited above.

**REQUEST FOR PRODUCTION NO. 2:**  All financial statements between 2012-2018, including but not limited to, profit and loss statements, general ledger, trial balance statements, cash flow statements, and equity draws.

**OBJECTIONS:**

Defendant objects to this request as overly broad and unduly burdensome. Defendant further objects to this request as it is not narrowly tailored to the underlying facts of this case and is merely a fishing expedition. Defendant also objects to this request to the extent it seeks documents regarding Defendant's net worth in violation of § 41.005 of the TEX. CIV. PRAC. & REM. CODE. Defendant further objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the extent this request seeks documents in violation of the accountant-client privilege. Defendant also objects to this request as vague in its use of the terms "financial statements."

**RESPONSE:**

Defendant believes such documents are not relevant to Plaintiff's claims and this request violates § 41.005 of the Texas Civil Practices and Remedies Code regarding net worth discovery. Defendant will further supplement this response as necessary if the necessary Court order is entered regarding the production of such documents and if a mutually agreeable protective and confidentiality order is also entered by the Court.

**REQUEST FOR PRODUCTION NO. 3**: All master-level or overview reports created to summarize product sales performance from December 14, 2012 to the present day.

**OBJECTIONS:**

Defendant objects to this request as overly broad and unduly burdensome. Defendant further objects to this request as it is not narrowly tailored to the underlying facts of this case and is merely a fishing expedition. Defendant also objects to this request to the extent it seeks documents regarding Defendant's net worth in violation of § 41.005 of the TEX. CIV. PRAC. & REM. CODE. Defendant further objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the extent this request seeks documents in violation of the accountant-client privilege. Defendant also objects to this request as vague in its use of the terms "master-level," "overview reports," and "product sales performance." Defendant further objects to the extent this request seeks documents pertaining to protected confidential trade secrets and financial information to which Plaintiff is not entitled absent a court order.

**RESPONSE:**

Defendant believes such documents are not relevant to Plaintiff's claims and this request violates § 41.005 of the Texas Civil Practices and Remedies Code regarding net worth discovery, along with this request impermissibly seeking protected trade secrets and financial information of Defendant. Defendant will further supplement this response as necessary if the necessary Court order is entered regarding the production of such documents and if a mutually agreeable protective and confidentiality order is also entered by the Court.

**REQUESTS FOR PRODUCTION NO. 4:** All documents you relied on in answering Plaintiff's Second Set of Interrogatories.

**OBJECTIONS:**

Defendant objects to this request as overly broad and unduly burdensome. Defendant further objects to this request as it is not narrowly tailored to the underlying facts of this case and is merely a fishing expedition. Defendant also objects to this request to the extent it seeks documents regarding Defendant's net worth in violation of § 41.005 of the TEX. CIV. PRAC. & REM. CODE. Defendant further objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to this request as vague in its broad reference to the "videos in Plaintiffs' petition" without further specifying same in Plaintiff's request.

**RESPONSE:**

Subject to and without waiving the foregoing objections, Defendant will produce relevant responsive documents to the extent it has not already done so, except to the extent such requests seek net worth-related documents without the necessary court order for same.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56274306
Status as of 8/13/2021 12:01 AM CST

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/13/2021 12:00:28 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/13/2021 12:00:28 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## **DEFEENDANT, OWEN SHROYER'S, OBJECTIONS AND ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Pursuant to the Texas Rules of Civil Procedure, Defendant, Owen Shroyer ("Defendant"), hereby provides his objections and answers to the Second Set of Interrogatories propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 12, 2021.

Respectfully submitted,

By: *  /s/ Bradley J. Reeves            *
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                              *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

    */s/ Bradley J. Reeves*
Bradley J. Reeves

## DEFENDANT, OWEN SHROYER'S, OBJECTIONS AND ANSWERS TO
## PLAINTIFF'S SECOND SET OF INTERROGATORIES

**INTERROGATORY NO. 1:** Identify by name and address every employer you have had since June 26, 2012 and every job title you have held during that period.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, unduly burdensome, and a fishing expedition, as Defendant's employment history has no bearing on the issues in this lawsuit. Defendant further objects to this interrogatory as not seeking information relevant to this lawsuit or Plaintiff's claims in any way.

**ANSWER:**

Subject and without waiving the foregoing objections, Defendant has been a free-lance reporter, podcaster, political activist, and commentator for a number of years. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Proceedure.

**INTERROGATORY NO. 2:** Identify every individual you communicated with on June 25, 2017 between the time you first saw the Zero Hedge blog post "Megyn Kelly Fails to Fact Check Sandy Hook Father's Contradictory Claim in Alex Jones Hit Piece" and the time you discussed that blog post on the Alex Jones Show.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad and unduly burdensome and not reasonable calculated to lead to the discovery of admissible evidence. Defendant further objects to the extent this interrogatory seeks information that is private and otherwise has nothing to do with Plaintiff's claims in his lawsuit. Defendant further objects to this interrogatory as vague in it fails to specify any real period of time but only states "when you first saw" the blog post.

**ANSWER:**

Subject to and without waiving the foregoing objections, Defendant is unable to answer this interrogatory because Defendant cannot remember that time period with enough specificity to remember and list all individuals he may have communicated with during that vague period of time referenced in Plaintiff's interrogatory from when Defendant "first saw" the blog post and when it was discussed on the Alex Jones Show. Defendant will further supplement this answer as necessary in accordance with the Texas Rules of Civil Procedure if and when additional information responsive to this interrogatory is learned/determined by Defendant.

**INTERROGATORY NO. 3:** Describe how and at what time you became aware of the Zero
Hedge blog post "Megyn Kelly Fails to Fact Check Sandy Hook Father's Contradictory Claim in
Alex Jones Hit Piece" on June 25, 2017.

**OBJECTIONS:**

Defendant objects to this interrogatory as vague in its use of the term "you became aware" without
further explaining what level of "aware" Defendant would be required to have to actually know of
the blog post's existence and contents of that blog post.

**ANSWER:**

Subject to and without waiving the foregoing objections, Defendant is unable to respond to this
interrogatory and provide a specific time as to when Defendant "became aware" of this blog post.
Defendant will further supplement this answer as necessary in accordance with the Texas Rules of
Civil Procedure if and when more information responsive to this interrogatory becomes available
to Defendant.

**INTERROGATORY NO. 4:** Identify by date any occasions in which you have made public oral
or written statements concerning the Sandy Hook shooting, any relatives of the victims, any
lawsuits brought by relatives of the victims, or the allegations in those lawsuits. If those statements
were orally made on an InfoWars show, state the show and the episode title. If those statements
were made on the InfoWars website, identify the title of the webpage and URL. If those statements
were made elsewhere, describe the circumstances of the statements.

**OBJECTIONS:**

Defendant objects to this interrogatory as overly broad, not narrowly tailored in scope of subject
or time, and unduly burdensome. Defendant further objects to this interrogatory as an improper
compound interrogatory in violation of the Texas Rules. Defendant also objects to the extent this
interrogatory seeks information in violation of the attorney-client and/or work-product privileges.
Defendant further objects to the extent this interrogatory seeks an impermissible narrative that
cannot be adequately confined as an answer to an interrogatory.

**ANSWER:**

Subject to and without waiving the foregoing objections, Plaintiff is seeking to have Defendant go
through years of his comments, appearances, political activism, posts, and the like for at last the
last almost nine (9) years—which occur on a regular and almost daily basis—from the time when
the Sandy Hook shooting occurred (December 14, 2012) to the present—when Defendant is a
reporter, host, and activist who makes a living off of providing news-worthy content to the public.
Defendant is simply unable to state with any specificity the "occasions" on which Defendant has
made any comments or statements of any sort which Plaintiff would somehow deem responsive to
this interrogatory. As such, Defendant at this time does not have the requisite information to
respond to this interrogatory as currently phrased by Plaintiff and it would force Defendant an

4

undue hardship and burden to have to do so without further clarification and appropriate
boundaries on this interrogatory from Plaintiff.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56274306
Status as of 8/13/2021 12:01 AM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/13/2021 12:00:28 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/13/2021 12:00:28 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/13/2021 12:00:28 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 261st JUDICIAL DISTRICT |
| *Defendants,* | § | |

## DEFEENDANT, OWEN SHROYER'S, OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION

Pursuant to the Texas Rules of Civil Procedure, Defendant, Owen Shroyer ("Defendant"), hereby provides his objections and responses to the Second Requests for Production propounded by Plaintiff, Neil Heslin ("Plaintiff"). Defendant reserves the right to supplement these objections and responses as necessary in accordance with the Texas Rules of Civil Procedure

Dated: August 12, 2021.

Respectfully submitted,

By:  /s/ Bradley J. Reeves
   Bradley J. Reeves
   Texas Bar No. 24068266
   brad@brtx.law
   **REEVES LAW, PLLC**
   702 Rio Grande St., Suite 203
   Austin, TX 78701
   Telephone: (512) 827-2246
   Facsimile: (512) 318-2484

   **ATTORNEY FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on August 12, 2021.

Mark Bankston                                              *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

　　　　　　　　　　　　　　　　　　　　*/s/ Bradley J. Reeves*　　　　　
　　　　　　　　　　　　　　　　　　　　Bradley J. Reeves

2

## DEFENDANT, OWEN SHROYER'S, OBJECTIONS AND RESPONSES TO
## PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**   All communications you sent or received concerning the Sandy Hook shooting, any relatives of the victims, any lawsuits brought by relatives of the victims, or the allegations in those lawsuits since the start of your employment at Free Speech Systems, LLC.

## OBJECTIONS:

Defendant objects to this request as overly broad on its face because it is not sufficiently narrowed in scope of time. Defendant also objects to this request to the extent it seeks documents that are protected by the work-product and/or attorney-client privileges. Defendant further objects to this request as vague in its use of the broad term "concerning." Defendant also objects to this request as it assumes facts not in evidence as to whether Defendant was employed by Free Speech Systems, LLC. Defendant further objects to the extent this request seeks to have Defendant prematurely marshal all evidence and documents in his defense in this case. Subject to and without waiving the foregoing objections,

## RESPONSE:

Subject to and without waiving the foregoing objections, Defendant is not currently in possession, custody, or control of documents responsive to this request beyond those which may be in the possession, custody, or control of Free Speech Systems, LLC. Defendant is continuing to diligently search to determine if any documents responsive to this request are indeed in his care, possession, custody, or control, and will further supplement his production with the same as necessary in accordance with the Texas Rules of Civil Procedure, expect to the extent such documents are protected from production by the applicable privileges cited above.

**REQUEST FOR PRODUCTION NO. 2:** All communications you sent or received concerning a "false flag" since the start of your employment at Free Speech Systems, LLC.

**OBJECTIONS:**

Defendant objects to this request as overly broad and unduly burdensome. Defendant further objects to this request as it is not narrowly tailored to the underlying facts of this case and is merely a fishing expedition. Defendant further objects to this request as not sufficiently tailored in scope of time or subject matter in that it seeks documents that have nothing to do with the underlying Sandy Hook tragedy at issue in this case. Defendant further objects to this request to the extent it seeks documents in violation of the attorney-client and/or work-product privileges.

**RESPONSE:**

Subject to and without waiving the foregoing objections, Defendant is not currently in possession, custody, or control of documents responsive to this request beyond those which may be in the possession, custody, or control of Free Speech Systems, LLC. Defendant is continuing to diligently search to determine if any documents responsive to this request are indeed in his care, possession, custody, or control, and will further supplement his production with the same as necessary in accordance with the Texas Rules of Civil Procedure, expect to the extent such documents are protected from production by the applicable privileges cited above.

4

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 56274306
Status as of 8/13/2021 12:01 AM CST

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 8/13/2021 12:00:28 AM | SENT |

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marc Randazza | | ecf@randazza.com | 8/13/2021 12:00:28 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 8/13/2021 12:00:28 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 8/13/2021 12:00:28 AM | SENT |

9/15/2021 8:44 AM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-18-001835**
**Lisa Guerrero**

## D-1-GN-18-001835

| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

---

## PLAINTIFFS' MOTION FOR PROTECTION REGARDING MARC RANDAZZA

---

1

Plaintiffs file this Motion for Protection to prohibit Defendants from allowing out-of-state attorney Marc Randazza or any member of his staff access to confidential documents, testimony, expert reports, or any witnesses in this litigation. For good cause, Plaintiffs show as follows:

## SUMMARY

On September 10, 2021, Plaintiffs learned that for the previous two months, Mr. Randazza failed to disclose that he has been in possession of confidential settlement documents in the *Lafferty* case. Two months ago, Mr. Randazza was sent these documents by frequent InfoWars guest and former *Lafferty* defendant Wolfgang Halbig. Mr. Halbig, who had entered a confidential settlement, sent these documents in obvious violation of contractual obligations. During the two months Mr. Randazza was secretly in possession of the documents, the court in *Lafferty* entered multiple orders regarding the confidential settlement in which it ruled that the materials were inappropriate for discovery and could not be inquired about. During this time, Mr. Randazza and his junior attorney did not inform the court they were secretly in possession of those settlement documents. After two months of concealing his possession of the confidential documents, essentially wasting the court's time, Mr. Randazza then instructed his junior attorney to make a public filing describing aspects of the agreement's contents in an unredacted pleading.

Mr. Randazza has been acting behind-the-scenes coordinating the Sandy Hook litigation from the beginning, a fact he revealed in his recent application to appear *pro*

*hac vice*. During those three years, the litigation in both forums has been a non-stop catastrophe. Plaintiffs do not desire to proceed in this case unprotected from Mr. Randazza's future antics. Plaintiffs' need for protection is especially acute given the events of the past several months.

Prior to this latest event, a lack of respect for confidentiality orders by Mr. Randazza and his junior attorney Mr. Wolman was already demonstrated when protected deposition information was filed this summer in the *Lafferty* case. Indeed, the *Lafferty* court described the "baseless argument" concerning confidentiality duties put forth by Mr. Wolman as "frightening." Moreover, there is a record of Mr. Randazza trafficking in wrongfully obtained information from litigation adversaries in the past, and there is also a record showing Mr. Randazza has threatened and intimidated participants in litigation, including a witness who gave testimony in this case. In short, any access to confidential materials or witnesses by Mr. Randazza poses risks to legitimate interests and virtually guarantees more collateral distractions.

For all of these reasons, Plaintiffs have brought this Motion for Protection as it concerns Mr. Randazza specifically. Plaintiffs ask the court to an enter an order prohibiting Defendants from allowing Mr. Randazza or his law office access to any confidential discovery documents, confidential expert reports, or confidential testimony in this litigation. Plaintiffs also ask the Court to prohibit Defendants from having Mr. Randazza make any manner of contact with any potential witness in this case given his prior conduct. Finally, Plaintiffs ask this Court to prohibit any contact

between Mr. Randazza and any of Defendants' expert witnesses who review confidential material.

<div align="center">

**LEGAL STANDARD**

</div>

While this Court cannot prevent Mr. Jones from soliciting the legal advice of out-of-state counsel, it can limit access to discovery and witnesses. These powers arise under Rule 192.6 and under the Court's inherent powers to safeguard the proceedings. Under Rule 192.6, this Court may enter an order protecting any person from whom discovery is sought. Such an order can be used "[t]o protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." Tex. R. Civ. P. 192.6(b). The Rule also authorizes the Court to "make any order in the interest of justice." *Id.* Further, under the Government Code, all courts have the inherent power to "require that proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done." Tex. Govt. Code Sec. 21.001(b).

<div align="center">

**ARGUMENT**

</div>

I.      **There is Good Cause for Protection Given that Mr. Randazza Concealed his Possession of Confidential Settlement Documents Specifically Referenced in Court Orders.**

In the *Lafferty* case, Mr. Randazza has caused another significant controversy when he failed to disclose his possession of confidential documents at the heart of court orders for two months and then filed a public notice describing aspects of the agreement. The problem was explained in a Motion to Seal by the *Lafferty* plaintiffs:

This Court barred the Jones defendants from obtaining or inquiring into matters related to settlement. *See* Dkt. 378.10 (ordering that "no inquiry may be made regarding any settlement between the plaintiffs and Halbig, including but not limited to the terms or value of those settlements, nor may any testimony be offered in that regard"); Dkt. 389.00 (barring Jones defendants from seeking information related to settlement and ruling it "not a proper line of inquiry"). In their filing of Thursday, September 2, Dkt. 454.00, they indicated that, for the past 55 days, they have been in possession of documents covered by these orders.

Instead of advising the plaintiffs or the Court of this fact in a non-public forum, they gratuitously described aspects of those materials' contents in a public filing. These materials were provided to the Jones defendants in violation of a binding contractual agreement. This Court has repeatedly ruled that the Jones defendants are not entitled to them and ordered that they may not inquire into them. Nonetheless, in the 55 days since receiving the materials, the Jones defendants failed to advise the plaintiffs or the Court that these materials were in their possession.

The plaintiffs have requested that the Jones defendants treat the materials as Highly Confidential – Attorneys Eyes Only under the Protective Order. They have refused this request. Additionally, they have refused the plaintiffs' requests that they provide the plaintiffs with the materials and destroy any copies of them wrongfully in their possession.[1]

The *Lafferty* court's orders denying discovery of the agreement were entered on July 2, 2021 and July 21, 2021.[2] Yet Mr. Randazza gained possession of the confidential documents on July 9th, and concealed his possession for two months until mid-September.[3] All while the Court and the parties were litigating the issue, Mr.

---

[1] Exhibit 1, *Lafferty* Plaintiffs' Motion to Seal, p. 1-2.
[2] *See Lafferty* Dkt. 378.10; 389.00. Available at:
http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV186046436S
[3] Exhibit 2, *Lafferty* Defendants' Notice of Receipt of Settlement Documents (Redacted), p. 2.

Randazza kept his possession of the documents a secret from the Court. In their publicly filed notice, Defendants claimed that that Mr. Randazza "determined that Defendants had no obligation to make this disclosure," but that "Attorney Randazza opined that making the disclosure [in a public unredacted filing] would be the most honorable course of action."[4] In the exhibit attached to this Motion, Plaintiffs have redacted the portions of Defendants' Notice which describe the agreement since that Notice is currently subject to a Motion to Seal in *Lafferty*.

Separate and apart from the issue of whether a party must inform its adversary when it has acquired its confidential documents through another's misdeed, Mr. Randazza's handling of this situation is alarming. Defendants' public unredacted notice was clearly inappropriate, and Mr. Randazza's lack of candor for two months while discovery orders were being litigated is also extremely concerning. These events, and Mr. Randazza's past conduct discussed below, provide good cause for specific protection. Such an order will help avoid further collateral litigation.

## II.    There is Good Cause for Protection Because InfoWars Recently Violated the *Lafferty* Protective Order.

Mr. Randazza, through his junior attorney Jay Wolman, is overseeing litigation in *Lafferty*, where they are joined by a local attorney. Mr. Wolman, an employee of Randazza Legal Group, is licensed in Connecticut, so the *Lafferty* court did not have the option of preventing his appearance. As part of the many shenanigans in that case,

---

[4] Exhibit 2, *Lafferty* Defendants' Notice of Receipt of Settlement Documents (Redacted), p. 2.

the *Lafferty* attorneys were recently found to have violated a protective order after having argued they had no duty to comply with the order. In an order on August 6, 2021, the *Lafferty* court described these events and the "frightening" arguments of Mr. Randazza's junior attorney:

> In the midst of taking the first deposition of a plaintiff, the defendants Free Speech Systems LLC, Infowars LLC, Infowars Health LLC, and Prison Planet TV LLC (Infowars), filed a motion to depose Hillary Clinton, using deposition testimony that had just been designated as "Confidential-Attorneys Eyes Only," and completely disregarding the court ordered procedures...
>
> In short, Infowars, having advocated for a court ordered protective order, filing no less than three versions, having recited in writing the good cause bases for the issuance of the protective order, and having no objection to the plaintiffs' proposed modification, now takes the absurd position that the court ordered protective order circumvents the good cause requirements of Practice Book 13-5, did not need to be complied with, and should not be enforced by the court. This argument is frightening. Given the cavalier actions and willful misconduct of Infowars in filing protected deposition information during the actual deposition, this court has grave concerns that their actions, in the future, will have a chilling effect on the testimony of witnesses who would be rightfully concerned that their confidential information, including their psychiatric and medical histories, would be made available to the public.[5]

In this case, Plaintiffs will be at greatly increased risk of injury if Defendants are permitted to allow Mr. Randazza and his firm access to confidential documents, testimony, and expert reports. Plaintiffs cannot show good cause to designate the entirety of confidential discovery as "Attorneys Eyes Only," nor is such a solution

---

[5] Exhibit 3, August 6, 2021 Order in *Lafferty*.

workable. But the record does show good cause for an order prohibiting any access

by Mr. Randazza or his law firm specifically, given their prior conduct.

### III.   There is Good Cause for Protection Because Mr. Randazza has Previously Trafficked in Wrongfully Obtained Confidential Information.

Good cause for specific protection is further supported by evidence of Mr.

Randazza's history of trafficking in illegitimate confidential information. One such

episode occurred when Mr. Randazza was pursuing a file-sharing company. During

that lawsuit, Mr. Randazza acquired pilfered confidential information about his

opponent's business from a photographer named James Grady who assisted in

Randazza's case against the file-sharing company.

In an email, Grady told Randazza that he "pay[s] a guy – call him a forensic

investigator" who was able to gain access to confidential information from the target

company, including "corporate papers" and "emails."[6] Grady made it clear the

information was not legitimately obtained, telling Randazza that his source "didn't get

the info at Walmart in the course of normal commerce."[7] In a later email, Randazza

asked Grady to testify, but told him, "I need you to consider what happens if the judge

wants to know where you got your information."[8] While Randazza wanted Grady to

have an answer ready for the judge, Randazza didn't care if the information was

obtained in violation of ethical rules. Randazza told Grady that if the information

---

[6] Exhibit 4, Emails between Randazza and James Grady filed in in *Randazza v Excelsior*, U.S. Bankruptcy Court for the District of Nevada, No. 15-01193-ABL, Doc. 144-10, p. 1.
[7] *Id.*
[8] *Id,* p. 3.

came from a "disgruntled Oron employee" or a "jilted lover" with access to the company's confidential documents, he felt that was "great."[9]

Likewise, the findings from the Excelsior/Liberty Arbitration confirm Mr. Randazza trafficking in pilfered information. During that trial, the Arbitrator found evidence of "Mr. Randazza's assisting Datatech, including via forwarding fruits of a disclosed (unnamed) computer hacker."[10] In doing so, Mr. Randazza was "[k]nowingly forwarding illegally 'hacked' computer data to counsel for another company."[11] These events provide good cause to limit his access in this litigation.

## IV.    There is Good Cause for Protection Because Mr. Randazza has Already Intimidated a Witness in this Case.

As the Court may recall, Plaintiffs' brief opposing Mr. Randazza's pro hac vice motion included declarations from Alexandrea Merrell and Mike Postle discussing an abusive phone call they had with Mr. Randazza. In the week after the filing of those declarations, Mr. Randazza began repeatedly contacting Mr. Postle by email, issuing menacing threats about lawsuit and perjury.

First, on July 29, 2021, Mr. Randazza emailed Mr. Postle stating, "It is my intention to file a lawsuit against you for violation of Cal. Penal Code § 637.2."[12] Mr. Randazza threatened this lawsuit due to Mr. Postle allegedly recording Mr. Randazza's abusive call. This was a strange threat because Mr. Randazza should have

---

[9] *Id.*
[10] Exhibit 5, Interim Arbitration Award in *Randazza v. Excelsior Media Corp., et al.*, p. 18.
[11] *Id.,* p. 8.
[12] Exhibit 6, Declaration of Mike Postle, p. 3.

been overjoyed that the call was recorded, since it would have proved his alleged

innocence. Instead, Mr. Randazza was angry and threatened Mr. Postle with a lawsuit,

stating, "I am willing to grant you 24 hours in which to try to resolve this without

filing suit against you."[13]

Mr. Postle responded by denying that he had recorded any calls, and asked Mr.

Randazza to leave him alone, stating that he "[didn't] see a reason for you to contact

me."[14] When Mr. Randazza learned that the call was not recorded, he switched tactics,

now claiming Mr. Postle had committed perjury. In his next email, Mr. Randazza

stated, "Well, you both lied in claiming that I called her a 'cunt.'"[15] Mr. Randazza told

Mr. Postle, "So, how do you want to handle your perjury?"[16] Mr. Postle responded

again, clearly upset by Mr. Randazza's accusation and his threat. Mr. Postle again

asked Mr. Randazza to cease contact:

> As I have said before, I find you beyond unprofessional and
> yet again, there's no need to have contact with you unless
> it is specifically for court business. These threats are NOT
> court business.[17]

Mr. Postle also stated, "I didn't lie, you did say that."[18] Mr. Postle expressed his

dismay that Mr. Randazza was "coming at me out of personal anger with a clear

vendetta."[19] Mr. Postle then repeated his request that Mr. Randazza cease contact:

---

[13] *Id.*
[14] *Id.,* p. 4
[15] *Id.,* p. 5.
[16] *Id.*
[17] *Id.,* p. 6.
[18] *Id.*
[19] *Id.*

> There's really no reason to contact me other than to continue harassing and threatening me. You've admitted that "because things have been made personal" and that "it's a big mistake on my part," it's very clear why you're still coming at me.[20]

Mr. Randazza refused to honor Mr. Postle's second demand to cease communicating with him about his declaration. Instead, Mr. Randazza again wrote to Mr. Postle, demanding that Mr. Postle "send a letter to the court" recanting his testimony.[21] Otherwise, Mr. Randazza pledged "to take action" and stated that he was "not going to let that rest."[22] Mr. Randazza also added:

> Indeed, I did say "fucking liar" – I will never deny that. But, I certainly did not call her a "fucking bitch" nor a "fucking cunt" (There is a non zero chance that I *thought* those things, but they never came out of my mouth)[23]

Mr. Randazza insisted that "I won't let this go."[24] Mr. Randazza then told Mr. Postle, "So, your move."[25] Mr. Randazza closed by threatening Mr. Postle, stating, "You can dig in…and enjoy the 'effect' as you put it."[26] As Mr. Postle noted in his email, Mr. Randazza had previously emailed Mr. Postle on June 15, 2021, telling Postle, "You decided to make it personal with me. That wasn't smart." A copy of that email was also attached to Postle's declaration.[27]

---

[20] *Id.*
[21] *Id.,* p. 7-8.
[22] *Id.*
[23] *Id.,* p. 8.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.,* p. 11.

In addition, a few weeks after Mr. Postle gave Plaintiffs' counsel his March 2021 declaration about his call with Mr. Randazza, Mr. Postle was harassed again when Mr. Randazza posted a public message to Mr. Postle on Twitter which included a court document with his home address and phone number along with a link to a video of a group of mafiosos beating up a man in a bar.[28]

There actions are consistent by those described by Florida attorney Paul Berger, who testified that "Mr. Randazza screamed, threatened, and berated the undersigned and my client without provocation."[29] Mr. Berger testified that Mr. Randazza "threatened to beat me up and send [his Jewish client] to the Gaza Strip."[30] Mr. Randazza admits that he later taunted the client using Hebrew.[31]

## CONCLUSION

The record described above provides good cause for protection. Mr. Randazza and his junior attorney are not appearing before this court, and Plaintiffs share the *Lafferty* court's "grave concerns that their actions, in the future, will have a chilling effect on the testimony of witnesses."[32] To safeguard against future injury, and to ensure an unambiguous record for future sanctions if necessary, Plaintiffs ask the Court to an enter an order prohibiting Defendants from allowing Mr. Randazza or his law office access to any confidential discovery documents, confidential expert

---

[28] *See* https://twitter.com/marcorandazza/status/1378069741055660040
[29] Exhibit 7, Declaration of Paul Berger, p. 7.
[30] *Id.*
[31] *Id.*
[32] Exhibit 3, August 6, 2021 Order in *Lafferty*.

reports, or confidential testimony in this litigation. Plaintiffs also ask the Court to prohibit Defendants from having Mr. Randazza make any manner of contact with any potential witness in this case given his prior conduct. Finally, Plaintiffs ask this Court to prohibit any contact between Mr. Randazza and any of Defendants' expert witnesses who review confidential material.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with opposing counsel concerning this motion, but I have been unable to confirm whether Defendants are opposed.

_____
MARK D. BANKSTON

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021 the forgoing document was served upon all counsel of record via electronic service.

_____
MARK D. BANKSTON

# D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

# D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

# D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

---

## ORDER ON PLAINTIFFS' MOTION FOR PROTECTION REGARDING MARC RANDAZZA

---

On this day, the Court considered Plaintiffs' Motion for Protection Regarding Marc Randazza.

Given the evidence and arguments in Plaintiffs' Motion, including problems with confidentiality in the similar *Lafferty* lawsuit in Connecticut as well as Mr. Randazza's questionable prior conduct with respect to confidential materials, this Court finds there is good cause to grant the relief requested as it concerns confidential documents, testimony, or expert reports. The Court therefore ORDERS that Defendants are prohibited from allowing Mr. Randazza or his law office access to any discovery documents, expert reports, or testimony which is designated as confidential in this litigation. Likewise, the Court ORDERS that Defendants are prohibited from allowing any contact between Mr. Randazza and any of Defendants' expert witnesses who review confidential material.

In addition, the Court finds that given evidence in the record relating to Mr. Randazza's past behavior, including his intimidating behavior towards a witness who gave testimony in this case, there is good cause to grant the relief requested as it concerns contact with witnesses. The Court therefore ORDERS that Defendants are prohibited from having Mr. Randazza make any manner of contact with any potential witness in this case, other than employees of the Defendants

Dated _____, 2021.


_____
Hon. Maya Guerra Gamble

| NO.    X06-UWY-CV-18-6046436-S | : | SUPERIOR COURT |
| ERICA LAFFERTY, ET AL. | : | COMPLEX LITIGATION DOCKET |
| V. | : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL. | : | SEPTEMBER 3, 2021 |

_____

| NO.    X-06-UWY-CV18-6046437-S | : | SUPERIOR COURT |
| WILLIAM SHERLACH | : | COMPLEX LITIGATION DOCKET |
| V. | : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL. | : | SEPTEMBER 3, 2021 |

_____

| NO.    X06-UWY-CV-18-6046438-S | : | SUPERIOR COURT |
| WILLIAM SHERLACH, ET AL. | : | COMPLEX LITIGATION DOCKET |
| V. | : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL. | : | SEPTEMBER 3, 2021 |

## MOTION FOR ORDER REGARDING AND TO SEAL THE
## JONES DEFENDANTS' NOTICE OF POSSESSION OF DOCUMENTS

This Court barred the Jones defendants from obtaining or inquiring into matters related to settlement. *See* Dkt. 378.10 (ordering that "no inquiry may be made regarding any settlement between the plaintiffs and Halbig, including but not limited to the terms or value of those settlements, nor may any testimony be offered in that regard"); Dkt. 389.00 (barring Jones defendants from seeking information related to settlement and ruling it "not a proper line of inquiry"). In their filing of Thursday, September 2, Dkt. 454.00, they indicated that, for the past 55 days, they have been in possession of documents covered by these orders.

Instead of advising the plaintiffs or the Court of this fact in a non-public forum, they gratuitously described aspects of those materials' contents in a public filing. These materials were

1

provided to the Jones defendants in violation of a binding contractual agreement. This Court has repeatedly ruled that the Jones defendants are not entitled to them and ordered that they may not inquire into them. Nonetheless, in the 55 days since receiving the materials, the Jones defendants failed to advise the plaintiffs or the Court that these materials were in their possession.

The plaintiffs have requested that the Jones defendants treat the materials as Highly Confidential – Attorneys Eyes Only under the Protective Order. They have refused this request. Additionally, they have refused the plaintiffs' requests that they provide the plaintiffs with the materials and destroy any copies of them wrongfully in their possession. To protect these materials and their interests, the plaintiffs therefore move for a court order designating that these materials be treated as Highly Confidential – Attorneys Eyes Only while the plaintiffs consider further appropriate relief.

Additionally, the plaintiffs move that the Jones defendants' filing advertising these materials, Dkt. 454.00, be sealed. Under Conn. Practice Book § 11-20A(c), a filing or document may "be sealed . . . if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials." In doing so, the court "shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest." *Id.* The traditional presumption in favor of public access "applies only to 'judicial documents.'" *Rosado v. Bridgeport Roman Cath. Diocesan Corp.*, 292 Conn. 1, 42 (2009). A "judicial document" is a filing on which the court could "rely on in support of its adjudicatory function." *Id.* at 46.

Because the Jones defendants' Notice is "not marked in support of any motion or other determination of the court and, therefore, could not have been relied upon in the course of adjudicatory action," it is not a "judicial document," and the presumption of public access does

not apply. *Id.* at 51–52 (holding same for certain documents). The public has no legitimate interest in viewing information that this Court has already found is "not proper inquiry" and "literally . . . a fishing expedition," and therefore cannot be material to any adjudication in the case. 7/2/21 Hrg. Tr. 49–51, Dkt. 398.00, July 7, 2021. Moreover, there is an overriding interest in preserving the confidentiality of information obtained in violation of a binding contract, and whose revelation would constitute a flouting of the Court's own determination that it may not be sought or obtained in the case. In the alternative, the Court could seal the Notice and order the filing of a version in which any description of the materials referenced is redacted.

   For all the foregoing reasons, the plaintiffs' motion should be granted.

<div style="margin-left:40%">

THE PLAINTIFFS,

By:   */s/ Matthew S. Blumenthal*
      CHRISTOPHER M. MATTEI
      ALINOR C. STERLING
      MATTHEW S. BLUMENTHAL
      KOSKOFF KOSKOFF & BIEDER
      350 FAIRFIELD AVENUE
      BRIDGEPORT, CT  06604
      asterling@koskoff.com
      cmattei@koskoff.com
      mblumenthal@koskoff.com
      Telephone:    (203) 336-4421
      Fax:          (203) 368-3244
      JURIS #32250

</div>

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been emailed and/or mailed, this day, postage prepaid, to all counsel and *pro se* appearances as follows:

***For Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC and Prison Planet TV, LLC:***
Jay Marshall Wolman, Esq.
100 Pearl Street, 14th Floor
Hartford, CT 06103
jmw@randazza.com
P: 702-420-2001

Norman A. Pattis, Esq.
Kevin Smith, Esq.
Pattis & Smith, LLC
383 Orange Street, First Floor
New Haven, CT  06511
P:  203-393-3017
npattis@pattisandsmith.com
ksmith@pattisandsmith.com

***For Genesis Communications Network, Inc.***
Mario Kenneth Cerame, Esq. (and via USPS)
Brignole & Bush LLC
73 Wadsworth Street
Hartford, CT  06106
mario@brignole.com
mcerame@brignole.com
P: 860-527-9973

*/s/ Matthew S. Blumenthal*
CHRISTOPHER M. MATTEI
ALINOR C. STERLING
MATTHEW S. BLUMENTHAL

4

Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor, Hartford, CT 06103 Tel: 702-420-2001

| DOCKET NO: UWY-CV-18-6046436-S : | : | SUPERIOR COURT |
| ERICA LAFFERTY, ET AL., | : | COMPLEX LITIGATION DOCKET |
|  | : |  |
| VS. | : | AT WATERBURY |
|  | : |  |
| ALEX EMRIC JONES, ET AL. | : | SEPTEMBER 2, 2021 |

| DOCKET NO: UWY-CV-18-6046437-S : | : | SUPERIOR COURT |
| WILLIAM SHERLACH, | : | COMPLEX LITIGATION DOCKET |
|  | : |  |
| VS. | : | AT WATERBURY |
|  | : |  |
| ALEX EMRIC JONES, ET AL. | : | SEPTEMBER 2, 2021 |

| DOCKET NO: UWY-CV-18-6046438-S : | : | SUPERIOR COURT |
| WILLIAM SHERLACH, ET AL., | : | COMPLEX LITIGATION DOCKET |
|  | : |  |
| VS. | : | AT WATERBURY |
|  | : |  |
| ALEX EMRIC JONES, ET AL. | : | SEPTEMBER 2, 2021 |

## NOTICE OF RECEIPT OF SETTLEMENT DOCUMENTS

On July 2, 2021, the Court issued an Order (*Lafferty* Entry No. 389.00) as to whether the defendants could inquire, *inter alia*, as to the plaintiffs' settlement with former defendant, Wolfgang Halbig. The Court ruled it was "not a proper line of inquiry", without prejudice to re-briefing the issues in writing.

On July 21, 2021, the Court issued an order allowing the commission for the deposition of Mr. Halbig (*Lafferty* Entry No. 378.10) stating that "no inquiry may be made regarding any settlement between the plaintiffs and Halbig, including but not limited to the terms or value of those settlements, nor may any testimony be offered in that regard".

Although Defendants Alex Jones, Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC, have endeavored to abide the foregoing rulings, and

have done so, without prejudice to their position that such information is discoverable, Mr. Halbig has apparently not felt so bound.

Unsolicited, on July 9, 2021, Mr. Halbig transmitted to Defendants' counsel eight documents purporting to be the Covenant Not to Sue & Settlement Agreeement [sic] █████████

████████████████████████████████████████████████████████████████████

███████████. By their terms, ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████

Why Mr. Halbig decided to send these unsolicited documents to Defendants' counsel is unknown, and Plaintiffs may fully explore his motive at his upcoming deposition. Plaintiffs' counsel should be well familiar with Mr. Halbig's penchant for sending unsolicited emails. But, upon receipt, Defendants' counsel sought the advice of ethics counsel as to how to handle these documents, considering the effect of the Court's order and undersigned counsel's ethical obligations to Defendants and Plaintiffs.

To avoid any question of impropriety, ethics counsel has now advised the undersigned to file the instant notice. Ethics counsel, the undersigned, and Attorney Marc Randazza (consistent with Rule 5.1 of the Rules of Professional Conduct) determined that Defendants had no obligation to make this disclosure. Attorney Randazza opined that making the disclosure would be the most honorable course of action. Defendants have determined that the disclosure is appropriate to avoid any possible prejudice or surprise to Plaintiffs.

Dated: September 2, 2021     Respectfully submitted,
             ALEX EMRIC JONES, INFOWARS, LLC,
             FREE SPEECH SYSTEMS, LLC,

---

[1] As the Court is aware, the Bankruptcy Court determined that Ms. Lafferty's settlements with Mr. Halbig and Midas Resources are void. The Bankruptcy Court further ordered that the settlement funds be deposited with the Clerk of this Court.

Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor, Hartford, CT 06103 Tel: 702-420-2001 Fax: 305-437-7662

Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor, Hartford, CT 06103 Tel: 702-420-2001 Fax: 305-437-7662

INFOWARS HEALTH, LLC, PRISON PLANET TV, LLC

By: /s/ Jay M. Wolman
Jay M. Wolman – Juris #433791 of
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
P: 702-420-2001
F: 305-437-7662
jmw@randazza.com
*Counsel for Defendants Alex E. Jones, Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC*

And

/s/Norman A. Pattis
Norman A. Pattis
PATTIS & SMITH, LLC
Juris No. 423934
383 Orange Street
New Haven, CT 06511
V: 203-393-3017
F:  203-393-9745
npattis@pattisandsmith.com
*Counsel for Defendants Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC*

## CERTIFICATION

I hereby certify that a copy of the above was mailed or electronically delivered on this 2nd day of September 2021 to all counsel and pro se parties of record and that written consent for electronic delivery was received from all counsel and pro se parties of record who were electronically served including:

Alinor C. Sterling
Christopher M. Mattei
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, CT 06604
<asterling@koskoff.com>
<cmattei@koskoff.com>
<mblumenthal@koskoff.com>
*Attorneys for Plaintiffs*

Mario Cerame, Esq.
Brignole, Bush & Lewis
73 Wadsworth Street
Hartford, CT 06106
<mcerame@brignole.com>
*Attorneys for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Woman 433791
Jay M. Wolman

*Randazza Legal Group, PLLC*
*100 Pearl Street, 14th Floor, Hartford, CT 06103 Tel: 702-420-2001 Fax: 305-437-7662*

ORDER    421277

DOCKET NO: UWYCV186046436S

LAFFERTY, ERICA Et Al
   V.
JONES, ALEX EMRIC Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF WATERBURY
   AT WATERBURY

8/5/2021

<div align="center">ORDER</div>

ORDER REGARDING:
07/06/2021 394.00 MOTION FOR ORDER

The foregoing, having been considered by the Court, is hereby:

ORDER:

By written stipulation, and unless the court orders otherwise, parties can agree to modify discovery procedures. See Connecticut Practice Book Section 13-32. In these consolidated cases, the defendants Alex Jones, Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC ("the Jones defendants") did just that. Additionally, they took their agreement with the plaintiffs a step further and asked the court to issue a protective order pursuant to Practice Book Section 13-5 and approve their joint discovery stipulation. The Jones defendants filed no less than three versions of a proposed protective order for the court's approval, see entry numbers 177,181,183, and 185, asserting that they were asking for the same discovery protection that would have been in place in federal court had the cases not been remanded back to state court. They indicated, correctly, that discovery materials are not filed with the court and as such are not ordinarily available to the public. The court ultimately approved the stipulation of the parties, which complied with all relevant requirements of the Connecticut Practice Book and which, inter alia, set forth the procedure by which sensitive confidential information obtained through pretrial discovery would be handled and, if necessary, filed with the court. The order provided that of all or part of a deposition transcript could be designated as confidential by counsel for the deponent or designated party, by requesting such treatment on the record at the deposition or in writing no later than thirty days after the date of the deposition. It set forth simple procedures by which the designation of "confidential" could be subsequently challenged, and how confidential information could be filed with the court. Importantly for the purposes of this motion, the protective order clearly prohibited discovery information designated as confidential from being filed with the court until such time that the court had ruled on the designating party's motion under Practice Book Section 11-20A. The Jones defendants did not oppose the plaintiffs' June 8,2021 motion to modify the protective order, which recited a good cause basis for the modification and which added a "Confidential- Attorneys Eyes Only" designation to the above mentioned procedures. Based upon the written motions filed by the plaintiffs and the Jones defendants, the court, in entering the protective orders, found good cause for both the issuance of the original protective order and its modification. In support of the motion for protective order, the Jones defendants identified their privacy interests in sensitive proprietary information including proprietary business, financial, and competitive information that they maintain as trade secrets, proprietary business and marketing plans, marketing data, web analytics, sales analytics, and/or other web traffic data, and marketing data or analytics. They referred to the "unique" business model that makes them competitive and successful. The plaintiffs, in support of the modification to the protective order, identified their privacy interests in their medical histories, psychiatric records,and private social media accounts. In the midst of taking the first deposition of a plaintiff, the defendants Free Speech Systems LLC, Infowars LLC, Infowars Health LLC, and Prison Planet TV LLC (Infowars),filed a motion to depose Hillary Clinton, using deposition testimony that had just been designated as "Confidential-Attorneys Eyes Only," and completely disregarding the court ordered procedures. At no point prior to filing the Clinton motion did Infowars profess ignorance of the procedures they had proposed and which were court ordered to be followed, nor have they since taken

any steps to correct their improper filing. If Infowars was of the opinion that the plaintiffs' designation was unreasonable and not made in good faith, the solution was to follow the court ordered procedure to challenge the designation, not to blatantly disregard it and make the confidential information available on the internet by filing it in the court file. The court rejects Infowars' baseless argument that there was no good cause to issue the protective orders, where both sides recited, in writing, detailed justification for a good cause basis. In short, Infowars, having advocated for a court ordered protective order, filing no less than three versions, having recited in writing the good cause bases for the issuance of the protective order, and having no objection to the plaintiffs' proposed modification, now takes the absurd position that the court ordered protective order circumvents the good cause requirements of Practice Book 13-5, did not need to be complied with, and should not be enforced by the court. This argument is frightening. Given the cavalier actions and willful misconduct of Infowars in filing protected deposition information during the actual deposition, this court has grave concerns that their actions, in the future, will have a chilling effect on the testimony of witnesses who would be rightfully concerned that their confidential information, including their psychiatric and medical histories, would be made available to the public. The court will address sanctions at a future hearing.

Judicial Notice (JDNO) was sent regarding this order.

421277

Judge: BARBARA N BELLIS

This document may be signed or verified electronically and has the same validity and status as a document with a physical (pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the Connecticut General Statutes and Connecticut Practice Book Section 4-4.

**From:** James Grady Photo
**To:** mjr@randazza.com
**Subject:** Re: Oron
**Date:** Wednesday, June 06, 2012 4:56:01 PM

Marc,

I am in Virgin Islands shooting until the 16th.

Oron is not a huge problem for me but I can toss in $5000. Not much, but its a start.

I pay a guy - call him a forensic investigator - to dig past Domains by Proxy and things like that. He called me today while I was sitting in FT Lauderdale airport with the info. Haven't seen it myself yet but the guy has never been wrong.

I didn't have great connection.... but basic are

Russian, living in FL 10 years.

Married.

My guy has seen corporate papers.

My guys says he has seen emails from guy upset about Forumophelia domain name being on hold after complaint about false whois data. Dated May 2012.

Its legit. We have the guy.

But, my guy didn't get the info at Walmart in the course of normal commerce.

I'll be in touch with him now that I have better reception and hope to update you soon. Please understand I am on a photo shoot trip, Villa full of models, so can't dedicate many minutes until home on 16th.


On 6/6/2012 10:14 AM, mjr@randazza.com wrote:
> I have a complaint drafted and delivered to them.
>
> They are jerking me around.
>
> Corbin Fisher is ready to go. I need some more participants to help fund
> the thing. Do you have anyone who is ready to shit or get off the pot? I
> have a few parties who keep saying yes, but they haven't committed.
>
> How certain are you of the owner's identity and location? Their lawyer
> is telling me that they are in Hong Kong. Of course, I don't buy it, but
> what's your back up for that information?
>
>
>     -------- Original Message --------
>     Subject: Oron
>     From: GroupFivePhotosports <jamesgradyphoto@gmail.com
>     <mailto:jamesgradyphoto@gmail.com>>



DEFENDANT'S
EXHIBIT
396

MJR 013854

> Date: Wed, June 06, 2012 8:08 am
> To: mjr@randazza.com <mailto:mjr@randazza.com>
>
> Trying to get a group together to go after Oron.
>
> Know anybody that wants in?
>
> By the way... The REAL owner of Oron, PornBB and Forumophilia is a
> Russian living in Jacksonville, FL. Been there 10 years, recently
> married, etc.
>
> Jimmy

| From: | James Grady Photo |
|---|---|
| To: | mjr@randazza.com |
| Subject: | Re: Witness in case |
| Date: | Monday, June 25, 2012 6:33:36 PM |

OK, I shall work all that out. Be there whatever day you wish.

On 6/25/2012 7:31 PM, mjr@randazza.com wrote:
> Ok, I need:
>
> 1)  You to develop a report, everything you know about Oron.
> 2)  You to consider what happens if the judge wants to know where you
> got your information.  As far as I know, it was lawfully obtained.  You
> certainly got it lawfully.  If the source is a disgruntled Oron
> employee, great.  Jilted lover, great.  Hacker, problematic.
> 3)  Need you here on July 3.  Probably a day or two before.
>
>
>        -------- Original Message --------
>        Subject: Re: Witness in case
>        From: James Grady Photo <jamesgradyphoto@gmail.com
>        <mailto:jamesgradyphoto@gmail.com>>
>        Date: Mon, June 25, 2012 6:30 pm
>        To: mjr@randazza.com <mailto:mjr@randazza.com>
>
>
>        Sure -- whatever you need.
>
>        On 6/25/2012 7:21 PM, mjr@randazza.com <mailto:mjr@randazza.com> wrote:
>        > you interested in coming down to Vegas for the hearing on July 3
>        > (probably beforehand to prepare) to be a star witness in this case?
>        >  >
>        >  >
>        >



DEFENDANT'S
EXHIBIT
399

MJR 015367

Hon. Stephen E. Haberfeld
JAMS
555 W. 5th St. , 32nd Fl.
Los Angeles, CA 90013
Tel: 213-253-9704
Fax: 213-620-0100

Arbitrator


## JAMS

| | |
|---|---|
| MARC J. RANDAZZA, | ) JAMS No. 1260002283 |
| Claimant, | ) |
| | ) INTERIM ARBITRATION AWARD |
| v. | ) |
| | ) |
| EXCELSIOR MEDIA CORP., a Nevada | ) |
| Corp.; LIBERTY MEDIA HOLDINGS, LLC, | ) |
| a California limited liability company; and | ) |
| JASON GIBSON, individually | ) |
| | ) |
| Respondents. | ) |
| | ) |

I, THE UNDERSIGNED ARBITRATOR --- in accordance with the
arbitration provision in Section 8 of the Contract For Employment Agreement As
General Counsel Between Marc J. Randazza and Excelsior Media Corp., dated
June 6/10, 2009 ("employment agreement"), and based upon careful
consideration of the evidence, the parties' written submissions and applicable
law, and good cause appearing --- make the following findings, conclusions,
determinations ("determinations") and this Interim Arbitration Award, as
follows:

# DETERMINATIONS

1.    The determinations in this Interim Arbitration Award include factual determinations by the Arbitrator, which the Arbitrator has determined to be true and necessary to this award. To the extent that the Arbitrator's determinations differ from any party's positions, that is the result of determinations as to relevance, burden of proof considerations, and the weighing of the evidence.

2.    The Arbitrator has jurisdiction over the subject matter and over the parties to the arbitration which are as follows: Claimant and Counter-Respondent Marc J. Randazza ("Mr. Randazza"), Respondents and Counterclaimants Excelsior Media Corp. ("Excelsior"), Liberty Media Holdings, LLC ("Liberty"), and Respondent Jason Gibson. [1]

3.    On February 9, 10, 11, 12 and 13, 2015, the Arbitrator held in-person evidentiary sessions on the merits of the parties' respective claims, counterclaims and contentions. All witnesses who testified did so under oath and subject to cross-examination. All offered exhibits were received in evidence.

4.    This Interim Arbitration Award is timely rendered. See Order of June 1, 2015.

5.    The following is a summary of the Arbitrator's principal merits determinations:

---

[1] Except as otherwise stated or indicated by context, "E/L" shall be used to reference Excelsior and Liberty, collectively and interchangeably for convenience in this Interim Arbitration Award, only. Nothing should be inferred or implied that there is any determination, or basis for any determination, that either or both of those entities are "alter egos" of Jason Gibson or of any person or entity. Mr. Randazza failed to sustain his burden of proof that either Excelsior or Liberty were or are "alter egos" of Respondent Jason Gideon or of any person or entity. Mr. Gideon will be dismissed as a party in this arbitration. See Interim Arbitration Award, Par. 9, at p. 29, infra.

2

A.     Mr. Randazza voluntarily ended his employment by Excelsior and Liberty.

B.     Mr. Randazza's employment by Excelsior and Liberty was not involuntarily terminated by Excelsior, Liberty or at all.[2]

C.     Whether or not Mr. Randazza's employment by E/L was terminated voluntarily by Mr. Randazza or involuntarily by E/L, the principal proximate cause for the ending of Mr. Randazza's employment was Mr. Randazza's breaches of fiduciary duty and the covenant of good faith and fair dealing, implied in his employment agreement, as an employee, executive and general counsel of E/L. The precipitating events which led to the end of Mr. Randazza's employment was Mr. Gideon's having first learned on August 13, 2012 that Mr. Randazza had been involved in and successfully concluded negotiations for a bribe in the amount of $75,000, to be paid to Mr. Randazza by the other side in connection with resolution of high-importance litigation, commonly referred to as the "Oron litigation," which had been initiated and pursued on behalf of E/L by Mr. Randazza, as E/L's counsel of record.     The first indication of that was Mr. Gideon's noticing a provision included in an execution copy of an Oron settlement agreement, presented to him for signature by Mr. Randazza on that date, and Mr. Gideon's inquiring of Mr. Randazza about that provision.

After initial contacts with Mr. Randazza concerning what Mr. Gideon discovered in the Oron settlement agreement, communications and relations between Messrs. Gideon and Randazza noticeably chilled during Mr. Randazza's remaining employment, which ended on August 29, 2012.

---

[2] While not accepting Mr. Randazza's "core contentions" concerning the end of his employment by E/L, the Arbitrator agrees with Mr. Randazza's assertion that "The nature of Mr. Randazza's departure from Excelsior is central to several of his causes of action, and crucial to the defenses Respondents raise" — including whether there was a breach of contract, wrongful termination, constructive termination and/or retaliatory termination. Reply at p. 7:12-15.  As also stated elsewhere herein, none of those claims were proven.

3

The chilled relations, including greatly reduced communication, was in stark contrast with the custom and practice of Messrs. Gibson and Randazza, practically right up to August 13, 2012, being in regular, frequent, cordial and occasionally sexually-peppered communication with each other by face-to-face meetings, texting and emails.

That Mr. Gideon's reaction was not feigned or a pretext for anything asserted by Mr. Randazza in his competing narrative are shown by the following:

1.    A sudden and significant reduction of those previously primarily electronic (i.e., email and text) communications --- beginning only after Mr. Gideon learned of the $75,000 bribe --- with Mr. Randazza sending Mr. Gideon unresponded-to emails attempting to attempting to salvage and revive his communications and relationship with Mr. Gideon.

2.    Mr. Randazza beat a hasty retreat, in an attempt to salvage the situation by offering to pay the bribe money over to E/L, when initially confronted by Mr. Gideon concerning the "bribe" provision in the Oron settlement agreement, presented for Mr. Gideon's signature.

3.    Mr. Gideon did not timely sign the execution copy of the Oron settlement agreement, as negotiated and presented to him by Mr. Randazza.

D.    The ending of Mr. Randazza's employment E/L was not --- as contended by Mr. Randazza --- (1) constructive discharge, proximately caused by Mr. Gibson becoming distant and out-of-communication with Mr. Randazza, which made it difficult or impossible for Mr. Randazza to get needed instructions or direction in his employment by E/L as their general counsel, leading to Mr. Randazza's August 29, 2012 email of resignation from employment, or (2) retaliatory termination, which was caused by Mr. Randazza's having "expressed his feelings" of having been "upset, betrayed, offended, and

4

stressed" anything of a sexual nature whatsoever --- including, as highlighted during hearing, a pornographic video shot in Mr. Randazza's office in April, 2012 or a homosexual oral copulation allegedly performed by Mr. Gideon and another E/L executive in the backseat of Mr. Randazza's car, which allegedly greatly upset Mr. Randazza while he was driving his passengers back from a party aboard Mr. Gideon's boat on August 9, 2012.

      E.     The immediately foregoing Determination's repeated use of the word "allegedly" is because it is not necessary to resolve a conflict of evidence as to whether the alleged sexual act in Mr. Randazza's car actually occurred or the degree of upset it caused Mr. Randazza, if it actually occurred. That is because the Arbitrator has determined that --- contrary to Mr. Randazza's central contentions in this arbitration --- the factual and legal cause of the end of Mr. Randazza's employment had nothing whatsoever to do with anything having to do with alleged sexual activity in Mr. Randazza's car --- alone or taken together with a pornographic shoot which, without dispute, occurred in his office, without prior notice to Mr. Randazza, but which the evidence shows did not occur as alleged, was not strongly or even negatively reacted to by Mr. Randazza as initially alleged and did not, as shot or shown, include a photograph of Mr. Randazza's family, as initially presented by Mr. Randazza.

      The foregoing determination includes that anything relating to sex --- including in connection with a filmed video in Mr. Randazza's E/L office or in the back seat of his car --- had nothing whatsoever to do with any decision --- which the Arbitrator has determined was neither made or considered --- to terminate Mr. Randazza's E/L employment. 2012. There was no E/L contrived pretext or any retaliation by E/L in connection with the cessation of Mr. Randazza's E/L employment, which was entirely voluntary on

/////
/////

5

Mr. Randazza's part.[3]  For those reasons, the Arbitrator has determined that Mr. Randazza failed to sustain his burden of proof required to establish his claims of and relating to anything having to do with sex --- e.g., sexual harassment, hostile work environment, constructive termination, retaliatory termination, etc.

  F. As stated above --- and as picked up and amplified later in the Determinations portion of this Award --- since the outset of the arbitration, Mr. Randazza made highly-charged, sexually-based "core allegations" and his claimed strong reactions to them in support of his statutory and contractual claims, which were in the main disproved or not proved.  That failure of proof undermined and impaired Mr. Randazza's credibility concerning all of his

/////

/////

/////

testimony and his claims and related contentions.[4]  The evidence established at hearing was that Mr. Randazza intended that his allegations would induce

---

[3] The same is true with respect to Mr. Randazza's contention(s) that Mr. Gideon's discovery of Mr. Randazza having been involved with and negotiating a $75,000 "bribe" in connection with a settlement of the Oron litigation was a pretext for an earlier-formed intention by Mr. Gideon to end Mr. Randazza's E/L employment.

[4] Mr. Randazza's credibility was also undermined by the variance between his testimony and positions at hearing and his written Nevada State Bar submission concerning the Oron litigation $75,000 bribe --- including what, if anything, Mr. Gideon knew about it and when, and who solicited the bribe in the first instance.

 Mr. Randazza's credibility was also undermined by the variance between his testimony and his EEOC submission.  At hearing, Mr. Randazza admitted that the EEOC complaint contained errors, but tried to explain them away by saying that he did not prepare it. That is not a sufficient excuse or explanation, in the circumstances.

 Resolving a credibility-related issue presented in the post-hearing briefs concerning asserted testimonial evasiveness implied by Mr. Randazza's body positioning and whether he had eye contact with the Arbitrator (as asserted by Mr. Randazza in his Reply), throughout his extensive testimony at hearing and primarily on cross-examination, the Arbitrator observed that Mr. Randazza sat sideways in his chair, relative to Claimant's counsel's table --- with his back to (i.e., 180 degrees away from) his own counsel and 90 degrees away from Respondent's counsel --- albeit with his seated body positioned toward the part of the wall behind and to Mr. Randazza's left from

Mr. Gideon to authorize a settlement financially favorable to Mr. Randazza,

based on Mr. Randazza's belief at the time --- and ultimately proven incorrect ---

that Mr. Gideon would so settle, rather than have to litigate true or false

allegations relating to his own sexuality, sexual activity, and the pornographic

nature of E/L's business. Mr. Randazza's miscalculation, as aforesaid, led to an

---

where the Arbitrator was seated. Mr. Randazza almost always listened to questions and answered in that position — leaning well forward and looking down or straight ahead into "middle distance" in the direction of the wall behind where the Arbitrator was seated. Mr. Randazza rarely answered a question on cross-examination with sustained eye contact with either the questioning attorney or the Arbitrator.

The Arbitrator has determined, based on the evidence, that Mr. Randazza solicited the bribe in the first instance, attempted to negotiate with Oron's counsel ways and means whereby it would be concealed from and not become known by E/L, and disclosed it to E/L, per Mr. Gideon, for the first time only on August 13, 2012, when the settlement documentation prepared and presented for Mr. Gideon's signature on behalf of E/L by Oron's counsel surfaced a $75,000 retainer payment to Mr. Randazza.

The Arbitrator has further determined that E/L never gave Mr. Randazza permission or consent to solicit, negotiate or accept the $75,000 bribe,* or any bribe or any other payment other than payment of all proceeds being solely for the benefit of and deposited to the account of his clients/principals, E/L.

[*On August 13, 2013, Mr. Gideon handwrote an arrow and "Who gets this" next to the $75,000 payment provision in the copy of the execution copy of the Oron settlement agreement presented to him by Mr. Randazza. The Arbitrator credits that notation as being first notice to and genuine surprise expressed by Mr. Gideon about any Oron settlement payment not being made directly to E/L.

[That notation also was the genesis of a rapid unraveling of the theretofore close professional and personal relationship, symbolized by Mr. Gideon's sharply reducing communications with Mr. Randazza and Mr. Randazza's repeated and ultimately unsuccessful efforts to salvage his situation, by attempting to re-establish direct contact with Mr. Gideon. As previously stated, the Arbitrator has not accepted Mr. Randazza's central contention and narrative that this state of affairs, triggered on August 13, 2012, was manufactured by Mr. Gideon and served as a convenient or other pretext for an earlier-decided termination of Mr. Randazza's employment.]

The Arbitrator has not accepted that E/L's knowledge of or informed consent to any such situation can be implied by non-objection and silence in response to an unspecific, Delphic allusion in one of Mr. Randazza's emails prior to August 13, 2012 or to Mr. Randazza's after-the-fact, self-serving reference to alleged earlier communications, wherein Mr. Randazza claimed in the later email to have "fully disclosed...overtures about that."

In addition, except for admissions, anything which Mr. Randazza and his opposing counsel in the <u>Oron</u> litigation, Val Gurvitz, communicated to each other lacked credibility, because Mr. Randazza testified that he and Mr. Gurvitz routinely lied to each other in their settlement communications.

7

ultimately successful counterattack by E/L, via counterclaims in this arbitration, centering on ethical and legal challenges to Mr. Randazza's conduct as E/L's general counsel and litigation counsel during his employment by E/L. Mr. Randazza's alleged misconduct consisted of engaging in ethically-prohibited negotiations with adverse parties, including concerning monetary "bribes" to "conflict (Mr. Randazza) out" from future litigation, further damaging E/L's recovery in the Oron litigation by knowingly forwarding illegally "hacked" computer data to counsel for another company, without authorization and in contravention of an E/L settlement agreement, engaging in other prohibited conflicts of interest, including representing competitors of E/L, not disclosing and not obtaining informed written client consents from E/L where actual or potential conflicts of interest arose, working and not disclosing that he was working as a practicing lawyer on non-E/L matters during his employment significantly in excess of what was contractually permitted, spoliation of evidence to cover up the foregoing and his undisclosed intention to resign from E/L's employment, including via planning and causing the deletion of legal files and other relevant data from E/L-owned computers, taking control of client funds, in form of Oron litigation settlement proceeds, and refusing to unconditionally release the same to E/L.

G.  As stated above, Mr. Randazza voluntarily ended his employment by E/L. The principal evidence of that consisted of (1) Mr. Randazza's August 29, 2012 email to Mr. Gideon, (2) days before sending Mr. Gideon his August 29 email, Mr. Randazza cleaned out his personal belongings from his office, (3) shortly after Noon on August 28 --- and more than 24 hours before sending his August 29 email to Mr. Gideon --- Mr. Randazza had his corporate laptop computer "wiped" the first of four times during his last week of employment, and (4) before that, Mr. Randazza was overheard to say "Fuck this shit, I quit," following a company "happy hour" event.

H.     In his August 29, 2012 email to Mr. Gideon, Mr. Randazza stated that he could no longer represent the Company, i.e., E/L.[5]  In the circumstances then known, Mr. Gideon and other E/L executives with whom he consulted reasonably, and not hastily,[6] concluded from their review of Mr. Randazza's August 29, 2012 email that Mr. Randazza had resigned from his employment. Their conclusion was proven accurate by facts which became known after Mr. Randazza's departure.  Any actions taken by them based on that reasonable belief did not result in any involuntary termination of Mr. Randazza's E/L employment.

I.     The lack of absolute, unquestionable, pristine clarity in       Mr. Randazza's August 29, 2012 carefully worded and crafted email that he       was resigning his employment was deliberate.

J.     In addition to Mr. Randazza's disputed, disproved and unproved allegations of sexual conduct engaged in or authorized by is important evidence which established that Mr. Randazza was not either (1) a target of any discriminatory or conduct which created a hostile work environment, because of his being a heterosexual or "straight" male, or (2) offended by any of the sexually-related conduct of which he has complained.

K.     Prior to and subsequent to agreeing to go "in house" as E/L's general counsel, Mr. Randazza was outside counsel to several companies engaged in Internet pornography, including videos and stills available on openly homosexual websites. Since at least the date of the commencement of his employment as E/L's inside general counsel through his last day of E/L employment, Mr. Randazza knew of and was not in any way uncomfortable with Mr. Gideon's gay sexual orientation — which was also that of most, but not all,

---

[5] Mr. Randazza also said he could "potentially" work to wind up his E/L pending matters.   The Arbitrator interprets the inclusion of that to be part of Mr. Randazza's crafted effort to both resign and leave open his attempt to engage Mr. Gideon directly.
[6] The Arbitrator has not accepted Mr. Randazza's assertion that "Respondents hastily decided to call that [August 29, 2012 email] a resignation." Mr. Randazza's Reply at p. 7:20-21.

of E/L's other executives — and the frequent seasoning of business and socially-related conversation and written communications with crude gay and other sexual terms, references and allusions, which Mr. Randazza also used.[7] Mr. Randazza was not embarrassed to be seen or filmed in full undress at a poolside business-social event at Mr. Gideon's home. Mr. Randazza permitted and encouraged his children to have warm personal relationships with Mr. Gideon, who they called "Uncle."

      L.    The evidence was that the only complaints which         Mr. Randazza had concerning the pornographic filming in his offices in April 2012 — four months before the end of his employment — were that (1) he was not given the courtesy of advance notice of the shoot and (2) after the shoot was completed, Mr. Randazza's office was not restored to just the way it had been before the office was prepped for filming.

      The preponderance of disputed evidence was not that Mr. Randazza complained to Mr. Gideon centering on or in any way reasonably relating to sexual discrimination or harassment or a hostile work environment based on sex, including "male-on-male" sex, which has been recognized as a basis for a legal claim. Accordingly, allegedly involuntary termination of Mr. Randazza's employment, based on Mr. Randazza's April 2012 complaint about the filming of pornography in his office — which did not constitute statutorily "protected activity" — is not includible as a component for a statutory claim that he had been fired in retaliation for making that complaint. Mr. Randazza's complaint about the allegedly personally offensive oral copulation of Mr. Gideon

---

[7] For example, Mr. Randazza admitted that he used the term "butthurt" — which he alleged that Mr. Gideon used to demean his expression of feelings about the pornographic filming in his office. In a series of texts about the shoot, Mr. Randazza texted, in a crude possible sexual/legal "double entendre," "Don't jizz on my briefs." Mr. Randazza has admitted that "The Arbitrator has seen many texts and emails from Mr. Randazza with informal, rough, vulgar content." Reply at p. 10:9-10. In making a different point, Mr. Randazza concedes by assertion that "Respondents [have] conceded that jokes and banter were common in the office."

in the back seat of his car on August 9, 2012 was not genuinely or deeply felt and was made primarily for tactical reasons. Therefore, the end of Mr. Randazza's employment was not and was not the product of anything retaliatory, in violation of public policy (e.g., engaging in protected activity), as a matter of law.

Moreover, the preponderance of the evidence is that Mr. Randazza had advance notice of the filming of a pornographic video in his office and that he did not either object or indicate that the noticed shoot was in any way objectionable or offensive to him. That evidence is the playful exchange of texts between Messrs. Randazza and Gideon concerning the intended shoot and the testimony of the director of the shoot, Chaz Vorrias, who testified that he advised Mr. Randazza of the shoot in advance and received no objection from Mr. Randazza.[8]

M.     Contrary to the strong impression created by Mr. Randazza's pre-Arbitration Hearing narrative of allegations, there was no evidence that any photograph(s) of his wife or children or anything personal of or concerning Mr. Randazza or any member of his family, or in any way reasonably violative of their respective personal privacy, were used or visible in the video. The (possible) visibility of a painting on the wall of Mr. Randazza's office, which was painted by Mr. Randazza's wife, is not to the contrary.

In the circumstances, there was no action taken which was either statutorily offensive or hostile.

N.     Mr. Randazza's California Labor Code-based claims --- for Excelsior's failure to (1) pay him his final wages in August 2012 (2nd Claim) or (2) reimburse and indemnify his for business expenses incurred by him in during 2012 (1st Claim) --- fail as a matter of law. The same is true for Mr. Randazza's

---

[8] Mr. Vorrias testimony was not unfair surprise, Mr. Vorrias's admitted deletion of his emails with Mr. Randazza was done without knowledge of their significance in connection with the dispute underlying this arbitration and, in the event, is not attributable to either Excelsior or Liberty, because he was not a managing agent of either entity.

claim for payment of all of his wage-related claims --- including payment of raises, bonuses and repayment of his $25,000 loan. That is because --- at all times relevant to those California Labor Code claims, since June 2011, Mr. Randazza worked and lived in Nevada, to which Mr. Randazza relocated, as did E/L, in order to continue as E/L's general counsel. As stated or indicated in a pretrial ruling bearing on the same issue, (1) the California Labor Code, presumptively, does not apply extraterritorially,[9] and does not apply to the facts and circumstances of this case, and relatedly, (2) that determination, concerning Mr. Randazza's non-contractual claims, is unaffected by the California-as-governing-substantive-law provision of Mr. Randazza's employment agreement with Excelsior, which applies and controls only as to breach-of-contract claims and not, as in this instance, Mr. Randazza's statutory claims.[10]

In the event, Mr. Randazza was properly compensated for all services as to which he has asserted statutory and contractual claims.[11]

O.     Mr. Randazza's claim for unpaid wages and penalties under Nevada NRS Sec.608.050 (3rd Claim) fails as a matter of law, because there is no private right of action for enforcement of that statute. It is therefore not necessary to decide whether the a claim has been stated under that statute.

P.     As to Mr. Randazza's contractual claims --- which are governed by the Employment Agreement, including the provision that California law governs its interpretation and enforcement, etc. --- (1) Mr. Randazza is not entitled to a contractual severance payment, because he voluntarily resigned his

---

[9] Sullivan v. Oracle Corp. , 51 Cal.4th 1191, 12016 (2011); Wright v. Adventures Rolling Cross Country, Inc., 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. 2012) (presumption against extraterritorial application of state law applies to unpaid wage claims under California Labor Code, plus "situs of the work" is the most important factor in determining extraterritoriality, trumping residency and where wages are paid).
[10] See, e.g., Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010).
[11] For example, Mr. Randazza's bonuses were to be based on net and gross amounts (which he acknowledged prior to the end of his employment), claimed compensation raises were discretionary. Whatever Mr. Randazza was paid as compensation and bonuses is subject to the remedy of disgorgement.

employment,[12] (2) Mr. Randazza is not entitled to any payment for expenses in connection with the annual International Trademark Association Conference, which he did not attend, and (3) Mr. Randazza's bonuses were to be paid on "net" amount, not "gross" amounts, as contended by Mr. Randazza. In the event, E/L has been legally excused from any obligation to make any further contractual payment, by reason of Mr. Randazza's material breaches of contract with respect to the his obligations under the same contract, Mr. Randazza's employment agreement. That is so under contract law principles --- separate and apart from equitable principles, which are also applicable to contract claims, including the equitable doctrine of unclean hands, which is applicable to Mr. Randazza's contract claims.

Q. Turning to E/L's counterclaims, Mr. Randazza owed fiduciary duties to E/L, because he was their in-house general counsel and their attorney of record in judicial civil actions, and an E/L executive and employee. As such, Mr. Randazza owed E/L, as his clients, employers and principals, the highest duty of loyalty and honesty in the performance of his professional and executive obligations. That duty --- among other things --- included legal and ethical duties of acting honestly and solely for the benefit of his clients/employers/principals, avoiding acting inconsistently with those duties, and where actual or potential conflicts of interests existed to make full written disclosure of the same and to obtain informed written consents from his clients/principals as to each and every such conflict of interest. Each and all of Mr. Randazza's ethical duties owed to his principals/clients was a legal fiduciary duty owed to them. Mr. Randazza violated those fiduciary duties owed by him to E/L, as his principals/clients/employers --- including by the following:

---

[12] See Pars. 5(A), (B) and (G), supra, concerning Mr. Randazza's having voluntarily ended his E/L employment, including via and as evidenced by written and verbal and non-verbal conduct. Mr. Randazza was contractually entitled to payment equivalent to 12-week severance only if his employment was involuntarily terminated.

13

(1) engaging in negotiations for monetary bribes to be paid to him — including the "Oron $75,000" which Mr. Gideon noticed, without Mr. Randazza's affirmative disclosure of it —— which would result in his being "conflicted out" of future litigation or any disputes with parties then and/or in the future with

/////
/////
/////

interests adverse to E/L's interests (e.g., Oron, TNA),[13] (2) taking control for his personal benefit of, and refusing to relinquish control over, Oron settlement funds — all of which ought to have been for the benefit and under the direction and control of his principals/clients E/L, before and after the end of his employment and representations on behalf of E/L --- (3) Mr. Randazza's ordering and causing the deliberate "wiping" of his and legal assistant's corporate laptops, as an integral part of his planned resignation as E/L's General

---

[13] It is irrelevant that none of Mr. Randazza's negotiations concerning bribes — including the Oron bribe — resulted in an actual bribe payment. See Mr. Randazza's Reply at pp.4:24–5:1: "Yet despite years of discovery in this matter, Respondents have not been able to point to a single 'bribe' paid to Mr. Randazza, or a single consummated deal between him and the opposing party."* The Arbitrator has accepted, as an admission by Mr. Randazza that "he repeatedly engaged in these 'bribe' negotiations," but the Arbitrator has not accepted Mr. Randazza's testimony and further contention that he did so "because they were par for the course in dealing with counsel for infringers and because engaging in them was the best way to soften up the other side and get more money for respondents." Id., at p. 5:2–5.
  In this arbitration, Mr. Randazza has established a virtually unbroken pattern of asserting a legal/fiduciary variant of the sports cliché, "No harm, no foul." The Arbitrator has not accepted those assertions — including, for example, a professional or fiduciary duty has been violated, whether spoliation has been committed, etc.

Counsel and outside counsel of record, and (4) Mr. Randazza's continuing and
undisclosed (and thus unconsented-to) legal work for clients (e.g., Bang Bros.,
XVideos, XNXX, Porn Garian, Titan Media, Kink), whose interests were actually
and potentially adverse to E/L's interests.[14]

R.     The Arbitrator respectfully disagrees with Mr. Randazza's expert
witnesses, who respectively testified that, under both Nevada and California
rules of ethics and/or professional responsibility, there were no violations of
fiduciary duty, if and because they concluded that there was no resulting harm.

The "fact of damage" or proximate cause is not an essential element
of either "duty" or "breach of duty" --- but rather a separate element of a claim or
cause of The Arbitrator's disagreement with Mr. Randazza's expert witnesses
centers

Whether or not Mr. Randazza's breaches of fiduciary duty
proximately resulted in damages sustained by Excelsior, Liberty or both of them
--- as a matter of sound public policy --- Mr. Randazza should not be allowed to
retain any pecuniary or legal benefit resulting from or closely connected to those
breaches.

For example, Mr. Randazza has included in his defense of his
admitted deletion of files and other legal information via multiple wipings of
company-owned computers the assertion that Respondents have not been able to
show any damage resulting from those multiple wipings.  This is another of Mr.
Randazza's assertions in this arbitration of "No harm, no foul" --- which the
Arbitrator has not accepted, primarily because of the violations of duties
constituting and/or including fiduciary duties.  Ethical and other violations of

---

[14] Mr. Randazza's legal work for non-E/L clients --- independent of the violations of Mr.
Randazza's ethical and fiduciary duties --- were significantly beyond the contractually-
permitted scope under his employment agreement.  The Arbitrator may award the
equivalent to amounts of funds ordered to be immediately turned over by Mr. Randazza
to E/L. See Interim Arbitration Award, Par.

fiduciary duties do not require "fact of harm" to be shown by a preponderance of the evidence or otherwise.

Moreover, in the circumstances of (1) multiple ethical violations having been shown to have been committed by Mr. Randazza --- including negotiating for and in the instance of the <u>Oron</u> settlement agreeing to a "bribe" to be conflicted out of future litigation with adverse settling parties and other conflicts of interest --- and (2) Mr. Randazza's ethical challenges shown in this arbitration, there should be a presumption of "fact of harm" caused to E/L by Mr. Randazza's conduct and, additionally, a presumption of Mr. Randazza's intention to harm his clients by wiping everything off of his and his legal assistant's company-owned computers.

As E/L's inside general counsel and employee, Mr. Randazza had a legal and fiduciary duty --- no later than when his employment ceased, regardless of whether or not with or without cause and/or by whom ended --- to deliver every file and other piece of data and/or information --- complete, intact and undeleted, unmodified and immediately accessible and usable by E/L. That included all files and data stored on the computers entrusted to Mr. Randazza and his legal assistant Erika Dillon for their use by and on behalf of E/L. Because of his noncompliance, indeed resistance to compliance with those duties, they continued and continue to the day of the rendering of this award --- including beyond Mr. Randazza's belated and resisted turnover of one of the laptop computers --- because another laptop entrusted to Mr. Randazza remains unreturned. Those continuing fiduciary duties owed by him to E/L exist, including by reason of his exclusive control over the computers and thus superior knowledge of what was on each computer's hard drive before and after he had everything on the returned laptops completely and multiply deleted --- including prior and in contemplation of his planned resignation on August 29, 2012.

16

In the circumstances, Mr. Randazza's generalized and unspecified claims of privacy — in attempted justification of his ordered complete and multiple wipings of company-owned computers — cannot be accorded weight or credibility. By the same token, that ordered conduct raises an inference that whatever was deleted was known and intended by Mr. Randazza to be harmful to him and any claims and contentions which he might make in any dispute with E/L --- i.e., deliberate spoliation, in addition to conversion.

Mr. Randazza cannot escape liability for spoliation or conversion --- or, additionally, violation of his fiduciary duties as an employee, executive and general counsel of E/L, by reason of the same conduct --- by claiming, as he has, that Respondents have not shown any specific or tangible injury by reason of his conduct in causing company-owned computers to be completely wiped of all data prior to their resisted and belated return. In the circumstances --- and paraphrasing former Defense Secretary Donald Rumsfeld --- neither Respondent should bear any burden or responsibility to come forward with any evidence of damage, when they do not know what they do not know. As stated above --- with his actual exclusive knowledge of what was on the computers' hard drives, before and because he ordered them to be completely wiped and, in the instance of his returned laptop, multiply wiped before ultimate return --- Mr. Randazza committed spoliation of evidence, as well as improper conversion of his employer's files, data and equipment and, in so doing, also violated his fiduciary duties owed to E/L.

S. The closure of the Nevada State Bar's file on the grievance filed by E/L has not been given any weight in this arbitration. The reasons for that are manifold, several of the most significant of which include the following: (1) the State Bar did not reach the merits of E/L's grievance, (2) even if it would have, the standard of evaluation would have been "clear and convincing evidence," rather than the standard applicable in this arbitration of "preponderance of the evidence," (3) Mr. Randazza's response to E/L's grievance contained at least one

17

material misrepresentation acknowledged during an evidentiary session in this arbitration (that he stopped representing XVideos in 2009), (4) the Nevada State Bar closed its file with an express statement that it has "no authority to take any action which could affect the outcome of any civil disputes or litigation, (5) many of the issues and much of the evidence presented in this arbitration (identities of represented entities, retainer and billing records, emails, etc.) was not available to be presented by E/L in support of its grievance (e.g., Mr. Randazza's assisting Datatech, including via forwarding fruits of a disclosed (unnamed) computer "hacker").

T.    E/L was damaged in at least the amount of $275,000, by reason of the Oron resettlement, as a direct and proximate result of events being set in motion by Mr. Randazza's violations of fiduciary duty and other duties, by his having secretly negotiated a $75,000 bribe to conflict himself out from suing Oron in the future.

U.    Mr. Randazza was unjustly enriched in the amount of $60,000. Of that amount, $55,000 was paid to and received by Mr. Randazza's law firm, rather than E/L, in connection with (1) Mr. Randazza's ostensibly pro bono representation in connection with the so-called "Righthaven cases," of which E/L was generally aware and consented to (A) with the understanding and on the condition that Mr. Randazza was acting as a faithful, compensated E/L employee, including in compliance with his employment agreement, with costs of the representation advanced by E/L, including compensation as employees of Mr. Randazza and his legal assistant Erika Dillon, and (2) unaware that compensation was to be or actually paid to Mr. Randazza, via his law firm, until after the fact, indeed after Mr. Randazza's resignation from E/L employment.[15] Mr. Randazza also received $5,000 from James Grady, in connection with E/L's Oron litigation.  Although Mr. Randazza testified, without corroboration, that

---

[15] Of the $60,000 paid and received, (A) $55,000 was court-awarded attorneys' fees, which were paid to Mr. Randazza's law firm, and (B) $5,000 was paid by James Grady.

Mr. Grady's payment was used for <u>Oron</u> litigation expenses, Mr. Randazza did
not disclose the receipt of the Grady $5,000 payment to E/L. In the
circumstances, and under principles of unjust enrichment, all compensation paid
to or for the benefit of Mr. Randazza should have been paid directly to E/L or
turned over to E/L by Mr. Randazza — neither of which was done, immediately
or ever.

  V. Mr. Randazza materially breached his employment agreement with
Excelsior by (1) acting as an attorney in connection with the TNAFlix litigation
and the MegaUpload case, his concurrent representation of XVideos and/or
XNXX during his employment by Excelsior and (2) spending significantly
excessive time on non-Excelsior/Liberty matters beyond contractually-permitted
time under his employment agreement with Excelsior and by failing to wind
down his non-Excelsior/Liberty legal activities, as also provided in Mr.
Randazza's employment agreement.[16]

  The extent of Mr. Randazza's contractual material breaches made
them also breaches of fiduciary duty — regardless of whether or not those
breaches of fiduciary duty were conflicts of interests, as some were.

  W. Disgorgement of compensation paid by E/L to Mr. Randazza is an
available remedy, which is appropriate in the circumstances of Mr. Randazza's
clear and serious violations of fiduciary duty owed to E/L, and within the
Arbitrator's discretion, based on the evidence in this arbitration.[17]

---

[16] Mr. Randazza materially breached his employment agreement with Excelsior by
maintaining a private law practice, with billed hours shown to be in excess of that
permitted by that agreement, performing non-E/L legal services during the time he
could and should have been performing services as E/L's General Counsel, and by
failing or refusing, consistent with ethical duties and requirements, to reduce and taper
off to zero his professional services for clients other than his employer, E/L.
 The extent of Mr. Randazza's contractual material breaches made them also breaches
of fiduciary duty — regardless of whether or not those breaches of fiduciary duty were
conflicts of interests, as some were.

[17] See <u>Burrow v. Arce</u>, 997 S.W.2d 229 (Tex. 1999) ("<u>Burrow</u>")(remedy of
forfeiture/disgorgement upheld, including court discretion to determine whether some
or all compensation paid to attorney who breached fiduciary duty of loyalty owed to

///// 
///// 
///// 

There is no requirement that causation or "fact of damage" be shown.[18]  There is
no valid reason to distinguish between an executive who is "in house" general

---

client to be forfeited or disgorged, where clear and serious violation(s) of fiduciary duty
shown).

[18] That is because, among other reasons, one of the primary purposes of a remedy like
forfeiture/disgorgement for breaches of fiduciary duty is to deter, not reward and to
remove incentives of fiduciary disloyalty — including by denying the benefits of
disloyalty, regardless of provable or even actual harm to the principal, including after
payment of compensation.  As the Texas Supreme Court pertinently stated in Burrow in
connection with the remedy of forfeiture/disgorgement as a deterrent and disincentive
for an attorney or other agent to breach of fiduciary duty:
  "Pragmatically, the possibility of forfeiture of compensation discourages an agent
  from taking personal advantage of his position of trust in every situation,
  no matter the circumstances, whether the principal may be injured or not.
  The remedy of forfeiture removes any incentive for an agent to stray from his duty of
  loyalty based on the possibility that the principal will be unharmed or may have
  difficulty proving the existence of amount of damages."
The California cases cited by Claimant are distinguishable.  Frye v. Tenderloin
Housing Clinic, Inc., 38 Cal.4th 23 (2006)("Frye"),  Slovensky v. Friedman, 142 Cal.App.
4th 1518 (2006) ("Slovensky").  The appellate court's conclusion in Slovensky was based
on its misreading and/or misstatement of the Supreme Court's holding and the basis
and reasoning for its holding in Frye — which was, in effect, a "one-off" opinion strongly
driven by the facts and public policy considerations articulated and emphasized by the
Supreme Court in the opinion.  The Slovensky court's mistake is highlighted by its
reliance on what it called the "Frye rule" — which was no such thing, or at least not as
stated and relied on by the court in Slovensky.
  There would be little or no reason for the remedy of disgorgement, if there was a so-
called "Frye rule" as misstated by the Slovensky court and urged by Mr. Randazza.
If fact of damage and extent of damages must be proven by a preponderance of the
evidence, in order to obtain disgorgement, that remedy would be rendered duplicative
of the remedy of compensatory damages, except in name only.  Moreover, the strong
public policy to deter and remove any incentive for clear and serious violations of
fiduciary duty - where injury to the client or other principal might be difficult or
impossible to prove, as a matter of compensable damages - would be severely
undermined.
  In Frye , the California Supreme Court appears to have been offended by the
plaintiff/client's overreach in the circumstances.  The Court determined not that the
remedy of disgorgement was legally unavailable but, rather, that its application — in the

counsel and other corporate executives with respect to the availability of the remedy of forfeiture/disgorgement of compensation for breaches of fiduciary duty.[19]  While it might be less easy to determine the appropriate amount of disgorgement --- because, for example, the compensation paid is not a fixed percentage, as in an all-or-nothing legal or brokerage contingency fee arrangement,  contractual hourly arrangements, etc. --- that is not a disqualifying factor or consideration.   Considerations of proportionality and non-overlap with an award under other remedies are applicable.

Disgorgement will be applied to E/L-paid compensation received by Mr. Randazza in connection with litigation and other engagements on behalf of non-E/L clients --- in material breach of contract, while employed by E/L and beyond the significantly limited scope of his employment agreement (in terms of subject matter and time) and/or, in all events, in violation of his professional and fiduciary duties owed to his principal/client/employer, E/L. See Par. 1(V), above.

None of the expert witnesses who testified concerning breaches of legal ethics and fiduciary duties by attorneys and remedies for such breaches opined that disgorgement is unavailable in all instances.  The Arbitrator had the

---

special context of a technical failure to properly register for the practice of law by a public interest non-profit organization, engaged in what the Court considered to be important, worthy public interest work, expressly supported by the Court (including by affirming very substantial statutory attorneys' fees awards, as stated in that opinion) --- was "grossly disproportionate to the wrongdoings" of the defendant there and therefore "would constitute a totally unwarranted windfall" to the plaintiff there. 38 Cal.4th, at p. 50. Frye, therefore, is distinguishable from the facts of this case.

  Because the basis for its opinion was wrong, Slovensky is distinguishable or, more aptly, inapplicable to Mr. Randazza's proven clear and serious ethical and fiduciary breaches in this case.

[19] See Zakibe v. Ahrens & McCarron, Inc., 28 S.W.3d 373, 385-386 (Mo. Ct. App. 2000) (executive's breaches of fiduciary duty resulted affirmed forfeiture of his right to "all compensation, including bonuses and severance pay to which he may have been entitled"); Riggs Investment Management Corp. v. Columbia Partners, LLC, 966 F. Supp. 1250, 1266-1267 (DDC 1997) (former chairman and CEO of corporation forfeited all salary, bonuses and other compensation paid from the time disloyal action began, as determined by the appellate court, to date of end of employment six months later).

21

sense, however, that Mr. Joseph Garin came close to opining that causation and/or "fact of damage" caused by an assumed breach of an ethical/fiduciary duty is or should be a prerequisite to the imposition of disgorgement, with which opinion the Arbitrator respectfully disagrees (if that is Mr. Garin's opinion).[20]   In so opining, Mr. Garin (as did Mr. Randazza's California expert witness, Ms. Ellen Peck) testified that --- based on information provided by Mr. Randazza --- there was not a single instance of an ethical violation, with which the Arbitrator also respectfully agrees, based on all of the evidence adduced at hearing.

See Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999) and Restatement of Agency 3d, Sec. 8.01 comment d(2).

X.     While Mr. Randazza's obtaining Mr. Gideon's signature on the promissory note for Mr. Randazza's $25,000 loan to E/L for Hong Kong legal fees was rife with ethical infirmities, in the exercise of the Arbitrator's discretion, the Arbitrator will not void the underlying loan. However --- again in the exercise of the Arbitrator's discretion --- the Arbitrator will limit the benefit of that decision to allowing Mr. Randazza to assert an offset, under this paragraph, to any and all amounts awarded on E/L's counterclaims, up to a maximum amount of $25,000 (i.e., no interest) — which right of offset shall be conditional upon Claimant's transfer to Respondent Liberty of all Oron settlement-related and other E/L funds held in Claimant's attorney trust account,[21] plus interest at the legal rate of ten percent (10%) per annum from August 29, 2012.

Y.     E/L are the prevailing parties in this arbitration.  As such one or both of Respondents is or may be entitled to contractual attorneys fees under the employment agreement.[22]

---

[20] Mr. Garin conceded, on cross-examination, that Section 37 of the Restatement 3rd of The Law Governing Lawyers does not say that a showing of actual monetary loss is required for disgorgement of attorney compensation.
[21] See Interim Arbitration Award, Pars. 4 & 5, at p. 28, infra.
[22] See Interim Arbitration Award, Pars. 8 at pp. 28-29, infra.

# INTERIM ARBITRATION AWARD

Based upon careful consideration of the evidence, the applicable law, the parties' written submissions, the Determinations hereinabove set forth, and good cause appearing, the Interim Arbitration Award in this arbitration is as follows:

1. Claimant and Counter-Respondent Marc J. Randazza ("Claimant") shall take nothing by any of his claims set forth in his Amended Arbitration Demand.

2. Claimant shall pay Respondent(s) the following sums and amounts, as and for monetary damages in connection with Respondents' counterclaims. Said amounts are exclusive and non-duplicative of any amount separately and additionally awarded to Respondents as part of the remedy of disgorgement. See below.

Said amount includes the amount of $275,000, plus pre-award interest from August 13, 2012, at the legal rate of ten percent (10%) per annum, as and for monetary damages in connection with the resettlement of the Oron litigation, as a direct and proximate result of Claimant's violations of fiduciary duty in connection with his negotiating for a $75,000 "bribe" (to conflict him out of future representation against Oron) as part of the resolution of the Oron litigation.

Said amount will include the amount of $60,000, by which amount Claimant was unjustly enriched --- in that Claimant (via his law firm), rather than either Respondent received (A) $60,000 in connection with Claimant's ostensibly pro bono representation in connection with the Righthaven cases, while compensated for Claimant's time spent on the representation as employee, in the course of his employment, as to which representation the costs were advanced by Claimant's employer, and (B) received from James Grady in connection with the Oron litigation.

Said amount will include the amount of $3,215.98 --- as and for Respondents' expenses reasonably incurred in connection with QUIVX forensic

23

examination and attempted restoration of data on employer-owned laptop computers and an iPhone used and returned, as applicable, by Claimant and Erika Dillon. In addition, an amount yet to be determined, in the exercise of the Arbitrator's discretion, will be awarded for Claimant's spoliation and conversion of Excelsior's and Liberty's files and other data contained on employer-owned laptop computers entrusted to Claimant and Erika Dillon during their employment by Respondents or either of them. The additional amount awarded will be set forth in a further and/or amended interim arbitration award and/or in the final arbitration award.

3.    Claimant shall pay Respondent Excelsior the amount of $197,000.00 --- as and for disgorgement of an appropriate amount of Claimant's employment compensation (including salary and bonuses) paid under his employment agreement).

The awarded amount under this paragraph is non-duplicative of and does not overlap with any amount award as monetary damages under any other paragraph of this Interim Award.

The amount awarded under this paragraph does not include disgorgement based on Claimant's post-employment violations of fiduciary duty. That is because it appears to the Arbitrator that they are instances of Respondents having rights without a remedy --- as the limits of case law on disgorgement do not extend to post-employment violations of fiduciary duty.

Disgorgement shall be based on Claimant's violations of fiduciary duty ---including as acting as an attorney in connection with the TNAFlix litigation and the MegaUpload case, Claimant's concurrent representation of XVideos and/or XNXX during his employment by Excelsior and spending excessive, undisclosed, time on non-Excelsior/Liberty matters far beyond contractually-permitted time under his employment agreement.

4.    Claimant is hereby ordered forthwith (i.e., within ten (10) days of the date of the issuance of this Interim Arbitration Award) to turn over to

Respondents all <u>Oron</u>-related funds and, further, an additional $30,000 of non-<u>Oron</u>-related client funds of Respondents --- which funds have been held in Claimant's attorney trust account --- plus pre-award interest at the legal rate of ten percent (10%) per annum from August 29, 2012.

5.      An accounting of Claimant's attorney trust account is hereby ordered --- including to ensure compliance with Paragraph 4 hereof. The accounting shall be performed by a qualified third-party accountant and/or accounting firm appointed and/or approved by the Arbitrator. The cost and expense of which shall be borne solely by Claimant --- although Respondents may advance the funds necessary for the accounting, subject to ordered reimbursement by Claimant. Claimant is hereby ordered to cooperate fully with the ordered accounting.

6.      Claimant is hereby ordered to return the as-yet-unreturned company-owned laptop to Respondents' counsel forthwith --- and in no event later than ten (10) days from the date of the issuance of this Interim Arbitration Award.

7.      Respondent shall be awarded as damages or costs reasonably incurred with this litigation, expenses reasonably incurred by QVIX or similarly qualified expert vendor --- up to a maximum of $3,500 --- in connection with the vendor's performance of successful and/or attempted retrieval of data a report to the Arbitrator of what, if anything was deleted from the computer and when.

8.      Respondents and Counterclaimants Excelsior Media Corp. and Liberty Media Holdings, LLC shall be afforded the right in this arbitration to establish their rights --- if any, and according to proof --- to contractual attorney's fees and costs.

Counsel for the parties are ordered to immediately commence and diligently conduct and conclude meet-and-confer communications and to submit to the Arbitrator within ten (10) days of the issuance of this Interim Arbitration

Award an emailed proposed briefing and hearing schedule for any application for contractual attorney's fees and costs.

      9.      Respondent Jason Gideon will be dismissed as a party to this arbitration.

      Subject to further order and/or a further and/or amended interim arbitration award, and the Final Arbitration Award, this Interim Arbitration Award, including the Determinations hereinabove set forth, is intended to be in full settlement of all claims, issues, allegations and contentions, on the merits, submitted by any party against any adverse party in this arbitration. Subject to the immediately preceding sentence, claims and requests for relief not expressly granted in this Interim Arbitration Award are hereby denied.

Dated: June 3, 2015

                                   STEPHEN E. HABERFELD
                                       Arbitrator

## DECLARATION OF MIKE POSTLE

STATE OF _California_ §
§
_Sacramento_ COUNTY §

I, Mike Postle, declare under penalty of perjury that the following declaration is true and correct and based upon my personal knowledge:

1.   My name is Mike Postle. I am over the age of 18 and competent to make this declaration.

2.   I provided a declaration to attorney Mark Bankston in which I accurately described an abusive phone call with attorney Marc Randazza.

3.   In the week after my declaration was submitted in Texas, Mr. Randazza began contacting me directly through email about that declaration.

4.   I have attached to this declaration true and correct copies of several emails Mr. Randazza sent which greatly disturbed me, including emails concerning my testimony and threats of legal action.

5.   I tried to put on a brave face for Mr. Randazza, but I found his emails very intimidating, and they have caused me to worry about the reprisals I will face from Mr. Randazza because I angered him with my testimony.

6.   I am not represented by an attorney, and I fear that Mr. Randazza is going to use the legal system to pursue a personal vendetta against me.

Executed on August 1, 2021.


_____
MIKE POSTLE

1

July 29, 2021 email that I received from Marc Randazza



‎‎Verizon    **2:00 AM**    22% 🔋

12 Messages

‹ Inbox    SERVICE OF COURT DOCU...    ∧  ∨

MR    From: Marc Randazza ›
     To: Dream Seat ›
     Cc: Eric Bensamochan ›
     Yesterday at 12:05 PM

Mr. Postle,

I was reviewing this email and note that you admit to recording phone calls, without prior knowledge of the other party.

Under the California's eavesdropping and wiretap laws, any such recording was illegal. Under California law, any party who is aggrieved by your violation can recover civil damages of $5,000 or three times the actual damages, whichever is greater. Cal. Penal Code § 637.2. The court may also impose injunctions preventing the use of

22-01023-tmd  Doc#1-13  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
321 of 336
July 29, 2021 email I received from Marc Randazza (cont.)



injunctions preventing the use of illegally obtained information. Cal. Penal Code § 637.2(b).

It is my intention to file a lawsuit against you for violation of Cal. Penal Code § 637.2.

However, I am willing to grant you 24 hours in which to try to resolve this without filing suit against you.

You may feel free to call me to discuss.  I do not consent to recording the call unless we discuss that before the recording begins.

July 29, 2021 email that I sent in response to Marc Randazza



et al. | **34-2020-00286265**

Mr. Randazzal,

My email to you was a bit of hyperbole.  I assume that you are referring to this section:

"I don't think your correspondence has been very professional, it's clearly not your style to be professional based on re-listening to the two calls we've had thus far so I wont personally hold it against you. I forgot that you mentioned to me in our first call that you didn't want to be made into a clown thanks to Brill, and I'm still in awe over how you treated Ms Merrill on the second call. So unless it is court business, or you'd actually like to talk about mutual respect, I don't see a reason for you to contact me."

My goal, was to discover if you would admit to speaking to me and Ms Merrill so terribly.  Since in your filed court response you included a statement from your staff confirming that you had in fact cursed and disparaged us, I'm done with it.

But no, no one recorded you. I just make sure I take notes anytime I'm talking to anyone who's capable of lying or who threatens me with getting personal in email, like you did with me, having both doxed me online, and republishing a defamatory video where your client asked my ex to lie for hers and your gain.

4

July 29, 2021 email I received from Marc Randazza



**.ıll Verizon 🛜**      **5:48 PM**      **71% 🔋**

18 Messages

❮ Inbox    **SERVICE OF COURT DOCU...**   ∧   ∨

**MR**   **Marc Randazza**      12:13 PM
To: Dream Seat ❯

Well, you both lied in claiming that I called her a "cunt" -- I had a third party in the room, who could hear my end of the conversation. So, how do you want to handle your perjury?

On Thu, Jul 29, 2021 at 3:09 PM Dream Seat

Show Quoted Content

wrote:

--

_____

**Marc John Randazza, JD, MAMC, LLM**∗ | **Randazza Legal Group**

2764 Lake Sahara Drive, Suite 109, Las Vegas, NV 89117
30 Western Avenue, Gloucester, MA 01930
2 S Biscayne Boulevard, Suite 2680, Miami, FL 33131
Tel: 702-420-2001 | Email: mjr@randazza.com
Firm Offices - Las Vegas | Miami | New England

🗑      🗂      ↩      ✍

July 29, 2021 email that I sent to Marc Randazza



As I have said before, I find you beyond unprofessional and yet again, there's no need to have contact with you unless it is specifically for court business. These threats.. are NOT court business.

Are you saying that on a professional call, as a court officer, when speaking to a lady from a victim's advocacy non-profit, you did scream that she was a fucking bitch and a fucking liar, just not a "cunt"? Classy.. and many others would agree if they have to know.
Anyway, I didn't lie, you did say that and since the "3rd party" that you claim was in your office is the same 3rd party you claim never had a GoFundMe with Brill on your behalf, who works with you, I don't think a court is going to give much credence to that claim, especially to someone...

Frankly, I don't know why you are still focusing on me since the judge said that your "services" were worth less than $27k and you received over $27k from the GoFundMe you and your office set up to cover those fees.

There's really no reason to contact me other than to continue harassing and threatening me.
You've admitted that "because things have been made personal", and that "it's a big mistake on my part" it's very clear why you're still coming at me.

You can be done with me, or you can keep stubbornly coming at me out of personal anger with a clear vendetta. But every cause will have an effect. So...
At this point, I don't really care what you.

6

July 29, 2021 email that I received from Marc Randazza



**Siri found new contact info**
Marc Randazza mjr@randazza.com  add...

**Marc Randazza**                                4:23PM
To: Dream Seat >

I absouetly said "Fucking liar" -- "bitch" or "cunt," no. Not a chance.

It is "court business" when you lie in a sworn statement. If you find no functional difference between calling someone a "fucking liar" or a "fucking bitch" or "fucking cunt" , you're entitled to that opinion. What you are not entitled to is to perjure yourself and lie about which of the three I did say. What I am entitled to do is to take action when someone submits a false statement, under penalty of perjury.

22-01023-tmd Doc#1-13 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 326 of 336

July 29, 2021 email that I received from Marc Randazza (cont.)



**ıll Verizon** LTE ❄ **4:41 PM** 🚀 66% 🔋

16 Messages

❮ Inbox **SERVICE OF COURT DOCU...** ⋀ ⋁

statement, under penalty of perjury.

And I am not going to let that rest – however, I will let it rest on one condition – that you admit that it was not true.  and I won't use that against you.  You need do nothing more than send a letter to the court stating that you made an error.  That indeed, I did say "fucking liar" -- I will never deny that.  But, I certainly did not call her a "fucking bitch" nor a "fucking cunt"  (There is a non zero chance that I *thought* those things, but they never came out of my mouth)

I'm not even sure what you thought you had to gain by lying about that.  But, I will not tolerate the lie, and I won't let this go.  So, your move.  You can end it by telling the truth.  Or, you can dig in ... and enjoy the "effect" as you put it.

July 29, 2021 email that I sent to Mr. Randazza



**Re: SERVICE OF COURT DOCUMENTS | Postle v. Brill, et al. | 34-2020-00286265**

If you contact me again on this matter, I will forward these emails to the court in Texas. I'm sure harassing and threatening someone who made a complaint against you is no big deal to you, but the court might feel otherwise.

I know that this is all retaliatory because your record is under review in the case in Texas. I guess with the mountain of evidence against you and all of the people and documents showing your "honesty" and "integrity" (that is sarcasm in case we aren't clear) you figure that I don't have a lawyer so you can intimidate me. Well you can't.

You said what you said. If you want to take me to court for perjury, well you just go right ahead. But until a summons hits my mail box, don't contact me again.

On Jul 29, 2021, at 4:23 PM, Marc Randazza <mjr@randazza.com> wrote:

22-01023-tmd Doc#1-13 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 328 of 336

June 15, 2021 email that I received from Marc Randazza



18 Messages

‹ Inbox  **SERVICE OF COURT DOCU...**

**Dream Seat**  6/15/21
Mr Randazza, I will let the court tel...

**Siri found new contact info**
Marc Randazza mjr@randazza.com  add...

**Marc Randazza**  6/15/21
To: Dream Seat ›

Mr. Postle:

My issue with you is that you're dishonest. I don't really care that you're a card cheat. I mean, I certainly look down on a man who cheats at cards. But, the kind of man who cheats at cards *and* physically abuses women, that's just not a real man in my eyes.

As far as representation, yes, you have every right to an attorney. You had one. You had a really good one. My issue with HONR is that it's involvement

10

June 15, 2021 email that I received from Marc Randazza (cont.)



As far as representation, yes, you have every right to an attorney.  You had one.  You had a really good one.   My issue with HONR is that it's involvement in this case has nothing to do with you - but has to do with a collateral attempt to influence another case.  And, Ms. Merrell most certainly was trying to "play lawyer" for you.  No, that's not permitted.

Don't lie that you have any interest in "mutual respect."  We tried that route.  You decided to make it personal with me.

That wasn't smart.

11

**The Florida Bar**
**Inquiry/Complaint Form**

**PART ONE** (See Page 1, PART ONE – Complainant Information.):

Your Name: <u>Paul Berger</u>

Organization: _____

Address: <u>1015 Spanish River Road, Apt. 408</u>

City, State, Zip Code: <u>Boca Raton, FL 33432</u>

Telephone: <u>561-414-4570</u>

E-mail: <u>paul@hurricanelawgroup.com</u>

ACAP Reference No.: _____

Have you ever filed a complaint against a member of The Florida Bar: Yes ☐ No ☒

If yes, how many complaints have you filed? _____

Does this complaint pertain to a matter currently in litigation? Yes ☒ No ☐

**PART TWO** (See Page 1, PART TWO – Attorney Information.):

Attorney's Name: <u>Marc Randazza</u>

Address: <u>3625 S Town Center Dr.</u>

City, State, Zip Code: <u>Las Vegas, NV 89135</u>

Telephone: <u>702-420-2001</u>

**PART THREE** (See Page 1, PART THREE – Facts/Allegations.): **The specific thing or things I am complaining about are: (attach additional sheets as necessary)**

See Part Three Attached

**PART FOUR** (See Page 1, PART FOUR – Witnesses.): **The witnesses in support of my allegations are: [see attached sheet].**

**PART FIVE** (See Page 1, PART FIVE – Signature.): **Under penalties of perjury, I declare that the foregoing facts are true, correct and complete.**

Paul Berger
_____
Print Name

_____
Signature

6/8/1025
_____
Date

# PART THREE  Facts/Allegations

As described below, I, Paul Berger, allege that Marc Randazza has violated rules of the Florida Bar governing attorney ethics and conduct in Florida. The facts that support these allegations are as follows:

I am an attorney representing a corporate client, Roca Labs, Inc. ("Roca"). Attorney Marc Randazza represents Opinion Corp and Consumer Opinion Corp. These entities operate a website pissedconsumer.com  Mr. Randazza's clients are collectively referred to as Pissed Consumer. Roca is involved in litigation with  Pissed Consumer. I provided legal services to assist Roca in dealing with false, malicious and defamatory information placed about Roca on pissedconsumer.com.

On **August 12, 2104**, Pissed Consumer filed suit against Roca in the U.S. District Court in the Southern District of New York. At the time the lawsuit was filed attorney Marc Randazza of the Randazza Legal Group was representing Pissed Consumer (Mr. Randazza was not counsel in New York, attorney Ron Coleman represented Pissed Consumer).  I am not licensed to practice law in New York and did not file an appearance in this matter.  This case was voluntarily dismissed.

On **August 20, 2014**, Roca filed suit against Pissed Consumer in Twelfth Judicial Circuit in and for Sarasota County, Florida.  I was an attorney of record on the suit. The matter was then removed to the U.S. District Court for the Middle District of Florida where it is presently ongoing. Mr. Randazza is the lead attorney for Pissed Consumer. I am lead counsel on the case.

On **September 15, 2014**, Mr. Randazza emailed Michael Masnick, the founder of TechDirt about Roca in an effort to find a class representative "to serve Roca right" (see below). Mr. Randazza was asking Mr. Masnick to solicit clients for him and for other law firms to serve as a plaintiff against Roca (In Mr. Juravin's Bar Complaint against Mr. Randazza, he asserts that essentially Mr. Masnick was providing free advertising for Mr. Randazza). TechDirt is a technology website that claims 1.5 million monthly viewers.  Mr. Randazza and Mike Masnick are friends and Mr. Masnick has published numerous negative articles about Roca Labs and myself.  There is no reason for a technology magazine to publish anything about the

undersigned. The only reason is the request from Mr. Randazza.

**Roca Labs**
1 message

**Marc Randazza** <mjr@randazza.com>                                    Mon, Sep 15, 2014 at 8:12 PM
To: Michael Masnick ~~████████████~~

Mike,

Is it something you'd do, ask anyone reading your post if they've been threatened by Roca Labs?

I'm defending Pissed Consumer. I'd really like some threatened parties as witnesses.

Further, i think there's a hell of a class action here - and finding the right class rep would be a good way to serve Roca right.

--

**Marc John Randazza, JD, MAMC, LLM·** | Randazza Legal Group
3625 South Town Center Drive | Las Vegas, NV 89135
Tel : 702-420-2001 | Fax : 305-437-7662
Email: mjr@randazza.com | Website www.randazza.com

     Since the email, TechDirt published a series of articles deriding Roca and portraying Mr. Randazza as a legal champion (articles available upon request). Mr. Randazza augmented by artificial stimulus the publicity normally resulting from his law practice, seeing to it that his successes are broadcast and magnified. At the same time he took to the media to smear my reputation. A search on TechDirt shows dozens of articles linked to my name or about me (articles available upon request). These articles were published because of Mr. Randazza.

     On **September 19, 2014,** Mr. Randazza sent me an email that consisted only of the Latin phrase *murum aries attigit* (Email attached as **Exhibit 1**). Mr. Randazza has written a blog about the use of this phrase (Attached as **Exhibit 2**). I interpreted this cryptic email as a threat against myself and Roca by Mr. Randazza[1]. I felt it was Mr. Randazza's announcement that he was going to war with me and that he would show me no mercy. I also interpreted it as a command that I surrender immediately. I sincerely believe that Mr. Randazza's goal is to put both myself and my client out of business.

     On **September 28, 2014,** Mr. Randazza issued a Tweet comparing me to Joe Rakofsky and Charles Carreon. Mr. Rakofsky was an attorney who had one of his cases declared a mistrial

---

[1] *Murum Aries Attigit* was a warfare policy attributed to Mark Antony advocating "no mercy" toward Pompey and the Optimates. The policy was said to act as a deterrent against resistance to those about to be besieged. It was an incentive for anyone who was not absolutely sure that they could withstand the assault to surrender immediately, rather than face the possibility of total destruction.

by the Judge because of his apparent lack of courtroom knowledge (his first trial was a murder case). Mr. Carreon was an attorney who sued an Internet publisher and lost trying to protect his reputation online and who has a history of bar complaints. I have no relationship with either attorney and was not aware of either attorney until the Tweet by Mr. Randazza.



On **January 24, 2015**, Mr. Randazza publically called myself and every other attorney providing legal services to Roca Labs "idiots." Mr. Randazza has repeatedly called me an idiot, stupid and other derogatory and unprofessional terms.



Mr. Randazza uses social media websites such as Twitter and his friends at media outlets such as TechDirt to promote himself, smear my reputation and hurt my legal practice. Mr. Randazza's countless number of social media activities about myself ranges from stating that Roca Lab's legal team (including myself) would be a good fit for radical terrorists to stating that "Some Fucker put Roca Labs Shit in my kid's candy bag!" (social media activity upon request).

On **May 6, 2015,** mandatory mediation took place between Roca and Pissed Consumer in a different matter (*Roca Labs, Inc. v. Opinion Corp et. al.* Case No: 8:14-cv-2096-T-33EAJ). After the conclusion of mediation outside the building Mr. Randazza became enraged at Don Juravin and myself. Mr. Randazza screamed, threatened, and berated the undersigned and my client without provocation. He screamed at both of us and threatened violence against both Mr. Juravin and myself. He threatened to beat me up and send Mr. Juravin to the Gaza Strip. Mr. Juravin is Jewish and his family lives in Israel. After screaming and berating Mr. Juarvin and myself for several minutes Mr. Randazza walked to his vehicle and proceeded as if he was leaving (screaming curses at us as he left).

Rather than driving away, he stopped his vehicle, got out of the car and began to scream at Mr. Juravin and myself and made more threats of violence against us. He stated that he would ruin Mr. Juravin and sue him for millions of dollars. He then drove off in his car. The mediator, Mr. Michael Kahn, Esq., a Member of the Florida Bar (482 N. Harbor City Blvd., Melborne, FL 32935 Tel. 321-242-2564) witnessed the entire event.

On **May 8, 2015**, Mr. Randazza posted a blog on his website with the Hebrew phrase רוקה הוא מאוד נפגע מאוד (translation: "Roca Labs is very hurt"). The message was directed specifically at Mr. Juravin and was more hate speech. A brief search of Mr. Randazza's hundreds of blog posts failed to find any other titles written in Hebrew.

On **June 3, 2015,** during a conference call Mr. Randazza repeatedly berated the undersigned, calling me an idiot, stupid and a "sorority girl". After the call I sent an email to Mr. Randazza notifying him that I would not have any telephone calls that were not recorded to ensure professional behavior (email available upon request).

I am requesting the Committee investigate the above allegations against Marc Randazza to determine whether his conduct violates the Rules of the Florida Bar.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 57254009
Status as of 9/17/2021 3:02 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 9/15/2021 8:44:27 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 9/15/2021 8:44:27 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 9/15/2021 8:44:27 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 9/15/2021 8:44:27 AM | SENT |