## <u>EXHIBIT B  (contd.)</u>

**Copy of All Filings with State Court**

12/31/2021 3:53 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Sheila Collins

D-1-GN-18-001835

# Exhibit 1 – Transcript of August 31, 2021 Hearing

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 3 of 380

2

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME

| | |
|---|---|
| NEIL HESLIN, | ) IN THE DISTRICT COURT |
| Plaintiff | ) TRAVIS COUNTY, TEXAS |
| VS. | ) 459TH JUDICIAL DISTRICT |
| ALEX E. JONES, INFOWARS, LLC, ET AL., | ) TRIAL COURT CAUSE NO. ) D-1-GN-18-001835 AND |
| Defendant | ) D-1-GN-19-004651 |
| | |
| LEONARD POZNER AND VERONIQUE DE LA ROSA, | ) IN THE DISTRICT COURT |
| Plaintiff | ) TRAVIS COUNTY, TEXAS |
| VS. | ) 459TH JUDICIAL DISTRICT |
| ALEX E. JONES, INFOWARS, LLC, ET AL., | ) TRIAL COURT CAUSE NOS. ) D-1-GN-18-001842 |
| DEFENDANTS | ) |
| | |
| SCARLETT LEWIS, | ) IN THE DISTRICT COURT |
| Plaintiff | ) TRAVIS COUNTY, TEXAS |
| VS. | ) 459TH JUDICIAL DISTRICT |
| ALEX E. JONES, INFOWARS, LLC, ET AL., | ) TRIAL COURT CAUSE NO. ) D-1-GN-18-006623 |
| DEFENDANTS | ) |

------------------------------------------------------

MOTION TO COMPEL; MOTION FOR SANCTIONS

On the 31st day of August, 2021, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Maya Guerra Gamble, Judge presiding, held in Austin, Travis County, Texas, held via videoconference;

Proceedings reported by machine shorthand.

3

A P P E A R A N C E S

FOR THE PLAINTIFFS:

Mark D. Bankston
SBOT NO. 24071066
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, Texas  77008
(713) 221-8300

FOR THE DEFENDANTS IN CAUSE NOS. D-1-GN-18-001835, D-1-GN-18-001842, D-1-GN-18-006623 AN D-1-GN-1004651:

Bradley J. Reeves
SBOT NO. 24068266
Reeves Law, PLLC
702 Rio Grande Street, Suite 306
Austin, Texas  78701
(512) 827-2246

4

I N D E X
VOLUME 1
MOTION TO COMPEL; MOTION FOR SANCTIONS
AUGUST 31, 2021

| | Page | Vol. |
|---|---|---|
| Announcements......................... | 5 | 1 |
| Argument by Mr. Bankston.............. | 7 | 1 |
| Argument by Mr. Reeves................ | 75 | 1 |
| Response by Mr. Bankston.............. | 87 | 1 |
| Response by Mr. Reeves................ | 96 | 1 |
| Court Takes Matter Under Advisement.... | 96 | 1 |
| Adjournment........................... | 107 | 1 |
| Reporter's Certificate................ | 108 | 1 |

5

```
1        TUESDAY, AUGUST 31, 2021 - MORNING PROCEEDINGS
2           (The following proceedings were held in open
3    court, via YouTube:)
4           THE COURT:  So, we're on the record, we are
5    here today for D-1-GN-18-001835, Heslin versus Jones;
6    D-1-GN-18-001842, Pozner versus Jones -- oh, I have the
7    wrong piece of paper here -- and D-1-GN-18-006623,
8    Lewis versus Jones.
9           Is that right, Mr. Bankston?
10          MR. BANKSTON:  That is correct, Your Honor.
11          THE COURT:  Can I have your announcement for
12   the record, please, Mr. Bankston.
13          MR. BANKSTON:  Sure.  Mark Bankston appearing
14   for all of the plaintiffs in this matter.
15          THE COURT:  All right, and Mr. Reeves.
16          MR. REEVES:  Brad Reeves for defendants in
17   all the matters.
18          THE COURT:  All right.  So, Mr. Bankston and
19   Mr. Reeves, we had a brief conversation about what we
20   were going to cover today.  And now that we're on the
21   record we're going to go ahead and get started.
22          Mr. Bankston, all of the motions today are
23   yours.  Do you have a preference on what order you
24   would like to take them?
25          MR. BANKSTON:  Well, actually, Your Honor, I
```

6

```
1    kind of figured, for convenience and efficiency sake,
2    we do a presentation that kind of brings up the
3    histories of the cases and, because these discovery
4    disputes kind of weave in and out of each other, I was
5    planning on dealing with them kind of collectively.
6           THE COURT:  All right.  I think that's fine.
7           MR. BANKSTON:  As opposed to doing the same
8    material over and over again.
9           THE COURT:  I noticed a lot of overlap
10   reading the briefs getting ready for today.  That is an
11   excellent suggestion and I'm ready when you are.
12          MR. BANKSTON:  Okay.  Your Honor, I'm going
13   to share my screen, if that's okay.
14          THE COURT:  Yes, please.
15          MR. BANKSTON:  Let's see if this is working.
16          THE COURT:  It is working.  I do see like
17   your slides and everything.  It's not like the
18   presentation mode, if you care about that.
19          MR. BANKSTON:  I do, actually, and I have it
20   up and now it's on a different screen than what I seem
21   to be sharing.  I take it you can just see the
22   PowerPoint screen, not a full presentation screen.
23          THE COURT:  Correct, correct.  I see the
24   whole behind the scenes.
25          MR. BANKSTON:  I'm not -- hold on.
```

7

```
1           MR. REEVES:  If you go to the share screen
2    button, if you have two screens on your computer it
3    should allow you to change to the other screen.
4           MR. BANKSTON:  If I go to the share button to
5    number two.  Oh, man I'm trying here, hold on here.
6           THE COURT:  You can unshare it.
7           MR. BANKSTON:  I got it.
8           Okay.  Now are y'all seeing my presentation?
9           THE COURT:  Yes.
10          MR. REEVES:  Yes.
11          THE COURT:  Okay.  Great.  Okay.  And I'm
12   going to minimize these windows here so I can see.  All
13   right.
14          So, Your Honor, as you know, we're going to
15   be covering all four cases.  And I think there's no
16   better place than to start from the beginning.  So the
17   first thing that we are going to do, if -- oh, great.
18   There we go.  All right.
19          Your Honor, the first case that we're dealing
20   with today is Heslin v Jones.  This was the defamation
21   case involving InfoWars' allegations that Mr. Heslin
22   was lying about holding his dead child after Sandy
23   Hook.  Mr. Heslin had appeared on Megyn Kelly's show to
24   push back against Mr. Jones' allegations that this
25   entire incident was fake.  After he did that, he was
```

8

```
1    retaliated against when they said that he was lying
2    about having held his son.
3           That case was brought back in 2018.  And, in
4    fact, a discovery order was entered on August 31st,
5    2018, so it's sort of happy third birthday to our
6    discovery order in this case.  That order, which to
7    this date has never been responded to in any way,
8    shape, or form, required written discovery in
9    deposition of all the defendants.  About 30 pages of
10   written discovery and then for each of the four
11   defendants.  The defendants refused to respond to that
12   discovery.
13          Actually, it's correct to say they did
14   respond, but their responses simply said, the court
15   does not have the authority to order us to answer this
16   discovery, so we're not going to do it.  So they
17   basically just told the court to pound sand.  We
18   immediately filed a motion for contempt, being very
19   alarmed with that.  They appealed the following day.
20   So for a moment let's stick a pin in Mr. Heslin's case,
21   that second motion for contempt, because that went up
22   on appeal.
23          And that brings us to our next case, which is
24   Lewis versus Jones.  Mrs. Lewis is the co-parent with
25   Mr. Heslin of Jesse Lewis, a victim of Sandy Hook.
```

10

1   Mrs. Lewis brought her suit a little bit later.  Her
2   suit alleges intentional infliction of emotional
3   distress, because InfoWars made false statements about
4   the circumstances of the death of her child.
5        In that case the court likewise -- in the
6   discovery orders on January 25th and March 8th, 2019,
7   that also required written discovery and deposition of
8   all the defendants.  The defendants refused to respond
9   to that discovery.  They did show up for deposition,
10  but they failed to prepare their corporate
11  representative for the companies.  That was Rob Dew,
12  And, as noted by the court during the hearing, it was a
13  completely useless deposition, Mr. Dew did not have any
14  idea what he was supposed to be talking about, had no
15  idea he was supposed to prepare for the deposition, and
16  basically answered "I don't know" to every single
17  question.
18       We filed a motion for sanctions.  On the eve
19  of that hearing, defendant provided a document dump
20  filled with nonresponsive materials, and we'll talk a
21  little bit more about those materials in a bit here.
22  But for the moment we can just say everybody at that
23  moment was in agreement that this discovery production
24  was a mess.
25       Defendant's counsel, during that hearing,

1   begged the court not to enter actual sanctions on the
2   record and instead said that he would agree to
3   privately pay $8,000 in attorneys fees and surrendered
4   his client's TCPA motion except for a single legal
5   issue:  They wanted to argue, the only thing they
6   wanted to argue, was that Mrs. Lewis could not bring a
7   claim if she had not been personally identified.
8        And we knew this argument was bunk because,
9   for instance, when Natalie Holloway disappeared in
10  Aruba, her mother, Elizabeth Holloway, was able to sue
11  the "National Inquirer" when the "National Inquirer"
12  made false statements about her daughter's
13  disappearance.  So we knew first the identification of
14  the plaintiff wasn't an issue, so we agreed to forego
15  the component of the motion seeking to strike the TCPA
16  motion, because we knew we had it in the bag by then.
17       Those appeals actually turned out to be a
18  little bit differently so we aren't going to be
19  accepting those kind of stipulations in the future, but
20  for the moment that's what's happened there and
21  discovery was still a very big mess.
22       What happened next in the chain of events is
23  actually the Connecticut case was part of the same
24  process.  As you know, there is a different group of
25  parents who are suing in Connecticut.  They are

11

1   undergoing exactly the same kind of anti-SLAPP process
2   except Connecticut's deadlines on that are a little
3   more generous, so they were actually going a little bit
4   after the Lewis case.
5        So, once the Lewis case happened and that
6   discovery problem, we then had the discovery problems
7   in Lafferty.  And these become relevant to our cases a
8   little bit later.  What had happened there is that, by
9   March of 2019, the defendants had violated numerous
10  discovery orders.  And this is the Connecticut Supreme
11  Court kind of summarizing what happened in that case.
12       Defendants' local counsel at that time, this
13  is, you know, March and April, started saying that he
14  was in an ethically ambiguous position and he could not
15  discharge his obligations on the pending discovery
16  orders in a way that would permit him to put his
17  signature to a document.  He said, the discovery
18  situation is a mess right now.  That's Exhibit 5 to our
19  brief.
20       Judge Bellis gave one final extension and
21  then defendants produced a dozen files of child
22  pornography.
23       Plaintiff's counsel in Connecticut informed
24  the F.B.I., my counterpart Chris Mattei up there.  And
25  after InfoWars was informed, Jones appeared on his show

12

1   and threatened plaintiff's counsel.  None of this was
2   public at this point, this was Jones making it public.
3   Jones called plaintiff's counsel gang members, offered
4   a bounty on their heads.
5        And you have to remember that, to Jones, all
6   of us are one big group.  We're a conspiracy of
7   democratic operative lawyers who have been recruited
8   and, by his words, by George Soros, who put on payroll
9   and Hillary Clinton is directing us.  And we're the
10  people he's coming after.  Specifically in this video,
11  too, he was threatening Chris Mattei directly.
12       Now, what I want to show you now, Your Honor,
13  this is our plaintiff's hearing Exhibit 1, this is a
14  video clip, uh, from April 2019.  This was actually
15  admitted and played in court in our last hearing in
16  this case, in December 20th, 2019.  The sort of hearing
17  that we're continuing right now.  So this has already
18  been admitted and is part of the record, but I'm going
19  to offer it now because I want to play a video for you
20  of what Jones said right after all of that happened.
21       THE COURT:  All right.
22       MR. BANKSTON:  Also as I should warn this -- for
23  the folks who are on the live stream, this video I'm
24  about to play is extremely not safe for work.  Um.  It
25  has a lot of profanity in it.  Also, even if you're

14

1  okay with the profanity, if you have children in the
2  room this video gets a little frightening at points.
3  So I just want to warn the live stream people.
4       THE COURT: Thank you.
5       (Video recording played off the record.)
6       MR. BANKSTON: Okay. So, that is what
7  Mr. Jones said. Obviously that was very, very
8  disturbing to us.
9       Right after that, Judge Bellis assessed
10 sanctions and struck InfoWars's motion to dismiss. She
11 cited the production of child pornography, the
12 despicable, potentially criminal, threats. There was
13 also a fraudulent affidavit submitted up there in
14 Connecticut that was not actually signed by Mr. Jones.
15 But the court said, even if you ignore all of that,
16 which is completely unprecedented, there were still
17 multiple failures to comply with these discovery
18 deadlines. Defendants would not fairly comply with
19 their discovery obligations.
20       Judge Bellis said at that time that she
21 wasn't going to grant a default, but if there's
22 continued obfuscation and delay and tactics like I've
23 seen up to this point, I will not hesitate, after a
24 hearing and an opportunity to be heard, to default the
25 Alex Jones defendants if they, from this point forward,

Alicia DuBois, Texas CSR 5332 · 459th District Court, Travis County

---

1  continue with their behavior with respect to discovery.
2  You can see that in Exhibit 6.
3       The next thing that happened was Heslin
4  versus Jones comes back to Texas. After we remember,
5  that case had gone up on appeal after they refused to
6  answer discovery and we had brought a motion for
7  contempt. That was dismissed on August 30th, 2019.
8  For the next month, InfoWars did absolutely nothing.
9  Just like they've done in this case, actually.
10       Judge Jenkins then held a hearing on
11 October 3rd, 2019. And you can see from that hearing
12 he is extremely puzzled why, after everything that's
13 happened in this case, these defendants are still
14 refusing to respond to discovery and will not obey his
15 orders.
16       Now, I'm sure you know Judge Jenkins, him
17 being one of the more senior judges in this last
18 generation. And lawyers around here will tell you, you
19 do not get sanctions from Judge Jenkins. Judge
20 Jenkins, I think to his credit, is a judge who
21 vigorously pursues conciliatory actions and tries to
22 work things out and really wants to give people a
23 chance. You know, he didn't sanction immediately in
24 the Lewis case.
25       The idea of Judge Jenkins granting a contempt

Alicia DuBois, Texas CSR 5332 · 459th District Court, Travis County

---

15

1  sanction and a $25,000 fine is pretty extreme in this
2  courthouse. I haven't found anybody who has ever heard
3  of it happening. But at that point he was upset and
4  went ahead and granted the motion and granted our
5  attorneys fees.
6       They had another chance to comply, because
7  right at the same time that that had happened
8  Mr. Heslin's claim for intentional infliction of
9  emotional distress came for a hearing on expedited
10 discovery. And once again for the -- now, again in
11 Mr. Heslin's case, Judge Jenkins ordered discovery for
12 the claim -- for the IIED claim. That discovery order
13 was entered on October 18th, 2019. That required
14 written discovery and depositions of Jones, Free Speech
15 Systems, and their chief editor, Paul Watson.
16       So, let's talk about what happened there.
17 First, the defendants gave false and evasive answers to
18 discovery. And what you need to understand, as you see
19 from our exhibits in here, the written discovery that
20 was served in the court's discovery order is very
21 simple stuff. It is very simple. It's stuff like,
22 identify all the videos about Sandy Hook; identify all
23 the employees who were involved in those videos;
24 identify -- for every statement, you know, here are 17
25 statements you made about Sandy Hook, identify your

Alicia DuBois, Texas CSR 5332 · 459th District Court, Travis County

---

16

1  source for those statements; identify the methods of
2  communication that's used in the office.
3       All of them were not answered. They were
4  given answers with things like, our sources were
5  newspapers and things we found on the internet. When
6  asked who was involved in these episodes: Alex Jones
7  and Rob Dew and maybe some other people. We don't
8  know. We can't figure it out. They would never tell
9  me what videos there are. Any of the most basic
10 information in interrogatories or request for
11 production, completely evaded.
12       They failed to prepare Mr. Dew, again. And
13 this is what's really shocking, Judge Jenkins was
14 clearly shocked by this, that the exact same deponent,
15 who was vigorously chewed out about not being prepared,
16 they show up again and perform the some mockery of the
17 deposition again. In fact, both depositions.
18       They failed to remedy the document
19 production, and we're going to talk about this a little
20 bit later, there's some really alarming testimony about
21 what has and hasn't been produced in this case and that
22 there should be a lot more production that has not
23 happened, And that was confirmed in some of those
24 depositions.
25       And those depositions also revealed other

Alicia DuBois, Texas CSR 5332 · 459th District Court, Travis County

1  alarming irregularities.  We know that there was no
2  discover -- I mean, no litigation hold put out in this
3  case.  It was never until 2019 was there any
4  communication with inside InfoWars to tell people to
5  preserve documents.  And at that point they just sent
6  an email to every employee saying, hey, if you have any
7  documents, collect them and bring them to us.  Nobody
8  actually went and searched or monitored any of this.
9  The very employees who may have been giving the most
10 damning testimony were told to go look for documents on
11 their own files.  And what happened?  Not a single
12 employee returned a single document.
13         The defendants also failed to produce crucial
14 evidence, and this is -- at the heart of it is mostly
15 the videos that are at the heart of plaintiff's claim,
16 which we don't yet have.  As you know from the
17 briefing, very soon after we sued, all of their videos
18 started being taken down off of line.  So none of them
19 are publically available like they used to be.
20 InfoWars has made at this point our best estimate is
21 over a hundred videos on Sandy Hook.  We don't have
22 that.  And of course we don't have their social media.
23         One thing that the briefing gives you a
24 flavor for is all those things, I don't think the
25 briefing quite gives you a flavor for how evasive

1  Mr. Jones was on these issues, on things like his
2  sources and identifying those in interrogatories or
3  methods of communication or the videos.  Any of it.
4         And so I want to show you just about ten
5  minutes from Mr. Jones' November 2019 deposition,
6  because I do think it gives you a flavor of the bad
7  faith we've seen in this case.  And this is plaintiff's
8  hearing Exhibit Number 2 which I'm going to play now.
9         THE COURT:  Can you turn the volume up,
10 Mr. Bankston?
11         MR. BANKSTON:  I'm going to see how I can, if
12 I can do that.
13         THE COURT:  Because I already turned it up a
14 lot on my end.
15         MR. BANKSTON:  And I'm wondering if it's --
16         THE COURT:  If that makes it loud.
17         MR. BANKSTON:  -- if you controlled the
18 volume on your end, I don't know.
19         Let me see what I can do here to make sure
20 I'm all the way up.  Okay, let's try this.
21         (Video recording played off the record.)
22         THE COURT:  Can I interrupt you,
23 Mr. Bankston?
24         MR. BANKSTON:  Yes, you sure can.
25         Are you having hearing problems on it?

1         THE COURT:  Yes, we just can't hear it.  And
2  I realize I should have made it clear before you
3  started playing videos that, because they're exhibits,
4  I don't ask my court reporter to record the content of
5  the video.
6         MR. BANKSTON:  Sure.
7         THE COURT:  Okay.  So just -- I just realized
8  I should have made that clear, because I think some
9  courts do that differently.
10         MR. BANKSTON:  Okay.
11         THE COURT:  And she also can't understand it
12 well enough to make a record, even if I had asked her
13 to.  She did let me know that.  But typically an
14 exhibit I do not have her record the contents.
15         MR. BANKSTON:  And, Your Honor, I also
16 figured out just now how I can -- the problem was the
17 sound is coming through my speaker to my microphone.  I
18 figured out how I can share the sound directly.
19         THE COURT:  That was the second thing I was
20 going to say is when you share a video you have to
21 click to share audio also.
22         MR. BANKSTON:  Yes, I see that now.
23         THE COURT:  Okay, wonderful.  Let's try
24 again.  It's up to you whether you want to start over.
25         MR. BANKSTON:  I think that's probably for

1  the best.
2         THE COURT:  Okay.
3         MR. BANKSTON:  Because we're doing good on
4  time right now.  I'm going to go ahead and start that
5  over.  And I just want to make sure, since I'm sharing
6  again, that you all are seeing the screen in full
7  screen.
8         THE COURT:  The video is fine, it's the audio
9  that's the problem.
10         (Video recording played off the record.)
11         THE COURT:  That's better.
12         MR. BANKSTON:  Is that better?  Okay, great.
13         THE COURT:  Much better.
14         MR. BANKSTON:  All right.
15         (Videotape played off the record.)
16         MR. BANKSTON:  Okay.  So, for November during
17 his deposition, I dealt with that for about three
18 hours.  We didn't get anywhere with Mr. Jones.  Same
19 thing with his corporate representatives, as you saw.
20 The entire thing was a mess.  They, despite everything
21 that happened, were still not cooperating in discovery
22 in any meaningful way.
23         We had a hearing on that motion.  Their
24 counsel at that time said the following, after the
25 hearing did not go too well.  He said:

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 8 of 380

22

1    "I will represent to this court that, you
2  know, regardless if this goes on appeal, that doesn't
3  preclude me from -- it precludes -- it stays the court
4  as far as filing motions, et cetera. It certainly
5  doesn't preclude me from providing additional videos,
6  documents, and information they're seeking during that
7  period of time. And I fully intend to do so. I've
8  already started that process. So again, they're asking
9  now for basically an instruction that, you know." And
10  then he's cut off.
11      Judge Jenkins asks: So, what you're saying
12  is you're going to continue to comply with the order,
13  that includes written discovery, which is the exhibit
14  to my order, ordering you to produce those things?"
15      Mr. Jeffries said, "Absolutely, judge. I'm
16  representing to the court that I have spent countless
17  hours understanding infrastructure, what exists, et
18  cetera, et cetera, and I am certainly going to comply
19  with that 100 percent, stay or no stay, moving forward,
20  absolutely."
21      The court replies: "So, your point is let it
22  come back to the trial judge who is going to try the
23  case and see just how quickly you do that --
24      "Exactly.
25      " -- and how compliant you are with the order

23
1  sanction by saying, we're going to get this taken care
2  of, we're going to make sure that this happens and that
3  we don't, you know, years don't go by and all this
4  information is lost and we can't ever figure it out
5  again.
6      The court's order says, "Defendants
7  represented at the December 18th hearing that they
8  would continue to supplement discovery to belatedly
9  comply with the October 18th order. The amount of
10  supplemental discovery is a factor that will be
11  considered if the motion for sanctions is reconsidered
12  on remand. That's Exhibit 1 is that order.
13      Now, for the next year and a half we go on
14  the appeals and the defendant did not supplement any
15  discovery, they just completely disregarded their
16  promise to Judge Jenkins. They got out from under fire
17  by using that promise and then they ignored it. They
18  then continued an appeal, where obviously the court of
19  appeals is very frustrated with them in the Lewis
20  appeal and noted that in that record, and then in the
21  second one, in the Heslin appeal, they went ahead and
22  sanctioned them. So now we have another fine against
23  them from the court of appeals because they're still
24  engaging in frivolous litigation.
25      I need to mention right now, too, before we

24
1  get kind of caught up to date, about InfoWars' sham
2  defense, because this becomes very important later
3  after they start producing documents. This is in our
4  supplemental brief on page 37.
5      Essentially, InfoWars defended the IIED case
6  in Mr. Heslin's case the same way they did Mrs. Lewis's
7  case, which is to say they argued that, because
8  Mr. Heslin was not identified in any of the videos
9  claiming IIED, as opposed to his defamation claim, that
10  he could not pursue those IIED claims. Obviously we
11  thought this all was bunk, but there's something more
12  important going on, is in Mr. Heslin's case we
13  requested from them transcripts of all these videos,
14  and they wouldn't provide them. They said, we don't
15  have them. They didn't give us any transcripts of
16  these videos.
17      In fact, it came to be that there was never
18  any transcripts of a certain amount of these videos
19  because some of them had come off of YouTube and nobody
20  had any transcripts. In the appeal it's even talked
21  about how there are no transcripts. InfoWars argued
22  because we could not prove -- we had no transcript to
23  prove anything. And they also told the court in
24  multiple representations, in these certain videos that
25  they enumerated, we never identified Mr. Heslin.

before we make potentially outcome-determinative
decisions."
      Mr. Jeffries says, "Exactly right."
      On December 20th, Judge Jenkins granted the
motion for sanctions and assessed $100,000 in attorneys
fees for all the work that we had done in deposition,
bringing the motion, et cetera. The order holds the
default judgment under advisement.
      I think, as you'll see from that order and
from the transcript, Judge Jenkins's opinion was that
he only needed to decide the things that were
immediately important then, which was the TCPA motion
and whatever fees we needed. But whatever remedies
needed to flow from whatever actions happened here in
this court, that needed to be saved for the trial
judge, who is going to have more control over the
trial. Because he knew he was retiring.
      I think also another cardinal sort of
principle, Judge Jenkins's judicial philosophy, is that
if it is possible to decide less, it is necessary to
decide less. And in that case he did not want to
decide something that he thought you should be
deciding, which is, here we're going to give him
another chance, the guy made a promise, he made a
representation to the court to try to avoid a bigger

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 9 of 380

26

1    Well, it turns out close to the end of the
2    appeal we discovered, buried in the 5,000-page record
3    of the Lewis case, that attached to an unrelated motion
4    was a partial transcript of one of those videos.  And
5    that video, although Mr. Heslin's name was misspelled
6    so we didn't catch it when we searched, they identify
7    Mr. Heslin in that video.
8        In other words, the entire appeal that
9    InfoWars launched against Mr. Heslin on his IIED case
10   was based on a false representation by InfoWars that
11   they didn't identify him, when they knew that they did.
12       Now, InfoWars claims that it's all my fault,
13   that I should have found this errant transcript in the
14   giant Lewis record before this happened.  And maybe we
15   should have found it earlier and that's certainly true.
16   That doesn't excuse them lying about the fact that they
17   didn't identify him to multiple courts.  So all of that
18   was a waste of time.  But that actually becomes way
19   more important later, and we'll talk about that in a
20   minute.
21       Let's talk now about coming back on remand.
22   After their appeals failed, they were remanded and the
23   mandate was issued on June 4th.  And so let's talk
24   about what they're out of compliance of at that moment.
25       THE COURT:  June 4th, 2021.

1        MR. BANKSTON:  Correct, Your Honor, of this
2    year.  Right.
3        So, this is just a few month ago.  And they
4    came back and they are out of compliance first with the
5    Heslin IIED discovery order with a default under
6    advisement.  That's everything we just talked about,
7    where they had responded but the responses were
8    absolutely bunk and their depositions were a complete
9    joke.
10       The next thing they're out of compliance with
11   is the Heslin defamation discovery order, the one from
12   2018, which they had already been held in contempt for
13   and they had never answered in any way, shape, or form.
14       They were also out of compliance with the
15   Lewis IIED order, for which they had already paid
16   attorneys fees and admitted that the discovery
17   situation there was a mess.
18       They were also out of compliance with the
19   Pozner defamation discovery request, the next case that
20   we haven't even talked about yet; because Pozner went
21   up on appeal without any discovery first.  We went
22   ahead and just took that one up on appeal because the
23   case was so strong.  We didn't feel like we needed any
24   discovery, they didn't have any of these complaints
25   like they had in their later cases.  But they had

1    discovery served at the outset of those cases, and
2    after the TCPA motion was denied, ever since then,
3    they've just completely ignored them.
4        So that's everything that was pending on
5    remand.  And what I thought was going to happen, Your
6    Honor, because I knew when they made that promise they
7    weren't going to supplement anything during the appeal,
8    I knew that was a lie.  But what I thought might happen
9    is, when we got back on remand, I thought the moment
10   that the Texas Supreme Court dismisses their case they
11   would realize, okay, now we have to do something and at
12   remand they would get in a panic and produce a bunch of
13   things and show that they were in compliance with
14   discovery and that I would have to be arguing to you
15   that that wasn't good enough, that two years later,
16   trying to make sense of any of this all would just be a
17   mess, that's what I was going to have to do.
18       That is not what happened.  Nothing could be
19   further from what happened.  From June 4th to
20   August 26, 2021, Defendants did absolutely nothing in
21   terms of any kind of discovery.  There's nothing been
22   produced.  It wasn't until a couple of days before this
23   hearing that I was inundated with some documents.
24       And so let's talk about what's happened
25   during this entire summer that InfoWars has thrown in

1    the trash.
2        First there was June.  And for that entire
3    month there was no efforts made to comply with
4    discovery in any case.  This was just like in 2019,
5    when Mr. Heslin's case came back from remand and for an
6    entire month they had done nothing.  And Judge Jenkins
7    held them in contempt for that.  Well, at the end of
8    the month, with them doing nothing, we went ahead and
9    filed our supplemental brief in support of the default
10   sanctions in Mr. Heslin's IIED case.
11       We move to July.  And in July still nothing
12   has happened.  On July 6 we bring the Heslin and Lewis
13   motions for contempt.  We had reached out to them, and
14   that's an exhibit you'll see is our July 2nd letter.
15   It's their only exhibit to their response.  And that
16   letter fully explains to them everything that's going
17   on, why aren't you responding.  And they at that point
18   basically say, we have no idea what you're talking
19   about.  Please send us any discovery you say hasn't
20   been responded to.
21       So at that point it's clear that they haven't
22   even been working on Heslin and Lewis in the motions
23   for contempt, so we filed those motions.  We also at
24   that point sent them the Pozner discovery requests,
25   too, and say, these haven't been responded to.

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 10 of 380

30

1    On July 9th, three days later in oral
2  hearing, we all met together and at that time I went
3  through kind of a mini version of what I'm presenting
4  to you now; and we also reminded them of their
5  discovery problems in all three of those cases.  One of
6  the things you'll remember I specifically reminded them
7  of on the record is, because the defendants in Fontaine
8  had just filed a motion to un -- withdraw their deemed
9  admissions, I told you that I expected for this
10  hearing, when we were scheduling this hearing, that I
11  expected one of the things we would have to accommodate
12  was a motion to withdraw deemed admissions in the
13  Pozner case, because those hadn't been answered.  So I
14  was expecting that to happen in a matter of days after
15  the July 9th hearing.  Because if I heard that I would
16  get those denied and served up with a response.
17    Nothing happened.  We gave them a deadline
18  until July 16th, I believe, to respond, and they
19  didn't.  But we went ahead and gave them some more time
20  just to see if they would.  They didn't.  So on
21  July 27th we filed the Pozner motion for sanctions,
22  which goes and describes all of this.  They continued
23  to do nothing.
24    August opens, and there's a couple of
25  developments that happened in Lafferty in August that I

1  need to talk to you about.  We filed a supplemental
2  brief about this on August 10th.
3    So on August 6th, that Friday, there were two
4  orders entered.  First was a sanction order for
5  continuing failure to comply with discovery.  There's
6  still -- they're in the same place we are, they've been
7  remanded, now they're trying to go back and figure out,
8  try to see if any of the discovery is getting answered.
9  They have discovery orders there that they're not being
10  complied with.
11    The second order was that they disclosed
12  confidential information from a plaintiff's deposition.
13  This -- Your Honor, this was astonishing.  They started
14  a plaintiff's deposition which at the beginning of the
15  record was designated as attorneys eyes only,
16  confidential.  Then, during the actual deposition,
17  defendant's counsel, the local counsel Mr. Randazza has
18  working up there in Connecticut, wrote down the things
19  the plaintiff was saying in the deposition, put them in
20  a motion, and filed them publically during the
21  deposition itself.  Didn't even wait for its transcript
22  and filed that publically and disclosed that
23  information.
24    Now, you'll see from the court's orders on
25  this what's clearly about to happen in Lafferty, which

1  is that now that Lafferty, just like in this case, had
2  already threatened a default sanction if any of this
3  keeps up, that's clearly what's been happening now,
4  because the court's orders there takes very extreme
5  language that you can see what it's doing, is saying
6  that the plaintiff is now prejudiced from further
7  prosecuting their claim and that the plaintiff is also
8  prejudiced from taking additional depositions.
9    And the court also says that witnesses are
10  going to be brightly afraid to appear in this case or
11  give forthright testimony, believing that their
12  confidential information will be disclosed.  So all of
13  those things about how the plaintiff can't even
14  prosecute their case anymore, it's pretty obvious
15  what's going to happen in Lafferty.
16    I thought that that would actually be taken
17  care of by the time of this hearing, but their August
18  24th hearing was actually just a status conference
19  call.  They have a hearing set for September 24th.
20  There's actually another sanctions pending motion
21  regarding some analytics information that was produced
22  that is also extremely troubling.  So it's pretty clear
23  where we're heading in Lafferty.  They're heading for
24  the same place.
25    Now, we get into the second week of August,

1  defendants still haven't done anything.  And at this
2  point we get this very strange email where, you'll see
3  in hearing Exhibit 5, is that Mr. Reeves stated that
4  his client does not possess what production has been
5  provided to date.  He asked plaintiffs to, send me the
6  production you have, indeed, received to date.
7    So, I'm not sure how you would even
8  supplement your own discovery if you don't even know
9  what you've produced, but at this point it's now --
10  this, as you may remember, this is six days before the
11  originally-scheduled hearing of this matter, they were
12  asking me to send them the production because they
13  don't even have it.
14    A week later we still don't have anything.
15  And their counsel wrote again, asking if I would agree
16  to a protective order for the overdue documents.
17  Counsel said the documents were ready to produce but
18  were being withheld because defendants require such an
19  order to be entered.  And we told them, very straight
20  up, you cannot seek protection over discovery that is
21  already due.  Rule 192 requires you to make that motion
22  or seek protection within the time period for the
23  responses; and three-year-old discovery that you are
24  already under contempt for not producing, you cannot
25  have a protective order.

1  The next week we still don't have documents.
2  We get two emails that day, the first one very early in
3  the morning.  Counsel wrote to us asking for consent
4  for a motion for consolidated discovery plan.  We had
5  no interest in that.  We told them, look, the court
6  asked us to do a discovery plan, we just did it, we're
7  now days before the hearing.  We'll talk to you next
8  week after the hearing if you want to talk about this,
9  but we have no interest in doing a discovery plan right
10  now.
11        He said he was finalizing document production
12  which will only be produced in the Lewis matter, due to
13  the confidentiality of certain documents.  But counsel
14  stated, You will have these documents today.  We did
15  not get those documents.
16        THE COURT:  I'm sorry, Mr. Bankston, which of
17  the binders has these exhibits?
18        MR. BANKSTON:  Oh, I'm sorry, Your Honor.
19  So, these exhibits I'm talking about right now, hearing
20  exhibits, were uploaded to the Box last night after
21  defendants filed their responses.  So they're in --
22        THE COURT:  Oh, so they're not in one of the
23  binders you gave me.
24        MR. BANKSTON:  No, unfortunately not.  These
25  are in response to --

1        THE COURT:  Okay, that's fine, then.  I just
2  thought I would flip through as you were talking.
3  That's okay.
4        MR. BANKSTON:  Sure.  But they are in there
5  noted as plaintiff's hearing exhibits.
6        THE COURT:  Okay.
7        MR. BANKSTON:  So then later that day, or
8  that evening, we didn't get the documents.  Counsel
9  wrote us that night and said he will be moving for a
10  protective order in Heslin and Pozner, and that
11  defendants intended to withhold confidential documents.
12  And no documents were produced that day.
13        Then on August 26th, just a couple of days
14  ago, at 6:00 p.m. counsel provided about 6,000 pages of
15  supplemental production and, as promised, withheld
16  confidential documents from both Heslin and Pozner
17  cases, despite the fact that he has no ability to
18  object to those cases and he's under contempt in the
19  Heslin case.
20        Let's talk about what was produced in that
21  6,000 pages, because this is where it really starts to
22  get interesting.  The first thing that was produced was
23  nearly 2500 pages of transcripts of InfoWars' videos,
24  and there's a lot of reasons why this is very alarming.
25  First of all, it might be excusable, say, if there was

1  2500 pages of transcripts buried somewhere in
2  Mr. Jones's corporate files that were difficult to
3  locate and they're just now finding them now, something
4  like that.
5        The problem, Your Honor, is that these
6  transcripts were prepared by a court reporter.  These
7  were made -- a great proportion of these transcripts
8  were made in June and July of 2019.  They had them
9  commissioned to be made by a court reporter.  That was
10  months before they had told me in the Heslin case there
11  were no transcripts and they didn't produce any of
12  these transcripts.  But they had them the whole time,
13  prepared by a court reporter.
14        And what's shocking about that, of course, is
15  that, much later in that case, they then attempted to
16  argue to me that they didn't identify Mr. Heslin and
17  that my case was deficient because I didn't have
18  transcripts.  And the entire time they had actually
19  prepared them with a court reporter.
20        The other thing that's very disturbing about
21  these transcripts is there are more transcripts than
22  there are videos that I have been produced.  And right
23  here on the screen you'll see a list of dates.  They're
24  all titled differently, some of them have episode
25  titles, some of them just have dates.  All of these

1  dates are dates I don't have videos for.  And these are
2  videos that mention Sandy Hook.  And they're videos
3  that they obviously provided to a court reporter to
4  transcribe but they never provided to me.
5        This is the tip of the iceberg, too, because
6  I know about a ton of videos that aren't on this list.
7  But it is extremely disturbing to me that these
8  transcripts exist and these videos existed.  They were
9  never produced to me and, in fact, hidden and used to
10  try to get Mr. Heslin's case dismissed.
11        The next thing that they produced is, the
12  bulk of what they produced, is 2100 pages of Google
13  Analytics screen shots and Excel spreadsheets.  What
14  this is is a bunch of data about entry links, keywords,
15  search terms and exit pages for the InfoWars.com
16  website.  This is not responsive to anything in our
17  discovery requests that are issued in this motion.
18  None of the discovery that occurred prior to remand has
19  anything to do with this.
20        There is one request we issued after remand,
21  it's not related to this motion, that was, produce your
22  analytics or web traffic for every video identified in
23  plaintiff's petition.  And some of the videos in
24  plaintiff's petition have promotional pages on the
25  InfoWars website here, but ultimately this is kind of

1 not really responsive to anything.  I mean, there's --
2 buried in here is some responsive information I guess
3 to that, but not fully responsive.  But mostly this has
4 nothing to do with what we're talking about today, we
5 may end up talking about it later.
6        The next thing they gave us is there's this
7 gentleman -- well, not a gentleman --
8        THE COURT:  So, Mr. Bankston, is it your --
9 are you trying to say that they just included that to
10 clog your review?
11        MR. BANKSTON:  I don't want to make that
12 representation, Your Honor.  I certainly hope that's
13 not why.  I mean, him hoping that they thought it was
14 partially responsive to a post remand request.
15 That's -- I'm going to be charitable and say that
16 that's what I think.  Then again, Your Honor, you are
17 right that there is thousands of pages of things that
18 are not responsive to me.  I don't need to know exit
19 pages for InfoWars, things like that.  It is very
20 nonresponsive.
21        The next thing they produced to me, there's a
22 man named Wolfgang Halbig.  He's a conspiracy theorist
23 crank who has pursued these families for years, saying
24 Sandy Hook is fake.  He's been a guest on InfoWars
25 several times.  They produced me, you know, about 600

1 pages of strange emails and a transcript of a town
2 meeting he was at.  Which is responsive, that's fine.
3 I'm just saying it doesn't have anything to do with
4 what we are asking for in this motion.
5        They gave us 239 pages of InfoWars articles,
6 some high-quality scams, some from litigation.  All of
7 them were previously produced.  And then there were a
8 few other things they produced.  About 150 pages of
9 messages to the news tip email address.  We already
10 have thousands of those.  I haven't been able to check
11 yet but I'm pretty sure most of those are going to be
12 duplicates.  There are a few dozen pages from another
13 conspiracy theorist blog named Jim Fetzer, who they've
14 cited on occasion, a handful of emails.
15        There's a few dozen internal emails regarding
16 show scheduling and topics.  There's around a dozen
17 press inquiries to InfoWars about this lawsuit.  For
18 some reason there's affidavits from Jones and Dew in
19 March of 2019 regarding Lafferty requests.  And there's
20 David Jones's deposition transcript, which we don't
21 understand why that's in there, either.  That was an
22 exhibit to our sanctions motion, in fact.
23        And there were some interesting things in
24 there, Your Honor.  This is an email actually that was
25 produced in 2019, before remand.  And this is -- what

1 you're looking at is an email notification sent to Rob
2 Dew that he got a message on Twitter, a private
3 message, and this message is three days before they
4 defamed Mr. Heslin and it's talking about
5 Mr. Heslin's -- the interview he had with Megyn Kelly.
6 And we obviously can't see the full message because we
7 don't have access to that.
8        But in 2021 they produced this email, which
9 is another notification, and this one is a month later, and
10 this one is on the day of the second video that defamed
11 Mr. Heslin.  And as you can see from this message, this
12 person is engaging in a conversation with Rob, with
13 Mr. Dew, who is obviously responding and giving his
14 thoughts.  And they're talking more about these
15 relevant events.
16        So here is -- we know that there are messages
17 from Mr. Dew on Twitter giving their mental state of
18 mind at the exact moment that they defamed Mr. Heslin.
19 We don't have them because this is social media
20 evidence.  We only have these notifications to know
21 that they exist.
22        We got a couple of other surprises.  First we
23 got an email from Chief Editor Paul Watson discussing
24 the messaging application BaseCamp.  And we've never
25 heard of this messaging application in this case.  This

1 is one of the things they were supposed to identify.
2 And we don't know that anybody has ever accounted for
3 this or searched this or knows anything about it.
4        We also got an email from Roger Stone to Alex
5 Jones referencing Sandy Hook, and we had been told that
6 Alex Jones doesn't use email to communicate with
7 people.  We had been told that there were no Sandy Hook
8 conversations.  But now all of a sudden there is this
9 single email from Roger Stone about Sandy Hook.  I
10 mean, we think that's because they think that we'll
11 eventually get that email from Roger Stone.  We don't
12 know why we're just now getting one solitary email from
13 Alex Jones.
14        But most importantly let's talk about what we
15 don't have.  Discovery responses.  So first -- the very
16 first one I talked to you about, Mr. Heslin's case, we
17 don't have discovery responses on his defamation claim.
18 32 pages of written discovery, we -- none of that has
19 ever been answered.  And defendants apparently seem to
20 think they have answered it, which is strange to me,
21 but they have not answered that.  They haven't answered
22 any discovery in Pozner.  And then the discovery
23 responses that you have from Mr. Heslin's IIED claim
24 and Mrs. Lewis's claim have both been admitted that
25 they're patently insufficient, but there's never been

22-01023-tmd Doc#1-16 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 13 of 380

42

1 any supplemental discovery responses.

2     We still don't have the most basic

3 information about this case, even like requests for

4 disclosures which are already due, we don't have. We

5 don't know who has knowledge of relevant facts, what

6 the videos are, who was involved, any of it. Documents

7 have never been supplemented in any meaningful way.

8 We're going to talk -- really an important one about

9 this is the amount of emails they should have, and

10 we'll talk about that in just a minute.

11     Depositions. We were owed four different

12 deposition in Mr. Heslin' case that we have never

13 gotten. And one of those -- actually a couple of those

14 are pretty important because, for instance, we were

15 supposed to have the deposition of Owen Shroyer, and we

16 haven't had that in three years. And the problem with

17 that is Mr. Shroyer was just arrested on federal

18 indictment for insurrection activities on January 6th.

19 And so we're not sure if we're ever going to have an

20 opportunity to depose him.

21     And, in fact, in Mr. Shroyer's arrest

22 affidavit, in all the pictures of him breaking the law

23 where he's not supposed to be, Mr. Jones is standing

24 right next to him. So we have a strong suspicion that

25 Mr. Jones is about to face federal indictment, as well.

1 and arrest. But we're not sure if we're ever going to get

2 those depositions.

3     The videos have never been supplemented. And

4 as we see now they have videos that I don't have and

5 there are videos out there they should have; and if

6 they were to go through their own documents they would

7 know about tons of more videos and they have not done

8 any reasonable good faith effort to get us those. And

9 we don't have social media evidence and that's all gone

10 now, too. You've seen that talked in about our brief

11 quite a lot.

12     And who knows what else. This is really the

13 important part is that, when there was a promise made

14 to supplement this discovery, it was because discovery

15 had been so badly bumped for a year, waiting another

16 two years wasn't gonna do it. I mean, now we're

17 talking about having to go find people three years out

18 from where we would have normally done it, to see who

19 was involved in this case, who might still have

20 documents, do they still even have them. You know, the

21 quality of the evidence, of people's memories and the

22 physical evidence, all degrades. And we have now been

23 kept from discovering any of the basic facts of our

24 case for three years. We don't know what else is out

25 there.

43

1     For instance, thank gosh that Robert

2 Jacobson, their video editor at one point, decided to

3 approach us and say he felt bad about what happened and

4 needed to testify. We don't know who else is out

5 there. We don't know what other information.

6     Let's talk now, Your Honor, about these

7 responses. And I definitely agree with you that,

8 filing these responses last night, um, or actually I

9 believe they filed them while you were in trial this

10 last afternoon and I was in deposition, and then when

11 we got out we would have had to have been expected to

12 drop everything we were doing and read these last

13 night. And I know you didn't, but I did. I had my

14 wife take care of my kid and spent all night dealing

15 with these.

16     These responses further show defendant's

17 utter conscious disregard for these cases. They're

18 really quite amazing. So I want to talk a little bit

19 about what was said in these responses because you

20 haven't gotten a chance to read them yet. So this will

21 be your first look.

22     First there is the Pozner response I want to

23 talk about, and they just in flatly admit that they

24 have not responded to discovery, they do not dispute

25 that at all. They say, the undersigned had the

44

1 misunderstanding that plaintiff's discovery requests

2 had already been responded to. They say that when

3 plaintiffs's counsel emailed regarding the responses to

4 plaintiff's discovery requests, the undersigned failed

5 to recognize that these outstanding discovery requests

6 had not actually been responded to.

7     This is very strange, Your Honor. Because if

8 you look at their sole exhibit to their motion, to

9 their response, is their -- Exhibit 1 is the July 2nd

10 email. And you'll notice at the bottom of the email is

11 my first email on that one. And I lay out to them on

12 every case exactly what's wrong and what they need to

13 do. And in Pozner it's very simple. I told them,

14 regarding that case, your clients have not responded to

15 plaintiff's initial discovery requests. Those

16 responses were due on September 1st, 2018. When the

17 appeal was initiated the responses were almost two

18 weeks overdue. Upon remand you have made no efforts to

19 respond. Now, the requests are nearly a month and a

20 half overdue. And now they're three and a half months

21 overdue.

22     THE COURT: I'm just going to, because I

23 can't help it, point out that, while I appreciate you

24 taking the time and effort to lay out what they have

25 not responded to yet, that was not your obligation.

46

1  You filed the discovery and it is their obligation to
2  keep track of what they have responded or not.
3          MR. BANKSTON:  I would agree with you, Your
4  Honor.  I definitely agree.  But, this is an unusual
5  case and I sometimes have to do the lifting for both
6  sides in order for anything to make sense.  And so --
7          THE COURT:  Well, I appreciate it.  I just
8  wanted to be clear that that was not in any way your
9  obligation.
10         MR. BANKSTON:  Thank you, Your Honor.
11         But again, you know, Your Honor, it's
12 interesting, I'm right with you there, but one thing I
13 wanted to make sure and do was to put this out there as
14 clear as possible so that we could demonstrate their
15 absolute conscious disregard.  So.
16         And one place I did that again was the
17 July 9th oral hearing.  I reminded them that no
18 response has been served.  I told them they needed to
19 file a motion to undeem the admissions.  And they
20 didn't do that.
21         A whole month, the rest of that month passed,
22 and then on July 27th on the motion for sanctions all
23 of the above was summarized:  That they had never
24 responded to the discovery request; that all of this
25 had happened in oral hearing, that I reminded them to

Alicia DuBois, Texas CSR 5332 · 459th District Court, Travis County

46

1  file the motion to withdraw the admissions.  They
2  didn't do any of it.  None of -- they just ignored it.
3  A complete, conscious disregard.
4          August 30th they filed a defamation response
5  in Mr. Heslin's case.  Let's talk about that one really
6  quick.  This one is also astonishing, Your Honor.  They
7  say, the motion fails to provide any pointed
8  explanation as to what alleged discovery abuses by
9  defendants are ongoing which would warrant a contempt
10 finding beyond making the nebulous, conclusory claims
11 that defendants have failed to adhere to their
12 discovery obligations.
13         Defendants have never responded to the
14 August 31st discovery order.  That is 30 page of
15 written discovery.  That is four depositions that they
16 were supposed to give that they first told the court,
17 you don't have authority to make us do this.  Then they
18 launched an appeal with no jurisdiction.  Then they
19 came back, refused to respond, and the court held them
20 in contempt and fined them $25,000.
21         Then they appealed again, launched a
22 frivolous appeal for which they were sanctioned, came
23 back, and still have never responded to these discovery
24 requests.  And now they have the temerity to tell this
25 court that I'm being vexatious and that there is no way

Alicia DuBois, Texas CSR 5332 · 459th District Court, Travis County

47

1  they could possibly know what they would have to do to
2  comply with this order.  They've never responded.
3          On Heslin contempt Exhibit 10, on July 2nd
4  there's that email that I sent them that we just talked
5  about.  And they were reminded that they never
6  responded.  In very clear language I laid out this
7  exact situation, how in 2018 they chose not to respond;
8  in 2019, they again continued not to respond; and how
9  now, where are the responses, why have they not
10 responded.  Defendants now claim that, hey, how would
11 they ever know what to do.
12         It's frankly, Your Honor, the disregard to
13 respond to a second contempt motion in this way, to not
14 even know that you haven't answered the discovery, when
15 I have provided you that -- I sent them the -- the
16 order has it all set out.  And these are orders of the
17 court.  It's frankly just baffling to me, Your Honor.
18 Also, this is conscious disregard.
19         Let's talk about -- my screen popped up,
20 there we are.  All right.
21         Let's talk about Lewis really quick.  That
22 response they cared -- they say that the plaintiff
23 characterizes the Lewis production as largely
24 containing nonresponsive materials.  Plaintiff truly
25 makes no effort to provide evidentiary support for this

Alicia DuBois, Texas CSR 5332 · 459th District Court, Travis County

48

1  allegation.
2          If you look at Lewis contempt Exhibit 5, it
3  is a copy of our April 2nd, 2019, Lewis reply on motion
4  for sanctions.  You'll remember, that motion was filed
5  when they had produced nothing and then after the
6  motion was filed on the eve of the hearing they did
7  this document dump.  That reply goes into extreme
8  detail, sets out how the production was deficient and
9  nonresponsive, gives example documents.  It contains a
10 declaration from our expert, who was helping us review
11 it, who describes what an incredible mess it was.  So,
12 from our standpoint, yes, we absolutely have provided
13 support for that.
14         But more importantly, this is sort of just
15 relitigating things that were already decided in 2019.
16 Because they say, for instance, that the Lewis motion
17 does not show how defendants have failed to comply with
18 such orders and how, when, and by what means defendants
19 have abused the discovery process.  But they admitted
20 in that hearing that the Lewis production was
21 inadequate.  They agreed to pay attorneys fees.  They
22 totally understood what a mess they made of the
23 situation and promised to fix it.  And, in fact, right
24 after that their other attorney said that discovery
25 situation was a mess and a short time after that they

Alicia DuBois, Texas CSR 5332 · 459th District Court, Travis County

22-01023-tmd Doc#1-16 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 15 of 380

50

1   ended up producing child pornography.

2           We all know that the Lewis production is in

3   no way adequate, but they don't seem to want to

4   supplement their answers in any way.

5           Let's talk about the Heslin IIED response

6   now. They say that plaintiff's supplemental brief is

7   nothing more than a veiled attempt to have this court

8   reconsider that ruling and implement additional

9   sanctions when that situation has already been

10  addressed. And, Your Honor, I think we both know that

11  that is a flat misreading of the court's order and the

12  transcript, where this court definitely was in the

13  mindset that, if this discovery was not supplemented as

14  Mr. Jefferies promised, that additional sanctions would

15  be considered. And that he was expressly holding this

16  off to let you decide how to deal with all this

17  situation.

18          They talk about the document situation. I

19  want to address this really well, too. Because they

20  say that, what plaintiff conveniently omits from his

21  briefing is that the scope of discovery in Lafferty is

22  much wider and all-encompassing than the discovery at

23  issue in this case. For example, plaintiff sites to an

24  affidavit of David Jones filed in the Lafferty matter

25  that search terms in that case yielded approximately

51

1   InfoWars who emailed some of this. And he confirmed

2   for us in this case, David Jones's testimony, that

3   there should be 80,000 emails relating to Sandy Hook.

4           Now, they also talk about messaging systems

5   in their response. They say that Free Speech Systems

6   utilized Slack as a messaging system, but that system

7   has not been utilized since April 2016 and that data

8   has been preserved and to the undersigned's best

9   knowledge has been produced.

10          I don't know what this undersign's best

11  knowledge is, because he doesn't know that knowledge.

12  I mean, this is just -- he's copying and pasting

13  something from 2019 or something, I don't know. I

14  don't think anybody has everybody alleged this Slack

15  data has been preserved or produced. We have testimony

16  on our records showing -- in our motion showing that

17  Slack data has not been preserved and is not available

18  anymore. If it is available, we have notifications

19  from emails that show that Sandy Hook was discussed in

20  the Slack system, so there should be those messages.

21  Those haven't been produced.

22          The same deal with this Rocket.Chat makes the

23  exact same statement. And we don't have any

24  Rocket.Chat production. None. And we don't have any

25  indication that that's been preserved. You'll also

52

1   80,000 emails that were potentially responsive to the

2   Lafferty plaintiff's discovery request, but in no way

3   does that support the idea that those emails are

4   responsive to this plaintiff's limited discovery

5   request.

6           Your Honor, if you'll actually look at that

7   affidavit that's in our response, what Mr. Jones said

8   is that searching for the terms "Sandy Hook" in emails

9   returned nearly 80,000 emails and that they expected

10  similar volumes for other search terms in the Lafferty

11  plaintiff's request.

12          We've obviously requested all emails with

13  Sandy Hook in them. We have about 11,000 total

14  documents in this case and I would just give you a

15  rough estimate of about half of them contain the term

16  "Sandy Hook" in them. So we're not anywhere close to

17  that universe. And most of those emails we have, a

18  good portion of it, Your Honor, is the same 15 people

19  who are writing InfoWars unsolicited, and they are

20  extremely mentally ill and writing 500-page emails to

21  InfoWars on a weekly basis. And it's these same ten

22  people over and over again. So what we're seeing here

23  is not in any way a search of this.

24          We also took the deposition of Michael

25  Zimmerman, who is like a 23-year old IT employee at

53

1   notice there's a gap between 2016 and 2018. They don't

2   say what messaging system they were using at that

3   point, but we know that that exists, too, and none of

4   this has been accounted for.

5           This stuff about the undersign's best

6   knowledge, you're going to see this a lot in this case.

7   This is because Mr. Reeves is not getting any

8   cooperation from his client. So the undersign's best

9   knowledge is just a guess on his part.

10          MR. REEVES: Your Honor, I would object to

11  that because he doesn't know what I'm talking about. I

12  mean, I can understand that he's frustrated here, but

13  he doesn't need to be opining on what I'm saying. I

14  can certainly discuss it with you, but I object to that

15  statement there.

16          THE COURT: Well, you can object to it but I

17  can also read and make a conclusion about what that

18  statement means.

19          MR. REEVES: I understand, Your Honor. I'm

20  just -- what I --

21          THE COURT: What it means is you don't know.

22  You don't have any idea. Because if you knew you would

23  say so.

24          Go ahead, Mr. Bankston.

25          MR. BANKSTON: Okay. The other thing that

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 16 of 380

54

1 the IIED response from them last night addresses is
2 videos.  It says, while plaintiff's briefing addresses
3 a couple of videos he says have not been produced by
4 defendants, plaintiff notably does not provide any
5 information to the court as how such videos are in any
6 way relevant or connected to his IIED claims in this
7 case.
8         And, Your Honor, this is so ridiculous.
9 Because if a video is about Sandy Hook, it's obviously
10 relevant.  I mean, we're alleging a continuing course
11 of conduct here.  The other thing that's ridiculous
12 about this is, when you're already under contempt for
13 not producing it, the idea that it's not relevant is
14 not a great argument at this point.  This is obviously
15 directly connected to my case.
16         It's also way more than a couple of videos.
17 We identified about six in that brief right there,
18 we've given them a list with others they haven't
19 produced, and we know there's ones they have they
20 haven't given us.  No effort has ever been made to
21 answer even the most basic interrogatory about what
22 videos exist.
23         Then there's social media evidence.  Their
24 excuse here, you saw in our motion how they had every
25 opportunity in the world to preserve this, they knew

55

1 that it was about to be deleted, they got every thread
2 over a course of months.  And they said it's our
3 problem because we haven't given third party subpoenas
4 to any of the social media companies.  And the problem
5 here is during the first period of this case up until
6 this remand I was under discovery stays where I could
7 only have the expedited discovery against the
8 defendants that was granted by the court.  I couldn't
9 just go out and do discovery.
10         But more importantly, if they have a superior
11 right of access to this, these are their accounts and
12 they can get them much easier from FaceBook or Twitter
13 than I can.  This would be like if I was saying, well,
14 you know, I have medical records but I'm not going to
15 try to get them for you, you gotta go get them.  This
16 is -- in this situation I have no reason whatsoever
17 that Facebook, Twitter, or YouTube is going to comply
18 with me in any way.  But they have to make a reasonable
19 effort to get things that are within their custody and
20 control, and they haven't tried to do that at all.
21         The other thing that is said in this response
22 is that the undersigned counsel was not involved in
23 those disputes but certainly has reviewed the record
24 and understands where the issues were alleged to exist
25 and what has been done to try to remedy those discovery

55

1 disputes.  The undersigned has been personally
2 reviewing over 75,000 documents gathered during this
3 litigation.
4         Your Honor, respectfully, from what you've
5 seen today, this not true.  Mr. Reeves does not
6 understand where the issues were alleged to have
7 existed.  He believes he's responded to discovery he's
8 never even responded to.  Which tells you something,
9 Your Honor, which tells you that he has never checked
10 to see in holding his hands the discovery responses
11 that have been issued in this case.
12         In other words, he is telling you in a
13 contempt motion that there is wild, spurious
14 accusations against them that should never be granted
15 and they're in compliance because they have responded,
16 and he told you that without ever laying his hands on
17 the discovery responses to see if they were compliant.
18 Because if he had tried he would realize there are
19 none.  And so to then say he understands what issues
20 are alleged to exist, no, he doesn't.  And they have
21 not tried to remedy those discovery disputes.  They
22 tried to do some eleventh-hour figgely before they
23 produced us 6,000 papers of mostly useless documents.
24         He also says the undersigned has been
25 reviewing all those 75,000 pages?  They surely didn't

56

1 even have those until at least August 11th, when they
2 told us they didn't have them and they wanted us to
3 give them to them.  I'm not even sure I totally believe
4 right now that they do have them.  I think maybe they
5 kind of got embarrassed and said, no, no, okay, we're
6 okay, don't give us the documents.
7         So the idea that since August 11th, with the
8 other briefing the defendants have done, with the other
9 briefing I know Mr. Reeves has done in another court
10 with me, there's no way since August 11th you've
11 reviewed 75,000 pages of documents.  I did that, I
12 remembered doing that.  I couldn't have done it in that
13 period of time even with nothing else going on.
14         There's also a response made about the
15 pattern of conduct in this case.  Defendants say that
16 none of the cases cited by plaintiff, the vast majority
17 of which are non Texas cases, support the position that
18 the court can consider alleged discovery violations in
19 entirely separate matters.  I mean, that's just not
20 true.  First of all, look at page 42, that's *Caron v.*
21 *Smaby*, and that's where you had conduct, and this is
22 from my home district, where it was in one court of the
23 district in Harris County but there was also discovery
24 abuse previously in another district court of that
25 county.  We'll talk about some other cases like that.

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 17 of 380

58

1  In fact, that's a good place to transition right now to
2  talk about the legal principles.
3          THE COURT:  Let's take a little break, then.
4          MR. BANKSTON:  That's great, that's great,
5  Your Honor.
6          THE COURT:  Yeah.  So let's take like a
7  15-minute break.  We'll come back at 10:30.  My
8  assistant will put up a break sign, but if you don't
9  want whatever you're doing on break visible or audible
10 on YouTube, you need to turn your camera and your sound
11 off.  Okay?
12         MR. BANKSTON:  All right, Your Honor.
13         THE COURT:  See you at 10:30.
14         MR. BANKSTON:  Okay.
15             (Brief recess.)
16         THE COURT:  All right.  Welcome back.
17         Mr. Bankston.  You can pick back up.
18         MR. BANKSTON:  All right.  I think I only
19 have like ten or fifteen more minutes with you,
20 hopefully.
21         THE COURT:  All right.
22         MR. BANKSTON:  Okay.  Y'all got that in front
23 of you?
24         THE COURT:  But it's not the -- it's the
25 wrong screen again.

1          And I do feel like that was done in a
2  calculated way so that there would be no time to reply
3  to that, there would be no time to look at that.
4  Luckily, I did have time last night to throw everything
5  to the sidelines and dive into those.  But we actually
6  believe that their failure to address these motions
7  that have been pending for quite some time and are
8  quite serious and the gravity of them, their failure to
9  really respond to those, to us, speaks to the conscious
10 disregard.
11         THE COURT:  I agree with you and I want to
12 make it clear that in all cases in front of me,
13 Mr. Reeves, whether they involve Alex Jones or another
14 party, from now on, when you are the attorney, I'm
15 going to set deadlines for when everything is due.  And
16 particularly in these cases.  And if they're late, I'm
17 not going to consider them.
18         MR. REEVES:  And I understand.  And there was
19 no gamesmanship, Your Honor, there was simply --
20         THE COURT:  Hard to believe.  It's hard to
21 believe.
22         MR. REEVES:  I understand that, Your Honor.
23 But I can tell you for me personally there was no
24 gamesmanship for me.  But I understand what you're
25 going to do and I can appreciate that and I'll make

1          MR. BANKSTON:  I'll get that taken care of.
2  Screen number two.  There we go.
3          All right.  Are we looking good now?
4          THE COURT:  Yes.
5          MR. BANKSTON:  Okay.  So, we just wrapped up
6  talking about the responses that were filed yesterday.
7  I did also want to add on that, um, to kind of follow
8  back up on your comments about that, you know, staff
9  attorney Mr. Denton had sent us out a chart of
10 everything for this hearing to get us ready and had
11 asked us, sort of as a convenience, you know, when we
12 were scheduled on August 17th, you know, can you please
13 get me copies, paper copies, of all relevant pleadings
14 by the 6th.
15         That following week defendants had contacted
16 the court and said, hey, we didn't know that
17 necessarily applied to us.  We're going to file our
18 response tomorrow, on the 10th.  And at that time
19 Mr. Denton said, you know, look, hey, this is just to
20 try to be a guideline, there's no court order here
21 setting a deadline.  But the judge would like you to
22 get your pleadings in as soon as you can so she has
23 plenty of time to review them.  And that was back on
24 the 10th.  And they went ahead and just sat on those
25 until the night before the hearing.

1  sure that we meet whatever deadlines the court sets.
2          THE COURT:  Which I shouldn't have to do, and
3  I don't in almost any case.
4          All right.
5          MR. BANKSTON:  Let's move on to legal
6  principles underlying this motion.  And as you know,
7  these are -- it's interesting, because they're all
8  essentially motions under 215, right, we're talking
9  about discovery abuse and the powers available to you
10 when a party is engaged in this kind of years of
11 discovery abuse.
12         The first principle that we talked about --
13 first principle we talked about in our motion on
14 page 40 is that persistent discovery abuse justifies
15 presumption that a defense lacks merit.  And when the
16 court can reach a presumption that the defense lacks
17 merit, default sanctions can be granted.  The court in
18 doing so must only consider, and not test, lesser
19 sanctions.
20         Obviously in this case -- in these cases the
21 court has tested all sorts of sanctions.  It's
22 interesting, though, that InfoWars' argument is
23 essentially going to be, because we have only been
24 sanctioned once in each case, or because there's only
25 been discovery violations once each case, you can't

consider what's happened in the past, you've just got
to keep on giving us the lower sanction each and every
time we do something in your court.

This isn't the law, though.  Because, as we
point out on page 41, the trial court may consider
action taken in another court when that action is
relevant to the case pending before the trial court.
And in here it's not even really another court really
so much, because so much of this already happened in
your court.  Defendants want to say in their response
that this sort of law only applies when the same
lawsuit has been transferred between courts but you
can't consider anything else.  And that's just flatly
not true.

Not only have we talked about the case of
*Caron* earlier, but I actually think *Zenergy* is maybe
the most important case for you to look at in this
dispute.  We put into the Box and highlighted it
for you.  *Zenergy* is so factually similar here but far
less egregious.  *Zenergy* was a corporate dispute where
both parties sued each other and in that case the
defendants did not provide discovery.  They -- and it
wasn't nearly as far ranging as ours, but there was
certain information that defendants did not provide.

They had also moved for summary judgment at

the same time, which is dispositive in much the same
way a TCPA motion is.  It was discovered that they had
hid discovery, didn't fully comply, so there was a
sanctions hearing held.

And then at that sanctions hearing the court
didn't take action, much like in this case.  The court
said, well, there's going to be a stay of proceedings
for a little while in this case, so we're going to hold
off on making a ruling now.  The stay went for a year
and then, upon a year, when they came back from the
stay, the judge noted, well, Zenergy hasn't done
anything to respond to these requests, even though
they've known for a year that default sanctions could
be imminent and they haven't done anything to get that
information in front of the court.

There had never been any prior discovery
abuse in *Zenergy*.  But what happened is that the judge
in that case noted that two of the three same
defendants had committed discovery abuse in a previous
case.  It's unclear from *Zenergy* whether that was even
a state case, that might have been a federal case.  But
it was a previous similar lawsuit involving Zenergy in
which they had conducted -- had been sanctioned for
similar discovery abuse.

The judge in that case said, well,

considering this prior conduct, I can assume that my
sanctions here are not going to be effective.  So
that's why a default was granted.

When it was reviewed by the Corpus Christi
court they said he was entirely proper to do that
because he could rely on the fact that they had been
sanctioned by the same conduct before; and that they
had repeated it in front of this next judge, that judge
did not have any confidence that his sanctions are
going to change their behavior.  So in *Zenergy*, under
much less worse facts, a default was granted.

There's also, we also need to talk a little
bit about, the defendant's bad faith.  Defendants are
correct that simply bad faith or things you do outside
the litigation are not an independent basis for
sanctions under 215.  But once the court determines
that 215 sanctions are appropriate and it starts to
consider whether -- what kind of sanctions would be
effective, it is absolutely allowed to consider
defendant's bad faith approach to the litigation in
general.

And one of those first things you can talk
about is, I know the video that we played earlier
didn't really have volume to it so I may need to play
that at the very end of this presentation again, but

you would see from that video Jones has created a
hostile atmosphere, and it will discourage people from
participating in litigation.  He has shown an abject
disrespect for this proceedings and the safety of
everybody involved.

As you may know from the briefing, right
after that video, the judge in Connecticut started
getting death threats that the F.B.I. warned her about.
The plaintiff's counsel did up there, they actually got
police to guard their office.  My wife got a message on
her phone after Mr. Jones called me a gremlin and a
goblin who was terrorizing InfoWars' audience and he
asked them to stand up.  He does this.  He has no
problem creating that atmosphere.

He also is obsessed with this idea that there
is a conspiracy that has made these trials show trials
and that there are powerful forces in the democratic
party, headed by Hillary Clinton, who apparently
control us, who are causing him to become railroaded.

He has called Judge Jenkins a hoodwinked
mainline liberal who is being manipulated.  He has
openly called these lawsuits show trials.  And there's
a really good understanding, when you see his conduct
of that nature, why he's not participating in discovery
and why these sanctions are not effective.

The defendant's conduct here was egregious, and what I want to really emphasize is how the courts frequently default parties for so much less than this. If we look, for instance, at *Alma Investments*, this was a lawsuit about some condo developments in South Padre Island, multimillion dollar lawsuits, where the companies were suing each other.

In that case there were two failures to appear at deposition and a failure to deposit funds in the registry. They said the court twice ordered the Pakidehs to appear for depositions but both orders were not followed. Additionally, the trial court ordered Alma, the company, to deposit $20,000 in the registry of the court to pay an auditor. That's all that happened and those parties lost their ability to defend their claim.

And I think you would have to look at that situation and think about the Pakidehs and think, if they were denied the ability to put on their case but Mr. Jones in what he did is going to put on his case? And I think you would have to understand that the Pakidehs would think that was very unfair.

The same thing would be true in *Salomon v. Lesay*. There there were just three failures to appear at deposition, and one of them occurred after a

monetary sanction of a thousand dollars. Which is far less egregious us than what's happened here, with numerous depositions missed, numerous monetary sanctions, numerous cases where they are not responding to discovery and where they're across the board obstructing every other discovery.

Here again you would look at somebody like Michel Salomon and what would he think to know that he was kicked out of his case but Mr. Jones is going to keep going in his. I think that would be the reaction basically across the state is that if the people were to see what has happened here and then see Mr. Jones continue, they're -- the reaction would be Alex Jones got away with what? And that has really been the jaw-dropping reaction of everybody who has seen this case.

The other thing I want to remind the court is that discovery affects all aspects of these cases. And I've put down here the three elements that we're going to have to prove, for instance, in our defamation cases. And the reason is is because, one of the things the court might be inclined to do in a situation like this, is to pursue a lesser sanction of saying, I'm going to make an evidentiary finding on a certain issue in the case that discovery affected. Something less

than a default.

Well, here I want to go over these elements, right, and how every single one of them has been blocked by discovery.

First there is published. And we know that there's a dispute over who published what, as you remember from our last hearings, whether InfoWars, LLC was involved, from the discovery there, and we've been just absolutely obstructed discovery on InfoWars, LLC.

We have to prove it's a false statement. And obviously whether the statements are false can be proven with discovery from the defendant, because there's a good chance that they're going to give us discovery that they knew it was false.

We also need to prove it was a statement of fact and not an opinion. But if defendants are relying on the idea that they were simply analyzing certain disclosed facts and giving their opinion based on those disclosed facts, if we discover evidence that they knew that those facts were false, then they are not entitled to express that opinion and they do not get that defense.

Furthermore, prior statements of the defendant may, in fact, change the meaning of the actual statements in the challenge. So for a lot of

reasons discovery is important to opinion cases.

Then we also have whether it's about the plaintiff. Image with me that InfoWars has a document saying, ha, ha, ha, this new broadcast we're going to do is really going to mess over Lenny Pozner's life. It would be very difficult for them to come back and say then, nobody can possibly interpret that video as being about Lenny Pozner. That impeachment evidence could be critical.

The idea that the statement caused the plaintiff reputational harm is my next element. And honestly, that one is not really important here because these are per se cases. So there's the presumption that the plaintiff is caused harm. But even still, there's clearly we can get evidence of reputational harm from the defendant's discovery.

And finally, that defendants acted with the required fault. And this one here is pretty obvious to me, too, because everything under the sun that they could produce to us could possibly go to their fault.

So those, if all of those are the issues, if any of those are left intact, we are actually still suffering prejudice from this discovery in the fact that it's been absolutely botched and will never be fixed,

1  The last thing that defendant's counsel
2  leaves you with is his plea, right?  He says to you
3  this plea, that the undersigned requests that the court
4  grant him an opportunity to prove that he has control
5  of this discovery situation.  Well, with respect, he
6  has already had that opportunity and he has thoroughly
7  proven that he does not have control of this discovery
8  situation.  Doesn't even understand the discovery
9  situation, much less have control over it.
10  But what's really interesting to me is that
11  this is the exact same plea given to this court to
12  avoid default sanctions in 2019.  This is exactly the
13  same thing that Mr. Jefferies said to this court and
14  how much time he had put in to getting an understanding
15  of what's going on and they were going to get this
16  fixed.  The exact same excuse.  And what's even more
17  ironic is that was also the same excuse used by the
18  lawyer before him.  And the lawyer before him.  And the
19  lawyer before him.
20  It just keeps going, Your Honor.  It's like
21  that movie "Groundhog's Day" with Bill Murray.  And I
22  remember him saying this line:  One day I went to
23  Mexico and had a great vacation down there.  I spent a
24  whole day on the beach, drank pina coladas.  Why
25  couldn't I have that day over and over and over again.

1  And we really have been stuck in the same situation.
2  So to hear this defense counsel make this
3  exact same plea, after having just completely trashed
4  the entire summer, remember that defendant's counsel
5  came to this court and negotiated and agreed for a
6  discovery plan that has me designating experts in about
7  14 days, and I don't have any discovery to do that.
8  That's not going to stop me, I'm still going to
9  designate my experts, because we realize we've gotten
10  all the discovery we're ever going to get.  There's
11  never ever going to be a fix to this problem.
12  There is a reason, you might wonder and it
13  kind of starts to make sense, why every single counsel
14  comes to you and makes the same plea and why no counsel
15  can ever get control of the discovery situation.  It's
16  because of this man.  We've told you this in our brief.
17  We set this very clearly.  There's a reason why no
18  sanctions have ever been effective at changing this
19  man's behavior.
20  He will continue to introduce chaos, defiance
21  and danger into this lawsuit, because it is built
22  straight into his DNA.  And it has been -- one thing that has
23  remained consistent is Mr. Jones' complete disregard
24  for these proceedings and, in fact, his open attacks on

1  these proceedings.
2  And it's really for that reason, Your Honor,
3  is that we now have given you proposed orders on all
4  the cases, and the discovery abuse has gotten so bad
5  these last three months, the conscious disregard is so
6  shocking, that we are asking for a default judgment in
7  all four cases.  Because in every single case you have
8  a long history of discovery abuse you can rely on to
9  show you that anything you try to do right now to
10  compel compliance is not going to work.
11  Your Honor, so that is what we are
12  requesting.  We have added proposed orders to the Box.
13  There is one other thing I would like to do,
14  I've been let known that during the playing of this
15  first video that we're looking at a screen shot right
16  now, Your Honor, that the sound wasn't working so it
17  wasn't able to be heard.  It's a two-minute video and I
18  do think it's important for the court to hear what is
19  heard, so if it's okay with you I would like to close
20  by playing that two-minute video.
21  THE COURT:  All right.  I heard most of it
22  but that's okay, you can play it again.
23  MR. BANKSTON:  Okay.  I just figure for two
24  minutes it's probably not the worst way to end.
25  All right, Your Honor, here we go.

1  THE COURT:  And this is Exhibit 1.
2  MR. BANKSTON:  Correct, Plaintiff's Hearing
3  Exhibit 1.  And this is the broadcast that was made
4  after the discovery of child pornography in Lafferty.
5  Again for the audience who is watching on the
6  live stream, this is extremely not safe for work, there
7  is a lot of profanity, so I do want to give you that
8  warning before I start.
9  (Videotape played off the record.)
10  MR. BANKSTON:  All right, Your Honor, as
11  closing let me just say the person you saw there at the
12  end of that video was Norman Pattis.  He's a local
13  counsel for Mr. Jones in Connecticut.  And the pattern
14  that you see in this case, and I see it over and over
15  and over, is that they select some local counsel, who
16  comes in and takes these, falls on the sword, and it's
17  always a new local counsel that they throw under the
18  bus every single time.
19  And really what the elephant in the room is
20  is the elephant that's not in the room right now, which
21  is Mr. Randazza, and that he has now told you in his
22  briefing that he has actually really been InfoWars'
23  corporate counsel, coordinating the litigation from all
24  over.  And that seems to be accurate.  And you have a
25  party who is non-appearing, a person who is

74

1   non-appearing attorney, who's acting as corporate
2   counsel. He's general counsel. He's essentially the
3   party. He is their corporate lawyer.
4       And you have these attorneys who come in who
5   are put in these awkward positions, like you can see
6   Mr. Pattis really found himself in an awkward position
7   there. And each of these attorneys will then come and
8   the next local counsel will blame it on the local
9   counsel before. And so here we have Mr. Reeves again,
10  who is the latest series in that, and I'm expecting,
11  just like Mr. Jefferies, he will blame the one before
12  him. But what you'll see is the consistent behavior of
13  party itself. And that is the reason why we think
14  anything more at this point just becomes ridiculous.
15      So what we're asking is the default judgment
16  and to let a trial proceed forward just on whether
17  Jones' conduct merits punitive damages; what the
18  compensatory damages are; and, if there is a punitive
19  damages finding, what the punitive damages should be.
20  And that's what we're asking for today, Your Honor.
21      THE COURT: So, I printed out your proposed
22  orders. I haven't read them yet because I didn't know
23  they were there until this morning.
24      My concern is you need this discovery even
25  for a damages trial. So, are you asking me to default

1   liability and order the discovery still be responded to
2   again?
3       MR. BANKSTON: It's interesting. I do think
4   you're right, that there will need to be some damages
5   discovery from therein that's directed towards them. I
6   don't honestly think it's ever -- I'm going to get
7   much. And I don't -- let me put it this way, I don't
8   think the discovery that was, um, issued under the
9   court's prior discovery orders, which was TCPA-directed
10  discovery, all that goes to my burdens. So I don't
11  think we've served any discovery yet that would be
12  subject to these orders that would be damage related.
13      Certainly if we go forward and there's
14  something going on with damages that we need to bring
15  to the court, you know, for -- we could have that. But
16  I'm just kind of hoping that we can go forward and at
17  least put on a damages trial, even if they don't
18  produce us anything.
19      THE COURT: Right. I mean you can, but my
20  question is just, if you're trying to get punitive
21  damages, you probably do need more discovery.
22      MR. BANKSTON: I think that's true.
23      Well, I'm going to tell you, Your Honor, I
24  think I have enough to prove punitive damages right
25  now. I do.

75

1       THE COURT: Okay. You might want more, let's
2   put it that way.
3       MR. BANKSTON: I do. Exactly. Correct, Your
4   Honor.
5       THE COURT: Okay. But your position is
6   you'll file that later.
7       MR. BANKSTON: Right.
8       Right, if we need -- if, for instance, after
9   this hearing and I have more of an understanding of
10  what the scope of discovery is like going forward, then
11  we'll serve new discovery requests and depositions that
12  we may need. I think that would be very limited.
13      THE COURT: Okay. All right. Thank you.
14  Mr. Reeves.
15      MR. REEVES: Okay. Thank you, Your Honor.
16      You know, Mr. Bankston, he kind of merged
17  everything together and I feel like, for at least my
18  purposes, the best way to approach this is individually
19  with each motion so that we can make sure that we have,
20  you know, a clear understanding of each particular
21  motion, what is requested here.
22      The first thing I want to say is that, you
23  know, the statement at the very end where he pulled out
24  where I asked you to give me basically a chance to deal
25  with the discovery issue is from a brief in Pozner,

76

1   whereas my response states, frankly, when the -- he
2   sent me about a page-long email and when I was
3   reviewing this I was in the midst of preparing for
4   trial with Judge Meachum and everything, and my,
5   frankly, misunderstanding was that every discovery
6   request issue was in the same posture. As far as
7   dealing with TCPA discovery, frankly, you know what,
8   I'm falling on my sword because this is my lack of
9   understanding. I'm not blaming any prior counsel --
10      THE COURT: I mean, I've been on this case
11  for a few months and you're now the second InfoWars
12  lawyer to come in and claim responsibility for
13  discovery problems. I've only been on the case a few
14  months.
15      MR. REEVES: And I understand that.
16      THE COURT: And I just, before you get too
17  far into this argument, you can make it, but know, I
18  know you know, and I want to make it clear that I know,
19  that you're responsible for whatever any lawyer who
20  came before you did. You had a choice about accepting
21  this representation. You accepted it. Your schedule
22  and the attorneys before you are not my problem.
23      MR. REEVES: And I understand that, Your
24  Honor. And I am not blaming, I'm putting it in
25  context.

22-01023-tmd Doc#1-16 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 22 of 380

78

1  Regardless of what anyone has said in the
2  past I have no desire to lay any blame on prior
3  counsel. I have appeared here, I'm lead counsel here.
4  I know Mr. Bankston spoke about Mr. Randazza because of
5  the fact this pro hac vice is pending and has not been
6  approved by this court, Mr. Randazza frankly has not
7  been involved in these cases because we want to keep --
8  I, personally, want to ensure that we are not having
9  someone practice in these cases where they're not
10  admitted to practice.
11  So I recognize Mr. Bankston has said that,
12  but I'm letting the court know I am the one dealing
13  with these things. I am the one that's been brought in
14  to try to get everything under control here
15  discovery-wise.
16  The first, you know, the biggest motion --
17  first of all, plaintiff has now said that they want a
18  default in all four cases. You know, that's not
19  something that's been requested in anything except the
20  one Heslin IIED claim, so I would say that that's not
21  requested relief that's on the board here.
22  But regarding the, you know, the Heslin, the
23  Lewis, those two cases, um, the biggest issues that I
24  want to point out to the court context-wise about the
25  discovery that's at issue, is that every case that

Alicia DuBois, Texas CSR 5332 - 459th District Court, Travis County

1  plaintiff has cited for support of their motion for
2  their default judgment sanctions has to deal with
3  discovery that is issued in the pendency of the regular
4  litigation merits-based discovery. Discovery that's at
5  issue here in those cases is only the specific and
6  limited discovery that was allowed by Judge Jenkins
7  that was relevant to the TCPA motion to dismiss. It
8  wasn't merits-based discovery.
9  You know, obviously there is some overlap
10  between what would be merits-based versus issues
11  dealing with the TCPA motion, but that's not the
12  full -- that discovery doesn't have anything to do with
13  the underlying merits of the claims. And so that's why
14  we believe that it's -- it would be, you know, it would
15  be extremely excessive to enter a default judgment on
16  discovery that's only supposed to be limited and
17  relevant to the motion to dismiss under the TCPA.
18  Secondly, related to the discovery, um, I am
19  personally reviewing 75,000 different documents to
20  determine what's responsive. Mr. Bankston has received
21  6,000 of those. There's still more for me to go. I'm
22  going as fast as I humanly possibly can. And I
23  recognize he's entitled to this discovery. Um, and,
24  frankly, the only other thing I want to point out about
25  the discovery and the status of it was, when I sent him

Alicia DuBois, Texas CSR 5332 - 459th District Court, Travis County

1  an email asking him to tell me what had been produced,
2  I had incorrectly done the search on this database to
3  determine what had been produced. And what he didn't
4  tell you was, ten minutes after I sent him that email,
5  I sent him one back saying, I have it, I'm sorry, thank
6  you for being accommodating to me but I have it.
7  So I know what's been produced. I know -- so
8  I know what's been produced, what's out there.
9  But as far as the Heslin motion for default
10  judgment, there's simply no basis legally, there's no
11  caselaw cited, there's no caselaw that I could find
12  that talks about granting a merits-based sanction based
13  solely on limited discovery allowed under the TCPA.
14  It's only supposed to be relevant to the motion itself.
15  And so, you know, that would be the main argument
16  against why there would be sanctions involved here.
17  In addition, as, you know, counsel
18  recognized, I've already worked to supplement
19  production, I'm continuing to work with that. I've
20  been working with my client to get -- these
21  interrogatories are not simple. He says that they ask
22  for simple information. They are not simple. InfoWars
23  is a, you know, they have a lot of employees, they have
24  a lot of different people involved. It requires me to
25  get a lot of different information that I'm gathering

Alicia DuBois, Texas CSR 5332 - 459th District Court, Travis County

1  to fully respond to these because, as an officer of the
2  court, I recognize that there are objections that have
3  been waived due to not responding to things like that,
4  so I need to give him full and complete answers. And
5  so, you know, that's what I am trying to do.
6  And, you know, Mr. Bankston, he likes to file
7  his motions for sanctions, and I understand he feels
8  the need to aggressively pursue his case; but, you
9  know, there's just been a lot of things stated today
10  that are just incorrect or flat-out misrepresentations
11  to the court. You know, first of all, the video that
12  Mr. Bankston just played, you know, I don't know if you
13  noticed but that video was spliced together from
14  different clips.
15  The stuff about the million dollars related
16  to this child porn thing, that was when Mr. Jones was
17  talking about figuring out -- trying to find out who
18  had, you know, potentially done this or put this in
19  here. There was no accusation from them that the
20  plaintiff's counsel had done it. Those are just kind
21  of meshed together.
22  You know, and there's other things about --
23  Mr. Bankston mentioned missed depositions. I don't
24  have any understanding of what depositions have been
25  missed. I recognize that there have been some

Alicia DuBois, Texas CSR 5332 - 459th District Court, Travis County

1  corporate rep. depositions for the TCPA motion to
2  dismiss that Mr. Bankston was unhappy about the
3  answers, and he brought those to Judge Jenkins's
4  attention and Judge Jenkins entered an order of
5  contempt and a $500 fine on that.
6      But there's been no missed depositions.  I
7  haven't received any requests for additional
8  depositions.  There's been no pushback from me on him
9  saying he's not entitled to depositions.  So I don't
10 know where that comes from.
11      You know, and the last thing about this
12 filing that occurred in the midst of a deposition,
13 Mr. Pattis, who filed that thing in Connecticut, first
14 of all, he didn't identify the plaintiff, he didn't
15 actually provide quotes to transcription of the
16 statements, but he wasn't even in the deposition, that
17 was kind of his thing that he did, he wasn't even the
18 one doing that.
19      But more importantly, I had nothing to do --
20      THE COURT:  You just said he wasn't -- that
21 was his thing that he did, he didn't even do that.
22 That's literally what just came out of your mouth.
23      MR. REEVES:  No, I'm sorry, I didn't mean
24 that.
25      He -- he did not -- Mr. Pattis was not taking

1  the deposition.  He did not file the motion as he was
2  taking the deposition.  Another lawyer for the
3  defendants was taking the deposition and he just, in
4  the midst of this, filed it.  And that was, you know.
5  But he didn't actually do anything as far as
6  identifying the plaintiff or anything like that.
7      But really overall, the overarching point
8  here is that there's nothing in Connecticut that has
9  anything to do with these cases as far as the discovery
10 is concerned.  I know Mr. Bankston wants to draw
11 corollaries between them, but the discovery stuff that
12 is at issue in Connecticut is far broader, far more
13 encompassing than the discovery issue here.  And so
14 it's not a one-to-one correlation to what's there
15 versus what should be there.
16      Mr. Bankston also fails to mention that
17 there's also a Virginia case where there has been no
18 discovery issues because, frankly, Mr. Randazza is part
19 of that case now and discovery has proceeded orderly
20 there.  There's no issues there.  There's been some
21 slight disagreements, but there's been none of this --
22 you know, Connecticut and here, there's a lot of puff
23 up over discovery, lots of motions for sanctions and
24 lots of issues there, but that's, you know.
25      Again, I can't -- I'm here to live in the

1  present and to take what's here and to move forward and
2  to address the problems.  I have already attempted to
3  do that by supplementing the production, I'm working to
4  do that even more, with more production.  I'm working
5  as diligently as I can to do that.
6      I just believe that, especially related to
7  the request for default sanctions, that that would be
8  hugely excessive, considering where we stand in these
9  cases as far as procedurally speaking, and the fact
10 that the discovery issue is this TCPA issue, it's not
11 merits-based discovery.
12      That's -- that's unless you would like to ask me
13 questions about the default motion I can move onto the
14 other ones.
15      THE COURT:  Okay.
16      MR. REEVES:  Okay.  So, regarding the two
17 motions for contempt, they're essentially verbatim.
18 You know, again I have produced supplemental document
19 production.  Um, I have already -- and, you know, and
20 again these are not -- these are not questions that I,
21 as lawyer, can answer.  These interrogatories.  They
22 ask for a lot of identifying information.
23      And, you know, Mr. Bankston wants to opine
24 that I don't have any, you know, control or contact
25 with my client or anything like that.  I do.  And I'm

1  working on it.  But it's not just I can talk to
2  Mr. Jones and get all this information.  He doesn't
3  know a lot of these answers relating to the corporate
4  as far as involvement of who is doing what and things
5  like that within Free Speech Systems.  That requires me
6  to speak to other individuals, which I am also doing
7  and getting information, like I said, because what I'm
8  trying to do is give him full, complete, responsive
9  discovery responses so that we are done with these
10 issues and he can move on to finding other issues.
11      I don't want to be in a situation where I
12 give him half of the stuff and then he comes back to
13 the court again and stuff like that.  And I also
14 recognize that he's entitled to it.  And if he wants to
15 move his expert designation deadline back because of
16 this, I'm agreeable to that.  I, you know, like I said,
17 I'm here living in the present trying to solve the
18 problems that do exist.  And I recognize they exist.  I
19 just don't --
20      And, you know, as far as the contempt motions
21 are concerned, from a, you know, purely procedural
22 standpoint, it's unclear whether the plaintiff is
23 seeking criminal or civil contempt findings.  If they
24 are criminal contempt findings that they're seeking,
25 that would require actual notice and service upon the

86

1  defendants themselves, not just through their attorney.
2  Um, so if that's what they're seeking that would be
3  improper at this time due to lack of due process and
4  their required notice.
5          And last thing on Pozner. You know, in the
6  response that I filed, which again, Your Honor, there
7  was no gamesmanship involved, they're very simple
8  responses, but I can understand, you know, the opinion
9  there and I'm not really going to --
10          THE COURT: Well, I mean, you knew I wanted
11  to read everything in advance. I wouldn't ask you to
12  deliver it in paper if I wasn't going to look at it
13  before the hearing.
14          MR. REEVES: And I can understand that, Your
15  Honor, and that's why -- and that's -- and I can
16  understand that, Your Honor.
17          And as far as the motion for default
18  sanctions is concerned, this is really a continuation
19  of his December 2019 filing of it, which defendants had
20  already responded to, I simply filed a response to
21  their supplemental briefing. So there's already a
22  response on file. All of those responses are in Box.
23  But I just summed up the default judgment for you.
24          With Pozner, this is the first time we're
25  here from -- on any sort of motion to compel, motion

1  for sanctions. I've already told -- in the motion I've
2  already said that I recognize they weren't responded
3  to. I place no blame or responsibility on anyone but
4  myself for that.
5          As far as the deadlines, I in no way would
6  ever imply that Mr. Bankston would be responsible for
7  keeping track of my deadlines. I took these cases on,
8  I understand that. I'm responsible for that. And I
9  want the court to understand very clearly that that's
10  not the argument I'm making. I'm not making an
11  argument beyond, I'm preparing these responses, I asked
12  the court for 14 days in my response before the court
13  determines whether or not sanctions are warranted.
14          I do not -- we do not oppose the motion to
15  compel itself. But what I have asked is the two weeks
16  to be able to get him these full and complete answers.
17  Because there are numerous interrogatories -- it's more
18  the interrogatories. I've already produced documents
19  in the Pozner case, and I've also told counsel that the
20  defendants have stipulated that discovery in other
21  matters and prior production is discovery for this
22  matter, too. So he has all that discovery, too.
23          So, you know, but as far as the requests are
24  concerned, it's more the interrogatories that require
25  me to gather a decent amount of information that I am

87

1  actively working on.
2          But that's really where I stand on all these
3  motions, Your Honor, and I'm happy to answer any
4  questions that you have.
5          THE COURT: All right. Mr. Bankston, did you
6  want to respond?
7          MR. BANKSTON: All right. Yes, Your Honor, I
8  want a brief rebuttal on that.
9          THE COURT: All right.
10          MR. BANKSTON: I'll just go down each of
11  them.
12          First of all, with the idea that a default
13  was not requested in any of the motions but one, these
14  motions are all brought under 215 and default is always
15  one of the available options for the court when it's
16  faced with a 215 sanction.
17          They say that the discovery wasn't
18  merits-based and that it doesn't address the underlying
19  merits. There's nothing really special about TCPA
20  discovery except that what happens is the discovery
21  stay just vanishes and then the plaintiff can have
22  discovery on anything that's to the motion. The motion
23  is to require clear and convincing evidence of every
24  element of plaintiff's claims and defendant's defenses.
25  So the discovery literally addresses everything in the

88

1  case on liability, it just doesn't go to damages.
2  Right?
3          So, the idea -- you can look at some of these
4  other default cases in the past and it's things like
5  not appearing for deposition is a big one that does it,
6  and it's not the entire case has been -- every bit of
7  discovery has been compromised, but often it's these
8  very discreet parts. But the court says that's so
9  egregious and it's such a thumb in the nose at the
10  court's face that we default.
11          Here every -- everything is spoiled by this.
12  There's nothing it doesn't touch in terms of liability.
13          They said that they produced 6,000 pages and
14  that Mr. Reeves is going through 75,000 pages more to
15  produce. It was my understanding that, when he said he
16  was going through the 75,000 pages, that was the
17  75,000 pages already produced in this case. But
18  apparently now Mr. Reeves is saying that there is
19  75,000 pages of documents he is still reviewing, which
20  is astonishing to me.
21          Also, when Mr. Reeves produced those
22  6,000 pages to me a couple of days ago, he wrote to me
23  and said, here is your 6,000 pages, we trust this is
24  going to be sufficient to solve all of your issues of
25  discovery. That was no indication that there was this

1  massive trove of information that was still coming.  It
2  was, that's it, that will solve it, here is our
3  eleventh-hour fig leaf over our completely naked
4  contempt.  Now they say there's more.
5         He tells me the rogs, the interrogatories,
6  are not simple, that they're really hard to answer.
7  So, okay, he couldn't answer them in 30 days maybe.
8  You know, in normal cases he could probably get an
9  extension on that.  But then he couldn't answer them in
10  three and a half months?  They're that complicated?
11  They're not that complicated.
12         He then talks a bit about Mr. Jones's
13  broadcast there and that that million dollar bounty was
14  not about us, was not about plaintiff's counsel and
15  that actually he was talking about somebody else and
16  then he just happened to be later in the same clip
17  accusing Mr. Mattei and the plaintiff's counsel of
18  being the ones who did all this.
19         The Connecticut Supreme Court has already
20  rejected all of this and said no, obviously Mr. Jones
21  was threatening a million dollar bounty on the lives of
22  plaintiff's counsel, he has unreasonably caused danger
23  to these proceedings and encouraged people not
24  participate.  The idea that right now we're going to be
25  trying to defend what Mr. Jones did in that video is

1  absurd to me, but those sanctions have already been
2  affirmed by a high court.
3         Mr. Reeves also says that he doesn't know of
4  any missed depositions, he only seems to know that
5  there was some corporate representative depositions
6  that are effectively nonappearances.  But Mr. Reeves,
7  even after my presentation, does not seem to understand
8  that in August 31st, 2018, exactly three years ago
9  today, the court issued a discovery order in Heslin
10  that has never been responded to in any way, shape or
11  form.
12         There's never been any responses to the
13  written discovery, and there was supposed to be a
14  deposition of Alex Jones, of Free Speech Systems, of
15  InfoWars, LLC, and of Owen Shroyer.  That's why I
16  brought up Mr. Shroyer's arrest, because I'm not sure
17  I'll ever depose him.  Mr. Reeves currently does not
18  know those depositions hasn't happened or that
19  discovery hasn't been answered to on a discovery order
20  which he has prior -- that client has prior been held
21  in contempt of court.  And that again is baffling to
22  me.
23         He briefly addresses Mr. Pattis and the
24  deposition about the Hillary Clinton thing, where he
25  was writing a motion about Hillary Clinton and was

1  disclosing client's information.  Mr. Pattis was
2  sitting inside the deposition when that happened.  His
3  co-counsel was taking the deposition and he wrote up a
4  motion, typed it on up and sent it off to the court and
5  publically filed it.  And that could very well happen
6  again in this case.
7         He then goes onto the contempt motions.  And
8  the first again he says that the interrogatories are
9  hard to answer.  But on the contempt motions they
10  haven't even tried to supplement discovery.  And from
11  his perspective he didn't think he would have the need
12  to, is what he was telling us.  He thought that that
13  was just about the request for production and the 6,000
14  documents would be enough.  But apparently now they're
15  talking about going and answering those
16  interrogatories, and I don't know that that's ever
17  going to happen.
18         He does offer you a solution to this contempt
19  motion.  His solution is more delay.  Is that now,
20  after all of the delay in the trial court before, all
21  of the frivolous appeals for which they were sanctioned
22  for, and after now just throwing away the entire summer
23  doing nothing, Mr. Reeves' solution is, let's just push
24  all the dates back and give me more time to keep doing
25  this.  That is not a solution to this case; that

1  definitely prejudices us.
2         His other argument is that it's unclear
3  whether there are civil or criminal contempt being
4  sought in this motion.  But the motion is captioned
5  motion for contempt under Rule 215 of the Texas civil
6  rules.  Their motion recounts that well, that we're
7  going under Civil Rule 215.  We're not seeking criminal
8  sanctions.
9         With Pozner his only real response there is
10  that there was no gamesmanship.  And I, you know what,
11  I think I would probably agree with that because I
12  think, in order to play a game, you actually have to
13  care enough to play.  And there was no -- it was a
14  complete conscious disregard.  If you consciously
15  disregard to this extent you're not playing games,
16  you're just not -- not respecting this court's
17  authority is what's happening.
18         He says that this is the first time, the
19  Pozner was the first time they've ever gotten any kind
20  of trouble on Pozner.  But the thing is is that you see
21  all of these sanction cases talking about you can
22  default a party in the first instance if that instance
23  is coming off of a long pattern of years of discovery
24  abuse and repeated thumbs in the noses of the court.
25  You have to understand that that's perfectly consistent

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 26 of 380

94

1  with everything else they've done in front of this
2  court.
3       His solution on this one is that he wants
4  14 days.  Just give me 14 more days to answer this
5  discovery.  Again, that's not an acceptable solution.
6       He actually says he does not oppose the
7  motion to compel; in other words, it should be granted.
8  And if that's the case, then Rule 215 is
9  nondiscretionary.  You have to grant fees if that's the
10  case.
11       THE COURT:  I have to do what?
12       MR. BANKSTON:  You have to grant fees if
13  that's the case.  Attorneys fees will have to be
14  granted if that is what their position is.
15       And of course, Your Honor, that's true of
16  every motion.  Each one of those motions, being
17  meritorious, has an entitlement to attorneys fees with
18  it.
19       I hadn't wanted to put more paper in front of
20  you, because I knew you were going to have a lot to
21  review.  And I honestly anticipated you have a lot to
22  review from there.  So I wanted to let you decide to
23  rule first before I gave you any evidence on that.  I
24  can do it however you want, I can give you testimony
25  now or I can give you an affidavit and send it directly

1  to the court, however you want to deal with the
2  attorneys fees issues.
3       THE COURT:  I'm fine with an affidavit,
4  unless Mr. Reeves is going to want to, you know, cross
5  your testimony, which he can't -- it's hard to do to an
6  affidavit.
7       MR. BANKSTON:  Right.
8       MR. REEVES:  Your Honor, I'm happy to deal
9  with the attorneys fees on written submission to you.
10  If I have any issues with what Mr. Bankston submits, I
11  will point those out in writing.  I do not need -- we
12  don't need to do that right now, in my opinion.
13       THE COURT:  All right.  Then I'll include it
14  in any orders where it is relevant.  But just so it's
15  clear and on the record now, your response will be due
16  seven days after Mr. Bankston files his affidavit on
17  attorneys fees or motion or any other filing on
18  attorneys fees.
19       MR. REEVES:  Okay.
20       MR. BANKSTON:  And, Your Honor, there was one
21  other note that I had made, just my last point I wanted
22  to make to you on rebuttal is -- I had to flip a page.
23  And this is just from again your orders and everything
24  to understand this.  Mr. Reeves just represented to you
25  that they told us, they informed us a couple of days

95

1  ago, that discovery for prior matters is now discovery
2  for all matters.  Right.
3       And what the court needs to be aware of is
4  there is a prior agreement between counsel in this
5  case.  There's a prior agreement that says, if any of
6  the documents produced in the Lewis matter you contend
7  are responsive to any request in the other cases, like
8  if there's response to the request in Heslin, so you
9  don't have to produce those documents again, so long as
10  they are identified by their corresponding Bates
11  numbers in the responses, and in here we don't have
12  responses.  So none of that works.
13       So the idea that some Lewis production would
14  be somehow partially compliant with any of the other
15  cases or help any of the other cases, that's in
16  violation of the parties' agreement.  So again another
17  small point on that.
18       But with that, that's all the arguments we
19  have today and we ask you to grant the motions.
20       THE COURT:  All right.  Thank you.  Um.
21       MR. REEVES:  Your Honor, if I may really
22  fast.  If that's okay.  I'm sorry, I don't mean to
23  interrupt you.
24       THE COURT:  Well, if what you're going to say
25  is what you meant was they didn't notice a deposition

96

1  and that's why it didn't happen --
2       MR. REEVES:  No.
3       THE COURT:  What are you going to say?
4       MR. REEVES:  No, Your Honor, it's on the --
5       THE COURT:  Then Mr. Bankston is going to
6  talk again.
7       MR. REEVES:  Sure.
8       It's just on the idea that, you know, again
9  he's asked for default across the board and, you know,
10  again that's not relief he requested.  And most
11  definitely in these two contempt motions he asked for
12  finding of contempt.  And so I would just -- I would
13  again point out that that would be far beyond what he's
14  requested here within his motion.  I realize that he
15  said they're under Rule 15, but he specifically
16  requested a contempt finding under Rule 15.  215.
17       THE COURT:  215, right?
18       MR. REEVES:  215, yes, Your Honor.
19       THE COURT:  All right.
20       MR. REEVES:  That's it, Your Honor.
21       THE COURT:  Mr. Bankston?
22       MR. BANKSTON:  I don't need to respond, I
23  think you know what you can do under 215.
24       THE COURT:  Okay.  All right, I'm going to
25  take it under advisement.

98

```
1   I know the other case is still under
2  advisement but honestly I kind of wanted to wait until
3  we were all together again before I issued orders in
4  that case or on the motion for pro hac vice, which is
5  not looking good, by the way. So that's part of why
6  I've been waiting. And I'll get this to you pretty
7  quickly. As quickly as I can.
8       MR. REEVES: Your Honor, just one brief
9  point. On the pro hac vice that you mentioned, again I
10 do want to mention to you that Mr. Randazza is involved
11 in this Virginia case where, ever since he's been
12 involved, this discovery has gone fantastically there,
13 it's been dealt with accordingly, it's been dealt with
14 in an orderly fashion. You know, Mr. Bankston has
15 previously told me that he thinks that my client has
16 tons of lawyers working for him in this case --
17      THE COURT: Well, he's allowed to, that's
18 fine. But the question is does that attorney get to
19 appear in this courtroom. And that's a separate
20 question. He can work on anything somebody properly
21 hires him to work on behind the scenes. That's
22 different.
23      Somebody wants to take a chance bringing a
24 lawyer in who is not licensed in this state to give
25 advice on what to do in this litigation, they have the
```

99

```
1       right to do that. What they don't have the right to do
2  is have him appear and represent him in court. I get
3  to decide whether he does that or not.
4       MR. REEVES: And yes, I understand that, Your
5  Honor.
6       THE COURT: Okay.
7       MR. BANKSTON: Your Honor, I have one
8  question about that. Mr. Randazza likes to email me
9  and do stuff on this case. I don't feel like I have
10 any duty to have to deal with him. I don't know if
11 it's fine with you for me not to want to deal with
12 Mr. Randazza but to deal with Mr. Reeves instead.
13      THE COURT: Well, um, Mr. Reeves, as he told
14 us today, is lead counsel for these cases, is the only
15 counsel of record filed with the court that I'm aware
16 of.
17      Right, Mr. Reeves?
18      MR. REEVES: That's correct, Your Honor.
19      THE COURT: So, I guess Mr. Randazza could
20 email, similarly to how an associate of Mr. Reeves
21 could email, and be speaking for Mr. Reeves if
22 Mr. Reeves allows him to do that. I would suggest that
23 that information be written down.
24      MR. REEVES: And, Your Honor, as far as I
25 know, there's been no direct communication between
```

99

```
1  Mr. Randazza and Mr. Bankston without me involved.
2  It's more the issue of I have included Mr. Randazza on
3  emails as a cc and he has responded sometimes. But
4  it's not like a -- it's not like just Mr. Bankston is
5  dealing with Mr. Randazza.
6       I'm involved because this is, like I said,
7  I'm lead counsel, I take that very seriously in these
8  cases, especially given their history. I'm, you know,
9  I take it very seriously, what's going on here and what
10 I'm dealing with. And so -- and I want the court to
11 understand that and be aware of that.
12      But, you know, that's what Mr. Bankston is
13 referring to is that Mr. Randazza has been included on
14 emails, has responded to some of them, but it's not
15 solely Mr. Randazza doing things without me knowing or
16 being involved in these matters.
17      THE COURT: So you're telling me that
18 Mr. Randazza is speaking for you in these
19 communications.
20      MR. REEVES: The only communications that he
21 has spoken for me about was dealing with sanctions that
22 the court of appeals had rendered on a prior appeal,
23 where they determined the appeal was frivolous that
24 hadn't been paid that we were working out details of
25 how to pay that. That's really it. But everything
```

100

```
1  else --
2       THE COURT: Your --
3       MR. REEVES: I'm not trying to capitulate.
4       THE COURT: Your response reminds me of a
5  depo transcript I listened to earlier.
6       MR. REEVES: I'm sorry. I'm trying to answer
7  the question.
8       THE COURT: So the question, the question was
9  what you're telling the court is that when Mr. Randazza
10 sends an email it's on your behalf and he is speaking
11 for you. Is that right?
12      MR. REEVES: If he -- if it involves these
13 Texas cases I will say yes, Your Honor.
14      THE COURT: Okay. Does that help,
15 Mr. Bankston?
16      MR. BANKSTON: Sure. That will help for now.
17      THE COURT: All right.
18      MR. BANKSTON: The other -- one other thing I
19 wanted to bring up, Your Honor, I don't know if this
20 sounds like a good idea to you, obviously these cases
21 require more judicial babysitting than maybe other
22 cases have required in the past.
23      THE COURT: I'm definitely learning that.
24      MR. BANKSTON: Yeah.
25      So, in Lafferty they have come up with a
```

22-01023-tmd Doc#1-16 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 28 of 380

102

```
 1  system of where they're actually having monthly status
 2  conferences to just make sure everything is working.  I
 3  don't know if you want to preschedule our next meeting
 4  together or how you may want to do that.  I certainly
 5  know I would be willing to do something like that.
 6           THE COURT:  I mean, it's probably not a bad
 7  idea.
 8           MR. BANKSTON:  And, you know, there may be
 9  cases where you say, hey, do we need to have a status
10  conference this month and both parties say no,
11  everything is swimming smoothly, we don't need to, or
12  whatever.  But something I just thought I would throw
13  it out there.
14           THE COURT:  I think I mentioned at the
15  conclusion of the Fontaine hearing that I had some
16  second thoughts about our trial schedule.  Um.  Mostly
17  I think just for the toll it would take on this court
18  to hear those cases in such rapid succession, assuming
19  that after the first one or two the rest don't settle.
20  Um.  Which I would love to sit here and say, looking at
21  it rationally, this is what I think will happen; I just
22  don't know how helpful that kind of examination of what
23  should happen will be in this case, given the
24  personalities and the subject matter and the emotions
25  involved.
```

```
 1           So, I don't think I can -- I'm not
 2  comfortable setting a schedule for this court that
 3  assumes what happens in the first case will affect what
 4  happens in the remaining cases.  Does that make sense?
 5           MR. BANKSTON:  It does.
 6           THE COURT:  Okay.  So, it is my plan to take
 7  another look at those schedules and make some changes.
 8  I think I mentioned already one of them was like a
 9  backup setting, and we are not going to trial that
10  week.  So I haven't issued an order but I've let you
11  guys know that one is not -- there's not going to be a
12  trial that backup setting week.
13           MR. BANKSTON:  One thing I should probably
14  let you know, if you're going to be thinking about
15  trial settings and that sort of thing, is our decision
16  on how to go forward on those cases is obviously going
17  to be heavily affected by the outcome of this motion.
18           THE COURT:  I would assume.
19           MR. BANKSTON:  And so what I would say to
20  that is, just to give the court a heads's up, this is
21  what we would be intending to do, I'm giving the
22  defendant's counsel a head's up, too, that if the
23  disparate liability issues are sort of taken out of the
24  case, like through a default, and there isn't the
25  possibility of jury confusion over the liability
```

```
 1  issue --
 2           THE COURT:  You're going to seek to
 3  consolidate?
 4           MR. BANKSTON:  All of them for damages.  It's
 5  the only thing that makes since under that situation,
 6  because then you don't have the jury confusion of those
 7  ideas.  And then you're only looking at one trial.
 8           So I think to make some of these decisions
 9  it's going to have to know what happens in this motion
10  first.
11           THE COURT:  Yeah, okay.  Thank you.  Okay.
12           Well, I think that's it.  I'm going to take
13  it under advisement.  I've got your suggestion,
14  Mr. Bankston, I'll let you guys know, Mr. Reeves and
15  Mr. Bankston, I'll let the two of you know if I'm going
16  to set this for some kind of regular schedule.  At a
17  minimum we will have another schedule to discuss the
18  schedules.  So.
19           MR. REEVES:  And, Your Honor, just a quick,
20  the backup setting you're talking about, do you know if
21  it's the April 25th setting that you're referencing?
22           THE COURT:  I don't know.  When you look at
23  the list it clearly says backup for another case.
24           MR. REEVES:  There's two on the same case.
25  There is Pozner and Lewis are set on the same date.
```

```
 1  And that's kind of what I figured, I just wanted to
 2  make sure I have the correct understanding.
 3           THE COURT:  I wouldn't worry about it too
 4  much in general because we're going to address those
 5  again.  And I also know there are a number of, I think,
 6  anyway, that there are several other motions pending
 7  that were not set for today, so we're going to have to
 8  have another hearing, anyway, on those, right?
 9           So when we ended Fontaine with a possible
10  agreement on confidential records, I don't think I've
11  seen that agreement.  Don't talk about it because he's
12  not here, I don't want to make that mistake again.  But
13  we had also discussed wanting a similar agreement or
14  order in these cases.  So, I haven't seen that in any
15  version, so I expect that's coming.
16           MR. BANKSTON:  Actually I'm glad you brought
17  that up because we probably need to set a hearing for
18  that, Your Honor.
19           THE COURT:  Right, that's what I'm saying.
20           MR. BANKSTON:  Yeah, because I'm going to be
21  getting records soon, I would assume.  And yeah, we
22  were able to reach agreement on the other case, but
23  here --
24           THE COURT:  Do I have a copy of it?  I don't
25  think I have a copy.
```

22-01023-tmd Doc#1-16 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 29 of 380

106

MR. BANKSTON: Yeah, that's been filed. Again I'm not going to go into that.

THE COURT: But remember, Mr. Bankston, when you file something I don't get it.

MR. BANKSTON: Right, it actually wasn't us that filed it. I had assumed that he provided it to you. I guess he hasn't.

THE COURT: He should know even better than you that I don't get it, because he works in Travis County.

MR. REEVES: You're talking about in the Fontaine matter, Your Honor. That's not -- that hasn't happened in this case.

THE COURT: I understand.

MR. REEVES: Okay. Just making sure.

MR. BANKSTON: In this case Mr. Reeves opposes a protocol for in-camera review, says he wants to subpoena the records himself, not have *in camera* review.

THE COURT: Okay. You can set that for hearing but you're going to lose that one because these are sensitive records and I don't -- we're not doing that.

MR. REEVES: Okay, and I appreciate that. And what I will do with that, I'll retrace and I'll

talk to Mr. Bankston about it. It more had been honestly, Your Honor, the idea that plaintiff was going to be the gatekeeper of what was going to be submitted *in camera*.

THE COURT: Right, so that -- he's not the gatekeeper of what's submitted, he's the gatekeeper of what is not submitted *in camera*. And that's standard. We do this all the time for medical and mental health records in every kind of injury case you can think of.

So the plaintiff gets the records, goes through them, says, you can have these, if you want these we're going to ask the judge to look at them first. That's super standard.

MR. REEVES: Sure.

THE COURT: If you oppose that, that's not going to go well. You're going to have a very hard, uphill road convincing me that there's some reason what works in every other case I get won't work in this one.

MR. REEVES: And I understand that, Your Honor. And I want you to know I in no way -- I have no desire to waste the court's time with things like that, especially given now what you've said here. I've used that process many times, I represent -- I mean I have personal injury clients and things. I understand the process. It was just the way that Mr. Bankston and I

discussed it it was -- to me did not comport with that process.

But again I will, especially given what you said, I'll revisit it with Mr. Bankston. I'm sure we can come to an agreement so the court doesn't have to waste their time dealing with that. I have no desire to have the court deal with things that we, as the parties, should be able to figure out.

THE COURT: Great. So when you reach that agreement and you execute it, send me a copy. Don't just file it with the clerk.

MR. REEVES: Yes, Your Honor.

THE COURT: Okay. Thank you.

That's going to conclude the hearing, everyone is excused, and I will get with you as soon as possible. Thanks.

MR. REEVES: Thank you, Your Honor.

Have a good afternoon.

(End of proceedings.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS       )
COUNTY OF TRAVIS         )

I, Alicia DuBois, Official Court Reporter in and for the 459th District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the Proceedings truly and correctly reflects the exhibits, if any, offered in evidence by the respective parties.

WITNESS MY OFFICIAL HAND this, the 1st day of October, 2021.

*/s/ Alicia DuBois*
Alicia DuBois, CSR
Texas CSR 5332
Exp. Date: 1/31/22
Official Court Reporter
459th District Court
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767
(512) 854-9301

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 60414264
Status as of 1/5/2022 12:41 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 12/31/2021 3:53:17 AM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 12/31/2021 3:53:17 AM | SENT |
| William Ogden | | bill@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 12/31/2021 3:53:17 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |

12/31/2021 3:53 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Sheila Collins

D-1-GN-18-001835

# Exhibit 2 – Declaration of Alex Jones

DocuSign Envelope ID: 43A4E630-BC54-4DB2-A15B-9E235D059542

22-01023-tmd Doc#1-16 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 32 of 380

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC; AND | § | |
| OWEN SHROYER | § | |
| | § | |
| *Defendants,* | § | 459th JUDICIAL DISTRICT |

## **DECLARATION OF ALEX JONES**

I, Alex Jones, hereby declare as follows:

1. I am more than twenty-one (21) years of age, have never been convicted of a felony, and am capable of making this declaration on behalf of myself and as an authorized representative of the corporate Defendants, Free Speech Systems, LLC ("Free Speech Systems") and Infowars, LLC ("Infowars") (Alex Jones, Free Speech Systems, and Infowars are collectively referred to herein as "Defendants"). All factual matters stated herein are within my personal knowledge and are true and correct.

2. I am the sole member and manager of Free Speech Systems, and I am the sole member and manager of Infowars.

3. Throughout this litigation, Free Speech Systems, Infowars, and myself individually have strived to produce all documents which are responsive to Plaintiff, Neil Heslin's, discovery requests, to the extent such documents exist and are in my possession, care, custody, and control or within the possession, care, custody, and control of Free Speech Systems and/or Infowars.

4. In March 2019, in response to Plaintiff's discovery requests that were issued by Court order following Defendants' filing of a motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA"), Defendants produced almost 80,000 pages worth of documents to Plaintiff, Scarlett Lewis, in Cause No. D-1-GN018-006623; *Scarlett Lewis v. Alex Jones, et al;* In the 459th Judicial District of Travis County, Texas.

5. In November, 2019, counsel for Defendants at the time, Michael Burnett, entered into a Rule 11 Agreement with Plaintiff in this case whereby the production in the *Lewis* matter was deemed to likewise be production in this case.

6. In addition, Defendants produced an additional set of documents of approximately 600 pages which Defendants believed were also responsive to Plaintiff's discovery requests.

7. In August 2021, Defendants supplemented their production with an additional approximately 6,000 pages of documents that had been determined to be responsive to Plaintiff's discovery requests, totaling almost 90,000 pages of documents produced at that time.

8. In October, 2021, in response to Plaintiff's second set of discovery requests, Defendants produced an additional set of documents totaling approximately 1,000 pages, including a litany of spreadsheets demonstrating sales figures and analytics related to Infowars and certain social media posts which were located by Infowars.

9. To the extent Plaintiff contends documents or other requested information or media have not been produced, any such documents, including videos of certain broadcasts, are not in the care, possession, custody, or control of Defendants. Rather, particularly in regard to videos of certain broadcasts, Free Speech Systems and Infowars had maintained those on YouTube's servers, and Defendants lost all access to these videos and broadcasts when YouTube permanently banned Infowars, without any real warning, from utilizing its platform. Defendants also utilized Facebook for this same purpose, but likewise lost access to any videos when Facebook permanently banned Infowars from using its platform in May, 2019. Infowars was also banned from Twitter in September 2018, thereby removing any access to Infowars social media posts and data when that ban went into effect.

10. However, to the extent Defendants have copies of videos of broadcasts at issue in this lawsuit, Defendants have produced those videos to Plaintiff.

11. Defendants have in no way destroyed or tampered with any documents or other evidence which may be relevant to this case and otherwise responsive to Plaintiff's discovery requests.

12. My name is Alex Jones. My date of birth is February 11, 1974, and my address is 3019 Alvin Devane Blvd., Suite 300-350, Austin, TX 78741.

Signed on this the 6th day of December, 2021.

DocuSigned by:

*Alex Jones*

Alex Jones

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 60414264
Status as of 1/5/2022 12:41 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 12/31/2021 3:53:17 AM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 12/31/2021 3:53:17 AM | SENT |
| William Ogden | | bill@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 12/31/2021 3:53:17 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC; AND | § | |
| OWEN SHROYER | § | |
| | § | |
| *Defendants,* | § | 459th JUDICIAL DISTRICT |

**[PROPOSED] ORDER ON DEFENDANTS, FREE SPEECH SYSTEMS, LLC'S AND INFOWARS, LLC'S, MOTION FOR RECONSIDERATION OF COURT'S RULING OF DEFAULT JUDGMENT ON PLAINTIFF'S SECOND MOTION FOR CONTEMPT UNDER RULE 215 AND MOTION FOR DEFAULT JUDGMENT**

On this day, came to be heard Defendants, Free Speech Systems, LLC's and Infowars, LLC's, Motion for Reconsideration of the Court's Order Granting a Liability-Default Judgment on Plaintiff's Second Motion for Contempt Under Rule 215 and Motion for Default Judgment. The Court, having considered the Motion, Plaintiff's response thereto, along with the arguments of counsel, finds that Defendants' Motion should be GRANTED, and upon further consideration, Plaintiff's request for default judgment as to Defendants, Free Speech Systems, LLC and Infowars, LLC, is hereby DENIED. It is therefore ORDERED that Plaintiff's Second Motion for Contempt Under Rule 215 and Motion for Default Judgment are hereby DENIED in all respects except to the extent monetary sanctions were previously awarded to Plaintiff based on said motions.

SIGNED ON THIS THE _____ DAY OF _____, 2022.


_____
HONORABLE JUDGE MAYA GUERRA
GAMBLE

**APPROVED AS TO FORM
AND ENTRY REQUESTED:**

**REEVES LAW, PLLC**

By: ___*/s/ Bradley J. Reeves*_____
Bradley J. Reeves
Texas Bar No. 24068266
702 Rio Grande St., Suite 203
Austin, TX 78701
brad@brtx.law
Telephone:      (512) 827-2246
Facsimile:      (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 60414264
Status as of 1/5/2022 12:41 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 12/31/2021 3:53:17 AM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 12/31/2021 3:53:17 AM | SENT |
| William Ogden | | bill@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 12/31/2021 3:53:17 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 12/31/2021 3:53:17 AM | SENT |

1/4/2022 12:11 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 459th JUDICIAL DISTRICT |
| *Defendants,* | § | |

CAUSE NO. D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, AND | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants,* | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, AND | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants,* | § | 459th JUDICIAL DISTRICT |

**DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFFS' EXPERTS, FRED ZIPP AND BECCA LEWIS**

Defendants, Free Speech Systems, LLC; Infowars, LLC; Alex Jones; and Owen Shroyer,

move to exclude Plaintiffs designated experts, Fred Zipp and Becca Lewis, and would respectfully show unto the Court as follows:

## I.   BACKGROUND

These defamation and intentional infliction of emotional distress cases arise out of statements allegedly made by Defendants, either individually or on their behalf or for which Defendants are otherwise vicariously liable, arising out of the Sandy Hook tragedy in Newtown, Connecticut. Throughout their petitions, Plaintiffs cite to numerous alleged defamatory video broadcasts and articles from Defendants that go as far back as January 2013, despite Plaintiffs not filing suit until April, 2018 at the earliest.

To attempt to bolster their claims, Plaintiffs have designated two (2) liability experts to support their contentions: (1) Fred Zipp of the University of Texas School of Journalism; and (2) Becca Lewis of the Stanford University Department of Communication. *See* Exs. 1, 2, and 3, Plaintiffs' Second Supplemental Designation of Experts.

In their expert designations, Plaintiffs have disclosed that Mr. Zipp will testify about:

> the standards of care in news reporting, and he will opine on how those standards were recklessly disregarded in this case. [He] will oping that Defendants ignored elementary precautions in journalism. [He] will also opine that Defendants entertained serious doubts about the accuracy of their statements. [He] will analyze the facts and circumstances of the publications which show that Defendants were motivated by a desire to avoid the truth and to inflict harm on Plaintiff.

*Id.* at 3.

Plaintiffs have further disclosed that Ms. Lewis is an "academic researcher in the field of media technologies and online discourse, with a focus on media manipulation and disinformation." *Id.* at 6. Plaintiffs' designation discloses that they anticipate Ms. Lewis will testify in that she:

> will offer her expertise on digital political subcultures, internet celebrity, and online news platforms. [She] will testify about InfoWars' cultural footprint and role in the online media ecosystem. [She] will opine that Defendants' actions were a substantial factor in the spread of false facts about the Sandy Hook shooting.

*Id.* at 6.

As the Court is well aware, while Defendants continue to contend the incorrect decision was made, the Court has entered default judgments against Defendants as to liability due to alleged discovery misconduct. Consequently, neither of these liability-based experts designated by Plaintiffs are necessary or otherwise should be allowed to testify, since the Court has determined that liability has been established. Moreover, Ms. Lewis's proposed testimony is completely unnecessary and not germane to any aspect of Plaintiffs' underlying claims. Plaintiffs have sued for defamation and intentional infliction of emotional distress claiming that Defendants made false statements about them and otherwise intentionally caused them emotional harm with these statements. The concept of a "cultural footprint" and opinion testimony that Defendants' actions "were a substantial factor" in the spread of allegedly false facts about Sandy Hook has nothing to do with whether the statements were defamatory nor whether they were intentionally made to cause Plaintiffs' emotional harm or distress. Instead, Ms. Lewis's proposed testimony is nothing more than an attempt by Plaintiffs to further prejudice the Court and the jury to inflate their damages claims, despite Ms. Lewis having no ability or expertise to enable her to testify as to any aspect of Plaintiffs' damages.

For the reasons set forth herein, if the Court does not reconsider its prior default-judgment rulings as to Defendants to allow these cases to proceed to trial on their full merits to a jury, Defendants request the Court grant this motion and exclude Fred Zipp and Becca Lewis from testifying as expert witnesses for Plaintiffs.

## II.    ARGUMENTS AND AUTHORITIES

Whether an expert is qualified is, under Rule 104(a), a preliminary question to be decided by the trial court. *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718 (Tex. 1998). If a motion to exclude expert testimony is filed, the party offering the expert testimony bears the burden of showing the testimony is admissible. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 557 (Tex. 1995). "The offering party must demonstrate that the witness possess[es] special knowledge as to the very matter on which he proposes to give an opinion." *Gammill,* 927 S.W.2d at 718.

Rule 702 of the Texas Rules of Evidence governs the admission of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702; *see also Robinson,* 923 S.W.2d at 554. Stated differently, "Rule 702 contains three requirements for the admission of expert testimony: (1) the witness must be qualified; (2) the proposed testimony must be 'scientific . . . knowledge' and (3) the testimony must 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Robinson,* 923 S.W.2d at 556. In *Robinson,* the seminal Texas Supreme Court case pertaining to expert witness testimony, the Texas Supreme Court held that "in addition to showing an expert is qualified, Rule 702 requires the proponent to show that the expert's testimony is relevant to the issues in the case and is based upon a reliable foundation." *Id.* Moreover, even if these experts' opinions are generally admissible, they should be excluded because the probative value of any such opinions if far outweighed by its unfair prejudice and is otherwise a needless presentation of cumulative evidence. *See* TEX. R. EVID.

4

403. Whether expert testimony is required and should be presented to a jury is a question of law for the Court. *FFE Transp. Servs., Inc. v. Fulgham,* 154 S.W.3d 84, 90 (Tex. 2004).

In this case, Mr. Zipp and Ms. Lewis should be excluded from testifying because given the default judgments on liability: (1) their opinions and testimony are not relevant; (2) the subjects upon which Mr. Zipp and Ms. Lewis intend to provide testimony are by and large not topics that require expert testimony because they can easily be comprehended by a layperson, rendering their testimony entirely unnecessary; and (3) their opinions are further unnecessary because they are simply intended to bolster the already-determined liability of Defendants and would serve to do nothing more than further prejudice the jury against Defendants or to otherwise present prejudicial cumulative evidence of Defendants' liability which is wholly unnecessary given the Court's default-judgment rulings. As such, Defendants request the Court grant this motion and exclude Mr. Zipp and Ms. Lewis as experts in these cases.

**A.      Mr. Zipp's and Ms. Lewis's testimony should be excluded because their testimony is not relevant.**

The Court should also exclude Mr. Zipp and Ms. Lewis as expert witnesses because their opinions are not relevant to the remaining issues to be decided at trial. An expert's testimony is relevant if it assists the fact finder in determining an issue or in understanding the evidence. Tᴇx. R. Eᴠɪᴅ. 702.

Here, Mr. Zipp's proposed testimony as to the standards of care in news reporting, whether those standards were "recklessly disregarded" by Defendants, whether Defendants "ignored elementary precautions in journalism," and whether "Defendants entertained serious doubts about the accuracy of their statements" have no relevance to these proceedings given the liability default judgments. *See* Exs. 1, 2, and 3 at p. 3. There is no relevance or need for Mr. Zipp to testify about

applicable standards of care, whether those standards were disregarded, or otherwise because the Court has deemed those in favor of Plaintiffs as part of the Court's liability default judgments.

By the same token, Ms. Lewis's testimony should be excluded because her designated opinions have no relevance to the underlying claims in this lawsuit. For example, her expertise on digital political subcultures, internet celebrity, and online news platforms, testimony about InfoWars' cultural footprint and role in the online media ecosystem, and unreliable opinion testimony that Defendants' actions were a substantial factor in the spread of false facts about the Sandy Hook shooting have nothing to do with whether statements made were defamatory or were otherwise intentionally made to inflict emotional distress. These opinions lack any reliable foundation and otherwise do nothing to assist the trier of fact. Rather, Ms. Lewis's opinions are largely prejudicial and are simply because she says so, without any true evidentiary support. But an "expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statement to link his conclusions to the facts." *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex. 1999) (citing *Gammill,* 972 S.W.2d at 726–27).

Mr. Zipp's and Ms. Lewis's purported expert opinions are nothing but speculation and conjecture, and "[o]pinions which are purely speculative or conjectural in their nature should be excluded." *Earle,* 998 S.W.3d at 890 (citing *UMC, Inc. v. Coonrod Elec. Co.,* 667 S.W.2d 549, 559 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.)); *see also Naegeli Transp. v. Gulf Electroquip, Inc.,* 853 S.W.2d 737, 741 (Tex. App.—Houston [14th Dist.] 1993, no writ) (citing *Ochs v. Martines,* 789 S.W.2d 949, 958 (Tex. App.—San Antonio 1990, writ denied) ("Expert testimony cannot be based upon mere guess or speculation, but must have a proper factual basis.").

Because these experts; opinions lack any sort of reliable foundation, are otherwise purely speculative, and have no relevance to the remaining issues in this case, Mr. Zipp's and Ms. Lewis's

opinions are not relevant evidence and should be excluded by the Court. Defendants' motion should be granted.

**B.      Mr. Zipp and Ms. Lewis should be excluded as an expert because the subject matter of his testimony is of such a nature to be within the experience or capability of an ordinary layperson and is thus unnecessary in this case.**

Mr. Zipp's and Ms. Lewis's testimony should be excluded because their testimony will not assist the trier-of-fact in determining alleged damages if the liability default judgments are left in place. Simply because "a witness has knowledge, skill, expertise, or training does not necessarily mean that the witness can assist the trier-of-fact." *In re Commitment of Bohannan,* 388 S.W.3d at 304. Expert testimony "assist[s] the trier-of-fact when the expert's knowledge and experience on a relevant issue are beyond that of the average juror and the testimony helps the trier-of-fact understand the evidence or determine a fact issue." *Id.* "Where, as here, the issue involves only general knowledge and experience rather than expertise, it is within the province of the jury to decide." *GTE Sw., Inc., v. Bruce,* 998 S.W.2d 605, 620 (Tex. 1999); *see also Kmart Corp. v. Honeycutt,* 24 S.W.3d 375, 360 (Tex. 2000) ("When the jury is equally competent to form an opinion about the ultimate fact issue or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony."); *see also Coastal Chem., Inc. v. Brown,* 35 S.W.3d 90, 98 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("It is error, however, to admit expert testimony on an issue if no specialized or technical knowledge is necessary.").

Much of the subject matter of Mr. Zipp's and Ms. Lewis's opinions and testimony— ultimately whether something was defamatory or intentionally done to inflict emotional distress and whether those statements were spread in some way—does not require an expert. An ordinary

layperson can easily and competently understand the facts of this case and determine whether any such statements were defamatory or intentionally made to inflict emotional distress and whether they were done so with the requisite degree of culpability to establish something like an entitlement to punitive damages. The ordinary laypeople of the jury will undoubtedly be able to make their own analysis of the facts as presented to them at trial and make the requisite determinations of those claims. Mr. Zipp's and Ms. Lewis' opinions and testimony are merely an attempt by Plaintiff to confuse the jury by offering unnecessary "expert" testimony regarding these alleged defamatory statements by Defendants about Plaintiffs, when those issues have already been determined by the Court's liability default judgments.

Any layperson of ordinary intelligence can see, hear, and analyze the facts and evidence in this case to understand and determine whether and to what degree of culpability Defendants should face for these alleged statements in the context of determining any damages award. Mr. Zipp's and Ms. Lewis's opinions and testimony do not in any way assist the trier-of-fact with understanding the evidence in this case or in determining any fact issues. As such, Mr. Zipp and Ms. Lewis should be excluded as experts.

**C.      Mr. Zipp and Ms. Lewis should be excluded as experts because the probative value of their testimony, if any, is clearly outweighed by the danger of unfair prejudice and needlessly presenting cumulative evidence to the jury.**

Given the liability default judgments in this case, it is clear that even the testimony of Mr. Zipp and Ms. Lewis is otherwise admissible, they should be excluded as experts because their designated areas of testimony has little probative value, and to the extent there is any probative value, that is "substantially outweighed by a danger of one or more of the following: unfair prejudice . . . or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Factors in considering whether evidence's probative value is outweighed by a risk of unfair prejudice

"include the probative value of the evidence, the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence." *See In re Commitment of Stuteville,* 463 S.W.3d 543, 555 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (quoting *In re Commitment of Anderson,* 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied)).

Because the Court has granted default judgments on liability, it is clear that any testimony or opinions by these supposed experts would do nothing but to further inflame the jury, confuse them with irrelevant issues, or would otherwise simply be unnecessary cumulative evidence that has the sole purpose of prejudicing the jury as much as possible, since these opinions are wholly unnecessary to assist in any finding of liability. Consequently, the Court should exclude Mr. Zipp and Ms. Lewis as experts in these matters.

### **PRAYER**

WHEREFORE, Defendants, Free Speech Systems, LLC; Owen Shroyer; Alex Jones; and Infowars, LLC; respectfully request that the Court grant this motion and exclude Fred Zipp and Becca Lewis as expert witnesses at the time of trial of this case, and for such other and further relief to which Defendants may be justly entitled.

Dated: January 3, 2022.

Respectfully submitted,

By:  ___*/s/ Bradley J. Reeves*_____
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701

Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF CONFERENCE

The undersigned counsel for Defendants has previously conferred with counsel for Plaintiff regarding this Motion, and counsel for Plaintiff has indicated Plaintiff is **opposed** to this Motion.

*/s/ Bradley J. Reeves*
Bradley J. Reeves

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on January 3, 2022.

Mark Bankston                                    *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

*/s/ Bradley J. Reeves*
Bradley J. Reeves

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 60455399
Status as of 1/10/2022 9:04 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/4/2022 12:11:23 AM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/4/2022 12:11:23 AM | SENT |
| William Ogden | | bill@fbtrial.com | 1/4/2022 12:11:23 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/4/2022 12:11:23 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/4/2022 12:11:23 AM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/4/2022 12:11:23 AM | SENT |

1/4/2022 12:11 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez

# D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 98th DISTRICT COURT |
| *Defendants* | § | |

---

**PLAINTIFF'S SECOND SUPPLEMENTAL DESIGNATION OF EXPERTS**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Scarlett Lewis, Plaintiff, and files this his Second Supplemental Designation of Expert Witnesses and in supplementation of all prior discovery requests requesting identification of fact and expert witnesses, as follows:

I.

**Plaintiff's Non-Retained Medical Experts**

Ira Israel
Psychotherapist
And Custodians of Medical and Billing Records
12304 Santa Monica Blvd., Ste. 219
Los Angeles, California 90025
(310) 430-5150

David Grand, Ph.D.
And Custodians of Medical and Billing Records
2415 Jerusalem Ave.
New York, New York 11710

Laurie Patton, M.A.
And Custodians of Medical and Billing Records
1919 South 40th Street, Ste. 312
Lincoln, Nebraska 68502
(402) 475-5069

Michael Crouch, LCSW
And Custodians of Medical and Billing Records

999 Summer Street
Stamford, Connecticut 06905
(203) 961-1152

All medical care providers listed above may testify regarding matters contained in their records and depositions. Their observations, diagnosis, opinions, prognosis, facts, physical and clinical examinations, and tests done, reviewed or relied upon are incorporated herein by reference. This includes opinions regarding Plaintiff's pain, mental anguish, medical care, medical expenses, limitations, physical impairment, or any other medical issue in this case. The Custodians of Records will authenticate the records.

Plaintiff is unaware of the general substance of these experts' mental impressions and opinions, as they are treating physicians and custodians of records. However, presumably the general substance of these experts' impressions and opinions would be as contained in their respective records.

### Plaintiff's Retained Experts

Fred Zipp
University of Texas School of Journalism
300 W Dean Keeton St
Austin, TX 78712
(512) 471-1845

Mr. Zipp is a former newspaper editor and journalism professor. He will offer his expertise concerning the standards of care in news reporting, and he will opine on how those standards were recklessly disregarded in this case. Mr. Zipp will opine that Defendants ignored elementary precautions in journalism. Mr. Zipp will also opine that Defendants entertained serious doubts about the accuracy of their statements. Mr. Zipp will analyze the facts and circumstances of the publications which show that Defendants were motivated by a desire to avoid the truth and to inflict harm on Plaintiff. Materials reviewed by Mr. Zipp are being produced as SANDY HOOK-000001-000642. Mr. Zipp has also reviewed the March 4, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Free Speech Systems, and the November 27, 2019 deposition of Paul Watson. Mr. Zipp has also reviewed the YouTube video clips described in his affidavits submitted in response to Defendants' TCPA Motions. Mr. Zipp has also reviewed the videos produced as SH VIDEO 13, consisting of Megyn Kelly's profile of Alex Jones, and SH VIDEO 14, consisting of Anderson Cooper's Interview with Veronique De La Rosa. Mr. Zipp has also reviewed Plaintiff's petition. Mr. Zipp has also reviewed Plaintiff's discovery requests and Defendants' responses. Mr. Zipp's curriculum vitae is attached hereto as Exhibit "1."

In addition to the materials described above, Mr. Zipp has viewed the following videos or portions thereof:

| | Title | Date | Produced as |
|---|---|---|---|
| 1 | Connecticut School Massacre Looks Like False Flag Says Witnesses | December 14, 2012 | SH VIDEO 1 |
| 2 | Creepy Illuminati Message in Batman Movie Hints at Sandy Hook School | December 17, 2012 | F2mRuEhmoGA |
| 3 | Sandy Hook 2nd Shooter Cover-Up | December 19, 2012 | 6W6b-voc-Ds |
| 4 | Sandy Hook Father Remembers Fallen Hero | December 19, 2012 | 8cZkHDHl6nQ |
| 5 | Lower Part of Gotham Renamed "Sandy Hook" in Dark Knight Film | December 21, 2012 | Fus1FpQiU-Q |
| 6 | Callers React to Foreign Media Pushing Total Gun Confiscation | January 4, 2013 | SH VIDEO 2 |
| 8 | Prof. Claims Sandy Hook Massacre MSM Misinformation | January 10, 2013 | D8GxrKJDSL8 |
| 9 | Sandy Hook AR-15 Hoax? Still No School Surveillance Footage | January 15, 2013 | Oo74myC3bqY |
| 10 | Clearing Up Some Disinfo on Sandy Hook Massacre with James Tracy | January 18, 2013 | SH VIDEO 3 |
| 11 | Why People Think Sandy Hook is a Hoax | January 27, 2013 | tM5ZdO-IgEE |
| 12 | Dr. Steve Pieczenik: Sandy Hook was A Total False Flag! | March 27, 2013 | 5EfyD7Wu5fQ |
| 13 | Crisis Actors Used at Sandy Hook! Special Report | April 1, 2013 | shQSVhS0hLw |
| 14 | Obama Gun Grab Psyop | April 9, 2013 | SH VIDEO 4 |
| 15 | Shadow Govt Strike Again | April 16, 2013 | SH VIDEO 5 |
| 16 | Sandy Hook Police Ordered to Stand Down? | November 23, 2013 | xP9fhKUaudo |
| 17 | Sandy Hook Investigator Stonewalled and Threatened | February 20, 2014 | oGpWtqdiSCY |

| 18 | Sandy Hook, False Narratives Vs. The Reality | March 14, 2014 | esIvAO2aIlw |
| 19 | Revealed: Sandy Hook Truth Exposed | May 9, 2014 | _rSLOYCHNdw |
| 20 | Sandy Hook "Officials" Caught In Coverup And Running Scared | May 13, 2014 | MH6hmI1h-iQ |
| 21 | Bombshell: Sandy Hook Massacre Was A DHS Illusion Says School Safety Expert | May 13, 2014 | x2a1FwYEZS4 |
| 22 | Sandy Hook Deaths Missing From FBI Report | September 25, 2014 | A2Z0zUZBn7k |
| 23 | Sandy Hook Film Censorship Efforts Backfire | December 12, 2014 | 4T8_WYzH5SM |
| 24 | The Ultimate Sandy Hook Debate As The 2nd Anniversary Looms | December 12, 2014 | 6aK0P-WxjU8 |
| 25 | Will Bushmaster Lawsuit Reveal Sandy Hook Hoax? | December 16, 2014 | BFyDqDLAcLQ |
| 26 | Lawsuit Could Reveal Truth About Sandy Hook Massacre | December 27, 2014 | kK8CnIBA928 |
| 27 | America the False Democracy | December 28, 2014 | SH VIDEO 6 |
| 28 | Why We Accept Govt Lies | January 13, 2015 | SH VIDEO 7 |
| 29 | Title Unknown – Video discussing HONR Network | February 12, 2015 | SH VIDEO 8 |
| 30 | New Bombshell Sandy Hook Information In-Bound | March 4, 2015 | _7ib5WkULBY |
| 31 | New Sandy Hook Questions Arise from FOIA Hearing | May 29, 2015 | 5cll79t7Mrw |
| 32 | Sandy Hook: The Lies Keep Growing | May 29, 2015 | Ml3KVj2nVRA |
| 33 | School Administrator Exposes Sandy Hook Stonewall | May 29, 2015 | SO8Xb-t4nT4 |
| 34 | Official Claims DHS Involved in Sandy Hook | June 4, 2015 | BWsbyH2Wa0E |

| 35 | Govt is Manufacturing Crises | July 7, 2015 | SH VIDEO 9 |
|----|------------------------------|--------------|------------|
| 36 | Retired FBI Agent Investigates Sandy Hook: MEGA MASSIVE COVER UP | July 7, 2015 | jCOe3qIgyFA |
| 37 | The Fight for Freedom of Information in Sandy Hook | July 8, 2015 | l0miXJ-djeA |
| 38 | Alex Jones Final Statement on Sandy Hook | November 18, 2016 | MwudDfz1yAk |
| 39 | Hunt for Wikileaks Source Begins | March 8, 2017 | SH VIDEO 10 |
| 40 | Sandy Hook Vampires Exposed | April 22, 2017 | rUn1jKhWTXI |
| 41 | Media Refuses To Report Alex Jones' Real Statements On Sandy Hook | June 13, 2017 | kf2F7RxJ9e4 |
| 42 | Zero Hedge Discovers Anomaly In Alex Jones Hit Piece | June 26, 2017 | SH VIDEO 11 |
| 43 | JFK Assassination Documents To DROP Tonight | October 26, 2017 | SH VIDEO 12 |
| 44 | Watch as Megyn Kelly Opens Old Wounds Of Sandy Hook Victims | April 20, 2018 | uQkAJykqyeo |

Becca Lewis
Stanford University, Department of Communication
Building 120, Room 110
450 Jane Stanford Way
Stanford, CA 94305
(650) 723-1941

Ms. Lewis is an academic researcher in the field of media technologies and online discourse, with a focus on media manipulation and disinformation. Ms. Lewis will offer her expertise on digital political subcultures, internet celebrity, and online news platforms. Ms. Lewis will testify about InfoWars' cultural footprint and role in the online media ecosystem. Ms. Lewis will opine that Defendants' actions were a substantial factor in the spread of false facts about the Sandy Hook shooting. Materials reviewed by Ms. Lewis are being produced as SANDY HOOK-000643-002142. Ms. Lewis has also reviewed the March 4, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Alex Jones, and the November 27, 2019 deposition of Paul Watson. Ms. Lewis has also reviewed the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly In Alex Jones Hit Piece" and the April 22, 2017 video entitled "Sandy Hook Vampires Exposed." Ms. Lewis has also reviewed FSSTX-082669-082812; FSSTX-085731-FSSTX-086492; FSSTX-086569-

FSSTX-086583; FSSTX-086588-FSSTX-086589. Ms. Lewis has also reviewed Plaintiff's petition. Ms. Lewis has also reviewed Plaintiff's discovery requests and Defendants' responses. Ms. Lewis' curriculum vitae is attached as Exhibit "2."

Dr. Roy Lubit
165 West End Ave #3k
New York, NY 10023
(917) 846-7829

Dr. Lubit is a forensic psychiatrist with expertise in the impact of stress and emotional trauma. Dr. Lubit will testify about Plaintiffs' mental injury and the psychological stresses involved from Defendants' false statements and denial of Plaintiffs' trauma. Dr. Lubit will opine that Defendants' actions were a substantial factor in Plaintiffs' severe mental anguish and continuing grief. Dr. Lubit will testify about his evaluation of Plaintiff. Dr. Lubit will also review any medical records produced in this suit. Dr. Lubit's curriculum vitae is attached as Exhibit "3."

II.

Plaintiff reserves the right to supplement this designation with additional designations of experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Texas Rules of Civil Procedure and/or the Texas Rules of Civil Evidence.

III.

Plaintiff reserves the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by other parties to the suit.  Plaintiff expresses his intention to possibly call, as witnesses associated with adverse parties, any of Defendants' experts.

IV.

Plaintiff reserves the right to call undesignated rebuttal expert witnesses whose testimony cannot reasonably be foreseen until the presentation of the evidence against Plaintiff.

V.

Plaintiff reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

VI.

Plaintiff reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not be violative of any existing Court Order or the Texas Rules of Civil Procedure.

VII.

Plaintiff hereby designates, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial.  In the event a present or future party designates an expert but then is dismissed for any reason from the suit or fails to call any designated expert, Plaintiff reserves the right to designate and/or call any such party or any such experts previously designated by any party.

VIII.

Plaintiff reserves whatever additional rights they might have with regard to experts, pursuant to the Texas Rules of Civil Procedure, the Texas Rules of Civil Evidence, the case law construing same, and the rulings of the trial court.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

_____

MARK D. BANKSTON

State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
(713) 221-8300 Telephone
(713) 221-8301 Fax

**ATTORNEY FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on 2nd day of December, the forgoing document was served upon all counsel of record via electronic service.

Bradley J. Reeves
Reeves Law, PLLC
702 Rio Grande St., Suite 203
Austin, Texas 78701
Email:  brad@brtx.law

_____
MARK D. BANKSTON

# D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 345th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## PLAINTIFFS' SECOND SUPPLEMENTAL DESIGNATION OF EXPERTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Leonard Pozner and Veronique De La Rosa, Plaintiffs and files this his Second Supplemental Designation of Expert Witnesses and in supplementation of all prior discovery requests requesting identification of fact and expert witnesses, as follows:

I.

### Plaintiff's Non-Retained Medical Experts

Caron Renaissance
And Custodians of Medical and Billing Records
7789 NW Beacon Square Boulevard
Boca Raton, Florida 33487
(561) 241-7977
Medical Provider for Veronique De La Rosa

CVS Pharmacy
And Custodian of Billing Records
Pharmacy Privacy Office
One CVS Drive, Mail Code B120
Woonsocket, RI 02895
Pharmacy Provider for Veronique De La Rosa

Newton Youth & Family Services
And Custodians of Medical and Billing Records
15 Berkshire Road
Sandy Hook, CT 06482
(203) 270-4335

*Medical Provider for Leonard Pozner*

Michelle L. Rivera-Clonch, PhD., LMHC, NCC
And Custodians of Medical and Billing
6900 Tavistock Lakes Boulevard, Ste. 400
Orlando, Florida 32827
*Medical Provider for Veronique De La Rosa*

Dean John Rotondo, MD, PA
And Custodians of Medical and Billing Records
399 Camino Gardens Boulevard, Ste. 200
Boca Raton, Florida 33432
*Medical Provider for Veronique De La Rosa*

Leslie Rouder, LCSW
And Custodians of Medical and Billing Records
21643 Cypress Road
Boca Raton, Florida 33433
(561) 706-1274
*Medical Provider for Veronique De La Rosa*

Silver Lining Psychiatry
And Custodians of Medical and Billing Records
3724 Winter Garden Vineland Road
Winter Garden, Florida 34787
*Medical Provider for Veronique De La Rosa*

Linda Tepper, LCSW
And Custodians of Medical and Billing Records
7777 Glades Road, Suite 205
Boca Raton, Florida 33434
(561) 288-3876
*Medical Provider for Leonard Pozner*

Iliana Torres, MS, LMHC
Agape Therapy Institute
And Custodians of Medical and Billing Records
37 N. Orange Ave., Suite 1100
Orlando, Florida 32801
(407) 900-8633
*Medical Provider for Leonard Pozner*

All medical care providers listed above may testify regarding matters contained in their records and depositions. Their observations, diagnosis, opinions, prognosis, facts, physical and clinical examinations, and tests done, reviewed or relied upon are incorporated herein by reference. This includes opinions regarding Plaintiff's pain, mental anguish, medical care, medical expenses, limitations, physical impairment, or any other medical issue in this case. The Custodians of Records will authenticate the records.

Plaintiff is unaware of the general substance of these experts' mental impressions and opinions, as they are treating physicians and custodians of records. However, presumably the general substance of these experts' impressions and opinions would be as contained in their respective records.

**Plaintiff's Retained Experts**

Fred Zipp
University of Texas School of Journalism
300 W Dean Keeton St
Austin, TX 78712
(512) 471-1845

Mr. Zipp is a former newspaper editor and journalism professor. He will offer his expertise concerning the standards of care in news reporting, and he will opine on how those standards were recklessly disregarded in this case. Mr. Zipp will opine that Defendants ignored elementary precautions in journalism. Mr. Zipp will also opine that Defendants entertained serious doubts about the accuracy of their statements. Mr. Zipp will analyze the facts and circumstances of the publications which show that Defendants were motivated by a desire to avoid the truth and to inflict harm on Plaintiff. Materials reviewed by Mr. Zipp are being produced as SANDY HOOK-000001-000642. Mr. Zipp has also reviewed the March 4, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Free Speech Systems, and the November 27, 2019 deposition of Paul Watson. Mr. Zipp has also reviewed the YouTube video clips described in his affidavits submitted in response to Defendants' TCPA Motions. Mr. Zipp has also reviewed the videos produced as SH VIDEO 13, consisting of Megyn Kelly's profile of Alex Jones, and SH VIDEO 14, consisting of Anderson Cooper's Interview with Veronique De La Rosa. Mr. Zipp has also reviewed Plaintiff's petition. Mr. Zipp has also reviewed Plaintiff's discovery requests and Defendants' responses. Mr. Zipp's curriculum vitae is attached hereto as Exhibit "1."

In addition to the materials described above, Mr. Zipp has viewed the following videos or portions thereof:

|   | Title | Date | Produced as |
|---|-------|------|-------------|
| 1 | Connecticut School Massacre Looks Like False Flag Says Witnesses | December 14, 2012 | SH VIDEO 1 |
| 2 | Creepy Illuminati Message in Batman Movie Hints at Sandy Hook School | December 17, 2012 | F2mRuEhmoGA |
| 3 | Sandy Hook 2nd Shooter Cover-Up | December 19, 2012 | 6W6b-voc-Ds |
| 4 | Sandy Hook Father Remembers Fallen Hero | December 19, 2012 | 8cZkHDHl6nQ |

| 5 | Lower Part of Gotham Renamed "Sandy Hook" in Dark Knight Film | December 21, 2012 | Fus1FpQiU-Q |
| 6 | Callers React to Foreign Media Pushing Total Gun Confiscation | January 4, 2013 | SH VIDEO 2 |
| 8 | Prof. Claims Sandy Hook Massacre MSM Misinformation | January 10, 2013 | D8GxrKJDSL8 |
| 9 | Sandy Hook AR-15 Hoax? Still No School Surveillance Footage | January 15, 2013 | Oo74myC3bqY |
| 10 | Clearing Up Some Disinfo on Sandy Hook Massacre with James Tracy | January 18, 2013 | SH VIDEO 3 |
| 11 | Why People Think Sandy Hook is a Hoax | January 27, 2013 | tM5ZdO-IgEE |
| 12 | Dr. Steve Pieczenik: Sandy Hook was A Total False Flag! | March 27, 2013 | 5EfyD7Wu5fQ |
| 13 | Crisis Actors Used at Sandy Hook! Special Report | April 1, 2013 | shQSVhS0hLw |
| 14 | Obama Gun Grab Psyop | April 9, 2013 | SH VIDEO 4 |
| 15 | Shadow Govt Strike Again | April 16, 2013 | SH VIDEO 5 |
| 16 | Sandy Hook Police Ordered to Stand Down? | November 23, 2013 | xP9fhKUaudo |
| 17 | Sandy Hook Investigator Stonewalled and Threatened | February 20, 2014 | oGpWtqdiSCY |
| 18 | Sandy Hook, False Narratives Vs. The Reality | March 14, 2014 | esIvAO2aIlw |
| 19 | Revealed: Sandy Hook Truth Exposed | May 9, 2014 | _rSLOYCHNdw |
| 20 | Sandy Hook "Officials" Caught In Coverup And Running Scared | May 13, 2014 | MH6hmI1h-iQ |
| 21 | Bombshell: Sandy Hook Massacre Was A DHS Illusion Says School Safety Expert | May 13, 2014 | x2a1FwYEZS4 |
| 22 | Sandy Hook Deaths Missing From FBI Report | September 25, 2014 | A2Z0zUZBn7k |

| 23 | Sandy Hook Film Censorship Efforts Backfire | December 12, 2014 | 4T8_WYzH5SM |
| 24 | The Ultimate Sandy Hook Debate As The 2nd Anniversary Looms | December 12, 2014 | 6aK0P-WxjU8 |
| 25 | Will Bushmaster Lawsuit Reveal Sandy Hook Hoax? | December 16, 2014 | BFyDqDLAcLQ |
| 26 | Lawsuit Could Reveal Truth About Sandy Hook Massacre | December 27, 2014 | kK8CnIBA928 |
| 27 | America the False Democracy | December 28, 2014 | SH VIDEO 6 |
| 28 | Why We Accept Govt Lies | January 13, 2015 | SH VIDEO 7 |
| 29 | Title Unknown – Video discussing HONR Network | February 12, 2015 | SH VIDEO 8 |
| 30 | New Bombshell Sandy Hook Information In-Bound | March 4, 2015 | _7ib5WkULBY |
| 31 | New Sandy Hook Questions Arise from FOIA Hearing | May 29, 2015 | 5cll79t7Mrw |
| 32 | Sandy Hook: The Lies Keep Growing | May 29, 2015 | Ml3KVj2nVRA |
| 33 | School Administrator Exposes Sandy Hook Stonewall | May 29, 2015 | SO8Xb-t4nT4 |
| 34 | Official Claims DHS Involved in Sandy Hook | June 4, 2015 | BWsbyH2Wa0E |
| 35 | Govt is Manufacturing Crises | July 7, 2015 | SH VIDEO 9 |
| 36 | Retired FBI Agent Investigates Sandy Hook: MEGA MASSIVE COVER UP | July 7, 2015 | jCOe3qIgyFA |
| 37 | The Fight for Freedom of Information in Sandy Hook | July 8, 2015 | l0miXJ-djeA |
| 38 | Alex Jones Final Statement on Sandy Hook | November 18, 2016 | MwudDfz1yAk |
| 39 | Hunt for Wikileaks Source Begins | March 8, 2017 | SH VIDEO 10 |
| 40 | Sandy Hook Vampires Exposed | April 22, 2017 | rUn1jKhWTXI |

| 41 | Media Refuses To Report Alex Jones' Real Statements On Sandy Hook | June 13, 2017 | kf2F7RxJ9e4 |
| 42 | Zero Hedge Discovers Anomaly In Alex Jones Hit Piece | June 26, 2017 | SH VIDEO 11 |
| 43 | JFK Assassination Documents To DROP Tonight | October 26, 2017 | SH VIDEO 12 |
| 44 | Watch as Megyn Kelly Opens Old Wounds Of Sandy Hook Victims | April 20, 2018 | uQkAJykqyeo |

Becca Lewis
Stanford University, Department of Communication
Building 120, Room 110
450 Jane Stanford Way
Stanford, CA 94305
(650) 723-1941

Ms. Lewis is an academic researcher in the field of media technologies and online discourse, with a focus on media manipulation and disinformation. Ms. Lewis will offer her expertise on digital political subcultures, internet celebrity, and online news platforms. Ms. Lewis will testify about InfoWars' cultural footprint and role in the online media ecosystem. Ms. Lewis will opine that Defendants' actions were a substantial factor in the spread of false facts about the Sandy Hook shooting. Materials reviewed by Ms. Lewis are being produced as SANDY HOOK-000643-002142. Ms. Lewis has also reviewed the March 4, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Alex Jones, and the November 27, 2019 deposition of Paul Watson. Ms. Lewis has also reviewed the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly In Alex Jones Hit Piece" and the April 22, 2017 video entitled "Sandy Hook Vampires Exposed." Ms. Lewis has also reviewed FSSTX-082669-082812; FSSTX-085731-FSSTX-086492; FSSTX-086569-FSSTX-086583; FSSTX-086588-FSSTX-086589. Ms. Lewis has also reviewed Plaintiff's petition. Ms. Lewis has also reviewed Plaintiff's discovery requests and Defendants' responses. Ms. Lewis' curriculum vitae is attached as Exhibit "2."

Dr. Roy Lubit
165 West End Ave #3k
New York, NY 10023
(917) 846-7829

Dr. Lubit is a forensic psychiatrist with expertise in the impact of stress and emotional trauma. Dr. Lubit will testify about Plaintiffs' mental injury and the psychological stresses involved from Defendants' false statements and denial of Plaintiffs' trauma. Dr. Lubit will opine that Defendants' actions were a substantial factor in Plaintiffs' severe mental anguish

and continuing grief. Dr. Lubit will testify about his evaluation of Plaintiff. Dr. Lubit will also review any medical records produced in this suit. Dr. Lubit's curriculum vitae is attached as Exhibit "3."

## II.

Plaintiff reserves the right to supplement this designation with additional designations of experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Texas Rules of Civil Procedure and/or the Texas Rules of Civil Evidence.

## III.

Plaintiff reserves the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by other parties to the suit.  Plaintiff expresses his intention to possibly call, as witnesses associated with adverse parties, any of Defendants' experts.

## IV.

Plaintiff reserves the right to call undesignated rebuttal expert witnesses whose testimony cannot reasonably be foreseen until the presentation of the evidence against Plaintiff.

## V.

Plaintiff reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

## VI.

Plaintiff reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not be violative of any existing Court Order or the Texas Rules of Civil Procedure.

VII.

Plaintiff hereby designates, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial.  In the event a present or future party designates an expert but then is dismissed for any reason from the suit or fails to call any designated expert, Plaintiff reserves the right to designate and/or call any such party or any such experts previously designated by any party.

VIII.

Plaintiff reserves whatever additional rights they might have with regard to experts, pursuant to the Texas Rules of Civil Procedure, the Texas Rules of Civil Evidence, the case law construing same, and the rulings of the trial court.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

_____

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
(713) 221-8300 Telephone
(713) 221-8301 Fax

**ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 2nd day of December, the forgoing document was served upon all counsel of record via electronic service.

Bradley J. Reeves
Reeves Law, PLLC
702 Rio Grande St., Suite 203
Austin, Texas 78701
Email:  brad@brtx.law

MARK D. BANKSTON

# D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

---

## PLAINTIFF'S SECOND SUPPLEMENTAL DESIGNATION OF EXPERTS

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Neil Heslin, Plaintiff and files this his Second Supplemental Designation of Expert Witnesses, and in supplementation of all prior discovery requests requesting identification of fact and expert witnesses, as follows:

I.

### Plaintiff's Non-Retained Medical Experts

Contemporary Care Psychiatric Centers of Excellence
And Custodians of Medical and Billing Records
84 Hospital Ave.
Danbury, CT 06810
(203) 769-1312

F. Carl Mueller, MD, MPH, M.S., F.A.P.A.
And Custodians of Medical and Billing Records
999 Summer St., Ste. 200
Stamford, CT 06905
(203) 357-7773

W. Michael Crouch, LCSW
And Custodians of Medical and Billing Records
999 Summer Street, Ste. 200
Stamford, CT 06905
(203) 961-1152

All medical care providers listed above may testify regarding matters contained in their records and depositions. Their observations, diagnosis, opinions, prognosis, facts, physical and clinical examinations, and tests done, reviewed or relied upon are incorporated herein by reference. This includes opinions regarding Plaintiff's pain, mental anguish, medical care, medical expenses, limitations, physical impairment, or any other medical issue in this case. The Custodians of Records will authenticate the records.

Plaintiff is unaware of the general substance of these experts' mental impressions and opinions, as they are treating physicians and custodians of records. However, presumably the general substance of these experts' impressions and opinions would be as contained in their respective records.

### Plaintiff's Retained Experts

Fred Zipp
University of Texas School of Journalism
300 W Dean Keeton St
Austin, TX 78712
(512) 471-1845

Mr. Zipp is a former newspaper editor and journalism professor. He will offer his expertise concerning the standards of care in news reporting, and he will opine on how those standards were recklessly disregarded in this case. Mr. Zipp will opine that Defendants ignored elementary precautions in journalism. Mr. Zipp will also opine that Defendants entertained serious doubts about the accuracy of their statements. Mr. Zipp will analyze the facts and circumstances of the publications which show that Defendants were motivated by a desire to avoid the truth and to inflict harm on Plaintiff. Materials reviewed by Mr. Zipp are being produced as SANDY HOOK-000001-000642. Mr. Zipp has also reviewed the March 4, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Free Speech Systems, and the November 27, 2019 deposition of Paul Watson. Mr. Zipp has also reviewed the YouTube video clips described in his affidavits submitted in response to Defendants' TCPA Motions. Mr. Zipp has also reviewed the videos produced as SH VIDEO 13, consisting of Megyn Kelly's profile of Alex Jones, and SH VIDEO 14, consisting of Anderson Cooper's Interview with Veronique De La Rosa. Mr. Zipp has also reviewed Plaintiff's petition. Mr. Zipp has also reviewed Plaintiff's discovery requests and Defendants' responses. Mr. Zipp's curriculum vitae is attached hereto as Exhibit "1."

In addition to the materials described above, Mr. Zipp has viewed the following videos or portions thereof:

|   | Title | Date | Produced as |
|---|-------|------|-------------|
| 1 | Connecticut School Massacre Looks Like False Flag Says Witnesses | December 14, 2012 | SH VIDEO 1 |

| 2 | Creepy Illuminati Message in Batman Movie Hints at Sandy Hook School | December 17, 2012 | F2mRuEhmoGA |
|---|---|---|---|
| 3 | Sandy Hook 2nd Shooter Cover-Up | December 19, 2012 | 6W6b-voc-Ds |
| 4 | Sandy Hook Father Remembers Fallen Hero | December 19, 2012 | 8cZkHDHl6nQ |
| 5 | Lower Part of Gotham Renamed "Sandy Hook" in Dark Knight Film | December 21, 2012 | Fus1FpQiU-Q |
| 6 | Callers React to Foreign Media Pushing Total Gun Confiscation | January 4, 2013 | SH VIDEO 2 |
| 8 | Prof. Claims Sandy Hook Massacre MSM Misinformation | January 10, 2013 | D8GxrKJDSL8 |
| 9 | Sandy Hook AR-15 Hoax? Still No School Surveillance Footage | January 15, 2013 | Oo74myC3bqY |
| 10 | Clearing Up Some Disinfo on Sandy Hook Massacre with James Tracy | January 18, 2013 | SH VIDEO 3 |
| 11 | Why People Think Sandy Hook is a Hoax | January 27, 2013 | tM5ZdO-IgEE |
| 12 | Dr. Steve Pieczenik: Sandy Hook was A Total False Flag! | March 27, 2013 | 5EfyD7Wu5fQ |
| 13 | Crisis Actors Used at Sandy Hook! Special Report | April 1, 2013 | shQSVhS0hLw |
| 14 | Obama Gun Grab Psyop | April 9, 2013 | SH VIDEO 4 |
| 15 | Shadow Govt Strike Again | April 16, 2013 | SH VIDEO 5 |
| 16 | Sandy Hook Police Ordered to Stand Down? | November 23, 2013 | xP9fhKUaudo |
| 17 | Sandy Hook Investigator Stonewalled and Threatened | February 20, 2014 | oGpWtqdiSCY |
| 18 | Sandy Hook, False Narratives Vs. The Reality | March 14, 2014 | esIvAO2aIlw |
| 19 | Revealed: Sandy Hook Truth Exposed | May 9, 2014 | _rSLOYCHNdw |

| 20 | Sandy Hook "Officials" Caught In Coverup And Running Scared | May 13, 2014 | MH6hmI1h-iQ |
| 21 | Bombshell: Sandy Hook Massacre Was A DHS Illusion Says School Safety Expert | May 13, 2014 | x2a1FwYEZS4 |
| 22 | Sandy Hook Deaths Missing From FBI Report | September 25, 2014 | A2Z0zUZBn7k |
| 23 | Sandy Hook Film Censorship Efforts Backfire | December 12, 2014 | 4T8_WYzH5SM |
| 24 | The Ultimate Sandy Hook Debate As The 2nd Anniversary Looms | December 12, 2014 | 6aK0P-WxjU8 |
| 25 | Will Bushmaster Lawsuit Reveal Sandy Hook Hoax? | December 16, 2014 | BFyDqDLAcLQ |
| 26 | Lawsuit Could Reveal Truth About Sandy Hook Massacre | December 27, 2014 | kK8CnIBA928 |
| 27 | America the False Democracy | December 28, 2014 | SH VIDEO 6 |
| 28 | Why We Accept Govt Lies | January 13, 2015 | SH VIDEO 7 |
| 29 | Title Unknown – Video discussing HONR Network | February 12, 2015 | SH VIDEO 8 |
| 30 | New Bombshell Sandy Hook Information In-Bound | March 4, 2015 | _7ib5WkULBY |
| 31 | New Sandy Hook Questions Arise from FOIA Hearing | May 29, 2015 | 5cll79t7Mrw |
| 32 | Sandy Hook: The Lies Keep Growing | May 29, 2015 | Ml3KVj2nVRA |
| 33 | School Administrator Exposes Sandy Hook Stonewall | May 29, 2015 | SO8Xb-t4nT4 |
| 34 | Official Claims DHS Involved in Sandy Hook | June 4, 2015 | BWsbyH2Wa0E |
| 35 | Govt is Manufacturing Crises | July 7, 2015 | SH VIDEO 9 |
| 36 | Retired FBI Agent Investigates Sandy Hook: MEGA MASSIVE COVER UP | July 7, 2015 | jCOe3qIgyFA |

| 37 | The Fight for Freedom of Information in Sandy Hook | July 8, 2015 | l0miXJ-djeA |
| 38 | Alex Jones Final Statement on Sandy Hook | November 18, 2016 | MwudDfz1yAk |
| 39 | Hunt for Wikileaks Source Begins | March 8, 2017 | SH VIDEO 10 |
| 40 | Sandy Hook Vampires Exposed | April 22, 2017 | rUn1jKhWTXI |
| 41 | Media Refuses To Report Alex Jones' Real Statements On Sandy Hook | June 13, 2017 | kf2F7RxJ9e4 |
| 42 | Zero Hedge Discovers Anomaly In Alex Jones Hit Piece | June 26, 2017 | SH VIDEO 11 |
| 43 | JFK Assassination Documents To DROP Tonight | October 26, 2017 | SH VIDEO 12 |
| 44 | Watch as Megyn Kelly Opens Old Wounds Of Sandy Hook Victims | April 20, 2018 | uQkAJykqyeo |

Becca Lewis
Stanford University, Department of Communication
Building 120, Room 110
450 Jane Stanford Way
Stanford, CA 94305
(650) 723-1941

Ms. Lewis is an academic researcher in the field of media technologies and online discourse, with a focus on media manipulation and disinformation. Ms. Lewis will offer her expertise on digital political subcultures, internet celebrity, and online news platforms. Ms. Lewis will testify about InfoWars' cultural footprint and role in the online media ecosystem. Ms. Lewis will opine that Defendants' actions were a substantial factor in the spread of false facts about the Sandy Hook shooting. Materials reviewed by Ms. Lewis are being produced as SANDY HOOK-000643-002142. Ms. Lewis has also reviewed the March 4, 2019 deposition of Alex Jones, the November 26, 2019 deposition of Alex Jones, and the November 27, 2019 deposition of Paul Watson. Ms. Lewis has also reviewed the June 26, 2017 video entitled "Zero Hedge Discovers Anomaly In Alex Jones Hit Piece" and the April 22, 2017 video entitled "Sandy Hook Vampires Exposed." Ms. Lewis has also reviewed FSSTX-082669-082812; FSSTX-085731-FSSTX-086492; FSSTX-086569-FSSTX-086583; FSSTX-086588-FSSTX-086589. Ms. Lewis has also reviewed Plaintiff's petition. Ms. Lewis has also reviewed Plaintiff's discovery requests and Defendants' responses. Ms. Lewis' curriculum vitae is attached as Exhibit "2."

Dr. Roy Lubit
165 West End Ave #3k
New York, NY 10023
(917) 846-7829

Dr. Lubit is a forensic psychiatrist with expertise in the impact of stress and emotional trauma. Dr. Lubit will testify about Plaintiff's mental injury and the psychological stresses involved from Defendants' false statements and denial of Plaintiff's trauma. Dr. Lubit will opine that Defendants' actions were a substantial factor in Plaintiff's severe mental anguish and continuing grief. Dr. Lubit will testify about his evaluation of Plaintiff. Dr. Lubit will also review any medical records produced in this suit. Dr. Lubit's curriculum vitae is attached as Exhibit "3."

## II.

Plaintiff reserves the right to supplement this designation with additional designations of experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Texas Rules of Civil Procedure and/or the Texas Rules of Civil Evidence.

## III.

Plaintiff reserves the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by other parties to the suit. Plaintiff expresses his intention to possibly call, as witnesses associated with adverse parties, any of Defendants' experts.

## IV.

Plaintiff reserves the right to call undesignated rebuttal expert witnesses whose testimony cannot reasonably be foreseen until the presentation of the evidence against Plaintiff.

## V.

Plaintiff reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

## VI.

Plaintiff reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not be violative of any existing Court Order or the Texas Rules of Civil Procedure.

## VII.

Plaintiff hereby designates, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial.  In the event a present or future party designates an expert but then is dismissed for any reason from the suit or fails to call any designated expert, Plaintiff reserves the right to designate and/or call any such party or any such experts previously designated by any party.

## VIII.

Plaintiff reserves whatever additional rights they might have with regard to experts, pursuant to the Texas Rules of Civil Procedure, the Texas Rules of Civil Evidence, the case law construing same, and the rulings of the trial court.


Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

_____
MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
(713) 221-8300 Telephone
(713) 221-8301 Fax

**ATTORNEY FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on 2nd day of December, the forgoing document was served upon all counsel of record via electronic service.

Bradley J. Reeves
Reeves Law, PLLC
702 Rio Grande St., Suite 203
Austin, Texas 78701
Email:  brad@brtx.law

_____
MARK D. BANKSTON

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 60455399
Status as of 1/10/2022 9:04 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/4/2022 12:11:23 AM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/4/2022 12:11:23 AM | SENT |
| William Ogden | | bill@fbtrial.com | 1/4/2022 12:11:23 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/4/2022 12:11:23 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/4/2022 12:11:23 AM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/4/2022 12:11:23 AM | SENT |

1/5/2022 1:32 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Alexus Rodriguez

No. **D-1-GN-18-001835**

| | | |
|---|---|---|
| NEIL HESLIN | : | IN THE DISTRICT COURT OF |
| | : | |
| | : | |
| vs. | : | **TRAVIS COUNTY, TEXAS** |
| ALEX E. JONES, | : | |
| INFOWARS, LLC, FREE SPEECH | : | |
| SYSTEMS, LLC, AND OWEN SHROYER | : | **459TH JUDICIAL DISTRICT** |

## NOTICE OF DELIVERY

RE:  **Crouch, Michael, W., LCSW (Billing)**

I,   ___Cris Garza___  , Notary Public in and for the State of Texas, hereby certify pursuant to the Rule 203, Texas Rules of Civil Procedure,

1.  That this Deposition by Written Questions of **William Michael Crouch**, the Custodian of Records for the above named is a true and exact duplicate of the records pertaining to **Neil Heslin**, given by the witness named herein, after said witness was duly sworn by **Chistopher Perrett**;

2.  That the transcript is a true record of the testimony given by the witness;

3.  That $ 265.25 is the charge for the preparation of the completed Deposition by Written Questions and any copies of exhibits, charged to Attorney for **Plaintiff, Mark D. Bankston, TBA # 24001430;**

4.  **That the deposition transcript was submitted on  09/20/2021 9:00AM.** to the witness for examination, signature and return to the officer by a specified date;

5.  That changes, if any made by the witness, in the transcript and otherwise are attached thereto or incorporated therein;

6.  That the witness returned the transcript;

7.  That the original deposition by Written Questions and a copy thereof, together with copies of all exhibits was delivered to **Mark D. Bankston (Kaster, Lynch, Farrar & Ball, LLP) 1117 Herkimer Street Houston, 77008** who Noticed the first questions for safekeeping and use at trial;

8.  That pursuant to information made a part of the records at the time said testimony was taken, the following includes all parties of record:
    **Bradley Reeves (Reeves Law, PLLC) 512-318-2484**
    **Mark D. Bankston (Kaster, Lynch, Farrar & Ball, LLP) 713-221-8301**
and
9.  A copy of this Notice of Delivery was served on all parties shown herein.

GIVEN UNDER MY HAND AND SEAL OF OFFICE ON  10/27/2021 .

**Discovery Resource**
**1511 West 34th Street**
**Houston, TX 77018**
**713-223-3300 Fax713-228-3311**



Notary Public in and for the State of Texas

**93489.006**

CRIS GARZA
MY COMMISSION EXPIRES
JUNE 23, 2025
NOTARY ID: 126941309

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 60519475
Status as of 1/7/2022 10:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Scott Weatherford | | sweatherford@jw.com | 1/5/2022 1:32:20 PM | SENT |
| Joshua ARomero | | jromero@jw.com | 1/5/2022 1:32:20 PM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 1/5/2022 1:32:20 PM | SENT |
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/5/2022 1:32:20 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/5/2022 1:32:20 PM | SENT |
| William Ogden | | bill@fbtrial.com | 1/5/2022 1:32:20 PM | SENT |
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 1:32:20 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/5/2022 1:32:20 PM | SENT |
| Robert Linkin | | rlinkin@munckwilson.com | 1/5/2022 1:32:20 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 1/5/2022 1:32:20 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/5/2022 1:32:20 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/5/2022 1:32:20 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 1:32:20 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name |
|------|

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 60519475
Status as of 1/7/2022 10:20 AM CST

Associated Case Party: INFOWARS LLC

| | | | | |
|---|---|---|---|---|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 1:32:20 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 1:32:20 PM | SENT |

1/5/2022 12:46 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez

## CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| **NEIL HESLIN,** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **ALEX E. JONES, INFOWARS, LLC, et** | § | |
| **al.,** | § | |
| | § | |
| **Defendants.** | § | **261ST JUDICIAL DISTRICT** |

---

### NON-PARTY MEDIA VERITE'S UNOPPOSED REQUEST FOR ORDER TO ALLOW RECORDING AND BROADCASTING OF COURT PROCEEDINGS

---

Non-Party Media Verite files this Unopposed Request for Recording and Broadcasting of Court Proceedings pursuant to TEX. R. CIV. P. 18c and Travis County Local Rule 16, and in support thereof shows the Court the following:

### I.    SUMMARY

Media Verite is a multi-award-winning production company, Canadian and British based, helmed by four-time academy award nominated and two-time Oscar Winner Malcolm Clarke.  The filmmakers would like permission to film the court proceedings for a documentary based in part on the First Amendment rights battle between InfoWars and the families of Sandy Hook. The documentary seeks to look into the court case and legal battles between the two sides and the issues and effects on the broader public in the USA. By this request, Media Verite seeks to record the proceedings in this lawsuit and broadcast portions of the proceedings in the documentary. These recordings will not harm or disadvantage any party or potential witness but will instead promote public access and exposure to the court system, in general, and the issues in this lawsuit, in particular.

Media Verite will accommodate any necessary restrictions on recording imposed by the Court and be as unobtrusive as possible in its operations. Media Verite respectfully requests the Court exercise its discretion and allow the recording and broadcasting of these important proceedings.

## II.     STATEMENT OF CONSENT

Plaintiff previously consented to a similar request by Amos Pictures, Ltd. to record all proceedings in this lawsuit, which request was granted by this Court on July 16, 2021 ("Court Order"). *See* Exhibit 1. That request and Court Order was supported by and agreed as to form and substance by both Plaintiffs and Defendants. *See id.* at 3. In addition, neither Plaintiff nor Defendants object to Media Verite's request to record all proceedings in this lawsuit. See Exhibits 2 and 3.

## III.     PROCEDURAL BACKGROUND

This lawsuit is part of the following set of cases brought against Alex Jones, InfoWars, LLC, and Free Speech Systems, LLC ("Defendants"):

- Cause No. D-1-GN-18-001835: *Neil Heslin v. Alex E. Jones, InfoWars, LLC, et al.*; in the 261st Judicial District, Travis County, Texas;

- Cause No. D-1-GN-18-001842: *Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, InfoWars, LLC, et al.*; in the 345th Judicial District, Travis County, Texas;

- Cause No. D-1-GN-18-006623: *Scarlett Lewis vs. Alex E. Jones, InfoWars, LLC & Free Speech Systems, LLC*; in the 98th Judicial District, Travis County, Texas; and

- Cause No. D-1-GN-19-004651; *Neil Heslin vs. Alex E. Jones, InfoWars, LLC & Free Speech Systems, LLC*; in the 261st Judicial District, Travis County, Texas.

(the "Lawsuits"). According to the allegations, the Lawsuits arise from:

[T]he intentional infliction of emotional distress committed against Plaintiff for the past five years through InfoWars' recklessly false statements concerning the circumstances of

the death of his child, as well as InfoWars' coordination and encouragement of a fringe community of dangerous fanatics who have stalked and endangered the Sandy Hook parents.

Orig. Pet., Cause No. D-1-GN-19-004651.[1]

Pursuant to TEX. R. CIV. P. 18c and Travis County Local Rule 16, this Court previously granted the Requests for Recording and Broadcasting of Court Proceedings in these Lawsuits brought by Non-Party Media, Amos Pictures, Ltd. *See* Exhibit 1. Similarly, Media Verite is filing Requests for Recording and Broadcasting of Court Proceedings in each of these Lawsuits.

## IV.  ARGUMENT & AUTHORITIES

Trial courts in the United States have long recognized a presumption of openness in their proceedings grounded in the public's right to know ensured by the First and Sixth Amendments to the United States Constitution as well as Article 1, Sections 8 and 10 of the Texas Constitution.[2] Both the Sixth Amendment right to a public trial and the free speech and press clause affirmatively mandate access for cameras in the courtroom. In addition, the policies underlying these amendments favor media coverage of court proceedings as a means of advancing the public's understanding of the way in which the government, and specifically the judicial system, works. The Texas Constitution's free speech amendment provides in pertinent part:

> Every person shall be at liberty to speak, write or publish his opinions on any subject . . . and no law shall ever be passed curtailing the liberty of speech or of the press.

---

[1]     There is one additional lawsuit against the Defendants (Cause No. D-1-GN-18-001605; *Marcel Fontaine v. Alex E. Jones, InfoWars, LLC*, et al.; in the 459th Judicial District, Travis County, Texas) that is unrelated to the Sandy Hook-related allegations. Media Verite does not seek to record or broadcast proceedings from this lawsuit.

[2]     Article I, Section 8 is the free speech provision to the Texas Constitution. Article I, Section 10 is the public trial provision to the Texas Constitution.

Media Verite requests permission to serve the constitutional mandates established by the United States and Texas Constitutions (and further enacted within the Travis County Local Rules) and record the proceedings in the Lawsuits.

**A.  The United States and Texas Constitutions Provide the Right of the Press and the Public to Attend Trials.**

The U.S. Supreme Court has long recognized that the Constitution requires both the press and the public be permitted to attend and observe judicial proceedings absent the most compelling circumstances. *See, e.g., Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986). There are no compelling circumstances in this case to warrant otherwise. This is particularly true given the global pandemic, where the public now must rely even more heavily on the press to cover relevant court proceedings.

According to the U.S. Supreme Court, the essential factors to consider when determining whether access attaches to a particular proceeding are: (1) whether the place and process in question historically have been open to the press and the public in general, and (2) whether public access plays a significant positive role in the functioning of the particular process in question.[3] *Id.* at 8-9. Courts in the Fifth Circuit have applied these factors in determining access to civil proceedings in state courts, including those in Texas. *See Doe v. Santa Fe Indep. Sch. Dist.*, 933 F. Supp. 647, 650 (S.D. Tex. 1996) (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3rd Cir. 1984)); *see also Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981). Finally, the Texas Supreme Court demonstrated its belief that both factors were met by lifting the ban on cameras in the courtroom, effective September 1, 1990. The Texas Supreme Court deleted Canon 3(a)(10) of the

---

[3]     These factors will be discussed *infra* Section IV.B.3.

Code of Judicial Conduct and amended Rule 18c of the Texas Rules of Civil Procedure to establish guidelines for the use of cameras in civil trial courts.

Texas Rule of Civil Procedure 18c provides that a trial court "may permit broadcasting, televising, recording, or photographing of proceedings" in three distinct circumstances. Subparagraph (b) contains a requirement for consent by the parties. At the time of filing, neither Plaintiff nor Defendants object to the request for recording and broadcasting by Non-Party Media Verite, so recording and broadcasting is appropriate under Rule 18c(b). Even absent this consent, recording and broadcasting is still proper under Rule 18c(a). Consent of the parties is **not** required under Rule 18c(a) where the media coverage is sought under guidelines promulgated by the Supreme Court. Accordingly, as set forth below, Media Verite's media coverage of this hearing pursuant to TEX. R. CIV. P. 18c(a), in accordance with the Local Rules adopted by the Supreme Court, is a proper circumstance under which the Court may permit the videotaping and broadcasting of these proceedings without regard to consent of the parties.

**B.  Recording and Broadcasting of the Lawsuits Should be Permitted Under Travis County Local Rules.**

In accordance with the Texas Supreme Court's guidance, many local jurisdictions—including Travis County—have adopted their own rules and procedures regarding cameras in the courtroom. The Rules Governing the Recording and Broadcasting of Court Proceedings in the Civil District Courts of Travis County (the "Local Rules") were approved by order of the Texas Supreme Court on April 14, 2014. Under the Local Rules, "the decision to allow [media] coverage is discretionary and will be made by the Court on a case-by-case basis." Local Rule 16.3.4. "In determining an application for coverage, the Court shall consider all relevant factors, including but not limited to:

   a)   the type of case involved;

    b)  whether the coverage would cause harm to any participants;

    c)  whether the coverage would interfere with the fair administration of justice, advancement of a fair trial, or the rights of the parties;

    d)  whether the coverage would interfere with any law enforcement activity;

    e)  the objections of any of the parties, prospective witnesses, victims, or other participants in the proceeding for which coverage is sought; the physical structure of the courtroom and the likelihood that and equipment required to conduct coverage of proceedings can be installed and operated without disturbance to those proceedings or any other proceedings in the Courthouse;

    f)  the extent to which the coverage would be barred by law in the judicial proceeding of which coverage is sought; and

    g)  the fact that any party, prospective witness, victim, or other participant in the proceeding is a child, to which fact the Court shall give great weight."

*Id*. Here, as discussed below, these factors weigh heavily in favor of allowing Media Verite to record and broadcast the proceedings.

### 1.  The type of case involved.

At their core, the Lawsuits involve issues related to freedom of speech, defamation, and media rights. The plaintiffs in these Lawsuits allege that the Defendants published false and defamatory statements in videos and articles with the intent to cause emotional distress, harassment, and ridicule to the plaintiffs. In response, the Defendants claim the following:

> [T]his lawsuit is also a strategic device used by Plaintiff and her attorneys, in conjunction with at least other two lawsuits filed by her attorneys on behalf of others with whom Plaintiff is acting, to silence Defendants' free speech and an attempt to hold Defendants liable for simply expressing their opinions about **matters of public concern**. The goal of Plaintiff and her attorneys in this lawsuit as well as the goal of others who have similarly sued, is to silence Defendants from expressing what she and they consider to be inappropriate speech about Sandy Hook and other **matters of public concern**.

*See* Defendants' Motion to Dismiss under the Texas Citizens Participation Act, Cause No. D-1-GN-18-006623 (emphasis added). Media Verite believes the public has great interest in not only

the subject matter of these Lawsuits, but also in how the judicial system will resolve these contentious claims, which is still a topic of interest today.[4]

## 2. Whether the coverage would cause harm to any participants.

Plaintiff—who arguably could suffer the most harm from having these proceedings broadcast—has consented to their recording. Defendants likewise do not object to Media Verite's request. Nor can anyone offer any demonstrable injury that might result from such recordings. Indeed, the Defendants, who operate in the media space, should embrace open access to these proceedings. InfoWars.com has reached more than 1 million page visits per day and, as of 2018, averaged more than 25 million page views per month.[5] It would be incongruous to allow the Defendants to broadcast the very statements, articles, interviews, and videos at issue in these Lawsuits while, at the same time, disallowing the public from viewing proceedings that attempt to hold Defendants liable for those publications.

## 3. Whether the coverage would interfere with the fair administration of justice, advancement of a fair trial, or the rights of the parties.

Trials have traditionally been open for public scrutiny. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980);[6] *Gannett Co. v. DePasquale*, 443 U.S. 368, 386, n. 15 (1979). This is, in part, because the public and the press have a First Amendment right to attend

---

[4]     https://www.nytimes.com/2021/10/01/us/alex-jones-lawsuit-sandy-hook.html

[5]     https://www.statesman.com/story/business/2018/08/13/bans-dont-seem-to-be-lessening-reach-of-alex-jones-infowars/9964821007/

[6]     In *Richmond Newspapers*, the Supreme Court addressed squarely for the first time whether a criminal trial could be closed to the public on the request of a defendant without a demonstration that closure is required to protect the defendant's right to a fair trial, or that some other overriding consideration requires closure. The Supreme Court held that it could not. Long ago, Texas reached the same conclusion. See *Ex parte Foster*, 44 Tex. Crim. 423, 71 S.W. 593 (1903); *Ex parte McCormick*, 129 Tex. Crim. 457, 88 S.W.2d 104 (1935). While *Richmond Newspapers* addressed the closure of a criminal trial, its reasoning is generally applicable to civil trials. Indeed, the court noted that historically both civil and criminal trials have been presumptively open. *Richmond Newspapers*, 448 U.S. at 575.

trials. "[T]he First Amendment can be read as protecting the right of everyone to attend trials ...." *Richmond Newspapers*, 448 U.S. at 573-575. Indeed, openness "has long been recognized as an indispensable attribute of an Anglo-American trial." *Id*. at 569; *accord Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the courtroom is public property."). As Justice Brennan explained: "Where ... the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest." *Globe Newspapers v. Superior Court*, 457 U.S. 596, 606-07 (1982).

The core purpose of this right of access is to enable the public, through the press, to monitor judicial proceedings.[7] *See Richmond*, 448 U.S. at 555. This purpose is clearly met in this case. The First Amendment right to attend trials serves to reinforce public acceptance of "both the process and its results." *Id*. at 571. In his concurring opinion, Justice Brennan referred to this as the presses' broader "structural" role of ensuring full and informed participation in the democratic process. *Id*. at 587-88.[8] In a later case, the Supreme Court reiterated that "[p]ublic access to civil proceedings plays a significant role in the proper functioning of the judicial process and the government as a whole." *Globe Newspapers*, 457 U.S. at 606.

The U.S. Supreme Court has repeatedly made it clear that press and public rights to attend both civil and criminal trials serve not only to educate the public about how the justice systems works, but also to secure confidence in that system. *Richmond Newspapers*, 448 U.S. at 572; *Globe*

---

[7]     Paul, Angelique M., *Turning the Camera on Court TV: Does Televising Trials Teach us Anything About the Real Law?*, 58 OHIO ST. L. J. 655, 691, at n. 3 (1997)("For any democracy to survive and flourish, the citizens of that democracy must know what their public servants are doing and how well they are performing the jobs with which they have been entrusted.").

[8]     Justice Brennan also noted that "public access to trials displays their fairness, prevents public resentment, dissuades judges from excess, and calls the attention of important, but unknown witnesses." *Richmond Newspapers*, 448 U.S. at 595-97.

*Newspapers Co.*, 457 U.S. at 605-06. The Court's justification for allowing filming applies equally to civil proceedings.[9]

During the current global pandemic where in-person attendance is not feasible, the right to attend trial is vindicated through the press' ability to cover trial proceedings. Here, Media Verite' coverage will enhance the dignity of the proceedings and the public's perception of them. The coverage of the actual proceedings, with a dignified judge presiding over a respectful and attentive courtroom, will contrast with the typically skewed or sensationalized events, such as "spin control" conducted by parties and television dramatizations of courtroom proceedings, that may transpire **outside** the courtroom. The camera inside the courtroom, unobtrusively and accurately recording the dignified proceedings, will enable the public to see what actually occurred and create an historical record.

**4.  Whether the coverage would interfere with any law enforcement activity.**

Media Verite is not aware of any law enforcement activity related to the subject matter of the Lawsuits. Even so, allowing Media Verite access to these proceedings would not interference with any law enforcement activity.

**5.  The objections of any of the parties, prospective witnesses, victims, or other participants in the proceeding for which coverage is sought; the physical structure of the courtroom and the likelihood that any equipment required to conduct coverage of proceedings can be installed and operated without disturbance to those proceedings or any other proceedings in the Courthouse.**

---

[9]     Cameras have also traditionally been allowed in a variety of civil proceedings. *See Deatherage v. Examining Bd. of Psychology*, 932 P.2d 1267 (Wash. App. 1996) (cameras allowed in an administrative disciplinary hearing of a Washington psychologist); *New York v. Haygood*, 23 Med. L. Rptr. 1636 (N.Y. Sup. Ct. 1995)(camera allowed in civil trial of podiatrist accused of billing fraud); *Sprecher v. Sprecher*, 15 Med. L. Rptr. 1773 (N.Y. Sup. Ct. 1988) (camera allowed in child custody proceeding); *Lang v. Tampa Television, Inc.*, 11 Med. L. Rptr. 1150 (Fla. 4th Cir. Ct. 1984) (television station granted permission to broadcast proceedings in civil action by rape victim).

No party, prospective witnesses, victims, or other participants in the Lawsuits has voiced any objection to Media Verite being allowed to record and broadcast the proceedings.

If the proceedings in the Lawsuits are conducted virtually via Zoom, then there will be very little, if any, obstruction. If the proceedings are conducted at the courthouse, Media Verite will operate at all times with great care and in close consultation with the Court and its staff and will submit to the Court in all matters related to any restrictions on recording. Media Verite has significant prior experience filming court proceedings in the United States and will ensure that the business of the court is not impeded and the Judge's instructions are followed. Equipment will be unobtrusive and consist of one digital cinema camera on a tripod, which can be operated from a seated position, as well as a number of remotely operated wireless microphones.

Given the parameters of Media Verite' request and the breadth of experience Media Verite has in filming in an unobtrusive manner in the courtroom, the Court can comfortably set conditions on Media Verite that will eliminate any concerns of interference in the proceedings.

**6. The extent to which the coverage would be barred by law in the judicial proceeding of which coverage is sought.**

Media Verite is not aware of any law that would prevent or prohibit the recording and broadcast of the proceedings in this Lawsuit. Instead, as set forth above, the law strongly supports Media Verite' proposed filming of the proceedings.

**7. The fact that any party, prospective witness, victim, or other participant in the proceeding is a child, to which fact the Court shall give great weight.**

The Sandy Hook school shooting involved the tragic loss of the lives of multiple children. But in this Lawsuit, there are no minor plaintiffs, nor minor witnesses expected. As a result, this factor weighs in favor of recording and broadcasting.

In the unexpected event that a minor does testify in the proceedings, Media Verite will comply with any restrictions on recording the Court deems necessary. In this regard, the opinion in *Doe v. Santa Fe Independent School District*, 933 F. Supp. 647, 650 (S.D. Tex. 1996) is instructive. In *Doe*, the court considered access to a civil trial involving adult and minor plaintiffs over violations of the First Amendment establishment clause. *Id*. The court held that the trial would be closed only to the extent necessary to protect the minor plaintiffs but would not be closed to protect the adult plaintiffs. *Id*. at 651. The court held that the trial should remain open to the public unless "denial [of the constitutional right of access] is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest." *Id*. at 650 (*quoting Globe Newspaper*, 457 U.S. at 607). Ultimately, the court found the adult plaintiffs' right of privacy was insufficient to deny the public's First Amendment right of access. *Id*. at 652. Accordingly, to the extent the Court requires restrictions related to minor victims or minor witnesses, the Court should grant open access to the remaining proceedings that do not involve minors.

### C. Media Verite Will Comply with Travis County Local Rules.

Media Verite and its personnel understand and agree that:

1. All media personnel covering the proceedings will comply with applicable provisions of the Texas Rules of Civil Procedure and the Local Rules.

2. If the Court requires, there will be no audio or visual coverage of the testimony of any witness unless consent of that witness has been obtained in the manner required by the Court and filed with the District Clerk, with a copy delivered to the trial court.

3. Permission may be withdrawn by the Court at any time pursuant to the Local Rules, at which time media coverage will immediately cease.

4. This request has been filed with the District Clerk, with a copy delivered to the trial court and the Court Administrator.

## V.     CONCLUSION

The factors set forth by the Travis County Local Rules applied to the circumstances of the Lawsuits favor open access to—and recording and broadcasting of—all proceedings in the Lawsuits. Accordingly, Media Verite respectfully requests an order allowing it to record and broadcast all proceedings in the Lawsuits pursuant to Local Rule 16.

Respectfully submitted,

By:   /s/ Robert E. Linkin

**ROBERT E. LINKIN**
State Bar No. 00795773
**MUNCK WILSON MANDALA LLP**
rlinkin@munckwilson.com
807 Las Cimas Parkway, Suite 300
Austin, Texas 78746
737-201-1616 *tel*
737-201-1601 *fax*

## CERTIFICATE OF SERVICE

This is to certify that on the 5th day of January 2022, a true and correct copy of the foregoing has been served via electronic service on all counsel of record:

Mark Bankston
Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
713.221.8300
mark@fbtrial.com

Bradley Reeves
Reeves Law, PLLC
702 Rio Grande Street
Austin, TX, 78701
(512) 827-2246
brad@brtx.law

   /s/ Robert E. Linkin
Robert E. Linkin

7/19/2021 4:33 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Jessica A. Limon

## CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| **NEIL HESLIN,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **ALEX E. JONES, et al.** | § | |
| *Defendants.* | § | **261st JUDICIAL DISTRICT** |

## CAUSE NO. D-1-GN-18-006623

| | | |
|---|---|---|
| **SCARLETT LEWIS,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **ALEX E. JONES, et. al,** | § | |
| *Defendants.* | § | **261st JUDICIAL DISTRICT** |

## CAUSE NO. D-1-GN-19-004651

| | | |
|---|---|---|
| **NEIL HESLIN,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **ALEX E. JONES, et. al,** | § | |
| *Defendants.* | § | **261st JUDICIAL DISTRICT** |

## CAUSE NO. D-1-GN-18-001842

| | | |
|---|---|---|
| **LEONARD POZNER, et al.** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs,* | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **ALEX E. JONES, et. al,** | § | |
| *Defendants.* | § | **345th JUDICIAL DISTRICT** |

### ORDER ALLOWING RECORDING AND BROADCASTING OF COURT PROCEEDINGS

On this day, the Court considered Non-Party Amos Pictures, Ltd.'s ("Amos Pictures")

Request for Recording and Broadcasting of Court Proceedings pursuant to TEX. R. CIV. P.

Unofficial copy Travis Co. District Clerk Velva L. Price

18c and Travis County Local Rule 16 ("Request"). After considering the Request, the relevant factors, as well as the consent of the parties, the Court finds that the Request should be and is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Amos Pictures' Request for Recording and Broadcasting of Court Proceedings pursuant to TEX. R. CIV. P. 18c and Travis County Local Rule 16 is GRANTED.

IT IS FURTHER ORDERED that Amos Pictures is entitled to record and broadcast all proceedings in the above-captioned lawsuits through both visual coverage[1] and audio coverage.[2] Amos Pictures shall be entitled to install equipment in the courtroom for the purpose of such coverage.

IT IS FURTHER ORDERED all media personnel covering the proceedings will comply with applicable provisions of the Texas Rules of Civil Procedure and the Travis County Local Rules.

IT IS SO ORDERED.

Signed on this __16th__ day of July 2021.

HONORABLE JUDGE MAYA GUERRA GAMBLE

---

[1]  Pursuant to Travis County Local Rule 16.1, "visual coverage" shall mean and include coverage by equipment that has the capacity to reproduce or telecast an image, and includes still and moving picture photographic equipment and video equipment.

[2]  Pursuant to Travis County Local Rule 16.1, "audio coverage" shall mean coverage by equipment that has the capacity to reproduce or broadcast sounds, and includes digital, tape and cassette sound recorders, and radio and video equipment.

**AGREED AS TO FORM AND SUBSTANCE:**


*/s/ Mark Bankston (w/ permission JAR)*
Mark Bankston
*Counsel for Plaintiffs*


*/s/ Brad Reeves (w/ permission JAR)*
Brad Reeves
*Counsel for Defendants*


*/s/ Joshua A. Romero*
Joshua A. Romero
*Counsel for Amos Pictures*


29530896v.2

Unofficial copy Travis Co. District Clerk Velva L. Price

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shannon Matusek-Steele on behalf of Samuel Denton
Bar No. 24064378
shannon.matusek-steele@traviscountytx.gov
Envelope ID: 55490948
Status as of 7/19/2021 10:00 PM CST

Associated Case Party: NeilHeslin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 7/19/2021 4:33:06 PM | SENT |

Associated Case Party: AlexE.Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 7/19/2021 4:33:06 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Scott Weatherford | | sweatherford@jw.com | 7/19/2021 4:33:06 PM | SENT |
| Joshua ARomero | | jromero@jw.com | 7/19/2021 4:33:06 PM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 7/19/2021 4:33:06 PM | SENT |
| Mark Charles Enoch | 6630360 | fly63rc@verizon.net | 7/19/2021 4:33:06 PM | SENT |
| Warren Lloyd Vavra | 786700 | warren.vavra@traviscountytx.gov | 7/19/2021 4:33:06 PM | SENT |
| Velva Lasha Price | 16015950 | velva.price@traviscountytx.gov | 7/19/2021 4:33:06 PM | SENT |
| William Ogden | | bill@fbtrial.com | 7/19/2021 4:33:06 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 7/19/2021 4:33:06 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 7/19/2021 4:33:06 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 7/19/2021 4:33:06 PM | SENT |

Associated Case Party: InfoWars, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 7/19/2021 4:33:06 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shannon Matusek-Steele on behalf of Samuel Denton
Bar No. 24064378
shannon.matusek-steele@traviscountytx.gov
Envelope ID: 55490948
Status as of 7/19/2021 10:00 PM CST

Associated Case Party: Free Speech, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 7/19/2021 4:33:06 PM | SENT |

Associated Case Party: Owen Shroyer

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 7/19/2021 4:33:06 PM | SENT |

Unofficial copy Travis Co. District Clerk Velva L. Price

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | Gaby Monahan; brad@brtx.law |
| **Cc:** | Robert E. Linkin; Michael A. Dimmitt; Kelsey Tauzin |
| **Subject:** | RE: Consent to Media Verite"s Request for Recording and Broadcasting of Court Proceedings |
| **Date:** | Monday, January 3, 2022 6:41:35 PM |
| **Attachments:** | image002.png |

[External]


Plaintiffs have no objection.

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

---

**From:** Gaby Monahan <gmonahan@munckwilson.com>
**Sent:** Monday, January 3, 2022 4:40 PM
**To:** brad@brtx.law; Mark Bankston <mark@fbtrial.com>
**Cc:** Robert E. Linkin <rlinkin@munckwilson.com>; Michael A. Dimmitt <mdimmitt@munckwilson.com>; Kelsey Tauzin <ktauzin@munckwilson.com>
**Subject:** Consent to Media Verite's Request for Recording and Broadcasting of Court Proceedings

Good afternoon,

Rob Linkin and I represent Media Verite, a multi-award-winning production company, Canadian and British based, helmed by four-time academy award nominated and two-time Oscar Winner Malcolm Clarke.  The filmmakers will be seeking permission to film the court proceedings in the cases listed below. The recordings will be used to create a documentary based in part on the First Amendment rights battle between InfoWars and the families of Sandy Hook. The documentary seeks to look into the court case and legal battles between the two sides and the issues and effects on the broader public in the USA.

Please advise if you object to Media Verite's recording of these proceedings. We intend to file before the end of this week.

- Cause No. D-1-GN-18-001835: *Neil Heslin v. Alex E. Jones, InfoWars, LLC, et al.*; in the 261st Judicial District, Travis County, Texas;
- Cause No. D-1-GN-18-001842: *Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, InfoWars, LLC, et al.*; in the 345th Judicial District, Travis County, Texas;
- Cause No. D-1-GN-18-006623; *Scarlett Lewis vs. Alex E. Jones, InfoWars, LLC & Free Speech Systems, LLC*; in the 98th Judicial District, Travis County, Texas; and
- Cause No. D-1-GN-19-004651; *Neil Heslin vs. Alex E. Jones, InfoWars, LLC & Free Speech Systems, LLC*; in the 261st Judicial District, Travis County, Texas.

Thanks,

**Gaby I. Monahan**
Partner



807 Las Cimas Pkwy, Building II
Suite 300
Austin, Texas 78746
d. +1 737.201.1604
m. +1 773.715.1457
e: gmonahan@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn
Follow Munck on Twitter



**Confidentiality Notice:**  This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege.  It is intended solely for the use of the addressee(s) listed above.  If you are not the intended recipient of this message, please do not print, copy or disclose this information.  If you received this e-mail in error, please disregard it and delete it and any attachments from your system.  Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

Please note that the "from" field and signature block of this email does not constitute an electronic signature, offer, or acceptance of any kind.

| | |
|---|---|
| **From:** | Bradley Reeves |
| **To:** | Robert E. Linkin; Mark Bankston |
| **Cc:** | Gaby Monahan; Michael A. Dimmitt; Kelsey Tauzin |
| **Subject:** | RE: Consent to Media Verite"s Request for Recording and Broadcasting of Court Proceedings |
| **Date:** | Tuesday, January 4, 2022 2:51:14 PM |
| **Attachments:** | image002.png |

[External]


No objection.

Best regards,

Brad Reeves

---

**From:** Robert E. Linkin <rlinkin@munckwilson.com>
**Sent:** Monday, January 3, 2022 7:13 PM
**To:** Mark Bankston <mark@fbtrial.com>
**Cc:** Gaby Monahan <gmonahan@munckwilson.com>; Bradley Reeves <brad@brtx.law>; Michael A. Dimmitt <mdimmitt@munckwilson.com>; Kelsey Tauzin <ktauzin@munckwilson.com>
**Subject:** Re: Consent to Media Verite's Request for Recording and Broadcasting of Court Proceedings


Thanks for your response.

Much appreciated.

Best,

Robert E. Linkin


CONFIDENTIAL COMMUNICATION
This electronic mail message and any attachments are intended


On Jan 3, 2022, at 6:41 PM, Mark Bankston <mark@fbtrial.com> wrote:


[External]


Plaintiffs have no objection.

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

**From:** Gaby Monahan <gmonahan@munckwilson.com>
**Sent:** Monday, January 3, 2022 4:40 PM
**To:** brad@brtx.law; Mark Bankston <mark@fbtrial.com>
**Cc:** Robert E. Linkin <rlinkin@munckwilson.com>; Michael A. Dimmitt <mdimmitt@munckwilson.com>; Kelsey Tauzin <ktauzin@munckwilson.com>
**Subject:** Consent to Media Verite's Request for Recording and Broadcasting of Court Proceedings

Good afternoon,

Rob Linkin and I represent Media Verite, a multi-award-winning production company, Canadian and British based, helmed by four-time academy award nominated and two-time Oscar Winner Malcolm Clarke.  The filmmakers will be seeking permission to film the court proceedings in the cases listed below. The recordings will be used to create a documentary based in part on the First Amendment rights battle between InfoWars and the families of Sandy Hook. The documentary seeks to look into the court case and legal battles between the two sides and the issues and effects on the broader public in the USA.

Please advise if you object to Media Verite's recording of these proceedings. We intend to file before the end of this week.

- Cause No. D-1-GN-18-001835: *Neil Heslin v. Alex E. Jones, InfoWars, LLC, et al.*; in the 261st Judicial District, Travis County, Texas;
- Cause No. D-1-GN-18-001842: *Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, InfoWars, LLC, et al.*; in the 345th Judicial District, Travis County, Texas;
- Cause No. D-1-GN-18-006623; *Scarlett Lewis vs. Alex E. Jones, InfoWars, LLC & Free Speech Systems, LLC*; in the 98th Judicial District, Travis County, Texas; and
- Cause No. D-1-GN-19-004651; *Neil Heslin vs. Alex E. Jones, InfoWars, LLC & Free Speech Systems, LLC*; in the 261st Judicial District, Travis County, Texas.

Thanks,

**Gaby I. Monahan**
Partner



807 Las Cimas Pkwy, Building II
Suite 300

Austin, Texas 78746
d. +1 737.201.1604
m. +1 773.715.1457
e: gmonahan@munckwilson.com
w. munckwilson.com
Connect with me on LinkedIn
Follow Munck on LinkedIn
Follow Munck on Twitter



**Confidentiality Notice:**  This e-mail (including any attachments) may contain information that is private, confidential or protected by attorney-client or other privilege.  It is intended solely for the use of the addressee(s) listed above.  If you are not the intended recipient of this message, please do not print, copy or disclose this information.  If you received this e-mail in error, please disregard it and delete it and any attachments from your system.  Please also notify us by return email or by telephone at 972.628.3600 so that we may correct our records.

Please note that the "from" field and signature block of this email does not constitute an electronic signature, offer, or acceptance of any kind.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Dimmitt on behalf of Robert Linkin
Bar No. 795773
mdimmitt@munckwilson.com
Envelope ID: 60517020
Status as of 1/7/2022 1:52 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Scott Weatherford | | sweatherford@jw.com | 1/5/2022 12:46:12 PM | SENT |
| Joshua ARomero | | jromero@jw.com | 1/5/2022 12:46:12 PM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 1/5/2022 12:46:12 PM | SENT |
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/5/2022 12:46:12 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/5/2022 12:46:12 PM | SENT |
| William Ogden | | bill@fbtrial.com | 1/5/2022 12:46:12 PM | SENT |
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 12:46:12 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/5/2022 12:46:12 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 1/5/2022 12:46:12 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/5/2022 12:46:12 PM | SENT |
| Robert Linkin | | rlinkin@munckwilson.com | 1/5/2022 12:46:12 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/5/2022 12:46:12 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 12:46:12 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name |
|------|

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Dimmitt on behalf of Robert Linkin
Bar No. 795773
mdimmitt@munckwilson.com
Envelope ID: 60517020
Status as of 1/7/2022 1:52 PM CST

Associated Case Party: INFOWARS LLC

| | | | | |
|---|---|---|---|---|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 12:46:12 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 12:46:12 PM | SENT |

1/5/2022 12:46 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez

**MUNCK WILSON MANDALA**
Trials. Transactions. Technology.

ROBERT E. LINKIN                                                                rlinkin@munckwilson.com
Direct Dial: (737) 201-1616

January 5, 2022

*__Via E-File__*

The Honorable Lora Livingston
261st District Court
Heman Marion Sweatt Travis County Courthouse
1000 Guadalupe, 3rd floor
Austin, TX 78701

Re:     Media Request
        Cause No. D-1-GN-18-001835

Your Honor,

We represent Media Verite, a multi-award-winning production company, Canadian and British based, helmed by four-time academy award nominated and two-time Oscar Winner Malcolm Clarke. Media Verite seeks permission to film court proceedings in the following cases:

- Cause No. D-1-GN-18-001835; *Neil Heslin vs. Alex E. Jones,InfoWars, LLC, et al*;

- Cause No. D-1-GN-18-001842: *Leonard Pozner and Veronique De La Rosa vs. Alex E. Jones, INFOWARS, LLC, et al*;

- Cause No. D-1-GN-18-006623: *Scarlett Lewis vs. Alex E. Jones, InfoWars, LLC, and Free SpeechSystems, LLC*;

- Cause No. D-1-GN-19-004651: *Neil Heslin vs. Alex E. Jones, InfoWars, LLC and Free SpeechSystems, LLC*;

Should the Court grant Media Verite's request, it would  likely film all court proceedings from this date forward.

In view of the immense public interest and cultural significance of these cases, Media Verite is creating a documentary based in part on the First Amendment rights battle between InfoWars and the families of Sandy Hook. The documentary seeks to look into the court case and legal battles between the two sides and the issues and effects on the broader public in the USA. The program will be broadcast worldwide after the conclusion of legal proceedings in Texas.

The program, which will be strictly non-political and non-partisan, will seek to closely involve its audience in the complexities and the dramatic unfolding of the judicial process.

*The Honorable Lora Livingston*
*January 5, 2022*
*Page 2*

For the avoidance of doubt, no material filmed in court will be released or shared in any way before legal proceedings in each case listed above have come to an end.

We have reviewed the Texas Rule of Civil Procedure 18c and Travis County Local Rules of Civil Procedure and Rules of Decorum (Local Rules) Chapter 16.

We will operate at all times with great care and in close consultation with the court and its officers and will submit to the authority of the Court in all matters pertaining to the enforcement of the rules around filming.

We are available, at the Court's convenience to answer any questions regarding the above.

Respectfully,

MUNCK WILSON MANDALA, LLP

Robert E. Linkin

REL/kmt

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Dimmitt on behalf of Robert Linkin
Bar No. 795773
mdimmitt@munckwilson.com
Envelope ID: 60517020
Status as of 1/7/2022 1:52 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Scott Weatherford | | sweatherford@jw.com | 1/5/2022 12:46:12 PM | SENT |
| Joshua ARomero | | jromero@jw.com | 1/5/2022 12:46:12 PM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 1/5/2022 12:46:12 PM | SENT |
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/5/2022 12:46:12 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/5/2022 12:46:12 PM | SENT |
| William Ogden | | bill@fbtrial.com | 1/5/2022 12:46:12 PM | SENT |
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 12:46:12 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/5/2022 12:46:12 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 1/5/2022 12:46:12 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/5/2022 12:46:12 PM | SENT |
| Robert Linkin | | rlinkin@munckwilson.com | 1/5/2022 12:46:12 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/5/2022 12:46:12 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 12:46:12 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name |
|------|

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Dimmitt on behalf of Robert Linkin
Bar No. 795773
mdimmitt@munckwilson.com
Envelope ID: 60517020
Status as of 1/7/2022 1:52 PM CST

Associated Case Party: INFOWARS LLC

| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 12:46:12 PM | SENT |
|---|---|---|---|---|

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/5/2022 12:46:12 PM | SENT |

1/7/2022 6:19 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Chloe Jimenez

D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | 459th DISTRICT COURT |
| | § | |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | 459th DISTRICT COURT |

---

**DEFENDANT, FREE SPEECH SYSTEMS, LLC'S, RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS REGARDING
CORPORATE REPRESENTATIVE DEPOSITION**

---

## INTRODUCTION

Plaintiffs' motion is one of the most overreaching motion for sanctions filed to date in these cases, which is saying a lot considering Plaintiffs' propensity for filing such motions. Despite Plaintiffs' faux outrage at what Plaintiffs and their counsel perceive as deficiencies in the recent FSS corporate representative deposition, what is clear is that this motion is actually nothing more than a mechanism by which Plaintiffs' counsel has made usurped the confidentiality and protective orders entered by the Court to place confidential, attorney's-eyes-only documents and sensitive financial information of FSS *and* other Defendants who are not even a focus of this motion into the public eye to create a media firestorm and prejudice Defendants. It is absolutely ridiculous that Plaintiffs would file a motion for sanctions about a FSS corporate representative deposition, yet attach net worth discovery responses from Alex Jones and sensitive financial information completely unrelated to the corporate representative deposition itself as purported exhibits in support of their motion. These violations of the Court's confidentiality and protective order will be further addressed in a forthcoming motion for sanctions being filed by Defendants, but at the outset of dealing with the instant motion, it must be made clear that Plaintiffs have filed this not for the purposes of obtaining discovery they believe they are entitled to, but rather to further try this case in the media and public and to prejudice Defendants as much as possible prior to trial.

As for Plaintiffs' motion, not only are the complaints about the corporate representative deposition unfounded and without merit, but the issues raised by Plaintiffs revolve entirely around liability-related issues—issues the Court has currently held are determined as a matter of law by virtue of the liability-default judgments entered by this Court. Thus, to the extent any responses were unsatisfactory, that is immaterial and Plaintiffs are in no way prejudiced or negatively impacted by that. In addition, the corporate representative for FSS was able to provide sufficient answers as to the vast majority of the questions asked of her; Plaintiffs are seemingly upset because she was not prepared to provide granular details in response to every single question Plaintiffs might ask. Regardless, she was more than able to (and did) provide appropriate responses as to FSS's knowledge, understanding, and information it had which relate to the issues in this case. Even if the

2

Court disagrees and for some reason finds some of the corporate representative's responses were lacking, that in no way justifies the outrageous sanctions Plaintiffs have asked for in their motion. There is no basis for awarding what is assuredly a ridiculous amount of money Plaintiffs will claim are their entirety of their litigation costs and additional sanctions such as precluding discovery or precluding the determination of any issues which remain outstanding to be decided by a jury. Plaintiffs' motion has no merit and certainly does not in any way support the imposition of the extreme sanctions Plaintiffs have sought. The Court should deny Plaintiffs' motion for sanctions.

### MS. KARPOVA WAS A COMPETENT, PREPARED REPRESENTATIVE

Ms. Karpova is a producer and manager for InfoWars[1] and is an appropriate choice of corporate representative. She testified that she had spent four or more hours preparing for her deposition.[2] She brought documents that she reasonably believed were relevant to the deposition.[3] Plaintiffs argue that the documents she brought and reviewed were not relevant and have alleged that Ms. Karpova was not properly prepared, however the documents brought by Ms. Karpova were already in excess of the total amount of relevant documents required. There were no relevant documents for her to bring in, she was not required to bring in any documents, and Defendants would like to penalize her (and, thereby, FSS) because they find the few documents that Ms. Karpova thought might be helpful to be less than adequate.

Ms. Karpova was prepared to testify about sourcing and research for the videos described in Plaintiffs' petitions.[4] During an abusive series of depositions, she was repeatedly asked to mentally reference multiple documents. When she responded that she had generally reviewed the

---

[1] Pl.'s Ex. 4 at 3:4.

[2] *Id.* at 5:8, 4:1, 11:8.

[3] *Id.* at 9:20.

[4] It is worth noting that Plaintiffs' Motion (Footnote 22) includes a thinly veiled allegation that Marc Randazza has somehow engaged in unauthorized practice of law by asking factual questions to the witness as she prepared for deposition (despite never providing a shred of legal advice to the witness), which is a serious allegation. It is also a false allegation made in bad faith, as Plaintiffs' counsel is surely aware that this Court has previously indicated that Mr. Randazza can assist Mr. Reeves in a similar capacity to that of an associate, even if he cannot appear in this case. *See* Transcript of Hearing, August 31, 2021, at 98:19-98:23.

relevant documents but could not necessarily references specific documents and videos – indeed, the exact lines and headlines from specific documents and videos – without being provided broader context, she was treated by Plaintiffs' counsel as if she was not competent to answer any questions at all.

In one such exchange, Mr. Bankston asks Ms. Karpova to identify a single still frame from an Infowars episode:

Q. Where does this come from, this picture? Where does it come from?

A. This is a still from the show.

Q. Do you know what show?

A. Not specifically. It doesn't have the date [or] year.

Q. Okay. It's one you just apparently watched a couple of minutes ago. You don't remember seeing this?

A. Not this part specifically.

Q. So you maybe didn't even watch this part of the video?

A. I watched the video.

Q. Okay.

A. I don't remember this specific –

Q. Okay. [Continues with questioning.][5]

She was asked confusing and often meandering compound questions. Again, when she responded with confusion, she was treated in a hostile manner by Plaintiffs' counsel. When asked directly about the company source of some videos, she respondes that "the company believes it to be Wolfgang Halbig[,]"[6] which is an appropriate answer as a corporate representative. As a corporate representative, Ms. Karpova is not required to have personal knowledge about every topic, but she must be able to answer for the company and what the company reasonably knows. If the company "believes [the source of a video] to be Wolfgang Halbig[,]" then this is a perfectly

---

[5] Pl.'s Ex. 4 at 127:14-128:4.

[6] *Id.* at 101:18-101:20.

acceptable response. Further, if the company does not have specific knowledge of a fact, but can make reasonable inferences, the corporate representative – acting on behalf of the company – should be afforded the same flexibility. Thus, if the company itself does not have records of an event – Ex. "there's no way to go back to that video because we don't keep those kinds of records of every show"[7] – Ms. Karpova should not be held to a standard other than that of a representative reporting what the company does *or does not* know. Ms. Karpova made this clear on multiple occasions. For example, when asked outright "Does the company know if these emails actually exist[,]" she responded, "No it doesn't."[8] This is not a failure of preparation or competence of a corporate representative, but rather Plaintiffs' disappointment that the company records it seeks are simply not maintained to the professional standard that Plaintiffs would prefer.

The abusive and persnickety manner in which Ms. Karpova was treated by Mr. Bankston is evident in the following exchange, which – to Defendant's surprise – Plaintiffs chose to include in their Motion:

A: Can we review the video right now?

Q: No. I'm not going to play a 2-hour video for you right now, no.

A: But you expect me to know what's going on in every video?

Q: Uh-huh. I do. I do, Ms. Karpova. And I expected Rob Dew to do the same thing when he showed up to the deposition to talk about sourcing and research and he didn't do that twice.[9]

Plaintiffs' Motion scolds Ms. Karpova for reviewing one video during a break in the deposition while Ms. Karpova was breastfeeding. Again, Plaintiffs show a lack of good faith in this style of argument. Ms. Karpova was subjected to repeated questioning about a specfic video, made a good faith attempt to review the material during a break – something she was not required to do

---

[7] Pl.'s Ex. 4 at 79:20-79:22.

[8] *Id.* at 121:14-121:16.

[9] *Id.* at 51:20-52:3.

– and was reprimanded by Plaintiffs' counsel for attempting to be helpful. This is shown in the following exchange:

Q. Okay. How much of that one did you watch?

A. That's a long video. I watched parts of it.

Q. You understand that doesn't help me, right? That that's not helping me understand what you've watched. You understand that?[10]

Despite this hostility, she continued to answer questions as best she could and gave clear company responses. She answered questions in manners such as "[the videos were sourced from] previously sourced information Alex [received] from his guests as well as other reports,"[11] and "[t]he company believes that I have sufficient knowledge to testify regarding these matters."[12] These are unambigous corporate-level responses.

Plaintiffs are ultimately upset – not that Ms. Karpova was not given access to what they had hoped were vast vaults of sourcing records for specific videos – but rather that she was fully prepared to represent the company in stating that it was not sure of the sourcing for many videos, as sourcing records for individual shows simply do not exist. Thus, any statements about sourcing were necessarily going to include conjecture, imperfect recollections, and inferences.

## THE FACTS AT ISSUE ARE NOT RELEVANT TO DAMAGES

As for Ms. Karpova's inability to recall, in the moment, specific conversations about or with employees of FSS, information about cable bundling packages, and other issues completely extraneous to the matter of damages, they are not relevant in the slightest. Every issue raised by Plaintiffs in their motion touches on the issue of liablity, not damages. Issues related to liability are not relevant at this stage, due to the liability default judgments entered by this Court. For example, Infowars is a 'free to air' radio program. FSS does not even know who is carrying the program on a given day. Ms. Karpova's lack of knowledge on this information represents, directly, the corporate

---

[10] Pl.'s Ex. 4 at 133:5-133:9.

[11] *Id.* at 134:12-134:14.

[12] *Id.* at 118:25-119:1.

model in place at FSS. While this may be frustrating for Plaintiffs, it does not diminish Ms. Karpova's competence and willingness to answer questions at deposition. Given that the program is 'free to air,' it also makes the question of cable packages irrelevant as to damages, as her failure to recall the known listener metrics is not revelevant if the metrics are not knowable at all.

Plaintiffs' absurd motion is focused entirely upon questions that relate only to liability issues, and thus have no relevance to the remaining issues in this case at this time, and similarly cause Plaintiffs no prejudice, even if responses were somehow insufficient. Moreover, Mr. Bankston had previously told this Court that "I think I have enough to prove punitive damages right now[,]"[13] and that future discovery requests would "be very limited."[14] FSS finds it difficult to understand how Plaintiffs apparently felt they had "enough" to prove their alleged damages and even punitive damages prior to the corporate represenative deposition, yet now posture to the Court that they somehow did not obtain crucial information warranting extreme sanctions.

In all instances that this Court might find Ms. Karpova's answers to be both relevant and lacking, however, Defendants assert that Ms. Karpova's inability to regurgitate numerous highly-specific facts, without being provided the necessary context and for hours on end, was not a failure of preparation, but a failure of memory. Further, the specificity and range of topics demanded by Plaintiffs were unreasonable – expecting the witness to be able to cite specific lines out of hours-long videos and to be able to immediately know how many cable packages included Infowars – and, most often, completely irrelevant to the issue of damages.

Additionally, Plaintiffs point to Alex Jones's personal opinion on the state of litigation as evidence of bad faith on the part of FSS. This is an absurd notion. Having a negative view of the proceedings is not evidence of bad faith, unless Plaintiffs are ready to make the broad generalization that every party upset by litigation is somehow acting in bad faith. Mr. Jones is well within his rights to hold an opinion and he is welcome to express it during deposition so long as he answers the questions put to him – which he has done. And while Plaintiffs decry their perceived instances

---

[13] Pl.'s Ex. 3 74:23-74:25.

[14] *Id.* at 75:8-75:12.

of bad faith, they just as quickly make baseless claims that "Plaintiffs also expect that [Mr. Jones] has additional assets squirreled away, likely in some other shell company as yet undisclosed."[15] Are allegations of this sort, when presented with zero evidence, an example of good faith? Similarly, Plaintiffs' assertion that Mr. Jones has $50 million in assets is a material misrepresentation.[16] The parenthesis around $50 million in Jones's [assets document title] represents negative equity, which any competent lawyer would know. And since Mr. Bankston is clearly competent, this can only be a purposeful misrepresentation.

## SANCTIONS SHOULD BE DENIED IN THEIR ENTIRETY

Sanctions are not appropriate in this matter. First, precluding further discovery and resolving all unresolved issues in favor of Plaintiffs would be a heavy-handed, unfair advantage to Plaintiffs – and the suggestion alone is an example of a party asking for "discovery for me but not for thee." There is no prejudice involved in this issue, as none of these issues have to do with damages. Even if this Court were to decide that sanctions were appropriate, assessing all or most of Plaintiffs litigation costs upon Defendant would be a disproportionate penalty. If this Court finds that sanctions are appropriate, which Defendant continues to assert they are not, they should be minimal.

## CONCLUSION AND PRAYER

Plaintiffs' Motion, following an abusive series of depositions, is filled with issues that have no bearing on this matter. Ms. Karpova was adequately prepared to answer questions relevant to the issue of damages. Plaintiffs may be upset with themselves for asking questions that largely focused on liability, despite the issue of liability having already been decided by default-judgment, but this is not the fault of Ms. Karpova or Defendant. Plaintiffs use bad faith misrepresentations throughout their Motion and then have the gall to ask this Court to assess disproportionate sanctions upon Defendants.

---

[15] Plaintiff's Motion, p. 39.
[16] Id.

WHEREFORE, PREMISES CONSIDERED, Defendant, Free Speech Systems, LLC, requests the Court deny Plaintiffs' motion for sanctions, along with such other and further relief to which Defendant may be justly entitled.

Dated: January 7, 2022.

Respectfully Submitted,

**REEVES LAW, PLLC**

By: _/s/ Bradley J. Reeves_
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on January 7, 2022.

Mark Bankston                           *via electronic service*
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

_/s/ Bradley J. Reeves_____
Bradley J. Reeves

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 60629404
Status as of 1/10/2022 10:16 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/7/2022 6:19:13 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/7/2022 6:19:13 PM | SENT |
| William Ogden | | bill@fbtrial.com | 1/7/2022 6:19:13 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/7/2022 6:19:13 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/7/2022 6:19:13 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/7/2022 6:19:13 PM | SENT |

D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | 459th DISTRICT COURT |
| *Defendants* | § | |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | 459th DISTRICT COURT |
| | § | |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | 459th DISTRICT COURT |

## [PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS REGARDING CORPORATE [REPRESENTATIVE] DEPOSITION

On this day, came to be heard Plaintiffs' Motion for Sanctions Regarding Corporate

[Representative] Deposition of Defendant, Free Speech Systems, LLC. The Court, having

considered the Motion, Defendant's response thereto, along with the arguments of counsel, finds

that Plaintiffs' motion is without merit and should be DENIED.

It is therefore ORDERED that Plaintiffs' Motion for Sanctions Regarding Corporate [Representative] Deposition is hereby DENIED in all respects.

SIGNED ON THIS THE _____ DAY OF _____, 2022.

_____

HONORABLE JUDGE MAYA GUERRA GAMBLE

**APPROVED AS TO FORM
AND ENTRY REQUESTED:**

**REEVES LAW, PLLC**

By: ___*/s/ Bradley J. Reeves*_____
Bradley J. Reeves
Texas Bar No. 24068266
702 Rio Grande St., Suite 203
Austin, TX 78701
brad@brtx.law
Telephone:    (512) 827-2246
Facsimile:    (512) 318-2484

**ATTORNEY FOR DEFENDANTS**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 60629404
Status as of 1/10/2022 10:16 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/7/2022 6:19:13 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/7/2022 6:19:13 PM | SENT |
| William Ogden | | bill@fbtrial.com | 1/7/2022 6:19:13 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/7/2022 6:19:13 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/7/2022 6:19:13 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/7/2022 6:19:13 PM | SENT |

1/11/2022 5:54 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Gilberto Diaz Rios

## CAUSE NO. D-1- GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
|   Plaintiff | § | |
| | § | |
| Vs. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
|   Defendants | § | 459th JUDICIAL DISTRICT |

## NOTICE OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL

JACQUELYN W. BLOTT files this Notice of Appearance.  Defendants ALEX E. JONES,

INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC and OWEN SHROYER ("Defendants")

designate JACQUELYN W. BLOTT as the attorney in charge in accordance with Rule 8 of the

Texas Rules of Civil Procedure.  All communication from the Court or other counsel with respect

to this suit shall be sent to the undersigned as follows:

Jacquelyn W. Blott
Law Offices of Jacquelyn W. Blott
200 University Ave., Ste. 225 #251
Round Rock, Texas 78665

Respectfully submitted,

LAW OFFICE OF JACQUELYN W. BLOTT

By: _____
    Jacquelyn W. Blott
    SBN: 07473250
    100 University Blvd., Ste. 225 #251
    Round Rock, Texas 78665
    Telephone: (512) 639-9904
    Facsimile: (833) 377-0087
    Email: jblott@jblottlaw.com

REEVES LAW, PLLC

By: _Bradley Reeves 1s/jas_

Bradley J. Reeves
SBN: 2406826
702 Rio Grande St., Suite 203
Austin, Texas 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484
Email: brad@brtx.law

*\* signed by permission*

**ATTORNEYS FOR DEFENDANTS
ALEX JONES, INFOWARS, LLC, and
FREE SPEECH SYSTEMS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of *Notice of Appearance and Designation of Lead Counsel* was served pursuant to Rule 21a of the Texas Rules of Civil Procedure on this the 11th day of January 2022 as follows.

Mark Bankston
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, Texas 77008

*Email: mark@fbtrial.com*
*Email: bill@fbtrial.com*

Jacquelyn W. Blott

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacquelyn Blott on behalf of Jacquelyn Blott
Bar No. 7473250
law.jacquelynwblott@gmail.com
Envelope ID: 60688405
Status as of 1/12/2022 3:54 PM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/11/2022 5:54:13 AM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/11/2022 5:54:13 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Scott Weatherford | | sweatherford@jw.com | 1/11/2022 5:54:13 AM | SENT |
| Joshua ARomero | | jromero@jw.com | 1/11/2022 5:54:13 AM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 1/11/2022 5:54:13 AM | SENT |
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/11/2022 5:54:13 AM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/11/2022 5:54:13 AM | SENT |
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/11/2022 5:54:13 AM | SENT |
| Robert Linkin | | rlinkin@munckwilson.com | 1/11/2022 5:54:13 AM | SENT |
| Marc Randazza | | ecf@randazza.com | 1/11/2022 5:54:13 AM | SENT |
| William Ogden | | bill@fbtrial.com | 1/11/2022 5:54:13 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/11/2022 5:54:13 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/11/2022 5:54:13 AM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 1/11/2022 5:54:13 AM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 1/11/2022 5:54:13 AM | SENT |

Associated Case Party: INFOWARS LLC

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacquelyn Blott on behalf of Jacquelyn Blott
Bar No. 7473250
law.jacquelynwblott@gmail.com
Envelope ID: 60688405
Status as of 1/12/2022 3:54 PM CST

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/11/2022 5:54:13 AM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/11/2022 5:54:13 AM | SENT |

1/12/2022 5:35 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Irene Silva

D-1-GN-18-001835

| NEIL HESLIN | § | IN DISTRICT COURT OF |
|---|---|---|
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| Defendants | § | 459th  DISTRICT COURT |
| | § | |

D-1-GN-18-001842

| LEONARD POZNER and | § | IN DISTRICT COURT OF |
|---|---|---|
| VERONIQUE DE LA ROSA | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| Defendants | § | 459th  DISTRICT COURT |
| | § | |

D-1-GN-18-006623

| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
|---|---|---|
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| Defendants | § | |
| | § | 459th  DISTRICT COURT |
| | § | |

---

## DEFENDANTS' MOTION FOR CONTEMPT AND SANCTIONS

Defendants, ALEX JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC and
OWEN SHROYER, file this *Defendants' Motion for Contempt and Sanctions* and in support
thereof show as follows:

### RELIEF REQUESTED

Defendants, ALEX JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC and
OWEN SHROYER, respectfully request that Plaintiffs, NEIL HESLIN, LEONARD POZNER,
VERONIQUE DE LA ROSA, and SCARLETT LEWIS and/or their attorney of record, MARK
BANKSTON, be held in contempt for violating the Court's *Order on Motion for Protective Order
of Confidentiality dated October 25, 2021* and this Court award appropriate sanctions in favor of
Defendants, ALEX JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC and OWEN
SHROYER.

### SUMMARY

Plaintiffs, NEIL HESLIN ("Heslin"), LEONARD POZNER ("Pozner"), VERONIQUE DE
LA ROSA ("Rosa"), and SCARLETT LEWIS ("Lewis") and/or their attorney of record, MARK
BANKSTON ("Mr. Bankston"), have repeatedly sought to litigate this matter in the press and now,
with no shame, have violated the *Order on Motion for Protective Order* ("Protective Order")
entered by this Court on *February 25, 2019* In Cause No. D-1-18-GN-006623L *Scarlett Lewis v.
Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC* (the "Lewis Litigation"), and as
adopted in all cases on *October 25, 2021*[1].  Instead of serving the Sanctions Motion as required  or
filing a motion for temporary sealing order, as required by the Protective Order, Plaintiff cast aside
the Court's Protective Order, making sure that documents clearly labeled as Confidential and

---

[1] A duplicative order was also signed on December 2, 2021, and filed on December 3, 2021.

2

Attorneys' Eyes Only ("AEO") as well as depositions of Defendant's Corporate Representative and Defendant Jones were filed for public dissemination including, but not limited to, the media

## FACTS IN SUPPORT OF MOTION

On February 25, 2021, this Court entered its Protective Order in the Lewis Litigation.  On October 25, 2021, this Court entered its Order on Motion for Protective Order of Confidentiality applying the Protective Order entered in the Lewis Litigation to Cause No. D-1-GN-18-001835; *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC and Owen Shroyer* (the "Heslin Litigation") and Cause No. D-1-GN-18-001842; *Leonard Pozner and Veronique de la Rosa v. Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC* (the "Pozner Litigation"). *See*, Protective Order, filed among the pleadings herein on ***October 26, 2021, incorporated herein by reference as if set forth in full.*  The Court signed the same order on December 2, 2021, filed among the pleadings herein on ***December 3, 2021***, incorporated herein by reference as if set forth in full.

The identical Protective Orders provide as follows:

### TERMS

3.      "Discovery includes all written discovery, request for production, interrogatories, requests for admissions, requests for disclosure, oral depositions, deposition transcripts, oral or video recording of a deposition, depositions on written questions to third parties, and subpoenas to third parties, and other documents exchanged between the parties for the purpose of sharing information regarding the facts of the case.

*Protective Orders*, filed among the pleadings of the cases herein on October 25, 2021 and December 3, 2021.

The Protective Order further provides:

4.      "Confidential Information" means information that constitutes a trade secret, reveals valuable and sensitive proprietary data or commercial information, or otherwise qualifies for legal protection under Texas law.

5.      "Confidential Discovery" means discovery disclosed by the parties in this case and which also contains Confidential Information.

*Id.*, p. 4

The Protective Order also provides that depositions are to remain confidential as follows:

12.     Testimony and information disclosed at a deposition of a Party or any other witness may be designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" during the deposition, and within thirty (30) days following the depositions, any Party may designate any information disclosed during a deposition as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." ***For the thirty (30) days following any deposition, the Parties must treat all of the deposition testimony and exhibits and other documents produced at any deposition as "ATTORNEYS' EYES ONLY."***

*Id.* p. 5 (emphasis added).

The Protective Order provided that documents designated as confidential would not be disseminated to anyone other than certain individual including, but not limited to, ***all parties and their counsel of record.***

Less than two weeks after the Protective Order was signed ***for the second time and entered in the pleadings***, Plaintiffs breached it.[2]

On December 15, 2021, Plaintiffs filed their *Motion for Sanctions Regarding Corporate Deposition*. ("Sanctions Motion").[3]  *See*, *Sanctions Motion,* filed amont the pleadings herein on December 15, 2021and incorporated herein by reference as if set forth in full.  ***Attached as Exhibit 6 to the Sanctions Motion is a financial document produced in discovery by Defendant, Free Speech Systems, LLC ("Free Speech"), marked "CONFIDENTIAL-ATTORNEY'S EYES ONLY" in large, bold, capital letters at the top of each page.***  *Id*, Exhibit 6.

---

[2] Although not the subject of this motion, Plaintiffs also breached the order when they surreptitiously permitted a podcaster to attend the confidential deposition of Alex Jones on December 4, 2021.  These compounding violations mandate terminating sanctions even if each, individually, did not rise to that level.

[3] That motion is without merit, further aggravating the nature of the misconduct.

4

*Exhibit 4 of the Sanctions Motion is a copy of the transcript of the Deposition of Daria Karpova, the designated corporate representative for Free Speech Systems* ("Corporate Rep Deposition"). *Id.*, Exhibit 4.

The deposition of Jones was taken on December 4, 2021. The official transcript was not released to counsel until December 30, 2021. *The deposition of Jones was attached as Exhibit 5 to the Motion for Sanctions.  See, Motion for Sanctions, Exhibit 5.*

Plaintiffs have *flagrantly* violated the Protective Order.  By efiling the Sanctions Motion, Plaintiffs have made the Sanctions Motion and, more importantly, the exhibits attached in support of the Sanctions Motion, accessible to the public at large, at a minimum, and to those members of the public, including the media, who have the wherewithall to obtain copies of pleadings, including the Sanction Motion *and the attachments containing confidential information*, from the Records Division of the Travis County District Clerk's Office.

Paragraphs 21 & 22 of the Protective Orders govern submission of confidential materials to the Court.  They prohibit direct filing—they require service and a motion for Temporary Sealing Order.  Plaintiffs filed no motion for Temporary Sealing Order.  Instead, Plaintiffs directly emailed them to 459 Submission <459.Submission@traviscountytx.gov>; Keri Ward <Keri.Ward@traviscountytx.gov>, bypassing the requirements of the order and placing them in the public record.  In addition, Plaintiffs efiled the documents.  As a result, the confidential documents and depositions were viewed by and published by, at the very least, the media.  Plaintiffs and their counsel – through their actions –effectively provided these Confidential, Attorneys' Eyes Only

documents to The Huffington Post,[4] Rolling Stone,[5] Yahoo,[6] and The Daily Beast[7] for worldwide publication.

## ARGUMENT AND AUTHORITIES

**A.  Plaintiffs have Violated the Integrity of the Discovery Process and Flagrantly Violated this Court's Protective Order.**

 "[A] court has an interest in preserving the integrity of the discovery process by encouraging full investigation of the disputed facts and issues, and that such investigation will occur effectively only if the court can assure the parties that disclosed confidential materials will be used only for the purpose of litigation." *Hous. Chronicle Pub. Co. v. Hardy*, 678 S.W.2d 495, 506 (Tex. App.—Corpus Christi 1984, no writ) (*citing Tavoulareas v. The Washington Post Co.*, 724 F.2d 1010 (D.C.Cir.1984). It is only when it is actually used at trial that a deposition becomes a court record, presumed open to the public. *See, In re Cook* , 629 S.W.3d 591, 608-09 (Tex. App.—Dallas 2021).

This Court entered its Protective Order to enourage full investiation of the disputed facts and issues.  Mr. Bankston should never have filed the Sanctions Motion with the confidential financial records nor the depositions of the Corporate Representative or Defendant Jones without following this Court's Protective Order for filing pleadings containing confidential information. The document in question was both marked as confidential and used during a deposition where confidential designations were still pending, making this disclosure doubly egregious. Likewise,

---

[4] https://www.huffpost.com/entry/infowars-store-alex-jones_n_61d71d8fe4b0bcd2195c6562

[5] https://www.rollingstone.com/politics/politics-news/alex-jones-infowars-store-165-million-1281059/

[6] https://www.yahoo.com/entertainment/alex-jones-raked-165-million-195522851.html

[7] https://www.thedailybeast.com/alex-jones-claims-he-can-barely-pay-the-billsafter-infowars-made-dollar165-million-in-three-years

Plaintiffs violated the Protective Order by filing the depositions within thirty (30) days following
the deposition of the Corporate Representative and Defendant Jones.

Plaintiffs' and Mr. Bankston's knowledge that a violation of any confidentiality order is
particularly offensive to the administration of justice.  Counsel for Plaintiffs, Mr. Bankston, has
been keenly following parallel litigation in Connecticut, even going so far as convincing this Court
that Judge Bellis' characterization of Defendants' actions there demanded that default be entered
here. In Connecticut, Judge Bellis deemed an unintentional disclosure to be "cavalier actions and
willful misconduct" would "have a chilling effect on the testimony of witnesses," and that the
course of action should have been to challenge the designation, "not to blatantly disregard it and
make the confidential information available" to third parties. *Lafferty v. Jones*, Case No. UWY-
CV-18-6046436-S (Super. Ct. Conn. Aug. 5, 2021). Plaintiffs must be held to the strict standards
applied in Connecticut – standards for which they advocated—which resulted in a death-penalty
sanction.

This was not an issue of Mr. Bankston failing to realize what he was doing: this was
gratuitous and done with the intent that the information be picked up and reported by the media.
This is, of course, old hat for Mr. Bankston. He has previously published depositions from this
series of cases online for the purpose of litigating this matter in the press. In the past, he has
published the video of Mr. Jones' initial 2019 deposition on his own website, which made its way
into the press. He knew that the gross revenue of a controversial news outlet such as Infowars would
be reported and misinterpreted by the press, as the documents leaked ignore key financial metrics
such as the cost of goods sold and the overall cost of operations that goes into this primary source
of revenue.

Under the terms of the confidentiality order, Mr. Bankston had an opportunity to challenge the AEO designation on the financial documents at issue. *See*, December 3, 2021 Protective Order, ¶14(1)-14(2). He failed to do so. Confidential treatment is afforded to such marked material until any dispute over designation has been ruled upon by the presiding Judge, though in this instance there was no dispute at all. Mr. Bankston simply violated the confidentiality order. *Id.*

## B.    Sanctions are Warranted and Appropriate

A trial court may impose sanctions on any party that abuses the discovery process in seeking, making, or resisting discovery. Tex. R. Civ. P. 215.3; *See, Wein v. Sherman, 03-10-00499-CV, 2013 WL 4516013, at *1* (Tex. App.—Austin Aug. 23, 2013, no pet.)(noting that Rule 215 sanctions are not damages for harm alleged in underlying lawsuit but are used to punish parties who violate discovery rules). A trial court also has inherent power to sanction to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process. *IFC Credit Corp. v. Specialty Optical Sys., Inc.*, 252 S.W.3d 761, 772 (Tex. App.—Dallas 2008, pet. denied)(citing Eichelberger v. Eichelberger, 582 S.W.2d 395, 398 (Tex. 1979).

In *Scarbrough v. Purser,* monetary sanctions of over $25,000 were imposed merely for providing records, once to law enforcement and once to a litigant's relative. Far from only providing the materials at issue to law encforcement and a single individual, Plaintiffs put them in the public record for global consumption, and nothing can be done to put them back into a state of confidentiality. The direct effect this disclosure may have on further witnesses cannot be overstated, as the exposure of the confidential information has already been widespread. Thus, Defendants ask the Court for sanctions including but not limited to, dismissing Plaintiffs' claims with prejudice to the refiling of same. *Scarbrough v. Purser*, No. 03-13-00025-CV, 2016 Tex. App. LEXIS 13863, at *61-63 (Tex. App. Dec. 30, 2016).

8

Providing confidential or otherwise protected documents to Mr. Bankston is no different than just releasing them to the press. The Court has made it clear that discovery abuse in this matter will not be tolerated. Defendants respectfully ask the Court to uphold this stance and hold Plaintiffs and their counsel accountable for their repeated and consequential impropriety. The Court must dismiss Plaintiffs' claims against Defendants as a sanction and impose a severe monetary penalty against Plaintiffs' counsel for purposefully violating the confidentiality of the protective and confidentiality order.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants request the Court grant this motion for sanctions, finding that the Plaintiffs and their counsel are in contempt of this Court's Protective Order, imposing sanctions as requested herein, and such other and further relief, both at law and equity, to which Defendants may be justly entitled.

Respectfully submitted,

LAW OFFICE OF JACQUELYN W. BLOTT

By: _Jacquelyn W. Blott_

Jacquelyn W. Blott
SBN: 07473250
100 University Blvd., Ste. 225 #251
Round Rock, Texas 78665
Telephone: (512) 639-9904
Facsimile: (833) 377-0087
Email: jblott@jblottlaw.com

Bradley J. Reeves
REEVES LAW, PLLC
SBN: 2406826
702 Rio Grande St., Suite 203
Austin, Texas 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484
Email: brad@brtx.law

**ATTORNEYS FOR DEFENDANTS
ALEX JONES, INFOWARS, LLC,
FREE SPEECH SYSTEMS, LLC
and OWEN SHROYER**

## CERTIFICATE OF CONFERENCE

The undersigned counsel for Defendants has previously conferred with counsel for Plaintiff regarding this Motion, and counsel for Plaintiff has indicated Plaintiff is opposed to this Motion.

*/s/ Bradley J. Reeves*
Bradley J. Reeves

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on January 12, 2022.

Mark Bankston
William Ogden
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

*via electronic service*

Jacquelyn W. Blott

10

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacquelyn Blott on behalf of Jacquelyn Blott
Bar No. 7473250
law.jacquelynwblott@gmail.com
Envelope ID: 60772522
Status as of 1/13/2022 9:17 AM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 1/12/2022 5:35:31 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/12/2022 5:35:31 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Scott Weatherford | | sweatherford@jw.com | 1/12/2022 5:35:31 PM | SENT |
| Joshua ARomero | | jromero@jw.com | 1/12/2022 5:35:31 PM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 1/12/2022 5:35:31 PM | SENT |
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 1/12/2022 5:35:31 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 1/12/2022 5:35:31 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 1/12/2022 5:35:31 PM | SENT |
| William Ogden | | bill@fbtrial.com | 1/12/2022 5:35:31 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 1/12/2022 5:35:31 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 1/12/2022 5:35:31 PM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 1/12/2022 5:35:31 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 1/12/2022 5:35:31 PM | SENT |
| Robert Linkin | | rlinkin@munckwilson.com | 1/12/2022 5:35:31 PM | SENT |
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/12/2022 5:35:31 PM | SENT |

Associated Case Party: INFOWARS LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacquelyn Blott on behalf of Jacquelyn Blott
Bar No. 7473250
law.jacquelynwblott@gmail.com
Envelope ID: 60772522
Status as of 1/13/2022 9:17 AM CST

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/12/2022 5:35:31 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 1/12/2022 5:35:31 PM | SENT |

2/1/2022 2:26 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Selina Hamilton

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

### PLAINTIFFS' MOTION FOR SANCTIONS UNDER RULE 215.4
### RELATING TO REQUESTS FOR ADMISSION

This Motion concerns false and unreasonable answers given to Plaintiffs' Requests for Admissions concerning authenticity. Plaintiffs attempted to authenticate over a dozen videos for use at trial, but Defendants failed to take any steps to respond. Even more troubling, Defendants' counsel made false statements in their answers. For the reasons discussed below, Plaintiffs move for an order under Rule 215.4 finding the matters admitted and awarding all costs.

### FACTUAL BACKGROUND

1.      On December 2, 2021, Plaintiffs served Requests for Admission regarding the authenticity of certain videos and documents. At the same time, Plaintiffs provided a

download link for videos which were subject to the Requests for Admission. (*See* Exhibit 1, Emails with Brad Reeves).

2.      On December 23, 2021, Defendants requested an extension to respond, with a new deadline on January 24, 2022. (*See* Exhibit 2, Email granting extension).

3.      On January 24, 2022, the day the responses were due, Defendants' counsel Bradley Reeves forwarded Plaintiffs' December 2nd email providing the videos. Defendants' counsel stated, "This dropbox link no longer works. Please re-send." (*See* Exhibit 1, Emails with Brad Reeves).

4.      Hours later, Defendants served their responses, bearing the name of both of their attorneys. Defendants refused to admit the authenticity of the videos at issue, claiming that "Defendant is unable to comply with the discovery request...as Plaintiffs failed to provide a copy of the videos." (*See* Exhibit 3, Defendant's Responses to Requests for Admission).

5.      This statement is false. The videos provided by Plaintiffs on December 2, 2021 were nearly 4 gigabytes in size, and they could not be hosted by Plaintiffs' counsel indefinitely. The videos were therefore provided through a Dropbox Transfer link, which expires after thirty days.

6.      Even worse, Defendants' counsel knew the statement was false. In subsequent correspondence, Plaintiffs' counsel demonstrated how the testimony of Daria Karpova proves that Mr. Reeves showed her at least one of the videos provided on December 2nd. The specific video had never been previously produced. (*See* Exhibit 4, Emails with Jacquelyn Blott). As such, Ms. Karpova's testimony proves that Plaintiffs provided the videos and that Mr. Reeves downloaded them.

7.      In response, Defendants' counsel Bradley Reeves now admits that the discovery responses were false and that he downloaded the videos. He also now admits that he showed clips from the videos to Ms. Kaprova during the lunch break of her deposition. (*See* Exhibit 1, Emails with Brad Reeves).

8.      Defendants' counsel now claims the files later "became corrupted or unviewable" as some unspecified time. (*Id.*).

9.      As to why Defendants' Response stated that "Plaintiffs failed to provide a copy of the videos," Defendants' counsel Jacquelyn Blott stated that her co-counsel Mr. Reeves "misinformed" her. (*See* Exhibit 4, Emails with Jacquelyn Blott).

10.      Because Defendants' counsel did not raise any issue until the day the responses were due, even after an extension, it is obvious that Defendants' counsel made false certifications that the discovery had been answered with reasonable inquiry. Defendants' counsel made no inquiry until the day the responses were due, and they made false statements in their answers.

## LEGAL STANDARD FOR MOTION UNDER RULE 215.4

Under Rule 215.4, the Court may enter certain orders for a party's "failure to comply with Rule 198" regarding Requests for Admissions. "If the court determines that an answer does not comply with the requirements of Rule 198, it may order either that the matter is admitted or that an amended answer be served." Tex. R. Civ. P. 215.4(a). In addition, "[t]he provisions of Rule 215.1(d) apply to the award of expenses incurred in relation to the motion." *Id.*

# ARGUMENT

## I.    Defendants' Responses Failed to Comply with Rule 198.

Under Rule 198, "[a] response must fairly meet the substance of the request." Tex. R. Civ. P. 198.2(b). Defendants' Responses did not meet the substance of the request. The request asked the Defendants to confirm the authenticity of 14 videos, and Defendants did not take steps to respond. The failure to respond was caused purely by Defendants' own lack of diligence.

Defendants' Responses also blamed Plaintiffs for failing to provide videos, but this was a false statement that was not made with reasonable inquiry. After being confronted with proof, Defendants' counsel now admit the videos were provided, but they claim the files later became corrupted. Apparently, Defendants' counsel did not notice any problem with the videos until the day the responses were due. Obviously, this means Defendants were not taking any actions to confirm the authenticity of the videos prior to the day the responses were due.

Under Rule 198, "[l]ack of information or knowledge is not a proper response unless the responding party states that a reasonable inquiry was made." *Id*. Here, not only did Defendants fail to make a reasonable inquiry, but they made a false statement in their Responses which blamed Plaintiffs for their failure.  With discovery long since closed and the trial date rapidly approaching, Plaintiffs have been prejudiced by Defendants' failure to respond to the requests.

## CONCLUSION

Given the long history of discovery abuse and neglect in this case, Defendants'

Responses are egregious but unsurprising. As such, Plaintiffs move the Court to order the

requests at issue admitted and award Plaintiffs their attorney fees in connection with this

dispute.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with opposing counsel about this Motion, and they
are opposed.

MARK D. BANKSTON

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 1, 2022, the forgoing document was served upon all counsel of record via electronic service.

MARK D. BANKSTON

# D-1-GN-18-001835

| NEIL HESLIN and | § | IN DISTRICT COURT OF |
|---|---|---|
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

# D-1-GN-18-001842

| LEONARD POZNER and | § | IN DISTRICT COURT OF |
|---|---|---|
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

## ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS UNDER RULE 215.4 RELATING TO REQUESTS FOR ADMISSION

---

On this day, the Court considered Plaintiffs' Motion for Sanctions Under Rule 215.4 Relating to Requests for Admission. After considering the pleadings, evidence, and arguments of counsel, if any, the Court finds that the Motion should be GRANTED. As such, the Court ORDERS the following:

1.     The authenticity of the videos labeled SH VIDEO 1-14 shall be deemed admitted.

2.     Defendants shall pay all costs and expenses associated with serving the requests at issue and bringing their motion. Plaintiffs are ordered to submit an itemization of their costs and expenses to Defendants. If Defendants cannot agree to the amount,

Plaintiffs shall submit evidence to the Court of the reasonable value of their costs and expenses.

      Dated _____, 2022.

 

 

                                    _____

                                    Hon. Maya Guerra Gamble

# Exhibit 1

| From: | Bradley Reeves |
| --- | --- |
| To: | Mark Bankston |
| Cc: | Jacquelyn Blott; Bill Ogden |
| Subject: | RE: Discovery service |
| Date: | Thursday, January 27, 2022 5:02:18 PM |

Not that I really have to answer your questions, but just for you Mark, I will. The answer is "yes" to both of your questions. Did she not testify she had seen the videos? Are you saying she is lying? And why does that even matter considering you get another bite at the apple with a corporate rep?

I don't know why you are being so difficult about this. I have made a simple request, and I really shouldn't have to answer your questions just to have you re-send me a link that should have never gone bad in the first place (as you know, I have kept every dropbox link I have sent you alive so that you can continue to access the files).

So, please send a new link with this video production, particularly for Ms. Blott's benefit, since she has taken over as lead counsel and would much prefer to get them directly from you as we work to prepare these corporate representatives for the upcoming depositions.

As always, I appreciate your professionalism, Mark. Please let us know when we can expect to receive a new link from you with this additional video production or if you are refusing to do so.

Best regards,

Brad Reeves

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Thursday, January 27, 2022 4:31 PM
**To:** Bradley Reeves <brad@brtx.law>
**Cc:** Jacquelyn Blott <jblott@jblottlaw.com>; Bill Ogden <bill@fbtrial.com>
**Subject:** RE: Discovery service

Before I do anything further, I would like unequivocal answers to the following questions:

1. It is true that you accessed and viewed these files?

2. It is true that you showed one or more of these videos to Ms. Karpova?

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

**From:** Bradley Reeves <brad@brtx.law>
**Sent:** Thursday, January 27, 2022 2:32 PM
**To:** Mark Bankston <mark@fbtrial.com>
**Cc:** Jacquelyn Blott <jblott@jblottlaw.com>
**Subject:** RE: Discovery service

Thank you. Please re-send at your earliest convenience, as I am working with Ms. Blott regarding these video files as it pertains to the discovery requests, and I want to ensure I have everything correct (the last time I downloaded these, the .zip download became corrupted or unviewable, hence why I have asked you to re-send).

Best regards,

Brad Reeves

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Tuesday, January 25, 2022 4:36 PM
**To:** Bradley Reeves <brad@brtx.law>
**Cc:** Jacquelyn Blott <jblott@jblottlaw.com>
**Subject:** RE: Discovery service

I am travelling, but I will arrange another dropbox link when I am back in the office.

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

**From:** Bradley Reeves <brad@brtx.law>
**Sent:** Monday, January 24, 2022 2:42 PM
**To:** Mark Bankston <mark@fbtrial.com>
**Cc:** Jacquelyn Blott <jblott@jblottlaw.com>
**Subject:** RE: Discovery service

Mark:

This dropbox link no longer works. Please re-send.

Best regards,

Brad Reeves

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Thursday, December 2, 2021 11:13 PM
**To:** Bradley Reeves <brad@brtx.law>
**Subject:** Discovery service

Attached are supplemental expert designations for each plaintiff, along with a set of requests for admission and requests for production. I have captioned the discovery for all cases, and the plaintiffs are fine with one set of answers.

Also, below is a link to a dropbox transfer with additional video production:
https://link.edgepilot.com/s/3e888761/agGz9QCXsEy4j3kXZrXKJA?

u=https://www.dropbox.com/t/OFKk8A0FZOThMgo2

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

Exhibit 2

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | Bradley Reeves |
| **Subject:** | RE: Discovery service |
| **Date:** | Thursday, December 23, 2021 1:03:00 PM |

That's fine.

Mark Bankston

Kaster Lynch Farrar & Ball, LLP

**From:** Bradley Reeves <brad@brtx.law>
**Sent:** Thursday, December 23, 2021 12:54 PM
**To:** Mark Bankston <mark@fbtrial.com>
**Subject:** RE: Discovery service

Mark:

I am requesting a 21-day extension of the deadline for these supplemental discovery requests, i.e., from January 3, 2021 to January 24, 2021. Please let me know if you are agreeable to same.

Thank you.

Best regards,

Brad Reeves

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Thursday, December 2, 2021 11:13 PM
**To:** Bradley Reeves <brad@brtx.law>
**Subject:** Discovery service

Attached are supplemental expert designations for each plaintiff, along with a set of requests for admission and requests for production. I have captioned the discovery for all cases, and the plaintiffs are fine with one set of answers.

Also, below is a link to a dropbox transfer with additional video production:
https://link.edgepilot.com/s/e8062e18/VL-fCa8mwEK1XG3KYXjK3Q?
u=https://www.dropbox.com/t/OFKk8A0FZOThMgo2

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

# Exhibit 3

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, FREE | § | |
| SPEECH SYSTEMS, LLC, AND OWEN | § | |
| SHROYER | § | |
| | § | 459th JUDICIAL DISTRICT |
| Defendants, | § | |

CAUSE NO. D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, AND | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| Defendants, | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, AND | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| Defendants, | § | 459th JUDICIAL DISTRICT |

**DEFENDANT, FREE SPEECH SYSTEMS, LLC'S, OBJECTIONS AND RESPONSES
TO PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSION**

TO:     Plaintiffs, NEIL HESLIN, LEONARD POZNER, VERONIQUE DE LA ROSA, and SCARLETT LEWIS,
by and through their attorneys of record, Mark Bankston and William Ogden, KASTER LYNCH FARRAR
& BALL, LLP, 1117 Herkimer Street, Houston, Texas 77008

Defendant, FREE SPEECH SYSTEMS, LLC, objects and responds to *Plaintiffs' Second Set of Requests for
Admissions* as follows:

Respectfully submitted,

LAW OFFICE OF JACQUELYN W. BLOTT

By: _____
Jacquelyn W. Blott
SBN: 07473250
100 University Blvd., Ste. 225 #251
Round Rock, Texas 78665
Telephone: (512) 639-9904
Facsimile: (833) 377-0087
Email: jblott@jblottlaw.com

REEVES LAW, PLLC
Bradley J. Reeves
SBN: 2406826
702 Rio Grande St., Suite 203
Austin, Texas 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484
Email: brad@brtx.law

ATTORNEYS FOR DEFENDANTS
ALEX JONES, INFOWARS, LLC,  and
FREE SPEECH SYSTEMS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of *Defendant Free Speech Systems, LLC's Objections and
Responses to Plaintiffs' Second Requests for Admissions* was served pursuant to Rule 21a of the Texas Rules of Civil
Procedure on this the 24th day of January 2022 as follows.

Mark Bankston                    Email: mark@fbtrial.com
William Ogden                    Email: bill@fbtrial.com
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, Texas 78008

_____
Jacquelyn W. Blott

**Defendant, Free Speech Systems, LLC's, Responses to Requests for Production Regarding Net Worth**

**Request for Admission No. 1:** Admit that each of the following videos is a true and accurate copy of any original video created by Free Speech Systems, LLC.

|    | Title | Date | Produced As |
|----|-------|------|-------------|
| 1  | Connecticut School Massacre Looks Like False Flag Says Witness | December 14, 2012 | SH VIDEO 1 |
| 2  | Creepy Illumaniti Message in Batman Movie Hints at Sandy Hook School | December 17, 2012 | F2mRuEhmoGA |
| 3  | Sandy Hook 2nd Shooter Cover-Up | December 19, 2012 | 6W6b-voc-Ds |
| 4  | Sandy Hook Father Remembers Fallen Hero | December 19, 2012 | 8cZkHDH16nQ |
| 5  | Lower Part of Gotham Renamed "Sandy Hook" in Dark Knight Film | December 21, 2012 | Fus1FbQiU-Q |
| 6  | Callers React to Foreign Media Pushing Total Gun Confiscation | January 4, 2013 | SH VIDEO 2 |
| 8  | Prof. Claims Sandy Hook Massacre MSM Misinformation | January 10, 2013 | D8GxrKJDSL8 |
| 9  | Sandy Hook AR-15 Hoax? Still No School Surveillance Footage | January 15, 2013 | Oo74myC3bqY |
| 10 | Clearing Up Some Disinfo on Sandy Hook Massacre with James Tracy | January 18, 2013 | SH VIDEO 3 |
| 11 | Why People Think Sandy Hook is a Hoax | January 27, 2013 | tM5ZdO-IgEE |
| 12 | Dr. Steve Pieczenik: Sandy Hook was A Total False Flag! | March 27, 2013 | 5EfyD7Wu5fQ |
| 13 | Crisis Actors Used at Sandy Hook! Special Report | April 1, 2013 | shQSVhS0hLw |
| 14 | Obama Gun Grab Psyop | April 9, 2013 | SH VIDEO 4 |
| 15 | Shadow Govt Strike Again | April 16, 2013 | SH VIDEO 5 |
| 16 | Sandy Hook Police Ordered to Stand Down? | November 23, 2013 | xP9fhKUaudo |
| 17 | Sandy Hook Investigator Stonewalled and Threatened | February 20, 2014 | oGpWtqiSCY |
| 18 | Sandy Hook, False Narratives Vs. The Reality | March 14, 2014 | esIvAO2aI1w |
| 19 | Revealed: Sandy Hook Truth Exposed | May 9, 2014 | rSLOWCHNdw |
| 20 | Sandy Hook "Officials" Caught in Coverup and Running Scared | May 13, 2014 | MH6hmI1H-iQ |
| 21 | Bombshell: Sandy Hook Massacre Was a DHS Illusion Says School Safety Expert | May 13, 2014 | x2a1FwYEZS4 |

| 22 | Sandy Hook Deaths Missing From FBI Report | September 25, 2014 | A2Z0zUZBn7k |
| 23 | Sandy Hook Film Censorship Efforts Backfire | December 12, 2014 | 4T8_WYzH5SM |
| 24 | The Ultimate Sandy Hook Debate As The 2nd Anniversary Looms | December 12, 2014 | 6aK0P-WxjU8 |
| 25 | Will Bushmaster Lawsuit Reveal Sandy Hook Hoax? | December 16, 2014 | BFyDqDLAcLQ |
| 26 | Lawsuit Could Reveal Truth About Sandy Hook Massacre | December 27, 2014 | kK8CnIBA928 |
| 27 | America the False Democracy | December 18, 2014 | SH VIDEO 6 |
| 28 | Why We Accept Govt Lies | January 13, 2015 | SH VIDEO 7 |
| 29 | Title Unknown – Video discussing HONR Network | February 12, 2015 | SH VIDEO 8 |
| 30 | New Bombshell Sandy Hook Information In-Bound | March 4, 2015 | _7ib5WkULBY |
| 31 | New Sandy Hook Questions Arise from FOIA Hearing | May 29, 2015 | 5cll79t7Mrw |
| 32 | Sandy Hook: The Lies Keep Growing | May 29, 2015 | Ml3KVj2nVRA |
| 33 | School Administrator Exposes Sandy Hook Stonewall | May 29, 2015 | SO8Xb-t4nT4 |
| 34 | Official Claims DHS Involved in Sandy Hook | June 4, 2015 | BWsbyH2Wa0E |
| 35 | Govt is Manufacturing Crises | July 7, 2015 | SH VIDEO 9 |
| 36 | Retired FBI Agent Investigates Sandy Hook: MEGA MASSIVE COVER UP | July 7, 2015 | jCOe3qIgyFA |
| 37 | The Fight for Freedom of Information in Sandy Hook | July 8, 2015 | l0miXJ-djeA |
| 38 | Alex Jones Final Statement on Sandy Hook | November 18, 2016 | MwudDfz1yAk |
| 39 | Hunt for Wikileaks Source Begins | March 8, 2017 | SH VIDEO 10 |
| 40 | Sandy Hook Vampires Exposed | April 22, 2017 | rUn1jKhWTXI |
| 41 | Media Refuses to Report Alex Jones' Real Statements on Sandy Hook | June 13, 2017 | kf2F7RxJ9e4 |
| 42 | Zero Hedge Discovers Anomaly in Alex Jones Hit Piece | June 26, 2017 | SH VIDEO 11 |
| 43 | JFK Assassination Documents to DROP Tonight | October 26, 2017 | SH VIDEO 12 |
| 44 | Watch as Megyn Kelly Opens Old Wounds Of Sandy Hook Victims | April 20, 2018 | uQkAJykqyeo |

## OBJECTION:

**Defendant objects that it is unable to comply with the discovery request because Defendant cannot admit or deny the genuineness of the videos as the same were not attached to the Second Request for Admissions.**

**Response:**

**Subject to the foregoing objection, Defendant answers as follows:**

**Defendant admits that the following video clips and/or broadcast videos were published and distributed over the internet by Defendant and videotapes bearing these file names were produced to Plaintiffs.**

**Defendant denies that the video clips and/or broadcast videos are copies of the original broadcasts.**

| | Title | Date | Produced By Defendant As |
|---|---|---|---|
| 2 | Creepy Illumaniti Message in Batman Movie Hints at Sandy Hook School | December 17, 2012 | F2mRuEhmoGA |
| 3 | Sandy Hook 2nd Shooter Cover-Up | December 19, 2012 | 6W6b-voc-Ds |
| 4 | Sandy Hook Father Remembers Fallen Hero | December 19, 2012 | 8cZkHDH16nQ |
| 5 | Lower Part of Gotham Renamed "Sandy Hook" in Dark Knight Film | December 21, 2012 | Fus1FbQiU-Q |
| 8 | Prof. Claims Sandy Hook Massacre MSM Misinformation | January 10, 2013 | D8GxrKJDSL8 |
| 9 | Sandy Hook AR-15 Hoax? Still No School Surveillance Footage | January 15, 2013 | Oo74myC3bqY |
| 11 | Why People Think Sandy Hook is a Hoax | January 27, 2013 | tM5ZdO-IgEE |
| 12 | Dr. Steve Pieczenik: Sandy Hook was A Total False Flag! | March 27, 2013 | 5EfyD7Wu5fQ |
| 13 | Crisis Actors Used at Sandy Hook! Special Report | April 1, 2013 | shQSVhS0hLw |
| 16 | Sandy Hook Police Ordered to Stand Down? | November 23, 2013 | xP9fhKUaudo |
| 17 | Sandy Hook Investigator Stonewalled and Threatened | February 20, 2014 | oGpWtqiSCY |
| 18 | Sandy Hook, False Narratives Vs. The Reality | March 14, 2014 | esIvAO2aI1w |
| 19 | Revealed: Sandy Hook Truth Exposed | May 9, 2014 | rSLOWCHNdw |
| 20 | Sandy Hook "Officials" Caught in Coverup and Running Scared | May 13, 2014 | MH6hmI1H-iQ |
| 21 | Bombshell: Sandy Hook Massacre Was a DHS Illusion Says School Safety Expert | May 13, 2014 | x2a1FwYEZS4 |
| 22 | Sandy Hook Deaths Missing From FBI Report | September 25, 2014 | A2Z0zUZBn7k |
| 23 | Sandy Hook Film Censorship Efforts Backfire | December 12, 2014 | 4T8_WYzH5SM |

| | | Title | Date | Produced By Defendant As |
|---|---|---|---|---|
| 24 | | The Ultimate Sandy Hook Debate As The 2nd Anniversary Looms | December 12, 2014 | 6aK0P-WxjU8 |
| 25 | | Will Bushmaster Lawsuit Reveal Sandy Hook Hoax? | December 16, 2014 | BFyDqDLAcLQ |
| 26 | | Lawsuit Could Reveal Truth About Sandy Hook Massacre | December 27, 2014 | kK8CnIBA928 |
| 30 | | New Bombshell Sandy Hook Information In-Bound | March 4, 2015 | _7ib5WkULBY |
| 31 | | New Sandy Hook Questions Arise from FOIA Hearing | May 29, 2015 | 5cll79t7Mrw |
| 32 | | Sandy Hook: The Lies Keep Growing | May 29, 2015 | Ml3KVj2nVRA |
| 33 | | School Administrator Exposes Sandy Hook Stonewall | May 29, 2015 | SO8Xb-t4nT4 |
| 34 | | Official Claims DHS Involved in Sandy Hook | June 4, 2015 | BWsbyH2Wa0E |
| 36 | | Retired FBI Agent Investigates Sandy Hook: MEGA MASSIVE COVER UP | July 7, 2015 | jCOe3qIgyFA |
| 37 | | The Fight for Freedom of Information in Sandy Hook | July 8, 2015 | l0miXJ-djeA |
| 38 | | Alex Jones Final Statement on Sandy Hook | November 18, 2016 | MwudDfz1yAk |
| 39 | | Hunt for Wikileaks Source Begins | March 8, 2017 | SH VIDEO 10 |
| 40 | | Sandy Hook Vampires Exposed | April 22, 2017 | rUn1jKhWTXI |
| 41 | | Media Refuses to Report Alex Jones' Real Statements on Sandy Hook | June 13, 2017 | kf2F7RxJ9e4 |
| 44 | | Watch as Megyn Kelly Opens Old Wounds Of Sandy Hook Victims | April 20, 2018 | uQkAJykqyeo |

**Defendant is unable to comply with the discovery request as it relates to the following because Defendant cannot admit or deny that the videos are true and accurate copies of any original video created by Free Speech Systems, LLC as Plaintiffs failed to provide a copy of the videos.**

**Defendant will comply with the request if and when the videos are provided by Plaintiffs.**

| | Title | Date | Produced As |
|---|---|---|---|
| 1 | Connecticut School Massacre Looks Like False Flag Says Witness | December 14, 2012 | SH VIDEO 1 |
| 6 | Callers React to Foreign Media Pushing Total Gun Confiscation | January 4, 2013 | SH VIDEO 2 |
| 10 | Clearing Up Some Disinfo on Sandy Hook Massacre with James Tracy | January 18, 2013 | SH VIDEO 3 |
| 14 | Obama Gun Grab Psyop | April 9, 2013 | SH VIDEO 4 |
| 15 | Shadow Govt Strike Again | April 16, 2013 | SH VIDEO 5 |

|    | Title | Date | Produced As |
|----|-------|------|-------------|
| 27 | America the False Democracy | December 18, 2014 | SH VIDEO 6 |
| 28 | Why We Accept Govt Lies | January 13, 2015 | SH VIDEO 7 |
| 29 | Title Unknown – Video discussing HONR Network | February 12, 2015 | SH VIDEO 8 |
| 35 | Govt is Manufacturing Crises | July 7, 2015 | SH VIDEO 9 |
| 39 | Hunt for Wikileaks Source Begins | March 8, 2017 | SH VIDEO 10 |
| 42 | Zero Hedge Discovers Anomaly in Alex Jones Hit Piece | June 26, 2017 | SH VIDEO 11 |
| 43 | JFK Assassination Documents to DROP Tonight | October 26, 2017 | SH VIDEO 12 |

**Request for Admission No. 2**: Admit that the video produced as SH VIDEO 13 is a true and accurate copy of the June 19, 2017 profile of Alex Jones hosted by Megyn Kelly.

**OBJECTION:**

**Defendant is unable to comply with the discovery request because Defendant cannot admit or deny that the video is a true and correct of any original video created by Free Speech Systems, LLC as Plaintiffs failed to provide a copy of the videos.**

**Response:**

**Defendant will comply with the request if and when the video is provided by Plaintiffs.**

**Request for Admission No. 3**: Admit that the video produced as SH VIDEO 14 is a true and accurate copy of Veronique De La Rosa's alleged green-screen interview with Anderson.

**OBJECTION:**

**Defendant is unable to comply with the discovery request because Defendant cannot admit or deny that the video is a true and correct of any original video created by Free Speech Systems, LLC as Plaintiffs failed to provide a copy of the videos.**

**Response:**

**Defendant will comply with the request if and when the video is provided by Plaintiffs.**

**Request for Admission No. 4**: Admit that each of the following documents identified by Bates number is a true and accurate copy of a genuine original document in Free Speech Systems, LLC's corporate files:

FSSTX-003561
FSSTX-003653
FSSTX-004181
FSSTX-005008

FSSTX-012516
FSSTX-012519
FSSTX-012650
FSSTX-012675
FSSTX-013639
FSSTX-014466
FSSTX-015270
FSSTX-018756
FSSTX-018762
FSSTX-019237
FSSTX-027752
FSSTX-027766
FSSTX-028423
FSSTX-037204
FSSTX-037740
FSSTX-038175
FSSTX-038928
FSSTX-039429
FSSTX-039550
FSSTX-039897
FSSTX-040027
FSSTX-040802
FSSTX-042477
FSSTX-042462
FSSTX-042476
FSSTX-043252
FSSTX-043869
FSSTX-043912
FSSTX-051348
FSSTX-052942
FSSTX-052975
FSSTX-053016
FSSTX-053394
FSSTX-068265
FSSTX-072489
FSSTX-075327
FSSTX-075755
FSSTX-075784
FSSTX-075922
FSSTX-075936
FSSSTX-075999
FSSTX-076069
FSSTX-076105
FSSTX-076236
FSSTX-076571
FSSTX-076588

FSSTX-077006
FSSTX-077014
FSSTX-077076
FSSTX-077501
FSSTX-077825
FSSTX-078964
FSSTX-079481
FSSTX-079546
FSSTX-082669 – FSSTX-082812
FSSTX-084601
FSSTX-085544
FSSTX-085731 – FSSTX-086492
FSSTX-086569 – FSSTX-086583
FSSTX-086588
FSSTX-086589
Heslin (19-4651) – 000125
Heslin (19-4651) – 000166
Heslin (19-4651) – 000627
Heslin (19-4651) – 000661
Heslin (19-4651) – 000712
Heslin (19-4651) – 000719
Heslin (19-4651) – 000766
Heslin (19-4651) – 000862
Heslin (19-4651) – 000873

**OBJECTION:**

**Defendant objects to the use of the term "corporate files" as the same is vague and ambiguous.**

**Response:**

**To the extent that Plaintiffs are requesting Defendant to admit that these documents are kept in the course of the regularly conducted business activity of Defendant, DENIED.**

**Request for Admission No. 5:** Admit that during the October 1, 2021 episode of the Alex Jones Show, Mr. Jones stated the following:

> Just like the New York Times lying about WMDs on purpose and all of the evil things like that – oh, but I questioned one of the big events they hyped up because of a lot of anomalies, and I have a right to question that. In fact, I, for a while, thought it didn't happen, then I thought it probably did, and now seeing how synthetic everything is, maybe my original instinct – maybe Alex Jones is always right. I'm pretty much right 99% of the time folks, and so are you. I mean we all know, this is easy to look at and see what's happening.

**<u>Response:</u>**

**Admit**

# Exhibit 4

| | |
|---|---|
| **From:** | Jacquelyn Blott |
| **To:** | Mark Bankston |
| **Cc:** | Bill Ogden |
| **Subject:** | RE: Requests for Admissions |
| **Date:** | Thursday, January 27, 2022 1:34:11 PM |

I was misinformed about Plaintiffs' production of the videos as well as the other documents you provided with the Requests for Admissions.  I have spoken with Mr. Reeves and emailed him that portion of your email saying that he had produced them on December 2, 2021.  He is searching but has yet to find videos labeled SH Videos.

I have not accused anyone in this case of malpractice and don't have an opinion in that regard either way.  It is a waste of energy. My focus is from the date I undertook to represent the Defendants (some 14 days ago)  and moving forward.

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Thursday, January 27, 2022 1:14 PM
**To:** Jacquelyn Blott <jblott@jblottlaw.com>
**Cc:** Bill Ogden <bill@fbtrial.com>
**Subject:** RE: Requests for Admissions

I'm not sure why you've removed Mr. Reeves from this email, but I have left him off, following your lead. I assume it's because you've accused him of malpractice.

In any case, I again need to confirm your position. It appears you are saying that the reason you falsely represented in your discovery answers that Plaintiffs failed to provide the videos is because Mr. Reeves misinformed you. Is that correct?

Also, before we file our motion with the Court, I want to confirm that you have no response to Ms. Karpova's testimony which seems to prove that Mr. Reeves in fact possessed a copy of SH VIDEO 12. Is that also correct?

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

**From:** Jacquelyn Blott <jblott@jblottlaw.com>
**Sent:** Thursday, January 27, 2022 6:14 AM
**To:** Mark Bankston <mark@fbtrial.com>
**Subject:** RE: Requests for Admissions

Mr. Bankston:

Your assumptions are incorrect.  When I asked Mr. Reeves if they had been served

with the discovery requests, I was misinformed.  I did not notice your email that was below his email to you.   I expended considerable time including time of others trying to track down the videos that were labeled as "SH Video…." to no avail and the search continues.  The videos on our index have as file names alphanumeric file names.  In the interim, Connecticut counsel is looking to identify the videos marked with the prefix SH VIDEO to the alphanumeric names.  I will amend the response the earlier of receiving the identifying information from Connecticut counsel or I receive the link to the Dropbox.

With Respect to Request for Admission No. 4, your request asks Free Speech Systems, LLC to admit whether the documents are "true and accurate copies of a genuine original document in Free Speech Systems, LLC's **corporate files.**  You state, We served a standard authentication request that these documents are genuine copies produced from Free Speech Systems' files.   I am amending the Admissions to reflect those documents that are contained in FSS' files and admit the authenticity of those that are not (e.g. the deposition and trial transcript from Mr. Jones' divorce).

Connecticut counsel received Mr. Shroyer's deposition transcript in the Connecticut proceedings and Plaintiffs' First Supplemental Objections and Responses to Plaintiffs' 3rd Request for Production were served via eFile Texas using the Heslin cause number.  Please advise if there were any issues with the receiving same.

Best regards,

Jacquelyn W. Blott

---

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Tuesday, January 25, 2022 4:31 PM
**To:** Bradley Reeves <brad@brtx.law>
**Cc:** Jacquelyn Blott <jblott@jblottlaw.com>; Bill Ogden <bill@fbtrial.com>
**Subject:** Requests for Admissions

Ms. Blott,

I need to confer about several issues with the responses you served yesterday.

As it concerns Plaintiffs' Request for Admission 1-3, you stated that "Defendant is unable to comply with the discovery request…as Plaintiffs failed to provide a copy of the videos." That is a false statement to which you made with no reasonable inquiry. As shown in the email below, the videos were provided to Defendants on December 2, 2021 at the same time at the discovery requests. Collectively, those videos are nearly four gigabytes and cannot be maintained on our Dropbox account indefinitely. Therefore, the files were sent using a Dropbox transfer link, which has since expired.

Apparently, Mr. Reeves never even downloaded the files. And as Mr. Reeves noted in yesterday's

email, the download link *no longer* works. But Plaintiffs absolutely provided copies of the videos. And it's obvious there was never any genuine effort to respond (even after being granted an extension) since the first time Mr. Reeves raised any issue about not having the videos was on the day your responses were due. This turn of events is ridiculous, and I'm positive the Court would feel the same way.

As it concerns Plaintiffs' Request for Admission No. 4, we requested admissions concerning authenticity. This kind of request is specifically authorized by Rule 198.1, which permits a request for admission for the genuineness of any documents. In response, you completely evaded the question, refused to admit or deny authenticity, and instead responded by disclaiming the hearsay exception under Rule 803(6) that the documents were kept in the course of the regularly conducted business. Our request had nothing to do with hearsay, nor do we care about hearsay exceptions since none of these documents would ever be offered for the truth of the matters asserted within. Quite to contrary, in fact. Instead, we served a standard authentication request that these documents are genuine copies produced from Free Speech Systems' files. You unreasonably evaded that simple, routine request.

We demand that you withdraw your false and frivolous answers, and that you serve new responses admitting authenticity of all matters. Otherwise, we will move the Court to assess sanctions for your unreasonable responses, deem the requests admitted, and award all costs. Given the effort required to organize, prepare, and serve this video and document related discovery, not to mention a motion and eventual hearing, we expect those costs would be rather extensive.

Finally, we have concerns over what appear to be contradictions between your responses and the testimony given by Ms. Karpova on December 3, 2021. During her deposition, Ms. Karpova testified that she had been shown certain videos during the break, such as the following:

> Q.     This talks about an October 26, 2017 video called "JFK
>        Assassination Documents to Drop Tonight." Is that another one
>        that you just looked at at the break?
> A.     Yes. (136:22-137:1).

That video was produced by Plaintiffs on December 2, 2021 as "SH VIDEO 12." It was never produced by Defendants, and we have no record of ever producing it on any prior occasion. Let me know if I'm incorrect, because otherwise this is a major discrepancy in your responses. At present, we do not understand how Mr. Reeves was able to show Ms. Karpova the video if he did not have access to "SH VIDEO 12."

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

---

**From:** Bradley Reeves <brad@brtx.law>
**Sent:** Monday, January 24, 2022 2:42 PM
**To:** Mark Bankston <mark@fbtrial.com>

**Cc:** Jacquelyn Blott <jblott@jblottlaw.com>
**Subject:** RE: Discovery service

Mark:

This dropbox link no longer works. Please re-send.

Best regards,

Brad Reeves

---

**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Thursday, December 2, 2021 11:13 PM
**To:** Bradley Reeves <brad@brtx.law>
**Subject:** Discovery service

Attached are supplemental expert designations for each plaintiff, along with a set of requests for admission and requests for production. I have captioned the discovery for all cases, and the plaintiffs are fine with one set of answers.

Also, below is a link to a dropbox transfer with additional video production:
https://link.edgepilot.com/s/3e888761/agGz9QCXsEy4j3kXZrXKJA?
u=https://www.dropbox.com/t/OFKk8A0FZOThMgo2

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 61352104
Status as of 2/2/2022 9:36 AM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/1/2022 2:26:41 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/1/2022 2:26:41 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 2/1/2022 2:26:41 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 2/1/2022 2:26:41 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/1/2022 2:26:41 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/1/2022 2:26:41 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/1/2022 2:26:41 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/1/2022 2:26:41 PM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 61352104
Status as of 2/2/2022 9:36 AM CST

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/1/2022 2:26:41 PM | SENT |

2/6/2022 1:13 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Alexus Rodriguez

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

---

### NOTICE OF FILING OF DECLARATION ON ATTORNEY'S FEES

---

Plaintiffs hereby file the attached Declaration setting forth attorney's fees and expenses in connection with their Motion for Sanctions Regarding Written Discovery.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2022 the forgoing document was served upon all counsel of record via electronic service.


_____
MARK D. BANKSTON

## DECLARATION OF MARK BANKSTON

STATE OF TEXAS    §

                          §

HARRIS COUNTY    §

I, Mark Bankston, declare under penalty of perjury that the following declaration is true and correct and based upon my personal knowledge:

1.  My name is Mark Bankston. I am a partner at Kaster Lynch Farrar & Ball, LLP. I am over the age of 21 and competent to make this declaration.

2.  As a civil litigator, I have twelve years of experience in handling tort lawsuits. I have tried more than a dozen injury lawsuits to a jury. I have represented scores of clients in over twenty different states in connection with various product liability, civil rights, employment, and negligence cases in state and federal court. I have also represented plaintiffs in over a dozen appellate victories at the state and federal level.

3.  I have recounted my credentials and accolades in numerous prior declarations to this Court, so I will not repeat them here, but instead ask the Court to take judicial notice of its own file and prior fee awards.

4.  My professional rate for the kind of work performed in this case is $550 per hour, and I have previously been awarded fees at that rate in this Court.

5.  The InfoWars lawsuits pending in this Court require an attorney who is both capable and willing to handle this unusually demanding, extraordinarily high-profile litigation. This lawsuit involves complicated legal and evidentiary issues which require an attorney of a high level of competence.

6.  I am personally familiar with the rates charged by other attorneys of my experience and professional background in this locality, as well as rates charged by attorneys in high-profile defamation lawsuits, and it is my opinion that $550 per hour is a reasonable rate for the work necessary in connection with these motions.

7.  The following legal services were rendered in connection with Ms. Lewis' and Mr. Heslin's Motions:

**Scarlett Lewis' Motion to Compel and Motion for Sanctions, filed September 15, 2021**

This brief was 5 pages long with 15 pages of exhibits. The brief summarized the post-remand discovery served by Ms. Lewis, as well as the dispute over Defendants' inadequate answers.

I spent 2 hours reviewing the record, and I spent 4 hours writing and editing the brief. In total, the reasonable value of this time at $550/hour is $3,300.

**Neil Heslin's Motion to Compel and Motion for Sanctions, filed September 15, 2021**

This brief was 9 pages long with 30 pages of exhibits. The brief summarized the post-remand discovery served by Mr. Heslin, as well as the dispute over Defendants' inadequate answers. I was able to use some of the material from Ms. Lewis' motion.

I spent 1 hour reviewing the record, and I spent 5.5 hours writing and editing the brief. In total, the reasonable value of this time at $550/hour is $3,575.

**Defendants' Response to Scarlett Lewis' Motion to Compel, filed September 22, 2021**

Defendants' Response was 13 pages long with 10 pages of exhibits. I spent 1.5 hours reviewing this Response and taking notes on the legal arguments and facts alleged. The reasonable value of this time at $550/hour is $825.

**Defendants' Response to Neil Heslin's Motion to Compel, filed September 22, 2021**

Defendants' Response was 22 pages long with 23 pages of exhibits. I spent 2.5 hours reviewing this Response and taking notes on the legal arguments and facts alleged. The reasonable value of this time at $550/hour is $1,375.

**Creation of PowerPoint Presentation, October 18-23, 2021**

I created a 45-slide presentation setting forth these discovery disputes and Defendants' bad faith obstruction. I spent 12 hours creating this presentation. The reasonable value of his time at $550/hour is $6,600.

**Preparation for Hearing, October 23-24, 2021**

I spent 5 hours preparing for the hearing. The reasonable value of his time at $550/hour is $2,750.

**Time in the Hearing, October 25, 2021**

I spent 1 hour arguing the motions. The reasonable value of this time at $550/hour is $550.

**Meet and Confer Correspondence, July-August 2021**

I spent 1.5 hours drafting, reading, and responding to the correspondences with Defendants' counsel relating to this motion. The reasonable value of this time at $550/hour is $825.

**Drafting Discovery Requests, served July 13, 2021**

I spent 2.5 hours drafting the post-remand discovery to the three defendants. The reasonable value of this time at $550/hour is $1,375.

8.     I provided a total of 38.5 hours of legal services. At $550 per hour, the value of those services is $21,175.

Executed on January 26, 2022 in Harris County, Texas.

_____

MARK D. BANKSTON

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 61543954
Status as of 2/9/2022 8:58 AM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/8/2022 1:13:06 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:13:06 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 2/8/2022 1:13:06 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/8/2022 1:13:06 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:13:06 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 2/8/2022 1:13:06 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:13:06 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:13:06 PM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 61543954
Status as of 2/9/2022 8:58 AM CST

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:13:06 PM | SENT |

2/8/2022 1:34 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Selina Hamilton

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

### NOTICE OF FILING OF DECLARATION ON ATTORNEY'S FEES

---

Plaintiffs hereby file the attached Declaration setting forth attorney's fees and expenses in connection with their Motion for Sanctions Regarding Corporate Deposition.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone

713.221.8301 Fax

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2022 the forgoing document was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

## <u>DECLARATION OF MARK BANKSTON</u>

STATE OF TEXAS    §
                           §
HARRIS COUNTY    §

I, Mark Bankston, declare under penalty of perjury that the following declaration is true and correct and based upon my personal knowledge:

1.  My name is Mark Bankston. I am a partner at Kaster Lynch Farrar & Ball, LLP. I am over the age of 21 and competent to make this declaration.

2.  As a civil litigator, I have twelve years of experience in handling tort lawsuits. I have tried more than a dozen injury lawsuits to a jury. I have represented scores of clients in over twenty different states in connection with various product liability, civil rights, employment, and negligence cases in state and federal court. I have also represented plaintiffs in over a dozen appellate victories at the state and federal level.

3.  I have recounted my credentials and accolades in numerous prior declarations to this Court, so I will not repeat them here, but instead ask the Court to take judicial notice of its own file and prior fee awards.

4.  My professional rate for the kind of work performed in this case is $550 per hour, and I have previously been awarded fees at that rate in this Court.

5.  The InfoWars lawsuits pending in this Court require an attorney who is both capable and willing to handle this unusually demanding, extraordinarily high-profile litigation. This lawsuit involves complicated legal and evidentiary issues which require an attorney of a high level of competence.

6.  I am personally familiar with the rates charged by other attorneys of my experience and professional background in this locality, as well as rates charged by attorneys in high-profile defamation lawsuits, and it is my opinion that $550 per hour is a reasonable rate for the work necessary in connection with these motions.

7.  The following legal services were rendered in connection with the recent corporate deposition and Plaintiffs' Motion for Sanctions:

1

**Arranging Deposition, October – November 2021**

I spent 3.5 hours corresponding with Defendants, scheduling and arranging the deposition, as well as selecting topics to be used in the deposition and preparing the notice and amended notice. The reasonable value of this time at $550/hour is $1,925.

**Preparation for the Deposition of Free Speech Systems, LLC, November 2021**

I spent 28 hours preparing for the deposition of Free Speech Systems, LLC. The reasonable value of this time at $550/hour is $15,400.

**Travel – Houston to Austin, December 1, 2021**

I spent 3 hours travelling from Houston to Austin to take the deposition. The reasonable value of this time at $550/hour is $1,650.

**Deposition of Free Speech Systems, December 3, 2021**

I spent 6.5 hours taking the deposition of Free Speech Systems, LLC. The reasonable value of this time at $550/hour is $3,575.

**Travel – Austin to Houston, December 4, 2021**

I spent 3 hours travelling home to Houston following the deposition. The reasonable value of this time at $550/hour is $1,650.

**Plaintiffs' Motion for Sanctions, filed December 27, 2021**

This brief was 42 pages long with 488 pages of exhibits. The brief outlined the history of non-appearances at corporate depositions and outlined the deficient nature of the December 3, 2021 deposition. I spent 32 hours writing and editing the brief. In total, the reasonable value of this time at $550/hour is $17,600.

**Editing of Deposition Video, December 29-30, 2021**

To help argue the motion to the Court, I spent 5 hours compiling and editing a ten-minute compilation of Ms. Karpova's testimony from the original deposition video. The reasonable value of this time at $550/hour is $2,750.

**Defendants' Response to Scarlett Lewis' Motion to Compel, filed January 7, 2021**

Defendants' Response was 9 pages long with 10 pages of exhibits. I spent 1.5 hours reviewing this Response and taking notes on the legal arguments and facts alleged. The reasonable value of this time at $550/hour is $825.

2

**Creation of PowerPoint Presentation, January 8-11, 2021**

I created a PowerPoint presentation setting forth the history of the corporate deposition discovery disputes and Defendants' bad faith obstruction of the latest deposition. I spent 12 hours creating this presentation. The reasonable value of this time at $550/hour is $4,950.

**Preparation for Hearing, January 13, 2021**

I spent 6 hours preparing for the hearing. The reasonable value of this time at $550/hour is $3,300.

**Time in the Hearing, October 25, 2021**

I spent 2 hours arguing the motions. The reasonable value of this time at $550/hour is $1,100.

8.     I provided a total of 102.5 hours of legal services. At $550 per hour, the value of those services is $56,375.

9.     Plaintiffs also incurred the following expenses for the corporate representative deposition:

| | |
|---|---|
| Hotel Expense | $265.00 |
| Court Reporting / Transcript Expenses | $2,795.00 |
| Videographer / Video Delivery Expenses | $1,310.00 |
| **Total** | **$4,370.00** |

10.    The total value of legal services and expenses is $60,745.

Executed on January 26, 2022 in Harris County, Texas.

_____

MARK D. BANKSTON

3

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 61545118
Status as of 2/9/2022 9:01 AM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/8/2022 1:34:25 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:34:25 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 2/8/2022 1:34:25 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 2/8/2022 1:34:25 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/8/2022 1:34:25 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:34:25 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:34:25 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:34:25 PM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 61545118
Status as of 2/9/2022 9:01 AM CST

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/8/2022 1:34:25 PM | SENT |

2/9/2022 12:57 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez

NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

---

## NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE

---

TO:  Plaintiffs, NEAL HESLIN, LEONARD POZNER, VERONIQUE DE LA ROSA, and SCARLETT LEWIS, by and through their attorneys of record, Mark Bankston and William Ogden, KASTER LYNCH FARRAR & BALL, LLP, 1117 Herkimer Street, Houston, Texas 77008

Defendant, FREE SPEECH SYSTEMS, LLC, designates the following individual as the corporate representative pursuant to Rule 199.2 of the Texas Rules of Civil Procedure:

Brittany Paz
4 Research Drive, Suite 402
Shelton, Connecticut 06484
Telephone: (203)242-3013

Ms. Paz will testify as to all topics in *Plaintiffs' Notice of Taking the Oral and Videotaped Deposition of Free Speech Systems, LLC's Corporate Representative(s)* dated January 26, 2022.

Respectfully submitted,

LAW OFFICE OF JACQUELYN W. BLOTT

By: _____
Jacquelyn W. Blott
SBN: 07473250
100 University Blvd., Ste. 225 #251
Round Rock, Texas 78665
Telephone: (512) 639-9904
Facsimile: (833) 377-0087
Email: jblott@jblottlaw.com

REEVES LAW, PLLC
Bradley J. Reeves
SBN: 2406826
702 Rio Grande St., Suite 203
Austin, Texas 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484
Email: brad@brtx.law

ATTORNEYS FOR DEFENDANTS
ALEX JONES, OWEN SHROYER,
INFOWARS, LLC,  and FREE SPEECH
SYSTEMS, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of *Defendant Free Speech Systems, LLC's First Supplemental Objections and Responses to Third Set of Requests for Production* was served pursuant to Rule 21a of the Texas Rules of Civil Procedure on this the 9th day of February 2022 as follows.

Mark Bankston                          Email: mark@fbtrial.com
William Ogden                          Email: bill@fbtrial.com
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, Texas 77008

_____
Jacquelyn W. Blott

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 61586926
Status as of 2/9/2022 2:24 PM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/9/2022 12:57:53 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 2/9/2022 12:57:53 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 2/9/2022 12:57:53 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 2/9/2022 12:57:53 PM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 2/9/2022 12:57:53 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/9/2022 12:57:53 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/9/2022 12:57:53 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/9/2022 12:57:53 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/9/2022 12:57:53 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name |
|------|

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 61586926
Status as of 2/9/2022 2:24 PM CST

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/9/2022 12:57:53 PM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/9/2022 12:57:53 PM | SENT |

2/17/2022 3:37 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Gilberto Diaz Rios

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, AND | § | |
| OWEN SHROYER | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, AND | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, AND | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

## **UNOPPOSED MOTION FOR WITHDRAWAL OF COUNSEL**

Pursuant to Rule 10 of the Texas Rules of Civil Procedure, the undersigned, Bradley Reeves of REEVES LAW, PLLC, one of the counsels for Defendants in the above-captioned matters, brings this Unopposed Motion for Withdrawal of Counsel, and in support thereof, and would show unto the Court as follows:

<u>**MOTION**</u>

The undersigned requests the Court grant this unopposed motion for withdrawal of counsel, allowing Bradley Reeves of REEVES LAW, PLLC to withdraw as counsel of record for Defendants. Good cause exists for this withdrawal because a conflict of interest as arisen between the undersigned and Defendants which implicate serious ethical considerations and prevent the undersigned from further representation of Defendants. These considerations reduce the ability of the undersigned to provide adequate representation to the Defendants within ethical bounds and renders an ongoing attorney-client relationship impossible. These considerations have further resulted in making the undersigned unable to effectively communicate with Defendants in a manner consistent with good attorney-client relations.

The undersigned has informed Defendants of his intent to withdraw, and Defendants have voiced no objections or otherwise responded to the notifications from the undersigned. Moreover, should the Court allow this withdrawal, Defendants will still be represented in these cases by Ms. Jacquelyn Blott of the LAW OFFICE OF JACQUELYN W. BLOTT, who has made her appearance and is designated as lead counsel in all matters. As such, withdrawal of the undersigned as counsel of record for Defendants can be accomplished with no material adverse effect on the interests of Defendants and the representation of Defendants in these matters.

Pursuant to Local Rule 6.2(a), counsel for Plaintiffs consents to the withdrawal as indicated by his electronic signature below. In addition, the undersigned certifies that to the best of his

2

knowledge, there are currently no rulings of this Court which have yet to be reduced to writing. Finally, this motion is not made for any purpose of delay in these cases.

WHEREFORE, the undersigned, Bradley Reeves of REEVES LAW, PLLC, respectfully requests the Court grant this unopposed motion for withdrawal of counsel and permit Bradley Reeves of REEVES LAW, PLLC to withdraw as counsel of record for Defendants, along with such other and further relief to which the undersigned may be entitled.

Dated: February 17, 2022.

Respectfully submitted,

By:   /s/ Bradley J. Reeves            
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
**REEVES LAW, PLLC**
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**WITHDRAWING ATTORNEY FOR DEFENDANTS**

CONSENT TO WITHDRAWAL:

KASTER LYNCH FARRAR & BALL, LLP

By:/s/ Mark D. Bankston (by permission)
Mark D. Bankston
Texas Bar No. 24071066
mark@fbtrial.com
William R. Ogden
Texas Bar No. 24073531
bill@fbtrial.com
1117 Herkimer Street
Houston, TX 77008
Tel:    (713) 221-7008
Fax:    (713) 221-8301

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with opposing counsel regarding this motion for withdrawal of counsel, and counsel for Plaintiffs has indicated they are unopposed to and consent to this withdrawal.

_/s/ Bradley J. Reeves_ _
Bradley J. Reeves

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the method indicated below upon all counsel of record and interested parties in accordance with the Texas Rules of Civil Procedure on February 17, 2022.

Mark Bankston                                      _via electronic service_
William Ogden
KASTER LYNCH FARRAR & BALL, LLP
1117 Herkimer Street
Houston, TX 77008

_/s/ Bradley J. Reeves_
Bradley J. Reeves

4

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 61863260
Status as of 2/22/2022 11:19 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 2/17/2022 3:37:42 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 2/17/2022 3:37:42 PM | SENT |
| William Ogden | | bill@fbtrial.com | 2/17/2022 3:37:42 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 2/17/2022 3:37:42 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 2/17/2022 3:37:42 PM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 2/17/2022 3:37:42 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/17/2022 3:37:42 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: OWEN SHROYER

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 61863260
Status as of 2/22/2022 11:19 AM CST

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

CAUSE NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, AND | § | |
| OWEN SHROYER | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, AND | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

CAUSE NO. D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, AND | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants*, | § | 459th JUDICIAL DISTRICT |

## **ORDER GRANTING UNOPPOSED MOTION FOR WITHDRAWAL OF COUNSEL**

CAME ON for consideration the Unopposed Motion for Withdrawal of Counsel filed by

Bradley Reeves of REEVES LAW, PLLC seeking to withdraw as counsel of record for Defendants

in the above-captioned matters, and the Court, after considering the motion, is of the opinion that the motion should be GRANTED. It is therefore,

ORDERED, ADJUDGED, and DECREED that Bradley J. Reeves of the law firm of REEVES LAW, PLLC is permitted to withdraw as an attorney of record for Defendants in each of the above-captioned matters.


SIGNED ON _____, 2022.



_____
HONORABLE JUDGE MAYA GUERRA GAMBLE

**APPROVED AS TO FORM
AND ENTRY REQUESTED:**

REEVES LAW, PLLC

By: ___/s/ Bradley J. Reeves_____
Bradley J. Reeves
Texas Bar No. 24068266
brad@brtx.law
702 Rio Grande St., Suite 203
Austin, TX 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484

**WITHDRAWING ATTORNEY FOR DEFENDANTS**

KASTER LYNCH FARRAR & BALL, LLP

By:/s/ Mark D. Bankston (by permission)
Mark D. Bankston
Texas Bar No. 24071066
mark@fbtrial.com
William R. Ogden
Texas Bar No. 24073531
bill@fbtrial.com
1117 Herkimer Street
Houston, TX 77008
Tel:     (713) 221-7008
Fax:     (713) 221-8301

**ATTORNEYS FOR PLAINTIFFS**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 61863260
Status as of 2/22/2022 11:19 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 2/17/2022 3:37:42 PM | SENT |
| Velva Lasha Price | 16315950 | velva.price@traviscountytx.gov | 2/17/2022 3:37:42 PM | SENT |
| William Ogden | | bill@fbtrial.com | 2/17/2022 3:37:42 PM | SENT |
| Bradley Reeves | | brad@brtx.law | 2/17/2022 3:37:42 PM | SENT |
| Marc Randazza | | ecf@randazza.com | 2/17/2022 3:37:42 PM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 2/17/2022 3:37:42 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/17/2022 3:37:42 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: OWEN SHROYER

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bradley Reeves on behalf of Bradley Reeves
Bar No. 24068266
brad@brtx.law
Envelope ID: 61863260
Status as of 2/22/2022 11:19 AM CST

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/17/2022 3:37:42 PM | SENT |

2/22/2022 6:12 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Victoria Benavides

NO. D-1-GN-18-001835

| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-001842

| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
|---|---|---|
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-006623

| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
|---|---|---|
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

## MOTION FOR ADMISSION OF COUNSEL PRO HAC VICE

Applicant Mr. Norman A. Pattis, a nonresident attorney licensed in another state but not in Texas, and movant Ms. Jacquelyn W. Blott, an attorney licensed in Texas, file this motion for admission of counsel pro hac vice in the above action. In support of this motion, applicant and movant show the court as follows:

1.      The defendants in the above cases, Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer, desire that applicant Attorney Pattis provide counsel and be permitted to

appear in any and all proceedings in the above cases in association with Attorney Blott, of the Texas law firm of the Law Office of Jacquelyn W. Blott, 200 University Boulevard, Suite 225 #251 Round Rock, Texas 78665.

2.      Accordingly, applicant Attorney Pattis seeks permission to participate in the above case. In accordance with Rule XIX of the Rules Governing Admission to the State Bar of Texas, applicant files this sworn motion requesting permission to participate.

3.      Applicant is an attorney duly admitted to practice law in the State of Connecticut. Applicant is not licensed to practice law in Texas.

4.      Applicant is a member of the law firm of Pattis & Smith, LLC, with offices at 383 Orange St, 1st floor New Haven, CT 06511, telephone (203) 393-3017, facsimile (203) 393-9745, e-mail address NPattis@pattisandsmith.com.

5.      Applicant has not appeared or sought leave to appear or participate in any cases or causes in Texas courts within the past two years.   Concurrent herewith, a Motion for Admission Pro Hac Vice was filed on even-date herewith in Cause No. D-1-GN-18-001605; *Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*; In the 345th Judicial District Court of Travis County, Texas.

6.      Applicant is a licensed and active member in good standing, in the following jurisdictions and courts:

   a. Connecticut, 1993-present;
   b. United States District Court for the District of Connecticut, 1994-present;
   c. United States Court of Appeals for the Second Circuit, 1995-Present;
   d. United States Court of Appeals for the Sixth Circuit, 1997-Present;
   e. United States Supreme Court, 1997-Present;
   f. United States District Court, Southern District of New York, 2012-Present;

2

g. United States District Court, District of Columbia, 2012-Present;

h. United States District Court, Eastern District of New York, 2013-present;

i. United States Federal Court of Claims, 2016-Present;

j. United States Court of Appeals for the D.C. Circuit, 2016-Present; and

k. United States Court of Appeals for the Ninth Circuit, 2018-Present.

7.      Applicant was subject to a disciplinary hearing regarding an affidavit submitted in Connecticut in litigation related to the above captioned matters. After a full evidentiary hearing, the case was dismissed. A copy of the decision dismissing the action is attached as "Exhibit A." The Applicant has not been the subject of any other disciplinary action by the Bar or by courts of any jurisdiction in which applicant is licensed.

8.       Applicant has not been denied admission to the courts of any state or to any federal court during the preceding five years.

9.      Applicant is familiar with the State Bar Act, the State Bar Rules, and the Texas Disciplinary Rules of Professional Conduct governing the conduct of members of the State Bar of Texas and will at all times abide by and comply with those provisions as long as the above captioned cases are pending and said applicant has not withdrawn as counsel herein.

10.     On the granting of this motion, applicant will be associated with movant Attorney Blott, State Bar Number 07473250, of the Law Office of Jacquelyn W. Blott, 200 University Boulevard, Suite 225 #251 Round Rock, Texas 78665, telephone (512) 639-9904, facsimile (888) 377-0087, e-mail address jblott@jblottlaw.com.

11.     Movant Attorney Blott finds Attorney Pattis to be a reputable attorney and recommends that Attorney Pattis be granted permission to participate in the captioned cases.

3

12.     This motion is based on the sworn statement of Attorney Pattis, which is attached as "Exhibit B" and is incorporated by reference.

13.     This motion is also based on the sworn statement of Attorney Blott, which is attached as "Exhibit C" and is incorporated by reference. Attorney Blott is the resident practicing Texas attorney with whom the applicant will be associated in the above cases.

14.     Before filing this motion, applicant filed with the Texas Board of Law Examiners the fee required by Section 82.0361 of the Texas Government Code, along with the required application for admission pro hac vice promulgated by the Board. A copy of the Board's Acknowledgement Letter of the filing of the fee and application form is attached as "Exhibit D" and is incorporated by reference.

Therefore, applicant Attorney Pattis and Attorney Blott respectfully request that this motion for admission of counsel pro hac vice be granted, that Attorney Pattis be permitted to participate in all proceedings in the above cases pro hac vice, and for any other relief to which the above captioned defendants, Attorney Pattis, and Attorney Blott may be justly entitled.

Respectfully submitted,

LAW OFFICE OF JACQUELYN W. BLOTT
200 University Boulevard, Suite #225 250
Round Rock, Texas 78665
Telephone: (512) 639-9904

Jacquelyn W. Blott
SBN: 07473250
Email: jblott@jblottlaw.com

4

## **CERTIFICATE OF CONFERENCE**

I certify that I have spoken with Mark D. Bankston, counsel for Neil Heslin, Leonard Pozner,
Veronique de La Rosa, and Scarlett Lewis, on February 15, 2022, and he is opposed to this Motion.

_____
Jacquelyn W. Blott

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Motion has been forwarded to all counsel of record
pursuant to Rule 21a of the Texas Rules of Civil Procedure on this the 22nd day of February 2022
as follows:

Mark Bankston                             Email: mark@fbtrial.com
William Ogden                            Email: bill@fbtrial.com
FARRAR & BALL, LLP
1117 Herkimer Street
Houston, Texas 77008

_____
Jacquelyn W. Blott

5

NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

**MOTION FOR ADMISSION OF COUNSEL PRO HAC VICE**

# EXHIBIT A

### STATEWIDE GRIEVANCE COMMITTEE

Danbury Judicial District Grievance Panel          :
    Complainant

vs.                                                :        Grievance Complaint #19-0367

Norman A. Pattis                                   :
    Respondent

### DECISION

Pursuant to Practice Book §2-35, the undersigned, duly-appointed reviewing committee of the Statewide Grievance Committee, conducted a hearing at the Superior Court, 80 Washington Street, Hartford, Connecticut on October 3, 2019. The hearing addressed the record of the complaint filed on June 12, 2019, and the probable cause determination filed by the New Haven Judicial District Grievance Panel for the towns of Bethany, New Haven and Woodbridge on July 22, 2019, finding that there existed probable cause that the Respondent violated Rules 3.3(a)(1) and (2), 3.4(1) and 8.4(1),(2),(3) and (4) of the Rules of Professional Conduct.

Notice of the hearing was mailed to the Complainant, to the Respondent and to the Office of the Chief Disciplinary Counsel on August 28, 2019. Pursuant to Practice Book §2-35(d), Chief Disciplinary Counsel Brian Staines pursued the matter before this reviewing committee. The Respondent appeared and testified. Attorney Mark Dubois represented the Respondent. No exhibits were admitted into evidence.

This reviewing committee makes the following findings:

On March 1, 2019, the Respondent appeared in lieu of previous counsel on behalf of Alex Jones and related corporate defendants in civil litigation pending in Connecticut. At the time of the Respondent's appearance, discovery orders were outstanding against the Respondent's clients. A hearing on the plaintiffs' motion for sanctions was scheduled for March 22, 2019 at 2:00 p.m. On the day of the hearing, the Respondent met in his New Haven office with Mr. Jones' personal representative, who had a power of attorney, and an attorney from Washington, D.C. who represented Mr. Jones in other matters.

On the day of the March 22, 2019 meeting, it was determined that an affidavit needed to be filed regarding Mr. Jones' belief that there had been compliance with discovery. The Respondent drafted an affidavit for Mr. Jones, who was in Texas where he and his corporations reside and do business. Mr. Jones personal representative contacted him on the phone and reviewed the contents of the affidavit with Mr. Jones. The Respondent spoke with Mr. Jones on the phone and asked him "to swear to the truth of the statements in the affidavit", which he did. Mr. Jones authorized his personal representative and attorney in fact to sign his name to the affidavit. The personal representative signed Alex Jones' name to the affidavit. The Respondent

Grievance Complaint #19-0367
Decision
Page 2

signed his name as Commissioner of the Superior Court on the affidavit, which stated "sworn to and subscribed before me." The affidavit did not state where it was signed.

The Respondent filed the affidavit with the Court and produced it before counsel. Thereafter, at a hearing before Judge Barbara N. Bellis on April 10, 2019, plaintiffs' counsel inquired as to the location of the signing of the affidavit. The Respondent disclosed to the Court the circumstances of the signing of the affidavit. The Respondent represented to the Court that there was no intent to deceive. Thereafter, a new affidavit signed by Mr. Jones was filed. The Respondent self-reported the matter to Grievance Panel Counsel by correspondence dated April 12, 2019. Judge Bellis made a referral to the Office of the Chief Disciplinary Counsel by correspondence dated April 24, 2019.

This reviewing committee also considered the following:

Disciplinary Counsel contended that the affidavit appears objectively false. Disciplinary Counsel argued that the affidavit was not subscribed before the Respondent in Connecticut nor was it signed by Alex Jones. Disciplinary Counsel indicated that the facts in the affidavit are not in dispute, the facts are true. Disciplinary Counsel indicated that the substance of the affidavit is not claimed to be false. The Respondent stated that "[w]hile Mr. Jones did not physically appear before me, I believed I had the functional equivalent of his appearance, and there was no doubt in my mind he had sworn to the facts in the affidavit." The Respondent contended that "Mr. Jones' attorney-in-fact had authority under Texas law to offer a statement of fact in the Connecticut litigation" and that the Respondent "reasonably believed that this authority included his signing an affidavit." The Respondent indicated that he made a mistake. Instead of having the agent sign his own name, he had him sign the name of his principal. The Respondent, through counsel, explained that he incorrectly believed that he could take the oath remotely. The Respondent explained that when he realized his error, he immediately took corrective action. The Respondent explained that the new affidavit signed by Mr. Jones was "identical in form" to the subject March 22, 2019 affidavit.

The Respondent testified that on March 22, 2019, shortly after appearing in the litigation, he was under time constraints in connection with the preparation of the affidavit and the subsequent hearing that afternoon. The Respondent testified that at the March 22, 2019 meeting, he did not ask to view the power of attorney document but rather relied on the representations of his client and his client's representative. The Respondent indicated that there was no claim of prejudice by opposing counsel in connection with the affidavit.

Grievance Complaint #19-0367
Decision
Page 3

   This reviewing committee concludes that the Respondent's conduct in connection with
the affidavit did not rise to the level of an ethical violation, in this instance. The record lacks
clear and convincing evidence to substantiate a finding that the Respondent violated Rules
3.3(a)(1) and (2), 3.4(1) or 8.4(1),(2),(3) and (4) of the Rules of Professional Conduct. The
Respondent acknowledged that he made a mistake in connection with the execution of the
affidavit. When the Respondent realized his error, he immediately corrected it. We find the
Respondent credible that he made a mistake and had no intent to deceive the Court or opposing
counsel. Notwithstanding, we are critical of the Respondent's level of diligence in researching
how to handle an affidavit involving an attorney-in-fact acting under a Texas power of attorney
in a Connecticut civil proceeding. It is the opinion of this reviewing committee that the
Respondent's practice was sloppy with regard to the execution of the affidavit and that he
exercised bad judgment. Further, it was inappropriate not to request the power of attorney
document for review. Finally, since we conclude that the Respondent did not violate the Rules of
Professional Conduct, we dismiss the complaint.

**DECISION DATE:** _12-20-19_

(DFR)
(4)

NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |


D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |


D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

## MOTION FOR ADMISSION OF COUNSEL PRO HAC VICE

# EXHIBIT B

NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 261st JUDICIAL DISTRICT |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 98th JUDICIAL DISTRICT |

## SWORN STATEMENT OF NORMAN A. PATTIS

BEFORE ME, the undersigned authority, on this day personally appeared Norman A. Pattis, who, upon his oath, deposed and stated the following:

1.  My name is Norman A. Pattis. I am over the age of eighteen (18), and make this statement based upon my personal knowledge.

2.  I am an attorney duly admitted to practice law in the State of Connecticut.

3.     I am a partner in the law firm of Pattis & Smith, LLC, 383 Orange St, 1st Floor New Haven, CT 06511, telephone (203) 393-3017, facsimile (203) 393-9745.

4.     I have not appeared or participated in any cases or causes in Texas courts.  Concurrent herewith, a Motion for Admission Pro Hac Vice was filed on even-date herewith in Cause No. D-1-FN-18-001605; *Marcel Fontaine vs. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*; In the 345th Judicial District Court of Travis County.

5.     I am presently an active member in good standing in the State Bar of Connecticut and have been a member in good standing since 1993.

6.     I am also a licensed and active member in good standing, in the following jurisdictions and courts:

   a. Connecticut, 1993-present;

   b. United States District Court for the District of Connecticut, 1994-present;

   c. United States Court of Appeals for the Second Circuit, 1995-Present;

   d. United States Court of Appeals for the Sixth Circuit, 1997-Present;

   e. United States Supreme Court, 1997-Present;

   f. United States District Court, Southern District of New York, 2012-Present;

   g. United States District Court, District of Columbia, 2012-Present;

   h. United States District Court, Eastern District of New York, 2013-present;

   i. United States Federal Court of Claims, 2016-Present;

   j. United States Court of Appeals for the D.C. Circuit, 2016-Present; and

   k. United States Court of Appeals for the Ninth Circuit, 2018-Present.

7.     I was subject to a disciplinary hearing regarding an affidavit submitted in Connecticut in litigation related to the above captioned matters. After a full evidentiary hearing, the case was dismissed. I have not been the subject of any other disciplinary action by the Bar or by courts of any jurisdiction in which I am licensed. *See*, Decision, *Danbury Judicial District Grievance Panel vs. Norman A. Pattis*, Grievance Complaint #19-0367; Statewide Grievance Committee, attached hereto as Exhibit A and incorporated herein by reference as if set forth in full.

2

8.      I have never been denied admission to the courts of any State or to any federal court.

9.      I am familiar with the State Bar Act, the State Bar Rules and the Texas Disciplinary Rules of Professional Conduct governing the members of the State Bar of Texas and will at all times abide by and comply with the same so long as the above-captioned cases are pending and I have not withdrawn as counsel herein.

10.      I will be associated with Texas counsel, Jacquelyn W. Blott, State Bar Number 07473250, of the Law Office of Jacquelyn W. Blott, 200 University Boulevard, Suite 225 #251 Round Rock, Texas 78665, telephone (512) 639-9904, facsimile (888) 377-0087.

_____
Norman A. Pattis


SWORN AND SUBSCRIBED TO before me on this ⌐⌐ day of February 2022.

_____
Notary Public


Notary Public
State of Washington
AMIT K. PATEL
Lic. No. 147047
MY COMMISSION EXPIRES
January 10, 2026

NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

**MOTION FOR ADMISSION OF COUNSEL PRO HAC VICE**

# EXHIBIT C

NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

---

## SWORN STATEMENT OF JACQUELYN W. BLOTT

---

| | |
|---|---|
| | § |
| STATE OF TEXAS | |
| | § |
| COUNTY OF WILLIAMSON | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jacquelyn W.

Blott, who, upon her oath, deposed and stated the following:

1.    My name is Jacquelyn W. Blott. I am over the age of eighteen (18), and make this statement based upon my own personal knowledge.

2.      Norman A. Pattis, the applicant, is a reputable attorney.

3.      I recommend that Norman A. Pattis be granted permission to participate in the captioned case.

_____
Jacquelyn W. Blott

SWORN AND SUBSCRIBED TO before me on this the 21st day of February 2022.

_____
Notary Public

JASMINE OGWO
Notary ID #131207344
My Commission Expires
July 13, 2025

2

NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

**MOTION FOR ADMISSION OF COUNSEL PRO HAC VICE**

# EXHIBIT D

# Board of Law Examiners

Appointed by the Supreme Court of Texas

January 11, 2022

Norman A. Pattis
Via: E-Mail

Acknowledgment Letter
Non-Resident Attorney Fee

According to Texas Government Code §82.0361, "a nonresident attorney requesting permission to participate in proceedings in a court in this state shall pay a fee of $250 for each case in which the attorney is requesting to participate."

**This Acknowledgement Letter serves as proof that the Board of Law Examiners has received $250 in connection with the following matter:**

      **Non-resident attorney: Norman A. Pattis**

      **Case: D-1-GN-001835, D-1-GN-18-001842, D-1-18-00623, 1-GN-001605**

      **Texas court or body: In the District Court of Travis County**

After satisfying the fee requirement, a non-resident attorney shall file a motion in the Texas court or body in which the non-resident attorney is requesting permission to appear. The motion shall contain the information and statements required by Rule 19(a) of the Rules Governing Admission to the Bar of Texas. The motion must be accompanied by this Acknowledgment Letter and by a motion from a resident practicing Texas attorney that contains the statements required by Rule 19(b).

The decision to grant or deny a non-resident attorney's motion for permission to participate in the proceedings in a particular cause is made by the Texas court or body in which it is filed.

For more information, please see Rule 19 of the Rules Governing Admission to the Bar of Texas and §82.0361, of the Texas Government Code, which can be found on the Board's website.

Cordially,

Nahdiah Hoang
Executive Director

| MAILING ADDRESS | TELEPHONE: 512- 463-1621 - FACSIMILE: 512- 463-5300 | STREET ADDRESS |
|---|---|---|
| Post Office Box 13486 | WEBSITE: www.ble.texas.gov | 205 West 14th Street, Ste.500 |
| Austin,Texas 78711-3486 | | Austin, Texas 78701 |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacquelyn Blott on behalf of Jacquelyn Blott
Bar No. 7473250
law.jacquelynwblott@gmail.com
Envelope ID: 61945603
Status as of 2/28/2022 1:37 PM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/22/2022 6:12:55 AM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/22/2022 6:12:55 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 2/22/2022 6:12:55 AM | SENT |
| William Ogden | | bill@fbtrial.com | 2/22/2022 6:12:55 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 2/22/2022 6:12:55 AM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 2/22/2022 6:12:55 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/22/2022 6:12:55 AM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/22/2022 6:12:55 AM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/22/2022 6:12:55 AM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jacquelyn Blott on behalf of Jacquelyn Blott
Bar No. 7473250
law.jacquelynwblott@gmail.com
Envelope ID: 61945603
Status as of 2/28/2022 1:37 PM CST

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/22/2022 6:12:55 AM | SENT |

NO. D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER, | § | |
| *Defendants.* | § | 261st JUDICIAL DISTRICT |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN THE DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants.* | § | 98th JUDICIAL DISTRICT |

## ORDER ON NORMAN PATTIS' MOTION PRO HAC VICE

After considering Norman A. Pattis' and Jacquelyn W. Blott's motion pro hac vice, the Court:

- o DENIES the motion

- o GRANTS the motion and declares that Norman A. Pattis is admitted to this Court pro hac vice with all the rights and privileges of an attorney in the State of Texas.

SIGNED _____, 2022.

_____
PRESIDING JUDGE

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacquelyn Blott on behalf of Jacquelyn Blott
Bar No. 7473250
law.jacquelynwblott@gmail.com
Envelope ID: 61945603
Status as of 2/28/2022 1:37 PM CST

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/22/2022 6:12:55 AM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/22/2022 6:12:55 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Lloyd Vavra | 786307 | warren.vavra@traviscountytx.gov | 2/22/2022 6:12:55 AM | SENT |
| William Ogden | | bill@fbtrial.com | 2/22/2022 6:12:55 AM | SENT |
| Bradley Reeves | | brad@brtx.law | 2/22/2022 6:12:55 AM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 2/22/2022 6:12:55 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/22/2022 6:12:55 AM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/22/2022 6:12:55 AM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/22/2022 6:12:55 AM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacquelyn Blott on behalf of Jacquelyn Blott
Bar No. 7473250
law.jacquelynwblott@gmail.com
Envelope ID: 61945603
Status as of 2/28/2022 1:37 PM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/22/2022 6:12:55 AM | SENT |

2/25/2022 1:45 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

### NOTICE OF APPEARANCE OF ADDITIONAL COUNSEL

---

COME NOW, Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, and Veronique De La Rosa, and give notice of the appearance of the following as additional counsel:

> Cordt C. Akers
> THE AKERS FIRM, PLLC
> TBN: 24080122
> 3401 Allen Parkway, Suite 101
> Houston, TX 77019
> Phone: (713) 877-2500
> Fax:    (713) 583-8662

Respectfully submitted,

**THE AKERS FIRM, PLLC**

*/s/ Cordt C. Akers*
Cordt C. Akers
TBN: 24080122
3401 Allen Parkway, Suite 101
Houston, TX 77019
Phone: (713) 877-2500
Fax:    (713) 583-8662
cca@akersfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2022, the forgoing document was served upon all counsel of record via electronic service.

*/s/ Cordt C. Akers*
Cordt C. Akers

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 62091718
Status as of 2/25/2022 2:46 PM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/25/2022 1:45:20 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:45:20 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 2/25/2022 1:45:20 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/25/2022 1:45:20 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:45:20 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:45:20 PM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:45:20 PM | SENT |

Associated Case Party: ALEXEJONES

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 62091718
Status as of 2/25/2022 2:46 PM CST

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:45:20 PM | SENT |

2/25/2022 1:50 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Nancy Rodriguez

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

## NOTICE OF APPEARANCE OF ADDITIONAL COUNSEL

---

COME NOW, Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, and Veronique De La Rosa, and give notice of the appearance of the following as additional counsel:

Avi Moshenberg
TBN: 24083532
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
Phone: (713) 337-5580
Fax:    (713) 337-8850

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**

By:     _/s/ Avi Moshenberg_
        Avi Moshenberg
        Texas Bar No. 24083532
        avi.moshenberg@mhllp.com
        1001 Fannin Street, Suite 2700
        Houston, TX 77002
        Phone: (713) 337-5580
        Fax:    (713) 337-8850

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, the forgoing document was served upon all counsel of record via electronic service.

_/s/ Avi Moshenberg_
Avi Moshenberg

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 62092145
Status as of 2/25/2022 3:03 PM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 2/25/2022 1:50:54 PM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:50:54 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 2/25/2022 1:50:54 PM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 2/25/2022 1:50:54 PM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:50:54 PM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 2/25/2022 1:50:54 PM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:50:54 PM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:50:54 PM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 62092145
Status as of 2/25/2022 3:03 PM CST

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 2/25/2022 1:50:54 PM | SENT |

3/1/2022 9:51 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Chloe Jimenez

# D-1-GN-18-001605

| | | |
|---|---|---|
| MARCEL FONTAINE | § | IN DISTRICT COURT OF |
| | § | |
| VS. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| KIT DANIELS | § | 459th DISTRICT COURT |

# D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

# D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

**PLAINTIFFS' RESPONSE TO NORMAN PATTIS'
MOTION FOR ADMISSION OF COUNSEL PRO HAC VICE**

---

For over three years, Mr. Jones has made a mockery of this litigation while exercising

his right to choose his counsel on no less than nine occasions. Mr. Jones was initially

represented by Austin attorney Randall Wilhite. Mr. Jones was next represented by Dallas

1

attorney Mark Enoch. This was followed by Austin attorneys Michael Burnett and Scott Nytiray. Mr. Jones then received permission for California attorney and InfoWars host Robert Barnes to appear pro hac vice. Mr. Barnes was then replaced by Austin attorney T. Wade Jefferies. Mr. Jefferies was then replaced by Austin attorney Brad Reeves. Defendants had been represented in the *Fontaine* matter by Austin attorney Eric Taube, but Mr. Taube withdrew for ethical reasons and was also replaced by Mr. Reeves. Next, attorney Jacquelyn Blott made an appearance earlier this year. Soon thereafter, Mr. Reeves moved to withdraw, also citing ethical issues. Now, after nine attorneys have appeared in a set of cases riddled with sanctions and bizarre misconduct, Mr. Jones seeks to add controversial Connecticut attorney and InfoWars personality Norm Pattis, who has already wreaked havoc and incurred sanctions for his misconduct in the parallel *Lafferty* lawsuit.

Given the prior history of this case, this Court should not take a chance on granting the privilege of pro hac vice admission on the eve of trial to "Connecticut's most colorful and controversial lawyer."[1] This is especially true given Mr. Pattis' pattern of disruptive and disobedient actions in the *Lafferty* lawsuit. This Court need not risk "the cavalier actions and willful misconduct" that the *Lafferty* court has been forced to endure. (*See* Ex. 1, August 5, 2021 *Lafferty* Order).

This Court's first introduction to Mr. Pattis was a video from 2019 which he was co-hosting InfoWars with Mr. Jones, laughing and joking while Mr. Jones made violent and disgusting threats against the life of opposing counsel. Since that time, his representation of

---

[1] Sai Rayala. "Qinxuan Pan retains controversial New Haven-based defense attorney Norm Pattis." *Yale Daily News*. October 15, 2021. Available at:

https://yaledailynews.com/blog/2021/10/15/qinxuan-pan-retains-controversial-new-haven-based-defense-attorney-norm-pattis/

the Defendants has been a disaster of disobeyed orders and bizarre misconduct. Judge Barbara Bellis called his actions "frightening" and noted that others should be "rightfully concerned" about his conduct in the future. (*See* Ex. 1, August 5, 2021 *Lafferty* Order). In *Lafferty,* Mr. Pattis has routinely botched discovery, has been sanctioned for his cavalier disclosure of Plaintiffs' confidential information during a deposition, has submitted an affidavit he knew had not been signed by Mr. Jones, and insists on endless gamesmanship, much to the consternation of Judge Bellis. Mr. Pattis also engages in improper extrajudicial commentary during his regular appearances as an InfoWars commentator, and his propensity for theatrics and outrageous conduct is a risk that should not be countenanced, especially on the eve of trial.

Appearing pro hac vice is a privilege, and it should be denied where a court has reason to believe an applicant may be detrimental to the fair or efficient administration of justice. Here, Mr. Pattis' history puts the Plaintiffs at risk of further sanctionable misconduct, especially when combined with Defendants' existing history of misconduct in this Court. For the reasons discussed below, Plaintiffs pray the Court denies Mr. Pattis' application.

**LEGAL STANDARD**

## I.     There is a Lower Standard for Application than for Revocation.

Once an attorney is admitted pro hac vice, the standard for revocation is high, and it is difficult for a court to rid itself of a recalcitrant out-of-state attorney. Revocation requires finding "the non-resident attorney engage[d] in professional misconduct as that term is defined by the State Bar Act." *In re Golden Peanut Company, LLC*, 2018 WL 6616894, at *2 (Tex.App.-Dallas, 2018), quoting Tex. R. Governing Admission to the Bar XIX(e). But when an application is first submitted to a court, the standard is much lower. Not only can the court

deny the application if it believes "the non-resident attorney is not a reputable attorney who will observe the ethical standards required of Texas attorneys," but it can also deny the application if "other good cause exists to deny the motion." *Id.*, quoting Tex. R. Governing Admission to the Bar XIX(d).

## II.    Trial Courts have Wide Discretion to Assess Good Cause.

Assessing reputability of a non-resident attorney is addressed to the discretion of the trial court. *See State Bar v. Belli*, 382 S.W.2d 475, 476 (Tex. 1964) (noting "the matter of [applicant's] qualification as 'A reputable nonresident attorney' under Rule X(i) will be addressed to the discretion of the court in which the case is pending."). In denying pro hac vice applications, courts may consider conduct which may not rise to the level of revocation, including "unlawyerlike conduct" or "past inappropriate and unprofessional behavior by counsel in other matters." *Kampitch v. Lach*, 405 F.Supp.2d 210, 215-16 (D.R.I. 2005). The court may also consider delays, disruptions, and sanctions in prior matters, especially related matters. In sum, the discretionary privilege of pro hac vice admission should be denied where the Court believes it "may be detrimental to the prompt, fair and efficient administration of justice." *See* ABA Model Rule on Pro Hac Vice Admission.[2]

## ARGUMENT

## I.    Mr. Pattis was Sanctioned for Alarming Misconduct in Disobeying the *Lafferty* Protective Order.

On August 5, 2021, the *Lafferty* court issued sanctions after Mr. Pattis flagrantly violated the Protective Order under bizarre circumstances. Mr. Pattis was attending the first

---

[2]

https://www.americanbar.org/groups/professional_responsibility/committees_commissions/commission_on_multijurisditional_practice/mjp_comm_iadc3/

deposition of a Sandy Hook parent, which had been designated confidential at the start of the

deposition. During the deposition, Mr. Pattis inserted information from the confidential

testimony into a motion and filed it with the Court while the deposition was still underway.

The motion filed by Mr. Pattis was an outlandish request to compel the deposition of Hillary

Clinton. At a later hearing in this case, Mr. Reeves tried to distance himself from Mr. Pattis'

strange actions:

> MR. REEVES: About this filing that occurred in the midst of a
> deposition, Mr. Pattis, who filed that thing in Connecticut...[H]e wasn't
> even in the deposition, that was kind of his thing that he did, he wasn't
> even the one doing that. But more importantly, I had nothing to do --
>
> THE COURT: You just said he wasn't -- "That was his thing that he did,
> he didn't even do that." That's literally what just came out of your
> mouth.
>
> MR. REEVES: No, I'm sorry, I didn't mean that. He -- he did not -- Mr.
> Pattis was not taking the deposition. He did not file the motion as he
> was taking the deposition. Another lawyer for the defendants was
> taking the deposition and he just, in the midst of this, filed it...But
> really overall, the overarching point here is that there's nothing in
> Connecticut that has anything to do with these cases as far as the
> discovery is concerned. (*See* Ex. 2, August 31, 2021 Heslin Transcript,
> p. 81-82).

The *Lafferty* plaintiffs brought the issue to Judge Bellis' attention in a motion for

sanctions. In an exhaustive order, Judge Bellis explained the court's "grave concerns" with

the "frightening" positions taken by Mr. Pattis:

> The Jones defendants filed no less than three versions of a proposed
> protective order for the court's approval...The order...set forth simple
> procedures by which the designation of "confidential" could be
> subsequently challenged, and how confidential information could be
> filed with the court...
>
> In the midst of taking the first deposition of a plaintiff, the defendants
> Free Speech Systems LLC, Infowars LLC, Infowars Health LLC, and
> Prison Planet TV LLC (Infowars), filed a motion to depose Hillary
> Clinton, using deposition testimony that had just been designated as

"Confidential-Attorneys Eyes Only," and completely disregarding the court ordered procedures. At no point prior to filing the Clinton motion did Infowars profess ignorance of the procedures they had proposed and which were court ordered to be followed, nor have they since taken any steps to correct their improper filing.

If Infowars was of the opinion that the plaintiffs' designation was unreasonable and not made in good faith, the solution was to follow the court ordered procedure to challenge the designation, not to blatantly disregard it and make the confidential information available on the internet by filing it in the court file. The court rejects Infowars' baseless argument that there was no good cause to issue the protective orders, where both sides recited, in writing, detailed justification for a good cause basis.

In short, Infowars, having advocated for a court ordered protective order, filing no less than three versions, having recited in writing the good cause bases for the issuance of the protective order, and having no objection to the plaintiffs' proposed modification, now takes the absurd position that the court ordered protective order circumvents the good cause requirements of Practice Book 13-5, did not need to be complied with, and should not be enforced by the court. **This argument is frightening**. Given the cavalier actions and willful misconduct of Infowars in filing protected deposition information during the actual deposition, this court has **grave concerns** that their actions, in the future, will have a chilling effect on the testimony of witnesses who would be rightfully concerned that their confidential information, including their psychiatric and medical histories, would be made available to the public. (Ex. 1, August 5, 2021 Lafferty Order on Confidentiality) (emphasis added).

Judge Bellis set a sanctions hearing regarding this misconduct and a variety of other sanctionable issues. In her November 21, 2021 ruling on default sanctions, Judge Bellis explained how Mr. Pattis' subsequent arguments highlighted the potential danger of future cavalier misconduct:

So I'll first address the Clinton deposition issue and the conduct of July 1, 2021. In the July 19, 2021 court filing by the defendants Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC and Prison Planet, LLC, they described how in the motion to depose Hillary Clinton, testimony designated by the plaintiffs as highly confidential was filed in the Clinton deposition motion. They explained that this was done because in their opinion, the plaintiffs did not have a good-

faith basis to designate the deposition as highly confidential before the deposition had commenced, despite the fact that the Jones defendants had previously done so themselves.

And it is not lost on the Court that the highly confidential information was improperly filed in the middle of the first deposition of a plaintiff. The July 19, 2021 filing is in sharp contrast to the Jones defendants' position at the October 20, 2021 sanctions ' hearing where the Court addressed what, if any, sanctions should enter. At the October 20 hearing, the Jones defendants claim they could publish confidential information as long as they did not reveal the name of the witness. That is, they argued unconvincingly that they didn't understand the very protective order that they themselves drafted and asked the Court to approve as a Court order, which the Court did.

The position of the Jones defendants at the October 20, 2021 sanctions hearing did nothing but reinforce the Court's August 5th, 2021 order and findings that the cavalier actions on July 1st, 2021 constituted willful misconduct and violated the Court's clear and unambiguous protective order. (Ex. 3, November 15, 2021 Sanctions Ruling, p. 3-4).

These events alone provide ample good cause to "find that the admission of an out of state attorney pro hac vice is fraught with potential abusive misconduct." *Collins v. Collins,* 2020 OK CIV APP 65, ¶ 32, 481 P.3d 270, 277. Further aggravating the concerns with Mr. Pattis is that his misconduct was driven by his desire to politicize these suits and spin wild conspiracy theories. This theme will reappear throughout this Response.

## II.     Mr. Pattis' Participation in Mr. Jones' Threatening Broadcast was Unlawyerlike, Unprofessional, and Harmful to Reputability of our Profession.

In a prior hearing, this Court viewed portions of a broadcast of Mr. Pattis and Mr. Jones on InfoWars discussing the discovery of child pornography in their discovery documents. The broadcast was a 20-minute profane and disturbing tirade from Mr. Jones in which he repeatedly threatened the life of Plaintiff's counsel Chris Mattei, interspersed with commentary from Mr. Pattis. As Judge Bellis noted, the June 14 video was "indefensible,

unconscionable, despicable, and possibly criminal behavior." (June 18, 2019 *Lafferty*
Hearing, p. 50). The Connecticut Supreme Court noted that the broadcast was "a threat to the
administration of justice" with "genuine potential to influence the fairness of the
proceedings." *Lafferty v. Jones,* 336 Conn. 332, 366 (2020), cert. denied, 141 S. Ct. 2467
(2021). The Connecticut Supreme Court noted that the broadcast featured "threats to those
involved in the case and created a hostile atmosphere that could discourage individuals from
participating in the litigation," including Mr. Jones offering "a one million dollar bounty on
the head of opposing counsel." *Id.* at 370.

Mr. Pattis' participation in this broadcast, and his jocular reactions to Mr. Jones'
statements, raise doubts about his character and his potential future acts in Texas. Under our
disciplinary rules, "[a] lawyer shall not counsel or assist another person" in making "an
extrajudicial statement that a reasonable person would expect to be disseminated by means
of public communication if the lawyer knows or reasonably should know that it will have a
substantial likelihood of materially prejudicing an adjudicatory proceeding." Tex.
Disciplinary R. Prof. Conduct 3.07. Additionally, "[i]f a particular statement would be
inappropriate for a lawyer to make, however, the lawyer is as readily subject to discipline
for counseling or assisting another person to make it as he or she would be for doing so
directly." *Id.* at cmt 2.

Even after sanctions were issued, and despite the obvious threat to Mr. Mattei, Mr.
Pattis continued to breathe life into the conspiracy theory that Mr. Mattei was somehow
involved in malfeasance. Mr. Pattis stated in a later affidavit that the circumstances
surrounding the child pornography and subsequent investigation were "especially suspect

given that Attorney Mattei worked for the United States Attorney's Office from 2007 through 2015." (Ex. 4, Affidavit of Norm Pattis, p. 15).

These kinds of public statements are typical for Mr. Pattis, who has embraced his conspiratorial mindset and need for attention by becoming a regular InfoWars on-air personality. They have also caused Mr. Pattis to indulge Mr. Jones' worst instincts and paranoias, leading to one fiasco after another in the *Lafferty* case.

### III.    Mr. Pattis has been at the Center of the Non-Stop Debacles in *Lafferty.*

As the Court has gleaned from prior pleadings, the proceedings in *Lafferty* have been extraordinarily chaotic and bizarre. Most importantly, those proceedings have been plagued by constant failures to litigate in good faith. As the *Lafferty* court first explained back in 2019:

> Putting aside the fact that the documents the Jones defendants did produce contained child pornography, putting aside the fact that the Jones defendants filed with the Court a purported affidavit from Alex Jones that was not in fact signed by Alex Jones, the discovery in this case had been marked with obfuscation and delay on the part of the defendants, who, despite several court ordered deadlines as recently as yesterday, they continue in their filings to object to having to, what they call affirmatively gather and produce documents which might help the plaintiffs make their case. (Ex. 5, June 18, 2019 *Lafferty* Transcript, p. 46-47).

The *Lafferty* court explained how much of this discovery obstruction has been attorney-driven:

> By way of one example, on June 10th, counsel for the Jones defendants stated in their filing that Alex Jones' cellphone had only been searched for emails, not for text messages or other data. In their June 17 filing, defendants still try to argue with respect to the text messages that there is little to no personal nexus between the text messages and the litigation, and that the plaintiffs are simply prying into the Alex Jones defendants' personal affairs. But the discovery objections were ruled on by the Court months ago and the defendants still have not fully and fairly complied...

> So in short, we've held approximately a dozen discovery status conferences. The Court's entered discovery deadlines, extended discovery deadlines, and discovery deadlines have been disregarded by the Jones defendants, who continue to object to their discovery and failed to produce that which is within their knowledge, possession, or power to obtain. And again, among the documents that they did produce contained images of child pornography. (*Id.,* p. 47-49)

The *Lafferty* court's frustration with Mr. Pattis has been clear throughout its many orders and hearings. A review of the 699 docket entries in *Lafferty* shows judicial resources constantly devoted to collateral issues.[3] In particular, Mr. Pattis' gamesmanship has been improper, as Judge Bellis explained in her November 21, 2021 ruling on default sanctions:

> The history of the attorneys who have appeared for the defendants, Alex Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC and Prison Planet TV, LLC is a convoluted one, even putting aside the motions to withdraw appearance, the claims of conflict of interest and the motions for stay advanced by these five defendants. As the record reflects, on June 28, 2018, Attorney Wolman appeared for all five of the Jones defendants. Eight months later, on March 1st, 2019, Attorney Wolman is out of the case and Pattis & Smith filed an in-lieu-of appearance for all five defendants. On February 24, 2020, Attorney Latonica also appeared for all five defendants. Five months later on July 7, 2020, Attorney Latonica and Pattis & Smith is now out of the case and Attorney Wolman is back in the case for all five defendants. Then on June 28, 2020, Pattis & Smith is back in the case, but now only appears for the four LLC defendants.
>
> But what is perhaps more significant is **<u>the transparent attempt to cloud the issues by Pattis & Smith</u>**, for example, by listing the names of only three of the four clients they represent when filing the motion to take the deposition of Hillary Clinton and then listing all four clients in the July 19, 2021 filing relating to the issue. And by Attorney Wolman who then argued in his October 20, 2021 filing that Infowars, LLC had no involvement in the motion for commission because their lawyer did not list their name on the motion. It is simply improper under our rules of practice for an attorney to do so. (Ex. 3, November 15, 2021 Sanctions Ruling, p. 4-5) (emphasis added).

---

[3] *See* http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV186046436S

The *Lafferty* court also noted that the "disregard for the discovery process and procedure and for Court orders is a pattern of obstructive conduct." (*Id.,* p. 15). In the same order, the *Lafferty* court also chastised recent misrepresentations made in pleadings regarding social media analytics, noting, "They represented in court filings that they did not rely on social media analytics and this, too, is false." (Ex. 3, November 15, 2021 Sanctions Ruling, p. 12). The court that damning evidence was later discovered which "totally contradict[s] the Jones defendants' misrepresentations to the Court that, quote: There is no evidence to suggest that Mr. Jones or Free Speech Systems ever used these analytics to drive content, end quote." (*Id.*). Most importantly, it became clear that analytics had been withheld:

> I would note that regardless of this reliance on social media analytics, the concept is simple. The defendants were ordered to produce the documents and our law requires them to produce information within their knowledge, possession or power. Discovery is not supposed to be a guessing game. What the Jones defendants have produced by way of analytics is not even remotely full and fair compliance required under our rules. The Court finds that the Jones defendants have withheld analytics and information that is critical to the plaintiff's ability to conduct meaningful discovery and to prosecute their claims. (*Id.*, p. 14).

Despite immense patience by Judge Bellis through these endless discovery debacles, Mr. Pattis also insists on causing delay and interruption with his stubborn exchanges with the court, particularly as it concerns his conspiracy theories about the litigation itself:

| | |
|---|---|
| THE COURT: | I'll take that up on the papers. |
| ATTY. PATTIS: | And then also we'd like to have them be directed to find out who's financing this because -- |
| THE COURT: | Right. I read -- Attorney Pattis, I read it. No right to argument on that issue. I don't need help on that issue. And I'll issue that -- |
| ATTY. PATTIS: | My client would like me to be heard today for these purposes because -- |
| THE COURT: | All right. Attorney Pattis, listen to me carefully. I'm trying to be polite. |
| ATTY. PATTIS: | I always do. |

| | |
|---|---|
| THE COURT: | Okay. I'm going to take that issue on the papers. There's no right to argument on that issue and I will rule today on that issue for you. Okay? But you can tell your client that there's no right to argument on that issue and I'm not extending -- I'm denying your request for argument, politely. |
| ATTY. PATTIS: | And I will politely tender his objection on the grounds that when his -- |
| THE COURT: | All right. Attorney Pattis -- |
| ATTY. PATTIS: | -- information on the business finds itself -- |
| THE COURT: | -- I think we're done. |
| ATTY. PATTIS: | -- in the press to his economic detriment -- |
| THE COURT: | We're done for the day. |

(Ex. 4, Affidavit of Norm Pattis).

It is telling that Mr. Pattis later submitted this exchange as part of his affidavit seeking to recuse Judge Bellis in *Lafferty.* Indeed, it is nearly certain that Mr. Pattis would pursue the same course in this case and seek recusal. In his *Lafferty* recusal motion, Mr. Pattis already stated that "the Texas judge presiding over similar Sandy Hook-related matters" is "not impartial." (Ex. 6, Motion to Recuse, p. 7). Yet regardless of what course of action Mr. Pattis takes, it is certain to be disruptive given his frustrating history in the *Lafferty* case.

## IV.  Mr. Pattis' Handling of an Affidavit in *Lafferty* Raises Concerns about his Judgment.

As noted above, Mr. Pattis submitted an affidavit from Alex Jones that he knew was not signed by Alex Jones. Judge Bellis described the problem as follows:

> I reviewed the transcripts and the affidavit and I do want to put a statement on the record, and I think I'm going to proceed a certain way. So on March 22nd, 2019, Defense Counsel filed the affidavit that indicated it was signed by Alex Jones under oath, and the e-filing description referred to a March 22nd, 2019, affidavit of A. Jones. That was the e-file description. And the attestation clause indicates that the affidavit was sworn to and subscribed to on March 22nd, 2019; and we learned on that same date that Attorney Pattis -- I'm sorry, we learned subsequently on April 10th that Attorney Pattis had taken the signature and that the signature was not that of Mr. Jones but of an

authorized representative who didn't want to be named because he didn't want to be harassed. But on March 22nd, 2019, on the record Attorney Pattis referred to the document as an affidavit from Jones. The affidavit is devoid of any language that would reveal that Mr. Jones' agent or employee or authorized representative signed his name to the document. There's no attempted power of attorney language or acknowledgement or anything at all to show that some other person signed Alex Jones' name to the affidavit. So in the Court's opinion, the affidavit is invalid and is a false affidavit. Affidavits are supposed to be signed by the author, not surreptitiously by some other unknown, although authorized, person. So I am going to refer this matter to Disciplinary Counsel.

(Ex. 4, Affidavit of Norm Pattis, p. 8-9).

After reviewing the referral, the Disciplinary Counsel pursued action, and Mr. Pattis appeared before the Connecticut Grievance Committee. The Committee found that Disciplinary Counsel had not proven an offense rising to an ethical violation, but, "[n]otwithstanding, we are critical of the Respondent's level of diligence in researching how to handle an affidavit involving an attorney-in-fact acting under a Texas power of attorney in a Connecticut civil proceeding." (Ex. 7, Committee Grievance Complaint #19-0367 Decision, p. 3). Further, "[i]t [was] the opinion of this reviewing committee that the Respondent's practice was sloppy with regard to the execution of the affidavit and that he exercised bad judgment." (*Id.*). Finally, the Committee found "it was inappropriate not to request the power of attorney document for review." (*Id.*).

While Mr. Pattis will defend himself on the basis that no ethical violation was proven, his conduct nonetheless provides additional basis to deny the privilege of pro hac vice admission. As noted in *Kohlmayer*, sloppy actions and bad judgment "may not constitute a technical violation of the ethical rules," but such conduct "often delays the judicial process." *Kohlmayer*, 124 F.Supp.2d at 879. "Where a court is made aware of a pattern of ... behavior by an attorney, bordering on the unethical, which has resulted in the waste of judicial time

in the past, it must have discretion to deny the otherwise leniently granted pro hac vice applications in the interest of judicial economy." *Id.*

## V.    Mr. Pattis' Role as an InfoWars Personality has been Unlawyerlike and Risks Serious Future Prejudice.

Mr. Pattis has been playing a dual role for Mr. Jones, serving both as an attorney but also a major contributor to InfoWars programming. As a regular on-air personality, Mr. Pattis is an integral part of Mr. Jones' spectacle. From what Plaintiffs can tell from the limited search capability available, Mr. Pattis has appeared on InfoWars *at least* 30 times in the past year. (Note: This number only includes videos in which Mr. Pattis' name is mentioned in the video description, and InfoWars video descriptions do not always contain the name of those who appear).[4] Examples are shown below:






---

[4] https://www.banned.video/results?query=%22norm%20pattis%22






Descriptions of his videos are often inflammatory or depraved, such as "Alex Jones is joined by Norm Pattis and Will Johnson to break down the vile agenda to sexualize children by demonic pedophiles."[5] In addition to covering InfoWars' standard topics (typically, mass tyranny by globalist enslavers), Mr. Pattis frequently discusses these lawsuits. In these discussions, Mr. Pattis exceeds his ethical responsibilities for pre-trial publicity.

For example, Mr. Pattis was the guest on the November 16, 2021 episode of The Alex Jones Show entitled "Deep State Launches Martial Law Through Judicial Tyranny." During the episode, Mr. Pattis stated:

> I'll assert and hope we get to trial on this issue, the Plaintiffs do not a coherent theory of damages, and as a matter of law, no jury should be permitted to hear. **Based on what I've heard. And I can't tell you what it is.** I can't even tell you what I've heard

---

[5] "Man With A Wig Arrested For Harassing Families." *The Alex Jones Show.* October 29, 2019. Available at:
https://www.banned.video/watch?id=5db8b6f352f632001920f77f

> under these court orders because, you know, the Sandy Hook
> Plaintiffs are given, uh, privileged treatment in this.[6]

Attorneys should not state conclusions of fact by citing special knowledge allegedly gained through access to confidential materials. The public places great emphasis on the statements of attorneys based on their access to judicial materials. In essence, Mr. Pattis stated that confidential information exists disproving any suffering by the *Lafferty* plaintiffs. In doing so, he has purported to disclose the nature and content of that confidential information. When making pretrial statements, "[a] lawyer ordinarily will violate [the Rule]…when the statement refers to…the expected testimony of a party or witness." Rule 3.07(b)(1). By contrast, "a lawyer ordinarily will not violate [the Rule]" when the statement is based on "information contained in a public record." Rule 3.07(c)(2). Given the confidential nature of the information allegedly cited by Mr. Pattis (and thus no reasonable method to combat it through counter-speech), Mr. Pattis knew these statements could prejudice the proceedings.

Mr. Pattis co-hosted an episode with Mr. Jones on October 1, 2021 in which they discussed the recent default judgments in Texas while denigrating this Court:

> PATTIS: Some states elect judges. I know they elect them down in Texas. I think that's a horrible idea. Because then you get judges racing to the bottom and pandering to the lowest common denominator.
>
> JONES: I mean, George Soros has put in all the new judges in Travis County, put in the City Attorney, the County Attorney. And they're literally bomb-throwing maniacs.

---

[6] "Deep State Launches Martial Law Through Judicial Tyranny." *The Alex Jones Show.* November 16, 2021. (Quotation at 1:40). Available at: https://www.banned.video/watch?id=61944580d741df5018565b4c

> PATTIS: Well, Travis County, they ought to sell it to Northern California and let Texans be Texans. Elected judges are a horrible idea.[7]

Mr. Pattis' routine encouragement of Mr. Jones' inflammatory rhetoric is also concerning, such as the following exchange:

> JONES: Let's just say it, you've been doing a lot of stuff, and you've been really good about these. And they know they don't have the case they claim, so I don't get to have a jury. I don't think America is going to put up with that.

> PATTIS: I hope you're right. But I think we've have thus far. I think it's time for we the people to stand up and say we're mad as hell and we're not going to take it anymore.[8]

On the January 12, 2022 episode, Mr. Pattis continued to spin his conspiracy theories about a cover-up of some shadowy funding of these lawsuits for nefarious purposes:

> PATTIS: What reporter is going to sit down, study the data, and ask the hard questions in this case. Who is funding the litigation? Why are they funding it? What is their objective? And why is it that the plaintiffs seem hell bent to avoid having these cases tried on the merits?[9]

Mr. Pattis also made ominous comments about how the Plaintiffs should be worried about what Mr. Jones will say about them at trial:

> PATTIS: The downside of a defamation lawsuit, and I've often said to folks who want to bring them, be careful what you wish for. If you think somebody's opinion of you hurt you before, what are you going to do when the trial is televised?

---

[7] "Dem Governors Mobilize National Guard for COVID Tyranny." *The Alex Jones Show.* October 1, 2021, at 12:00. Available at: https://www.banned.video/watch?id=6157a3d373e088289566833c

[8] *Id.* at 15:20.

[9] "The Enemy Has Become Our Government Run by Self Righteous Bullies Seizing Our Rights, says Norm Pattis." *The Alex Jones Show.* January 12, 2022. (Quotation at 19:48) Available at: https://www.banned.video/watch?id=61df6e59ae95bf6e8f3a7386

> JONES: Hold on, let's talk about that. That's why the judges and
> everybody feel they can't let me have a real trial. Because they
> did this.[10]

Thus, in addition to the concerns relating to Mr. Pattis' prior conduct in litigation, Mr.

Pattis also poses a substantial risk of prejudice through his extra-judicial statements. As the

parties approach trial, this risk grows more acute, as does the likelihood of outrageous

theatrics from Mr. Pattis. As shown below, Mr. Pattis' judgment and character in this respect

leave much to be desired.

## VI.     Mr. Pattis' Racist and Insensitive Commentary Raises Further Concerns about his Reputability.

*The Connecticut Post* reported in 2019 that:

> Local attorney Norm Pattis posted Monday a photo depicting three
> white-hooded beer cans around a brown beer bottle hanging by the
> neck from a refrigerator rack to his Facebook page. The caption read
> "Ku Klux Coors."[11]

The *Post* noted that Pattis "defended the initial post with another later Monday night,

that read, 'Let's face it: If you're white, you can't be right.'"[12] The *Post* also reported that

"[w]hen newly elected Rep. Rashida Tlaib — the first Palestinian-American woman to serve

in Congress — said on Twitter that she would 'always speak truth to power,' Pattis replied,

'No suicide bombing?'"[13] Plaintiffs' counsel are vigorous advocates of political speech, but

this is not about politics. It is vile, bigoted non-sense. Mocking a Palestinian-American in this

way is deeply racist and childish. It does not reflect well on Mr. Pattis' character. While

---

[10] *Id.* at 25:01.

[11] Fenster, Jordan. "NAACP condemns lawyer Norm Pattis over 'racist' image." *Connecticut Post.* January 8, 2019.
Available at:

https://www.ctpost.com/local/article/NAACP-condemns-lawyer-Norm-Pattis-over-racist-13518133.php
[12] *Id.*
[13] *Id.*

behaving in racist, brutish ways may not violate ethical rules, it is a stain on our profession, and it is a matter of character which is fairly considered when granting the privilege of pro hac vice admission.

*The Connecticut Post* also reported that Mr. Pattis made unlawyerlike statements about mass shootings which are especially worrisome given the sensitivities necessary in this case. The *Post* reported that in response to a video game in which the player shoots school classmates, Pattis said it "sort of looks like fun."[14] In response to the question, "What do you think about…Louis CK mocking Parkland, FL shooting survivors?", Mr. Pattis responded, "Much needed. Thank you, Louis CK."[15] Again, this is not about politics or political speech. This is about cheap and performative callousness. Yet this is what can be expected from Mr. Pattis. When interviewed by the *Post,* Mr. Pattis stated, "I enjoy being provocative for the sake of provocation."[16] He stated, "It's more than blood sport. I suppose I like the attention."[17] The last thing this case needs on the eve of trial is an attention-seeking InfoWars commentator who spins conspiracy theories and provokes situations for fun, all while dragging the heavy baggage of his misconduct and misadventures in the *Lafferty* suit.

Courts "can, and must, consider the character of an applicant and his or her record of civility when determining whether to grant pro hac vice status." *Kohlmayer*, 124 F.Supp.2d at 882-83. Denial of the application in such circumstances is especially appropriate when the party has already shown the ability to secure other representation. *See, e.g., Meschi v. Iverson*, 805 N.E.2d 72, 75, 60 Mass.App.Ct. 678, 682 (2004) (Application properly denied where out-

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

of-state counsel's past conduct had "skated perilously close to the line" of violating an ethical rule, and where in-state counsel had already appeared); *Mike Woods v. On Baldwin Pond, LLC*, 2014 WL 12625077, at *2 (M.D.Fla. 2014) (Noting that although "the Court [did] not find that the conduct here amounts to an ethical violation," it was nonetheless proper to deny the application, especially "in view of the appearance of existing counsel."); *PCG Trading, LLC v. Seyfarth Shaw*, LLP, 460 Mass. 265, 276, 951 N.E.2d 315, 322 (2011) (Finding that "adequate representation by existing counsel, when combined with the already extended procedural history of this case, may have reasonably prompted the judge to deny the motion."). Here, 1) Defendants are represented by in-state counsel, 2) they already exercised the opportunity to choose their counsel on nine prior occasions including an attorney admitted *pro hac vice*, and 3) the case is on the eve of trial after an extended procedural history.

## CONCLUSION

Given the troubling and bizarre history up to this point, these cases need a Texas lawyer invested in practicing in this state, or at the very least, an out of state lawyer without a questionable record or a history of outrageous and sanctionable conduct in the parallel Sandy Hook case. A contrary ruling risks substantial eleventh-hour prejudice to Plaintiffs and endangers their trials. For these reasons, Plaintiffs pray that this Court denies pro hac vice admission.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

_____

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN

State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2022 the forgoing document was served upon all counsel of record via electronic service.

_____
MARK D. BANKSTON

# D-1-GN-18-001605

| | | |
|---|---|---|
| MARCEL FONTAINE | § | IN DISTRICT COURT OF |
| | § | |
| VS. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| KIT DANIELS | § | 459th DISTRICT COURT |

# D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

# D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

## PLAINTIFFS' RESPONSE TO NORMAN PATTIS' MOTION FOR ADMISSION OF COUNSEL PRO HAC VICE

---

On this day, the Court considered Norman Pattis' Motion for Admission of Counsel Pro Hac Vice. After considering the pleadings, and the arguments of counsel, if any, the Court finds there is good cause to deny pro hac vice admission to Mr. Pattis.

1

The Court therefore DENIES the Motion for Admission of Counsel Pro Hac Vice.


Dated _____, 2022.


_____
Hon. Maya Guerra Gamble

ORDER    421277

DOCKET NO: UWYCV186046436S

LAFFERTY, ERICA Et Al
            V.
JONES, ALEX EMRIC Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF WATERBURY
     AT WATERBURY

8/5/2021

ORDER

ORDER REGARDING:
07/06/2021 394.00 MOTION FOR ORDER

The foregoing, having been considered by the Court, is hereby:

ORDER:

By written stipulation, and unless the court orders otherwise, parties can agree to modify discovery procedures. See Connecticut Practice Book Section 13-32. In these consolidated cases, the defendants Alex Jones, Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC ("the Jones defendants") did just that. Additionally, they took their agreement with the plaintiffs a step further and asked the court to issue a protective order pursuant to Practice Book Section 13-5 and approve their joint discovery stipulation. The Jones defendants filed no less than three versions of a proposed protective order for the court's approval, see entry numbers 177,181,183, and 185, asserting that they were asking for the same discovery protection that would have been in place in federal court had the cases not been remanded back to state court. They indicated, correctly, that discovery materials are not filed with the court and as such are not ordinarily available to the public. The court ultimately approved the stipulation of the parties, which complied with all relevant requirements of the Connecticut Practice Book and which, inter alia, set forth the procedure by which sensitive confidential information obtained through pretrial discovery would be handled and, if necessary, filed with the court. The order provided that of all or part of a deposition transcript could be designated as confidential by counsel for the deponent or designated party, by requesting such treatment on the record at the deposition or in writing no later than thirty days after the date of the deposition. It set forth simple procedures by which the designation of "confidential" could be subsequently challenged, and how confidential information could be filed with the court. Importantly for the purposes of this motion, the protective order clearly prohibited discovery information designated as confidential from being filed with the court until such time that the court had ruled on the designating party's motion under Practice Book Section 11-20A. The Jones defendants did not oppose the plaintiffs' June 8,2021 motion to modify the protective order, which recited a good cause basis for the modification and which added a "Confidential- Attorneys Eyes Only" designation to the above mentioned procedures. Based upon the written motions filed by the plaintiffs and the Jones defendants, the court, in entering the protective orders, found good cause for both the issuance of the original protective order and its modification. In support of the motion for protective order, the Jones defendants identified their privacy interests in sensitive proprietary information including proprietary business, financial, and competitive information that they maintain as trade secrets, proprietary business and marketing plans, marketing data, web analytics, sales analytics, and/or other web traffic data, and marketing data or analytics. They referred to the "unique" business model that makes them competitive and successful. The plaintiffs, in support of the modification to the protective order, identified their privacy interests in their medical histories, psychiatric records,and private social media accounts. In the midst of taking the first deposition of a plaintiff, the defendants Free Speech Systems LLC, Infowars LLC, Infowars Health LLC, and Prison Planet TV LLC (Infowars),filed a motion to depose Hillary Clinton, using deposition testimony that had just been designated as "Confidential-Attorneys Eyes Only," and completely disregarding the court ordered procedures. At no point prior to filing the Clinton motion did Infowars profess ignorance of the procedures they had proposed and which were court ordered to be followed, nor have they since taken

any steps to correct their improper filing. If Infowars was of the opinion that the plaintiffs' designation was unreasonable and not made in good faith, the solution was to follow the court ordered procedure to challenge the designation, not to blatantly disregard it and make the confidential information available on the internet by filing it in the court file. The court rejects Infowars' baseless argument that there was no good cause to issue the protective orders, where both sides recited, in writing, detailed justification for a good cause basis. In short, Infowars, having advocated for a court ordered protective order, filing no less than three versions, having recited in writing the good cause bases for the issuance of the protective order, and having no objection to the plaintiffs' proposed modification, now takes the absurd position that the court ordered protective order circumvents the good cause requirements of Practice Book 13-5, did not need to be complied with, and should not be enforced by the court. This argument is frightening. Given the cavalier actions and willful misconduct of Infowars in filing protected deposition information during the actual deposition, this court has grave concerns that their actions, in the future, will have a chilling effect on the testimony of witnesses who would be rightfully concerned that their confidential information, including their psychiatric and medical histories, would be made available to the public. The court will address sanctions at a future hearing.

Judicial Notice (JDNO) was sent regarding this order.

421277

Judge: BARBARA N BELLIS

This document may be signed or verified electronically and has the same validity and status as a document with a physical (pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the Connecticut General Statutes and Connecticut Practice Book Section 4-4.

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
254 of 380

1

1                          REPORTER'S RECORD
                        VOLUME 1 OF 1 VOLUME
2

3    NEIL HESLIN,                )  IN THE DISTRICT COURT
                                 )
4         Plaintiff              )  TRAVIS COUNTY, TEXAS
                                 )
5    VS.                         )  459TH JUDICIAL DISTRICT
                                 )
6    ALEX E. JONES, INFOWARS,    )
     LLC, ET AL.,                )  TRIAL COURT CAUSE NO.
7                                )  D-1-GN-18-001835 AND
          Defendant             )  D-1-GN-19-004651
8

9    LEONARD POZNER AND          )  IN THE DISTRICT COURT
     VERONIQUE DE LA ROSA,       )
10                               )  TRAVIS COUNTY, TEXAS
          Plaintiff              )
11                               )  459TH JUDICIAL DISTRICT
     VS.                         )
12                               )
     ALEX E. JONES, INFOWARS,    )  TRIAL COURT CAUSE NOS.
13   LLC, ET AL.,                )  D-1-GN-18-001842
                                 )
14        DEFENDANTS             )

15
     SCARLETT LEWIS,             )  IN THE DISTRICT COURT
16                               )
          Plaintiff              )  TRAVIS COUNTY, TEXAS
17                               )
     VS.                         )  459TH JUDICIAL DISTRICT
18                               )
     ALEX E. JONES, INFOWARS,    )
19   LLC, ET AL.,                )  TRIAL COURT CAUSE NO.
                                 )  D-1-GN-18-006623
20        DEFENDANTS             )

21

     ------------------------------------------------------
22

23
              MOTION TO COMPEL; MOTION FOR SANCTIONS
24

25

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 255 of 380

81

1   corporate rep. depositions for the TCPA motion to

2   dismiss that Mr. Bankston was unhappy about the

3   answers, and he brought those to Judge Jenkins's

4   attention and Judge Jenkins entered an order of

5   contempt and a $500 fine on that.

6           But there's been no missed depositions.  I

7   haven't received any requests for additional

8   depositions.  There's been no pushback from me on him

9   saying he's not entitled to depositions.  So I don't

10  know where that comes from.

11          You know, and the last thing about this

12  filing that occurred in the midst of a deposition,

13  Mr. Pattis, who filed that thing in Connecticut, first

14  of all, he didn't identify the plaintiff, he didn't

15  actually provide quotes to transcription of the

16  statements, but he wasn't even in the deposition, that

17  was kind of his thing that he did, he wasn't even the

18  one doing that.

19          But more importantly, I had nothing to do --

20          THE COURT:  You just said he wasn't -- that

21  was his thing that he did, he didn't even do that.

22  That's literally what just came out of your mouth.

23          MR. REEVES:  No, I'm sorry, I didn't mean

24  that.

25          He -- he did not -- Mr. Pattis was not taking

22-01023-tmd Doc#1-16 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 256 of 380

82

1    the deposition.  He did not file the motion as he was

2    taking the deposition.  Another lawyer for the

3    defendants was taking the deposition and he just, in

4    the midst of this, filed it.  And that was, you know.

5    But he didn't actually do anything as far as

6    identifying the plaintiff or anything like that.

7              But really overall, the overarching point

8    here is that there's nothing in Connecticut that has

9    anything to do with these cases as far as the discovery

10   is concerned.  I know Mr. Bankston wants to draw

11   corollaries between them, but the discovery stuff that

12   is at issue in Connecticut is far broader, far more

13   encompassing than the discovery issue here.  And so

14   it's not a one-to-one correlation to what's there

15   versus what should be here.

16             Mr. Bankston also fails to mention that

17   there's also a Virginia case where there has been no

18   discovery issues because, frankly, Mr. Randazza is part

19   of that case now and discovery has proceeded orderly

20   there.  There's no issues there.  There's been some

21   slight disagreements, but there's been none of this --

22   you know, Connecticut and here, there's a lot of puff

23   up over discovery, lots of motions for sanctions and

24   lots of issues there, but that's, you know.

25             Again, I can't -- I'm here to live in the

1

XO6 UWY CV18-6046436-S      :    SUPERIOR COURT

ERICA LAFFERTY, ET AL       :    JUDICIAL DISTRICT OF WATERBURY

V                           :    AT WATERBURY, CONNECTICUT

ALEX EMRIC JONES, ET AL     :    NOVEMBER 15, 2021

------------------------------------------------------------

XO6 UWY CV18-6046437-S      :    SUPERIOR COURT

WILLIAM SHERLACH, ET AL     :    JUDICIAL DISTRICT OF WATERBURY

V                           :    AT WATERBURY, CONNECTICUT

ALEX EMRIC JONES, ET AL     :    NOVEMBER 15, 2021

------------------------------------------------------------

XO6 UWY CV18-6046438-S      :    SUPERIOR COURT

WILLIAM SHERLACH, ET AL     :    JUDICIAL DISTRICT OF WATERBURY

V                           :    AT WATERBURY, CONNECTICUT

ALEX EMRIC JONES, ET AL     :    NOVEMBER 15, 2021

### COURT'S RULING

B E F O R E:

          THE HONORABLE BARBARA N. BELLIS, JUDGE

A P P E A R A N C E S:

  Representing the Plaintiffs:

      ATTORNEY CHRISTOPHER MATTEI
      ATTORNEY ALINOR STERLING
      ATTORNEY MATTHEW BLUMENTHAL
      Koskoff Koskoff & Bieder
      350 Fairfield Avenue
      Bridgeport, Connecticut  06604

2

Representing the Defendants:

ATTORNEY JAY MARSHALL WOLMAN
Randazza Legal Group
100 Pearl Street
Hartford, Connecticut  06103

ATTORNEY CAMERON L. ATKINSON
Pattis & Smith
383 Orange Street
New Haven, Connecticut  06511

ATTORNEY MARIO CERAME
Brignole Bush & Lewis
73 Wadsworth Street
Hartford, Connecticut  06106

Recorded and Transcribed By:
Patricia Sabol
Court Monitor
400 Grand Street
Waterbury, Connecticut  06702

3

1          THE COURT:  All right.  So I will order a copy of

2    the transcript of the following ruling, and I will

3    sign it and I will place it in the court file as my

4    decision for the purposes of any appeal.

5          So I'll first address the Clinton deposition

6    issue and the conduct of July 1, 2021.  In the July

7    19, 2021 court filing by the defendants Infowars, LLC,

8    Free Speech Systems, LLC, Infowars Health, LLC and

9    Prison Planet, LLC, they described how in the motion

10   to depose Hillary Clinton, testimony designated by the

11   plaintiffs as highly confidential was filed in the

12   Clinton deposition motion.  They explained that this

13   was done because in their opinion, the plaintiffs did

14   not have a good-faith basis to designate the

15   deposition as highly confidential before the

16   deposition had commenced, despite the fact that the

17   Jones defendants had previously done so themselves.

18   And it is not lost on the Court that the highly

19   confidential information was improperly filed in the

20   middle of the first deposition of a plaintiff.

21          The July 19, 2021 filing is in sharp contrast to

22   the Jones defendants' position at the October 20, 2021

23   sanctions hearing where the Court addressed what, if

24   any, sanctions should enter.  At the October 20

25   hearing, the Jones defendants claim they could publish

26   confidential information as long as they did not

27   reveal the name of the witness.  That is, they argued

4

1  unconvincingly that they didn't understand the very

2  protective order that they themselves drafted and

3  asked the Court to approve as a Court order, which the

4  Court did.

5      The position of the Jones defendants at the

6  October 20, 2021 sanctions hearing did nothing but

7  reinforce the Court's August 5th, 2021 order and

8  findings that the cavalier actions on July 1st, 2021

9  constituted willful misconduct and violated the

10  Court's clear and unambiguous protective order.

11      The history of the attorneys who have appeared

12  for the defendants, Alex Jones, Infowars, LLC, Free

13  Speech Systems, LLC, Infowars Health, LLC and Prison

14  Planet TV, LLC is a convoluted one, even putting aside

15  the motions to withdraw appearance, the claims of

16  conflict of interest and the motions for stay advanced

17  by these five defendants.

18      As the record reflects, on June 28, 2018,

19  Attorney Wolman appeared for all five of the Jones

20  defendants.  Eight months later, on March 1st, 2019,

21  Attorney Wolman is out of the case and Pattis & Smith

22  filed an in-lieu-of appearance for all five

23  defendants.  On February 24, 2020, Attorney Latonica

24  also appeared for all five defendants.  Five months

25  later on July 7, 2020, Attorney Latonica and Pattis &

26  Smith is now out of the case and Attorney Wolman is

27  back in the case for all five defendants.  Then on

5

1    June 28, 2020, Pattis and Smith is back in the case,

2    but now only appears for the four LLC defendants.

3       But what is perhaps more significant is the

4    transparent attempt to cloud the issues by Pattis &

5    Smith, for example, by listing the names of only three

6    of the four clients they represent when filing the

7    motion to take the deposition of Hillary Clinton and

8    then listing all four clients in the July 19, 2021

9    filing relating to the issue.  And by Attorney Wolman

10   who then argued in his October 20, 2021 file that

11   Infowars, LLC had no involvement in the motion for

12   commission because their lawyer did not list their

13   name on the motion.  It is simply improper under our

14   rules of practice for an attorney to do so.

15      Turning to the issue of the subsidiary ledgers.

16   The five Jones defendants on November 6, 2020 filed

17   with the Court their discovery objections relating to

18   the deposition of Free Speech Systems' accounting

19   manager and current employee, Melinda Flores.  In

20   response to the plaintiff's request for subsidiary

21   ledgers, the Jones defendants objected on the basis

22   that the production of the subsidiary ledgers was

23   oppressive, unduly burdensome, disproportionate,

24   harassing and that it will require digging through

25   eight years of accounting.  No objection was raised as

26   to the term "subsidiary ledger", although parties

27   frequently will object to a discovery request if they

6

1    consider it vague or confusing.

2         On April 29, 2021, the Court overruled the

3    objection.  On May 6, 2021, the Court ordered the

4    deposition of Flores to take place on June 4, 2021 and

5    ordered the documents to be produced by the close of

6    business on May 14, 2021 stating that failure to

7    comply may result in sanctions.

8         On May 14, 2021, the five Jones defendants

9    responded to the document request and Court order and

10   stating that the subsidiary ledgers were incorporated

11   into the trial balances and had been produced.

12        At her June 4, 2021 deposition, Flores, the

13   accounting manager, testified that subsidiary ledgers

14   or detail was easily accessible and available to her.

15   She testified that it would show the sources of

16   advertising income and she testified repeatedly that

17   Free Speech Systems maintained subsidiary ledger

18   information.  Flores did not believe she was obligated

19   to produce the subsidiary ledgers, and it is unclear

20   as to whether they have been produced.

21        It was impossible to reconcile the expert hired

22   by Free Speech Systems with the November 6, 2020

23   objections filed with the Court and with Flores'

24   deposition testimony.  While the Jones defendants in

25   their May 5th, 2021 motion state that Flores would be

26   the best employee to identify and produce the

27   requested documents and further state that Flores

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
263 of 380

7

1   would be compelled by Free Speech Systems to produce

2   the requested documents at the deposition, the

3   defendants hired expert, Mr. Roe, said that Flores was

4   wrong and that Free Speech Systems doesn't use or have

5   subsidiary ledgers.

6       The Court, in its August 6, 2021 order, found

7   that the subsidiary ledger information was easily

8   accessible by Flores by clicking on each general

9   account, that, despite the Court orders and although

10  the information exists and is maintained by Free

11  Speech Systems and was required by the Court order to

12  be produced, it had not been produced.  And, again, it

13  is still unclear as to what documents have been

14  produced.

15      The Court rejected Roe's statements in his

16  affidavit as not credible in light of the

17  circumstances.  The Court found that the plaintiffs

18  were prejudiced in their ability to prosecute their

19  claims and conduct further meaningful depositions and

20  that sanctions would be addressed at a future hearing.

21      At the October, 2021 sanctions hearing, the Court

22  addressed whether sanctions should enter.  The Court

23  finds that sanctions are, in fact, appropriate in

24  light of the defendant's failure to fully and fairly

25  comply with the plaintiff's discovery request and the

26  Court's orders of April 29, 2021, May 6, 2021 and

27  August 6, 2021.

8

1    Turning to the trial balances.  In addition to

2    objecting to the deposition of Flores, the Jones

3    defendants, as I mentioned, filed discovery objections

4    to the request for production directed to Flores.  The

5    Court ruled in favor of the defendants on one

6    production request and ruled in favor of the

7    plaintiffs with respect to others.

8    In addition to the subsidiary ledgers, the Court

9    ordered production of the trial balances.  Flores had

10   run trial balances in the past unrelated to this

11   action.  Flores testified at her June 4, 2021

12   deposition that she personally accessed Quick Books

13   and selected the option to generate trial balances for

14   2012 to 2019.  She testified that she ran the reports

15   and printed them out and believed that the reports

16   were produced.  Her testimony the reports that she ran

17   were produced was left uncorrected by counsel at the

18   deposition.

19   The reports were not produced by the

20   Court-ordered deadline of May 14, 2021.  They were not

21   produced at her June 4, 2021 deposition, and they have

22   not been produced to date, despite their obligation to

23   do so.

24   While the Jones defendants, in their May 5, 2021

25   Court filing, emphasized that Flores would be the best

26   employee to identify and produce the requested

27   documents which would include the trial balances and

9

1    that Flores would be compelled by Free Speech Systems

2    to produce the documents at her deposition, not only

3    were the reports not produced, but the Jones

4    defendants in their October 7, 2021 filing now claim

5    that Flores, a mere bookkeeper, provided flawed

6    information to the defendants that the defendants,

7    through Roe, had to correct.  And the Court rejects

8    that position.

9        The Jones defendants argue that Roe combined some

10    accounts that were not used consistently and

11    consolidated some general accounts because various

12    transactions all involved the same account and those

13    records created by the Jones defendants' outside

14    accountant were the records that were produced.  But

15    these records that removed accounts and consolidated

16    accounts altered the information in the reports that

17    their own accounting manager had produced, and they

18    contain trial balances that did not balance.  These

19    sanitized, inaccurate records created by Roe were

20    simply not responsive to the plaintiff's request or to

21    the Court's order.

22        Turning to the analytics.  The date for the

23    parties to exchange written discovery has passed after

24    numerous extensions by the Court.  On May 14, 2021,

25    the Court ordered that the defendants were obligated

26    to fully and fairly comply with the plaintiff's

27    earlier request for disclosure and production.

10

1      On June 1, 2021, the defendants filed an

2  emergency motion for protective order apparently

3  seeking protection from the Court's own order where

4  the defendants again attempted to argue the scope of

5  appropriate discovery.

6      The Court, on June 2, 2021, declined to do so and

7  extended the deadline for final compliance to June 28,

8  2021 ordering the defendants to begin to comply

9  immediately on a rolling basis.  In its June 2nd

10  order, the Court warned that failure to comply would

11  result in sanctions including default.

12      With respect to analytics, including Google

13  Analytics and social media Analytics, the defendants

14  on May 7, 2019 represented that they had provided all

15  the analytics that they had.  They stated with respect

16  to Google Analytics that they had access to Google

17  Analytics reports, but did not regularly use them.  As

18  the Court previously set forth in its September 30,

19  2021 order, the defendants also claim that on June 17,

20  2019, they informally emailed zip files containing

21  Google Analytics reports to the plaintiffs, but not

22  the codefendants, an email the plaintiffs state they

23  did not receive and that the Court found would not

24  have been in compliance with our rules of practice.

25      On June 28, 2021, the Jones defendants filed a

26  notice of compliance stating that complete final

27  supplemental compliance was made by the defendants,

11

1    Alex Jones and Free Speech Systems, LLC and that

2    Infowars, LLC, Infowars Health, LLC and Prison Planet,

3    LLC, quote:  Had previously produced all documents

4    required to be produced, end quote, representing that

5    with respect to the Google Analytics documents, Free

6    Speech Systems, LLC could not export the dataset and

7    that the only way they could comply was through the

8    sandbox approach.

9        Then on August 8, 2021, the Jones defendants for

10   the first time formally produced Excel spreadsheets

11   limited to Google Analytics apparently for Infowars

12   dot com and not for any of the other websites such as

13   Prison Planet TV or Infowars Health.  Importantly, the

14   Jones defendants to date have still not produced any

15   analytics data from any other platform such as Alexa,

16   Comcast or Criteo.

17       The Jones defendants production of the social

18   media analytics has similarly been insubstantial and

19   similarly has fallen far short both procedurally and

20   substantively, despite prior representations by the

21   Jones defendants that they had produced the social

22   media analytics and despite the May 25, 2021

23   deposition testimony of Louis Certucci, Free Speech

24   Systems social media manager for nearly a decade, that

25   there were no such documents.

26       At the June 28, 2021 deposition of Free Speech

27   Systems corporate designee Zimmerman, Mr. Zimmerman

12

1    testified that, in fact, he had obtained some

2    responsive documents from Certucci which were then

3    loaded into a deposition chat room by counsel for the

4    Jones defendants.  It appears that these documents

5    were minimal summaries or reports for Facebook and

6    Twitter, but not for other platforms used by the

7    defendants such as You Tube.

8         Any claim of the defendants that the failure to

9    produce these documents was inadvertent falls flat as

10   there was no evidence submitted to the Court that the

11   defendants had a reasonable procedure in place to

12   compile responsive materials within their power,

13   possession or knowledge.

14        Months later, on October 8, 2021, the Jones

15   defendants formally produced six documents for the

16   spring of 2017 for Facebook containing similar

17   information to the Zimmerman chat room documents, but

18   not included in the chat room documents and screen

19   shots of posts by Free Speech Systems to an

20   unidentified social media account with no analytics.

21        The defendants represented that they had produced

22   all the analytics when they had not done so.  They

23   represented in court filings that they did not rely on

24   social media analytics and this, too, is false.

25        I'm going to need to take a thirty second water

26   break, please.

27        (A short break in the proceedings occurred.)

13

1            This response was false.  The plaintiffs in

2    support of their motion for sanctions on the analytics

3    issue attached as exhibit D, an email dated December

4    15, 2014 between former Free Speech Systems business

5    manager Timothy Fruge and current Free Speech Systems

6    employee Buckley Hamman.  Fruge attaches annotated

7    charts of detailed analytics concerning Jones' 2014

8    social media audience including gender demographics

9    engagement and social media sites that refer people to

10    Infowars dot com.  As pointed out by the plaintiffs,

11    Fruge's annotations are even more telling than the

12    charts themselves and totally contradict the Jones

13    defendants misrepresentations to the Court that,

14    quote:  There is no evidence to suggest that Mr. Jones

15    or Free Speech Systems ever used these analytics to

16    drive content, end quote.

17            The next image on the document shows key

18    indicators on Twitter.  Those are engagement and

19    influence.  Again, this is reading from Fruge's notes.

20    Again, the next image shows the key indicators on

21    Twitter.  Those are engagement and influence.  Notice

22    our influence is great and our engagement is low.  I

23    bring this up -- again these are Fruge's notes --

24    because we should try and raise our engagement with

25    our audience.  Engagement is how well we are

26    communicating and interacting with our audience.  The

27    higher our engagement, the more valuable our audience

14

1   will become to our business.  And that is the end of

2   Fruge's notes.

3        I would note that regardless of this reliance on

4   social media analytics, the concept is simple.  The

5   defendants were ordered to produce the documents and

6   our law requires them to produce information within

7   their knowledge, possession or power.  Discovery is

8   not supposed to be a guessing game.  What the Jones

9   defendants have produced by way of analytics is not

10  even remotely full and fair compliance required under

11  our rules.

12       The Court finds that the Jones defendants have

13  withheld analytics and information that is critical to

14  the plaintiff's ability to conduct meaningful

15  discovery and to prosecute their claims.  This callous

16  disregard of their obligations to fully and fairly

17  comply with discovery and Court orders on its own

18  merits a default against the Jones defendants.

19       Neither the Court nor the parties can expect

20  perfection when it comes to the discovery process.

21  What is required, however, and what all parties are

22  entitled to is fundamental fairness that the other

23  side produces that information which is within their

24  knowledge, possession and power and that the other

25  side meet its continuing duty to disclose additional

26  or new material and amend prior compliance when it is

27  incorrect.

15

1       Here the Jones defendants were not just careless.

2  Their failure to produce critical documents, their

3  disregard for the discovery process and procedure and

4  for Court orders is a pattern of obstructive conduct

5  that interferes with the ability of the plaintiffs to

6  conduct meaningful discovery and prevents the

7  plaintiffs from properly prosecuting their claims.

8       The Court held off on scheduling this sanctions

9  hearing in the hopes that many of these problems would

10  be corrected and that the Jones defendants would

11  ultimately comply with their discovery obligations and

12  numerous Court orders, and they have not.

13       In addressing the sanctions that should enter

14  here, the Court is not punishing the defendants.  The

15  Court also recognizes that a sanction of default is

16  one of last resort.  This Court previously sanctioned

17  the defendants not by entering a default, but by a

18  lesser sanction, the preclusion of the defendant's

19  special motions to dismiss.  At this point entering

20  other lesser sanctions such as monetary sanctions, the

21  preclusion of evidence or the establishment of facts

22  is inadequate given the scope and extent of the

23  discovery material that the defendants have failed to

24  produce.

25       As pointed out by the plaintiffs, they are

26  attempting to conduct discovery on what the defendants

27  publish and the defendants' revenue.  And the failure

16

1   of the defendants to produce the analytics impacts the

2   ability of the plaintiffs to address what is published

3   and the defendants failure to produce the financial

4   records such as sub-ledgers and trial balances affects

5   the ability of the plaintiffs to address the

6   defendants' revenue.  The prejudice suffered by the

7   plaintiffs, who had the right to conduct appropriate,

8   meaningful discovery so they could prosecute their

9   claims again, was caused by the Jones defendants

10  willful noncompliance, that is, the Jones defendants

11  failure to produce critical material information that

12  the plaintiff needed to prove their claims.

13      For these reasons, the Court is entering a

14  default against the defendants Alex Jones, Infowars,

15  LLC, Free Speech Systems, LLC, Infowars Health, LLC

16  and Prison Planet TV, LLC.  The case will proceed as a

17  hearing in damages as to the defendants.  The Court

18  notes Mr. Jones is sole controlling authority of all

19  the defendants, and that the defendants filed motions

20  and signed off on their discovery issues jointly.  And

21  all the defendants have failed to fully and fairly

22  comply with their discovery obligations.

23      As I said, I will order a copy of the transcript.

24  I will sign it and I will file it in the Court as the

25  Court's order.

26

27                              Bellis, J.

17

```
 1    XO6 UWY CV18-6046436-S    :    SUPERIOR COURT.

 2    ERICA LAFFERTY, ET AL     :    JUDICIAL DISTRICT OF WATERBURY

 3    V                         :    AT WATERBURY, CONNECTICUT

 4    ALEX EMRIC JONES, ET AL   :    NOVEMBER 15, 2021

 5    -----------------------------------------------------------

 6    XO6 UWY CV18-6046437-S    :    SUPERIOR COURT

 7    WILLIAM SHERLACH, ET AL   :    JUDICIAL DISTRICT OF WATERBURY

 8    V                         :    AT WATERBURY, CONNECTICUT

 9    ALEX EMRIC JONES, ET AL   :    NOVEMBER 15, 2021

10    -----------------------------------------------------------

11    XO6 UWY CV18-6046438-S    :    SUPERIOR COURT

12    WILLIAM SHERLACH, ET AL   :    JUDICIAL DISTRICT OF WATERBURY

13    V                         :    AT WATERBURY, CONNECTICUT

14    ALEX EMRIC JONES, ET AL   :    NOVEMBER 15, 2021

15

16              C E R T I F I C A T I O N

17         I hereby certify the foregoing pages are a true and

18    correct transcription of the audio recording of the

19    above-referenced case, heard in the Superior Court, Judicial

20    District of Waterbury, at Waterbury, Connecticut, before the

21    Honorable Barbara N. Bellis, Judge, on the 15th day of

22    November, 2021.

23         Dated this 15th day of November, 2021, in Waterbury,

24    Connecticut.

25

26                             Patricia Sabol

27                             Court Monitor
```

| NO. X06-UWY-CV-18-6046436 S : | SUPERIOR COURT |
| ERICA LAFFERTY, ET AL : | COMPLEX LITIGATION DOCKET |
| V. : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL : | OCTOBER 18, 2021 |
| NO. X06-UWY-CV-18-6046437 S : | SUPERIOR COURT |
| WILLIAM SHERLACH : | COMPLEX LITIGATION DOCKET |
| V. : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL : | OCTOBER 18, 2021 |
| NO. X06-UWY-CV-18-6046438 S : | SUPERIOR COURT |
| WILLIAM SHERLACH, ET AL : | COMPLEX LITIGATION DOCKET |
| V. : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL : | OCTOBER 18, 2021 |

### Affidavit in Support of Motion to Recuse Judge Bellis

I, Norman Pattis, declare as follows:

1. I am more than 18 years old, competent to testify, and have personal knowledge regarding the statements set forth in this declaration.

2. I execute this affidavit for the purpose of seeking recusal of Judge Barbara Bellis and obtaining transfer of the hearing of this case to another judge. As detailed below, the record in this matter is littered with issues creating the appearance of judicial impropriety that raise substantial questions about whether a reasonable person would question Judge Bellis' impartiality.

3. I have appeared before Judge Barbara Bellis in the above captioned matters, and I have read certified court transcripts of any hearings that I was unable to attend.

4. **1 March 2019**. Pattis & Smith, LLC filed an appearance in the above captioned matters on behalf of the Jones Defendants. Previously, with prior counsel, the Jones Defendants filed a special motion to dismiss under Conn. Gen. Stat § 52-196a. Pursuant to that

section, in order DN123.1, Judge Bellis found good cause to order specified and limited discovery. "Specified and limited" is not defined. Neither the parties nor the court were aware of a case defining this term. Judge Bellis refused to opine on what constitutes "specific and limited" discovery, instead deciding to take up each discovery objection after the parties attempted to resolve any issues themselves. After the parties were unable to come to an agreement, Judge Bellis in order DN148 overruled two of the Jones Defendants' objections without further explanation. The Jones Defendants' attempt to appeal this order was denied and the parties agreed to comply with discovery by 23 February 2019.

5. **7 March 2019 hearing**. Discovery compliance on behalf of the Jones Defendants was incomplete and overdue.

   a. I informed the Court and plaintiffs that I expected my appearance to be limited to moving another attorney in *pro hac vice* to represent the Jones Defendants. (Transcript, 8:9-10, Exhibit A). Previously, the court denied the *pro hac vice* application of the Jones Defendants' original counsel of choice. This, in part, resulted in a replacement of prior counsel

   b. The Court stated its dissatisfaction with the current state of discovery and missing of court ordered discovery compliance deadlines. (*Id.* at 4:1-27).

   c. Despite its dissatisfaction, the Court granted the Jones Defendants an additional two weeks for discovery compliance, with a caveat that if the Jones Defendants "continue to ignore court deadlines they're going to lose the ability, quite frankly, to pursue their motion to dismiss." (*Id.* 6:18-21).

2

6. **13 March 2019 hearing**. The Jones Defendants found themselves without *pro hac vice* counsel, further exacerbating discovery compliance.

    a. I informed the Court that:

        i. to my surprise, "counsel who expressed an interest in appearing will not be appearing and that I will in fact for the foreseeable future be the only counsel for these defendants." (Transcript, 4:14-17, Exhibit B).

        ii. I had personally made the Jones Defendants aware that the ability to have their special motion to dismiss heard depended on complying with the court's discovery orders. (*Id.* 7:23-8:1).

    b. Judge Bellis agreed with this assessment regarding the Jones Defendants' special motion to dismiss. (*Id.* 8:2).

7. **22 March 2019 hearing**. I took the reins of the defendant's discovery compliance efforts, determined why the Jones Defendants had yet to comply, and what was necessary to bring them into compliance.

    a. Prior to this hearing, on 21 March 2019, the Jones Defendants filed a motion for an extension of time to comply with discovery, which in part indicated that the Jones Defendants had previously been under the impression compliance had been tendered. (Transcript, 3:25-4:3, Exhibit C).

    b. Judge Bellis inquired as to how, given the history of discovery compliance, the Jones Defendants could be under that impression. (*Id.* 4:1-3).

    c. I provided a candid history of the impact the two previous changes in counsel had on discovery compliance and provided a roadmap as to how discovery

3

compliance could progress given the voluminous nature of the court ordered discovery. (*Id.* 5-38).

    d. At that time, Judge Bellis decided to not preclude the Jones Defendants' special motion to dismiss, noting that based on my representation:

> [i]t sounds like you pretty handily, without much of a struggle, was able to determine that this was going to be an expensive search, and it was going to involve a lot of documents. If Mr. Jones' first attorney had done what you're doing, I would have been back probably with everyone maybe on January 30th, at which point I would have been told this is going to be -- it's going to take longer, it's nine million, or however many emails, but instead what happened -- and I don't want to beat a dead horse -- is that the deadlines were missed and they were like moving targets.

(*Id.* 40:7-18).

8. **26 March 2019 hearing**. The Jones Defendants produced a large quantity of discovery materials.

    a. In response to the Court's inquiry about the status of discovery compliance, I stated:

> the Court reserved effectively on whether to reconsider our motion to — for an extension of time to comply with discovery. And I recited the transitional difficulties as this case has migrated from several counsel to our office. My impressions Friday is the Court was going to keep an open mind about what to do and based in part on whether the defendants could make some showing that they were making a bonafide and good faith effort to comply with discovery under new counsel. What we had done since Friday consist of the following. We have, as you know there is a related Texas case and the Texas firm has given us complete access to what they have disclosed in -- in that case. So I delivered to counsel for the plaintiffs at their home on Sunday afternoon, a hard drive consisting of all the documents we had received to date from counsel in Texas that were responsive to search terms in our case, together with the — I sent an email describing what I thought was in that disc. Was operating under the speed of light. I have authorization from my client to rely on Texas' compliance without having to look through it myself with respect to those items.

(Transcript, 3:14-4:12, Exhibit D).

b.  Following an extended inquiry by the Court, Judge Bellis reasoned that "we sort of need a better grasp of what has been produced to date... since some of the materials were just produced last night, I think before I make a decision, I think that we need to be on the same page, both sides, as to what has been produced and what is still owed." (*Id.* 23:2-10).

c.  Judge Bellis then concluded "So I think the best that you could do is if you could ask for a week for the Court to. . . decide the issue. . . not a week extension, a week to decide the issue. (*Id.* 29:18-25). "If you want to come back in a week, hopefully with interrogatories and production requests under oath so that I could then decide the issue. . . I'm willing to do that. . . Does that work for other counsel?" (*Id.* 30:13-24).

d.  Opposing counsel agreed with Judge Bellis' proposed course of action. (*Id.* 30:24-25).

9.  **10 April 2019 hearing**. Judge Bellis determined the Jones Defendants were now in substantial compliance with the court ordered discovery. An issue regarding a signature on an affidavit arose. Judge Bellis was unable to articulate the relevance or materiality of the signature issue. Regardless, she ordered a separate hearing to resolve this issue and *sua sponte* incorporated this issue as a potential second basis for a sanction preventing the Jones Defendants from having their special motion to dismiss heard.

a.  Judge Bellis indicated that "the issue at this point for me is whether there's been substantial good faith compliance or not such that the defendant should be

allowed to pursue their special motion to dismiss." (Transcript, 12:15-18, Exhibit E). (*Id.* 12:27-13:6).

b. The Jones Defendants proceeded to outline the current state of discovery compliance. (*Id.* 13:13-16:22).

c. After addressing non-substantive issues with the discovery compliance, Judge Bellis inquired of the plaintiffs "[h]ow is this not substantial compliance?" (*Id.* 22:6-7).

d. Plaintiffs raised concerns regarding the content of answers provided in the discovery compliance, to which Judge Bellis responded "that would require an evidentiary hearing., (*Id.* 22:23-24). "[b]ut I don't see how this is not substantial compliance." (*Id.* 24:1-2).

e. Plaintiffs then conceded that "it's apparent from the Court's comments that the Court is satisfied there is at least substantial compliance." (*Id.* 27:4-6).

f. **Affidavit issue**. In my haste to satisfy the court ordered expedited discovery, I executed an affidavit containing a technical deficiency that impacted neither it's substance nor veracity.

   i. Plaintiffs next inquired on the record about an affidavit signed by Alex Jones, specifically where the affidavit was signed. (*Id.* 29:3-7).

   ii. I indicated it was signed in New Haven, Connecticut by "an authorized representative . . . who spoke to [him] and spoke with [Alex Jones] and authorized [him] to sign it for him under the formalities of an oath." (*Id.* 29:17-26). This procedure occurred because Alex Jones could not travel to

6

Connecticut to personally sign the affidavit. (*Id.* 30:2-4). This was not indicated on the affidavit.

iii.  Judge Bellis responded as follows, "I've never heard of that," (*Id.* 29:27). "I -- I know, but I've never heard of that in my life. I've never heard of that ever. . . ever . . . But I've never -- I -- I - - I've never heard of that. I've never — I've just never heard of it, I've never even anecdotally heard of it. I've never heard of it done in any case ever, I've never read about it ever. (*Id.* 30:1-15).

iv.  I responded, "[t]here was certainly no intent to deceive. . . If there's a concern, I'll have him sign it and refile it tomorrow." (*Id.* 31:6-16).

v.  In response to Judge Bellis' inquiry regarding who signed the affidavit and why that name did not appear on the document, I indicated that "its an individual's who appeared for him in Connecticut who is an -- an assistant . . . [h]is concern is that he does not want to be harassed by (inaudible). who have harassed others in this case." (*Id.* 31:18-25).

vi.  Because I was appearing remotely, Judge Bellis indicated that affidavit issue would be addressed immediately upon my return to Connecticut. (*Id.* 32:3-8).

vii.  Plaintiffs inquired whether the court was "prepared to rule on the motion for reconsideration or motion for sanctions [for failure to comply with discovery]. (*Id.* 35:3-4).

viii.  Judge Bellis replied:

7

> I am going to have a hearing on that affidavit issue. And I don't think there's any harm in proceeding. I mean, I think this is *substantial compliance* but until I deal with that affidavit issue, I'm not — I'm not going to rule on — I'll take it under advisement; the motion for reconsideration and the motion for sanctions. But I'm going to have the hearing on the affidavit first.

(*Id.* 35:9-16). (emphasis added).

10. **22 April 2019 hearing**. Given Judge Bellis' reaction to the affidavit issue, I self-referred to the grievance counsel. Judge Bellis indicated her intent to refer the issue to the grievance counsel a second time. Judge Bellis then invited the plaintiffs to use this issue as a pretext to provide an additional basis to sanction the Jones Defendants. The plaintiffs declined this invitation, indicating their position was that there was insufficient information to indicate culpability on the part of the Jones Defendants. Despite previously ordering a hearing on the issue and the plaintiffs indicating that without a hearing they lacked information necessary to take a position, Judge Bellis pressed the plaintiffs to take a position without a hearing, which they declined to do.

   a. Judge Bellis took up the affidavit issue by stating:

> I reviewed the transcripts and the affidavit and I do want to put a statement on the record, and I think I'm going to proceed a certain way. So on March 22nd, 2019, Defense Counsel filed the affidavit that indicated it was signed by Alex Jones under oath, and the e-filing description referred to a March 22nd, 2019, affidavit of A. Jones. That was the e-file description. And the attestation clause indicates that the affidavit was sworn to and subscribed to on March 22nd, 2019; and we learned on that same date that Attorney Pattis --I'm sorry, we learned subsequently on April 10th that Attorney Pattis had taken the signature and that the signature was not that of Mr. Jones but of an authorized representative who didn't want to be named because he didn't want to be harassed. But on March 22nd, 2019, on the record Attorney Pattis referred to the document as an affidavit from Jones. The affidavit is devoid of any language that would reveal that Mr. Jones' agent or employee or authorized representative signed his name to the document. There's no attempted power of attorney language or acknowledgement or

8

> anything at all to show that some other person signed Alex Jones'
> name to the affidavit. So in the Court's opinion, the affidavit is --
> is invalid and is a false affidavit. Affidavits are supposed to be
> signed by the author, not surreptitiously by some other unknown,
> although authorized, person. So I am going to refer this matter to
> Disciplinary Counsel.

(Transcript, 12:15-18, Exhibit F).

b.  I indicated that I already self-referred because I was:

> so taken aback by your reaction and the reaction of Counsel,
> although I stand by what I did. I take your role as Court very
> seriously. I referred that to the New Haven Committee, care of
> Michael Georgetti, the Friday of our hearing. I've alerted Counsel
> to it in the event they wanted to weigh in. They asked for a copy of
> my filing. I didn't give them one because it contains more
> information than was placed on the record. But nonetheless, Judge,
> if I erred, the Grievance Committee will tell me. I don't believe I
> did.

(*Id.* 5:16-27).

c.  Judge Bellis indicated:

> I am going to make the referral, nonetheless, but I am glad to hear
> that you did it, Attorney Pattis. And I will leave it to them to figure
> out what if anything needs to be done. However, the question
> remains as to what if any sanctions should enter as to the
> defendants in light of the affidavit.

(*Id.* 6:8-15).

d.  The plaintiffs' position was that "we came here today believing that this issue

was one between Counsel and the Court, frankly. . . we just don't know enough

about the circumstances under which that affidavit was made to know whether

Mr. Jones's role. . . based on what we know right now, we weren't prepared to

argue that." (*Id.* 7:11-27).

e.  Judge Bellis' response invited the plaintiffs to make an argument for sanctions,

stating "I'm not sure what you would need to know to take a position." (*Id.* 8:6-

7).

9

f. The plaintiffs refused the invitation to argue for sanctions and took no position. Judge Bellis indicated, "[a]ll right. Then in light of that, I am satisfied with not taking any further action." (*Id.* 8:9-22).

11. **7 May 2019 hearing**. Judge Bellis ruled that there has been sufficient discovery compliance to afford the defendants the opportunity to pursue their special motion to dismiss. Then, plaintiffs raised an issue about discovery of draft interrogatories. Judge Bellis immediately retracted the ruling regarding substantial compliance, without fully comprehending the issue raised by plaintiffs. Counsel for the Jones Defendants attempted to inform the court it misunderstood the issue raised, but was immediately cut off by Judge Bellis. Once the court fully comprehended the plaintiffs' request, Judge Bellis denied it but never addressed whether the prior ruling finding substantial compliance or the subsequent retraction was the law of the case.

a. Judge Bellis began this hearing by stating:

> I do want to just state for the record what is probably clear to everyone at this point. I had said a few times that I thought that there was substantial enough compliance. So in effect I have really extended --had extended the deadlines for the defendant to comply. So that would be my ruling, just for the record, on the issue of the additional time to comply. I understand it's not necessarily 100 percent complete compliance, but I think *I've seen enough of it at this point to afford the defendants the opportunity to pursue their special motion to dismiss*.

(Transcript, 1:18-2:3, Exhibit G). (Emphasis added).

b. The court then addressed additional discovery related issues concerning, among other issues, the production of metadata from emails previously produced to plaintiffs. Judge Bellis ordered that the metadata be produced within two weeks. (*Id.* 4:1-25).

10

    c.  Plaintiffs subsequently raised an issue concerning interrogatory responses made by Alex Jones, indicating that they had received a signed copy but were not in possession of "the version that Mr. Jones previously signed that Attorney Pattis has described for the Court and which were responses to our request for production, they simply declined to produce them." (*Id.* 10:10-14).

    d.  While the court ultimately ruled the plaintiffs were not entitled to these draft responses, (*Id.* 10:15-12:3), upon plaintiffs first raising the issue and without inquiring the position of the Jones Defendants, Judge Bellis stated, "this is news to me. So here's what I would say on that. *I now retract my prior comments that there has been substantial compliance, good-faith, substantial compliance.*" (*Id.* 8:24-9:1). (Emphasis added).

    e.  Despite ultimately holding that the plaintiffs were not entitled to discovery of the draft interrogatory responses, Judge Bellis took no steps to clarify what ruling stood with regard to whether there had been substantial enough compliance to afford the defendants the opportunity to pursue their special motion to dismiss. (*Id.* 10:15-12:2).

12. **22 May 2019 hearing**. Metadata related to previously discovered emails was provided to plaintiffs.

    a.  The plaintiffs acknowledged receipt of the previously requested metadata on 21 May 2019 in accordance with the court's 7 May 2019 order. (Transcript, 2:25-27, Exhibit H).

13. **5 June 2019 hearing**. Judge Bellis ruled that the Jones Defendants have fully and fairly

complied with discovery despite plaintiffs' objections. When I requested the ability to

make discovery requests of the plaintiffs, Judge Bellis attempted to silence me. When I

objected, Judge Bellis terminated the hearing.

a.  At the start of the hearing, Judge Bellis inquired what motions were ready for

adjudication. The plaintiffs replied that two of their motions were ready for

adjudication along with a consolidated response by the Jones Defendants.

(Transcript, 1:12-16, Exhibit I).

b.  Judge Bellis next outlined how the hearing would proceed:

> So I looked at them and there's no right to argument on these, but
> I'm going to give you some -- an opportunity to just briefly address
> the exact issue. So I don't want to have a rehash of how we got here,
> what's transpired. It was all laid out in the motions and I'm more than
> familiar. So I basically want the plaintiff to tell me why the
> defendant has not fully and fairly complied with the discovery
> request. And then I would like to hear from the Defense as to why
> the Defense has fully and fairly complied with the discovery request.
> And I want to be able to look --actually look at the exact inquiries
> that we're talking about.

(*Id.* 1:17-2:3).

c.  The plaintiffs' motions concerned discovery compliance issues, despite Judge

Bellis previous ruling that there had been substantial enough compliance to afford

the Jones Defendants the opportunity to pursue their special motion to dismiss.

(*Id.* 1-50).

d.  For example, in one request the plaintiffs asked the Jones Defendants to produce

"business marketing plans" and, after depositions, took issue with the manner in

which the defendants searched for these materials. (*Id.* 36:24-27).

e.  In response, Judge Bellis ruled that "unless you have some, you know, a good

12

faith basis and some evidence that in fact the documents do exist, I think that you

have to be satisfied with the answers under oath. And no such documents exist is

a proper response. (*Id.* 38:23-27). "This is just full and fair compliance. And

sometimes the answer is going to be it doesn't exist." (*Id.* 39:26-40:1).

f.   The court afforded the plaintiffs 46 transcript pages to address the issues raised in

their motions. Believing that Judge Bellis had now clarified any confusion

regarding discovery compliance so that the next step was a hearing on the special

motion to dismiss, the Jones Defendants indicated that "in our motions we

suggested we'd like permission to do a little bit of discovery ourselves." (*Id.*

48:23-25).

g.   Judge Bellis' immediately replied, "I'll take that up on the papers." (*Id.* 49:1).

h.   The Jones Defendants' attempt to be heard as to the nature of the discovery

sought, was met with the following exchange:

> THE COURT: I'll take that up on the papers.
>
> ATTY. PATTIS: And then also we'd like to have them be directed
> to find out who's financing this because --
>
> THE COURT: Right. I read -- Attorney Pattis, I read it. No right to
> argument on that issue. I don't need help on that issue. And I'll --
> I'll issue that --
>
> ATTY. PATTIS: My client would like me to be heard today for
> these purposes because --
>
> THE COURT: All right. Attorney Pattis, listen to me carefully. I'm
> trying to be polite.
>
> ATTY. PATTIS: I always do.
>
> THE COURT: Okay. I'm going to take that issue on the papers.
> There's no right to argument on that issue and I will rule today on
> that issue for you. Okay? But you can tell your client that there's
> no right to argument on that issue and I'm not extending -- I'm
> denying your request for argument, politely.

ATTY. PATTIS: And I will politely tender his objection on the grounds that when his --

THE COURT: All right. Attorney Pattis --

ATTY. PATTIS: -- information on the business finds itself --

THE COURT: -- I think we're done.

ATTY. PATTIS: -- in the press to his economic detriment

THE COURT: We're done for the day.

(*Id.* 49-50).

14. **14 & 15 June 2019 broadcasts**. Alex Jones aired two broadcasts. The first was an emotional response to learning that he and the Jones Defendants were the victims of a cyber-attack designed to frame them for possession of child pornography. The second was an apology for his emotional outburst.

    a.  On 14 June 2019, defendant Alex Jones appeared in a broadcast in which he opined on the discovery compliance in the above captioned matters, specifically focusing on the discovery of unopened child pornography that was hidden in metadata attached to emails sent to the Jones Defendants from third parties. Plaintiffs specifically requested this metadata via motion and the Jones Defendants complied with the courts order to produce this data to the plaintiffs within 2 weeks, by 21 May 2019. Plaintiffs provided this data to an "electronic storage information expert" in order to review the metadata associated with approximately 58,000 emails. (Transcript, 7:9-21, Exhibit J).

    b.  On 4 June, after 15 days with the data, the plaintiffs' expert review discovered a single image of suspected child pornography attached to an email sent to the Jones Defendants by a third-party. (*Id.* 7:9-27).

    c.  On 7 June the FBI took possession of the data and immediately analyzed it for an

14

additional 6 days. (*Id.* 8:5-15).

d.  On 12 June, the FBI informed only the plaintiffs that the weeklong investigation uncovered an additional 11 emails containing suspected child pornography. The FBI also informed only the plaintiffs that the investigation concluded that the Jones Defendants had not opened any of the images at any time. (*Id.* 8:15-20).

e.  Plaintiffs' counsel Attorney Chris Mattei then called and informed me that the Jones Defendants had been the victims of 12 distinct acts of cyber-crime. Subsequently, the United States Attorney's Office called me. Counsel for plaintiffs were included on this call. (*Id.* 8:21-9:24).

f.  Following this call, and prior to the 14 June broadcast, I informed the Jones Defendants that as a result of discovery compliance the FBI launched a weeklong investigation into whether the Jones Defendants knowingly possessed child pornography in violation of federal law.

g.  Upon learning that they were the victims of 12 distinct acts of cyber-crime involving a child pornography email scam, ostensibly to frame and extort them, the Jones Defendants reacted. The Jones Defendants were outraged. They found the manner in which the FBI handled the investigation disconcerting. Plaintiffs' counsel, not the Jones Defendants who were the victims of the cyber-attack, were the first party informed of the outcome of the investigation. Then it was plaintiffs' counsel Attorney Chris Mattei, not a Federal Investigator or member of the FBI's Victim Services Division, that informed me about the investigation. This was especially suspect given that Attorney Mattei worked for the United States Attorney's Office from 2007 through 2015.

h.  While all this information was coalescing in his mind, Alex Jones raised these issues in an emotionally charged stream of consciousness broadcast on 14 June 2019. The narrative began with an account of how discovery compliance resulted in an FBI investigation and ended in Mr. Jones expressing his opinion that he wanted the perpetrator of these cyber-attacks brought to justice. In the course of that narrative, Mr. Jones indicated a belief that Attorney Mattei's involvement in this entire course of events was suspicious. Attorney Mattei had argued in court to obtain metadata associated with approximately 58,000 emails. This metadata was provided to an "electronic storage information expert" that spent 15 days combing through the data to find a single image. Plaintiffs' counsel then provided this to the FBI, who spent an additional week analyzing the metadata. In the end, it was Attorney Mattei that called to inform them about the results of the investigation by the FBI, specifically that the Jones Defendants were cleared of any criminal liability. This left Alex Jones demanding to know who attacked the Jones Defendants and why Attorney Mattei played such a prominent role in the FBI's investigation.

i.  The following day, on 15 June 2019, Alex Jones issued another broadcast, apologizing for his emotional response and indicating that the 14 June 2019 broadcast should not be construed as suggesting that plaintiffs' attorneys were involved in any criminal activity related to the discovery of child pornography in the metadata.

15. **18 June 2019 hearing**. Given Judge Bellis' previous willingness to entertain arguments for sanctions against the Jones Defendants without a hearing and meaningful opportunity

to be heard, the broadcasts created a perfect opportunity for the plaintiffs to resurrect their attempt to prevent the Jones Defendants from pursuing their special motion to dismiss. The plaintiffs requested time to file a motion and a hearing on the issue. Judge Bellis' response betrayed an eagerness to find additional bases to support a sanction precluding the Jones Defendants' special motion to dismiss.

  a.  Plaintiffs' counsel capitalized on Alex Jones broadcast. The day prior, plaintiffs
      filed a motion requesting an expedited briefing schedule concerning what, if any,
      orders should issue in relation to the broadcast. The following day at the hearing,
      plaintiffs reiterated to the court that they intended to file a motion for sanctions
      requesting a hearing on the issue:

> It is our intention, Your Honor, to file a motion for sanctions. We
> will be seeking a sanction up to and including default based on Mr.
> Jones's conduct. We would propose to get that motion filed within
> a very short period of time, and we'd ask for a hearing on that
> motion as soon as possible.

  (*Id.* 11:3-8).

  b.  Judge Bellis disregarded the plaintiffs' request to (1) provide written briefs and
      (2) hold a meaningful hearing on the issue:

> this is the time that you're going to make your argument and you're
> going to tell me why sanctions should enter. And defense will
> argue their position and tell me why sanctions should not enter. But
> I did do my own research as well, and I know — I'll rule on this
> today."

  (*Id.* 11:9-16).

  c.  Plaintiffs, obviously caught off guard by Judge Bellis' decision to proceed
      without a meaningful opportunity to be heard, began by stating they would not
      address the actual broadcast: "Well, and the conduct, Your Honor, speaks for

itself. I don't need to argue what happened." (*Id.* 12:6-8). Plaintiffs were then allowed to argue, without interruption, that sanctions were appropriate because (1) of a 2016 incident that occurred at Planet Pizza in Washington, DC; (2) the prior issues with discovery compliance; and (3) the apology during the 15 June 2019 broadcast was insufficient. (*Id.* 12:6-13:19).

d.  Judge Bellis then allowed counsel for Jones Defendants to argue, requesting they begin by addressing the nature of the apology during the 15 June 2019 broadcast. Defense counsel was able to get two full sentences out before Judge Bellis challenged the characterization of the apology. (*Id.* 14:26-15:1-7).

e.  Counsel next moved to address the actual 14 June Broadcast, attempting to illustrate Alex Jones point of view upon learning of the FBI investigation into the child pornography cyber-attack against the Jones Defendants. Judge Bellis questioned whether the emotion portrayed by Alex Jones during the broadcast was genuine. (*Id.* 15:13-26).

f.  When counsel for the Jones Defendants attempted to establish the genuineness of Alex Jones' response, Judge Bellis prevented this, stating: "Well, but then you need — then you would want to put on evidence in that regard, because there's no evidence. The evidence before me are the broadcasts that you submitted. . . this is unchartered territory, Counsel. . . and despite my research, *I couldn't find a case that came close*." (*Id.* 16:1-10). (Emphasis added).

g.  From this point on, defense counsel's argument was transformed into a cross examination by Judge Bellis, directed at establishing the broadcast was not Alex Jones exercising his right to free speech under the first amendment, but rather

18

some attempt to impact the integrity of the judicial process. (*Id.* 19:25-22:19).

h. Despite previously stating that the court was not able to find a case that came close to the facts at issue, Judge Bellis then indicated the court would take a recess so counsel for Jones Defendants could familiarize themselves with a recent appellate case that held sanctions appropriate:

> So I think the way to proceed on this, if you don't mind, is we take the recess now. I think Counsel should take a look at that case. And then if he wants to have any further argument and then I can hear from the plaintiffs as well as to whether they want any further argument, and then I'll be prepared to rule.

(*Id.* 22:21-27).

i. Upon review of the case referenced by Judge Bellis, I reached the same conclusion as the Judge did earlier in the hearing, the facts and circumstances of the case the court provided for review were not even close to the facts at issue in the instant matter. Regardless, Judge Bellis attempted to shoehorn the facts of the broadcast into the reasoning of the provided case in order to justify reaching a similar holding, so the court could impose sanctions without a hearing and meaningful opportunity to be heard. (*Id.* 26:6-37:23).

j. Following plaintiffs' argument, Judge Bellis denied the Jones Defendants the opportunity to pursue their special motion to dismiss, (*Id.* 53:25-27), for the following reasons:

> i. Putting aside the fact that the documents the Jones defendants did produce contained child pornography, putting aside the fact that the Jones defendants filed with the Court a purported affidavit from Alex Jones that was not in fact signed by Alex Jones, the discovery in this case had been marked with obfuscation and delay on the part of the defendants, who, despite several court ordered deadlines as recently as yesterday, they continue in their filings to object to having to, what they call affirmatively gather and produce

19

documents which might help the plaintiffs make their case. (*Id.* 46:25-47:13).

ii.  "I also note that the Jones defendants have been on notice from this Court both on the record and in writing in written orders that the Court would consider denying them their opportunity to pursue a special motion to dismiss if the continued noncompliance continued." (*Id.* 49:2-7).

iii.  Judge Bellis next addressed the 14/15 June 2019 broadcasts. Despite having admonished counsel for the Jones Defendants earlier that an evidentiary hearing was required to characterize the broadcast, Judge Bellis stated "because I want to make a good record for appeal, I'm going to refer to certain portions of the transcript of the website." (*Id.* 50:8-10). Without an evidentiary hearing, or at the very least permitting the Jones Defendants to make a record, Judge Bellis made the following findings:

1.  The 14/15 June broadcasts were "indefensible, unconscionable, despicable, and possibly criminal behavior." (*Id.* 50:1-3).

2.  "Now, the transcript doesn't reflect this, but when I listened to the broadcast, I heard, I'm going to kill. Now, that's not in the transcript, but that is my read and understanding and what I heard in the broadcast." (*Id.* 50:22-26).

3.  Judge Bellis went on to "reject the Jones defendants' claim that Alex Jones was enraged. . . find[ing] based upon a review of the broadcast clips that it was an intentional, calculated act of rage for his viewing audience," (*Id.* 53:8-12).

20

16. **21 June 2019 order**. Following the sanctions order, the Jones Defendants published a news report on the Infowars website reporting on the status of the case. In the comments section of that news article, the FBI found comments containing an alleged threat against Judge Bellis.

    a. After imposing a sanction against the Jones Defendants precluding their special motion to dismiss, the court entered order DN271 indicating that the Connecticut State Police forwarded a report from the FBI that Judge Bellis was the subject of threats made by individuals commenting on the Infowars website. The order indicated there was no further information regarding the alleged threat. (DN271, Exhibit K). To date the Jones Defendants are not aware of any further information regarding the nature or quality of the threat nor the identity of the author. Plaintiffs in their filings concede as much, but then attempt to use this allegation to turn Judge Bellis against the Jones Defendants. Plaintiffs conclude, without providing evidence, that "Jones turned his fire on [Judge Bellis]" insinuating the Jones Defendants were somehow responsible for getting his audience to "threaten[] the judge… after the sanctions order issued." (*Lafferty v. Jones*, Conn. Supreme Court Records & Briefs, First Term, 2019, Plaintiffs' Brief p. 31, Exhibit L).

17. **20 December 2019 Statewide Grievance Committee Grievance Complaint #19-0367 Decision.** The Statewide Grievance Committee conducted an adversarial hearing regarding the affidavit issue, *supra* at 9f. After both sides had a meaningful opportunity to be heard, the Committee concluded that my conduct "in connection with the affidavit did not rise to the level of an ethical violation," "did not violate the Rules of Professional

Conduct," and at most I made an unintentional mistake in executing the affidavit. (Exhibit M, p. 3). Accordingly, the Grievance Committee dismissed the complaint. *Id.*

18. **Appeal of Sanction Denying Defendant's Special Motion to Dismiss**. The appeal of the Court's 18 June 2019 sanction denying the Jones Defendants' special motion to dismiss stayed the proceedings in this matter for the majority of 2020.

    a. On 23 July 2020 the Connecticut Supreme Court affirmed the sanction. (Exhibit N, p. 1).

    b. On 28 July 2020 the Jones Defendants' appealed this order to the United States Supreme Court, which denied *certiorari* on 5 April 2021. (Exhibit O, p. 1)

    c. Following the denial of *certiorari*, on 14 April 2021, the above captioned matters resumed holding the pre-appeal monthly status conferences. (Transcript, 12:3-21, Exhibit P).

19. **6 May 2021 hearing.** At this hearing the Court reached back to the 22 April 2019 hearing to reiterate that in the past it had "previously referred the Jones defendants' prior counsel to the disciplinary authorities." (Transcript, 13:25-26, Exhibit Q). The Court's purpose in resurrecting this issue was purportedly because in an objection to a deposition requested by plaintiffs, counsel for the Jones Defendants cited the fact "that there was an application for a stay filed with the U.S. Supreme Court" as one of six bases in support of that objection. The Court took issue with the fact that when this objection was filed on 6 November 2020 the United States Supreme Court had, in fact, denied the request for the stay the day before and counsel for the Jones Defendants did not file a correction. (*Id.* 7:25-8:2).

a.  Judge Bellis stated, in part, that

> because I do not wish to [refer the Jones defendants' counsel to the
> disciplinary authorities] again, I am directing counsel — and that's
> all counsel in this case—to review the relevant sections of the Rules
> of Professional Conduct. . . look at what is and what is not considered
> attorney misconduct under the rules. . . Rule 3.3, Candor Towards
> the Tribunal. All right. I was somewhat concerned at the time with
> the filing that suggested that there was a—the request for the stay
> that was pending with the United States Supreme Court, but the filing
> itself was filed the—after it had already been denied and no
> subsequent filing was ever made with the Court that the Court saw
> by the Jones defendants. You may all get notice from higher courts
> when you appeal to the US Supreme Court, but I was the last one—
> I would be the last one to find out, so it was incumbent upon
> whoever—whatever counsel made that filing to correct it because it
> was—it was not—it was not correct. It's that simple. . . So just—just
> refresh your familiarity with those sections so that as we move
> forward, we can hopefully avoid any—any further issues.

(*Id.* 13:24-15:18).

b.  Judge Bellis did not acknowledge the 20 December 2019 Statewide Grievance

Committee Grievance Complaint #19-0367 Decision dismissing her prior referral

of the Jones defendants' counsel to the disciplinary authorities.

c.  Counsel for the Jones Defendants attempted to inform the Court that although the

Supreme Court docket noted that the application for a stay was denied on

November 5, 2020—notice of that order was not received until 3:57 p.m. on

Friday, November 6, 2020 after counsel had already begun Sabbath observance.

On the next business day, Monday November 9, 2020, the Plaintiffs informed the

Court of the denial. (*Id.* 16:3-17:6); *see* DN337 at 1 n.1.

d.  In response Judge Bellis stated, in part:

> I don't want to get into a colloquy here. I said what I said. I made my
> ruling. I will just say in the future moving forward for your own sake
> that if you do, because at least with respect to the app -- the
> application for the stay with the US Supreme Court, what you filed
> with the Court on that day represented something that, in fact, was
> not accurate and I -- I would say it would have been incumbent upon

> you to correct what you had filed. I did learn subsequently that it
> wasn't correct, but I just think just as we move forward, if it's your
> or -- or even an innocent -- and I'm not saying it was anything but an
> innocent mistake, but it would be incumbent upon you to just correct
> that mistake because I don't want to have continued problems
> moving forward.

(*Id.* 17:17-18:5).

20. **Order Regarding DN 337.00 11 May 2021 Motion for Stay**. In preparing to propound

discovery, counsel for the Jones Defendants discovered that Plaintiffs' counsel failed to

advise the Court (1) regarding a bankruptcy issue lasting for a two-year period pertaining

to one of the plaintiffs' claims in the instant matter and (2) that one of the plaintiffs

passed away in 2019. DN337 at 1

    a. Given the Court's 6 May 2021 admonishment—in particular the importance it

       placed on counsel for the Jones Defendants not correcting a filing that contained a

       purported misrepresentation of the status of a request for a stay that at worst

       lingered for a single weekend—counsel for the Jones Defendants raised these

       issues via a motion. DN337.

    b. Ultimately the issue related to counsel for Plaintiffs' failure to disclose the death

       of one of the Plaintiffs caused the court to lose subject matter jurisdiction over the

       claims related to that Plaintiff and voided all orders entered with regard to that

       Plaintiff for a period of more than two years. *See* DN337; DN 337.20

    c. In contrast to the importance the Court placed on making a record that counsel for

       the Jones Defendants may have violated Rule 3.3, Candor Towards the Tribunal,

       Judge Bellis took the opposite tact when confronted with possible violations by

       counsel for the Plaintiffs:

> Finally, with respect to the filing of this "Motion to Stay and Notice

of Violation of Duty of Candor," it is entirely inappropriate for counsel for the Jones defendants to invoke the Rules of Professional Conduct as a procedural weapon in this forum. The Rules are not designed to be a basis for civil liability in this or any other motion, and should not be used by counsel to obtain a tactical advantage. It is the court's obligation to supervise the attorneys who appear before it, as attorneys, as officers of the court, are continually accountable to it. Any further such usage of the Rules of Professional Conduct by counsel in filings in this civil action shall result in immediate action by the court. See Practice Book §2-45.

DN337.20

d. Practice Book §2-45 permits a court to issue summary orders disciplining attorneys without a complaint or hearing.

**21. Order Regarding DN 394.00 6 July 2021 Motion for Sanctions for a Purported Violation of a Protective Order**. In DN 394.10 the court ordered that the Jones defendants violated a Protective Order (PO) governing the disclosure of "confidential information" elicited during a deposition. In issuing that order, the court ignored the Jones defendants' position that the Plaintiffs failed to satisfy the requirement that the party invoking the PO do so based upon "a *good faith determination by counsel* so designating to the Court *that there is good cause for the material so designated* to receive the protections of" the PO. DN. 185.00. at 2-3. (emphasis added). In its order, the Court mischaracterized the Jones defendants' position that the plaintiffs failed to meet this threshold good faith determination. DN 394.10 at 2. Rather, the Court recast the Jones defendants' argument as an attack on whether there was good cause to issue the PO itself and characterized this argument as "frightening" and concluded that the Jones Defendants' disclosure of the information at issue was "willful misconduct." DN 394.10 at 2. At no point did the Jones Defendants make the argument the Court indicated in this order. *Id.*

25

a. On February 22, 2019, the Court a entered a PO per Practice Book § 13-5, which permits a court, upon a showing of good cause, to make an order "protecting a party from annoyance, embarrassment, oppression, or undue burden or expense." The applicability of the PO to information produced by the parties is contingent upon that information falling within a protected category of information based upon "a *good faith determination by counsel* so designating to the Court *that there is good cause for the material so designated* to receive the protections of" the PO. Id. at 3-4. (emphasis added.)

b. On 1 July 2021, the parties held the first deposition of a plaintiff in this case. At the start of the deposition the plaintiffs' attorney attempted to designate the entire deposition "Highly Confidential – Attorneys Eyes Only." Plaintiffs concede that this designation occurred "at the beginning of the deposition," and therefore without any knowledge of the actual information that was ultimately elicited. Pls.' Mot. for Sanctions Based On The Jones Defendants' Violation Of The Protective Order, DN. 394.00, at 4, Jul. 6, 2021. Plaintiffs' counsel did not indicate on what basis he was able to make the required good faith determination that unknown information yet to be elicited via the deposition should be protected by the PO.

c. Accordingly, counsel for the defendants believed that plaintiffs' counsel failed to satisfy the PO's good faith determination threshold requirement. This threshold requirement could not be met because plaintiffs could not know whether the information it sought to protect would fall within the definition of confidential information contained in the PO.

rulings ultimately resulted in Judge Bellis depriving the Jones Defendants of any meaningful opportunity to be heard prior to the court's imposition of sanctions only magnifies this effect. Moreover, the plaintiffs have suggested that the Jones Defendants played a role in a threat made by an unknown third party against Judge Bellis. At a minimum, this accusation creates an intolerable appearance of impropriety that would cause a reasonable person to doubt Judge Bellis' impartiality and ability to fairly exercise her judicial authority.

23. I execute this affidavit for the purpose of seeking recusal by Judge Bellis and obtaining transfer of the hearing of this case to another judge.

NORMAN A. PATTIS

Signed and sworn to before me at _____ Media _____ , _____ PA _____ , this _____ 30th _____ day of _____ Oct _____ , 2021.

Notary Public

Commonwealth of Pennsylvania - Notary Seal
William Lee Cavanagh, Notary Public
Delaware County
My commission expires June 26, 2025
Commission number 1024960
Member, Pennsylvania Association of Notaries

28

```
NO: UWY-CV18-6046437 S        : SUPERIOR COURT
SHERLACH, WILLIAM             : JUDICIAL DISTRICT
                               OF FAIRFIELD
v.                           : AT BRIDGEPORT, CONNECTICUT
JONES, ALEX, ET AL.          : JUNE 18, 2019
```
-------------------------------------------------------------
```
NO: UWY-CV18-6046438 S        : SUPERIOR COURT
LAFFERTY, ERICA, ET AL.      : JUDICIAL DISTRICT
                               OF FAIRFIELD
v.                           : AT BRIDGEPORT, CONNECTICUT
JONES, ALEX EMRIC, ET AL.    : JUNE 18, 2019
```
-------------------------------------------------------------
```
NO: UWY-CV18-6046436 S        : SUPERIOR COURT
SHERLACH, WILLIAM, ET AL.    : JUDICIAL DISTRICT
                               OF FAIRFIELD
v.                           : AT BRIDGEPORT, CONNECTICUT
JONES, ALEX EMRIC, ET AL.    : JUNE 18, 2019
```


                BEFORE THE HONORABLE BARBARA N. BELLIS, JUDGE

A P P E A R A N C E S :
    Representing the Plaintiffs:
        ATTORNEY CHRISTOPHER MATTEI
        ATTORNEY WILLIAM BLOSS
        ATTORNEY JOSHUA KOSKOFF
        ATTORNEY MATTHEW BLUMENTHAL
        Koskoff, Koskoff & Bieder, PC
        350 Fairfield Avenue
        Bridgeport, CT  06604

    Representing the Defendants Alex Jones; Infowars, LLC; Free
    Speech Systems, LLC; Infowars Health, LLC; and Prison Planet
    TV, LLC:
        ATTORNEY ZACHARY REILAND
        ATTORNEY NORMAN PATTIS
        Pattis & Smith, LLC
        383 Orange Street
        1st Floor
        New Haven, CT  06511

    Representing the Defendant Cory Sklanka:
        ATTORNEY KRISTAN JAKIELA
        Regnier, Taylor, Curran & Eddy
        100 Pearl Street
        14th Floor
        Hartford, CT  06103

    Representing the Defendant Midas Resources, Inc.:
        ATTORNEY STEPHEN BROWN
        Wilson Elser Moskowitz Edelman & Dicker
        1010 Washington Boulevard
        Stamford, CT  06901

                              Recorded By:
                              Colleen Birney
                              Transcribed By:
                              Colleen Birney
                              Court Recording Monitor
                              1061 Main Street
                              Bridgeport, CT  06604

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg 303 of 380

46

1      litigation, the parties before it, and the processes

2      before it.  This exceeds any kind of sanctionable

3      conduct that the Connecticut Courts have ever

4      considered.  And really exceeds sanctionable conduct

5      in some of the federal cases that we've cited to Your

6      Honor.

7          So I think unless Your Honor has any questions,

8      I'll --

9          THE COURT:  Thank you, Attorney Bloss.  Did you

10     want to respond briefly, Counsel, or are you all set?

11         ATTY. REILAND:  Your Honor, we'll -- we'll stand

12     on Attorney Pattis's argument.  I would just say, I

13     guess reasonable minds could disagree, because of all

14     the sanctions and all the, hate to say, grandstanding

15     that we're seeing here reading from the transcript,

16     I'm not seeing any threats to Attorney Mattei here.

17     You know, it's -- it's not great language.  It's bad

18     language in some points.  But it's not an apparent

19     threat.  So thank you, Judge.

20         THE COURT:  So I'll take a two-minute recess.

21         **(THE COURT RECESSED AND RETURNED WITH THE**

22     **FOLLOWING)**

23         THE COURT:  All right.  So I'm going to start

24     with the discovery issues.

25         Putting aside the fact that the documents the

26     Jones defendants did produce contained child

27     pornography, putting aside the fact that the Jones

47

```
1        defendants filed with the Court a purported affidavit
2        from Alex Jones that was not in fact signed by Alex
3        Jones, the discovery in this case has been marked
4        with obfuscation and delay on the part of the
5        defendants, who, despite several Court-ordered
6        deadlines as recently as yesterday, they continue in
7        their filings to object to having to, what they call
8        affirmatively gather and produce documents which
9        might help the plaintiffs make their case.  Despite
10       over approximately a dozen discovery status
11       conferences and several Court-ordered discovery
12       deadlines, the Jones defendants have still not fully
13       and fairly complied with their discovery obligations.
14            By way of one example, on June 10th, counsel for
15       the Jones defendants stated in their filing that Alex
16       Jones' cellphone had only been searched for emails,
17       not for text messages or other data.  In their June
18       17 filing, defendants still try to argue with respect
19       to the text messages that there is little to no
20       personal nexus between the text messages and the
21       litigation, and that the plaintiffs are simply prying
22       into the Alex Jones defendants' personal affairs.
23       But the discovery objections were ruled on by the
24       Court months ago and the defendants still have not
25       fully and fairly complied.
26            Also, as another example, the Google Analytics
27       data was ordered to be produced.  And this is a
```

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
305 of 380

48

1       Google Analytics account that had to be created and

2       set up by and utilized, according to the testimony,

3       by some of the Jones defendants.  Only a 35-page

4       report was produced.  In their June 17 filing, the

5       Jones defendants apparently say that they don't

6       possess the data themselves and they should not have

7       to get it from Google because Google holds Alex Jones

8       in contempt.  And anything that Google generated

9       would be, and I quote, inherently unreliable,

10      unquote.  And again, the Jones defendants miss the

11      mark.  They were ordered to produce that data.

12          Our rules of practice require a party to produce

13      materials and information, quote, within their

14      knowledge, possession, or power; and it is clearly

15      within the power of the Jones defendants to obtain

16      the information from Google if, as they claim, they

17      don't possess it themselves.  So their objection is

18      too late and their failure to fully and fairly comply

19      is inexcusable.

20          So in short, we've held approximately a dozen

21      discovery status conferences.  The Court's entered

22      discovery deadlines, extended discovery deadlines,

23      and discovery deadlines have been disregarded by the

24      Jones defendants, who continue to object to their

25      discovery and failed to produce that which is within

26      their knowledge, possession, or power to obtain.  And

27      again, among the documents that they did produce

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
306 of 380

49

1    contained images of child pornography.

2         I also note that the Jones defendants have been

3    on notice from this Court both on the record and in

4    writing in written orders that the Court would

5    consider denying them their opportunity to pursue a

6    special motion to dismiss if the continued

7    noncompliance continued.

8         Now with respect to the plaintiffs' request for

9    immediate review and the Jones defendants' objections

10   thereto, as I've said, I've reviewed the -- both

11   broadcasts several times.  The law is clear in

12   Connecticut and elsewhere, for that matter, that the

13   Court has authority to address out-of-court bad-faith

14   litigation misconduct where there is a claim that a

15   party harassed or threatened or sought to intimidate

16   counsel on the other side.  And indeed, the Court has

17   the obligation to ensure the integrity of the

18   judicial process and functioning of the Court.

19        So if Mr. Jones truly believed that Attorney

20   Mattei or anyone else in the Koskoff firm planted

21   child pornography trying to frame him, the proper

22   course of action would be to contact the authorities

23   and/or to have your attorney file the appropriate

24   motions in the existing case.  Just by way as an

25   example, the Jones defendants here could have filed a

26   motion asking that the lawsuits be dismissed for that

27   reason.

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
307 of 380

50

1       What is not appropriate, what is indefensible,

2   unconscionable, despicable, and possibly criminal

3   behavior is to accuse opposing counsel, through a

4   broadcast, no less, of planting child pornography,

5   which is a serious felony.  And to continue with the

6   accusations in a tirade or rant for approximately 20

7   minutes or so.

8       Now, because I want to make a good record for

9   appeal, I'm going to refer to certain portions of the

10  transcript of the website.  And I would note that Mr.

11  Jones refers to Attorney Mattei as a Democratic-

12  appointed US attorney, holds up on the camera

13  Attorney Mattei's Wikipedia page which indicates that

14  he is a Democrat, and puts the camera on the website

15  page, which looks like it's from the law firm.

16      Alex Jones states: what a nice group of

17  Democrats.  How surprising, what nice people.  Chris

18  Mattei, Chris Mattei.  Let's zoom in on Chris Mattei.

19   Oh, nice, little Chris Mattei.  What a good

20  American.  What a good boy.  You'll think you'll put

21  me on.

22      Now, the transcript doesn't reflect this, but

23  when I listened to the broadcast, I heard, I'm going

24  to kill.  Now, that's not in the transcript, but that

25  is my read and understanding and what I heard in the

26  broadcast.

27      He continues to say: anyways, I'm done.  Total

22-01023-tmd Doc#1-16 Filed 04/18/22 Entered 04/18/22 14:16:53 Exhibit B contd. Pg 308 of 380

51

1   war.  You want it, you got it.  I'm not into kids

2   like your Democratic Party, you cocksuckers, so get

3   ready.

4       And during this particular tirade, he slammed

5   his hand on Attorney Mattei's picture, which was on

6   the camera at that point.

7       He continues on shortly thereafter: the point

8   is, I'm not putting up with these guys anymore, man,

9   and their behavior because I'm not an idiot.  They

10  literally went right in there and found this hidden

11  stuff.  Oh, my god, oh, my god, and they're my

12  friends.  We want to protect you now, Alex.  Oh,

13  you're not going to get into trouble for what we

14  found.  F you, man, F you to hell.  I pray God, not

15  anybody else, God visit vengeance upon you in the

16  name of Jesus Christ and all the saints.  I pray for

17  divine intervention against the powers of Satan.

18      I literally would never have sex with children.

19   I don't like having sex with children.  I would

20  never have sex with children.  I am not a Democrat.

21  I am not a Liberal.  I do not cut children's genitals

22  off like the left does.

23      Further on, referring to the person who sent the

24  child porn, he says: I wonder who the person of

25  interest is.  Continues to say: oh, no.  Attorney

26  Pattis says: look, are you showing Chris Mattei's

27  photograph on here; and the record should reflect

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
309 of 380

52

```
1        that when Alex Jones said I wonder who the person of

2        interest is, Attorney Mattei's photo was on the

3        camera.  Again, referring to who planted the child

4        pornography.  Then Alex Jones says: oh, no, that was

5        an accidental cut.  He's a nice Obama boy.  He's a

6        good -- then Attorney Pattis cuts him off.  Attorney

7        -- Alex Jones goes on to say: he's a white Jew-boy

8        that thinks he owns America.

9             Later on in the broadcast, Alex Jones says,

10       quote, the bounty is out, bitches.  And you know your

11       feds, they're going to know you did it.  They're

12       going to get your ass you little dirt bag.  One

13       million, bitch, it's out on your ass.

14            Shortly thereafter, he says: a million dollars

15       is after them.  So I bet you'll sleep real good

16       tonight, little jerk, because your own buddies are

17       going to turn you in and you're going to go to

18       prison, you little white Jew-boy jerk-off son of a

19       bitch.  I mean, I can't handle them.  They want more,

20       they're going to get more.  I am sick of these

21       people, a bunch of chicken-craps that have taken this

22       country over that want to attack real Americans.

23            And those are just portions of the transcript

24       that the Court relied on.  The Court has no doubt

25       that Alex Jones was accusing Plaintiffs' Counsel of

26       planting the child pornography.

27            Again, these are just a few examples where Jones
```

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
310 of 380

53

1    either directly harasses or intimidates Attorney

2    Mattei, repeatedly accuses Plaintiffs' Counsel of

3    requesting the metadata so they could plant the child

4    pornography, continues to call him a bitch, a sweet

5    little cupcake, a sack of filth, tells him to go to

6    hell, and the rant or tirade continues with frequent

7    declarations of war against Plaintiffs' Counsel.

8         I reject the Jones defendants' claim that Alex

9    Jones was enraged.  I disagree with Attorney Pattis's

10   representation here.  I find based upon a review of

11   the broadcast clips that it was an intentional,

12   calculated act of rage for his viewing audience.  So

13   -- and I note as Plaintiffs' Counsel pointed out,

14   that Alex Jones was the one who publically brought

15   the existence of the child pornography to light on

16   his Infowars show.

17        But putting that aside, putting aside whether it

18   was -- he was in a real rage or whether he was acting

19   out rage, it doesn't really matter for the purposes

20   of the discussion whether he was truly enraged or

21   not, because the 20-minute deliberate tirade and

22   harassment and intimidation against Attorney Mattei

23   and his firm is unacceptable and sanctionable.  And

24   the Court will sanction here.

25        So for all these reasons, the Court is denying

26   the Alex Jones defendants the opportunity to pursue

27   their special motions to dismiss and will award

54

1    attorney's fees upon further hearing and the filing

2    of affidavits regarding attorney's fees. I would

3    note that the attorney's fees will be related only to

4    the conduct relating to the child pornography issue

5    and not for the discovery failures.

6        At this point, I decline to default the Alex

7    Jones defendants, but I will -- I don't know how

8    clearly I can say this. As this case progresses, and

9    we will get today before you leave a trial date in

10    the case now and a scheduling order. As the

11    discovery in this case progresses, if there is

12    continued obfuscation and delay and tactics like I've

13    seen up to this point, I will not hesitate after a

14    hearing and an opportunity to be heard to default the

15    Alex Jones defendants if they from this point forward

16    continue with their behavior with respect to

17    discovery.

18        So I'm going to call other matters now. I'm

19    going to ask that you -- that there not be any

20    conversations in the courtroom because I do have

21    other matters to call. I'm going to ask Counsel to

22    work on a scheduling order, pick a trial date. I am

23    going to need to see it before you leave. So if you

24    could maybe do that in another room, and then I'll

25    come back on the record for that.

26    **(THE COURT PROCEEDED WITH OTHER MATTERS AND**

27    **RETURNED WITH THE FOLLOWING)**

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
312 of 380

55

1          THE COURT:  Were you able to complete a

2    scheduling order and pick a trial date?

3          ATTY. MATTEI:  Yes, Your Honor, we have.  The

4    completed scheduling order here is signed by Counsel

5    --

6          THE COURT:  Can I take a --

7          ATTY. MATTEI:  -- with a proposed trial date of

8    November, 2020.

9          THE COURT:  Okay.  Can I take a look at it?  Do

10   you mind?

11         ATTY. MATTEI:  Yes.

12         THE COURT:  Thank you very much.  What about

13   summary judgment motions?

14         ATTY. MATTEI:  Your Honor, you'll note that we

15   left that blank because certain defendants in the

16   case still have their Anti-SLAPP motion pending.  And

17   so we thought it best to leave that date open at

18   least for now.  Attorney Brown and Attorney Jakiela

19   obviously both want to reserve their right, if

20   necessary, to file a motion for summary judgment.

21   But because they still have motions to dismiss

22   pending, the timing of that was uncertain.

23         THE COURT:  All right.  And the Court Officer in

24   Waterbury is on vacation this week anyway.  So I'm

25   not -- unlike Bridgeport where we can put 20 cases

26   down for trial in the same day, I'm not sure that

27   they'll be able to accommodate this exact trial date.

22-01023-tmd  Doc#1-16  Filed 04/18/22  Entered 04/18/22 14:16:53  Exhibit B contd. Pg
313 of 380

56

1          So I'll give this over to him.  At some point, we're

2     going to need summary judgment deadlines, though,

3     because what I can't have is the summary judgments

4     argued, you know, two weeks before the trial date.  I

5     definitely want the 120 days.

6          ATTY. MATTEI:  Correct, Your Honor.

7          THE COURT:  Okay.  Anything else today?

8          ATTY. MATTEI:  No.  Thank you very much, Your

9     Honor.

10          ATTY. REILAND:  No, Your Honor.

11          THE COURT:  Thank you, Counsel.

12

13                         * * * * * *

14                   **(END OF TRANSCRIPT)**

15

16

17

18

19

20

21

22

23

24

25

26

27

```
NO:  UWY-CV18-6046437 S          :  SUPERIOR COURT
SHERLACH, WILLIAM                :  JUDICIAL DISTRICT
                                    OF FAIRFIELD
v.                               :  AT BRIDGEPORT, CONNECTICUT
JONES, ALEX, ET AL.              :  JUNE 18, 2019
```

```
NO:  UWY-CV18-6046438 S          :  SUPERIOR COURT
LAFFERTY, ERICA, ET AL.          :  JUDICIAL DISTRICT
                                    OF FAIRFIELD
v.                               :  AT BRIDGEPORT, CONNECTICUT
JONES, ALEX EMRIC, ET AL.        :  JUNE 18, 2019
```

```
NO:  UWY-CV18-6046436 S          :  SUPERIOR COURT
SHERLACH, WILLIAM, ET AL.        :  JUDICIAL DISTRICT
                                    OF FAIRFIELD
v.                               :  AT BRIDGEPORT, CONNECTICUT
JONES, ALEX EMRIC, ET AL.        :  JUNE 18, 2019
```

C E R T I F I C A T I O N

I hereby certify the foregoing pages are a true and

correct transcription of the audio recording of the above-

referenced case, heard in Superior Court, Judicial District of

Fairfield, at Bridgeport, Connecticut, before the Honorable

Barbara N. Bellis, Judge, on the 18th day of June, 2019.

Dated this 19th day of June, 2019, in Bridgeport,

Connecticut.

_____
Colleen Birney
Court Recording Monitor

| | |
|---|---|
| NO. X06-UWY-CV-18-6046436 S  : | SUPERIOR COURT |
| ERICA LAFFERTY, ET AL : | COMPLEX LITIGATION DOCKET |
| V. : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL : | OCTOBER 19, 2021 |
| NO. X06-UWY-CV-18-6046437 S   : | SUPERIOR COURT |
| WILLIAM SHERLACH : | COMPLEX LITIGATION DOCKET |
| V. : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL : | OCTOBER 19, 2021 |
| NO. X06-UWY-CV-18-6046438 S   : | SUPERIOR COURT |
| WILLIAM SHERLACH, ET AL : | COMPLEX LITIGATION DOCKET |
| V. : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL : | OCTOBER 19, 2021 |

## MOTION TO RECUSE JUDGE BELLIS

Defendants Alex Jones, Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC, through their counsel, move under Practice Book §§ 1-22, 1-23, and Conn. Gen. Stat. § 51-183 to disqualify Judge Barbara Bellis from hearing this case. The record in the above-captioned matters is rife with the appearance of judicial impropriety. The evolution of the case, including a threat made against Judge Bellis by an unknown third-party that the plaintiffs somehow attribute to Defendants, and the series of subsequent comments and rulings, would lead a reasonable person knowing all the circumstances to question Judge Bellis's impartiality.

Judge Bellis has employed a shifting standard for what constitutes specific, limited, and relevant discovery permitted under Conn. Gen. Stat. §52-196 and the Practice Book. This left Defendants victim to the plaintiffs' tireless campaign to expand the scope of the Court's discovery orders and to attempt to win on technicalities.

A reasonable person observing Defendants scramble to satisfy the shifting discovery standard and arbitrary threshold requirements for the special motion to dismiss and subsequent discovery, only to be ambushed by judicial whim and caprice, would question Judge Bellis's

1

impartiality in this proceeding. Although the decision terminating the anti-SLAPP motion was upheld by the Connecticut Supreme Court, it must be viewed as part of a course of conduct by a jurist who wound up presiding over multiple Sandy Hook cases involving the same nominal plaintiffs and their lawfirm.

Following the imposition of this sanction, Judge Bellis's rulings continued to demonstrate a high degree of antagonism towards Defendants. For example, at the first status conference following the remand of this action, Judge Bellis reminded counsel for Defendants that the Court referred Defendants' other counsel to the grievance committee (having previously given a pass to Plaintiffs' counsel's unethical pre-trial publicity). Despite being corrected factually, Judge Bellis erroneously claimed that Defendants may have violated Rule 3.3 of the Rules of Professional Conduct, "Candor Towards the Tribunal." The handling of this issue creates the appearance that Judge Bellis has prejudged the truthfulness of Defendants and their counsel. The insidious nature of this prejudice now pervades all aspects of this case, creating the appearance of impropriety that would cause a reasonable person to question Judge Bellis's impartiality. Notably, despite placing such weight on Rule 3.3, Judge Bellis, when apprised of a clear violation of that rule by Plaintiffs' counsel newly stated she did not want the parties to advise of violations. And, oddly, sanctions orders have issued against all moving defendants, even when several of them had nothing to do with the alleged misconduct. A reasonable person would believe Judge Bellis has taken sides.

## FACTS

In support of this motion, the undersigned counsel for Defendants submits attached herewith his affidavit setting forth the facts that show grounds for disqualification. The record in this matter is complex and varied, spanning multiple counsel and, at times, weekly status hearings. The attached affidavit sets out the evolution of issues creating the appearance of judicial impropriety. That chronology will not be rehashed here, but summarized, in an effort to prevent Defendants from

2

becoming the metaphorical frog boiling in a vat of impropriety.

## I.    Alleged Third-Party Threat Against Judge Bellis

On 21 June 2019 Judge Bellis issued order DN271. That order indicated that the Connecticut

State Police notified the court of an ongoing federal investigation related to threatening comments

made by unknown third-party/ies about Judge Bellis. The threats were posted to the comments

section of a news article published on Defendant Infowars website. Affidavit, para. 16a. The ordered

contained no amplifying information. *Id*. The order indicated that Judge Bellis was not aware of any

further information regarding the threat and therefore did not plan to take any further action. *Id*.

While there is no reason to doubt that Judge Bellis received limited information from the

Connecticut State Police about the ongoing federal investigation, the assertion that the court was

not aware of any further information regarding the "threat" is inaccurate.

Since its inception, this matter is replete with plaintiffs' accusations that every time

Defendants make a statement about any matter in public discourse it is in fact a "call to arms"

designed to "activate" a network of conspiracy theorists. *See* Compl. ¶¶7, 12-16, 40-57. For

example, plaintiffs' complaint and subsequent arguments on the record refer *ad nauseum* to the

actions of a third-party, not related to Defendants. The story goes that, after Defendants ran a news

report on the infamous "Pizzagate" conspiracy theory, a third-party traveled to Washington DC and

fired 3 rounds from a rifle into a pizzeria. Accordingly, plaintiffs argue, Defendants are responsible

for the independent actions of this third-party. *Palsgraf* aside, plaintiffs trot out this *post hoc* fallacy

anytime Defendants exercise their First Amendment right to express an opinion. *See e.g.*, Affidavit,

para. 15c.

The threat Judge Bellis referenced in order DN271, and its ramifications for this case, lay

dormant until the plaintiffs referenced it in a pleading dated 19 August 2019 before the Connecticut

Supreme Court. That pleading addressed whether Judge Bellis abused her discretion by ordering a

3

sanction against Defendants for statements made during a broadcast that the plaintiffs argued were a "true threat" against plaintiffs' counsel Chris Mattei. That sanction precluded Defendants' ability to take a special interest appeal under Connecticut's anti-SLAPP statute, Conn. Gen. Stat. § 52-196a. Affidavit, para. 15a-j. Prior to this filing, neither party addressed the issue of the third-party's threat to Judge Bellis. Affidavit, para. 16a.

The plaintiffs' reference to the Judge Bellis threat consists of a single sentence and accompanying footnote. Plaintiff's claim, "Jones' audience threatened the judge in this case after the sanctions order issued and Jones turned his fire on her." *Id*. The accompanying footnote went on to claim:

> [a]fter the trial court sanctioned him, Jones posted a broadcast titled "Judicial Tyranny? Judge Says Criticism Of Democrat Lawyers Forbidden." Shortly after that broadcast was posted, the court filed a notice stating that it had been "contacted by the Connecticut State Police who were reportedly contacted by the FBI regarding threats against the undersigned made by individuals on the defendant Infowars website." Jones then apparently removed the broadcast; it is no longer accessible via the Infowars website.

*Id*. at n.22. This text appears in section III.C of the plaintiffs' brief[1]. Section III addressed whether the trial court abused its discretion in considering the broadcast by Alex Jones as a basis for the above-mentioned sanction. Here, plaintiffs argued that the speech in question was a true and immediate threat of violence, a call to his audience to engage in violent acts directed at plaintiffs' counsel.

In their pleading, the plaintiffs provides a more robust version of the argument that they presented orally during the 18 June 2019 hearing regarding sanctions,

> Jones' audience has a history; he knows it, and so does anyone who reads the news. The trial court recognized that Jones' broadcast was meant to activate his audience: "it was an intentional, calculated act of rage for his viewing audience.". . . That audience has threatened and stalked Sandy Hook family members and acted on

---

[1] The entirety of this section can be found at *Lafferty v. Jones*, Conn. Supreme Court Records & Briefs, First Term, 2019, Plaintiffs' Brief pp. 28-33.

4

> Jones' promotion of Pizzagate to shoot up the Comet Ping Pong pizza restaurant in Washington D.C. Jones tapped into precisely that history. He called on "the patriots that are left, and 4chan and 8chan, and anonymous," and he summoned an attack: "I summon all of it against the enemy." That Jones' threat of violence says it is to be effectuated by others makes it no less a threat.

*Lafferty v. Jones*, Conn. Supreme Court Records & Briefs, First Term, 2019, Plaintiffs' Brief p. 30.

(Citations omitted). Plaintiffs' pleading continues by citing to a "recently issued" FBI "Field

Intelligence Bulletin." This bulletin concludes generally that broadcasts and news reports that "[are]

anti-government, [are] identity based, and [pertain to] fringe political conspiracy theories *very likely*

motivate some domestic extremists, wholly or in part, to commit criminal and sometimes violent

activity." *Id.* (emphasis added). Plaintiffs' pleadings note that the term "'Very likely' is a term of

art used by the FBI to mean an 80-95% chance." *Id.* at 31. The pleading goes on to claim that

broadcasts and news reports of this type,

> very likely encourage the targeting of specific people, places, and organizations, thereby increasing the risk of extremist violence against such targets.... This targeting occurs when promoters of conspiracy theories, claiming to act as 'researchers' or 'investigators,' single out people, businesses, or groups which they falsely accuse of being involved in the imagined scheme. These targets are then subjected to harassment campaigns and threats by supporters of the theory, and become vulnerable to violence or other dangerous acts.

*Id.*

It is in this context and against this backdrop that the plaintiffs insert the above quoted

reference to order DN271. The not-so-subtle implication of the *post hoc* fallacy employed in the

plaintiffs' pleadings is clear. Just as the plaintiffs allege the broadcast mentioning Attorney Mattei

was a call to Alex Jones' audience to engage in violent acts against plaintiffs' counsel, so too are

the plaintiffs alleging that the news article mentioning Judge Bellis was a call to incite violence

against the court. Plaintiffs conclude, without providing evidence, that "Jones turned his fire on

[Judge Bellis]" insinuating Defendants were somehow responsible for getting his audience to

"threaten[] the judge... after the sanctions order issued." Affidavit, para. 16a.

Judge Bellis may have been careful to author order DN271 in a seemingly neutral and detached way—the court was made aware of an FBI investigation "regarding threats against the undersigned by individuals on the defendant Infowars website." Affidavit, para. 16a. However, the plaintiffs' accusation removes any shroud of neutrality, raising the specter that Alex Jones had a hand in the threat made against Judge Bellis. Despite offering no evidence to support this argument, from the record it appears that Judge Bellis relied on it, at least in part, to conclude that broadcast was "indefensible, unconscionable, despicable, and possibly criminal behavior." Affidavit, para. 15jiii1.

## II.     Evolution Of Discovery Compliance, Sanctions, and Defendants' Opportunity to Pursue their Special Motion to Dismiss

Conn. Gen. Stat. §52-196 protects defendants facing certain types of lawsuits by allowing them an opportunity to file a special motion to dismiss. While the special motion to dismiss is pending, all discovery is stayed, unless the court "order[s] specified and limited discovery relevant to the special motion to dismiss." Conn. Gen. Stat. §52-196(d),  Initially, Judge Bellis left the parties to work discovery issues out themselves. Unremarkably, plaintiffs sought unlimited discovery and Defendants the opposite. Affidavit, para. 4. Unable to reach an agreement, in order DN148, Judge Bellis overruled all but two of Defendants' discovery objections without further explanation. Although interlocutory appeal of this order was not permitted, that denial is not an appellate endorsement of the breadth of discovery permitted.  Subsequently, Defendants agreed to comply with a discovery deadline of 23 February 2019 at the risk of facing an even shorter deadline. *Id.* Defendants sought an extension due to an inability to meet that deadline. Plaintiffs immediately sought sanctions in the form of an order precluding Defendants from having their special motion to dismiss heard.

From 13 March to 10 April 2019, Defendants' inability to comply with the broad discovery

6

order was the sole basis for a potential sanction precluding the special motion to dismiss. Affidavit,

para. 6-8. On 13 March, Defendants found themselves without counsel familiar with the record and

pleadings, due in part to the surprising denial of a *pro hac vice* application of Defendants' original

counsel of choice, a denial that curiously only occurred in this and the Texas Sandy Hook cases.

Affidavit, para. 6ai. Although that attorney had been the subject of then-recent discipline, none of

it was for litigation conduct, and numerous courts (including Hon. Daniel Klau in Connecticut) have

seen fit to admit him *pro hac vice* or as an outright member of the bar since.[2]

By 22 March, Pattis & Smith, LLC was sole counsel for Defendants and attempting to

comply with discovery. At that time, Defendants were still facing the threat of the sanction. Judge

Bellis decided to stay her decision on the preclusion sanction, based on representations made by

Defendants regarding (1) the impact changes in prior counsel had on discovery compliance and (2)

a plan for getting in compliance in short order. Affidavit, para. 7c-d.

By 26 March, Defendants made substantial steps in complying with discovery. Affidavit,

para. 8. Judge Bellis, recognizing this, stated the court would take a week to decide the sanctions

issue and that any material produced prior to that decision would be considered as to compliance.

Affidavit, para. 8c. Opposing counsel affirmatively agreed with this course of action. Affidavit,

para. 8d.

By 10 April, with regard to the sanction, Judge Bellis stated "the issue at this point for me

is whether there's been substantial good faith compliance or not such that the defendant should be

allowed to pursue their special motion to dismiss." Affidavit, para. 9a. "I'm not looking at this point

to go through each one individually and address whether—whether every single document has been

---

[2] The only other judge to deny him *pro hac vice* admission is the Texas judge presiding over similar Sandy Hook-related matters, despite the Texas Supreme Court having previously permitted him to appear *pro hac vice*. That only the trial court judges overseeing Sandy Hook matters would deprive Defendants of their counsel of choice plays into the reasonable person believing those judges are not impartial.

produced. . . I'm pushed at this point trying to figure out whether there's been finally an—an effort at meeting the discovery obligations." *Id.* At this hearing, Judge Bellis stated multiple times that Defendants substantially complied with the discovery orders. Affidavit, para. 9c-e. In fact, Judge Bellis expressed this view so strongly that the plaintiffs' conceded "it's apparent from the Court's comments that the Court is satisfied there is at least substantial compliance." Affidavit, para. 9e.

Despite clearly finding Defendants in substantial compliance with the ordered discovery, Judge Bellis did not address the sanction issue at that time. Rather, plaintiffs raised an issue involving the signature on a discovery related affidavit. Affidavit, para. 9f. Defendants informed the court that an affidavit bearing Alex Jones signature and indicating that signature was made in New Haven was, in fact not signed by Alex Jones. Instead, it was signed in New Haven by an authorized representative after speaking with Alex Jones telephonically. Affidavit, para. 9fii. Thereupon, she ordered a separate hearing to resolve this issue and *sua sponte* incorporated this issue as a potential second basis for a sanction preventing Defendants from having their special motion to dismiss heard:

> I am going to have a hearing on that affidavit issue. And I don't think there's any harm in proceeding. I mean, I think this is *substantial compliance* but until I deal with that affidavit issue, I'm not — I'm not going to rule on — I'll take it under advisement; the motion for reconsideration and the motion for sanctions. But I'm going to have the hearing on the affidavit first.

Affidavit, para. 9fvii. (emphasis added).

By the following appearance, the attorney for Defendants already self-referred the matter to the Grievance Committee and filed a corrected affidavit. Affidavit, para. 10b. Despite this, Judge Bellis made a second referral and then sought the plaintiffs' input on what sanctions should enter against Defendants. Affidavit, para. 10c. Plaintiffs' reaction captured their surprise at Judge Bellis's inquiry,

> we came here today believing that this issue was one between Counsel and the

> Court, frankly. . . we just don't know enough about the circumstances under which
> that affidavit was made to know whether Mr. Jones's role. . . based on what we
> know right now, we weren't prepared to argue that.

Affidavit, para. 10d. Judge Bellis prodded the plaintiffs to take a position. Affidavit, para. 10e. The

plaintiffs declined and then Judge Bellis ruled "[a]ll right. Then in light of that, I am satisfied with

not taking any further action." Affidavit, para. 10e. Ultimately, on 20 December 2019, the Grievance

Committee dismissed the complaint related to the affidavit issue, finding it to be a mistake that did

not rise to the level of an ethical violation or violate the Rules of Professional Responsibility.

Affidavit, para. 17.

> At the next hearing, on 7 May, Judge Bellis began by stating:

> I do want to just state for the record what is probably clear to everyone at this point.
> I had said a few times that I thought that there was substantial enough compliance.
> So in effect I have really extended --had extended the deadlines for the defendant
> to comply. So that would be my ruling, just for the record, on the issue of the
> additional time to comply. I understand it's not necessarily 100 percent complete
> compliance, but I think *I've seen enough of it at this point to afford the defendants
> the opportunity to pursue their special motion to dismiss.*

Affidavit, para. 11a. (emphasis added). Plaintiffs continued to raise discovery issues, the majority

of which did not affect Judge Bellis's decision to allow Defendants to pursue the special motion to

dismiss. Affidavit, para. 11b. However, this changed when plaintiffs represented to Judge Bellis

that Defendants had not produced Alex Jones' signed interrogatory responses. Judge Bellis, without

fully comprehending that the plaintiffs were referring to an early draft of signed interrogatory

responses, immediately responded by saying "this is news to me. So here's what I would say on that.

*I now retract my prior comments that there has been substantial compliance, good-faith, substantial

compliance*." Affidavit, para. 11d. (emphasis added). Despite ultimately holding that the plaintiffs

were not entitled to discovery of the draft interrogatory responses, Judge Bellis took no steps to

clarify what ruling stood with regard to whether there had been substantial enough compliance to

afford the defendants the opportunity to pursue their special motion to dismiss. Affidavit, para. 11e.

The confusion arising from Judge Bellis's contradictory statements at the 7 May hearing appeared to be resolved by 5 June. At that hearing, plaintiffs continued to raise discovery compliance issues. Affidavit, para. 13a-d. In total, these issues covered 46 transcript pages. Affidavit, para.13f. At no time did Judge Bellis indicate that any of the issues raised demonstrated that Defendants were not in substantial compliance with the discovery ordered. For example, the plaintiffs took issue with deposition testimony regarding the manner in which Defendants searched for "business marketing plans." In response, Judge Bellis ruled that

> unless you have some, you know, a good faith basis and some evidence that in fact the documents do exist, I think that you have to be satisfied with the answers under oath. And no such documents exist is a proper response. . . *This is just full and fair compliance*. And sometimes the answer is going to be it doesn't exist.

Affidavit, para. 13d-e. (emphasis added).

With discovery compliance apparently settled, and believing the next step was litigating the special motion to dismiss, Defendants, requested permission from the court to obtain discovery from the plaintiffs, stating "in our motions we suggested we'd like permission to do a little bit of discovery ourselves." Affidavit, para. 13f. Judge Bellis immediately responded "I'll take that up on the papers" and attempted to silence Defendants. Affidavit, para. 13g-h. When Defendants objected, Judge Bellis terminated the hearing. *Id*.

Following the 5 June hearing, plaintiffs' counsel informed Defendants that they had been the victim of 12 distinct acts of cyber-crime. Affidavit, para. 14e. An unidentified third-party or parties sent emails to Defendants with attachments hiding child pornography. Affidavit, para. 14b-d. The child pornography was embedded in email metadata demanded by the plaintiffs and ordered to be produced within 14 days. Affidavit, para. 14a. Initially, only a single image was located after an "electronic storage information expert" retained by the plaintiffs scoured the metadata of approximately 58,000 emails for over 15 days. Affidavit, para. 14a-b. Based on this, plaintiffs then

10

provided the data to the FBI, who immediately spent an additional 6 days combing through the

metadata, finding 11 additional hidden images of child pornography. Affidavit, para. 14c-d. Once

the FBI and DOJ concluded their investigation, they informed plaintiffs' counsel of the results and

then plaintiffs' counsel contacted counsel for Defendants. Affidavit, para. 14e.

When Defendants discovered a third-party or parties attempted to frame them for possession

of child pornography they were understandably enraged. Affidavit, para. 14g-h. The manner in

which they were made aware of this information was equally enraging. *Id*. Being told by a non-law

enforcement entity that you are the victim of 12 distinct acts of cyber-crime involving a child

pornography email scam, ostensibly to frame and extort you, is unorthodox as the FBI/DOJ have a

Victim Services Division specifically dedicated to liaising with crime victims. Affidavit, para. 14g.

While all this information was coalescing in his mind, Alex Jones raised these issues in an

emotionally charged stream of consciousness broadcast on 14 June 2019. In this broadcast, Alex

Jones expressed his opinion that the perpetrator(s) of these cyber-attacks should be brought to

justice and that Attorney Mattei's involvement in this entire course of events was suspicious.

Affidavit, para. 14h. The following day, on 15 June 2019, Alex Jones issued another broadcast,

apologizing for his emotional response and indicating that the 14 June 2019 broadcast should not

be construed as suggesting that plaintiffs' attorneys were involved in any criminal activity related

to the discovery of child pornography in the metadata. Affidavit, para. 14i.

At the 18 June hearing, plaintiffs attempted to capitalize on these broadcasts, requesting the

court review a transcript of the 14 June Broadcast. Affidavit, para. 15a. At that hearing the plaintiffs

indicated that they intended to file a written brief requesting a hearing regarding what, if any,

sanctions were appropriate. *Id*. Judge Bellis declined the plaintiffs request to (1) brief the issue and

(2) have a meaningful hearing, indicating that the court would rule that day on whether sanctions

should enter against Defendants because of the broadcast. Affidavit, para. 15b.

11

Plaintiffs, citing no caselaw and explicitly choosing to not discuss the actual content of the broadcast, argued sanctions were appropriate based on (1) "Pizzagate;" (2) the prior issues with discovery compliance; and (3) their assertion that the apology during the 15 June 2019 broadcast was insufficient. Affidavit, para. 15c. Judge Bellis then turned to Defendants, interrupting their defense counsel two sentences into their argument. Affidavit, para. 15d. Judge Bellis challenged Defendants' characterization of both the apology and the initial broadcasts. Affidavit, para. 15d-e. Counsel for Defendants attempted to respond to this challenge, only to be told "[w]ell, but then you need — then you would want to put on evidence in that regard, because there's no evidence. The evidence before me are the broadcasts that you submitted. . . this is unchartered territory, Counsel. . . and despite my research, *I couldn't find a case that came close*." Affidavit, para. 15f. (emphasis added). The Court was already engaged in research without notice or affording Defendants the opportunity to do the same.

Judge Bellis then began a quasi-cross examination of counsel for Defendants, creating the appearance that the court was attempting to justify a predetermined outcome. Affidavit, para. 15g. Following additional argument, but without an evidentiary hearing or a meaningful opportunity to be heard, Judge Bellis denied Defendants the opportunity to pursue their special motion to dismiss. Affidavit, para. 15j. In doing so she held the 14 June 2019 broadcast was "indefensible, unconscionable, despicable, and possibly criminal behavior." Affidavit, para. 15jiii1. Judge Bellis went on to "reject Defendants' claim that Alex Jones was enraged. . . find[ing] based upon a review of the broadcast clips that it was an intentional, calculated act of rage for his viewing audience." Judge Bellis made this adverse ruling despite having admonished counsel for Defendants earlier that an evidentiary hearing was required to characterize the broadcasts. Affidavit, para. 15jiii3. Although the decisions of Judge Bellis were affirmed on appeal, her actions to that point nonetheless created the appearance of bias.

12

### III.    The Perception of Prejudice Created By Judge Bellis's Conduct Towards Defendants Following The Appeal Of The Sanction Order

Defendants appealed this sanction to the State of Connecticut Supreme Court and, then, the United States Supreme Court. Affidavit, para. 18. Ultimately the appeal was not successful and, after a second attempt at removal, Defendants returned to Judge Bellis's courtroom on 14 April 2021. Affidavit, para. 18c. Immediately upon returning from the second removal, which had been based upon Plaintiffs' strategic dismissal of the one Connecticut-resident defendant, whose sole purpose as a defendant was to thwart removal, Judge Bellis demonstrated a bias against Defendants—admonishing their counsel for not immediately apprising the Court of a United States Supreme Court order denying a stay that was received when sabbath observance was beginning. Affidavit, para. 19. Judge Bellis indicated that she viewed this as a possible violation of Rule 3.3 of the Rules of Professional Conduct, "Candor Towards the Tribunal". *Id.*

The filing at issue was filed on 6 November 2020. *Id.* In that filing, counsel for Defendants cited the fact "that there was an application for a stay filed with the U.S. Supreme Court" as one of six bases in support of an objection. *Id.* The Supreme Court docket indicates that the application for a stay referenced in that filing was denied on November 5, 2020. However, counsel for Defendants did not receive notice of the denial until 3:57 p.m. on Friday, November 6, 2020. Affidavit, para. 19c. Counsel for Defendants became aware of this notice after submitting the filing and that awareness occurred after sabbath observance, which had begun minutes after the e-mailed denial was sent to Attorney Randazza, who could not apprise the Court himself because he had been denied the ability to appear. *Id.* On the next business day, Monday November 9, 2020, the plaintiffs informed the Court of the denial. *Id.* Judge Bellis acknowledged subsequently learning that the request for a stay was no longer pending. Affidavit, para. 19d. At a hearing on the issue, Judge Bellis insinuated that counsel for Defendants violated his ethical responsibility to be candid with

13

the court:

> with respect to the app -- the application for the stay with the US Supreme Court, what you filed with the Court on that day represented something that, in fact, was not accurate and I -- I would say it would have been incumbent upon you to correct what you had filed. I did learn subsequently that it wasn't correct, but I just think just as we move forward, if it's your or -- or even an innocent -- and I'm not saying it was anything but an innocent mistake, but it would be incumbent upon you to just correct that mistake because I don't want to have continued problems moving forward.

*Id.* Once Plaintiffs beat Defendants to notifying the Court of the denial of the stay, there was nothing for Defendants to do, yet Judge Bellis nonetheless chose to admonish counsel.

Judge Bellis's responses to putative ethical violations have been one-sided, as seen by her subsequent reaction to counsel for Defendants bringing similar and far more disruptive conduct by counsel for plaintiffs to the Court's attention. Affidavit, para. 20. The conduct at issue resulted in the court losing subject matter jurisdiction over certain claims and voided all orders entered regarding certain plaintiffs for a period of more than two years. Affidavit, para. 20b. This conduct had a substantial impact on the above captioned matters that far exceeded the issue that the Court previously admonished counsel for Defendants over. However, despite this, Judge Bellis did not admonish counsel for Plaintiffs. Rather, counsel for Defendants was again admonished by the Court for referencing the Rules of Professional Responsibility in this context. Ultimately, the Court indicated that referencing the Rules of Professional Conduct in filings before the Court could subject counsel to summary disciplinary orders by the Court. The Court indicated that it would rely on Practice Book § 2-45 to bypass the grievance committee which had previously dismissed Judge Bellis's earlier referral of counsel for Defendants regarding the affidavit issue. Affidavit, para. 20c.

This hostility to Defendants carried over into subsequent orders by the Court. At a deposition of a plaintiff in this case, counsel for the plaintiffs attempted to invoke the protections of a stipulated protective order (PO). Affidavit, para. 21b. That protective order permits counsel to designate all or part of a deposition as confidential based upon "a *good faith determination by counsel* so

14

designating to the Court *that there is good cause for the material so designated* to receive the protections of" the PO. DN. 185.00 at 2-3. (emphasis added). At the start of the deposition a plaintiffs' attorney attempted to designate the entire deposition "Highly Confidential – Attorneys Eyes Only." Affidavit, para. 21b. Plaintiffs concede that this designation occurred "at the beginning of the deposition," and therefore without any knowledge of the actual information that was ultimately elicited. *Id.* Accordingly, plaintiffs' counsel failed to satisfy the PO's good faith determination threshold requirement. Affidavit, para. 21c. Because the PO was not properly invoked, counsel for Defendants believed there was no impediment to using the information disclosed during the deposition, especially information that did not fit any of the categories of information permitted to be designated confidential. Affidavit, para. 21d. Accordingly, prior to the conclusion of the deposition, and based on the information elicited, counsel for the defendants filed a motion for a commission to take the deposition of Hillary Clinton without naming the deponent. *Id.*

Plaintiffs filed a motion requesting sanctions for a purported violation of the PO. Affidavit, para. 21b. In response, Defendants argued that no violation occurred because plaintiffs failed to meet the PO's good faith determination threshold requirement. Affidavit, para. 21. In its order responding to the request for sanctions, the Court ignored Defendants' threshold requirement argument. *Id.* Instead, Judge Bellis recast Defendants' argument as an attack on whether there was good cause to issue the stipulated PO itself, characterized this argument as "frightening," and concluded that Defendants' disclosure of the information at issue was "willful misconduct." *Id.* However, Defendants made no such argument. *Id.* Even if counsel for Defendants technically violated the confidentiality order, sanctions were never appropriate where that violation was based on a good-faith view of the effect of that order and otherwise ensuring that no real confidential information (not even the deponent's name) was being revealed.

15

Judge Bellis has since sanctioned Defendants twice more, with another sanctions motion pending and the actual sanction to be determined. On August 6, 2021 (DN 428.10 & 428.11), the Court sanctioned Defendants for not having produced a "subsidiary ledger" for their accounts. Judge Bellis disregarded the fact that Defendants reasonably relied on their CPA, who provided a declaration in this case, that Free Speech Systems (the only defendant to whom the request was actually directed) does not use subsidiary ledgers. Sanctions were issued against Mr. Jones and all of his companies, even though, at worst, only Free Speech Systems was in violation of the order requiring production of subsidiary ledgers. It is one thing to compel Free Speech Systems to produce something it did not think it actually had based on a good faith interpretation of the Court's order, and it is another thing entirely to sanction four other defendants and to give no reason why an expert CPA's opinion is given no weight, finding the expert "not credible" without taking any live testimony or Plaintiffs' expert having been subjected to cross-examination. Neither did Judge Bellis explain how Plaintiffs were prejudiced when they were given an opportunity to redepose the bookkeeper (but have made little effort to do so since).

Then, on September 30, 2021 (DN 450.20 & 450.21), Judge Bellis sanctioned Defendants following a motion by Plaintiffs seeking sanctions for alleged non-compliance with their discovery requests for Google Analytics and social media analytics. In actuality, those requests were fulfilled in a timely manner. Instead of sanctioning Defendants on the bases proffered by Plaintiffs, Judge Bellis, *sua sponte*, decided that Practice Book § 10-12(a) was violated because the documents were not served on co-defendants who had not sought such discovery. Defendants are unable to find any cases in which a Connecticut court has ruled that Section 10-12(a) means that all produced documents in discovery are "papers" required to be served on all parties, not merely the requesting party. In Federal practice, the rules "only require[] the responding party to produce the requested documents to the requesting party or its representative, not to all parties in the litigation." *Zurich*

16

*Am. Ins. Co. v. BASF Corp.*, 2011 U.S. Dist. LEXIS 162697 at *8 (S.D. Fla. Nov. 4, 2011)(emphasis

in original). Perhaps the Court is right that the Practice Book has a different requirement, but that

sanctions would issue, in the absence of a clear and intentional violation, makes Judge Bellis appear

biased.

Another sanctions motion is pending, with Plaintiffs absurdly claiming that Defendants did

not produce their real trial balances. (DN 457.00). First, the request was only directed to Free

Speech Systems, not all Defendants. Second, the real trial balances were produced—Plaintiffs'

apparent complaint is that they were not given *incorrect* trial balances. If the Court awards sanctions

on this motion, the public will have no other view of Judge Bellis than her being on the Plaintiffs'

team. And, the fact that the plaintiffs are now trying to liquidate all of the above sanctions, to obtain

a default, shows how this whole process is being abused.

## **ARGUMENT**

The foregoing is just a sampling of the perception of prejudice created by Judge Bellis's

conduct in this matter. This prejudice pervades all aspects of this case creating an appearance of

impropriety that would cause a reasonable person to question Judge Bellis's impartiality. Practice

Book §§ 1-22, 1-23 and Conn. Gen. Stat. § 51-183 provide that any party may, by motion and

affidavit, establish that a judge currently presiding over a matter is disqualified from acting because

of an appearance of judicial impropriety. A claim of an appearance of impropriety under Canon 1

Rule 1.2 of the Connecticut Code of Judicial Conduct is fundamentally different from a claim of

actual bias. *Abington Ltd. Pshp. v. Heublein*, 246 Conn. 815, 819 (1998).

> The Code of Judicial Conduct requires a judge to disqualify himself or herself in a
> proceeding in which the judge's impartiality might reasonably be questioned. The
> reasonableness standard is an objective one. Thus, the question is not only whether
> the particular judge is, in fact, impartial but *whether a reasonable person would
> question the judge's impartiality on the basis of all the circumstances. . . Even in
> the absence of actual bias, a judge must disqualify h[er]self in any proceeding in
> which h[er] impartiality might reasonably be questioned*, because the appearance

17

and the existence of impartiality are both essential elements of a fair exercise of judicial authority.

*State v. Webb*, 238 Conn. 389, 460-61, *aff'd after remand*, 252 Conn. 128, *cert. denied*, 531 U.S. 835 (2000) (citations omitted; internal quotation marks omitted; emphasis added). "The question is not whether the judge is impartial in fact." *Heublein*, at 820. "To prevail on [a] claim of a violation of this canon, the [moving party] need not show actual bias. The [moving party] has met its burden if it can prove that the conduct in question gave rise to a reasonable appearance of impropriety." *Id.* at 819-21.

## I.    A Reasonable Person Would Question the Court's Impartiality

A reasonable person would question the court's impartiality based on (1) the alleged third-party threat against the court; (2) Judge Bellis's sanctioning Defendants following the 14 June broadcast; (3) Judge Bellis's indicating the Court would use Practice Book §2-45 to bypass the grievance committee and subject Counsel for Defendants to summary disciplinary orders; and (4) the perception of prejudice created by Judge Bellis's conduct towards Defendants following the appeal of the sanction order.

In addition, a reasonable person would question Judge Bellis's impartiality based on other matters over which she has presided. Prior to these matters, Judge Bellis was the presiding jurist in *D'Avino, et al. v. Starks*, Case No. FBT-CV-15-6048108-S, which were the claims of various Sandy Hook decedents against the estate of Nancy Lanza. That matter, which was consolidated with eight other matters, included many of the same plaintiffs as in this case (nominally, though in fiduciary capacity), represented by the same firm. Similarly, Judge Bellis is the presiding jurist over *Soto, et al. v. Bushmster Firearms Int'l, LLC*, Case No. UWY-CV15-60500025-S, which is claims of various Sandy Hook decedents against the gun manufacturer and other parties. That matter, which is ongoing, also includes many of the same plaintiffs as in this case (again, nominally), represented

18

by the same firm. There is no reason for Judge Bellis to be the Sandy Hook judge, exposed to arguments and evidence in other cases that would tend to color any jurist's opinion of defendants accused of calling Sandy Hook a hoax.

Courts use an objective rather than a subjective standard in deciding whether there has been a violation of Canon 1 Rule 1.2. This objective standard is guided by "two well established propositions concerning the appearance of judicial impropriety." *Heublein*, at 822. "The first proposition is that the prevention of the appearance of impropriety is of vital importance to the judiciary and to the judicial process." *Id.* "The judiciary should be acutely aware that any action they take, whether on or off the bench, must be measured against exacting standards of scrutiny to the end that public perception of the integrity of the judiciary will be preserved." *Id.* at 823. "The duty to avoid creating an appearance of impropriety is one of taking reasonable precautions to avoid having a negative effect on the confidence of the thinking public in the administration of justice." *Id.* (internal quotation marks omitted.) The second proposition

> requires a sensitive evaluation of all the facts and circumstances in order to determine whether a failure to disqualify the judge was an abuse of sound judicial discretion. . . Judges who are asked to recuse themselves are reluctant to impugn their own standards. Likewise, judges sitting in review of others do not like to cast aspersions. . . Yet *drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard . . . into a demand for proof of actual impropriety.*

*Id.* at 823-24. (citations omitted; internal quotations omitted; emphasis added).

### a. Judge Bellis's Personal Involvement in this Matter via the Alleged Threat Against Her Created the Appearance of Impropriety

"It is [the trial judge's] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted. *State v. Echols*, 170 Conn. 11, 13 (1975), quoting *Glasser v. United States*, 315 U.S. 60, 82 (1942). In Abington Ltd. Pshp. v. Heublein, the

19

Connecticut Supreme Court held that after a judge performed an *ex parte* site visit to a property that was the subject of the matter before him, "a well-informed, thoughtful and objective observer reasonably could decide that there was. . . a significant risk of a judicial impropriety." *Heublein*, at 826. In that case, the trial judge's site visit personally involved him in the subject matter of the litigation before the court, however, the judge refused to recuse himself based "entirely on his determination that his *ex parte* site visit had not in fact caused him to be prejudiced in any way." *Id.* at 821, 824. The Connecticut Supreme Court reasoned that, "the record in the case contain[ed] persuasive evidence of an appearance of impropriety," and that the trial judge abused his discretion by failing to recuse himself. *Id.* at 824. The Supreme Court reasoned further that a "judge's lack of knowledge of a disqualifying circumstance does not eliminate the risk that h[er] impartiality might reasonably be questioned by other persons." *Heublein*, at 825.

Courts scrutinize judicial conduct from inception through a full and fair hearing on the merits to determine whether a party "received a fair trial. . . before an impartial court, and that the core danger of judicial vindictiveness has not been realized." *State v. Herbert*, 99 Conn. App. 63, 69 (2007). Here, Judge Bellis conduct is similar to the trial judge in Heublein, where the Connecticut Supreme Court held an objective observer could conclude there was a risk of judicial impropriety. In Heublein, the trial judge became personally involved with the subject matter of the litigation. In the instant matter, Defendants' speech is the subject matter of the entire litigation. The alleged third-party threat against Judge Bellis has drawn her, albeit unwillingly, into the subject matter of this litigation. If the only information before the court were the notification by the Connecticut State police of the FBI investigation, then the prejudice realized in Heublein might be absent here. However, that is not the case.

Plaintiffs' complaint and subsequent arguments on the record allege that when Defendants speak it is designed to activate his audience to take action against the subject of the speech. Plaintiffs

20

trot out an FBI "Field Intelligence Bulletin" of dubious reliability to claim that when Defendants speak, the subject of that speech is "very likely"—meaning an 80-95% chance—to be targeted by Defendants' audience. As proof of this plaintiffs point to "Pizzagate." Had Judge Bellis rejected this correlation implies causation argument, then again the risk of the perception of judicial impropriety found in <u>Heublein</u> might not be present.

Unfortunately, Judge Bellis did not reject this logical fallacy. Instead, she embraced it. Based on this argument, Judge Bellis found the 14 June broadcast to be a "calculated act of rage for his viewing audience," determining via a personal viewing of the broadcast that Alex Jones stated, "I'm going to kill," despite this phrase not appearing in any transcript before the court. Affidavit, para. 15jiii2. Moreover, Judge Bellis relied on this argument to characterize the broadcasts as "indefensible, unconscionable, despicable, and possibly criminal behavior." Affidavit, para. 15jiii1. This demonstrates Judge Bellis's true unfiltered view of Defendants commenting on the proceedings in this case. It is against this backdrop that the third-party threat must be evaluated. Clearly, in that context, the arguments advanced by the plaintiffs and Judge Bellis's endorsement of them creates the appearance of impropriety. Here, Judge Bellis, without an evidentiary hearing, concludes that when Defendants speak it is "indefensible, unconscionable, despicable, and possibly criminal behavior," based largely on the plaintiffs' "Pizzagate" rational. Employing an objective standard, there is no way to conclude that a reasonable person knowing all these circumstances would not question Judge Bellis's impartiality following the alleged third-party threat. To find otherwise is tantamount to collapsing the appearance of impropriety standard into a demand for proof of actual impropriety.

      **b. Judge Bellis's Rulings Over the Course of Discovery Compliance Reveal a High Degree of Antagonism, Creating the Appearance That Fair Judgment Is Impossible, Thereby Requiring Her Disqualification.**

"In assessing a claim of judicial bias, [Connecticut Courts] are mindful that adverse rulings,

21

alone, provide an insufficient basis for finding bias even when those rulings may be erroneous."
*Massey v. Branford*, 118 Conn. App. 491, 502, *cert. denied*, 295 Conn. 913, (2010). Adverse rulings
alone "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest
circumstances evidence the degree of favoritism or antagonism required." *Liteky v. United States*,
510 U.S. 540, 555 (1994). However, adverse rulings "*may* do so if they reveal an opinion that
derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of
favoritism or antagonism as to make fair judgment impossible." *Id.*; *Schimenti v. Schimenti*, 181
Conn. App. 385, 395 (2018).

In Berger v. United States, the United States Supreme Court held that the comments of the
district judge revealed the degree of antagonism necessary to make fair judgement impossible and
that the judge should have recused himself based on the alleged comments. *Liteky*, at 555-56; *Berger
v. United States*, 255 U.S. 22, 36 (1921). The Supreme Court reasoned that when seeking recusal
"the reasons and facts for the belief the litigant entertains . . . must give fair support to the charge
of a bent of mind that may prevent or impede impartiality of judgment." *Id.*; at 33-4. The Supreme
Court went on to conclude that, "[t]he facts and reasons" stated by the defendants in support of
recusal "are not frivolous or fanciful but substantial and formidable and they have relation to the
attitude of [the] Judge's ... mind toward defendants." *Id.*

Almost a century later, Connecticut Courts still follow the holding of Berger. In Schimenti
v. Schimenti, the Connecticut Appellate Court held that a trial court judge should have recused
herself from hearing a marriage dissolution proceeding. *Schimenti*, at 403-04. The appellate court
reasoned that, while "a trial judge need not leave insights and common sense derived from her life's
experience at the courthouse door. . . attitudes garnered from personal life experience cannot serve
as a substitute for properly admitted evidence at a hearing." *Id.* at 402. By denying a request for an
evidentiary hearing, "the trial judge did not follow her prescribed decision-making pathway but,

22

instead, relied exclusively on her own prejudices born of her life experiences. The court's proper

focus should have been on the well-established decisional pathway." *Id.* at 403. The appellate court

concluded by observing that, "[t]he floor established by the Due Process Clause clearly requires a

fair trial in a fair tribunal . . . In sum, the responsibility of the court in hearing a disputed matter is

to act with impartiality. This requirement entails not only being impartial but also acting in a manner

that projects impartiality." *Id.* (citation omitted; internal quotation marks omitted.) Here, Judge

Bellis did not hold an evidentiary hearing before terminating the anti-SLAPP motion and she did

not hold any evidentiary hearings before awarding any sanctions.

Refusing to hold evidentiary hearings, the "well established decisional pathway" employed

by impartial courts, is not the only way Connecticut Courts suss out when a trial judge's adverse

rulings demonstrate a level of antagonism that makes a fair judgment impossible. Courts also look

to evidence that the court has prejudged a party's truthfulness. In Cameron v. Cameron, the

Connecticut Supreme Court reasoned that "[t]he trial judge may be under a duty to reprimand

counsel in order to protect the rights of litigants" and "also has a duty to see that no falsehood or

other fraud is perpetrated in court," however, "[o]nce a [trial judge] declares that [s]he believes a

party or a witness has been deceitful . . . she cannot continue to preside in h[er] role of impartial

arbiter." 187 Conn. 163, 170 (1982).. While minor criticisms to correct erroneous statements on an

affidavit may be justified, once a judge declares a belief a party has been deceitful, she must recuse

herself.

Here, Judge Bellis adverse rulings against Defendants include both denying evidentiary

hearings and taking actions indicating that she believed that either Defendants or their counsel (or

their independent expert) had been deceitful. These actions continued on after the Grievance

Committee dismissed the Court's referral regarding the affidavit issue. Before 10 April 2019 the

position Defendants found themselves in as a result of Judge Bellis's adverse rulings were entirely

23

facially neutral. These adverse rulings alone are an insufficient basis for disqualification. However, on 10 April Judge Bellis repeated so frequently that Defendants had now substantially complied with the discovery orders that even plaintiffs' counsel remarked "it's apparent from the Court's comments that the Court is satisfied there is at least substantial compliance." Affidavit, para. 9e. Up to this point, Defendants' special motion to dismiss and the plaintiffs request for a sanction precluding it, hinged on substantial compliance with the court's discovery orders. However, at this time the issue regarding a signature on an affidavit developed.

Judge Bellis's reaction to the affidavit signature issue is analogous to the reaction of the trial judge in Cameron, which went beyond merely correcting the issue and demonstrated a belief that the defendant and or counsel were attempting to perpetrate a fraud on the court. By the time Judge Bellis was ready to address the affidavit issue, the matter had already been referred to the grievance counsel and a corrected affidavit submitted. However, Judge Bellis referred the matter to the grievance counsel a second time and then *sua sponte* solicited an argument from the plaintiffs for sanctions against Defendants. This was without holding an evidentiary hearing regarding the creation of the original affidavit.

Judge Bellis pressed the plaintiffs to request a sanction. When the plaintiffs refused, Judge Bellis indicated that in light of the plaintiffs refusing to argue for sanctions, the court was satisfied with not taking any further action. However, later when ultimately sanctioning Defendants Judge Bellis explicitly referenced the affidavit issue. As the United States Supreme Court reasoned in Liteky, the focus is on the impact of adverse rulings, not merely the presence of adverse comments in the record. Accordingly, in the context of judicial disqualification, actions speak louder, or at least as loud, as words. And, the sanctions orders highlight these actions, once for a misunderstanding regarding the protective order, once for a differing understanding of what was supposed to be produced, and once for a *sua sponte* different interpretation of the rules where no

24

Connecticut case is known to have imposed a different requirement than in Federal practice.

This conclusion accords with the second proposition the Connecticut Supreme Court advanced in Heublein. In the context of disqualification due to the appearance of impropriety, requiring that a judge make comments on the record that explicitly demonstrate prejudice against a party would collapse the appearance of impropriety standard into a demand for proof of actual impropriety. Accordingly, evidence that Judge Bellis prejudged Defendants' truthfulness is found in her *sua sponte* incorporation of the affidavit issue as an additional basis for sanctioning Defendants and in rejecting Defendants' expert. This is especially true given that Judge Bellis did so both times without an evidentiary hearing.

The Grievance Committee's decision to dismiss the complaint arising from the affidavit issue only emphasizes the fact that Judge Bellis's reaction, at a minimum, creates the appearance of impropriety. The Grievance Committee reached their conclusion following an adversarial hearing at which both sides were afforded a meaningful opportunity to be heard. Affidavit para. 17. Like in Cameron, where the Supreme Court reasoned that once a trial judge indicates that she believes a party deceitful that judge cannot continue to preside over a matter, here Judge Bellis's conduct indicated a belief that Defendants were in some way deceitful.

Moreover, over a year after the Grievance Committee dismissed the complaint Judge Bellis continued to reference the affidavit issue, demonstrating a continued prejudice against Defendants. At a 6 May 2021 status conference, Judge Bellis threatened to refer Counsel for Defendants to the Grievance Committee again. Affidavit para. 19a. This time the conduct at issue was Counsel for Defendants' failure to violate his observance of the sabbath to inform the Court he received notice of a denial of a stay application. Affidavit para. 19c. When Counsel for Defendants referenced the stay in a filing, the reference to the status of the stay was correct based upon the available information. Despite this, Judge Bellis admonished Counsel for Defendants even though the Court

was made aware of the denial on the next business day. *Id.*

The Court's continued prejudice against Defendants was not confined to this single exchange. Given the Court's 6 May 2021 admonishment—in particular the importance it placed on counsel for Defendants not correcting a filing that contained a purported misrepresentation of the status of a request for a stay that lingered for a single weekend—counsel for Defendants raised similar conduct by Counsel for plaintiffs via a motion. That misconduct had a far more egregious impact on the litigation. Affidavit para. 20. Rather than similarly admonishing Counsel for Plaintiffs, Judge Bellis indicated that "[a]ny further such usage of the Rules of Professional Conduct by counsel in filings in this civil action shall result in immediate action by the court. See Practice Book §2-45." Affidavit para. 20c. Importantly, §2-45 permits a court to bypass the Grievance Committee and impose summary disciplinary orders without a complaint or hearing. Practice Book §2-45. Given the prior history in which Judge Bellis's referral of Counsel for Defendants to the grievance committee was dismissed, it is difficult to interpret this reference as anything other than threatening Counsel for Defendants with summary sanctions for referencing the Rules of Professional Responsibility.

Judge Bellis's reaction—both immediate and sustained— to the affidavit issue alone creates the appearance of impropriety that would cause an objective observer to question the courts impartiality. However, Judge Bellis based her decision to sanction Defendants on more than just the affidavit issue. Just prior to sanctioning Defendants in 2019, Judge Bellis referenced the child pornography issue and the 14 June broadcast as additional bases for the sanction. On information and belief, an evidentiary hearing into the inadvertent production of discovery containing child pornography would have shown the following: At plaintiffs' request, Judge Bellis ordered metadata for 58,000 emails be produced in 2 weeks. Affidavit, para. 14a. Plaintiffs then provided this data to a paid "electronic storage information expert" that spent 15 days reviewing the data. Affidavit, para.

26

14b. This was longer than the time allotted by Judge Bellis for Defendants to produce this material.
In those 15 days, the experts were able to detect a single image of child pornography. *Id.* Next, the
FBI spent an additional 6 days to find 11 additional emails containing child pornography. Affidavit,
para. 14c-d. In total, it took 21 days, at unknown cost, for paid experts and the federal government
to detect these images. Had Defendants attempted to complete this type of review prior to providing
this material to the plaintiffs, they would have missed the court ordered discovery deadline by over
7 days. Undoubtedly, this would have been deemed another mark of "obfuscation and delay," most
likely determined without a hearing to ascertain the reason why Defendants were not able to meet
the 2-week production deadline.

Similarly, there was no evidentiary hearing regarding the 14 June Broadcast. At the 18 June
hearing, plaintiffs announced their intention to file, at some future date, a motion regarding the
hearing that would request sanctions. Judge Bellis declined this invitation to follow the "well-
established decisional pathway" of an evidentiary hearing and meaningful opportunity to be heard,
opting instead for counsels' best extemporaneous analysis sans evidence.  The conflicting nature
of Judge Bellis's analysis of the broadcast, demonstrates why the court in Schimenti favored the
"well-established decisional pathway" of an evidentiary hearing over a judge relying on insights
and common sense derived from her life's experience. Judge Bellis applied her own prejudices to
what she assumed were the facts of the 14 June broadcast. For example, Judge Bellis claims to have
heard "I'm going to kill" in the broadcast, despite it not appearing in any transcript before the court.
Yet, when counsel for Defendants attempted to characterize the broadcasts, Judge Bellis prevented
this without an evidentiary hearing.

In Schimenti, the appellate court stated that when a trial judge issues adverse rulings in this
way it abandons its responsibility to act in a manner that projects impartiality. Judge Bellis's
decision to assume facts, multiple refusals to hold evidentiary hearings, and rely on prejudices to

27

justify a sanction impacting the substantive rights of Defendants clearly falls far below the protective floor established by the Due Process Clause. Judge Bellis's rulings over the course of this litigation culminating in the imposition of sanctions reveals a high degree of antagonism. Notably, Judge Bellis admonished counsel for Defendants for conduct that had a minimal impact on the above captioned matters and then subsequently shielded Counsel for plaintiffs for similar conduct that had a far more substantial effect. This is evidence of actual bias. However, without even considering whether the record in this case contains evidence of actual bias, it is clear that there is an appearance of impropriety that would make an objective observer conclude it is not possible for Defendants to receive fair judgment.

Fair judgment requires a willingness to hear and evaluate the arguments of each side before executing judgment. She has repeatedly failed to do so. Therefore, Judge Bellis must be disqualified from this matter.

## CONCLUSION

For all these reasons, Defendants respectfully requests that the Court disqualify Judge Bellis from this matter and substitute another judge to hear it.

## CERTIFICATION OF COUNSEL

The undersigned Counsels for Defendants hereby certify that this motion is made in good faith.

Respectfully Submitted,

By: /s/ Jay M. Wolman /s/
Jay M. Wolman – Juris #433791 of
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103 P: 702-420-2001
F: 305-437-7662
jmw@randazza.com

*Counsel for Defendants Alex E. Jones, Free*

28

*Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC*

And

BY: /s/ Norman A. Pattis /s/
Norman A. Pattis,
PATTIS & SMITH, LLC
Juris No. 423934
383 Orange Street
New Haven, CT 06511
V: 203-393-3017 F: 203-393-9745
npattis@pattisandsmith.com

*Counsel for Defendants Free Speech Systems, LLC, Infowars, LLC, Infowars Health, LLC, and Prison Planet TV, LLC*

## STATEWIDE GRIEVANCE COMMITTEE

Danbury Judicial District Grievance Panel     :
    Complainant

vs.         :    Grievance Complaint #19-0367

Norman A. Pattis     :
    Respondent

### DECISION

Pursuant to Practice Book §2-35, the undersigned, duly-appointed reviewing committee of the Statewide Grievance Committee, conducted a hearing at the Superior Court, 80 Washington Street, Hartford, Connecticut on October 3, 2019. The hearing addressed the record of the complaint filed on June 12, 2019, and the probable cause determination filed by the New Haven Judicial District Grievance Panel for the towns of Bethany, New Haven and Woodbridge on July 22, 2019, finding that there existed probable cause that the Respondent violated Rules 3.3(a)(1) and (2), 3.4(1) and 8.4(1),(2),(3) and (4) of the Rules of Professional Conduct.

Notice of the hearing was mailed to the Complainant, to the Respondent and to the Office of the Chief Disciplinary Counsel on August 28, 2019. Pursuant to Practice Book §2-35(d), Chief Disciplinary Counsel Brian Staines pursued the matter before this reviewing committee. The Respondent appeared and testified. Attorney Mark Dubois represented the Respondent. No exhibits were admitted into evidence.

This reviewing committee makes the following findings:

On March 1, 2019, the Respondent appeared in lieu of previous counsel on behalf of Alex Jones and related corporate defendants in civil litigation pending in Connecticut. At the time of the Respondent's appearance, discovery orders were outstanding against the Respondent's clients. A hearing on the plaintiffs' motion for sanctions was scheduled for March 22, 2019 at 2:00 p.m. On the day of the hearing, the Respondent met in his New Haven office with Mr. Jones' personal representative, who had a power of attorney, and an attorney from Washington, D.C. who represented Mr. Jones in other matters.

On the day of the March 22, 2019 meeting, it was determined that an affidavit needed to be filed regarding Mr. Jones' belief that there had been compliance with discovery. The Respondent drafted an affidavit for Mr. Jones, who was in Texas where he and his corporations reside and do business. Mr. Jones personal representative contacted him on the phone and reviewed the contents of the affidavit with Mr. Jones. The Respondent spoke with Mr. Jones on the phone and asked him "to swear to the truth of the statements in the affidavit", which he did. Mr. Jones authorized his personal representative and attorney in fact to sign his name to the affidavit. The personal representative signed Alex Jones' name to the affidavit. The Respondent

Grievance Complaint #19-0367
Decision
Page 2

signed his name as Commissioner of the Superior Court on the affidavit, which stated "sworn to and subscribed before me." The affidavit did not state where it was signed.

The Respondent filed the affidavit with the Court and produced it before counsel. Thereafter, at a hearing before Judge Barbara N. Bellis on April 10, 2019, plaintiffs' counsel inquired as to the location of the signing of the affidavit. The Respondent disclosed to the Court the circumstances of the signing of the affidavit. The Respondent represented to the Court that there was no intent to deceive. Thereafter, a new affidavit signed by Mr. Jones was filed. The Respondent self-reported the matter to Grievance Panel Counsel by correspondence dated April 12, 2019. Judge Bellis made a referral to the Office of the Chief Disciplinary Counsel by correspondence dated April 24, 2019.

This reviewing committee also considered the following:

Disciplinary Counsel contended that the affidavit appears objectively false. Disciplinary Counsel argued that the affidavit was not subscribed before the Respondent in Connecticut nor was it signed by Alex Jones. Disciplinary Counsel indicated that the facts in the affidavit are not in dispute, the facts are true. Disciplinary Counsel indicated that the substance of the affidavit is not claimed to be false. The Respondent stated that "[w]hile Mr. Jones did not physically appear before me, I believed I had the functional equivalent of his appearance, and there was no doubt in my mind he had sworn to the facts in the affidavit." The Respondent contended that "Mr. Jones' attorney-in-fact had authority under Texas law to offer a statement of fact in the Connecticut litigation" and that the Respondent "reasonably believed that this authority included his signing an affidavit." The Respondent indicated that he made a mistake. Instead of having the agent sign his own name, he had him sign the name of his principal. The Respondent, through counsel, explained that he incorrectly believed that he could take the oath remotely. The Respondent explained that when he realized his error, he immediately took corrective action. The Respondent explained that the new affidavit signed by Mr. Jones was "identical in form" to the subject March 22, 2019 affidavit.

The Respondent testified that on March 22, 2019, shortly after appearing in the litigation, he was under time constraints in connection with the preparation of the affidavit and the subsequent hearing that afternoon. The Respondent testified that at the March 22, 2019 meeting, he did not ask to view the power of attorney document but rather relied on the representations of his client and his client's representative. The Respondent indicated that there was no claim of prejudice by opposing counsel in connection with the affidavit.

Grievance Complaint #19-0367
Decision
Page 3

This reviewing committee concludes that the Respondent's conduct in connection with the affidavit did not rise to the level of an ethical violation, in this instance. The record lacks clear and convincing evidence to substantiate a finding that the Respondent violated Rules 3.3(a)(1) and (2), 3.4(1) or 8.4(1),(2),(3) and (4) of the Rules of Professional Conduct. The Respondent acknowledged that he made a mistake in connection with the execution of the affidavit. When the Respondent realized his error, he immediately corrected it. We find the Respondent credible that he made a mistake and had no intent to deceive the Court or opposing counsel. Notwithstanding, we are critical of the Respondent's level of diligence in researching how to handle an affidavit involving an attorney-in-fact acting under a Texas power of attorney in a Connecticut civil proceeding. It is the opinion of this reviewing committee that the Respondent's practice was sloppy with regard to the execution of the affidavit and that he exercised bad judgment. Further, it was inappropriate not to request the power of attorney document for review. Finally, since we conclude that the Respondent did not violate the Rules of Professional Conduct, we dismiss the complaint.

**DECISION DATE:** _12-20-19_

(DFR)
(4)

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 62169154
Status as of 3/3/2022 8:58 AM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 3/1/2022 9:51:21 AM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 9:51:21 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Ogden | | bill@fbtrial.com | 3/1/2022 9:51:21 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 3/1/2022 9:51:21 AM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 9:51:21 AM | SENT |
| Norman Pattis | | npattis@pattisandsmith.com | 3/1/2022 9:51:21 AM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 9:51:21 AM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 9:51:21 AM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 62169154
Status as of 3/3/2022 8:58 AM CST

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 9:51:21 AM | SENT |

3/1/2022 10:01 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Chloe Jimenez

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

### PLAINTIFFS' RESPONSE TO MOTION FOR CONTEMPT AND SANCTIONS

---

Defendants allege that the public filing of Plaintiffs' December 27, 2021 Motion for Sanctions violated the Protective Order. In truth, Defendants' counsel is simply ill-informed about the details of the Protective Order and the history of the case. As shown below, Plaintiffs' public filing was mandatory under the Protective Order, and the same series of events has occurred multiple times with no complaint from Defendants.

### BACKGROUND

### I.   The Protective Order has Requirements for Pleadings with "Attorneys' Eyes Only" Material.

There is no dispute that materials at issue in Defendants' Motion for Sanctions were considered "Attorneys' Eyes Only." Under the Protective Order, all deposition transcripts are

1

to be considered "Attorneys' Eyes Only" for thirty days following a deposition, and the transcripts at issue here were filed inside that period. Whenever a party seeks to file a pleading which includes materials designated "Confidential" or "Attorneys' Eyes Only," the party must follow a procedure laid out in paragraph 21 of the Protective Order.

That provision for **"FILINGS OR HEARINGS IN THE PUBLIC RECORD**" requires that "[i]f a party wishes to include a document, or portions of a document marked as 'Confidential' or 'Attorney's Eyes Only' in a pleading or other paper to be filed with the Clerk, that party shall serve the pleading or other paper on opposing parties but shall not file it." (*See* Ex. 1, February 25, 2019 Protective Order, para. 21). Then, "[f]or 7 days following service, no party shall file the pleading or other paper with the Clerk except pursuant to a ruling on a motion for a Temporary Sealing Order under Rule 76a." (*Id.*). "Immediately thereafter, if no motion for a Temporary Sealing Order has been granted, the party who served the pleading or other paper shall file it unsealed with the Clerk." (*Id.*). This section of the Protective Order is shown below:

---

**FILINGS OR HEARINGS IN THE PUBLIC RECORD**

21.    If a party wishes to include a document, or portions of a document marked as "Confidential" or "Attorney's Eyes Only" in a pleading or other paper to be filed with the Clerk, that party shall serve the pleading or other paper on opposing parties but shall not file it. Service alone shall constitute filing for the purpose of any deadline. For 7 days following service, no party shall file the pleading or other paper with the Clerk except pursuant to a

---

> ruling on a motion for a Temporary Sealing Order under Rule 76a. Immediately thereafter, if no motion for a Temporary Sealing Order has been granted, the party who served the pleading or other paper shall file it unsealed with the Clerk.

This provision allows the producing party to obtain an immediate Temporary Sealing Order upon request, at which point its confidential material would remain sealed pending a later Rule 76a hearing with public notice. However, if a party chooses not to request a Temporary Sealing Order within 7 days of service, then any protection over the confidential material is lost, and the movant is <u>required</u> to file the pleading unsealed. It is worth noting that Defendants proposed the *Lewis* Protective Order in 2019, and they agreed to the same language in the remaining cases in the summer of 2021.

## II. Previous Filings have Contained Confidential Material.

This is not the first time Plaintiffs have included confidential materials in their pleadings which later entered the public domain when no Temporary Sealing Order was sought. Indeed, this same series of events has occurred multiple times.

The first depositions of Mr. Jones and Free Speech Systems took place in the *Lewis* case on March 14, 2019. Defendants designated the transcripts confidential on the day of the deposition. Under the Protective Order, the transcripts were also to be considered "Attorneys' Eyes Only" over the next thirty days. One week after the deposition, on March 20, 2019, Ms. Lewis included the expedited transcript in a motion which she served, but did ***not*** file with the Clerk. That same day, Ms. Lewis wrote to the Court requesting a hearing, and she asked for clarification whether the Court's Protective Order contemplated service on the Court as well as opposing counsel:

> Today the Plaintiff has served InfoWars with a copy of her
> Motion for Sanctions for Discovery Abuse...The motion cites
> evidence designated as confidential. Under the terms of the
> protective order, Plaintiff has served this motion, but has not yet
> filed it pending Defendants' action on a Temporary Sealing
> Order...Plaintiff would also be happy to provide a courtesy copy
> of the motion, but was not sure if courtesy service on the Court
> was intended by the Protective Order. (*See* Ex. 2, March 20, 2019
> email discussion with Court).

The Court responded:

> Please provide the Court with a courtesy copy of plaintiff's
> motion. I will be back in touch regarding your request for a
> hearing. (*Id.*).

Eight days following service, after the period for temporary sealing had elapsed with

no request from the Defendants, Ms. Lewis publicly filed her motion unsealed with the Clerk

on March 28, 2019. The "Attorneys' Eyes Only" materials, including the depositions of Mr.

Jones and Free Speech Systems, entered the public domain. Mr. Jones' deposition became the

subject of intense public interest and media scrutiny after that public filing.

Later that fall, following Mr. Jones' second deposition on November 26, 2019, Plaintiff

followed the same procedure, and a pleading containing his deposition was filed publicly on

December 12, 2019 after Defendants again chose not to seek a Temporary Sealing Order. On

neither of those occasions did Defendants allege that the Protective Order had been violated.

## PLAINTIFFS' DECEMBER 27, 2021 FILING

These same events were repeated in December 2021. Plaintiffs took depositions of

Alex Jones and Free Speech Systems on December 3-4, 2021. During those depositions,

Defendants designated the transcripts as confidential. Additionally, under the Protective

Order, those transcripts were to be considered "Attorneys' Eyes Only" for thirty days

following the deposition. (Ex. 1, Protective Order, para. 12). Defendants also provided

4

answers to net worth discovery on December 7, 2021. Those materials were likewise designated "Attorneys' Eyes Only" at the time of production.

Plaintiffs' Motion for Sanctions Regarding Corporate Representative Deposition cites these "Attorneys' Eyes Only" materials. As noted above, when a party seeks to file a pleading which includes materials designated "Attorneys' Eyes Only," the party must follow the procedure laid out in paragraph 21 of the Protective Order. As such, on December 15th, 2021, Plaintiffs served a copy of their motion, but did *not* file it with Clerk, informing the Court and opposing counsel that:

> Today, the Sandy Hook plaintiffs have brought a motion alleging the failure to prepare a corporate representative for the company's December 3rd deposition on compensatory and punitive damages issues. Plaintiffs' brief contains materials designated by Defendants as confidential. Therefore, Plaintiffs are serving the Court but not filing this brief with the Clerk pursuant to the Protective Order. (*See* Ex. 3, December 15, 2021 email to Court).

During the following week, Defendants did not ask the Court to enter a Temporary Sealing Order as set forth in paragraph 21 of the Protective Order. The following Monday after that period expired, on December 27th, 2021, Plaintiffs filed their pleading unsealed with the clerk as directed by paragraph 21. This series of events transpired exactly as it had on two prior occasions in this case.

That same day, Defendants' counsel wrote to Plaintiffs after the motions were filed, asking for an explanation. Plaintiffs' counsel advised that "the motion was filed with the clerk unsealed today pursuant to Paragraph 21 of the Protective Order." (*See* Ex. 4, December 27, 2021 email between counsel).

On December 29, 2021, Defendants' counsel wrote advising of his intention to seek sanctions for violation of the Protective Order. Plaintiffs' counsel responded: "Regarding the

unsealed motion we filed, I need you to explain how our filing an unsealed pleading pursuant to paragraph 21 breaches the Protective Order. You did not respond to my email earlier this week, so my assumption is that you recognized that it was consistent with the order." (*See* Ex. 5, December 29, 2021 email between counsel). More than a week passed with no response from Defendants.

On January 7, 2022, the Huffington Post published a story regarding InfoWars' revenue, citing a copy of Plaintiffs' pleading which they obtained from the District Clerk. Plaintiffs' counsel was contacted by the reporter but declined to comment, as noted in the article.

On January 8, 2022, Defendants filed a Response to Plaintiffs' Motion for Sanctions in which they alleged Plaintiffs' Motion had violated the Protective Order. On January 10, 2022, Plaintiffs' counsel wrote: "Since you have now publicly accused me in a pleading of violating the Court's protective order, I am once again asking you to specify exactly how you contend our filing on December 27th violated the order. I have asked this question multiple times, and you have refused to respond." (*See* Ex. 6, January 10, 2022 email between counsel).

Defendants' counsel responded, identifying three alleged violations:

- "[Y]ou have breached the protective order in filing the deposition transcripts and exhibits to the deposition without allowing the requisite period of time under the order to designate confidential materials."

- "[W]hen you submitted the original filing, you provided it to the Court instead of just the parties, which violates the protective order in and of itself."

- "[O]verall your filings of confidential private AEO materials, particularly the net worth documentation, violates the protective order and the spirit of the designations themselves." (*Id.*).

On January 12, 2022, Defendants filed their Motion for Sanctions, though now Defendants also argue that Plaintiffs violated the Protective Order by not moving for a Temporary Sealing Order themselves. (Def. Motion, p. 5). All these arguments are baseless.

## ARGUMENT

### I.   The Transcripts were Designated Confidential and Treated as Such by Plaintiffs.

Defendants first complain that Plaintiffs filed their motion without allowing the period of time under the Protective Order to designate confidential materials to expire. Yet the transcripts had already been designated confidential, both during the depositions and automatically by the Protective Order itself. In paragraph 12, the Protective Order states:

> Testimony and information disclosed at a deposition of a Party or any other witness may be designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" during the deposition, and within thirty (30) days following the depositions, any Party may designate any information disclosed during a deposition as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." For the thirty (30) days following any deposition, the Parties must treat all of the deposition testimony and exhibits and other documents produced at any deposition as "ATTORNEYS' EYES ONLY."

Thus, a party may designate the transcript as confidential on the day of the deposition or within thirty days. Here, Defendants designated the transcript confidential on the day of the deposition. Even if they had not, all transcripts are automatically considered "Attorneys' Eyes Only" for thirty days. In short, Plaintiffs do not dispute that the deposition transcripts were required to be treated as "Attorneys' Eyes Only" under the Protective Order.[1]

---

[1] Defendants' Motion also claims that "Plaintiffs violated the Protective Order by filing the depositions within thirty (30) days following the deposition of the Corporate Representative and Defendant Jones." (Def. Motion, p. 7). Yet there is nothing in the Protective Order to support that proposition. The Protective Order merely requires that all deposition transcripts be treated as "Attorneys' Eyes Only" during that thirty-day period. Plaintiffs did exactly that. The Protective Order does not limit when pleadings may be filed.

Because the transcripts were considered "Attorneys' Eyes Only," Plaintiffs were obligated to follow the Protective Order when bringing any motion which contained those transcripts. For this reason, Plaintiffs followed paragraph 21 of the Protective Order. Plaintiffs served the motion without filing the brief with the Clerk. Plaintiffs then took no action during the period in which Defendants were allowed to request a Temporary Sealing Order. When no order was requested, Plaintiffs filed the brief unsealed as <u>required</u> by paragraph 21 of the Protective Order. This same process had already occurred multiple times in this lawsuit. Any complaint by Defendants is due purely to their own lack of diligence under a Protective Order which they proposed.

## II.     The Court Previously Instructed Plaintiffs to Serve the Court in Addition to Opposing Counsel.

Defendants next complain that when serving the motion, Plaintiffs "provided it to the Court instead of just the parties, which violates the protective order in and of itself." (January 10 email). This is untrue. Plaintiffs served a courtesy copy to chambers because the Court had previously confirmed that service to chambers was contemplated by the Protective Order.

The first time Ms. Lewis brought a motion with confidential information in 2019, Plaintiffs' counsel noticed that the Protective Order directs parties to serve their opponent, and it forbids filing with the Clerk for the next seven days, but it was silent on whether the Court should be served. For this reason, Ms. Lewis asked the Court on March 20, 2019 for clarification as to whether "courtesy service on the Court was intended by the Protective Order." (Ex. 2, March 20, 2019 discussion with Court). In response, the Court advised that the Plaintiff should "provide the Court with a courtesy copy." (*Id.*). Later that fall, Mr. Heslin

followed the same procedure when he served opposing counsel and the Court with a motion containing Mr. Jones' second deposition, and then filed the motion publicly after the Temporary Sealing period expired. Plaintiffs likewise followed the same procedure with their latest filing.

In short, Plaintiffs were following a well-established process which they had previously confirmed with the Court. Moreover, Defendants cannot identify any prejudice from serving a courtesy copy directly to chambers in addition to the opposing party. Paragraph 21 of the Protective Order exists to allow an opportunity for a party to prevent an unsealed filing with the Clerk, thereby limiting public dissemination. The Court and its staff, on the other hand, will obtain an unsealed copy in either case.

## III.    Plaintiffs were not Obligated to Request a Temporary Sealing Order.

Defendants next argue that Plaintiffs violated the Protective Order because after serving their motion, "Plaintiffs filed no motion for Temporary Sealing Order." (Def. Motion, p. 5). In reality, there is no requirement in the Protective Order that any party move for a Temporary Sealing Order. The window for seeking a Temporary Sealing Order exists so that the party who owns the designated material can seek enhanced protection over a court record which would otherwise be presumptively public. Plaintiffs are not responsible for protecting the interests of their adversaries, and there is nothing in the Protective Order which forces them to bring such a motion on behalf of Defendants. Plaintiffs are merely required to allow for a window for Defendants to request a Temporary Sealing Order if they choose. This procedure is further borne out by the multiple times in which Plaintiffs previously filed material which had been designated as "Attorneys' Eyes Only." (*See* Ex. 2,

March 20, 2019 email discussion with Court) (Noting Plaintiff "has not yet filed [the motion]

pending ***Defendants' action*** on a Temporary Sealing Order.").

When the Defendants chose not to request a Temporary Sealing Order, Plaintiffs had

no choice but to file the document publicly, as it was mandatory under the Protective Order.

(Ex. 1, Protective Order, para. 21) ("Immediately thereafter, if no motion for a Temporary

Sealing Order has been granted, the party who served the pleading or other paper ***shall*** file

it unsealed with the Clerk."). Defendants' complaint lies solely with their own lack of

diligence.

## IV. Plaintiffs can only be Sanctioned for Violating the Order, not a Subjective Complaint about the "Spirit of the Designations."

In their meet and confer letter, Defendants argued that Plaintiffs' "filings of

confidential private AEO materials, particularly the net worth documentation, violates…the

spirit of the designations themselves." (*See* Ex. 6, January 10, 2022 email). It is unclear

whether Defendants' Motion also adopts this position. The argument suggests that even if

Plaintiffs complied with the terms of the Protective Order, and even if Defendants slept on

their rights, sanctions should issue.

Defendants' contempt motion cannot be granted based on some subjective "spirit" of

the designations. To find Plaintiffs in contempt of the order, "the order allegedly violated

'must spell out the details of compliance in clear, specific and unambiguous terms so that

such person will readily know exactly what duties or obligations are imposed upon him.' The

order's interpretation may 'not rest upon implication or conjecture.' Rather, the alleged

violation 'must be directly contrary' to the order's express terms. If the order's

'interpretation requires inferences or conclusions about which reasonable persons might

differ,' it cannot support a contempt judgment." *In re Janson,* 614 S.W.3d 724, 727 (Tex. 2020) (citations omitted).

The text of the Protective Order places obligations on the party filing a pleading, all of which were followed by the Plaintiffs. Plaintiffs included the confidential materials in their motion to support their legitimate argument that Defendants possessed the resources to properly prepare their corporate representative. Defendants may be displeased with the public disclosure of their confidential information, but the fault lays at the feet of their own counsel, who failed to take the available action under a Protective Order which Defendants proposed.

## CONCLUSION

Plaintiffs complied with the requirements in paragraph 21 of the Protective Order when bringing their Motion for Sanctions, and they followed the same procedure they have always followed when filing confidential materials. These same procedures have been confirmed with the Court, and they have resulted in the prior public release of materials designated as confidential with no complaint from the Defendants. Defendants' Motion has been brought solely for strategic purposes by counsel who are ill-informed about the history of this case and the details of the Protective Order. In truth, the Protective Order specifically provides a mechanism for Defendants to avoid the harm they now claim. Through lack of diligence, Defendants failed to utilize that mechanism. When the Defendants failed to utilize that mechanism, the Protective Order required Plaintiffs to file the pleading and exhibits unsealed with the Clerk, just as they have on every prior occasion. Under these facts, there is

no basis to find that Plaintiffs violated any terms of the Protective Order, Defendants' motion should be denied.[2]

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

---

[2] Defendants make a passing allegation that Plaintiffs "surreptitiously permitted a podcaster to attend the confidential deposition of Alex Jones." In truth, the individual in question is consulting expert Dan Friesen, and his signed acknowledgement of the Protective Order identifying him as a consulting expert was provided to Defendants' counsel at the time of the deposition.

Mr. Friesen is chiefly known "for his unparalleled knowledge of Alex Jones." (*See* Robert Evans. "How Coronavirus Disinformation Gets Past Social Media Moderators." *Bellingcat.* April 3, 2020. Available at: https://www.bellingcat.com/news/2020/04/03/how-coronavirus-disinformation-gets-past-social-media-moderators/). Mr. Friesen is the creator and host of "Knowledge Fight," a podcast which critically examines InfoWars and deconstructs their news stories. Mr. Friesen has been widely recognized in the media for "perform[ing] the invaluable public service of debunking some of Jones's wilder theories in a conversational podcast." (*See* Tim Adams. "QAnon and on: Why the fight against extremist conspiracies is far from over." *The Guardian.* June 20, 2021. Available at: https://www.theguardian.com/us-news/2021/jun/20/qanon-conspiracy-theories-pizzagate-infowars-storm-is-upon-us-mike-rothschild). Mr. Friesen's encyclopedic knowledge of InfoWars makes him an invaluable consultant to the Plaintiffs.

In nearly all previous depositions, Plaintiffs' counsel has been accompanied by a consulting expert, most frequently Brooke Binkowski, a similar online debunker of InfoWars. Plaintiffs reminded Defendants of all these facts, yet Defendants still included this false allegation in their Motion.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2022 the forgoing document was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

## D-1-GN-18-001835

| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

## D-1-GN-18-001842

| LEONARD POZNER and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

### ORDER ON DEFENDANTS' MOTION FOR CONTEMPT AND SANCTIONS

---

On this day, the Court considered Defendants Motion for Contempt and Sanctions. After reviewing the pleadings, and considering the arguments of counsel, if any, the Court finds that the Motion should be in all respects DENIED.

Dated _____, 2022.


_____
Hon. Maya Guerra Gamble

Filed in The District Court
of Travis County, Texas

FEB 2 5 2019

At _____ 2:30 ___ P.M.
Velva L. Price, District Clerk

NO. D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC, | § | |
| | § | |
| *Defendants* | § | 98th JUDICIAL DISTRICT |

## PROTECTIVE ORDER OF CONFIDENTIALITY

In order to preserve the rights of litigants in these proceedings to claim the confidentiality of certain documents to be produced in discovery by the parties, the Court orders as follows:

1.    This Protection/Confidentiality Order governs all discovery, and all information disclosed, produced, or submitted by any party to any other party in connection with this lawsuit during the course of discovery.

2.    This Order is entered for purposes of this lawsuit and shall remain in full force and effect until such time as the Parties agree in writing otherwise or the Court enters a different order. This Court shall retain jurisdiction to make amendments and modifications to this Order as the Court may deem appropriate, as well as to resolve any disputes.

### TERMS

3.    "Discovery includes all written discovery, request for production, interrogatories, requests for admissions, requests for disclosure, oral depositions, deposition transcripts, oral or

video recording of a deposition, depositions on written questions to third parties, and subpoenas to third parties, and other documents exchanged between the parties for the purpose of sharing information regarding the facts of the case.

4.     "Confidential Information" means information that constitutes a trade secret, reveals valuable and sensitive proprietary data or commercial information, or otherwise qualifies for legal protection under Texas law.

5.     "Confidential Discovery" means discovery or any materials within the scope of Tex. R. Civ. P. 192 to be produced or otherwise disclosed by the parties in this case and which also contains Confidential' Information.

6.     "Similar InfoWars Sandy *Hook* Lawsuit" means any other lawsuit in which any of the Defendants have been sued on the basis of their conduct relating to the Sandy *Hook* Elementary School Shooting.

7.     Reference   to   Plaintiff,   Defendants,   or   the   Parties   to   this Protective/Confidentiality Order also includes reference to any other person or entity acting on any Party's behalf or in concert or in participation with any Party, directly or indirectly, to the extent that any discovery in this lawsuit requires a person or entity other than Plaintiff or Defendants to produce documents or tangible things or give testimony.

8.     "Producing Party" shall mean a Party to this lawsuit that produces documents, information and/or tangible things.

## DESIGNATION OF CONFIDENTIAL DISCOVERY

10.     A document or tangible thing that the Producing Party determines in good faith to be Confidential Discovery can be claimed as confidential by (1) stamping the word "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY" on the document, or (2) using any other

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page **2** of **8**

reasonable method agreed to by the Parties. Such stamping shall not obscure any writings on the documents.

11.    In the event a Producing Party inadvertently fails to mark a confidential document as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," that Producing Party or any Party may: (1) notify counsel of record for every other Party in writing specifically identifying the material, and (2) provide a replacement copy of the document(s) marked "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY."

12.    Testimony and information disclosed at a deposition of a Party or any other witness may be designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" during the deposition, and within thirty (30) days following the depositions, any Party may designate any information disclosed during a deposition as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." For the thirty (30) days following any deposition, the Parties must treat all of the deposition testimony and exhibits and other documents produced at any deposition as "ATTORNEYS' EYES ONLY."

13.    By designating a document as Confidential Discovery pursuant to paragraphs 9, 10 or 11, the Producing Party represents that it has made a bona fide, good faith determination that the document does, in fact, contain Confidential Information.

## CHALLENGING DESIGNATION

14.    Any Party may contest the designation of any document, information or tangible things as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" by requesting in writing that the Producing Party change the designation. If the Parties are unable to reach an agreement on the designation of such challenged documents within five (5) business days, the

Party challenging the designation may at any time thereafter seek an order to alter the status of the challenged designation.

14. Until any dispute over designation is ruled upon by the presiding Judge, the designation will remain in full force and effect, and the documents, tangible things, testimony and information will continue to be accorded the confidential treatment required by this Protective Order.

## AUTHORIZED USE OF CONFIDENTIAL DISCOVERY

15. Confidential Discovery shall be used solely for the purposes of this lawsuit and shall not be disclosed or made available to any person(s) other than those persons specified herein. Persons who may have access to documents or other information designated as "CONFIDENTIAL" shall include only the following persons:

    a. The Parties, and the Producing Party, if other than Plaintiff or Defendants;

    b. The Plaintiffs in any Similar InfoWars Sandy Hook Lawsuit.

    c. Counsel of record for the Parties, and counsel for the Producing Party, if other than Plaintiff or Defendants, and their respective employees;

    d. Counsel of record for the Parties in any Similar InfoWars Sandy Hook Lawsuit, and their respective employees.

    e. Consultants or experts retained in connection with this lawsuit provided that such consultant or expert shall acknowledge and

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page **4** of **8**

accept the terms of this Protective / Confidentiality Order by first signing the attached Exhibit "A";

     f.     Consultants or experts retained in connection with any Similar InfoWars Sandy Hook Lawsuit provided that such consultant or expert shall acknowledge and accept the terms of this Protective / Confidentiality Order by first signing the attached Exhibit "A."

     g.     Court personnel; and

     h.     Court reporters and videographers who first acknowledge and accept the terms of this Protective/Confidentiality Order by signing the attached Exhibit "A."

16.     All such signed Exhibits "A" completed by persons under subparts (c) or (e) shall be immediately served on all Defendants' and Plaintiff's counsel.

17.     Any documents, testimony, information or tangible things designated as "ATTORNEYS' EYES ONLY" shall be used solely for the purpose of this lawsuit and any Similar InfoWars Sandy Hook Lawsuit and shall not be disclosed or made available to any person(s) other than those persons specified below. Persons who may have access to documents or other information designated as "ATTORNEYS' EYES ONLY" shall include only the following persons:

     a. Counsel of record for the Parties, and counsel for the Producing Party, if other than Plaintiff or Defendants, and their respective employees;

     b. Counsel of record for the Parties in any Similar InfoWars Sandy Hook Lawsuit, and their respective employees.

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page **5** of **8**

18.     If a Party is required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to produce documents or information that have been designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," such Party will provide written notice immediately to every other Party, and the Producing Party in order to allow time to object to such production and otherwise seek protection.

## INSPECTION OF CONFIDENTIAL DISCOVERY

19.     Except as provided herein, each person to whom Confidential Discovery containing confidential information is disclosed or made available shall first be advised of the existence and the contents of this Order. Confidential Discovery may only be inspected or revealed by the Parties to the persons listed in paragraph 15 and 17 herein, provided that the disclosing Party is responsible to ensure that any person or entity who receives such Confidential Discovery shall maintain the document as confidential as set forth in this Order.

20.     Any mediator in this case or any Similar Travis County InfoWars Lawsuit may be provided Confidential Discovery so long as the Confidential Discovery is being disclosed pursuant to confidential settlement negotiations and the mediator returns the Confidential Discovery at the end of the mediation without making duplications/copies.

## FILINGS OR HEARINGS IN THE PUBLIC RECORD

21.     If a party wishes to include a document, or portions of a document marked as "Confidential" or "Attorney's Eyes Only" in a pleading or other paper to be filed with the Clerk, that party shall serve the pleading or other paper on opposing parties but shall not file it. Service alone shall constitute filing for the purpose of any deadline. For 7 days following service, no party shall file the pleading or other paper with the Clerk except pursuant to a

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page **6** of **8**

ruling on a motion for a Temporary Sealing Order under Rule 76a. Immediately thereafter, if no motion for a Temporary Sealing Order has been granted, the party who served the pleading or other paper shall file it unsealed with the Clerk.

22.    If a party wishes to offer a document, or portions of a document marked as "Confidential" or "For Counsel Only" in evidence, any party may, at the time the document is offered, move for a Temporary Sealing Order.

## ORDER DOES NOT WAIVE CERTAIN RIGHTS

23.    This Protective/Confidentiality Order shall not be deemed a waiver of (i) any right to object to any discovery requests on any grounds; (ii) any right to seek an order compelling discovery with respect to any discovery request; (iii) any right at any proceeding in this lawsuit to object to the admission of evidence on any ground; (iv) any right of a Party to use its own documents and translate them with complete discretion and/or (v) the right to seek a modification of this Protective/Confidential Order.

24.    Designation of a document or other information as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" is not evidence that the document, other information or tangible thing is in fact confidential. A party's failure to object to another Party's designation of any document or other information as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" shall not be evidence or an admission that the designated document, tangible things or information is in fact confidential.

## RETURN OF CONFIDENTIAL DISCOVERY

25.    Within thirty (30) days after the conclusion of this lawsuit including all appeals, the Parties, their counsel as well as anyone who has executed Exhibit "A" are hereby Ordered to return to the Producing Party all testimony, including deposition transcripts, and

PROTECTIVE ORDER OF CONFIDENTIALITY -- Page 7 of 8

all other documents or information that was produced to them and designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" and all copies thereof. It will be a direct violation of this Order if anyone retains any Confidential Discovery (whether marked "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY") or any portion thereof after this thirty (30) day period.

26.    This Order will not be used in any manner or form, directly or indirectly, as evidence in any trial or any hearing, other than to resolve any issue related to the enforcement of any provisions of the Order.

SIGNED this 25th day of February , 2019.

_____
PRESIDING JUDGE

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | fly63rc@verizon.net; millig@gpm-law.com |
| **Cc:** | Bill Ogden; Yvonne Maund |
| **Subject:** | Fwd: Lewis v Jones, GN-18-6623 - Motion for sanctions |
| **Date:** | Monday, March 25, 2019 3:45:52 PM |

April 3rd at 2pm works for me.

Mark Bankston
Kaster Lynch Farrar & Ball, LLP


Begin forwarded message:

> **From:** Elissa Hogan <Elissa.Hogan@traviscountytx.gov>
> **Date:** March 25, 2019 at 3:37:31 PM CDT
> **To:** Mark Bankston <mark@fbtrial.com>, "fly63rc@verizon.net" <fly63rc@verizon.net>, "robertbarnes@barneslawllp.com" <robertbarnes@barneslawllp.com>
> **Cc:** Melanie Illig <MIllig@gpm-law.com>, Bill Ogden <bill@fbtrial.com>, Tiffaney Gould <Tiffaney.Gould@traviscountytx.gov>, Yvonne Maund <ymaund@fbtrial.com>
> **Subject: Lewis v Jones, GN-18-6623 - Motion for sanctions**
>
>
> Counsel,
> Judge Jenkins can be available for a hearing on plaintiff's motion for sanctions on April 3 at 2 pm or April 4 at 9 am. Please confer and let me know which of those options is preferable. Please also let me know when we will receive defendants' response.

**From:** Yvonne Maund [mailto:ymaund@fbtrial.com]
**Sent:** Monday, March 25, 2019 12:00 PM
**To:** Elissa Hogan
**Cc:** Mark Bankston; fly63rc@verizon.net; robertbarnes@barneslawllp.com; Melanie Illig; Bill Ogden
**Subject:** RE: Cause No. D-1-GN-18-006623
Ms. Hogan,
Attached please find a courtesy copy of Plaintiff's Motion for Sanctions, per your request. Thank you for your assistance regarding our request for a hearing on same. Should you have any questions, concerns or comments, please feel free to contact at the number below.
Kindest regards,
*Yvonne Maund, Paralegal*
**FARRAR & BALL, LLP**
1010 Lamar, Suite 1600
Houston, TX 77002
Tel: 713-221-8300
Fax: 713-221-8301
ymaund@fbtrial.com

**From:** Elissa Hogan <Elissa.Hogan@traviscountytx.gov>

**Sent:** Monday, March 25, 2019 10:50 AM
**To:** Yvonne Maund <ymaund@fbtrial.com>; Tiffaney Gould
<Tiffaney.Gould@traviscountytx.gov>
**Cc:** fly63rc@verizon.net; robertbarnes@barneslawllp.com; Bill Ogden
<bill@fbtrial.com>; Mark Bankston <mark@fbtrial.com>
**Subject:** RE: Cause No. D-1-GN-18-006623

Ms. Maund,

Please provide the Court with a courtesy copy of plaintiff's motion. I will be back in touch regarding your request for a hearing.

Elissa Hogan

Staff Attorney for Judge Jenkins

**From:** Yvonne Maund [mailto:ymaund@fbtrial.com]
**Sent:** Wednesday, March 20, 2019 12:04 PM
**To:** Elissa Hogan; Tiffaney Gould
**Cc:** fly63rc@verizon.net; robertbarnes@barneslawllp.com; Bill Ogden; Mark Bankston
**Subject:** Cause No. D-1-GN-18-006623

**CAUTION**: This email is from OUTSIDE Travis County. Links or attachments may be dangerous. Click the Phish Alert button above if you think this email is malicious.

Today the Plaintiff has served InfoWars with a copy of her Motion for Sanctions for Discovery Abuse. Plaintiff has filed this motion for a variety of reasons, including Defendants' total failure to produce any further documents under the Court's Orders, which forced Plaintiff to take depositions with no meaningful discovery. Defendants also failed to produce complete video evidence, failed to prepare their corporate representative to give any testimony whatsoever, spoliated evidence, and more.

The motion cites evidence designated as confidential. Under the terms of the protective order, Plaintiff has served this motion, but has not yet filed it pending Defendants' action on a Temporary Sealing Order. Nonetheless, given the urgency of the relief requested, the gravity of the allegations made in the motion, and the time constraints of the TCPA, Plaintiff would like to request a hearing with the Court as its earliest available opportunity to avoid any further expense and effort in a TCPA process which has been thoroughly disrupted by discovery abuse.

Plaintiff would also be happy to provide a courtesy copy of the motion, but was not sure if courtesy service on the Court was intended by the Protective Order.

Kindest regards,

*Yvonne Maund, Paralegal*
**FARRAR & BALL, LLP**
1010 Lamar, Suite 1600
Houston, TX 77002
Tel: 713-221-8300
Fax: 713-221-8301
ymaund@fbtrial.com

This electronic mail message, including any attachments, may be confidential or privileged under applicable law. This email is intended solely for the use of the

individual or entity to which it is addressed. If you are not the intended recipient of this
email, you are notified that any use, dissemination, distribution, copying, disclosure or
any other action taken in relation to the content of this email including any
attachments is strictly prohibited. If you have received this email in error, please notify
the sender immediately and permanently delete the original and any copy of this email,
including secure destruction of any printouts.

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | 459 Submission; Keri Ward |
| **Cc:** | Bradley Reeves; Bill Ogden |
| **Subject:** | Request for Hearing on Motions in Alex Jones / Sandy Hook / Parkland Cases |
| **Date:** | Wednesday, December 15, 2021 1:00:00 PM |
| **Attachments:** | 2021-12-15 Pltfs Mt for Sanctions Regarding Corp Deposition.pdf |
| | 2021-12-15 Proposed Order on Pltfs Mt for Sanctions Regarding Corp Deposition.docx |
| | 2021-12-15 Fontaine Motion to Compel.pdf |
| | 2021-12-15 Proposed Order on Fontaine Motion to Compel.docx |

After conferring with Defendants' counsel, I am writing to request potential dates for a hearing on two discovery motions.

### 1. Heslin/Lewis/Pozner Motions for Sanctions Regarding Corporate Deposition

Today, the Sandy Hook plaintiffs have brought a motion alleging the failure to prepare a corporate representative for the company's December 3rd deposition on compensatory and punitive damages issues. Plaintiffs' brief contains materials designated by Defendants as confidential. Therefore, Plaintiffs are serving the Court but not filing this brief with the Clerk pursuant to the Protective Order.

### 2. Fontaine Motion to Compel and Motion for Sanctions

Today, Mr. Fontaine filed a motion alleging Defendants are again resisting his requests for production. Two weeks ago, Mr. Reeves informed Plaintiff's counsel that he has taken over representation after withdrawal of prior counsel, so this matter can be set for the same hearing.

Courtesy copies of both motions are attached, and paper copies will be mailed to the court today. I have attached Word copies of the proposed orders for the convenience of the court staff.

The parties have conferred about a hearing, and they agree they will need no more than two hours total for both sides to argue these motions. Due to the gravity and nature of the relief sought in these motions as it relates to imminent discovery in February, Plaintiffs ask the Court to accommodate a hearing before the end of January.

Mark Bankston

Kaster Lynch Farrar & Ball, LLP

| | |
|---|---|
| **From:** | Mark Bankston |
| **To:** | Bradley Reeves |
| **Subject:** | RE: Motion filings |
| **Date:** | Monday, December 27, 2021 3:59:00 PM |

We'll supplement with final copies of the deposition transcripts prior to the hearing next month, and as far as confidentiality, the motion was filed with the clerk unsealed today pursuant to Paragraph 21 of the Protective Order.

Mark Bankston

Kaster Lynch Farrar & Ball, LLP

---

**From:** Bradley Reeves <brad@brtx.law>
**Sent:** Monday, December 27, 2021 3:32 PM
**To:** Mark Bankston <mark@fbtrial.com>
**Subject:** Motion filings

Mark:

I am unclear as to why you have filed the transcripts of depositions that are not certified or anything I'm clear violation of our protective order. Can you please explain?

Best regards,

Brad Reeves

Reeves Law, PLLC
702 Rio Grande St., Suite 203
Austin, TX 78701
T: (512) 827-2246
F: (512) 318-2484
E: brad@brtx.law
https://link.edgepilot.com/s/b9a76e7e/Thx1MVH6CUeiRObepmtzOA?u=http://www.brtx.law/

| From: | Mark Bankston |
|---|---|
| To: | Bradley Reeves |
| Cc: | Bill Ogden |
| Subject: | RE: Heslin/Lewis/Pozner/De La Rosa - Conference on Motion for Sanctions |
| Date: | Thursday, December 30, 2021 3:14:00 PM |
| Attachments: | image001.jpg |

So I'm pretty confused by your email. As you know Dan is our consulting expert, and we've long had an agreement in these cases since 2019 to be able to bring an expert to depositions. In nearly every prior deposition in these cases, we've had either our retained expert Fred Zipp or more frequently our consulting expert Brooke Binkowski in the deposition. And I do not understand your email because I did announce Dan's presence and made sure his name appears on the record of those present, and I provided you a copy of his protective order acknowledgement in the documents I gave you at Ms. Karpova's deposition. I certainly felt like you understood he was there as my consultant. I even jokingly teased Dan at one point by saying "What do you know, you're only the expert," which you chuckled at (though I'm guessing now only out of politeness). This feels like maybe it's really coming from Mr. Randazza, who was only there for the final deposition? In any case, I'm not sure what the basis for your motion would be. Maybe I'm not understanding how you contend you were harmed?

Regarding the unsealed motion we filed, I need you to explain how our filing an unsealed pleading pursuant to paragraph 21 breaches the Protective Order. You did not respond to my email earlier this week, so my assumption is that you recognized that it was consistent with the order.

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

---

**From:** Bradley Reeves <brad@brtx.law>
**Sent:** Wednesday, December 29, 2021 4:44 PM
**To:** Mark Bankston <mark@fbtrial.com>
**Subject:** Heslin/Lewis/Pozner/De La Rosa - Conference on Motion for Sanctions

Mark:

I am preparing to file a motion for sanctions due to you having Dan Friesen at the prior depositions without announcing him or otherwise indicating he was not someone from your office, in addition to you breaching the protective order by filing the uncertified transcript of the corporate rep deposition.

My clients will be seeking monetary sanctions as a result in excess of $50K, but I obviously need to confer with you prior to filing such a motion.

Please let me know by COB tomorrow if possible. Thank you.

Best regards,

Brad Reeves



**REEVES LAW, PLLC**
**702 RIO GRANDE ST., SUITE 203**
**AUSTIN, TX 78701**
**T: (512) 827-2246**
**F: (512) 318-2484**
**E:** brad@brtx.law
https://link.edgepilot.com/s/1d9d627e/oprTNdg-rU2s-xEid5VJaw?u=http://www.brtx.law/

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender immediately by telephone at (512) 827-2246 or by return e-mail and delete this message, along with any attachments, from your computer. Thank you.

| | |
|---|---|
| **From:** | Bradley Reeves |
| **To:** | Mark Bankston |
| **Subject:** | RE: Protective Order |
| **Date:** | Monday, January 10, 2022 5:22:38 PM |

Mark:

It is our position that you have breached the protective order in filing the deposition transcripts and exhibits to the deposition without allowing the requisite period of time under the order to designate confidential materials.

In addition, when you submitted the original filing, you provided it to the Court instead of just the parties, which violates the protective order in and of itself, and overall your filings of confidential private AEO materials, particularly the net worth documentation, violates the protective order and the spirit of the designations themselves.

Seeing as you will certainly not agree to withdraw these filings and that the damage has been done, we will be moving for severe sanctions, including dismissal of the claims. This shall serve as the requisite certificate of conference prior to the filing of such motions.

Thank you for your attention to this.


Best regards,

Brad Reeves


**From:** Mark Bankston <mark@fbtrial.com>
**Sent:** Monday, January 10, 2022 4:01 PM
**To:** Bradley Reeves <brad@brtx.law>
**Subject:** Protective Order


Since you have now publicly accused me in a pleading of violating the Court's protective order, I am once again asking you to specify exactly how you contend our filing on December 27th violated the order. I have asked this question multiple times, and you have refused to respond.

Mark Bankston
Kaster Lynch Farrar & Ball, LLP

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 62169911
Status as of 3/3/2022 9:00 AM CST

Associated Case Party: NEIL HESLIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mark D.Bankston | | mark@fbtrial.com | 3/1/2022 10:01:22 AM | SENT |

Associated Case Party: ALEXEJONES

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| T. Wade Jefferies | | twadejefferies@twj-law.com | 3/1/2022 10:01:22 AM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 10:01:22 AM | SENT |

Associated Case Party: INFOWARS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 10:01:22 AM | SENT |

Associated Case Party: OWEN SHROYER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 10:01:22 AM | SENT |

Associated Case Party: FREE SPEECH SYSTEMS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 10:01:22 AM | SENT |

Case Contacts

| Name |
|------|

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carmen Scott on behalf of Mark Bankston
Bar No. 24071066
carmen@fbtrial.com
Envelope ID: 62169911
Status as of 3/3/2022 9:00 AM CST

Case Contacts

| William Ogden | | bill@fbtrial.com | 3/1/2022 10:01:22 AM | SENT |
|---|---|---|---|---|
| Norman Pattis | | npattis@pattisandsmith.com | 3/1/2022 10:01:22 AM | SENT |
| Carmen Scott | | carmen@fbtrial.com | 3/1/2022 10:01:22 AM | SENT |
| Jacquelyn W.Blott | | jblott@jblottlaw.com | 3/1/2022 10:01:22 AM | SENT |